IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK HALE, TODD SHADLE and CARLY VICKERS MORSE, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>   v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, EDWARD MURNANE, and WILLIAM G. SHEPHERD,<br><br>    Defendants. | Case No. 12-cv-00660-DRH-SCW |

**STATE FARM'S RESPONSIVE SUBMISSION REGARDING
<u>THE RELEVANT TIME FRAMES FOR DISCOVERY</u>**

Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), by its attorneys, respectfully submits this Response to Plaintiffs' Memorandum in Support of Plaintiffs' Proposed Relevant Timeframe for Discovery ("Pls.' Br.") and in further support of State Farm's Submission ("State Farm's Br.").

**<u>INTRODUCTION</u>**

Plaintiffs' submission contains a number of incorrect assertions. To start, Plaintiffs accuse State Farm of imposing "arbitrary temporal restrictions." (Pls.' Br. at 15, 16.) Not so. The positions taken by State Farm are properly based on Plaintiffs' purported RICO claims as asserted in the Complaint, recited by Chief Judge Herndon in his March 28, 2013 Order, and described by Plaintiffs' interrogatory answers. Those claims allege three timeframes: (1) State Farm's participation in an alleged RICO conspiracy to elect Justice Karmeier in 2003-2004 and supposedly indirectly finance his campaign; (2) State Farm's January 31, 2005 filing in *Avery*

(the first alleged predicate act); and (3) State Farm's September 19, 2011 filing in *Avery* (the second alleged predicate act).  Those events comprise the three relevant timeframes for Plaintiffs' discovery.

Plaintiffs also misstate State Farm's position regarding the relevant time frame in its discovery requests as "2005 through the filing of the lawsuit or the present." (Pls.' Br. at 6.) That too is incorrect. State Farm did not assert any particular time frame in its discovery requests. However, as explained in State Farm's submission, the relevant time frame for one discrete category of State Farm's discovery – its discovery into Plaintiffs' so-called investigators, their inconsistent factual positions regarding supposed indirect contributions to the Karmeier campaign, and their contriving of new supposed facts to avoid a limitations bar – is from 2003 until the filing of this lawsuit. Plaintiffs' submission offers no rationale for why the same time frames should apply to all discovery sought by Plaintiffs, given the different types of discovery and the different issues involved.

Plaintiffs also incorrectly compare this case to *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868 (2009), in their zeal improperly to expand the time frame for discovery. Again, that comparison is grossly inapt. It is clear from the face of the Complaint and the positions taken by Plaintiffs at earlier stages of this litigation that they do not allege a *Caperton* constitutional due process claim.[1] Plaintiffs attempted a *Caperton*-style argument in their Petition for Writ of

---

[1] Even if this case involved a constitutional due process claim, which it does not, Defendants have previously explained why *Caperton* would not apply. (*See* Dkt. # 202 at 8 n.14.) There the litigant's CEO donated $3 million to the election of a justice who knew of the litigant's contributions, and whose participation in the appeal was "foreseeable." 556 U.S. at 886. Here, in contrast, Plaintiffs rely not on any actual contributions by State Farm, but rather on speculative and conclusory allegations that contributions by other entities should somehow be attributed to State Farm. And Plaintiffs here do so even though their so-called investigators, working for plaintiffs' counsel in other cases, have inconsistently attributed those same supposed indirect contributions to different corporations, such as Philip Morris. Moreover, there is no evidence that Justice Karmeier knew the purported sources of these alleged indirect

2

Certiorari to the U.S. Supreme Court in *Avery*, and that petition was denied on March 6, 2006. *Avery v. State Farm Mut. Auto. Ins. Co.*, 547 U.S. 1003 (2006). Plaintiffs then made a *Caperton* argument in *Avery* in their Petition to Recall the Mandate to the Illinois Supreme Court in September 2011, but that Petition also was denied. (Nov. 17, 2011 Order Denying Petition, Appx. to Mot. to Dismiss at SF-00092, Dkt. # 13-3.) There is no constitutional due process claim in this case. In resisting the Defendants' dismissal motion on *res judicata* and *Rooker-Feldman* grounds, Plaintiffs were adamant that this case is different than *Avery*, and that it is a RICO case, defined by Plaintiffs' asserted RICO claims, and not by any effort to reverse *Avery*, such as with a *Caperton*-style due process challenge.[2] Plaintiffs certainly should not be permitted now to revise their asserted claims yet again to attempt to justify a broader time frame for discovery.

