

1 of 3 DOCUMENTS

**MICHAEL E. AVERY et al., on behalf of themselves and all others similarly situated, Plaintiffs-Appellees, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.**

**NO. 5-99-0830**

**APPELLATE COURT OF ILLINOIS, FIFTH DISTRICT**

*321 Ill. App. 3d 269; 746 N.E.2d 1242; 2001 Ill. App. LEXIS 249; 254 Ill. Dec. 194*

**April 5, 2001, Filed**

**NOTICE:** [***1] UNPUBLISHED IN PART PURSUANT TO SUPREME COURT RULE 23.

**SUBSEQUENT HISTORY:** Appeal granted by *Avery v. State Farm Mut. Auto. Ins. Co., 201 Ill. 2d 560, 786 N.E.2d 180, 2002 Ill. LEXIS 980, 271 Ill. Dec. 922 (2002)* Affirmed in part and reversed in part by *Avery v. State Farm Mut. Auto. Ins. Co., 2005 Ill. LEXIS 959 (Ill., Aug. 18, 2005)*

**PRIOR HISTORY:** Appeal from the Circuit Court of Williamson County. No. 97-L-114. Honorable John Speroni, Judge, presiding.

**DISPOSITION:** Affirmed in part and reversed in part; cause remanded.

**COUNSEL:** For Appellant: Michele Odorizzi, Bradley J. Andreozzi, Allan Erbsen, Mayer, Brown & Platt, Chicago, IL; William R. Quinlan, Gino L. DiVito, Quinlan & Crisham, Ltd., Chicago, IL; Wm. Kent Brandon, Brandon, Schmidt, Goffinet & Solverson, Carbondale, IL; Robert H. Shultz, Jr., Heyl, Royster, Voelker & Allen, Edwardsville, IL; Marci A. Eisenstein, Aphrodite Kokolis, Schiff, Hardin & Waite, Chicago, IL.

For Appellee: Edward J. Kionka, Carbondale, IL; Elizabeth J. Cabraser, Morris A. Ratner, Scott P. Nealey,

Yu-Yee Wu, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA; Patricia S. Murphy, Marion, IL; Michael B. Hyman, William H. London, Melinda J. Morales, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Chicago, IL; Don Barrett, Richard R. Barrett, S. Katherine Barrett, Barrett Law Offices, Lexington, MS; Thomas P. Thrash, Little Rock, AR. [***2]

**JUDGES:** Honorable Gordon E. Maag, J. Honorable Thomas M. Welch, J., and Honorable Robert L. Welch, J. 1, Concur. JUSTICE MAAG delivered the opinion of the court.

    1    Chief Judge of the Eighth Judicial Circuit, sitting by assignment.

**OPINION BY:** Gordon E. Maag

**OPINION**

[*273] [**1247] JUSTICE MAAG delivered the opinion of the court:

State Farm Mutual Automobile Insurance Company (State Farm) appeals from a $ 1.18 billion judgment entered against it in a nationwide class action lawsuit tried in the circuit court of Williamson County, Illinois.

The three-count complaint, filed on behalf of a class of State Farm automobile insurance policyholders (plaintiffs), alleged breach of contract, consumer fraud, and claims seeking equitable relief. On appeal State Farm seeks the decertification of the class and a reversal of the judgment below or, alternatively, a new trial. State Farm also seeks to have the punitive damages award vacated or reduced.

**[The following text is nonpublishable under *Supreme Court Rule 23* (166 Ill. 2d R. 23).]**

The tone of this appeal was set in the statement of facts. The parties seem to agree on little beyond the fact that the members of the class all purchased [***3] State Farm automobile insurance policies. The class consisted of more than four million State Farm automobile insurance policyholders nationwide whose vehicles sustained damage as a result of accidents and required repairs that included the replacement of one or more designated "crash parts". "Crash parts" were described as vehicle components typically repaired or replaced as a result of crash damage rather than normal use. They are primarily sheet metal and plastic parts attached to the outer shell of the vehicle. The types of "crash parts" at issue included fenders, hoods, doors, quarter panels, tailgates, grills, headlight and taillight mounting panels, brackets, moldings, and bumpers. There were 25 types of "crash parts" at issue in this case.

**[The preceding text is nonpublishable under *Supreme Court Rule 23*.]**

In count I of the complaint, plaintiffs alleged that State Farm issued form contracts containing an identical promise to its policyholders nationwide. Plaintiffs contended that in exchange for payment of the insurance premium, State Farm had promised to pay for replacement parts of "like kind and quality" that would restore the vehicle to its "pre-loss condition" [***4] and that it breached this promise by uniformly specifying inferior non-original equipment manufacturer (non-OEM) parts when they were available and cheaper than original equipment parts made by the automobile manufacturer (OEM). Counts II and III alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (CFA) ( *815 ILCS 505/1 et seq.* (West 1998)). In those counts, plaintiffs claimed that State Farm had a nationwide claims practice of uniformly specifying cheaper non-OEM crash parts on damage estimates issued to its policyholders despite the fact that it knew

that those parts were inferior in quality and condition and would not return the damaged vehicle to its preloss condition. Plaintiffs claimed that by adopting and employing this claims practice, State Farm deceived its policyholders in that it failed to inform them of the inferior quality of specified replacement parts. It was alleged that State Farm was able to succeed in this deception by representing that the inferior parts met high performance criteria and by offering a bogus guarantee to replace unsatisfactory non-OEM parts at no cost to the policyholder.

[**1248] State [***5] Farm objected to the certification of the class, on the grounds [*274] that the individual questions of fact and law overwhelmingly dominated any purported common questions in the contract and consumer-fraud claims. State Farm also denied the allegations of the complaint.

The trial court conducted a pretrial evidentiary hearing on the class-certification issue. After considering documents and the testimony of several witnesses, the court certified the class as follows:

"All persons in the United States, except those residing in Arkansas and Tennessee, who (1) were insured by a vehicle casualty insurance policy issued by Defendant State Farm and (2) made a claim for vehicle repairs pursuant to their policy and had imitation[,] that is, non-factory-authorized and/or non-OEM parts installed on their vehicles or else received monetary compensation determined in relation to the cost of imitation parts. Excluded from the class are employees of Defendant State Farm, its officers, its directors, its subsidiaries, or its affiliates.

In addition, the following persons are excluded from the class: (1) persons who resided in Illinois and whose policies were issued/executed prior to April 16, 1994, and [***6] (2) persons who resided in California and whose policies were issued/executed prior to September 26, 1996."

The trial court also reviewed State Farm auto policies that were issued to class members who resided in states other than Illinois. The court found that there were some variations in the form of the policy from state to state, but it concluded that these variations were immaterial because the operative policy language in each policy was susceptible to uniform interpretation. The court determined that in each policy State Farm made the

321 Ill. App. 3d 269, *274; 746 N.E.2d 1242, **1248;
2001 Ill. App. LEXIS 249, ***6; 254 Ill. Dec. 194

identical promise to pay for parts "of like kind and quality" that would restore the vehicle to its "original pre-loss condition".

**[The following text is nonpublishable under *Supreme Court Rule 23.*]**

The trial lasted almost 30 days. The parties presented testimony from dozens of witnesses and introduced hundreds of exhibits. Summarizing all of the evidence would be neither manageable nor beneficial. Exhibits and testimony will be referenced as required to dispose of the issues raised in this appeal. The positions of the parties at trial were as follows:

**[The preceding text is nonpublishable under *Supreme Court Rule 23.*]**

I. Plaintiffs' [***7] Contentions At Trial

*A. Breach of Contract*

In the breach-of-contract claim, plaintiffs alleged that State Farm's practice of specifying non-OEM parts constituted a breach of its contractual obligation to pay for parts "of like kind and quality" to restore the vehicles to "pre-loss condition". This class-wide claim was based on plaintiffs' theory that the non-OEM parts specified in the damage estimates were categorically inferior. Plaintiffs presented evidence to demonstrate that State Farm had a uniform, corporate-wide claims adjustment manual that dictated the policy for the settlement of property-damage claims with its insureds and that this policy and practice was devised, implemented, dictated, and monitored from its home office in Bloomington, Illinois.

**[The following text is nonpublishable under *Supreme Court Rule 23.*]**

During the applicable class period, a nationwide directive was in effect that required the specification of non-OEM parts in the settlement of its policyholders' damage claims if the non-OEM parts were cheaper. State Farm claims estimators were required to utilize a computer system programmed to select the cheapest available non-OEM part certified [***8] by the Certified Automotive Parts Association (CAPA), an association formed and largely funded by the insurance industry to regulate and certify aftermarket parts. The estimators had no authority to substitute OEM parts in damage estimates

when non-OEM parts were cheaper and available. In the event the damaged part was not one that was subject to CAPA certification, the computer selected and the estimator routinely specified a noncertified, non-OEM part.

The computer program contained a matrix of all parts that were available and the suppliers who carried those parts. State Farm selected the suppliers and approved the parts that were listed in the computer software. In order to prepare a damage estimate, the claims estimator would enter into the computer system the make and model year of the damaged part, and the computer would identify the cheapest part without regard for the preloss condition of the damaged vehicle. That part and its cost would be specified on the damage estimate. The claim was resolved based upon the cost of the non-OEM part. Adjustors and claims estimators were trained in these policies and practices through in-house seminars, which were held at the home office.

[***9] Plaintiffs also presented numerous documents and the testimony of expert witnesses to bolster the claim that the non-OEM parts which State Farm specified were categorically inferior in terms of fit, function, performance, durability, corrosion resistance, appearance, and safety. Plaintiffs' experts included both auto body repairmen who had practical, hands-on experience with the non-OEM parts State Farm specified and experts who had advanced education, training, and experience in such fields as industrial engineering, metallurgy, and materials sciences. One of those experts had observed the process used in the manufacture of non-OEM parts at a plant in Taiwan. Another conducted testing on a sample of non-OEM parts. Plaintiffs also presented an expert in market analysis.

**[The preceding text is nonpublishable under *Supreme Court Rule 23.*]**

*[*275] B. The Consumer Fraud Act*

In the consumer-fraud claim, plaintiffs alleged that State Farm knowingly concealed information about the inferior condition of the non-OEM parts it was specifying on damage estimates and misrepresented the quality and condition of those parts to its policyholders. Plaintiffs presented evidence, in the form [***10] of State Farm's own documents and testimony from past and current State Farm [**1249] employees, to show that State Farm knew that the non-OEM parts were inferior in terms

321 Ill. App. 3d 269, *275; 746 N.E.2d 1242, **1249;
2001 Ill. App. LEXIS 249, ***10; 254 Ill. Dec. 194

of fit, quality, function, performance, corrosion resistance, appearance, and safety. These parts were represented to policyholders as "quality replacement parts". There was also evidence that State Farm's guarantee that it would replace non-OEM parts at no cost to the unsatisfied policyholders upon demand was bogus. If the aftermarket part was warranted by the part manufacturer, the policyholder was required to contact the manufacturer for relief. In most cases, these part manufacturers were located outside the United States in Taiwan or another country. If the policyholder demanded replacement of the non-OEM part, a State Farm adjustor was required to investigate the claim, and if it was approved, an OEM replacement part was installed but the cost was charged to the policyholder as an indemnity payment.

## II. State Farm's Contentions At Trial

State Farm defended by presenting witnesses who testified that the use of non-OEM parts had been approved in all states in which the class members reside, that non-OEM parts were [***11] "equivalent" or "functionally equivalent" to OEM parts, that the use of non-OEM parts did not adversely effect occupant safety, and that non-OEM parts did not reduce the value of the vehicle. State Farm also presented evidence to show that it advised its policyholders of its use of non-OEM parts in the policy, in estimates, and in a pamphlet provided with the estimate. There was also evidence that 95% of State Farm's policyholders renewed their policies. This evidence was offered in an attempt to prove that State Farm insureds were satisfied customers. State Farm also presented as experts those who had practical experience and those with credentials similar to plaintiffs' experts, to counter plaintiffs' opinion witnesses. Thus, there was a classic battle of experts, and the fact finders were required to determine the weight and credibility of these witnesses.

