App. 264

No. 91494

IN THE
SUPREME COURT OF ILLINOIS

MICHAEL E. AVERY, et al., on ) On Appeal from the
behalf of themselves and all ) Appellate Court of
others similarly situated; ) Illinois, Fifth District
) No. 5-99-0830
Plaintiffs-Appellees, )
) There Heard on Appeal
vs. ) from the Circuit Court
) for the First Judicial
STATE FARM MUTUAL ) Circuit, Williamson
AUTOMOBILE INSURANCE ) County
COMPANY, )
) No. 97-L-114·
Defendant-Appellant. )
) John Speroni,
) Judge Presiding

**OPPOSITION OF DEFENDANT-APPELLANT STATE
FARM MUTUAL AUTOMOBILE INSURANCE COM-
PANY TO PLAINTIFFS-APPELLEES' CONDITIONAL
MOTION FOR NON-PARTICIPATION**

Defendant-Appellant State Farm Mutual Automobile
Insurance Company ("State Farm") respectfully submits
this opposition to Plaintiffs-Appellees' Conditional Motion
For Non-Participation of Hon. Lloyd Karmeier, filed
January 26, 2005, and served upon Defendant-Appellant
by mail. In support of this opposition, State Farm states as
follows:

1. Plaintiffs in their moving papers have entirely
failed to show any basis for disqualifying Justice Karmeier



App. 265

from participating in the decision in this case.[1] Under Illinois law, a judge is required to disqualify himself "in a proceeding in which the judge's impartiality might reasonably be questioned." Ill. Code of Judicial Conduct, Canon 3, S. Ct. Rule 63(C)(1). This Court has emphasized, however, that "[d]isqualification of a judge is not a decision to be made lightly." *People v. Jackson*, 205 Ill.2d 247, 276, 793 N.E.2d 1, 19 (2001) (citing cases). "A judge is presumed to be impartial even after extreme provocation." *Id.* Moreover, to the extent Plaintiffs raise due process arguments, it is settled that " '[o]nly under the most extreme cases would disqualification for bias or prejudice be constitutionally required.'" *Id.* (quoting *People v. Coleman*, 168 Ill. 2d 509, 541, 660 N.E.2d 919, 936 (1995)).

2. As a matter of Illinois law and policy, neither the fact that Justice Karmeier was not present at oral argument nor Plaintiffs' allegations regarding contributions to Justice Karmeier's election campaign provide any basis for recusal. Plaintiffs' other allegations concerning Justice Karmeier's campaign also fail to raise any reasonable question as to his impartiality in this case.[2]

---

[1] Plaintiffs' motion to disqualify Justice Karmeier is made only through their California attorneys, Lieff, Cabraser, Heimann & Bernstein, LLP. *See* Pl. Mot. at 1 None of the Illinois law firms and attorneys representing Plaintiffs in this case have joined in the making of this motion.

[2] Plaintiffs have made their motion more than two months after Justice Karmeier's election and nearly two months after his taking office. As evidenced by Plaintiffs' exhibits, Justice Karmeier's election campaign was extensively covered in the media, and the alleged bases for Plaintiffs' motion were publicly known as far back as the summer of 2004. Plaintiffs' lack of promptness in moving to disqualify Justice Karmeier underscores the inappropriateness of their motion. *Cf. Federal Deposit Ins. Co. v. O'Malley*, 163 Ill. 2d 130, 140-41, 643 N.E.2d (Continued on following page)

App. 266

3. The people of the State of Illinois by their Constitution have determined that Supreme Court Justices should be selected in partisan elections. The Illinois Code of Judicial Conduct, the Illinois Disciplinary Rules, the Illinois Judicial Ethics Committee, and the Illinois State Bar Association, as well as courts around the country, have rejected the contention put forth by Plaintiffs' counsel here that contributions to a judge's campaign committee from lawyers or litigants create bias necessitating recusal or the appearance of impropriety. If a judge cannot sit on a case in which a contributing lawyer or litigant is involved, judges who have been elected to this Court as well as other courts would have to recuse themselves in perhaps a majority of cases filed. This is not and should not be — countenanced. Justice Karmeier is neither ethically nor constitutionally required to recuse himself in this case.

**Justice Karmeier's Absence from
Oral Argument Does Not Warrant
His Non-Participation in this Case**

4. Plaintiffs first complain that it is somehow improper for Justice Karmeier to take part in the decision of this case because oral argument occurred before he joined the Court. *See* Pl. Mot. ¶¶ 1-2. It is a longstanding custom of this Court for new Justices to take part in cases argued before their swearing in. The reasons for this custom are obvious and compelling. Were it otherwise, the number of decisions decided by less than the full bench would be greatly increased, which in turn would increase the

825, 830 (1994) (emphasizing that recusal motions should be made promptly).