## ARGUMENT

**I.     PLAINTIFFS HAVE NO AUTHORITY FOR THEIR OVERBROAD POSITIONS.**

Federal Rule of Civil Procedure 26(b)(1) requires that discovery must be limited to matters relevant to the actual claims and defenses in the action. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26, Advisory Committee Note to 2000 Amendment to subdivision (b)(1). Plaintiffs offer no authority for their position that they are entitled to broad discovery over the "entire duration of the fraudulent scheme" unrelated to the acts alleged in their RICO claims.

---

contributions, and it certainly was not foreseeable, at the time of his campaign, that he would participate in an appeal that was argued nearly 18 months before he was elected.

[2] Insofar as Plaintiffs suggest they are arguing a "fraud on the court" theory requiring that the *Avery* judgment "be vacated as having been fraudulently obtained" (Pls.' Br. at 13), that squarely conflicts with what Plaintiffs represented to Chief Judge Herndon in order to avoid dismissal under the *Rooker-Feldman* doctrine. *See* Dkt. # 50 at 2 ("[Plaintiffs] seek neither review or rejection of the *Avery* judgment"); Dkt. # 67 at 15 ("Plaintiffs are not asking for the Illinois Supreme Court's judgment to be overturned or reviewed.").

(Pls.' Br. at 8.) The authorities cited by Plaintiffs certainly do not stand for that proposition.[3] An examination of their asserted authorities reveals that Plaintiffs have overstated their holdings, or else mischaracterized them completely.

The principal case cited by Plaintiffs is *United States ex rel. Bledsoe v. Community Health Systems, Inc.,* 501 F.3d 493 (6th Cir. 2007), which did not even deal with the scope of discovery. Instead, *Bledsoe* was an appeal of the dismissal of a *qui tam* action under the False Claims Act ("FCA") alleging that a hospital had submitted false Medicare and Medicaid claims to the U.S. government. *Id.* at 496-97. The issue was whether Rule 9(b) of the Federal Rules of Civil Procedure required a relator bringing claims under the FCA "to plead every specific instance of fraud where the relator's allegations encompass many allegedly false claims over a substantial period of time." *Id.* at 509. The *Bledsoe* court held that "where a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme," the claims will satisfy Rule 9(b) and allow the relator "to proceed to discovery on the entire fraudulent scheme" only if and "to the extent that the relator's examples are *representative samples* of the broader class of claims." *Id.* at 510 (emphasis in original).

Contrary to Plaintiffs' characterization, the *Bledsoe* court did not address – let alone "grant[]" (Pls.' Br. at 7) – discovery over any particular duration. Instead, the court used the

---

[3] Plaintiffs also misconstrue the applicable standards. When, as here, a discovery "request is overly broad on its face, or when relevancy is not readily apparent," it is "*the party seeking the discovery*" that "has the burden to show the relevancy of the request." *Vajner v. City of Lake Station, Ind.*, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010) (emphasis supplied). Plaintiffs also quote from outdated 1946 commentary to argue the Court may only limit discovery on matters that are "entirely without bearing either as direct evidence or as leads to evidence" (Pls.' Br. at 7). Plaintiffs fail to note that the scope of discovery was changed in the 2000 Amendments to Rule 26(b), which "explicitly limited the scope of discovery to the 'claim or defense of any party' identified in the pleadings." *Am. Roller Co. LLC v. Foster-Adams Leasing, LLP*, 2006 WL 1371441, at *3 (N.D. Ill. May 16, 2006).

phrase "proceed to discovery" just to indicate the claims would survive dismissal.  Moreover, the reasoning in *Bledsoe* would not apply to this case even if it were at the pleading stage.  It is undisputed that Plaintiff's claims challenging State Farm's 2005 and 2011 filings are not "representative samples" – instead, those filings exhaustively are *the only* alleged RICO predicate or racketeering acts.  (*See* State Farm's Br. at 1-2; *see also* Pls.' Br. at 4 (the "two briefs that State Farm filed in 2005 and 2011" are "the predicate acts of this RICO action").)[4]

Plaintiffs' other authorities are even more inapposite.  Plaintiffs incorrectly cite *United States ex. rel. SNAPP, Inc. v. Ford Motor Co.,* 618 F.3d 505, 513 (6th Cir. 2010) as "granting discovery over full eight-year span of alleged fraudulent scheme."  (Pls.' Br. at 7.)  That case also did not involve discovery at all.  Rather, *SNAPP* affirmed the district court's denial of a motion to alter or amend final judgment after dismissing an FCA action at the pleading stage – *i.e.* before discovery even started.  618 F.3d at 510, 512-14.