## III. The Verdict and Judgment

After many hours of deliberation, the jury returned a verdict on the breach-of-contract claim. The jury found that State Farm failed to perform its obligations under the contract and breached its contract [*276] with the plaintiff class. Damages to the plaintiff class were fixed at $ 243,740,000 in [***12] direct damages and $ 212,440,000 in consequential damages.

The consumer-fraud counts of the complaint were

resolved in a bench trial. In its written judgment, the trial court found that State Farm misrepresented, concealed, suppressed, or omitted material facts concerning the non-OEM crash parts with the intent that its policyholders rely upon these deceptions in violation of the CFA. The trial court noted that it concurred with the jury's verdict on the breach-of-contract claim. The court found that plaintiffs had incurred actual damages as a result of State Farm's deceptive practices, but the court did not award actual damages, noting that the jury had awarded identical actual damages in the breach-of-contract case and that plaintiffs could not recover these damages twice. The court awarded the sum of $ 130 million in disgorgement damages (representing the direct savings State Farm realized from use of non-OEM parts) and imposed a constructive trust on that sum. The court also awarded $ 600 million in punitive damages. The court granted declaratory relief, holding that State Farm was obligated to pay for crash parts of like kind and quality which restored a vehicle to its preloss [***13] condition. The court denied the prayer for injunctive relief, finding that there was an adequate remedy at law. Judgment [**1250] was entered on the verdicts, but the court retained jurisdiction over the parties and the fund to enforce all provisions of the judgment, to administer the damages awarded, and to consider attorney fees. It is from this judgment that State Farm appeals.

## IV. Issues on Appeal

[The following text is nonpublishable under *Supreme Court Rule 23.*]

As a preliminary matter, we note that the record in this case contains more than 30,000 pages of pleadings and more than 13,000 pages of transcripts of the proceedings. We extended the page limitations of the briefs so that both parties would have an adequate opportunity to address the errors which State Farm identified as prejudicial. We also extended the time for oral argument. Though there may have been other issues that could have been identified, we will address only those issues raised in the appellate briefs.

[The preceding text is nonpublishable under *Supreme Court Rule 23.*]

There are certain standards that the parties are required to meet when raising any issue on appeal. It is well established [***14] that a court of review is entitled

321 Ill. App. 3d 269, *276; 746 N.E.2d 1242, **1250;
2001 Ill. App. LEXIS 249, ***14; 254 Ill. Dec. 194

to have briefs submitted that are articulate and organized and present cohesive legal argument in conformity with our Supreme Court rules. *Schwartz v. Great Central Insurance Co.*, 188 Ill. App. 3d 264, 268, 544 N.E.2d 131, 133, 135 Ill. Dec. 774 (1989). A reviewing court is also entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are waived. *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 401, 515 N.E.2d 1222, 1227, 113 Ill. Dec. 915 (1987). Mere contentions without argument or citation of authority do not merit consideration on appeal (*Fuller v. Justice*, 117 Ill. App. 3d 933, 942, 453 N.E.2d 1133, 1139, 73 Ill. Dec. 144 (1983)), nor do statements unsupported by argument or citation of relevant authority. *Hutchings v. Bauer*, 212 Ill. App. 3d 172, 183, 571 N.E.2d 169, 176, 156 Ill. Dec. 582 (1991), *rev'd on* [*277] *other grounds*, 149 Ill. 2d 568, 599 N.E.2d 934, 174 Ill. Dec. 850 (1992). Contentions supported by some argument but by absolutely no authority [***15] do not meet the requirements of *Supreme Court Rule 341(e)(7)* (155 Ill. 2d R. 341(e)(7)). *In re Marriage of Drummond*, 156 Ill. App. 3d 672, 684, 509 N.E.2d 707, 716, 109 Ill. Dec. 46 (1987). We point out these requirements because in the argument portion of the briefs, nearly every issue argued contains multiple subissues consisting of a single sentence or paragraph. These subissues appear as naked assertions that are rarely clothed with citation to the record or to pertinent authority. Often these miniclaims also lack a developed argument. They appear from nowhere and then vanish in a twinkling, never to be heard of again. We will give these matters all the attention they deserve. None!

These rules have not changed in almost a century. "If the questions involved in a case are of sufficient importance to justify asking this court to decide them, they are worthy of careful consideration of counsel presenting them. If the case is not properly presented and the court is not given the benefit of precedents, there is a danger of a decision being rendered that will not be in harmony with the weight of authority. It is the duty of attorneys practicing in this court to present [***16] to the court the authorities supporting their views[] and to assist the court in reaching a correct conclusion." *Kelley v. Kelley*, 317 Ill. 104, 107, 147 N.E. 659 (1925). "Reviewing courts are entitled to have issues clearly defined [and] to be cited pertinent authorities and are not a depository in which an appellant is to dump the entire

matter of pleadings, court action, argument[,] and research as it were, upon the court." *In re Estate of Kunz*, 7 Ill. App. 3d 760, 763, 288 N.E.2d 520, 523 (1972).

**[The following text is nonpublishable under *Supreme Court Rule 23*.]**

An objection to evidence must be timely made and must specify the reasons for the objection. *People v. Trefonas*, 9 Ill. 2d 92, 98, 136 N.E.2d 817, 820 (1956). In order to be timely, the objection must be made at the time the evidence is admitted. *Trefonas*, 9 Ill. 2d at 98, 136 N.E.2d at 820; *Johnson v. Hoover Water Well Service, Inc.*, 108 Ill. App. 3d 994, 1006, 439 N.E.2d 1284, 1293, 64 Ill. Dec. 476 (1982). It must designate the particular testimony considered objectionable and point out the objectionable features. [***17] *Trefonas*, 9 Ill. 2d at 98, 136 N.E.2d at 820. An objection to evidence on a specific ground is a waiver of objection on all grounds not specified. *Johnson*, 108 Ill. App. 3d at 1006, 439 N.E.2d at 1293. "The function of the objection is, first, to signify there is an issue of law, and, secondly, to give notice of the terms of the issue." *Trefonas*, 9 Ill. 2d at 98, 136 N.E.2d at 820. In addition, the theory upon which a case is tried in the lower court cannot be changed on review, and an issue not presented to or considered by a trial court cannot be raised for the first time on review. *Woman's Athletic Club of Chicago v. Hulman*, 31 Ill. 2d 449, 202 N.E.2d 528, 530 (1964).

The reasons behind the rules requiring timely and specific objections to be raised during the trial and in the posttrial motion are simple. See *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 349-50, 415 N.E.2d 337, 339, 47 Ill. Dec. 332 (1980). These rules allow the decision maker who is most familiar with the events of the trial, the trial judge, to review his decisions without the pressure of an ongoing trial and to grant a [***18] new trial if, on reconsideration, he concludes that his earlier decision was incorrect. *Brown*, 83 Ill. 2d at 349-50, 415 N.E.2d at 339. The rule requiring the statement of the specific grounds urged as support for the claim of error allows a reviewing court to ascertain from the record whether the trial court has been afforded an adequate opportunity to reassess the allegedly erroneous rulings, and it prevents the litigant from stating mere general objections and subsequently raising on appeal arguments that the trial judge was never given the opportunity to consider. *Brown*, 83 Ill. 2d at 349-50, 415 N.E.2d at 339. It promotes the accuracy of decision

321 Ill. App. 3d 269, *277; 746 N.E.2d 1242, **1250;
2001 Ill. App. LEXIS 249, ***18; 254 Ill. Dec. 194

making and eliminates unnecessary appeals.

**[The preceding text is nonpublishable under *Supreme Court Rule 23*.]**

[**1251] During the trial and on appeal, the parties argued at length about whether the evidence at trial established that non-OEM parts were inferior to OEM parts, whether non-OEM parts were categorically inferior, and what other conclusions should be drawn from the evidence presented. It is not our function as a reviewing court to reweigh the evidence. The rule we must apply in considering [***19] the evidence is as follows:

"An initial step in analyzing the issue before us is to determine the authority of the jury, trial court, and appellate court[] and their relationship to one another. Unquestionably, it is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony. [Citation.] A trial court cannot reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions[] or because the court feels that other results are more reasonable. [*278] [Citation.] Likewise, the appellate court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way." *Maple v. Gustafson*, 151 Ill. 2d 445, 452-53, 603 N.E.2d 508, 511-12, 177 Ill. Dec. 438 (1992).

We are compelled to view all the evidence and inferences therefrom in the light most favorable to the verdict winner. *Quality Granite Construction Co. v. Hurst-Rosche Engineers, Inc.*, 261 Ill. App. 3d 21, 632 N.E.2d 1139, 198 Ill. Dec. 528 (1994). [***20] Accordingly, that is the view we adopt in considering the questions of fact raised herein.

While State Farm has not properly preserved for review a number of the issues it has raised in its brief, we must remind the parties that the doctrine of waiver is an admonition upon the parties, not a restriction upon the jurisdiction of a reviewing court. *Hux v. Raben*, 38 Ill. 2d 223, 224, 230 N.E.2d 831, 832 (1967). A reviewing court, in its discretion, may consider issues not properly preserved by the parties, in the exercise of its responsibility to reach a just result and to maintain a sound body of precedent. *Hux, 38 Ill. 2d at 225, 230*

*N.E.2d at 832*; *Wagner v. City of Chicago*, 166 Ill. 2d 144, 148, 651 N.E.2d 1120, 1122, 209 Ill. Dec. 672 (1995). In this decision, we have pointed out a number of instances where an issue raised on appeal has, in fact, been waived, and then we have proceeded to address many of those issues on the merits. We did so in the interest of thoroughly considering the issues raised in this appeal. Our consideration of the merits did not change the outcome.

*A. The Class Certification*

**[The following text [***21] is nonpublishable under *Supreme Court Rule 23*.]**

The class action lawsuit is a litigation tool that allows a representative party to pursue like claims of a large number of people in one action where individual actions may be impracticable. *Brooks v. Midas-International Corp.*, 47 Ill. App. 3d 266, 271, 361 N.E.2d 815, 818, 5 Ill. Dec. 492 (1977). The class action mechanism is predicated on the inability of the court to entertain the actual appearance of all members of the class and the impracticality of having each class member prosecute his individual claim. *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14, 428 N.E.2d 478, 482, 56 Ill. Dec. 886 (1981).

**[The preceding text is nonpublishable under *Supreme Court Rule 23*.]**

The policy objective behind the class action is to encourage individuals, who may otherwise lack incentive to file individual actions because their damages are limited, to join with others to vindicate their rights in a single action. *Hansberry v. Lee*, 311 U.S. 32, 41, 85 L. Ed. 22, 27, 61 S. Ct. 115, 118 (1940). In *Hoover v. May Department Stores Co.*, this court noted that class actions are particularly attractive [***22] in consumer-protection cases because individual suits are often not economically feasible. *Hoover v. May Department Stores Co.*, 62 Ill. App. 3d 106, 112, 378 N.E.2d 762, 768, 19 Ill. Dec. 147 (1978), rev'd on other grounds, 77 Ill. 2d 93, 395 N.E.2d 541, 32 Ill. Dec. 311 (1979). The slight loss to the individual, when aggregated in [**1252] the coffers of the wrongdoer, results in recovery that is worthy of an attorney's time and costs of litigation and that provides some measure of restitution to the injured party and deterrence to the wrongdoer. See *Hoover, 62 Ill. App. 3d at 112, 378 N.E.2d at 768*; *Gordon v. Boden*, 224 Ill. App. 3d 195, 204, 586 N.E.2d

*461, 467, 166 Ill. Dec. 503 (1991)*.

In order to maintain a class action in Illinois, the court must [*279] find that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of fact or law common to the class, (3) the representative parties will fairly and adequately protect the interests of the class, and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. *735 ILCS 5/2-801* [***23] (West 1998).