A-50

App. 267

likelihood of cases where "the constitutionally required concurrence of four judges" would not be achieved. *Cf. Getschow v. Commonwealth Edison Co.*, 99 Ill. 2d 528, 528, 459 N.E.2d 1332, 1332 (1984) (letting stand a portion of the appellate court's decision where one justice recused himself and others were evenly divided). This Court takes cases, such as the present action, because they are significant and of public importance. *See* S. Ct. Rule 315(a). Thus, it is important that as many Justices as possible take part in decisions and provide authoritative guidance on the issues and questions before the Court. Accordingly, the custom that a newly elected Justice should participate in matters already pending before the Court is necessary and proper. The strong public policy reasons that favor the participation of new Justices in pending cases also counsel the Justices of this Court to be wary of recusing themselves without sufficient reason.[*]

5. In this case, the appearance of injustice would more likely arise from a recusal by Justice Karmeier at Plaintiffs' instance, not from his participation in the

---

[*] *Cf. Cheney v. United States District Court for the District of Columbia*, 124 S. Ct. 1391, 1394 (2004) (Scalia, J.) (rejecting party's suggestion to "resolve any doubts in favor of recusal," stating "[t]hat might be sound advice if I were sitting on a Court of Appeals. There, my place would be taken by another judge, and the case would proceed normally. On the Supreme Court, however, the consequence is different: the Court proceeds with eight Justices, raising the possibility that, by reason of a tie vote, it will find itself unable to resolve the significant legal issue presented by the case."); *Roe v. Mobile County Appointment Bd.*, 676 So. 2d 1206, 1228 (Ala. 1995) (rejecting recusal of Alabama Supreme Court justices on the basis of campaign contributions; stating that as judges elected to serve as a court of last resort, their participation in deciding an important case was a necessary part of their "judicial function"), *overruled on other grounds by Williamson v. Indianapolis Life Ins. Co.*, 741 So. 2d 1057 (Ala. 1999).

resolution of this case. Recusal by Justice Karmeier, after Justice Thomas's earlier recusal, could result in a less than four Justice majority and no authoritative opinion on the significant legal and constitutional issues presented by this case. These issues are important not only to State Farm – which could effectively be deprived of its opportunity to present its appeal to this Court – but to the Illinois system of justice, the citizens of Illinois, and the country as a whole. *See* Brief of Defendant-Appellant at 16-21.

6. Plaintiffs' contention that, because he was not present at oral argument, Justice Karmeier's participation in this case would somehow offend due process and "be highly deleterious to the entire judicial process" (Pl. Mot. ¶ 2) is not supported by the Illinois cases that Plaintiffs cite, the custom of this Court, or the custom of other courts. In *Glasser v. Essaness Theatres Corp.*, 346 Ill. App. 72, 104 N.E.2d 510 (1st Dist. 1952), cited by Plaintiffs, the Appellate Court rejected the plaintiffs' objection to the "participation of the newly appointed justices" in the consideration of a petition for rehearing. *Id.* at 89, 104 N.E.2d at 519. The Appellate Court explained that the "court remains the same notwithstanding a change in the incumbent judges." *Id.* Moreover, "[a]fter familiarizing themselves with the record and briefs in the case, the newly appointed justices were presumably as capable of determining the questions involved" as the original justices. *Id.* at 91, 104 N.E.2d at 520.[4]

---

[4] *See also Fried v. Barad*, 175 Ill. App. 3d 382, 391, 530 N.E.2d 93, 99 (1st Dist.1988) (concluding that judge who was legally constituted successor to justice who participated in earlier decision "ha[d] the right, duty and obligation to participate" in opinion on rehearing). Contrary to Plaintiffs' contention (Pl. Mot. ¶ 2), California law does not "prevent a
(Continued on following page)

App. 269

7. Furthermore, from a practical point of view, the contention by Plaintiffs' counsel here is particularly weak because, as Plaintiffs' counsel well knows, the oral arguments in this case were taped and are therefore readily available to Justice Karmeier.

### Plaintiffs' Contentions Regarding Justice Karmeier's Election Campaign and Campaign Contributions Do Not Justify Disqualification

Plaintiffs' counsel devotes most of the moving papers to attacks on Justice Karmeier, his election campaign, and his contributors. Nothing in Plaintiffs' attacks could possibly justify, much less require, Justice Karmeier's recusal. None of the traditional factors calling for recusal are present in this case. Plaintiffs do not contend that Justice Karmeier during his election campaign or at any other time expressed an opinion on the merits of this case or that he has prejudged this case in any way. Plaintiffs do not contend that Justice Karmeier is hostile to Plaintiffs or to Plaintiffs' counsel. Plaintiffs do not assert that Justice Karmeier has any financial interest or other direct, substantial, or personal interest regarding this case. *See, e.g., Madden v. Cronson*, 114 Ill. 2d 504, 511, 501 N.E.2d 1267, 1271 (1986) (judge's interest in a case requires

---

justice [of the California Supreme Court], either regular or pro tempore, who had not heard the argument from participating in the pronouncement of a judgment" *Metropolitan Water Dist. v. Adams*, 133 P.2d 257, 262 (Cal. 1942). Notably, Justices of the United States Supreme Court who are absent from oral argument will participate in a decision after listening to the tape of the argument (as Chief Justice Rehnquist has recently done). *See* Robert L. Stern, *et al., Supreme Court Practice* 715 (8th ed. 2002).