*SEC v. Wall St. Capital Funding, LLC,* 2011 WL 2295561, at *6 (S.D. Fla. Jun. 10, 2011), is also unhelpful to Plaintiffs.  First, although Plaintiffs represent that *Wall St.* "grant[e]d discovery covering ten-year life of alleged scheme" (Pls.' Br. at 8), in fact that ruling only allowed discovery over a 3.5 year time period.  *See* 2011 WL 2295561, at *2 (discovery requests sought documents "from January 1, 2008 to date [2011]").  Moreover, the SEC there alleged that the defendants had "disseminated misinformation relating to hundreds of penny stocks" and named four companies as "merely *examples* or illustrations of the Defendants' standard practices."  *Id.* at *1, 6.  For that reason, the court allowed discovery of the other companies,

---

[4] It bears emphasis that State Farm has repeatedly asked Plaintiffs by interrogatories to identify with particularity all supposed criminal predicate acts of which they accuse the Defendants of engaging.  Plaintiffs' interrogatory responses confirm that the filings of the two challenged briefs (in January 2005 and September 2011) are it.  *See* State Farm's Br., Ex. 1, Plaintiffs' Answers to State Farm's First Set of Interrogatories, Answer No. 15 at p. 14; Answer No. 16 at pp. 15-16.

recognizing that it would have been "illogical and impractical" for the SEC to have identified every other company in the complaint. *Id.* at *6. Here, by contrast, Plaintiffs admit they only allege two supposedly wrongful acts – the challenged 2005 and 2011 filings. There is no basis for allowing a fishing expedition into other unrelated activities over a thirteen-year period.

Finally, *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372 (W.D.N.Y. 2006), actually supports State Farm's position. The *Eastman Kodak* court ruled that the subpoenas there "should be limited in time frame" and held that "the appropriate time frame" began with "the year the conspiracy commenced, according to the Complaint." 238 F.R.D. at 377. According to Plaintiffs' Complaint, the alleged RICO conspiracy began in "November 2003." (Compl. ¶¶ 1, 120.) *Eastman Kodak* confirms that is when the relevant time frame for Plaintiffs' discovery should begin.

Moreover, Plaintiffs' citation to *Eastman Kodak*'s statement that limiting discovery "would potentially deprive plaintiffs of evidence" and "would be improper and inconsistent with Fed. R. Civ. P. 26" is misleading. *See* 238 F.R.D. at 376. That statement was not made in the context of determining the proper time frame for discovery, but rather related to a motion to quash subpoenas for documents concerning the defendants' personal bank accounts. *Id.* at 374. The court found that the complaint's detailed allegations of money laundering by the defendants over many years were not restricted to their business accounts, but included their personal accounts as well. *Id.* at 375.[5]

---

[5] Plaintiffs' remaining authority, *Renner v. Chase Manhattan Bank,* 2000 WL 1848484 (S.D. N.Y. Dec. 15, 2000), is an unpublished three-paragraph opinion from a district court in another circuit with no recitation of any facts or citation to legal authority. It clearly is unpersuasive when compared to the well-reasoned analysis, supported by precedent, in the authorities cited by State Farm here and in its opening brief.

Here Plaintiffs acknowledge there are only two alleged predicate acts – the challenged 2005 and 2011 filings – six years apart. Plaintiffs have never alleged any wrongful acts by the Defendants before, between, or after those two filings. Under Federal Rule 26(b), and RICO case law, the relevant time frame is limited to the start of the RICO conspiracy alleged by Plaintiffs (in 2003-2004) and the two challenged filings in 2005 and 2011 that are the only basis for Plaintiffs' RICO claims. *See McCurdy v. Wedgewood Capital Mgmt. Co.*, 1998 U.S. Dist. LEXIS 18875, at *39-40 (E.D. Pa. Nov. 16, 1998) (denying request for RICO discovery because "[p]laintiff is not entitled to discovery merely to determine whether or not additional, unasserted claims might exist"); Fed. R. Civ. P. 26, Advisory Committee Note to 2000 Amendment to subdivision (b)(1) (parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings"); *see also Adams v. Target,* 2001 WL 987853, at *2 (S.D. Ind. Jul. 30, 2001); *Avirgan v. Hull,* 116 F.R.D. 591, 592 (S.D. Fla. 1987).