The certification of a class is within the sound discretion of the trial court and will be disturbed only upon a clear abuse of discretion or application of impermissible legal criteria. *Slimack v. Country Life Insurance Co., 227 Ill. App. 3d 287, 292, 591 N.E.2d 70, 74, 169 Ill. Dec. 190 (1992)*. The scope of appellate review is limited to an assessment of the trial court's exercise of discretion and does not extend to an independent, *de novo* evaluation of the facts alleged to justify litigation of the case as a class action. *Carrao v. Health Care Service Corp., 118 Ill. App. 3d 417, 427, 454 N.E.2d 781, 789, 73 Ill. Dec. 684 (1983)*.

On appeal, State Farm claims that the trial court abused its discretion by certifying and thereafter failing to decertify the class of millions of policyholders, because all prerequisites of the class action statute were not met.

State Farm does not actively dispute the trial court's finding that the class is so numerous that joinder of all members would be impractical. There is no question that litigating individual lawsuits would be a waste of judicial resources and that addressing common issues [***24] in one action would aid judicial administration. The fact that there may be many individual issues is relevant to the ultimate decision whether to certify the case as a class action. It is irrelevant to the numerosity and joinder element. Therefore, the first prerequisite of *section 2-801* of the Code of Civil Procedure (Code) ( *735 ILCS 5/2-801* (West 1998)) is established. See *Gordon, 224 Ill. App. 3d at 200, 586 N.E.2d at 464*.

Turning to the second prerequisite, State Farm contends that class certification was improper because common questions of fact or law did not predominate over questions affecting only individual class members. State Farm argues that in order to determine whether each class member has a right to an award of damages under the breach-of-contract claim, there must be evidence

concerning each member's repairs, including identification and evaluation of the damaged part and the specified replacement part, evidence of the vehicle's preloss condition, any affirmative defenses such as waiver or consent, and whether and the extent to which each member was damaged by the alleged breach.

As long as there are questions of fact [***25] or law common to the class and these predominate over questions affecting only individual members of the class, the provisions of subsection 2-801(2) ( *735 ILCS 5/2-801(2)* [*280] (West 1992)) have been met. *Steinberg v. Chicago Medical School, 69 Ill. 2d 320, 338, 371 N.E.2d 634, 643, 13 Ill. Dec. 699 (1977)*. A common question may be shown when the claims of the individual class members are based upon the common application of a statute or when the members are aggrieved by the same or similar conduct ( *Miner, 87 Ill. 2d* [**1253] *at 19, 428 N.E.2d at 484-85*) or a pattern of conduct ( *Slimack, 227 Ill. App. 3d at 299, 591 N.E.2d at 78; Purcell & Wardrope Chartered v. Hertz Corp., 175 Ill. App. 3d 1069, 1077, 530 N.E.2d 994, 1000, 125 Ill. Dec. 585 (1988))*. Satisfaction of the prerequisite pertaining to predominating common questions of fact or law necessitates a showing that successful adjudication of the purported class representatives' individual claims will establish a right of recovery or resolve a central issue on behalf of the class members. *Society of St. Francis v. Dulman, 98 Ill. App. 3d 16, 18, 424 N.E.2d 59, 61, 53 Ill. Dec. 646 (1981)*. [***26] The fact that the class members' recoveries may be in varying amounts which must be determined separately does not necessarily mean that there is no predominate common question. *Society of St. Francis, 98 Ill. App. 3d at 18, 424 N.E.2d at 61; McCarthy v. LaSalle National Bank & Trust Co., 230 Ill. App. 3d 628, 634, 595 N.E.2d 149, 153, 172 Ill. Dec. 86 (1992)*.

The record demonstrates that plaintiffs presented evidence to show that State Farm made the same promise (*i.e.*, to pay for parts "of like kind and quality" to restore "pre-loss condition") to its policyholders throughout the country. State Farm's own witness, Don Porter, a claims consultant, acknowledged that State Farm had a uniform nationwide obligation to policyholders. This promise was to specify parts of like kind and quality to OEM parts so as to restore preloss condition. State Farm devised a nationwide policy mandating the use of non-OEM parts in its insureds' property-damage claims if those parts were cheaper and available. It also established uniform

procedures to implement that policy, while simultaneously denying its claims estimators any discretion to substitute OEM parts for [***27] non-OEM parts. Each class member had received an estimate from State Farm specifying non-OEM replacement parts. Plaintiffs claimed that the non-OEM parts specified by State Farm were categorically inferior and failed to restore the vehicles to their "pre-loss condition". The claim was supported with expert testimony, from which it could be reasonably inferred, if accepted as true, that the lot of non-OEM parts specified by State Farm was inferior in terms of appearance, fit, quality, function, durability, and performance.

In regard to the consumer-fraud claim, the record contained evidence that State Farm engaged in an ongoing course of conduct nationwide, in which it specified inferior non-OEM parts whenever [*281] those parts were cheaper and available, that State Farm knew those parts were inferior, that State Farm did not inform its policyholders of the problems with those parts, and that State Farm affirmatively misrepresented the condition of those parts by assuring policyholders-on the damage estimates and in brochures-that it specified only "quality replacement parts" and that it guaranteed the parts at no additional cost.

In the certification order, the trial court found that there [***28] were factual and legal issues regarding the breach-of-contract and consumer-fraud claims common to all class members, which predominated over other issues. There was ample support for the court's finding that there were questions of fact regarding the breach-of-contract and deceptive claims practices common to the class. See *Miner, 87 Ill. 2d at 19, 428 N.E.2d at 484-85; Gordon, 224 Ill. App. 3d at 200-02, 586 N.E.2d at 465.* The fact that a different conclusion might be arguable does not diminish the deference we must give to decision of the trial court.

[**1254] State Farm next asserts that it was error to certify a nationwide consumer-fraud class because the claims of non-Illinois class members are governed by varying consumer-fraud laws in 48 states. We reject this argument for several reasons. First, the question of whether laws of different states apply to specific transactions alleged in a class action does not ordinarily prevent certification of the class. *Gordon, 224 Ill. App. 3d at 202, 586 N.E.2d at 466; Purcell, 175 Ill. App. 3d at 1075, 530 N.E.2d at 998.* Illinois courts have found class

actions maintainable in [***29] situations where the class includes the residents of other states. See *Landesman v. General Motors Corp., 42 Ill. App. 3d 363, 356 N.E.2d 105, 1 Ill. Dec. 105 (1976), vacated & rem'd on other grounds, 72 Ill. 2d 44, 377 N.E.2d 813, 18 Ill. Dec. 328 (1978); Hoover, 62 Ill. App. 3d at 112, 378 N.E.2d at 768.* The CFA does not limit its application to resident consumers. To deny an out-of-state plaintiff a remedy against a resident of Illinois would violate the legislative directive that the CFA be liberally construed to achieve its remedial purposes. Non-Illinois consumers have been permitted to pursue an action under the CFA against a resident defendant where the deceptive acts and practices were perpetrated in Illinois. See *Martin v. Heinold Commodities, Inc., 117 Ill. 2d 67, 83, 510 N.E.2d 840, 847, 109 Ill. Dec. 772 (1987).*

Second, the circuit court found that there were no true conflicts between the substantive laws of Illinois and those of the other states whose residents were part of the class. After reviewing those portions of the insurance statutes pertaining to the use of non-OEM parts and the consumer-protection [***30] statutes contained in this record, we have concluded that State Farm's deceptive practices were neither specifically [*282] authorized nor in compliance with the laws in any of the 48 states. In addition, the public policy espoused in the laws of our sister states does not conflict with the public policy of Illinois. Former and current representatives of state insurance commissioners testified that the laws in many of our sister states permit and in some cases encourage the use of non-OEM parts as an effort to encourage competitive price control. But each witness admitted unequivocally that his respective state would not sanction the use of *inferior* aftermarket replacement parts.

State Farm has not identified any state that authorizes an insurer to specify inferior replacement parts. State Farm has not demonstrated that its conduct is authorized by any other state's laws nor that compliance with the substantive laws of Illinois would lead it to violate a law or regulation imposed by any other state. We also reject State Farm's argument that the application of the CFA to "transactions occurring in other states" violates interstate commerce and the sovereignty of those states. The resolution [***31] of this case under Illinois law does not violate another state's sovereignty, nor is interstate commerce adversely impacted. The evidence demonstrates that the deceptive claims practices occurred in Illinois. It was in Illinois that the claims practices were

devised and procedures for implementation were prepared for dissemination in other states. There is no showing that a conflict exists between the laws of Illinois and our sister states regarding the use of inferior aftermarket parts.

Third, Illinois has significant contacts to the claims asserted by each class member. See *Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821-22, 86 L. Ed. 2d 628, 648, 105 S. Ct. 2965, 2980 (1985)*. Plaintiffs' complaint was predicated on identical promises made in standard-form insurance contracts [**1255] issued to policyholders throughout the country and upon a claims practice that was uniform nationally. This action was filed against a company chartered and headquartered in Illinois. There is substantial evidence the deceptive claims practices were designed, established, and initiated from State Farm's corporate headquarters in Bloomington, Illinois, and dictated and disseminated to State [***32] Farm employees nationwide. Illinois has a legitimate interest in applying its law to adjudicate this dispute and to insure that its residents comply with its consumer-protection laws while serving Illinois and out-of-state consumers. See *Martin, 117 Ill. 2d at 82, 510 N.E.2d at 846-47*. State Farm has not demonstrated that Illinois courts would lack jurisdiction to adjudicate or would decline to apply the substantive law of Illinois to a consumer-fraud or contract action filed by an individual out-of-state policyholder on these facts. In our view, Illinois has sufficient contacts so that the application of its consumer-fraud [*283] laws to all class claimants is neither unfair nor a violation of due process. See *Martin, 117 Ill. 2d at 82, 510 N.E.2d at 846-47; Gordon, 224 Ill. App. 3d at 202, 586 N.E.2d at 466*.

State Farm also contends that individualized proofs were necessary to determine which class members had non-OEM parts installed on their vehicles, to determine the quality of the non-OEM parts specified and the preloss condition of class members vehicles, to assert affirmative defenses, and to establish the nature and extent of the [***33] damages on each insured vehicle and that these questions predominate over questions common to class members.

In Illinois, a class action is appropriate if common questions predominate over individual questions. *Steinberg, 69 Ill. 2d at 338, 371 N.E.2d at 643*. Once this determination has been made, the hypothetical existence of individual defenses and the need for individual proofs

on subsidiary questions will not overcome the predominate common question and defeat the class. *Harrison Sheet Steel Co. v. Lyons, 15 Ill. 2d 532, 538, 155 N.E.2d 595, 598 (1959)*. We are not convinced that individual questions regarding affirmative defenses identified by State Farm amount to anything more than hypothetical questions. Moreover, a number of these individual questions have been satisfactorily addressed by the trial court or lack evidentiary support in the record.

According to the record, State Farm maintains a central database from which past and present policyholders can be identified and a claims history can be established. Thus, through its own records State Farm is capable of identifying class members who have had non-OEM parts installed on their vehicles. [***34] The fact that individual determinations as to damages will be necessitated (because some class members may be awarded both specification damages and installation damages while others may be awarded only specification damages) will not defeat the class. Common issues of State Farm's contractual and statutory violations predominate. See *Gordon, 224 Ill. App. 3d at 202-03, 586 N.E.2d at 466*.