App. 270

recusal only if it is "'direct, personal, substantial, [and] pecuniary'") (quoting *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972)). In fact, far from revealing bias, Justice Karmeier's statements during his campaign, quoted by Plaintiffs, show him as someone who is "without an agenda" and committed to assuring a "level playing field." Pl. Mem at 4.

9. Courts in states where (as in Illinois) judges are elected have consistently rejected attempts to disqualify a judge on the basis of legal campaign contributions made by lawyers or litigants who appear before the judge. If parties could succeed in having a judge recused on such a basis, no judge would be immune. Indeed, public records show that Plaintiffs' Illinois counsel – who are conspicuous by their absence on this motion – have made generous contributions to the campaign committees of many of the Justices of this Court, Justice Maag's campaign committee, and other judges' campaign committees throughout this States.[⁵]

10. In states where judges are elected, campaign contributions are a necessity. A rule disqualifying judges on grounds such as those urged by Plaintiffs here would seriously hamper the administration of justice by causing a wholesale recusal by judges. *See* Affidavit of Professor Richard W. Painter ("Painter Aff.") ¶¶ 4, 5, 15.[⁶] The Texas

---

[⁵] The Illinois State Board of Elections internet site as well as media reports record the contributions made by Plaintiffs' counsel. The Affidavit of Theresa M. Powell, submitted herewith, lists examples of these contributions. *See* Powell Aff. ¶¶ 12-14.

[⁶] Professor Painter is the Guy Raymond and Mildred Van Voorhis Jones Professor of Law at the University of Illinois College of Law. He is the co-author of a leading casebook on professional ethics, as well as
(Continued on following page)

App. 271

Court of Appeals, rejecting a similar attempt to disqualify appellate judges based upon campaign contributions by a party's attorney, stated:

[I]t is not surprising that attorneys are the principal source of contributions in a judicial election. We judicially know that voter apathy is a continuing problem, especially in judicial races and particularly in contests for a seat on an appellate bench. A candidate for the bench who relies solely on contributions from nonlawyers must reconcile himself to staging a campaign on something less than a shoestring. If a judge cannot sit on a case in which a contributing lawyer is involved as counsel, judges who have been elected would have to recuse themselves in perhaps a majority of the cases filed in their courts. Perhaps the next step would be to require a judge to recuse himself in any case in which one of the lawyers had refused to contribute or, worse still, had contributed to that judge's opponent.

*Rocha v. Ahmad*, 662 S.W.2d 77, 78 (Tex. App. 1983); *see also Lueg v. Lueg*, 976 S.W.2d 308, 311 (Tex. App. 1998) ("'Texas courts have repeatedly rejected the notion that a judge's acceptance of campaign contributions creates bias necessitating recusal, or even an appearance of impropriety'") (citation omitted); *Apex Towing Co. v. Tolin*, 997 S.W.2d 903, 907 (Tex. App. 1999) (rejecting claim that judge "should have recused himself because he had received substantial political donations from opposing counsel and from one of the parties").

---

the author of numerous articles. Professor Painter's affidavit is submitted herewith.

App. 272

11. The Illinois State Bar Association (ISBA) has taken a similar position regarding contributions by attorneys to judicial election campaigns and participation by attorneys in such campaigns.[7] An ISBA Advisory Opinion on Professional Conduct concludes that "attorneys contributing to, or otherwise participating in, judicial election campaigns are not thereby precluded from appearing in legal proceedings before the judges whose campaigns they have assisted." *See* ISBA Opinion 866 at 2-3 (April 1984) (Exhibit A)[8]. The ISBA opinion explains the reasons for its determination, stating:

> [B]ecause there is no theoretical limit to the number of judicial campaigns in which an attorney may so participate, the judicial system would be unduly encumbered were all attorneys engaging in campaign activities precluded from appearing in litigation before judges in whose campaigns they had participated. Finally, such a restriction would undoubtedly discourage such participation by attorneys, contrary to the apparent policies behind Rule 7-110(a) and EC 7-34; *i.e.*, the implicit value of such participation by attorneys, and the need that attorneys not be considered "second class citizens" in connection with political activities.

---

[7] Canon 7 of the Illinois Code of Judicial Conduct allows a judge's campaign committee to solicit and accept "reasonable campaign contributions and public support from lawyers." Ill. Code of Judicial Conduct, Canon 7, S. Ct. Rule 67(B)(2). Likewise, the Illinois Attorney Disciplinary Rules permit lawyers to make financial contributions by means of a check, draft, or other instrument payable to a judge's campaign committee. ILCS S. Ct. Rules of Prof'l Conduct, RPC Rule 8.5(b).

[8] The exhibits cited herein are attached to the Affidavit of Theresa M. Powell ("Powell Aff.") submitted in support of this opposition.