## II. PLAINTIFFS HAVE NOT SHOWN HOW DISCOVERY PRIOR TO 2003 IS RELEVANT TO RICO CLAIMS SUPPOSEDLY STARTING IN 2003.

Plaintiffs' Complaint alleges that the RICO enterprise and conspiracy began in 2003. (Compl. ¶¶ 1, 94, 120.) Chief Judge Herndon cited this as the alleged starting point for Plaintiffs' RICO claims (Dkt. # 67), and noted that the complaint alleges the Defendants "conceiv[ed] the plan to elect Justice Karmeier in late 2003." (*Id.* at 2, 23.) Plaintiffs' interrogatory answers likewise assert that Defendants "created" the RICO enterprise alleged in the Complaint "in or about 2003." (State Farm's Br., Ex. 1, Plaintiffs' Answers to State Farm's First Set of Interrogatories, Answer No. 16 at 15.) Moreover, in their response in opposition to State Farm's motion to dismiss, Plaintiffs represented to the Court that they alleged a scheme "conceived in or about November 2003." (Dkt. # 50 at 4.) Discovery prior to 2003 therefore is irrelevant to Plaintiffs' RICO claims. (*See* State Farm's Br. at 6-8.)

Plaintiffs offer nothing other than rank speculation to justify demanding discovery going back to January 2001. Ignoring their own pleading and interrogatory answers, Plaintiffs speculate that "Defendants' scheme . . . could have beg[u]n to form" after the Illinois Appellate Court affirmed the *Avery* judgment in April 2001. (Pls.' Br. at 9.) Such speculation assuredly is not a proper basis on which to allow discovery, *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D. N.Y. 2004), and certainly not when it is contradicted by Plaintiffs' purported claims.

Plaintiffs' speculation is also illogical. They point to Chief Justice Moses Harrison's announcement in May 2002 that he would retire in September 2002. (Pls.' Br. at 2, 10.) However, Plaintiffs admit that "[a]t that same time," then-Judge Rarick was appointed to fill the remainder of Justice Harrison's term. (*Id.* at 2.) Plaintiffs concede that it was not until September 2003 that Justice Philip Rarick announced he would not seek reelection. (*Id.* at 2.) And Plaintiffs allege that Justice Karmeier was recruited to run in 2003 after Justice Rarick announced his retirement. (Compl. ¶ 120.) Defendants cannot have participated in a conspiracy to elect Justice Karmeier prior to when Justice Karmeier was supposedly even recruited.

Plaintiffs also point to documents produced by Ed Murnane showing that the Illinois Civil Justice League ("ICJL"), as part of its broader tort reform agenda, was looking at the Fifth District Supreme Court seat in October and November 2002. (*See* Pls.' Br., Exs. 1, 2.) Plaintiffs offer no explanation of how they are relevant to Plaintiffs' unfounded claims against State Farm. Moreover, Plaintiffs' RICO claims challenge State Farm's statements in January 2005 and September 2011 filings regarding State Farm's supposed contributions to Justice Karmeier's campaign. What the ICJL supposedly did prior to Justice Karmeier ever deciding to run has nothing to do with those claims.[6]

---

[6] Plaintiffs' references to documents showing that the ICJL supported Justice Rita Garman's election and was providing questionnaires to potential judicial candidates in 1998

Regardless, State Farm has offered to produce documents going back to November 2002 This accommodation surely satisfies the attenuated theory of relevance articulated by Plaintiffs.

## III. STATE FARM HAS AGREED TO PRODUCE POST-2005 DOCUMENTS RELATED TO THE CHALLENGED FILINGS OR JUSTICE KARMEIER'S CAMPAIGN.

Plaintiffs' demand for post-2005 documents likewise is based on conjecture. Plaintiffs speculate that "[i]t is not unreasonable to conclude that Defendants have information relating to their efforts to conceal their participation in the election" and that "it is reasonable to assume that Defendants have discoverable information pertaining to those [2005 and 2011] submissions." (Pls.' Br. at 13.)

There was no concealment. Moreover, from the U.S. Supreme Court's denial of *certiorari* in March 2006 through the time of Plaintiffs' attempt to revive *Avery* in 2011, State Farm had every reason to believe that the *Avery* case was over, and Plaintiffs do not allege any wrongful act by Defendants during that time frame. Plaintiffs' rank speculation that Defendants might have engaged in "concealment," after they had legitimately concluded the case was finished, is entirely unsupported and is not a legitimate basis for discovery. *See Solorzano v. Shell Chem. Co.*, 2000 U.S. Dist. LEXIS 12072, at *4 (E.D. La. Aug. 14, 2000) (granting motion for protective order for request for information related to years between alleged wrongful acts because the "five years between disciplinary incidents is not a relevant time period").