The condition of non-OEM parts specified by State Farm was subject to class-wide proofs. According to plaintiffs' theory, these non-OEM parts were categorically inferior. Plaintiffs also presented evidence to show that State Farm did not factor a vehicle's preloss condition into the damage assessment process and into the selection and specification of replacement parts. State Farm notes that it presented evidence of the preloss condition of some of the class representatives' vehicles. However, State Farm does not point to [**1256] any evidence in the record to show that the preloss condition was a factor in the damage estimates. It has not claimed that in specifying repair [*284] parts, it sought to duplicate any preloss damage to that vehicle. State Farm does not contend, for example, that if [***35] a fender had a dent prior to an accident, its practice was to require the body shop to dent the replacement part or to specify a dented replacement fender on the estimate. To the contrary, the unequivocal and singular conclusion that could be drawn from the evidence is that when a property damage claim was made, State Farm did not concern itself with trying to duplicate preloss injury or damage. Preloss condition played no part in specification of replacement parts on class members vehicles. Given this policy of State Farm's indifference to preloss condition

321 Ill. App. 3d 269, *284; 746 N.E.2d 1242, **1256;
2001 Ill. App. LEXIS 249, ***35; 254 Ill. Dec. 194

when it specified replacement parts, requiring plaintiffs to present proof of preloss condition would have been pointless. State Farm did not consider this in its claim practice. The evidence would have been irrelevant. Only relevant evidence is admissible. "Relevancy is established where a fact offered tends to prove a fact in controversy or renders a matter in issue more or less probable." *Marut v. Costello, 34 Ill. 2d 125, 128, 214 N.E.2d 768, 769 (1965).*

State Farm has not identified in this record any offer of proof to show that it could establish individual affirmative defenses. We note that State Farm argued [***36] that statutes in a few states required the policyholder to consent to the use of non-OEM parts. State Farm failed to produce evidence that any policyholder from any of those states had in fact consented to the use of inferior non-OEM parts. State Farm points out that one of its claims agents testified that one policyholder requested less expensive non-OEM parts. It failed, however, to present evidence showing that the policyholder had in fact consented with knowledge that the parts were inferior in quality and condition.

Where a complaint is made that the trial court's ruling precluded the presentation of evidence to support a claim or defense, the nature and context of the evidence must be disclosed. This disclosure through an offer of proof allows the trial and appellate courts to evaluate the proposed evidence and consider its relevance to the matters at issue. *Holder v. Caselton, 275 Ill. App. 3d 950, 657 N.E.2d 680, 212 Ill. Dec. 479 (1995).* Unless the offer of proof is excused because it is apparent from the context, the failure to make an offer of proof precludes raising the issue on appeal. *Tarshes v. Lake Shore Harley Davidson, 171 Ill. App. 3d 143, 524 N.E.2d 1136, 121 Ill. Dec. 88 (1988).* [***37] Merely alluding to what might be divulged does not preserve error for appeal. *People v. Brown, 104 Ill. App. 3d 1110, 433 N.E.2d 1081, 60 Ill. Dec. 843 (1982).* The issue is waived. Nevertheless, to the extent possible based on the record, we have considered the issue.

On this record, there is not sufficient evidence to support the affirmative defenses alleged. The need for individual proofs on subsidiary [*285] issues did not predominate over questions common to the class. See *Harrison Sheet Steel Co., 15 Ill. 2d at 538, 155 N.E.2d at 598.* In addition, State Farm has not shown that its opportunity to defend any individual issues was impaired

or that it suffered great inconvenience by litigating those issues in a single action instead of in separate actions. *Harrison Sheet Steel Co., 15 Ill. 2d at 538, 155 N.E.2d at 598.* Stated simply, the proof at trial did not support State Farm's claim. The second prerequisite has been met.

Turning to the third prerequisite, State Farm contends the class representatives do not fairly and adequately protect [**1257] the interests of the class. State Farm argues that because it is a mutual fund, there is a conflict [***38] between class members, in that current policyholders have an interest in keeping damage awards low and in continuing the use of non-OEM parts in order to keep premium costs down, while former policyholders have no such interest.

The purpose of the adequate-representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Gordon, 224 Ill. App. 3d at 203, 586 N.E.2d at 466.* The record does not support State Farm's claim that the interests of some class members are antithetical to the interests of others. State Farm's actuary testified that any damages awarded would be paid from the company's reserves and would not affect premiums and that the amount awarded would not affect the company's financial viability or its ability to pay dividends or future claims. Further, there is no evidence that any of the policyholders, past, present, or future, would approve of or encourage State Farm to continue to specify inferior crash parts on repairs of their own cars. The party representatives and the absent class members share a common interest in establishing the essential [***39] elements sought to be litigated on behalf of the class. On this record, the trial court properly concluded that there was no conflict among class members. See *Slimack, 227 Ill. App. 3d at 299-300, 591 N.E.2d at 78.*

There is no doubt that the attorneys representing the plaintiff class are qualified and experienced. From our review of the record, class counsel appeared to be prepared and well-versed in the facts and the applicable law. Accordingly, we cannot say that the trial court abused its discretion in finding that the class representatives would adequately protect the interests of the class.

As to the final requirement, State Farm alleges that the trial court erred by focusing on the statutory requirement of efficiency and ignoring the requirement

321 Ill. App. 3d 269, *285; 746 N.E.2d 1242, **1257;
2001 Ill. App. LEXIS 249, ***39; 254 Ill. Dec. 194

that a class action must be a fair way to adjudicate the controversy. We disagree with the claim that the trial [*286] court ignored this requirement. The trial court carefully considered whether each party would be able to fairly present its case and whether a class action best served the economies of time, effort, and expense, while promoting uniformity of decision in contract interpretation. It concluded that these requirements [***40] could be and were met. See *Steinberg, 69 Ill. 2d at 339, 371 N.E.2d at 644; Gordon, 224 Ill. App. 3d at 203, 586 N.E.2d at 466.* We find no abuse of discretion.

Based upon even a cursory review of this record, there is little doubt that any individual cases would be defended as vigorously as the case at bar. The costs of pursing the case on an individual basis would greatly exceed any recovery. See *Gordon, 224 Ill. App. 3d at 203-04, 586 N.E.2d at 467.* Accordingly, we find that the prerequisites of the class action statute have been met and that the circuit court did not abuse its discretion in certifying and in refusing to decertify the class.

B. The Notice

**[The following text is nonpublishable under *Supreme Court Rule 23.*]**

State Farm contends that the trial court failed to provide proper notice to the class. State Farm argues that the court's refusal to order plaintiffs to mail individual notices to the 1.8 million class members whose names and addresses could be identified requires the reversal of the judgment.

*Section 2-803* of the Code gives the trial court discretion to order such notice as it deems necessary to [***41] protect the interests of the class and the parties. *735 ILCS 5/2-803* (West 1998). The question of what notice must be given to absent class members to satisfy due process depends upon the circumstances of the individual action. *Miner, 87 Ill. 2d at 15, 428 N.E.2d at 482.* Neither due process nor the Illinois class action statute requires individual notice to all members of the class in all circumstances. *Carrao, 118 Ill. App. 3d at 429-30, 454 N.E.2d at 791.*

In this case, the trial court reviewed proposals and considered the expert-opinion evidence offered by each party. The court determined that plaintiffs' proposed notice plan provided the best practicable notice. The court rejected State Farm's proposal calling for individual

notices because State Farm did not show that it could generate a reasonably accurate list of the names and addresses of potential class members within a reasonable time period. State Farm represented that it could provide either a markedly underinclusive list of policyholders who qualified as class members or an overinclusive list of policyholders who may fit within the class definition. Given [***42] this fact, along with the absence of any evidence of antagonism between the interests of the class members and the representative parties, we cannot say that the trial court abused its discretion in opting for the publication notice suggested by plaintiffs. See *Carrao, 118 Ill. App. 3d at 429-30, 454 N.E.2d at 791.*

**[The preceding text is nonpublishable under *Supreme Court Rule 23.*]**

C. Damages

*1. Direct and Consequential Damages*

In its next point, State Farm claims that the trial court erred in accepting [**1258] improper damages theories, in accepting or rejecting jury instructions regarding plaintiffs' burden of proof, and in admitting baseless opinion testimony. State Farm alleges that the trial court permitted the plaintiffs to take "short cuts to paper over their inability to present any real class-wide proof" and claims that it committed these errors because of its "desire to preserve the case as a class action". We will address each point in turn. Before addressing these issues, we feel obligated to caution counsel that an appeal is not a license to vilify the trial court. Several comments in this portion of State Farm's brief approach criticism that is [***43] inappropriate. Counsel should be mindful of the obligation to temper advocacy with civility. See *Ambrosius v. Katz, 2 Ill. 2d 173, 179-80, 117 N.E.2d 69, 73 (1954).* We believe that these brief remarks are sufficient. We will now move on.

State Farm contends that the specification-damages model is legally flawed because OEM replacement parts were installed in the vehicles of many State Farm policyholders despite the fact that the damage estimates specified non-OEM parts. State Farm contends that these class members have incurred no actual damages because the body shop installed OEM parts at no additional charge. State Farm [*287] also alleges that class members who sold their vehicles for fair market value subsequent to the installation of non-OEM parts suffered no actual damages.

321 Ill. App. 3d 269, *287; 746 N.E.2d 1242, **1258;
2001 Ill. App. LEXIS 249, ***43; 254 Ill. Dec. 194

Under Illinois law, a contracting party has the right to receive the value of the benefit of his bargain, *i.e.*, the amount that will compensate him for the loss which a fulfillment of the contract would have prevented or the loss which the breach of contract has entailed. See *Lanterman v. Edwards, 294 Ill. App. 3d 350, 354, 689 N.E.2d 1221, 1224, 228 Ill. Dec. 800 (1998)*; [***44] *Illiana Machine & Manufacturing Corp. v. Duro-Chrome Corp., 152 Ill. App. 3d 764, 768, 504 N.E.2d 974, 976-77, 105 Ill. Dec. 689 (1987)*. In cases where the breach involved defective performance in the furnishing of goods or services, the measure of damages is the cost of remedying the deficiencies. *Kalal v. Goldblatt Brothers, Inc., 53 Ill. App. 3d 109, 112, 368 N.E.2d 671, 674, 11 Ill. Dec. 120 (1977)*.

In this case, plaintiffs theorized that as a result of the contract breach State Farm policyholders had suffered direct damages ("specification damages"), consequential damages ("installation damages"), or both. Specification damages were intended to compensate those policyholders who received estimates specifying non-OEM replacement parts. Specification damages were calculated as the cost difference between the OEM part and the non-OEM part.

There is no question that a class member is entitled to specification damages if an inferior non-OEM part was specified and a class member paid out-of-pocket for an OEM part. A class member is also entitled to specification damages if an inferior non-OEM part was specified and the body shop provided an OEM part [***45] at no additional cost to the class member. Why? Because the class member has not received the benefit of his bargain. The benefits received from a source wholly independent of and collateral to the breaching party do not diminish damages otherwise recoverable. See *American Fidelity Fire Insurance Co. v. General Ry. Signal Co., 184 Ill. App. 3d 601, 617, 540 N.E.2d 557, 568, 132 Ill. Dec. 817 (1989)*. The collateral-source rule has been applied in contract law in Illinois in cases where there has been an element of fraud, tort, or wilfulness in breaching the contract. See *American Fidelity Fire Insurance Co., 184 Ill. App. 3d at 617, 540* [**1259] *N.E.2d at 568*; *GNP Commodities, Inc. v. Walsh Heffernan Co., 95 Ill. App. 3d 966, 977, 420 N.E.2d 659, 668, 51 Ill. Dec. 245 (1981)*.

In this case there is evidence the breaching party wilfully engaged in deceptive practices that deprived the policyholder of the benefit of his bargain. State Farm cannot be relieved of its duty to pay damages for breach of contract based upon the gratuitous action of a third party that may have mitigated the damages. Allowing State Farm to avoid paying damages because [***46] an individual body shop installed a [*288] quality part rather than the inferior non-OEM part State Farm specified would contravene the collateral-source rule. It must be remembered that plaintiffs claimed that all non-OEM parts were categorically inferior. State Farm denied this claim. Plaintiffs won. We are compelled to view the evidence in the light most favorable to the verdict winner. *Quality Granite Construction Co., 261 Ill. App. 3d 21, 632 N.E.2d 1139, 198 Ill. Dec. 528*. Therefore, this group is entitled to specification damages.