App. 273

*Id.* at 2 (citing Committee Commentary to Canon 7). The opinion further states that "[d]isclosure to opposing counsel [of the attorney's campaign activities] also appears unnecessary in view of the conclusion that there is nothing inherently unethical in such conduct, nor anything which would require the consent of the Court or of opposing counsel." *Id.* at 3. Plaintiffs' instant motion for disqualification is improperly based upon the very conduct that ISBA Opinion 866 approves.

12. Of even greater significance, the Illinois Judicial Ethics Committee has similarly concluded that a judge "is not affirmatively obliged to disqualify himself or herself under Rule 53C(1) merely because a lawyer or party appearing before the judge was a campaign contributor." Ill. Jud. Eth. Op. 93-11, 1993 WL 774478, at *2 (Nov. 17, 1993) (Exhibit B). Thus, there is no ethical obligation for Judge Karmeier to recuse himself in this matter.

13. Similarly, the Alabama Supreme Court has considered Canon 7 of the Code of Judicial Conduct (on which Plaintiffs here rely) and concluded that a judge's receipt of campaign contributions from a litigant's attorney or another judge does not warrant recusal or "create a situation in which [the judge's] impartiality might reasonably be questioned." *Roe*, 676 So. 2d at 1233. The Alabama Supreme Court stressed that "[s]uch contributions have uniformly been held not to constitute grounds for recusal." *Id.* (emphasis added).

14. Likewise, in *Nathanson v. Korvick*, 577 So. 2d 943 (Fla. 1991), the Florida Supreme Court found that a judge was not required to disqualify herself in a case in which a litigant's attorney had contributed to her political campaign and served on her campaign committee. The

A-57

App. 274

court emphasized that "[a]s long as the citizens of Florida require judges to face the electorate, either through election or retention, 'the resultant contributions to those campaigns ... are necessary components of our judicial system.'" *Id.* at 944 (quoting *MacKenzie v. Super Kids Bargain Store, Inc.*, 565 So. 2d 1332, 1335-36 (Fla. 1990) (allegation that "a litigant or counsel for a litigant has made a legal campaign contribution to the political campaign of the trial judge ... is not a legally sufficient ground" for disqualification and does not violate Canon 7)); *see also Raybon v. Burnette*, 135 So. 2d 228, 228-31 (Fla. Dist. Ct. App. 1961) (fact that plaintiff's counsel ran as a candidate in hotly contested campaign against judge, who was publicly endorsed by and received contributions from defendant's counsel, did not warrant disqualification of judge).

15. Furthermore, in *In re Disqualification of Ney American Laundry Management, Inc.*, 657 N.E.2d 1367 (Ohio 1995), Chief Justice Moyer of the Ohio Supreme Court construed Canon 7 and held that a judge was not required to recuse himself in a case where a litigant's attorney had contributed to and solicited contributions for the judge's election campaign. *Id.* at 1367-68. In addition, the court in *Sheperdson v. Nigro*, 5 F. Supp. 2d 305 (E.D. Pa. 1995), ruled that a judge did not have to recuse himself because he had accepted "significant campaign contributions" from the law firm representing the defendant. *Id.* at 307, 310-11. The court explained, in language equally applicable here:

> [T]hat a judge may preside in some cases in which a litigant's attorney contributed to the judge's campaign is an almost inevitable concomitant of the policy decision to elect judges. If

A-58

App. 275

a judge must recuse himself whenever a contributing attorney or member of a contributing firm
enters an appearance, a candidate who succeeds
in attracting contributions from a wide array of
lawyers would constantly be recusing himself.

*Id.* at 311; *see also State v. Carlson,* 833 P.2d 463, 469
(Wash. 1992) (participation of state prosecutor in appellate
judge's election campaign did not require recusal or
"generate reasonable doubts as to [judge's] impartiality");
Painter Aff. 8, 10-12, 14 (discussing Canon 7 and relevant
case law).

16.  Accordingly, the consistent weight of authority
supports the propriety of Justice Karmeier's participation
in the resolution of this case. A recusal here would have a
chilling effect on attorney contributions to judicial candidates engaged in hotly contested judicial elections. Moreover, the entire Illinois judicial system would be adversely
affected, as countless motions for recusal would be made
on similar grounds.

**Plaintiffs' Specific Contentions Concerning
Justice Karmeier's Election Campaign and the
Contributions His Campaign Received
Do Not Support Disqualification**

17.  Nothing in Plaintiffs' specific contentions about
Justice Karmeier's election campaign and the contributions his campaign received would support an exception to
the general rule in Illinois and elsewhere that attorneys
may properly appear before judges to whose campaigns
they have contributed or in whose campaigns they have
participated. Plaintiffs' contentions do not establish that
there would be any impropriety or even an appearance of
impropriety in Justice Karmeier's participating in the

App. 276

decision in this case, Plaintiffs' motion is based upon
implausible inferences and innuendo that are completely
unsupported by the facts and Plaintiffs' own exhibits.
Plaintiffs have concocted a contention that State Farm
somehow engineered contributions to Justice Karmeier's
campaign for the purpose of impacting the outcome of this
case. This is not only unsupported by any facts, but is
contrary to basic common sense. The bulk of the contribu-
tions cited by Plaintiffs were made in the summer of 2004.\*
Oral argument in this case took place in May 2003. This
Court's opinion could have been issued at any time during
the summer or fall of 2004, and no contributor could have
reasonably anticipated that the case would still be pending
so as to allow participation by the Justice elected in the
November election.