In any event, State Farm has already agreed to produce responsive information related to its 2005 and 2011 filings. (*See* State Farm's Br. at 8.) State Farm further offered, during the parties' meet and confer meetings and in its opening brief, to produce any non-privileged communications by any of the purported participants in the RICO conspiracy, or by any other

---

(Pls.' Br., Exs. 3, 4), are even more obviously irrelevant to Plaintiffs' claims here. *See* Compl. ¶ 35 ("foundation" of alleged RICO scheme was "*Karmeier's* candidacy") (emphasis supplied).

individual identified in any party's Rule 26(a) disclosures, that references in any way (a) Justice Karmeier, (b) Justice Karmeier's campaign or election, or (c) the challenged 2005 and 2011 filings, through the date of filing of this lawsuit. If there are non-privileged documents related to Defendants' supposed "efforts to conceal their participation in the election," State Farm will produce them. That moots the only relevant post-2005 discovery identified by Plaintiffs in their brief.

## CONCLUSION

WHEREFORE, State Farm respectfully requests that the Court enter an order defining the scope of discovery consistent with the parameters set forth in State Farm's opening brief.

Dated: August 22, 2014

Respectfully submitted,

/s/ Patrick D. Cloud
Ronald S. Safer #6186143
Joseph A. Cancila, Jr. #06193252
James P. Gaughan #6204406
SCHIFF HARDIN, LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606

Patrick D. Cloud, #06282672
HEYL, ROYSTER, VOELKER & ALLEN
Mark Twain Plaza III, Suite 100
105 W. Vandalia St., P.O. Box 467
Edwardsville, IL 62025

J. Timothy Eaton, #0707341
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker, Suite 2800
Chicago, IL 60601

Of Counsel:
Sheila L. Birnbaum
Douglas W. Dunham
Ellen P. Quackenbos
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorneys for Defendant State Farm Mutual Automobile Company*

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of State Farm's Responsive Submission Regarding the Relevant Time Frames for Discovery was served upon the following counsel on August 22, 2014, via the Court's CM/ECF system:

W. Gordon Ball – gball@gordonball.com; tbenson@gordonball.com; ddaugherty@gordonball.com
Charles F. Barrett – charles@cfbfirm.com; ddaugherty@ballandscott.com , dawn@cfbfirm.com
John W. Barrett – dbarrett@barrettlawgroup.com
George S. Bellas – George@bellas-wachowski.com; melissa@bellas-wachowski.com
Steven P. Blonder – sblonder@muchshelist.com; tjaskiewicz@muchshelist.com
David T. Brown – dbrown@muchshelist.com; tcronin@muchshelist.com
Elizabeth J. Cabraser – ecabraser@lchb.com
Robert A. Clifford – rac@cliffordlaw.com; jg@cliffordlaw.com
W. Lloyd Copeland – lloyd@taylormartino.com; ctrott@taylormartino.com
Colin H. Dunn -- chd@cliffordlaw.com
Richard M. Heimann – rheimann@lchb.com
Sidney W. Jackson, III – sid@jacksonfosterlaw.com; keri@jacksonfosterlaw.com
Michael S. Krzak – msk@cliffordlaw.com; jmg@cliffordlaw.com
Brent W. Landau – blandau@hausfeldllp.com
Steven A. Martino – stevemartino@taylormartino.com; ctrott@taylormartino.com
Shannon M. McNulty – smm@cliffordlaw.com; smarquez@cliffordlaw.com
Robert J. Nelson – rnelson@lchb.com
Patrick W. Pendley – pwpendley@pbclawfirm.com
Jessica A. Perez – jperez@pbclawfirm.com
Nicholas R. Rockforte – nrockforte@pbclawfirm.com
Robert P. Sheridan – rps@cliffordlaw.com; jg@cliffordlaw.com
Richard H Taylor -- richardtaylor@taylormartino.com; penny@taylormartino.com
Thomas P. Thrash – tomthrash@sbcglobal.net

*Attorneys for Mark Hale, Carly Vickers Morse and Todd Shadle*

Russell K. Scott – rks@greensfelder.com
Andrew J. Tessman – atessman@greensfelder.com

*Attorneys for William Shepherd*

Scott M. Berliant – sberliant@sidley.com; efilingnotice@sidley.com
David Gavin Jorgensen – djorgensen@sidley.com; efilingnotice@sidley.com
Richard J. O'Brien – robrien@sidley.com; efilingnotice@sidley.com
Karim Basaria – kbasaria@sidley.com; efilingnotice@sidley.com

*Attorneys for Ed Murnane*

Dated: August 22, 2014                         /s/ Patrick D. Cloud
                                               Attorney for Defendant State Farm