The next question is whether class members who received non-OEM parts but subsequently sold their vehicles for fair market value are entitled to specification damages. Again the answer is yes. According to plaintiffs' proofs, the damages were not of an ongoing nature; thus, the time to evaluate damages was at the time of the breach. See generally *Foster Enterprises, Inc. v. Germania Federal Savings & Loan Ass'n, 97 Ill. App. 3d 22, 31-32, 421 N.E.2d 1375, 1382, 52 Ill. Dec. 303 (1981)*. State Farm's promise to pay for parts "of like kind and quality" to restore the vehicle to its "pre-loss condition" was breached when it [***47] specified and paid for inferior non-OEM parts. This point is reinforced by the repeated refrain of State Farm's counsel that State Farm "does not fix cars", it merely specifies replacement parts and pays for car repairs. The fact that a class member sold his vehicle at or below the fair market value months or years later does not negate the fact that he was damaged.

**[The following text is nonpublishable under Supreme Court Rule 23.]**

Each policyholder paid a premium for an insurance policy. In each policy, State Farm made certain promises to each insured. Did the policyholder get his or her money's worth? The jury decided that the answer was no. The verdict is an unequivocal statement that the parts were not of like kind and quality and did not restore preloss condition. Installation of these categorically inferior parts deprived each insured of the benefit of the bargain.

**[The preceding text is nonpublishable under Supreme Court Rule 23.]**

321 Ill. App. 3d 269, *288; 746 N.E.2d 1242, **1259;
2001 Ill. App. LEXIS 249, ***47; 254 Ill. Dec. 194

State Farm next contends that the award of installation damages was wholly speculative. State Farm argues that a class member is eligible to receive installation damages only if a non-OEM part was installed in his vehicle and he [***48] still has the vehicle. State Farm argues that in the absence of individual proofs there is no competent evidence to show which class members are eligible for installation damages. It claims that the damage calculations prepared and testified to by plaintiffs' expert were baseless in fact and speculative.

The amount of damages is ordinarily left to the jury, and its judgment should not be upset unless it appears motivated by passion or prejudice. *Cannell v. State Farm Fire & Casualty Co., 25 Ill. App. 3d 907, 914, 323 N.E.2d 418, 423 (1975).* Damages sought to be recovered must be shown with reasonable certainty as to their nature and extent, but the amount awarded does not have to be proved with mathematical certainty. *E.J. McKernan Co. v. Gregory, 252 Ill. App. 3d 514, 541, 623 N.E.2d 981, 1001, 191 Ill. Dec. 391 (1993).* The law does not require better evidence than can be reasonably obtained ( *Cannell, 25 Ill. App. 3d at 914, 323 N.E.2d at 423*), but the party seeking to recover bears the burden of establishing a reasonable basis for the computation of damages. *E.J. McKernan Co., 252 Ill. [**1260] App. 3d at 541, 623 N.E.2d at 1001.* [***49]

[*289] Class-wide consequential damages, referenced as installation damages, were intended to compensate class members for the labor costs to remove a non-OEM part and to replace it with an OEM part and for a two-day rental car fee for loss of use of the vehicle during the repair process. Plaintiffs' expert, Dr. Mathur, testified that he used hours-per-job and the labor rates reflected in State Farm's own records and principles of economics to calculate the installation damages that each eligible class member sustained. In his opinion, each eligible class member sustained approximately $ 276 in damages as a result of labor costs and loss of use. Dr. Mathur also testified that he estimated the number of class members eligible for installation damages based, in part, on State Farm's repair records and reinspection studies that it had done. Dr. Mathur estimated that between 50% and 92% of the damaged vehicles were repaired with non-OEM parts. He calculated a damages range based upon his estimate of the number of class members who actually received non-OEM parts. Dr. Mathur testified to aggregate installation damages of $

1.2 billion based on 92% eligibility and $ 658 million based upon a 50% [***50] eligibility. During cross-examination, Dr. Mathur admitted that his high estimate could be off by as much as a billion dollars. Apparently, State Farm's cross-examination and argument were not lost on the jury. It awarded $ 212 million in installation damages, approximately one billion less than the expert's estimate.

In this issue, State Farm is questioning the validity of the concept of aggregate damages in class action litigation. State Farm suggests that extrapolation from a representative sample of class members leads to a speculative reflection of total damages. However, sampling techniques have been found to be an appropriate method for class-wide proof of damages. See 2 Newberg, Class Actions 350-51 (1985) (citing cases). In appropriate circumstances, it is considered feasible and reasonable to prove aggregate monetary relief for the class based upon (1) an examination of defendant's records, (2) the use of a common formula or measure of damages multiplied by the number of transactions, units, or class members involved, or (3) a reasonable approximation with proper adherence to recognized evidentiary standards. See 2 Newberg, Class Actions 348 (1985); *Long v. Trans World Airlines, Inc., 761 F. Supp. 1320, 1324 (N.D. Ill. 1991)*, [***51] *aff'd on other grounds, 913 F.2d 1262 (7th Cir. 1990).* When determining which method to use, courts must be careful to balance the opposing interests of the parties, and a defendant must be given fair opportunity to contest the validity of individual claims. See 2 Newberg, Class Actions 348 (1985).

Dr. Mathur's estimate of the number of class members eligible [*290] for installation damages was extrapolated from data found in State Farm's own records. Class-wide awards based upon estimates of the number of affected class members have been approved in the past, and mathematical precision has not been required. See, *e.g., Thomas v. City of Evanston, 610 F. Supp. 422, 435-36 (N.D. Ill. 1985).* In this case, the trial court has reserved jurisdiction to administer and distribute damages. Class members entitled to installation damages can be identified through State Farm's data, class response forms, and other methods. Damages can then be distributed accordingly. See *Gordon, 224 Ill. App. 3d at 204-05,* [**1261] *166 Ill. Dec. 503, 586 N.E.2d at 467-68.* We trust that the trial court, in consultation with the parties, can devise an acceptable method to manage

and distribute [***52] the class-wide damages. Given the amount of the jury's award and the fact that eligible class members can be identified, we see little danger that ineligible class members will receive a share of this award.

Dr. Mathur's calculations of labor costs and rental fees were based upon economic principles and data accepted in the field. Though his calculations contain some uncertainty, we do not think that his opinions constitute sheer speculation. *E.J. McKernan Co., 252 Ill. App. 3d at 540-41, 623 N.E.2d at 1001*; *Oakleaf of Illinois v. Oakleaf & Associates, Inc., 173 Ill. App. 3d 637, 649, 527 N.E.2d 926, 934, 123 Ill. Dec. 288 (1988).* The jury considered the conflicting expert opinions and the evidence and awarded a sum well below plaintiffs' expert's minimum figure. There is no evidence that the award was motivated by passion or prejudice. We do not find the award to be against the manifest weight of the evidence.

**[The following text is nonpublishable under *Supreme Court Rule 23*.]**

*2. Instructional Errors*

State Farm next contends that the burden-of-proof instruction and verdict forms were misleading or confusing. It claims that the verdict [***53] forms were improper because they permitted the jury to render a verdict for the class as a whole, rather than to render a separate verdict as to each class member. State Farm also claims that the burden-of-proof instruction was improper because it did not inform the jury that in order for the jury to find for plaintiff on the contract claim, the plaintiffs had to prove that each individual non-OEM part specified was of inferior quality.

The parties have the right to have the jury instructed on the issues presented, the principles of law to be applied, and the necessary facts to be proved to support its verdict. *Magna Trust Co. v. Illinois Central R. Co., 313 Ill. App. 3d 375, 388, 728 N.E.2d 797, 808, 245 Ill. Dec. 715 (2000).* Whether to give or deny an instruction is within the trial court's sound discretion. *Magna Trust Co., 313 Ill. App. 3d at 388, 728 N.E.2d at 808.* The standard for determining an abuse-of-discretion issue is whether, taken as a whole, the jury instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law. *Magna Trust Co., 313 Ill. App. 3d at 388, 728 N.E.2d at 808.* [***54]

The burden-of-proof instruction that was given is taken directly from the Illinois pattern jury instructions. Illinois Pattern Jury Instructions, Civil, No. 700.19 (1995 ed.). The rejected burden-of-proof instruction tendered by State Farm required the jury to consider affirmative defense theories based upon consent, waiver, and satisfaction even though there was no evidence to support those theories. It is error to give an instruction not based on the evidence. *Bielicke v. Terminal R.R. Ass'n, 291 Ill. App. 3d 690, 693, 684 N.E.2d 160, 162, 225 Ill. Dec. 685 (1997).* Not only was there no evidence to support the instruction, but there was not even a suggestion through an offer of proof of what evidence might be available. The issue is waived. See *Tarshes v. Lake Shore Harley Davidson, 171 Ill. App. 3d 143, 524 N.E.2d 1136, 121 Ill. Dec. 88 (1988).* More significant is that the fact that the defenses identified are not true affirmative defenses, given the posture taken by State Farm in this case. While there is no question that in a proper case waiver, consent, and satisfaction may constitute affirmative defenses, such was not the case here.

Plaintiffs [***55] claimed that the specified non-OEM parts were categorically inferior. State Farm denied this at trial and continues to deny this aspect of the case. It is appropriate to consider one of our prior decisions dealing with this type of situation.

"Additionally, we are of the opinion that defendants' 'affirmative defenses' were not true affirmative defenses. A defense is of an affirmative nature if, by the raising of it, a defendant gives color to his opponent's claim and then asserts new matter by which the apparent right is defeated. ( *Horst v. Morand Brothers Beverage Co. (1968), 96 Ill. App. 2d 68, 80, 237 N.E.2d 732, 738.*) The instant 'affirmative defenses' were merely specific reasons to support defendants' denials of liability. These 'affirmative defenses' neither admitted any part of plaintiff's case nor introduced any new matter which would have defeated plaintiff's contentions. *Zieger v. Manhattan Coffee Co., 112 Ill. App. 3d 518, 533, 445 N.E.2d 844, 855, 68 Ill. Dec. 200 (1983).*

State Farm is not entitled to claim that the parts are not inferior and at the same time claim that the policyholder waived any objection to the use of inferior parts. [***56] Had State Farm acknowledged either unequivocally or, in the alternative, conditionally that non-OEM parts were categorically inferior and then presented evidence that a State Farm policyholder with

321 Ill. App. 3d 269, *290; 746 N.E.2d 1242, **1261;
2001 Ill. App. LEXIS 249, ***56; 254 Ill. Dec. 194

knowledge of the inferior condition had agreed to the use of the inferior non-OEM parts, then there would have been record support factually and legally for the instruction. This was not the case and therefore State Farm's burden-of-proof instruction was properly refused.

To preserve its objection to plaintiffs' burden-of-proof instruction, State Farm was required to clearly and specifically state the grounds for its objection and to tender a *proper* alternative instruction. See *Deal v. Byford*, 127 Ill. 2d 192, 202, 537 N.E.2d 267, 271, 130 Ill. Dec. 200 (1989). State Farm has waived this issue because it did not tender a correct burden-of-proof instruction.

Thus, this claim of instructional error was waived on multiple grounds. After giving due consideration to the facts and the law, the trial court gave the pattern instructions as required by *Supreme Court Rule 239(a)* (177 Ill. 2d R. 239(a)). Plaintiffs' theory of the breach was based upon the categorical inferiority [***57] of the non-OEM crash parts that State Farm specified on the repair estimates. Plaintiffs presented evidence that the non-OEM parts specified did not comport with the design and materials specifications used in manufacturing original equipment parts and the preassembly treatment of materials used in non-OEM parts was deficient, leading to problems of fit, durability, quality, and appearance in aftermarket crash parts. There was sufficient evidence to support plaintiffs' theory of categorical inferiority of non-OEM parts. Accordingly the trial court's decision to give the pattern burden-of-proof instruction was not an abuse of discretion.