18. Equally lacking is any plausible basis or factual
support for Plaintiffs' -- contention that State Farm was
somehow the moving force behind every contribution made
by any civic or business organization to which State Farm
has any connection whatsoever. *See* Pl. Mem. at 16-20.
Plaintiffs have presented no evidence that this was actu-
ally the case, but merely point to such matters as State
Farm's membership in organizations that contributed to

---

\* For example, Plaintiffs cite an article from the Associated Press
regarding campaign contributions from doctors and trial lawyers
"pouring" in for the candidates. *See* Pl. Mem. at 8; Pl. Ex. 11. That
article is dated July 10, 2004. Moreover, the article does not state (as
Plaintiffs paraphrase it) that "the unprecedented sums of money
*Karmeier* accepted 'could end up eroding the judges' independence to
decide cases free of political influence.'" Pl. Mem. at 8 (emphasis
added). Rather, the article states that "[c]ritics say *both sides* [business
and medical groups on one hand and trial lawyers on the other] are
trying to buy clout by bankrolling the campaigns and could end up
eroding the judges' independence." Pl. Ex. 11 (emphasis added).

App. 277

Justice Karmeier's campaign or to the membership of
State Farm employees in such organizations. *See id.* These
organizations have numerous members, and Plaintiffs
present no evidence whatsoever to back up their baseless
assertions that these civic and business organizations are
"front groups" for State Farm (*id.* at 17) or that the contri-
butions were meant to influence Justice Karmeier in this
case or would be perceived by anybody as influencing him.
Plaintiffs' counsel of course does not make (and could not
make) any assertion that such contributions would in
actuality have any impact on Justice Karmeier's ability to
participate fairly and without bias in this case.

19.     s an example of Plaintiffs' counsel's tactics,
Plaintiffs attempt to draw together into some sort of
improper relationship State Farm, the American Tort
Reform Association and the Illinois Civil Justice League
because "State Farm is a member of The American Tort
Reform (ATRA) and Ed Murnane of ICJL has sat on the
ATRA Board of Directors since 1997." Pl. Mem. at 20.
These facts, contrary to Plaintiffs' contentions (*see id.*), do
not evidence a "tight" relationship. The members of ATRA,
founded in 1986, include more than 300 businesses,
corporations, municipalities, associations, and professional
firms across the country. Its Board of Directors has 29
members. *See* Exhibit C; Powell Aff. ¶ 5. Clearly, ATRA is
not a "front group" for State Farm, and Plaintiffs' asser-
tion that campaign contributions from organizations like
ATRA were part of an "attempt [by State Farm] to cloak
their influence over Lloyd Karmeier's election" that "has

App. 278

left an unsightly, ignoble and loathsome trail" (Pl. Mem. at 17) is incorrect and meritless.[13]

20. Plaintiffs also improperly attempt to taint contributions made to Justice Karmeier by organizations that submitted *amicus* briefs in this case and the attorneys who represented them. *See* Pl. Mem. at 11-12. Those organizations that wished to present their views to this Court on the legal and policy issues in this case have done so through properly submitted *amicus* briefs. The fact that certain organizations that contributed to Justice Karmeier had earlier filed such briefs does not (contrary to Plaintiffs' innuendo) somehow taint their contributions to Justice Karmeier or render Justice Karmeier's participation in this case inappropriate. Indeed, as is well known to this Court, State Farm's amici in this case regularly submit

---

[13] Plaintiffs also attempt to draw inferences of impropriety from the longtime participation in the Illinois Business Roundtable (IBRT) of State Farm Chairman of the Board and CEO Edward Rust, and the IBRT's creation of the Illinois Civil Justice League (ICJL). *See* Pl. Mem. at 13, 17. The IBRT created the ICJL in 1993, long before the campaign in this case. Pl. Ex. 44. The IBRT has approximately 63 members from various companies around the state. *See* Exhibit D; Powell Aff. ¶ 6. The ICJL's members and supporters include many of the major business and professional associations in Illinois, as well as many of Illinois' largest companies, such as Caterpillar Inc., Motorola, CNA Insurance, Deere & Co., Brunswick, Allstate, and Kraft General Foods. *See* Ex. G; Powell Aff. ¶ 9. Plaintiffs claim that "as chairman-emeritus of IBRT, Edward Rust plays a large role in determining ICJL's activities such as 'changes in the judiciary – and some judges,' which included the Karmeier/Maag campaign." Pl. Mem. at 17. Plaintiffs provide no factual basis for Mr. Rust's alleged "large role" in the IBRT's support of Justice Karmeier and no legal basis for concluding that there would be anything improper if he did play such a role. Mr. Rust's long-time involvement in many business and civic groups such as the IBRT in Illinois, where State Farm has its principal office, clearly is no basis for disqualifying Justice Karmeier.