State Farm argues that the jury should have been required to render a separate verdict as to each class representative's claim. The form of the verdicts is a matter within the sound discretion of the trial court, and its determination thereon will not be disturbed in the absence of an abuse of that discretion. *Kennedy v. Commercial Carriers, Inc.*, 294 Ill. App. 3d 34, 39, 689 N.E.2d 293, 296, 228 Ill. Dec. 421 (1997). In *Kennedy*, our colleagues in the first district determined that separate verdict forms were not required in a [***58] class action based upon a claim that the defendant had breached its equipment leases with each plaintiff and class member. *Kennedy*, 294 Ill. App. 3d at 40, 689 N.E.2d at 297. In that case, the plaintiffs claimed a common breach and submitted damages on a class-wide basis. Separate

verdict forms were not required because there were not separate causes of action based upon separate transactions, involving subclasses. *Kennedy*, 294 Ill. App. 3d at 40, 689 N.E.2d at 297.

The record shows that this case was tried on behalf of a single class, without subclasses, on a single theory of liability in a breach-of-contract action. The case was tried on an issue common to all class members. The common issue was whether State Farm breached its contract by specifying inferior non-OEM parts. This was not a case where the plaintiffs' representatives sought to recover damages based upon distinct demands in the same complaint. Considering the record before us and keeping in mind the objective of the class action lawsuit, we do not believe that separate verdicts as to each individual class representative were appropriate. The trial court did not abuse its discretion in [***59] giving class-wide verdict forms.

State Farm also contends that the trial court erred in failing to give a series of non-IPI instructions. The contested instructions are not Illinois pattern instructions. It is improper to give a non-IPI instruction when a pattern instruction on the same subject is available. Where a unique factual situation or point of law is presented, a nonpattern instruction may be given if it is accurate and will not have an improper effect on the jury. See *Magna Trust Co.*, 313 Ill. App. 3d at 388, 728 N.E.2d at 808. A trial court may also give supplementary instructions to the jury to prevent confusion or to clarify an issue. *Lebrecht v. Tuli*, 130 Ill. App. 3d 457, 489, 473 N.E.2d 1322, 1344, 85 Ill. Dec. 517 (1985).

Proposed Instruction No. 30 states that the jury must determine the preloss condition of the vehicle in order to determine whether a non-OEM part restored that vehicle to its preloss condition. An instruction may be given when evidence exists to support the theory of the instruction, but it is error to given an instruction not based on the evidence. *Bielicke*, 291 Ill. App. 3d at 693, 684 N.E.2d at 162. [***60] In this case, plaintiffs' evidence showed that State Farm did not use the preloss condition as a factor in adjusting a claim and in determining what replacement part to specify. State Farm presented no evidence to suggest that preloss condition was a factor in the specification of replacement parts. As stated earlier, because State Farm did not consider preloss condition in specifying the replacement part, the entire argument concerns an irrelevant matter. See *Marut v.*

321 Ill. App. 3d 269, *290; 746 N.E.2d 1242, **1261;
2001 Ill. App. LEXIS 249, ***60; 254 Ill. Dec. 194

*Costello, 34 Ill. 2d 125, 128, 214 N.E.2d 768, 769 (1965).* Since there was no evidence to support the theory of the instruction, the trial court properly refused it.

State Farm's proposed Instruction No. 26 states that the verdict must be for State Farm and against all class members if plaintiffs failed to prove that State Farm breached its contracts with each and every member of the class. Instruction Nos. 28, 28A, and 28B state that the verdict must be for State Farm if plaintiffs failed to prove that each non-OEM part was inferior to the part it replaced. Instruction Nos. 26, 28, 28A, and 28B are not neutral statements of the law. On the contrary, they are argumentative. It is not error for the court [***61] to refuse an instruction that is not a neutral statement of the law. *Gordon v. Chicago Transit Authority, 128 Ill. App. 3d 493, 501, 470 N.E.2d 1163, 1169, 83 Ill. Dec. 743 (1984).* "Illinois courts follow a rule which requires jury instructions to be 'simple, brief, impartial, and free from argument' [Citation.] Argumentative instructions depart from the approved, fair[,] and impartial statement of the law in understandable language. Rather, argumentative instructions are adversarial statements highlighting favorable and unfavorable evidence with partisan overtones." *Lay v. Knapp, 93 Ill. App. 3d 855, 858-59, 417 N.E.2d 1099, 1101-02, 49 Ill. Dec. 272 (1981).*

If given, these instructions would have been equivalent to directing a verdict for State Farm. Such instructions are improper. *Zieger v. Manhattan Coffee Co., 112 Ill. App. 3d 518, 533, 445 N.E.2d 844, 855, 68 Ill. Dec. 200 (1983).* The subject matter of these instructions was fully covered by other instructions. It is improper to give an instruction if the proposition contained therein is fully covered in other instructions. *National Surety Corp. v. Fast Motor Service, Inc., 213 Ill. App. 3d 500, 509, 572 N.E.2d 1083, 1089, 157 Ill. Dec. 619 (1991).* [***62]

These instructions were improper in both form and content. In our view, the instructions given, when taken as a whole, adequately advised the jury of the law on the issues that were to be decided and were not misleading. The trial court correctly instructed the jury on the applicable law and the issues raised by the evidence. It was not an abuse of discretion to refuse State Farm's non-IPI Instruction Nos. 26, 28, 28A, and 28B.

State Farm also contends that the trial court erred in refusing to instruct the jury that the mere fact that a non-OEM part was specified in a repair estimate was not

sufficient to establish State Farm's liability (State Farm's Instruction Nos. 31 and 31A), that State Farm cannot be held liable if a class member sold his car for fair market value after it was repaired with non-OEM parts (State Farm's Instruction No. 35), and that State Farm cannot be held liable if a class member had non-OEM parts specified but received OEM parts at no additional cost (State Farm's Instruction No. 33A). In our view, these are not accurate statements of the law, they are argumentative, and the trial court properly refused them. (See discussion in part IV(C)(1) of this opinion [***63] and our discussion above concerning alleged instructional error.)

**[The preceding text is nonpublishable under Supreme Court Rule 23.]**

### 3. Disgorgement Damages

The trial court awarded and imposed a constructive trust on $ 130 million in disgorgement damages on the consumer-fraud claims. State Farm claims that the court was not authorized to impose a constructive trust, an equitable remedy, because plaintiffs had an adequate remedy at law. State Farm also argues that the disgorgement damages were duplicative of the specification damages awarded by the jury and must be vacated.

**[The following text is nonpublishable under Supreme Court Rule 23.]**

Generally, the imposition of a constructive trust is erroneous when a plaintiff's legal remedy is adequate. *Hill v. Names & Addresses, Inc., 212 Ill. App. 3d 1065, 1082, 571 N.E.2d 1085, 1095, 157 Ill. Dec. 66 (1991).* However, courts have properly imposed constructive trusts or other equitable relief along with an award of damages where the court has determined the damage award to be inadequate and when such awards would have enabled the breaching party to profit from his conduct. *Hill, 212 Ill. App. 3d at 1083, 571 N.E.2d at 1096.* [***64] The right to recover is triggered by the gain to the agent rather than the loss to the principal. *Hill, 212 Ill. App. 3d at 1083, 571 N.E.2d at 1096.*

**[The preceding text is nonpublishable under Supreme Court Rule 23.]**

The trial court found that State Farm realized direct savings of $ 130 million from the specification of inferior

crash parts, and the court ordered that sum to be placed in the constructive trust to disgorge State Farm's unjust profits. According to the evidence, the direct-savings calculation was based upon the difference between the [*291] costs of OEM parts and non-OEM parts. Thus, the disgorgement damages award is duplicative of the specification damages award. The unjust gain was entirely disgorged through an award in the action at law. Plaintiffs are entitled to be fully compensated, but there can only be one recovery. To allow disgorgement damages would amount to double recovery. See *Stevens v. B & L Package Liquors, Inc., 66 Ill. App. 3d 120, 383 N.E.2d 676, 22 Ill. Dec. 868 (1978); Abbinante v. O'Connell, 277 Ill. App. 3d 1046, 662 N.E.2d 126, 214 Ill. Dec. 772 (1996).* We find that the trial court erred in [***65] awarding an additional sum of $ 130 million, and we reverse that portion of the judgment.

**[The following text is nonpublishable under *Supreme Court Rule 23.*]**

*4. Punitive Damages*

State Farm next claims that it is unconstitutional to impose punitive damages when the activities complained of occurred in other states, that Illinois and federal due process preclude imposing punitive damages on a defendant who lacked fair notice that its conduct was punishable, that there is no evidence in the record to prove that State Farm had the evil motive necessary to justify the imposition of punitive damages under Illinois law, and that the award is grossly excessive.

Many of these points have been addressed elsewhere herein and can be disposed of summarily. There is substantial evidence that the deceptive practices were devised, implemented, and carried out from State Farm's home office in Bloomington, Illinois. We do not find any due process violations. State Farm had notice that it might be subject to punitive damages under the CFA because State Farm is a resident of Illinois and has done business in Illinois for many years, the CFA was in effect for several years prior to the [***66] deceptive activities complained of, there were published decisions demonstrating that the CFA was available to nonresident consumers, and the evidence in this record clearly demonstrated that none of the states in which class members resided permit insurers to specify inferior non-OEM replacement parts and to conceal the inferior quality of those parts. State Farm is presumed to know the law and will not be heard to plead ignorance

concerning those matters of law that are commonly known. See *Halloran v. Dickerson, 287 Ill. App. 3d 857, 679 N.E.2d 774, 223 Ill. Dec. 323 (1997).* The statutory and decisional law of Illinois was no secret.

Punitive damages are intended to punish the wrongdoer and to deter that party, and others, from participating in similar future acts. *Deal, 127 Ill. 2d at 203, 537 N.E.2d at 272.* The question of whether the facts of a particular case justify the imposition of punitive damages is a question of law. *Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359, 23 Ill. Dec. 559 (1978).*

In its judgment the trial court found that State Farm's wilful violations of the consumer-fraud act justified [***67] an award of punitive damages. The trial court found that State Farm knew that it was specifying inferior non-OEM crash parts while representing that those parts were "quality replacement parts" and were as good as or better than OEM parts. The court also found that State Farm offered an illusory guarantee. The court noted that as a mutual insurance company, State Farm occupied a position of trust with its policyholders and that it violated that trust. Punitive damages are permissible where a duty based upon a relationship of trust is wilfully violated. *Martin v. Heinold Commodities, Inc., 163 Ill. 2d 33, 81, 643 N.E.2d 734, 757, 205 Ill. Dec. 443 (1994).* In our view, the facts of this case justify an award of punitive damages.

A reviewing court will not disturb an award of punitive damages on grounds that the amount is excessive unless it is apparent that the award is the result of passion, partiality, or corruption. *Deal, 127 Ill. 2d at 204, 537 N.E.2d at 272.* In constructing the punitive damages award, the trial court properly and carefully assessed the specific conduct involved, the nature and enormity of the wrong, the financial status of the [***68] defendant, and the potential liability of the defendant. See *Deal, 127 Ill. 2d at 204, 537 N.E.2d at 272.* The court considered the testimony of State Farm's actuary, who provided evidence of the company's financial resources and its foreseeable obligations to current policyholders in the event of any conceivable disasters and explained that any award of damages would be paid from company reserves and would not affect its financial viability and ability to pay future claims. The award is less than two times the compensatory damages. We do not find that the award was so high as to indicate passion, partiality, or

321 Ill. App. 3d 269, *291; 746 N.E.2d 1242, **1261;
2001 Ill. App. LEXIS 249, ***68; 254 Ill. Dec. 194

corruption. Therefore, the award of punitive damages is affirmed.

**[The preceding text is nonpublishable under Supreme Court Rule 23.]**

D. The Illinois Consumer Fraud Act Judgment

State Farm attacks the consumer-fraud judgment and claims that it should be reversed on the merits. State Farm contends that the trial court erroneously applied a preponderance-of-the-evidence standard when the correct standard is clear and convincing evidence.