A-62

App. 279

*amicus* briefs to this Court (and to many other courts around the country) on issues of public importance. These groups have no pecuniary interest in the outcome of this case. Plaintiffs' moving papers are bereft of any factual evidence that would support their improper attempt to link contributions to Justice Karmeier's campaign by such groups to State Farm and to this particular case.[11]

21. Although Plaintiffs attempt to link large sums in contributions by a variety of persons and organizations to Justice Karmeier's campaign to State Farm, their moving papers and supporting documentation in fact reveal that a limited number of State Farm officers and employees made quite modest contributions to Justice Karmeier's campaign. *See* Pl. Mem. at 11 n.18 (listing five contributions ranging from $200 to $250 made to Justice Karmeier's campaign by State Farm employees). There certainly is no impropriety or appearance of impropriety in any of these contributions.

22. Plaintiffs also contend that Justice Karmeier should be disqualified because his opponent in the judicial election was the author of the opinion for the Appellate Court, Fifth District, that is under review in this case. *See* Pl. Mot. ¶ 4. Plaintiffs cite no case in which a judge was or should have been disqualified for this reason. The fact that

---

[11] With regard to the *amicus* United States Chamber of Commerce, Plaintiffs claim that it is "significant that James Rutrough, State Farm Executive Vice President and Chief Administrative Officer sits on the Chamber of Commerce's Board of Directors." Pl. Mem. at 12. Mr. Rutrough is one of more than 100 board members from businesses around the country. *See* Exhibit E; Powell Aff. ¶ 7. Plaintiffs' attempt to attribute some unspecified, but nefarious, significance to his membership on the board is another example of the baseless innuendo engaged in by Plaintiffs in making this motion.

A-63

App. 280

the election was hotly contested does not overcome the presumption under Illinois law that a judge is "impartial even after extreme provocation." *See Jackson*, 205 Ill. 2d at 276, 793 N.E.2d at 19. Justice Karmeier's own candid criticism of the negative campaign ads in the race, quoted by Plaintiffs, demonstrates his personal honesty and integrity. *See* Pl. Mem. at 5. Plaintiffs attribute no statement to Justice Karmeier that would display any personal animosity toward Justice Maag. Indeed, one of the newspaper articles relied upon by Plaintiffs makes clear that it was not the candidates themselves, but some of their "allies," who were responsible for the negative campaign ads. *See* Pl. Ex. 9. Furthermore, although the Appellate Court's opinion in this case was authored by Justice Maag, it was the opinion of a panel of appellate judges, making Plaintiffs' contention that Justice Karmeier would or could be perceived to be influenced by the authorship of the opinion under review all the more unlikely.[13] *Cf.* Painter Aff. ¶ 14.

23. In their supporting memorandum, Plaintiffs quote selectively and out-of-context from newspaper articles that they claim support their motion for nonparticipation.[14] For example, Plaintiffs quote an editorial from the *St. Louis Post Dispatch* criticizing the tone of the

---

[13] *Cf. State v. Carlson*, 888 P.2d 463, 466 (Wash. 1992) (discussing the "vast differences" between the roles of trial judges and appellate judges and the unlikelihood that a reasonable person would perceive an appearance of impropriety based upon allegations of prejudice and bias on the part of an appellate judge, who acts as part of a court and whose decisions are written and almost exclusively involve legal issues).

[14] Professor Painter in his affidavit notes the inappropriateness of Plaintiffs' reliance on newspaper articles as support for their motion for disqualification. *See* Painter Aff. ¶ 16.

App. 281

election campaign. *See* Pl. Mem. at 5 & Pl. Ex. 9. Plaintiffs claim that the editorial "suggests that Justice Karmeier might be tempted to 'do favors for the interests that lavished millions on his campaign.'" *See id.* In fact, although the article urges that Illinois' system of electing judges "should be replaced with a merit-selection system," it specifically rejects the notion that Justice Karmeier would be less than honest and impartial, stating that "[g]iven Judge Karmeier's record in the lower courts, we believe he will proceed with integrity." *See* Pl. Ex. 9. Plaintiffs' distortion of this article appears to be part of an attempt to prevail in this case by securing Justice Karmeier's disqualification.[14]

24. Plaintiffs' remaining contentions are equally meritless. For example, Plaintiffs attribute to Ed Murnane, President of the Illinois Civil Justice League, the statement that "he viewed the *Avery* verdict as unfair and believed that it was frivolous and should be overturned." Pl. Mem. at 18. There would be nothing improper in Mr. Murnane's making such a statement, and Plaintiffs offer no evidence that would in any way support attributing Mr.

---

[14] Indeed, Plaintiffs' Exhibit 9 explains that the election campaign between Justice Karmeier and his opponent "also involve[d] an effort to bring evenhandedness to the plaintiffs' lawyers' paradise that is the Madison County courts. For decades, plaintiffs' attorneys in Madison County have padded the election coffers of local judges with little pushback from business.... Such friendly judges, combined with the county's reputation for generous juries, make it a magnet for lawsuits from all over the country, most naming big businesses as defendants. It has also scared the bejabbers out of medical malpractice insurance companies, contributing to sky-high malpractice rates that have set off an exodus of doctors from the Metro East. That, more than anything else, probably explains why the Republican Karmeier won by a small margin in overwhelmingly Democratic Madison County, as well as across Southern Illinois."