[**1262] Both parties correctly note that no standard of proof is set forth in the CFA and that the Illinois Supreme [***69] Court has not yet considered this issue. However, our colleagues in the first and third districts have reviewed this issue. *Cuculich v. Thomson Consumer Electronics, Inc.*, 317 Ill. App. 3d 709, 717-18, 739 N.E.2d 934, 939-40, 251 Ill. Dec. 1 (2000); *Malooley v. Alice*, 251 Ill. App. 3d 51, 56, 621 N.E.2d 265, 268-69, 190 Ill. Dec. 396 (1993). They have concluded that the appropriate standard of proof is a preponderance-of-the-evidence standard. The legislature has directed that the CFA be construed liberally to effect its remedial purposes. *Cuculich*, 317 Ill. App. 3d at 717-18, 739 N.E.2d at 939-40; *Malooley*, 251 Ill. App. 3d at 56, 621 N.E.2d at 268-69. The CFA was intended to afford a broader range of protection than the common law (*Martin*, 163 Ill. 2d at 68, 643 N.E.2d at 751) and to curb fraudulent abuses, while eradicating deceptive and unfair business practices. *Malooley*, 251 Ill. App. 3d at 56, 621 N.E.2d at 268. The elements necessary to establish fraud under the CFA are less stringent than elements necessary to establish common law fraud. *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 1001-02, 574 N.E.2d 760, 764, 158 Ill. Dec. 647 (1991). [***70] The liberal construction accorded the CFA, coupled with the absence of a statutorily imposed clear-and-convincing-evidence standard, persuades us that the preponderance-of-the-evidence standard is appropriate. We, therefore, join our colleagues in so holding.

**[The following text is nonpublishable under Supreme Court Rule 23.]**

State Farm claims that the CFA judgment should be reversed because the evidence was not sufficient to establish that the representations and omissions identified by the circuit court proximately caused injury to any of the class members. It also claims that the trial court's finding of liability under the CFA was against the manifest weight of the evidence because the claim was nothing more than a breach of contract.

An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. *Perona v. Volkswagen of America, Inc.*, 292 Ill. App. 3d 59, 67, 684 N.E.2d 859, 865, 225 Ill. Dec. 868 (1997). Plaintiffs presented evidence that the non-OEM parts which State Farm specified were categorically inferior, that State Farm specified non-OEM parts that it knew to be inferior, that State Farm did not [***71] inform its policyholders that the non-OEM parts it specified were inferior, and that State Farm knowingly represented on its estimates, in its "Quality Replacement Part" brochures, and through its estimators that these non-OEM parts were of equal quality or better than OEM parts. There is evidence that State Farm's material misrepresentations led numerous class members to blindly accept the non-OEM parts specified (*i.e.*, without knowledge of the inferior condition of those parts). See *Perona*, 292 Ill. App. 3d at 68-69, 684 N.E.2d at 866-67; *Johnston v. Anchor Organization for Health Maintenance*, 250 Ill. App. 3d 393, 397, 621 N.E.2d 137, 140-41, 190 Ill. Dec. 268 (1993). There is overwhelming evidence of State Farm's calculated deception of its policyholders in a deliberate disregard of its express written promises contained in the policies issued. The deceit was deliberate and universally employed for the purpose of obtaining unearned, illegitimate monetary gain. This was an ill-gotten gain, acquired at the expense of persons that trusted and relied upon State Farm for honest, fair treatment. There is an abundance of evidence to support the trial [***72] court's finding that the class members' injuries were proximately caused by State Farm's deceptive conduct.

State Farm claims that it should not have been held liable under the CFA because its representations were nothing more than statements of opinion or puffery. In our view, these representations assigned "virtues" to non-OEM parts that they did not possess. See *Totz v. Continental Du Page Acura*, 236 Ill. App. 3d 891, 905, 602 N.E.2d 1374, 1383, 177 Ill. Dec. 202 (1992); *Rumford v. Countrywide Funding Corp.*, 287 Ill. App. 3d 330, 336, 678 N.E.2d 369, 373, 222 Ill. Dec. 757 (1997). They are representations that a reasonable policyholder would have interpreted as fact. The evidence of State

321 Ill. App. 3d 269, *291; 746 N.E.2d 1242, **1262;
2001 Ill. App. LEXIS 249, ***72; 254 Ill. Dec. 194

Farm's deceptive claims practices moves this case beyond a mere contract breach. In our view, the trial court's determination that State Farm's deceptive practices violated the CFA is completely supported by the evidence in the record and is not against the manifest weight of the evidence.

### E. Evidentiary & Trial Errors

State Farm first contends that the trial court committed reversible error by admitting baseless opinion testimony purporting to show the [***73] universal inferiority of non-OEM parts. State Farm contends that the court abused its discretion in permitting body shop witnesses who had no expertise in metallurgy, design, or engineering to render opinions that non-OEM replacement parts were categorically inferior to OEM replacement parts.

We have reviewed the excerpts that State Farm identified in its brief, and State Farm did not object to the testimony about which it now complains. Thus, the point is waived. See *Brown, 83 Ill. 2d at 349, 415 N.E.2d at 339*. As explained earlier, it is not our role to comb the record to uncover possible errors. Nevertheless, given the nature of this case, we have considered the issue and find no reversible error.

Whether a witness qualifies as an expert is a question left to the sound discretion of the trial court, and the court's determination will not be disturbed absent an abuse of discretion. *National Surety Corp., 213 Ill. App. 3d at 508, 572 N.E.2d at 1088*. A witness may be qualified as an expert based upon his knowledge, skill, experience, training, or education. *National Surety Corp., 213 Ill. App. 3d at 508, 572 N.E.2d at 1088*. A witness [***74] whose knowledge is based on practical experience is no less an expert than one who possesses particular academic or scientific knowledge, and each may be qualified as an expert once it is shown that he possesses specialized knowledge beyond that of the average person and that his testimony will assist the jury in deciding fact issues in the case. *Cannell, 25 Ill. App. 3d at 913, 323 N.E.2d at 423*.

Each of the body shop witnesses had worked in the auto repair industry for a number of years. Each had worked with the non-OEM crash parts that State Farm specified. Over the course of those years, each had formed opinions about the quality, fit, corrosion resistance, strength, and stability of those parts based

upon his hands-on experience with those parts. These witnesses were not experts in the field of metallurgy or engineering, nor did they hold themselves out as such. Each demonstrated specialized knowledge about a factual issue in the case based upon years of observations and experience in the auto repair trade. The fact that these witnesses may not be able to explain scientifically why these parts are inferior does not preclude them from rendering opinions based [***75] upon their practical experiences installing non-OEM parts. In our view, a proper foundation was laid for each of the body shop witnesses to offer an opinion about the quality and fit of non-OEM parts. State Farm had an adequate opportunity to and did vigorously cross-examine these witnesses about their qualifications and biases. It was up to the jury to determine the credibility of the witnesses and what weight, if any, to give their opinions. *Falkenbury v. Elder Cadillac, Inc., 109 Ill. App. 3d 11, 18, 440 N.E.2d 180, 186, 64 Ill. Dec. 628 (1982)*.

State Farm next contends that the trial court erred in permitting one of the body shop witnesses to rely upon automotive manufacturer publications, a Consumer Reports publication, and a videotape documenting a bumper-impact test discussed in the Consumer Reports publication because they are not the types of materials reasonably relied on by experts in the auto body repair industry. The trial court has discretion to determine whether the underlying facts or data on which an expert bases an opinion are of a type reasonably relied upon by experts in that field. *City of Chicago v. Anthony, 136 Ill. 2d 169, 186, 554 N.E.2d 1381, 1389, 144 Ill. Dec. 93 (1990)*; [***76] *Yates v. Chicago National League Ball Club, Inc., 230 Ill. App. 3d 472, 485, 595 N.E.2d 570, 172 Ill. Dec. 209 (1992)*. It is common practice and completely proper to allow experts to rely upon a trade journal or a publication as the basis for an opinion. See *Rivera v. Rockford Machine & Tool Co., 1 Ill. App. 3d 641, 274 N.E.2d 828 (1971)*. An expert may disclose the underlying facts and conclusions for the limited purpose of explaining the basis for his opinion. *People v. Nieves, 193 Ill. 2d 513, 739 N.E.2d 1277, 251 Ill. Dec. 155 (2000)*. The publications discussed and critically analyzed the use, quality, and condition of aftermarket replacement parts. The trial court reviewed the material and determined that these publications were of a type used by persons in the auto body repair trade and were reasonably reliable. Given this record, we cannot say that the court's decision was an abuse of discretion.

321 Ill. App. 3d 269, *291; 746 N.E.2d 1242, **1262;
2001 Ill. App. LEXIS 249, ***76; 254 Ill. Dec. 194

State Farm claims that the trial court erred in permitting one of plaintiff's experts to play a section of a videotape demonstrating a bumper-impact test that was discussed in the Consumer Reports article and to use the Consumer Reports [***77] information during the cross-examination of one of its expert witnesses. The record reveals that the videotape was played after one of plaintiffs' auto body mechanic witnesses testified that his opinions about the inferiority of non-OEM parts were based on his first-hand experience working with non-OEM parts and his review of the Consumer Reports article, the videotape, and other trade publications.

An expert may disclose the underlying facts and conclusions for the purpose of explaining the basis for his opinion and conclusion. *Nieves*, 193 Ill. 2d 527-28, 739 N.E.2d at 1284. Absent a full explanation of the expert's reasons, including the underlying facts and opinions, the jury has no way to evaluate the testimony. *People v. Anderson*, 113 Ill. 2d 1, 11, 495 N.E.2d 485, 488-89, 99 Ill. Dec. 104 (1986). In *Kochan v. Owens-Corning Fiberglass Corp.*, we held that the trial court properly permitted a physician to summarize and quote from medical and industrial articles upon which he based his opinion. *Kochan v. Owens-Corning Fiberglass Corp., 242 Ill. App. 3d 781, 804-05, 610 N.E.2d 683, 689, 182 Ill. Dec. 814 (1993)*. However, we [***78] noted that the information was not admitted as substantive evidence and the expert was not using the information to bolster his opinion by showing that other experts agreed with him. *Kochan, 242 Ill. App. 3d at 804, 610 N.E.2d at 689*.

In our view, this witness used the Consumer Reports material as a basis for his opinion. There is no evidence that he was using the material to bolster his opinion. The trial court gave a limiting instruction advising the jury to consider the information not for the truth of the matters asserted but to evaluate the expert's opinion. The court need not permit the expert to recite this underlying information when its probative value pales beside its likely prejudicial impact or its tendency to create confusion. *Anderson, 113 Ill. 2d at 12, 495 N.E.2d at 490*. The trial court had a chance to review the videotape before the witness testified, and the court determined that its probative value in explaining the expert's opinion outweighed its prejudicial impact. See *Anderson, 113 Ill. 2d at 12, 495 N.E.2d at 490*. While it may appear that permitting the use of the videotape takes us a step beyond permitting [***79] an expert to give a detailed summary of medical and industry reports which formed the basis of

his opinions, we do not find that to be the case on these particular facts. In this case, the videotape was brief. It depicted the results of a bumper-impact test upon which plaintiffs' expert relied. Given the fact that this witness lacked extensive formal education and was not a professional witness, the trial court may have determined that playing the video would have been less prejudicial than permitting the witness to attempt to summarize the content of the video in his own words. On the basis of this record, we cannot say that the trial court abused its discretion in permitting the videotape to be played for the exclusive purpose of establishing the basis for the expert's opinion.

State Farm next claims that the trial court abused its discretion in allowing plaintiffs' engineering experts to "offer a variety of overblown generalizations" about non-OEM parts.