App. 282

Murnane's opinion to Justice Karmeier. Mr. Murnane, although in support of Justice Karmeier's candidacy, was not Justice Karmeier's campaign manager or campaign finance chairman and was not employed by Justice Karmeier's campaign. *See* Pl. Ex. 3 (Senator Dave Luechtefeld served as chairman of Justice Karmeier's campaign, and Dwight Kay served as his finance chairman). The fact that Plaintiffs dredge up Mr. Murnane's statement regarding *Avery* merely illustrates the complete lack of any real substance to their attempt to disqualify Justice Karmeier.

25. In addition, Justice Karmeier's purported knowledge of campaign contributions (Pl. Mem. at 14-15) provides no basis for disqualification or recusal in this case. The Committee Commentary to Supreme Court Rule 67 (Canon 7) expressly states that there is no prohibition against a judicial candidate having knowledge of campaign contributions. *See* Committee Commentary, S. Ct. Rule 67, Comment to Paragraph 7B(2). Moreover, the Illinois Judicial Ethics Committee has stated that

the State Election Code makes such information [about who a judge's campaign contributors are] available to the public regarding contributions in excess of $150. Such a public record places judges and their campaign contributors under public scrutiny, thus providing some assurance of judicial impartiality. And with such information available to the public, *it would be desirable for judges to know their contributors.*

Ill. Jud. Eth. Op. 93-11, 1993 WL 774476, at *2 (Nov. 17, 1993) (Exhibit B) (emphasis added).[13] Accordingly, contrary

---

[13] The authorities establishing that there is no impropriety in a judge's campaign manager appearing before him after the campaign is
(Continued on following page)

App. 283

to Plaintiffs' contentions, there is no impropriety in a judicial candidate's knowing the identity of contributors.

26. Plaintiffs assert that Justice Karmeier had knowledge of $5,000 contributions from the Illinois State Medical Society and from an organization called JUST-PAC. Pl. Mem. at 15. Plaintiffs also "respectfully suggest[] that the a [sic] reasonable person would assume that the extent of the sharing of information with Justice Karmeier about who was donating to his campaign and how much they were donating was not an isolated event." Pl. Mem. at 16. Such unsupported speculation is not a basis for recusal. Moreover, even assuming *arguendo* that in some particular circumstances not present here – for example, where a campaign is still ongoing – a judge's knowledge of the identity of campaign contributors could be relevant to disqualification, Plaintiffs have shown no knowledge on the part of Justice Karmeier of any purported connections between contributions and State Farm that would create a grounds for disqualification in this case. Plaintiffs have also cited no case requiring the disqualification of a judge on the basis of his knowledge of the identity of contributors to his campaign.

27. In short, Canon 7 does not prohibit the knowledge of campaign contributions. What Canon 7 does prohibit is the personal solicitation or acceptance of campaign contributions by a judicial candidate. *See* S. Ct. Rule 67(B)(2) (Canon 7) ("A candidate shall not personally solicit or accept campaign contributions."). Plaintiffs expressly concede that

---

ended (*see* ¶ 11 *supra*) also show the incorrectness of Plaintiffs' assertions concerning knowledge. Judges of course know who their campaign managers were and that knowledge clearly creates no ethical difficulties. *See id.*

App. 284

they "do not allege that Justice Karmeier accepted donations personally rather than through his campaign committee." Pl. Mem. at 15.

### The Cases Cited by Plaintiffs
### Do Not Support Disqualification of
### Justice Karmeier in this Case

28. In *Gluth Brothers Construction, Inc. v. Union National Bank*, 192 Ill. App. 3d 649, 548 N.E.2d 1364 (2d Dist. 1989), on which Plaintiffs rely (Pl. Mem. at 18), the Appellate Court held that there was no appearance of impropriety when a judge presided over a case in which the plaintiffs' attorney had served previously as the judge's campaign manager. The court stated that "[t]here was no allegation, or any evidence to support such an allegation, that plaintiffs' attorney had a present, ongoing relationship with the judge as his campaign manager or in any other capacity." *Id.* at 655, 548 N.E.2d at 1368; *see also People v. McLain*, 226 Ill. App. 3d 892, 903-05, 589 N.E.2d 1116, 1124-25 (2d Dist. 1992) (recusal of trial judge was not warranted by the fact that State's Attorney had previously chaired judge's election campaign); *Wegman v. Pratt*, 219 Ill. App. 3d 883, 865, 897, 579 N.E.2d 1035, 1037, 1044 (5th Dist. 1991) (affirming denial of plaintiff's motion for change of judge where plaintiff complained that a fair trial was impossible from any judge in Madison County because the trial judge and other judges in that county had received "substantial contributions" from defense counsel's firm); Painter Aff. ¶¶ 8, 10 (discussing *Gluth* and *McLain*).