Plaintiffs presented an expert in industrial engineering and an expert in metallurgy and materials sciences. Each of the experts was properly qualified. Each discussed the methodology utilized to reach his respective opinions [***80] and conclusions. One expert conducted testing on a sample of the non-OEM parts. The other had observed the manufacturing process used in making non-OEM parts at a plant in Taiwan. The experts reviewed State Farm and CAPA data and documents referencing problems encountered during the process of the manufacturing of non-OEM parts, quality-control issues, and the overall quality of the non-OEM parts being produced. Each expert rendered opinions about the flaws in the design and the manufacturing process of the non-OEM parts at issue in this case and concluded that these parts were categorically inferior. State Farm has not shown that the experts were unqualified or that the methodology was not accepted in the relevant scientific community. The validity of their opinions and conclusions are matters of weight, not admissibility. See *Temesvary v. Houdek, 301 Ill. App. 3d 560, 568, 703 N.E.2d 613, 618, 234 Ill. Dec. 752 (1998)*. Allowing the testimony was within the court's discretion, and we find no abuse of that discretion. State Farm also challenges, as inadmissible hearsay, the admissibility of a statistical marketing survey. A survey that adheres to generally accepted [***81] survey principles and statistical principles is generally deemed admissible, and any technical inadequacies go to its evidentiary value. See *Antry v. Illinois Educational Labor Relations Board, 195 Ill. App. 3d 221, 265, 552 N.E.2d 313, 340, 141 Ill. Dec.*

321 Ill. App. 3d 269, *291; 746 N.E.2d 1242, **1262;
2001 Ill. App. LEXIS 249, ***81; 254 Ill. Dec. 194

*945 (1990)*. State Farm did not challenge the statistical validity of the results or the manner of the survey. Therefore, we cannot say that the trial court abused its discretion in admitting the survey evidence.

State Farm next claims that it was not permitted to call insurance regulators of various states to testify about the quality of non-OEM parts. In its brief, State Farm does not refer us to any place in the record demonstrating that it made an offer of proof regarding the qualifications of these witnesses and the evidence each would provide. Therefore, we must conclude that no such offer was made. In the absence of some record outlining the testimony these witnesses were expected to provide, we have no way to determine whether the exclusion of the evidence was prejudicial. *Carlson v. City Construction Co., 239 Ill. App. 3d 211, 238, 606 N.E.2d 400, 417, 179 Ill. Dec. 568 (1992)*. The issue [***82] is waived.

State Farm also claims that the trial court erred in permitting plaintiffs to introduce "perception" evidence. This argument is not supported by any authority and does not meet the requirements of *Supreme Court Rule 341(e)(7)* (155 Ill. 2d R. 341(e)(7)). See *In re Marriage of Drummond, 156 Ill. App. 3d 672, 684, 509 N.E.2d 707, 716, 109 Ill. Dec. 46 (1987)*. Nevertheless, we have reviewed the argument and find no prejudicial error. The record reveals that plaintiffs offered several opinion witnesses, including a professional market researcher, a professional auto sales manager with experience appraising used cars, and a professor of marketing and consumer information from Duke University, who testified that items perceived to be of inferior quality will be worth less in the marketplace. State Farm presented a number of opinion witnesses, including a professor from the Virginia Commonwealth University and a number of professional auto auctioneers, to counter plaintiffs' evidence.

Evidence should be admitted if it is material or relevant. *Kirkham v. Will, 311 Ill. App. 3d 787, 795, 724 N.E.2d 1062, 1068, 244 Ill. Dec. 174 (2000)*. The trial [***83] court determined that the evidence was probative of whether plaintiffs were damaged as a result of the installation of inferior parts. The determination of what is relevant is a matter within the sound discretion of the trial court and will not be disturbed on review absent an abuse of discretion. *Kirkham, 311 Ill. App. 3d at 795, 724 N.E.2d at 1068*. State Farm has failed to demonstrate that the admission of this evidence was an abuse of

discretion and has failed to demonstrate how it was prejudiced by the admission of such evidence.

State Farm asserts that the trial court erred in admitting the testimony of two former insurance regulators, Timothy Ryles and Robert Hunter. State Farm contends that the trial court permitted the witnesses to testify about the inferior quality of non-OEM parts, matters it claims were outside the area of their expertise.

Whether a witness qualifies as an expert is a question left to the sound discretion of the trial court, and the court's determination will not be disturbed absent an abuse of discretion. *National Surety Corp., 213 Ill. App. 3d at 508, 572 N.E.2d at 1088*. The record reveals that Mr. Ryles testified that [***84] his area of expertise is insurance industry custom and practice and includes the interpretation and implementation of contracts. He reviewed a number of documents, including State Farm's own documents referencing its practice of using non-OEM parts and its knowledge of the quality of those parts. Relying upon those documents and his knowledge and experience in the operations of insurance industry, he critiqued State Farm's policy and claims practices regarding the specification of non-OEM parts in light of its insurance contract, its guarantee, and the general practice in the insurance industry. Mr. Hunter testified that his area of expertise is in casualty actuarial issues and public policy matters dealing with consumers and insurance claims issues. Relying upon a review of State Farm documents and his knowledge and experience in insurance claims practices, he critiqued State Farm's policy and claims practices of specifying "quality replacement parts" it knew to be inferior. Any conclusions regarding the quality of non-OEM parts was expressed by these experts in the context of a discussion of claims practices in the insurance industry. Considering the background and experience of [***85] each of these witnesses, we cannot say that either was unqualified to render the opinions offered.

State Farm also claims that it was improper to permit these witnesses to merely "interpret" its documents when those documents were neither technical nor complex. It is not improper for an expert to explain a term or a practice when such subjects are beyond the knowledge and the experience of the average juror. See *American College of Surgeons v. Lumbermens Mutual Casualty Co., 142 Ill. App. 3d 680, 701, 491 N.E.2d 1179, 1194, 96 Ill. Dec. 719 (1986)*. Here, Mr. Ryles and Mr. Hunter identified

documents upon which they relied to form opinions in this case. In so doing, they explained the significance or meaning of a particular document or practice as it related to the opinions being offered. An expert may disclose the underlying facts and conclusions for the purpose of explaining the basis for his opinion and conclusion. *Nieves, 193 Ill. 2d at 527-28, 739 N.E.2d at 1284.* Absent a full explanation of the expert's reasons, including the underlying facts and opinions, the jury has no way to evaluate the testimony. *People v. Anderson, 113 Ill. 2d 1, 11, 495 N.E.2d 485, 488-89, 99 Ill. Dec. 104 (1986).* [***86] The trial court did not abuse its discretion in allowing each expert to identify those documents that formed the basis for his opinions and to explain their significance to the jury.

State Farm contends that the trial court erred in allowing plaintiffs to show a videotape depicting the comparative results of a salt-spray corrosion test on an non-OEM fender and a fender manufactured by the Ford Motor Company. State Farm contends that the video was irrelevant to any issue because there was no evidence to show that this type of non-OEM fender had been installed on a policyholder's car during the class period and no evidence to show that the testing had been fairly conducted.

The videotape was presented during the evidence deposition of John Reinholz, an employee of the Ford Motor Company. Mr. Reinholz performed this test and explained how the test was performed. He testified that the test was performed in 1986 or 1987, and he authenticated the content of the videotape. Another Ford employee, Gary Balint, also testified by evidence deposition. He stated that he had asked Ford Central Laboratories to conduct a corrosion test of Ford sheet metal parts and non-OEM sheet metal parts. He [***87] explained how the testing was performed. He testified that he inspected the parts before the test began to ensure that there was no preexisting damage. He monitored the testing procedure and inspected both parts after the test was completed. Mr. Balint stated that the test was conducted in 1987 and that the non-OEM parts used were made for a 1986 vehicle. He authenticated the contents of the videotape and explained how the video was made.

According to the record, the videotape was used as a piece of demonstrative circumstantial evidence. Videotapes may be admitted into evidence when properly authenticated and relevant either to illustrate or corroborate the testimony of a witness or to act as probative evidence of what the videotape depicts. *People v. Smith, 152 Ill. 2d 229, 604 N.E.2d 858, 178 Ill. Dec. 335 (1992); Glassman v. St. Joseph Hospital, 259 Ill. App. 3d 730, 755, 631 N.E.2d 1186, 1204, 197 Ill. Dec. 727 (1994).* The decision on whether to admit or exclude this evidence is reserved to the sound discretion of the trial court, and a court's ruling will not be reversed in absence of a clear showing of abuse. *Montag v. Board of Education, School District No. 40, Rock Island County, 112 Ill. App. 3d 1039, 1047, 446 N.E.2d 299, 304, 68 Ill. Dec. 565 (1983).* [***88] In this case, two witnesses who had participated in the testing stated that the videotape fairly and accurately depicted the test and result. Mr. Balint explained how the test was performed. He also explained how the photography and videotaping was done to ensure a fair and accurate representation. A proper foundation was established. See *Missouri Portland Cement Co. v. United Cement, Lime, Gypsum & Allied Workers International Union, 145 Ill. App. 3d 1023, 1029, 496 N.E.2d 489, 492, 99 Ill. Dec. 796 (1986).*

We also find that the content of the videotape was demonstrative of the corrosion-testing process and the type of damage that can result when a part is not galvanized. The jurors heard extensive testimony about corrosion testing, galvanization, and the use of testing standards to assess the quality of OEM and non-OEM parts. This video provided the jurors a chance to see how corrosion testing is performed. During the cross-examination of Mr. Balint, the jury was informed that this testing was a demonstrative exhibit for litigation purposes. The testing was conducted in 1987 during the designated class period and thus was not too remote in time. See *Glassman, 259 Ill. App. 3d at 755, 631 N.E.2d at 1204;* [***89] *Montag, 112 Ill. App. 3d at 1047, 446 N.E.2d at 304.* State Farm did not object to the testimony or the video on the basis that the date of manufacture of the aftermarket part had not been established at the time these depositions were taken. Had the objection been made at the time of the depositions, the ground for objection may have been corrected. Where the basis of an objection is curable if presented during the deposition, the failure to object at that time waives the objection. 134 Ill. 2d R. 211(c)(1); *Lundell v. Citrano, 129 Ill. App. 3d 390, 397-98, 472 N.E.2d 541, 546-47, 84 Ill. Dec. 581 (1984).* State Farm waived this objection. We find no clear abuse of discretion in permitting the jurors to view this videotape.

321 Ill. App. 3d 269, *291; 746 N.E.2d 1242, **1262;
2001 Ill. App. LEXIS 249, ***89; 254 Ill. Dec. 194

State Farm also claims that plaintiffs were permitted to offer evidence and to argue that State Farm had a policy of discriminating against members of the lower class and minorities, thereby impugning State Farm's character. After reviewing the excerpts complained of, we find that State Farm has overstated the case. The trial testimony indicated that the practice of specifying non-OEM parts did not apply to State Farm employees, [***90] "special customers", and associates of State Farm executives. Considering this evidence, along with the other evidence in the case, it is reasonable to infer that this exemption was provided to "friends of State Farm" because it knew non-OEM parts were of inferior quality. The court gave a limiting instruction in which it informed the jury that this evidence could create an inference, if they chose to draw it, that non-OEM parts were inferior. The court felt that the jury was intelligent and was capable of following its instructions.

State Farm has also directed us to comments made by plaintiffs' counsel during closing argument that it claims were prejudicial and improper. Upon a review of the record, we note that State Farm did not object to those statements. Thus, it has waived those objections. See *Zoerner v. Iwan, 250 Ill. App. 3d 576, 619 N.E.2d 892, 189 Ill. Dec. 191 (1993)*. Nevertheless, our review of the statements shows them to be within the court's limiting

instruction. The trial court is in a superior position to observe the impact of alleged misconduct on the jury, and it is within the sound discretion of the trial court to determine whether the remarks [***91] and conduct of counsel interfered with the right to a fair trial. *Fultz v. Peart, 144 Ill. App. 3d 364, 380, 494 N.E.2d 212, 224, 98 Ill. Dec. 285 (1986); Reynolds v. Alton & Southern Ry. Co., 115 Ill. App. 3d 88, 99, 450 N.E.2d 402, 411, 70 Ill. Dec. 929 (1983)*. On this record, we find no abuse of discretion.

**[The preceding text is nonpublishable under Supreme Court Rule 23.]**

[*292] Accordingly, the award of disgorgement damages is reversed. In all other respects, the judgment of the circuit court is affirmed, and the cause is remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

WELCH, THOMAS M., and WELCH, ROBERT L. 1, JJ., concur.

1    Chief Judge of the Eighth Judicial Circuit, sitting by assignment.