29. In their instant motion, Plaintiffs do not and cannot contend that any counsel for State Farm has a "present, ongoing relationship" with Justice Karmeier's campaign, which ended on Election Day, November 2,

A-68

App. 285

2004. Plaintiffs merely allege that Justice Karmeier had a close relationship with Ed Murnane, who purportedly had some unspecified "close relationship with Ed Rust, Chairman and C.E.O. of State Farm." Pl. Mem. at 19. Plaintiffs make no claim that Mr. Rust had a close relationship with Justice Karmeier or was directly involved in his campaign. Rather, Plaintiffs simply allege that Mr. Rust was active in the Illinois Civil Justice League, which supported Justice Karmeier. *Id.* Such indirect connections with respect to a campaign that has already ended are not a basis for disqualification, and Plaintiffs have cited no case that would support making them one. *Cf. In re Marriage of Click,* 169 Ill. App. 3d 48, 52-53, 523 N.E.2d 169, 172-73 (2d Dist. 1988) (recusal was not warranted where opposing party's counsel and trial judge were both members of "exclusive" organization).

30. Plaintiffs' citation to *Caleffe v. Vitale,* 488 So. 2d 627 (Fla. Dist. Ct. App. 1986), and *Pierce v. Pierce,* 39 P.2d 791 (Okla. 2001), is entirely misplaced. *Caleffe* required a judge's recusal where a party's attorney was "actually running the judge's *ongoing* reelection campaign." *Caleffe,* 488 So. 2d. at 629 (emphasis added). *Pierce* similarly ordered a judge's disqualification where a litigant's attorney was making maximum contributions to and soliciting funds for the judge's election campaign during the same time that the attorney was appearing in proceedings before the judge. *Pierce,* 39 P.2d at 798. *Caleffe* and *Pierce* do not support disqualification where, as here, the judge's campaign is not ongoing. Moreover, although this case was pending in this Court before Justice Karmeier took office, it was *not* pending before Justice Karmeier at any time during his campaign. Justice Karmeier's participation in

App. 286

this case could have begun only *after* his election to this Court and his taking office. *See* Painter Aff. ¶ 10.

31. Plaintiffs' reliance on *People v. Bradshaw*, 171 Ill. App. 3d 971, 525 N.E.2d 1098 (1st Dist. 1988), is inappropriate because that case involved an appearance of impropriety created by a private *ex parte* meeting between a crime victim's mother and the judge, which was not disclosed to the parties. *Id.* at 976, 525 N.E.2d at 1101. No such circumstances are presented in this case.

32. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), cited by Plaintiffs, is also inapposite. *Liljeberg* involved the failure of a judge, who was a trustee of a university, to disqualify himself from proceedings in which the university had a direct and substantial interest. No such issue is raised here. *See* Painter Aff. ¶ 17.

33. In sum, Plaintiffs have cited no case that supports disqualification under the circumstances of this case. The cases cited above by State Farm, however, are relevant and require that Judge Karmeier has the "right, duty and obligation to participate" in deciding cases pending before this Court, including *Avery. See Fried*, 175 Ill. App. 3d at 391, 530 N.E.2d at 99. *See also* Painter Aff. ¶¶ 2,4-5, 15. Justice Karmeier's impartiality has not been questioned by Plaintiffs' counsel, and there is no appearance of partiality that has been shown or exists.

Wherefore, State Farm respectfully submits that this Court should deny Plaintiffs' motion in its entirety.

A-70

App. 287

Dated: January 31, 2005

Respectfully submitted,

/s/ Wayne W. Whalen
by Theresa Powell
One of the attorneys for
Defendant-Appellant State
Farm Mutual Automobile
Insurance Company

Michele Odorizzi
Bradley J. Andreozzi
Allan Erbsen
MAYER, BROWN, ROWE
& MAW
190 South LaSalle Street
Chicago, Illinois 60603
(312) 782-0600

Wayne W. Whalen
Edward M. Crane
Gregory S. Bailey
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM
(ILLINOIS)
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

William R. Quinlan
QUINLAN & CARROLL, LTD.
30 North LaSalle Street,
Suite 2900
Chicago, Illinois 60602
(312) 263-0900

Robert H. Shultz, Jr.
HEYL, ROYSTER,
VOELKER & ALLEN
103 West Vandalia,
P.O. Box 467
Edwardsville, Illinois 62025
(618) 656-4646

Marci A. Eisenstein
Aphrodite Kokolis
SCHIFF, HARDIN & WAITE
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500

Of Counsel:
Sheila L. Birnbaum
Douglas W. Dunham
Ellen P. Quackenbos
SKADDEN, ARPS SLATE,
MEAGHER & FLOM LLP
4 Times Square
New York, New York 10036
(212) 735-3000

Gino L. DiVito
TABET, DIVITO &
ROTHSTEIN LLC
209 South LaSalle Street,
Seventh Floor
Chicago, Illinois 60604
(312) 762-9460

A-71