No. 91494

# In the
# Supreme Court of Illinois

| | |
|---|---|
| **MICHAEL E. AVERY, et al.**, on behalf of themselves and all others similarly situated, *Class Plaintiffs-Appellees-Petitioners*, <br><br> v. <br><br> **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** *Defendant-Appellant-Respondent*. | ) On Appeal from Appellate Court <br> ) of Illinois, Fifth Judicial District, <br> ) No. 5-99-0830, there heard on <br> ) Appeal from Circuit Court, First <br> ) Judicial Circuit, Williamson <br> ) County, Illinois, No. 97-L-114 <br> ) Hon. John Speroni, <br> ) Judge Presiding <br> ) |

## RESPONSE IN OPPOSITION TO PETITION TO RECALL MANDATE AND VACATE AUGUST 18, 2005 JUDGMENT

Joseph A. Cancila, Jr.
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
t 312.258.5500
f 312.258.5600

Robert H. Shultz, Jr.
HEYL, ROYSTER, VOELKER &
  ALLEN, P.C.
Mark Twain Plaza III, Suite 100
105 West Vandalia Street
PO Box 467
Edwardsville, IL 62025
t 618.656.4646
f 618.656.7940

Of Counsel:
Sheila L. Birnbaum
Douglas W. Dunham
Ellen P. Quackenbos
David S. Weinraub
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
t 212.735.3000
f 212.735.2000

J. Timothy Eaton
SHEFSKY & FROELICH, LTD.
111 East Wacker
Suite 2800
Chicago, IL 60601
t 312.836.4071
f 312.527.4011

Defendant-Respondent State Farm Mutual Automobile Insurance Company ("State Farm") respectfully submits this opposition to the Petition to Recall Mandate and Vacate August 18, 2005 Judgment ("Petition" or "Pet.") submitted by Plaintiffs-Petitioners ("Plaintiffs"). In support of this opposition, State Farm states as follows:

## INTRODUCTION

1.     More than six years after this Court's decision in this case, Plaintiffs have filed a Petition to recall the mandate. Plaintiffs' Petition is based upon their claim that Justice Karmeier should not have participated in the Court's decision. Plaintiffs have already brought that claim before the Court three times, twice during the pendency of the appeal and once after the Court's decision had issued. The Court rejected Plaintiffs' claim each time. Plaintiffs also made that same claim in a petition for a writ of certiorari to the United States Supreme Court, which was denied.

2.     Although Plaintiffs assert that "Justice Karmeier's decision to participate in the appeal was not subject to review by any other Supreme Court Justice" (Pet. ¶ 30), the Court in fact considered and decided Plaintiffs' first motion to recuse Justice Karmeier. (*See* March 16, 2005 Order (State Farm's Separate Appendix of Exhibits ("SF App.") at A-327).) Moreover, although that Order was subsequently vacated, and the decision whether to participate was left to Justice Karmeier (*see* May 20, 2005 Order (SF App. at A-463)), the Court, not Justice Karmeier alone, rejected Plaintiffs' petition for rehearing, which advanced the same due process and other arguments that are the basis of Plaintiffs' new Petition. (*See* September 26, 2005 Order (SF App. at A-492); *see also* Pls' Pet. for Rehearing at 6-11 (SF App. at A-472 to A-477).)

3.     Plaintiffs' attempt to overturn the judgment in this case through a retroactive disqualification of Justice Karmeier would contravene important judicial

policy concerns. As this Court has stated, "[d]isqualification of a judge is not a decision to be made lightly." *People v. Jackson*, 205 Ill. 2d 247, 276, 793 N.E.2d 1, 19 (2001). The decision is even more weighty when the judge in question is a justice of the Supreme Court and disqualification could prevent the Court from issuing an authoritative opinion resolving important legal issues. In this case, Plaintiffs seek to overturn what is now settled law in this State by arguing that Justice Karmeier should not have participated in the decision. This Court's opinion in *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 835 N.E.2d 801 (2005), has been cited and relied upon in hundreds of judicial opinions in Illinois and elsewhere. Vacating the opinion and judgment in *Avery* would be disruptive in the extreme to the Illinois legal system.

4. Illinois through its Constitution has determined that its Supreme Court Justices should be chosen through elections, and campaign contributions are a necessary component of that system of judicial elections. Plaintiffs' repeated attempts to disqualify Justice Karmeier, if accepted by this Court, would impermissibly chill participation in the judicial electoral process in violation of the First Amendment. The rule Plaintiffs urge would discourage both contributions and participation in judicial campaigns not only by attorneys but also by businesses, organizations and individuals. The result would also be severely detrimental to Illinois' system of judicial elections.

5. Plaintiffs assert that they have discovered new facts that justify their current Petition. To the contrary, Plaintiffs' Petition advances the same contentions Plaintiffs advanced in their prior attempts to attribute to State Farm campaign contributions made by other organizations and entities. Just as they did in previous submissions, Plaintiffs again claim that campaign contributions made by the United

2

States Chamber of Commerce, the Illinois Civil Justice League ("ICJL"), JUSTPAC, and other independent organizations are attributable to State Farm, and they again assert that State Farm was responsible for "massive" contributions to Justice Karmeier's campaign committee – even though State Farm itself made no contribution to the campaign. As shown below, Plaintiffs' purported new evidence for the most part is not new, and does not support their contentions concerning what Plaintiffs now call "State Farm-influenced" contributions. Plaintiffs' distortions and misrepresentations cannot sustain their claims of an appearance of impropriety, much less of any deprivation of their due process rights or any actual unfairness in the Court's adjudication of this case.

6.     As an initial matter, Plaintiffs' Petition should be denied because the Petition is *years* beyond the statutory two-year period allowed for reopening a judgment. Plaintiffs' claims that State Farm somehow concealed the information upon which they now rely are without merit. First, there was no concealment. Indeed, many of the same purported facts on which Plaintiffs now rely were specifically asserted in their earlier submissions to the Court. Second, the few new allegations contained in Plaintiffs' Petition do not materially alter the allegations Plaintiffs have relied upon all along in their efforts to secure Justice Karmeier's non-participation.

7.     Plaintiffs' Petition also fails on the merits. The evidence now submitted by Plaintiffs does not back up their assertions. According to Plaintiffs, State Farm somehow picked Justice Karmeier as a candidate, managed his campaign, and made massive contributions to his campaign. The picture Plaintiffs attempt to paint has no relationship to reality. Contrary to Plaintiffs' contentions, State Farm does not control the United States Chamber of Commerce. The purported "evidence" relied upon by

3

Plaintiffs and their affiants would not establish otherwise even if it were admissible and competent, which it is not.[1]  As discussed in further detail below, Plaintiffs rely upon random pages from an undated deposition transcript from an unnamed litigation. (*See* Pet. ¶ 50; Wojcieszak Aff. Exs. 15-17 (Pls' Separate Appendix of Exhibits ("Pls' App.") at A-152 to A-254).)  That deposition testimony does not even mention State Farm or any State Farm officer or employee.  Plaintiffs' other allegations, attempting *inter alia* to attribute to State Farm contributions made by the ICJL, are similarly meritless and improper and are not new.  *See infra* ¶¶ 45-49.  As before, Plaintiffs' attempt to disqualify Justice Karmeier rests upon unfounded speculation and unscrupulous innuendo and brings discredit not on Justice Karmeier but on the attorneys who have filed the Petition.

8.    This case is not analogous to *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252 (2009).  There, a litigant's CEO directly contributed approximately $3 million dollars to the election campaign of a justice whose participation in deciding the litigant's appeal was "foreseeable" and who knew of the litigant's contributions and was likely to "feel a debt of gratitude" to the litigant for his "'bestowal of his personal wealth.'"  *Id.* at 2258, 2262, 2264-65 (citation omitted).  Here, Plaintiffs rely not on actual contributions by State Farm or its employees, but on tenuous and conclusory allegations that the campaign contributions of others should be attributed to State Farm.  Moreover, although Plaintiffs misleadingly claim that Justice Karmeier "knew" the identity of his contributors (Pet. ¶ 3), there is absolutely no basis for Plaintiffs' insinuation that Justice Karmeier knew or believed that he was (supposedly) receiving extraordinary (or any) contributions

---

[1]  Concurrent with this Response, State Farm has also filed motions to strike the inadmissible and incompetent affidavits of Daniel L. Reece and Douglas B. Wojcieszak.

from or attributable to State Farm. Nor was it foreseeable at the time of Justice Karmeier's election campaign that Justice Karmeier would participate in this case. Oral argument in this case took place in May 2003, and the Court's opinion could reasonably have been expected to issue well before Justice Karmeier's election almost eighteen months later, in November 2004.

9. In sum, the Court's opinion in *Avery* is final and authoritative. Illinois by statute sets a two-year limit on petitions to vacate a judgment. *See* 735 ILCS 5/2-1401(c). Plaintiffs have failed to establish any reason why that two-year limit should not apply in this case. Nor have Plaintiffs established any reason for the Court or Justice Karmeier to revisit their rejection of Plaintiffs' efforts to disqualify Justice Karmeier. Plaintiffs' Petition should be denied in its entirety.

## PLAINTIFFS' ATTACK ON THE JUDGMENT AS "VOID" IS WITHOUT MERIT AND DOES NOT RENDER THE REQUIREMENTS OF 735 ILCS 5/2-1401(a)–(c) INAPPLICABLE

10. Illinois law imposes a two-year time limit on petitions seeking relief from judgments. *See* 735 ILCS 5/2-1401(c). Plaintiffs attempt to escape the two-year time limit by characterizing the Court's decision and the judgment in this case as "void" and by invoking section 2-1401(f).[2] (*See* Pet. ¶¶ 14-16.) Plaintiffs contend that this Court's 2005 judgment is void because State Farm purportedly misled the Court regarding the circumstances of Justice Karmeier's 2004 campaign and because Justice Karmeier's

---

[2] Section 2-1401(f) provides that section 2-1401 does not "affect[] any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." 735 ILCS 5/2-1401(f). Because the judgment in this case is not void, section 2-1401(f) is not applicable. *See infra* ¶¶ 10-23. Moreover, "section 2-1401(f) does not in itself provide a statutory vehicle for seeking relief from a void order or judgment." *Dahl v. Grenier*, 126 Ill. App. 3d 891, 893, 467 N.E.2d 992, 994 (1st Dist. 1984).

participation in the *Avery* appeal purportedly deprived them of due process. (*See id.* ¶¶ 13-14.) As shown below, none of Plaintiffs' grounds for attacking the judgment, even if accepted, would render the judgment void, rather than voidable. Accordingly, the two-year time limit is applicable and bars Plaintiffs' Petition.

11.     The finality of judgments is a fundamental principle of our legal system. *See, e.g., Malek v. Lederle Labs.*, 152 Ill. App. 3d 493, 497, 504 N.E.2d 893, 895 (1st Dist. 1987) (noting "strong judicial policy favoring the finality and stability of judgments"). Accordingly, this Court has repeatedly emphasized "the trend of modern authority favoring finality of judgments over alleged defects in validity." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 341, 770 N.E.2d 177, 188 (2002); *see also, e.g., In re Marriage of Mitchell*, 181 Ill. 2d 169, 175, 692 N.E.2d 281, 284 (1998) (same). "'[B]ecause of the disastrous consequences which follow when orders and judgments are allowed to be collaterally attacked, orders should be characterized as void only when no other alternative is possible.'" *Belleville Toyota, Inc.*, 199 Ill. 2d at 341, 770 N.E.2d at 188 (citation omitted).

12.     The finality of the judgment in this case is particularly important because this Court's opinion in *Avery* has been settled law for more than six years and has been cited and relied upon in numerous judicial opinions in Illinois as well as numerous state and federal court opinions throughout the country, including approximately 160 trial court opinions, 69 appellate court opinions, and 13 state supreme court opinions. Plaintiffs' Petition not only asks this Court to disturb State Farm's long-vested interest in the final judgment in this case, but also to undermine the validity of these hundreds of other decisions.

6

13.     "'Judgments entered in a civil proceeding may be collaterally attacked as void only where there is a total want of jurisdiction in the court which entered the judgment, either as to the subject matter or as to the parties.'" *In re Marriage of Mitchell*, 181 Ill. 2d at 174, 692 N.E.2d at 284 (citation omitted). As this Court stated in authority cited by Plaintiffs (*see* Pet. ¶ 16), "[a] void judgment is one entered by a court without jurisdiction of the parties or the subject matter or that lacks 'the inherent power to make or enter the particular order involved.'" *People v. Wade*, 116 Ill. 2d 1, 5, 506 N.E.2d 954, 955 (1987) (citation omitted).     Plaintiffs have not cited a single case holding or suggesting that a judge's purportedly erroneous failure to recuse himself is grounds for voiding a final judgment entered years earlier by a court that undisputedly had both jurisdiction and the inherent power to enter the orders and judgment in question.

14.     Where a court has acted within its jurisdiction and inherent authority, "an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law." *In re Marriage of Mitchell*, 181 Ill. 2d at 174, 692 N.E.2d at 284.[3] This is because "the power to decide carries with it the power to decide wrong as well as to decide right." *People v. Davis*, 156 Ill. 2d 149, 156, 619 N.E.2d 750, 754 (1993).

15.     Thus, as this Court has explained, "'[t]here are many rights belonging to litigants – rights which a court may not properly deny, and yet which if denied do not oust the judgment or render the proceedings absolutely null and void.'" *Id.* at 157, 619

_____

[3]     *See also, e.g., Vulcan Materials Co. v. BEE Constr.*, 96 Ill. 2d 159, 165, 449 N.E.2d 812, 814 (1983) ("An order is rendered void not by error or impropriety but by lack of jurisdiction by the issuing court."); *Johnston v. City of Bloomington*, 77 Ill. 2d 108, 112, 395 N.E.2d 549, 550 (1979) (if court has jurisdiction, "no error committed by the court can render the judgment void").

N.E.2d at 755 (citation omitted). This is true even where (as here) a party claims an error of constitutional dimension. *See People v. Speed*, 318 Ill. App. 3d 910, 932, 743 N.E.2d 1084, 1088 (3rd Dist. 2001) ("When a court with inherent power to enter an order commits a procedural error while exercising that power, the error does not render the court's judgment void, but merely voidable. . . . This rule encompasses defects of constitutional dimension."). *See also, e.g., Davis*, 156 Ill. 2d at 157, 619 N.E.2d at 755 (apparent double jeopardy violation did not render resulting judgment void); *People v. Raczkowski*, 359 Ill. App. 3d 494, 498, 834 N.E.2d 596, 600 (1st Dist. 2005) ("failure to provide an interpreter may have violated defendant's constitutional and statutory rights" but did not render resulting judgment void).

16.     The judgment in this case is not void because:  (a) Plaintiffs do not challenge the Court's jurisdiction or inherent power to enter the orders and judgment in question, and the purported fraud asserted by Plaintiffs does not go to the Court's jurisdiction; (b) Plaintiffs do not claim that the judgment is void on its face but rely instead on purportedly new evidence; and (c) res judicata precludes Plaintiffs from reasserting the same recusal and due process arguments that this Court previously rejected as the basis for a voidness challenge.

### Justice Karmeier's Participation in the Avery Appeal Did Not Render the Judgment Void

17.     Justice Karmeier's refusal to recuse himself and this Court's refusal to disqualify him were correct.  Plaintiffs' Petition merely rehashes their prior arguments without presenting any new information that would have warranted a different result. *See infra* ¶¶ 42-57. However, even if Plaintiffs could show that Justice Karmeier should have recused himself or been disqualified, that would not render the Court's orders or

judgment void because it is undisputed that the Court had personal jurisdiction, subject matter jurisdiction, and the inherent power to enter the orders and judgment in question. *See, e.g., Davis,* 156 Ill. 2d at 157, 619 N.E.2d at 755.

18.     In addition, Plaintiffs do not assert that the judgment is void on its face, but rely upon what they claim is newly discovered evidence that was not in the record at the time judgment was entered.  "Where a motion to vacate a judgment is predicated upon error which is not apparent from the record and requires proof by other evidence, the party seeking to vacate the judgment must proceed under section 2-1401 and must comply with all of the requirements set forth in that section." *In re Marriage of Stefiniw,* 253 Ill. App. 3d 196, 201, 625 N.E.2d 358, 362 (1st Dist. 1993).  Accordingly, the judgment is not void, but merely voidable and may only be challenged through a timely direct appeal or a timely petition for post-judgment relief. *See, e.g., Vulcan Materials Co. v. BEE Constr.,* 96 Ill. 2d 159, 165-66, 449 N.E.2d 812, 815 (1983); *accord Raczkowski,* 359 Ill. App. 3d at 498-99, 834 N.E.2d at 600-01; *Speed,* 318 Ill. App. 3d at 932, 743 N.E.2d at 1088.  Plaintiffs exhausted their appellate rights more than five years ago and, as discussed below, they cannot satisfy the applicable standards for post-judgment relief under 735 ILCS 5/2-1401. *See infra* ¶¶ 24-41.

### *Res Judicata Precludes Plaintiffs From Reasserting Their Previously Rejected Recusal Arguments as the Basis for a Voidness Challenge*

19.     Even assuming *arguendo* that a judgment could ever be deemed void on the grounds Plaintiffs assert, this Court has already considered and repeatedly rejected Plaintiffs' argument that Justice Karmeier's participation in the *Avery* appeal deprived them of due process.  Res judicata precludes Plaintiffs from attempting to void this Court's judgment based on these same arguments. *See Doctor's Assocs., Inc. v. Duree,*

319 Ill. App. 3d 1032, 1046, 745 N.E.2d 1270, 1282-83 (1st Dist. 2001) (rejecting voidness challenge that was based on same assertions of judicial bias unsuccessfully raised in the original proceeding as "precluded by res judicata").

### Plaintiffs' Assertions of Fraud on the Court Are Not Grounds for a Voidness Challenge

20.    Plaintiffs assert that "[t]his Court has jurisdiction over this matter because . . . State Farm committed an extrinsic fraud on this Court through concealment of its extraordinary support of Justice Karmeier's election campaign" and that "[t]his extrinsic fraud renders the Court's judgment void and reviewable pursuant to this Petition." (Pet. ¶ 14.) This assertion is incorrect. Plaintiffs mistake the meaning of "extrinsic fraud" and, even if this were a case of extrinsic fraud, Plaintiffs as "[t]he party attacking [a] judgment on the ground of extrinsic fraud" cannot meet their "burden of supporting [their] claim with adequate evidentiary support." *Duree*, 319 Ill. App. 3d at 1043, 745 N.E.2d at 1280.

21.    It is well established that "[o]nly fraud that is extrinsic, as opposed to intrinsic, will render a . . . judgment void and unenforceable. *Duree*, 745 N.E.2d at 1280. "'Extrinsic fraud' is that which prevents the rendering court from acquiring jurisdiction or merely gives it colorable jurisdiction over the matter." *Id.* For example, "extrinsic fraud [occurs] where the unsuccessful party has been kept away from the courthouse or been kept ignorant of the suit." *Id.* By contrast, "'[i]ntrinsic fraud' . . . is fraud that occurs after the forum court acquires jurisdiction, such as false testimony *or concealment*." *Id.* (emphasis added). Likewise, this Court has held that "[i]t is well established that once a court acquires jurisdiction, subsequent fraud, *concealment*, or perjury will not render its order void." *Vulcan Materials Co.*, 96 Ill. 2d at 165, 449 N.E.2d at 815 (emphasis added).

10

22.     None of Plaintiffs' allegations of fraud satisfy the Court's definition of "extrinsic fraud" in *Vulcan Materials*. To the contrary, Plaintiffs' fraud allegations are clearly "intrinsic." Plaintiffs' Petition is based on their (erroneous) allegation that State Farm concealed information that related to the merits of Plaintiffs' various motions to recuse or disqualify Justice Karmeier, at a time when the Court had already acquired jurisdiction over these motions and the *Avery* appeal. As a matter of law, such allegations of intrinsic fraud cannot support a voidness challenge. *See Vulcan Materials Co.*, 96 Ill. 2d at 165, 449 N.E.2d at 815; *Duree*, 319 Ill. App. 3d at 1043, 745 N.E.2d at 1280. In any case, as shown below, *see infra* ¶¶ 42-57, Plaintiffs' assertions of fraud are not supported by the purported evidence relied upon by Plaintiffs and are without merit. As a matter of law, such unfounded assertions of fraud cannot support a voidness challenge. *See id.* at 165, 449 N.E.2d at 815; *Duree*, 319 Ill. App. 3d at 1043, 745 N.E.2d at 1280.

23.     In sum, Plaintiffs' Petition does not assert any grounds that could even potentially satisfy the requirements for attacking a final judgment as void. Accordingly, 735 ILCS 5/2-1401(f) is not applicable, and Plaintiffs' Petition is subject to the requirements for post-judgment relief set forth in 735 ILCS 5/2-1401(a)–(c). *See, e.g.*, *Vulcan Materials Co.*, 96 Ill. 2d at 165-66, 449 N.E.2d at 815; *Speed*, 318 Ill. App. 3d at 932, 743 N.E.2d at 1088; *In re Marriage of Stefiniw*, 253 Ill. App. 3d at 201, 625 N.E.2d at 362; *S.I. Sec. v. Powless*, 403 Ill. App. 3d 426, 444, 934 N.E.2d 1, 15-16 (5th Dist. 2010). As shown below, Plaintiffs have clearly failed to satisfy those requirements.

### PLAINTIFFS HAVE NOT MET THE REQUIREMENTS FOR POST-JUDGMENT RELIEF UNDER SECTION 2-1401

24.     The two-year time limit for petitions for relief from judgment under

section 2-1401(a) has long since expired in this case. As shown below, the two-year time limit cannot be extended under section 2-1401(c) because Plaintiffs have not met their burden of showing that State Farm fraudulently concealed the ground for relief from judgment from Plaintiffs. *See infra* ¶¶ 25-37. Nor have Plaintiffs made the required showing that they exercised due diligence both in the original proceeding and in filing their Petition. *See infra* ¶¶ 38-40. Moreover, even if Plaintiffs could overcome these hurdles, Plaintiffs' Petition still fails because their purported newly-discovered evidence is merely cumulative and would not have warranted a different result if presented in support of Plaintiffs' recusal and disqualification motions. *See infra* ¶¶ 41-57.

### *Plaintiffs' Petition Is Time-Barred*

25.     A section 2-1401 petition "must be filed not later than 2 years after the entry of the order or judgment" sought to be vacated. 735 ILCS 5/2-1401(c). "The purpose of section 2-1401's time limitation is to 'establish necessary stability and finality in judicial proceedings.'" *Powless*, 403 Ill. App. 3d at 440-41, 934 N.E.2d at 12 (citation omitted) (reversing lower court's order granting 2-1401 petition). The two-year limitations period can only be tolled in narrow circumstances where the ground for the petition has been fraudulently concealed or in certain other circumstances not relevant here (legal disability or duress). *See* 735 ILCS 5/2-1401(c). "To prove fraudulent concealment, the petitioner must show by clear and convincing evidence that the respondent intentionally misstated or concealed a material fact that he had a duty to disclose and that she detrimentally relied upon his statement or conduct . . . ." *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 148, 673 N.E.2d 1140, 1143 (2nd Dist. 1996) (reversing lower court's order granting petition to vacate judgment). A plaintiff asserting fraudulent concealment must "'show affirmative acts by the defendant which were

12

section 2-1401(a) has long since expired in this case. As shown below, the two-year time limit cannot be extended under section 2-1401(c) because Plaintiffs have not met their burden of showing that State Farm fraudulently concealed the ground for relief from judgment from Plaintiffs. *See infra* ¶¶ 25-37. Nor have Plaintiffs made the required showing that they exercised due diligence both in the original proceeding and in filing their Petition. *See infra* ¶¶ 38-40. Moreover, even if Plaintiffs could overcome these hurdles, Plaintiffs' Petition still fails because their purported newly-discovered evidence is merely cumulative and would not have warranted a different result if presented in support of Plaintiffs' recusal and disqualification motions. *See infra* ¶¶ 41-57.

### *Plaintiffs' Petition Is Time-Barred*

25.     A section 2-1401 petition "must be filed not later than 2 years after the entry of the order or judgment" sought to be vacated. 735 ILCS 5/2-1401(c). "The purpose of section 2-1401's time limitation is to 'establish necessary stability and finality in judicial proceedings.'" *Powless*, 403 Ill. App. 3d at 440-41, 934 N.E.2d at 12 (citation omitted) (reversing lower court's order granting 2-1401 petition). The two-year limitations period can only be tolled in narrow circumstances where the ground for the petition has been fraudulently concealed or in certain other circumstances not relevant here (legal disability or duress). *See* 735 ILCS 5/2-1401(c). "To prove fraudulent concealment, the petitioner must show by clear and convincing evidence that the respondent intentionally misstated or concealed a material fact that he had a duty to disclose and that she detrimentally relied upon his statement or conduct . . . ." *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 148, 673 N.E.2d 1140, 1143 (2nd Dist. 1996) (reversing lower court's order granting petition to vacate judgment). A plaintiff asserting fraudulent concealment must "'show affirmative acts by the defendant which were

12

designed to prevent, and in fact did prevent, the discovery of the claim.'" *Powless*, 403 Ill. App. 3d at 441, 934 N.E.2d at 13 (citation omitted).

26.     Plaintiffs' allegations of fraudulent concealment are insufficient as a matter of law.  Plaintiffs claim that State Farm "lied" to the Court in its responses to Plaintiffs' recusal and disqualification motions. (Pet. ¶ 2; *see also id.* ¶¶ 36, 57, 63.)  But, in fact, the purported "lies" identified by Plaintiffs are simply legal argument and opinion, assessments of the evidence by State Farm that differed from Plaintiffs' assessment of the evidence, or misrepresentations by Plaintiffs of the statements actually made by State Farm.

27.     For example, Plaintiffs claim that State Farm "falsely denied" that Edward Murnane of the ICJL "ran all phases of Justice Karmeier's campaign;" "den[ied] Murnane's  involvement in Justice Karmeier's campaign;" and "boldly and flippantly declared that 'Mr. Murnane . . . was not Justice Karmeier's campaign manager or campaign finance chairman and was not employed by Justice Karmeier's campaign." (Pet. ¶ 41 (citing Opp. to Pls' Conditional Mot. for Non-Participation at 15-16).)  In fact, Murnane was not Justice Karmeier's campaign manager or campaign finance chairman and was not an employee of Justice Karmeier's campaign.  (*See* Ex. 3 to Pls' Conditional Mot. for Non-Participation (SF App. at A-595 to A-596).) Moreover, even assuming that Plaintiffs' "newly discovered" email evidence showed anything of significance as to Murnane's role on the Karmeier campaign (and it does not, *see infra* ¶¶ 51-53, 55), State Farm can hardly be faulted for not having rummaged through the Karmeier campaign's discarded emails (as an investigator working with Plaintiffs' affiant Mr. Wojcieszak and a "group of Illinois trial lawyers" apparently did, *see infra* ¶ 51), and not finding and

disclosing those emails to Plaintiffs. In short, there was no fraud or misrepresentation as to Murnane's support for Karmeier's campaign.

28.    Plaintiffs also claim that State Farm's use of the phrase "quite modest" to describe five specific campaign contributions ranging from $200 to $250 was a "lie[]." (Pet. ¶¶ 7, 39, 47, 49 (citing Opp. to Pls' Conditional Mot. for Non-Participation ¶ 21).) Likewise, Plaintiffs cite State Farm's use of the phrase "incorrect and meritless" to describe Plaintiffs' attempt to attribute to State Farm various other organizations' donations to the Karmeier campaign. (*Id.* ¶ 39 (citing Opp. to Pls' Conditional Mot. for Non-Participation ¶ 19).) State Farm stands by these descriptions but, for present purposes, the important point is that such descriptions and argument simply do not constitute fraud. *See, e.g., Connick v. Suzuki Motor Co.*, 275 Ill. App. 3d 705, 723, 656 N.E.2d 170, 183 (1st Dist. 1995) ("Mere subjective descriptions or opinions do not qualify as fraudulent misrepresentations of fact."), *aff'd in part, rev'd in part on other grounds*, 174 Ill. 2d 482, 675 N.E.2d 584 (1996).

29.    Similarly, Plaintiffs complain that, in its opposition to Plaintiffs' original motion to disqualify Justice Karmeier, State Farm pointed out that Plaintiffs had concocted a contention that State Farm had somehow "'engineer[ed] contributions' to Justice Karmeier's campaign" and had provided no facts to support that contention. (Pet. ¶ 46 (quoting Opp. to Pls' Conditional Mot. for Non-Participation at 11).) Likewise, Plaintiffs complain that State Farm "suggest[ed]" that Plaintiffs' counsel "had presented 'no evidence whatsoever to back up' their claim" that contributing organizations and businesses were State Farm "front groups." (*Id.*) Plaintiffs provide no authority for their notion that a litigant who questions the sufficiency of an opposing party's evidence has

14

thereby committed fraud. Moreover, as shown throughout this submission, Plaintiffs' present allegations on these same topics suffer from the same utter lack of evidentiary support.

30.     The purported failures to disclose that are alleged in Plaintiffs' Petition also do not constitute fraudulent concealment under section 2-1401(c). "'Silence alone on the part of the defendant, accompanied by the failure of the plaintiff to discover the cause of action, ordinarily does not constitute fraudulent concealment.'" *Powless*, 403 Ill. App. 3d at 441, 934 N.E.2d at 13 (citation omitted); *see also Malek*, 152 Ill. App. 3d at 500, 504 N.E.2d at 897 (absent duty to disclose, party's refusal to produce information was not fraudulent; reversing lower court's order granting 2-1401 petition).[4] Thus, as a matter of law, Plaintiffs' assertions of purported failures to disclose by State Farm do not show fraudulent concealment.

31.     Moreover, "the statute of limitations will not be tolled where the petitioner could have discovered the grounds for section 2-1401 relief with the exercise of ordinary diligence." *Powless*, 403 Ill. App. 3d at 441, 934 N.E.2d at 13. Plaintiffs' Petition is based primarily on the affidavit of their private investigator, Daniel L. Reece. (*See* Pet. ¶ 3.) Reece's investigation consisted of "reviewing publicly-filed documents, news articles, and other lawfully obtained materials, as well as person-to-person interviews" with various non-parties. (*See* Reece Aff. ¶ 14 (Pls' App. at A-6).) While Plaintiffs contend that these non-parties "finally broke their silence" (Pet. ¶ 1), it would be more accurate to

---

[4]     In *Lubbers v. Norfolk & Western Railway Co.*, 105 Ill. 2d 201, 473 N.E.2d 955 (1984), relied upon by Plaintiffs (*see* Pet. ¶ 14). the Court found fraudulent concealment was based on the defendant's misleading responses to the plaintiff's interrogatories. *See Lubbers*, 105 Ill. 2d at 210-11, 473 N.E.2d at 959-60.

say that Plaintiffs "finally" had someone pick up the phone and call them. Nothing prevented Plaintiffs from exercising due diligence by either hiring Reece or simply performing this basic research themselves within the two-year time limit.

32.     In addition, Plaintiffs cannot show – and have not even attempted to show – that they relied in any way on State Farm's purported misstatements or concealment. The party asserting fraudulent concealment must prove, *inter alia*, "that she detrimentally relied upon [the other party's] statement or conduct." *In re Marriage of Himmel*, 285 Ill. App. 3d at 148, 673 N.E.2d at 1143. Plaintiffs clearly did not believe or detrimentally rely upon anything State Farm said with respect to Justice Karmeier's campaign.

33.     In any case, Plaintiffs' claims of fraudulent concealment involve purported facts and evidence well known to Plaintiffs and presented in their earlier submissions to this Court. For example, Plaintiffs claim that the "[f]oremost among [State Farm's] concealment and misleading statements" is its "failure to disclose" the "prominent role" of "State Farm lawyer and lobbyist" Bill Shepherd. (Pet. ¶ 40; *see id.* ¶ 8.) In their attempt to portray these purported facts as "concealed" and now "newly-discovered," Plaintiffs represent that

> [i]t was unknown to Petitioners in 2005 that State Farm's Shepherd had helped found the ICJL and was a charter member of its 'Executive Committee' which engineered Justice Karmeier's candidacy – through ICJL-head Murnane, 'vetted' Justice Karmeier, endorsed his candidacy, and insured a substantial flow of cash to Justice Karmeier's campaign from State Farm executives, employees, and corporate and political partners.

(*Id.* ¶ 40; *see also id.* ¶ 41 (Shepherd had "weekly-Friday conference calls" with Murnane); *id.* ¶ 49 (Plaintiffs' counsel "were not aware of Shepherd's affiliation with the ICJL (as a founder and Executive Committee member")).)

34.     In reality, with the sole exception of Mr. Shepherd's position on ICJL's Executive Committee, Plaintiffs made every single one of these assertions in their 2005 briefing.  For example, Plaintiffs argued in 2005 that:

- "State Farm lawyer and lobbyist Bill Shepherd was instrumental in the founding of [ICJL and JUSTPAC]." (Pet. for Writ of Cert. at 7 (SF App. at A-509).)

- Shepherd "plays an active role in the Illinois Civil Justice League and confers often with Ed. Murnane." (Mem. Supp. Pls' Conditional Mot. for Non-Participation at 17-18 (SF App. at A-43 to A-44).)

- "Ed Murnane had a direct relationship with State Farm through Shepherd and Ed Rust."  (Pls' Mem. in Resp. to Appellants' Opp. to Non-Participation at 10 (SF App. at A-170).)

- "Murnane in concert with State Farm lobbyist/attorney Bill Shepherd recruited Justice Karmeier to run for the Illinois Supreme Court and managed Justice Karmeier's campaign." (*Id.* at 10-11 (SF App. at A-170 to A-171).)[5]

35.     Likewise, in support of their argument that State Farm "concealed" the scope of its alleged support for the Karmeier campaign, Plaintiffs claim they "initially believed" that State Farm was only responsible for "$350,000" in donations to Justice Karmeier's campaign.  (Pet. ¶ 6.)  To the contrary, Plaintiffs argued in 2005 that State Farm was also responsible for "more than a million dollars more in indirect donations." (Pet. for Writ of Cert. at 19 (SF App. at A-515); *see also id.* at i (SF App. at A-502); Mem. Supp. Pls' Conditional Mot. for Non-Participation at 11-14 (SF App. at A-37 to A-40) (attempting to attribute to State Farm contributions from, *inter alia*, Allstate, the Ford Motor Company, General Motors PAC, the Illinois Chamber of Commerce, the Illinois

---

[5]     (*See also* Ex. 1 to Pls' Conditional Mot. for Non-Participation, at ¶ 7 (1/25/2005 Aff. of Douglas Wojcieszak) (SF App. at A-588 to A-589) ("Murnane and Shepherd were in close communication.  Ed Murnane said he and Bill Shepherd have conference calls on Friday mornings . . . . ").)

Manufacturer's Association, the United States Chamber of Commerce, and JUSTPAC).)

36. Thus, Plaintiffs' representation that the purported facts discussed above were "unknown" to them in 2005 is simply false. This is fatal to Plaintiffs' Petition because State Farm clearly could not have "concealed" information that Plaintiffs already knew, nor can such information be considered "newly-discovered" evidence. As Plaintiffs' own authority makes clear, "the alleged errors of fact on which such a petition is based must not have been known to the court or the moving party at the time of judgment." *Lubbers*, 105 Ill. 2d at 209-10, 473 N.E.2d at 959.

37. In sum, Plaintiffs' Petition is barred by section 2-1401's two-year limitations period, and Plaintiffs cannot invoke section 2-1401's tolling provision because they have not presented any evidence – let alone clear and convincing evidence – of fraudulent concealment.

### *Plaintiffs Cannot Satisfy the Due Diligence Requirement*

38. To prevail on a section 2-1401 petition, the petitioner must prove by a preponderance of the evidence that he exercised due diligence both in "presenting [his claim] in the original action . . . and . . . in filing the section 2-1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221, 499 N.E.2d 1381, 1386 (1986) (affirming denial of 2-1401 petition); *see also Malek*, 152 Ill. App. 3d at 501, 504 N.E.2d at 898 ("[T]he law is clear that the diligence required of a petitioner relates both to the discovery of the evidence, as well as to the timeliness of plaintiff's post-trial petition.").

39. As this Court has explained, "[d]ue diligence requires the section 2-1401 petitioner to have a reasonable excuse for failing to act within the appropriate time." *Smith*, 114 Ill. 2d at 222, 499 N.E.2d at 1386. "[A] party relying on section 2-1401 is not entitled to relief 'unless he shows that through no fault or negligence of his own, the error

18

of fact or the existence of a valid defense was not made to appear to the trial court.'" *Id.* at 222, 499 N.E.2d at 1387 (citation omitted). "Specifically, the petitioner must show that his failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he failed to initially resist the judgment." *Id.*

40.    Plaintiffs do not even attempt to satisfy their burden of proving due diligence. Plaintiffs (erroneously) claim that certain information was "unknown to [them] in 2005." (Pet. ¶ 40.) As previously explained, much of the purported information on which Plaintiffs rely was known or available to them in 2005 and even utilized in their prior submissions. Plaintiffs do not argue or attempt to show that they could not have discovered such information had they exercised due diligence. Any such argument would fail because, as discussed above, nothing prevented Plaintiffs from retaining an investigator or performing the necessary research themselves either before or promptly after final judgment was entered. Plaintiffs had no conceivable excuse for waiting until "December 2010" – more than five years after this Court decided the *Avery* appeal and denied Plaintiffs' recusal and disqualification motions – before retaining an investigator. (*See id.* ¶ 18.) Plaintiffs' failure to offer any excuse or explanation for their years of delay speaks volumes and requires that their Petition be denied for lack of due diligence. *See Smith*, 114 Ill. 2d at 222, 499 N.E.2d at 1386-87; *Malek*, 152 Ill. App. 3d at 501, 504 N.E.2d at 898.

### *Plaintiffs' "Newly Discovered Evidence" Is Merely Cumulative and Would Not Have Produced a Different Result*

41.    In addition to the above requirements, the petitioner seeking post-judgment relief based on newly-discovered evidence must also prove "that if the grounds

19

for relief had been known at trial, it would have prevented the entry of judgment against the petitioner." *Malek*, 152 Ill. App. 3d at 497, 504 N.E.2d at 895. The new evidence "must be of such a conclusive or decisive character and be sufficiently important enough to make it probable that a different [result would have been reached]." *Bianchi v. Bd. of Fire & Police Comm'rs, Joliet*, 41 Ill. App. 3d 998, 999, 354 N.E.2d 916, 917 (3rd Dist. 1976) (affirming denial of petition for post-judgment relief). As discussed below, *see infra* ¶¶ 42-57, to the extent there is any new evidence in Plaintiffs' Petition, that evidence is "merely cumulative" or is "not of a conclusive or controlling character, and therefore, would not have prevented entry of the judgment in this case." *Malek*, 152 Ill. App. 3d at 502, 504 N.E.2d at 898.

## PLAINTIFFS' "NEWLY-DISCOVERED EVIDENCE" DOES NOT WARRANT VACATING THE JUDGMENT

### *Plaintiffs' Untenable Claim that State Farm Was Responsible for the Contribution of the United States Chamber of Commerce*

42.     Plaintiffs claim that "deposition testimony in unrelated litigation" supports their attempt to attribute to State Farm contributions made to Justice Karmeier's campaign by the U.S. Chamber of Commerce. (Pet. ¶ 50.) Neither Plaintiffs nor their Affiant Douglas Wojcieszak identify the litigation in which the deposition testimony was given or specify the date of the testimony. (*See id.*; *see also* Wojcieszak Aff. ¶¶ 48-55 and Ex. 15 (Pls' App. at A-82 to A-83; A-152 to A-248.) In fact, the pages of deposition testimony included in Plaintiffs' appendix (Pls' App. at A-153 to A-161; A-164 to A-165; A-250 to A-254) do not even mention State Farm or Ed Rust, and they do not support Plaintiffs' contentions.

43.     Plaintiffs base their contentions regarding the U.S. Chamber of Commerce on testimony that "members" of an unidentified "task force" of the U.S. Chamber

Institute for Legal Reform made contributions of varying amounts to the Institute. (Wojcieszak Aff. Ex. 15 (Pls' App. at A-154 to A-155).) The deponent testified that the contribution "varies by member," with "the *highest* contribution" being "[a] million dollars." (*Id.* at A-155 (emphasis added).) The witness was "not sure what the lowest contribution is." (*Id.*) The "task force meets from time to time, mostly telephonically" and "the purpose of that task force is to advise [the Chamber] with respect to the kinds of voter education activity in which the ILR should engage" and to "prioritiz[e]" potential races. (*Id.* at A-250.) This vague and general testimony, which does not name or refer to State Farm or any State Farm employee, is not evidence that warrants a conclusion that the Chamber's contributions can be attributed to State Farm or that State Farm attempted to funnel or "steer" contributions through the Chamber to Justice Karmeier's campaign. Contrary to Plaintiffs' contentions, the assertion that State Farm's CEO was one member, among many, of the Institute's Board of Directors does not support the inference Plaintiffs seek to draw.[6] In short, any purported connection between State Farm's long-standing support of the Chamber and the Chamber's contribution to Justice Karmeier's campaign is too remote and tenuous to form a basis for vacating the judgment because of Justice Karmeier's participation.

44.     Plaintiffs seek to attribute to State Farm not only the U.S. Chamber's entire $2.05 million contribution to the Illinois Republican Party, but also sundry other contributions made by other individual and entities, bringing the supposed total to over $4 million. (*See* Pet. ¶¶ 55.) For this claim, Plaintiffs rely upon Wojcieszak's entirely

---

[6]     Notably, the list of directors includes 36 individuals. (*See* Wojcieszak Aff., Ex. 15 (Pls' App. at A-191 to A-192).)

unsupported contention that Ed Rust not only was able to "steer" the U.S. Chamber's contribution, but "was also in a position to steer money of other corporate donors to Karmeier's campaign." (Wojcieszak Aff. ¶ 64 (Pls' App. at A-85.) Although Wojcieszak conclusorily asserts that "[t]here is evidence" for these assertions, he fails to cite or attach any supporting exhibit or other "evidence" to support these claims. *See id.* In any case, these assertions are simply the same assertions made by Plaintiffs in their earlier submissions. (*See, e.g.*, Mem. Supp. Pls' Conditional Mot. for Non-Participation at 11-13 (Pls' App. at A-37 to A-39).)

### *Plaintiffs' Assertions Regarding the ICJL and JUSTPAC*

45.     Plaintiffs' allegations concerning their attempt to attribute to State Farm contributions actually made by the ICJL center on the purported role of State Farm lawyer William Shepherd.  These allegations are neither new or meritorious.  Plaintiffs claim that, unknown to Plaintiffs, Mr. Shepherd "helped found" the ICJL, was "a charter member of its 'Executive Committee,'" which Plaintiffs claim "engineered Justice Karmeier's candidacy – through ICJL-head [Ed] Murnane, 'vetted' Justice Karmeier, endorsed his candidacy, and insured a substantial flow of cash to Justice Karmeier's campaign from State Farm executives, employees, and corporate and political partners." (Pet. ¶ 40.)  Plaintiffs also claim that "Shepherd was in weekly-contact with Murnane during the race, engaging in weekly conference calls." (*Id.* ¶ 38.)

46.     As shown above, Plaintiffs made substantially the same allegations regarding Mr. Shepherd in their earlier submissions to the Court and to the United States Supreme Court, including their assertion that Shepherd engaged in weekly conference calls regarding the campaign.  *See supra* ¶ 34.  (*See also* Ex. 1 to Pls' Conditional Mot. for Non-Participation, at ¶ 7 (1/25/2005 Aff. of Douglas Wojcieszak) (SF App. at A-588

22

to A-589) ("Murnane and Shepherd were in close communication. Ed Murnane said he and Bill Shepherd have conference calls on Friday mornings . . . . ").) The only new allegation is that Mr. Shepherd was a member of the ICJL's executive committee. Clearly, that information was easily available to Plaintiffs at the time of their original submission and at any time afterward. Not only was that information easily obtained by Plaintiffs' investigator Reece from multiple persons (see Reece Aff. ¶¶ 33, 40 (Pls' App. at A-13 to A-14)), but it was also available from Plaintiffs' affiant Wojcieszak, who includes the assertions in his present affidavit that "Shepherd is a State Farm lawyer instrumental in creating Illinois Civil Justice League and hiring Murnane" and that Shepherd "is also a member of the ICJL Executive Committee" (Wojcieszak Aff. ¶ 5 (Pls' App. at A-73)), and who also provided an earlier affidavit in support of Plaintiffs' Conditional Motion for Non-Participation.

47. In any case, Plaintiffs' allegations regarding Mr. Shepherd do not establish that Justice Karmeier's participation in this case was improper and do not provide grounds for vacating the Court's decision. In particular, Plaintiffs have failed to show any communication between Mr. Shepherd and Justice Karmeier with regard to Justice Karmeier's campaign. Moreover, as Plaintiffs' own submission indicates, Mr. Shepherd was only one of many members of the ICJL's Executive Committee. (See, e.g., Reece's Purported Summary of K. Maisch Interview (Pls' App. at A-45); Reece's Purported Summary of Melchert Interview (Pls' App. at A-47.) Indeed, Kimberley Maisch, a self-described "active" member of the ICJL's Executive Committee including during the period of the 2004 election, who knew Bill Shepherd "very well," "could not recall his level of participation in the Karmeier race of 2004." (See Reece's Purported Summary of

23

Kimberly C. Maisch Interview (Pls' App. at A-45 to A-46).)

48.     According to evidence submitted earlier in this case by Plaintiffs, the ICJL had numerous members, including the Illinois State Medical Society, the Illinois Academy of Family Physicians, the Illinois Engineering Council and the Structural Engineers Association, the Illinois Hospital Association, the Metropolitan Health Care Council, the Illinois Health Care Association, the National Federation of Independent Business, the Illinois Manufacturers' Association, the Illinois State Chamber of Commerce, the Illinois Retail Merchants Association, the Illinois Farm Bureau, Caterpillar, Inc., Motorola, CNA Insurance, Deere and Company, Brunswick, Allstate Insurance and Kraft General Foods. (*See* Ex. 45 to Pls' Conditional Mot. for Non-Participation (SF App. at A-710 to A-712).) Plaintiffs' contention that a single member, State Farm, influenced and controlled the entire organization, is simply contrary to common sense.

49.     Moreover, although Plaintiffs claim that the contributions made to the Karmeier campaign by JUSTPAC (the ICJL's fundraising and political action committee) were somehow "State Farm-influenced," they do not show or even assert that State Farm was the source of those funds.[7] It is undisputed that State Farm itself made no contribution to JUSTPAC or to Justice Karmeier's campaign. Contrary to what Plaintiffs would have this Court believe, there was no "funnel[ing]" of money from State Farm

---

[7]     In addition, although Plaintiffs now attempt to attribute to State Farm $719,000 of supposed "unreported in-kind contributions from the ICJL" that purportedly "rais[e] the State Farm-influenced contributions to over $3.2 million" (Pet. ¶¶ 53-54), Plaintiffs have not either now or in the past alleged any contribution from State Farm to the ICJL beyond the membership dues paid by all members. (*See* Mem. Supp. Pls' Conditional Mot. for Non-Participation at 18 (SF App. at A-44).)

through JUSTPAC to Justice Karmeier.[8]

### *Plaintiffs' Claim that "Murnane ran all phases of Justice Karmeier's Campaign"*

50.     Plaintiffs' assertion that "newly-discovered evidence further demonstrates that ICJL-head Ed Murnane ran Justice Karmeier's campaign" is not based on new evidence and is not a new assertion. (*See* Pet. ¶ 41.)

51.     Plaintiffs' purported "newly-discovered evidence" consists of "several lawfully obtained e-mails" that supposedly "show that Murnane directed Justice Karmeier's fund raising, media relations and speeches." (Pet. ¶ 41.) Although Plaintiffs cite the Reece Affidavit for this claim, the emails are attached to Wojcieszak's Affidavit. Wojcieszak's Affidavit makes clear that these emails were obtained at least six years ago, "in or about January 2004" when Wojcieszak "was working for a group of Illinois trial lawyers." (Wojcieszak Aff. ¶ 31 (Pls' App. at A-78).) According to Wojcieszak, he and the group of Illinois trial lawyers "were engaged in some background research concerning Illinois Republican State Senator David Leuchtefeld, Judge Karmeier's campaign chairman," and "[o]ne of the investigators working with us made it a point to routinely check Sen. Leuchtefeld's discarded trash . . . ." (*Id.*) "Surprisingly, a number of printed copies of discarded emails surfaced in the trash which provide insight into the workings of and chain-of-command in Judge Karmeier's 2004 campaign." (*Id* ¶ 33 (Pls' App. at A-79).)

52.     In short, Wojcieszak, who provided an affidavit in support of Plaintiffs'

---

[8]     The final total of contributions from State Farm employees and their spouses to JUSTPAC and/or Justice Karmeier's campaign committee was at most approximately $7900. (*See* SF Opp. to Pls' Mot. for Leave to File Mem. in Resp. to SF's Opp. to Pls' Conditional Mot. for Non-Participation ¶ 2 (SF App. at A-344).)

earlier attempts to disqualify Justice Karmeier, obtained the emails in 2004 and those emails would clearly have been available to Plaintiffs' counsel through Wojcieszak. In any case, in their memorandum in support of their first motion to disqualify Justice Karmeier, Plaintiffs quoted from two of the emails and attached exhibits that quote from or refer to the emails. (*See* Pls' Mem. in Support of Conditional Mot. for Non-Participation at 14-15 (SF App. at A-40 to A-41); Exs. 11 and 13 to Pls' Conditional Mot. for Non-Participation (SF App. at A-627 to A-628; A-632 to A-633).)

      53.    Moreover, Plaintiffs' allegations regarding the emails and Murnane's supposed running of Justice Karmeier's campaign are largely irrelevant and do not provide the required conclusive showing in support of their Petition.[9] Those allegations do not establish (or even support) that State Farm was responsible for Murnane's activities and/or decisions in his giving of advice to Justice Karmeier's campaign. Significantly, none of the emails now included in Plaintiffs' separate appendix are to or from State Farm or any of its employees, including Mr. Shepherd. None of the emails even name or mention State Farm or any of its employees, including Mr. Shepherd. (*See* Wojcieszak Aff., Exs. 5-11 (Pls' App. at A-105 to A-124).) Furthermore, none of the emails show any impropriety or appearance of impropriety on the part of Justice Karmeier.

### *Plaintiffs' Erroneous Assertions Regarding Justice Karmeier's Purported Knowledge of Purported Financial Support from State Farm*

      54.    Plaintiffs repeatedly claim that Justice Karmeier "knew the extent of State

---

[9]    Plaintiffs include Reece's notes of his interview with Julie Biesemeyer Ziegler, who worked as a volunteer on Justice Karmeier's campaign. She "recalled Steve Tomaszewski [not Ed Murnane] as running the campaign on a day to day basis." (Reece's Purported Summary of Ziegler Interview (Pls' App. at A-29).)

Farm's [purported] involvement in his campaign" (Pet. ¶ 3); "one of Justice Karmeier's key campaign consultants (Adomite) candidly acknowledged that Justice Karmeier was undoubtedly aware of the sources of his campaign funds" (*id.* ¶ 10); and "Justice Karmeier had knowledge of State Farm's 'tremendous support." (*Id.* ¶ 43). These claims appear to be based solely on a statement purportedly made to Plaintiffs' investigator, Reece, by Allen Adomite. Mr. Adomite's statement does not support Plaintiffs' claims.

55.    Mr. Adomite's statement that Justice Karmeier was aware of the identity of contributors to his campaign is only a statement that Justice Karmeier generally would likely have been aware of the identity of his contributors.[10]  (*See* Reece's Purported Summary of Adomite Interview (Pls' App. at A-37) (Mr. Adomite "was not aware whether Karmeier knew of the source of all of his campaign funds, but did not see how he could not know inasmuch as he was very active in the campaign, and was on the e-mail list.").)  Mr. Adomite's statement was made with no particular application to State Farm or its supposed contributions through donors such as the U.S. Chamber of Commerce or the ICJL.  Plaintiffs' leap from Mr. Adomite's statement to the conclusion that Justice Karmeier knew of supposed contributions from State Farm is unsupported speculation.  Indeed, as noted above, the emails retrieved by Wojcieszak and his unidentified "group of Illinois trial attorneys" do not mention State Farm or its employees. Those emails do mention other donors and potential donors and supporters (including Illinois Farm Bureau, Corn Growers, Pork Producers, Cattlemens' Association, the Banker's Association, Cassens Transport Company (*see* 4/29/04 email (Pls' App. at A-

---

[10]    As the Illinois Judicial Ethics Committee has stated, it is in fact "desirable for judges to know their contributors."  Ill. Judicial Ethics Comm. Advisory Op. 93-11 (1993), *available at* 1993 WL 774478, at *2 (Nov. 17, 1993).

122)), but they do not mention any contribution from State Farm and do not attribute any contribution to State Farm. Thus, Mr. Adomite's purported statement that Justice Karmeier would know of campaign contributions because he was on the e-mail list does not suggest that Justice Karmeier knew of any campaign contributions from State Farm or attributable to State Farm.

### Plaintiffs' New Allegations of "Tremendous," "Significant" Support from State Farm

56. As noted above, although Plaintiffs now claim that they "initially believed" that State Farm was only responsible for "$350,000" in donations to Justice Karmeier's campaign, (Pet. ¶ 6), Plaintiffs have initially and throughout attempted to attribute to State Farm millions of dollars of contributions. *See supra* ¶ 35. In addition to their renewed attempts to ascribe to State Farm the contributions made by JUSTPAC and the U.S. Chamber and others, Plaintiffs now assert that they have new evidence that State Farm "gave Justice Karmeier's campaign '*significant*' or '*tremendous*' support." (Pet. ¶ 3 (Plaintiffs' emphasis).) That purported new evidence has supposedly been provided by "retired Special Agent Reece's extensive investigation," which, according to Plaintiffs, "has established" that State Farm's "financial and political support of Justice Karmeier was nothing short of 'tremendous.'" (Pet. ¶ 7 (citing Reece Aff. ¶¶ 57-59).)

57. In fact, the only new "evidence" cited by Reece are his interview notes with Allen Adomite, Kim Maisch and Karen Melchert. (*See* Reece Aff. ¶ 57 (Pls' App. at A-17).) According to Reece's interview notes, Kim Maisch said that JUSTPAC provided a "significant" amount of money to Justice Karmeier's campaign. (Reece's Purported Summary of K. Maisch Interview (Pls' App. at A-45).) There is nothing about State Farm's having contributed to the campaign or to JUSTPAC. (*See id.* (Pls' App. at A-45 to

28

A-46).)   Karen Melchert is described only as saying that the "ICJL gave [Justice Karmeier] tremendous support, as did CNA and State Farm Insurance."   (Reece's Purported Summary of Melchert Interview (Pls' App. at A-47).)   The interview notes do not indicate what kind of support Ms. Melchert was referring to or what her source of information was.   They do indicate that Ms. Melchert "was not familiar with southern Illinois politics and did not participate in any selection process of candidates."   (*Id.*) Similarly, Mr. Adomite is described as saying "[h]e was aware State Farm Insurance Company and Phillip Morris Tobacco Company had put significant funds into the campaign, but disputed the figures he had heard published.   He said he did not dispute the amount in excess of four million dollars reported to the Illinois Election Commission." (*See* Reece's Purported Summary of Adomite Interview (Pls' App. at A-37).)   Mr. Adomite "was not responsible for raising money, except for local events" (*id.* ), and the source of his purported information is not recorded.   In short, Plaintiffs' purported evidence consists of vague, general and hazy statements elicited by Plaintiffs' investigator from persons with no specific personal knowledge.   These statements add no support to Plaintiffs' claims that State Farm is somehow accountable for millions of dollars of contributions (or indeed any contributions)  to Justice Karmeier's campaign.

## PLAINTIFFS HAVE FAILED TO PRODUCE COMPETENT OR LEGALLY SUFFICIENT EVIDENCE

58.   Plaintiffs' evidence fails for the additional reason that it is not legally sufficient, competent evidence.   The party seeking post-judgment relief "has the burden of proving his case by the required quantum of competent evidence." *Smith*, 114 Ill. 2d at 223, 499 N.E.2d at 1387.   Here, the purportedly "newly-discovered evidence" on which Plaintiffs' Petition is based consists of affidavits submitted by Daniel L. Reece, a private

investigator, and Douglas B. Wojcieszak, an Illinois political operative. As set forth more fully in State Farm's concurrently-filed motions to strike the Reece and Wojcieszak affidavits (incorporated herein by reference), both of these affidavits are inadmissible or incompetent. Because Plaintiffs have failed to produce competent evidence in support of their Petition, the Petition must be denied in its entirety.

59.     Whether Plaintiffs' Petition is a voidness challenge order under section 2-1401(f) or a Petition that falls under section 2-401(a)–(c), Plaintiffs are required to support it with competent evidence. *See* 735 ILCS 5/2-1401(b) (petitions under section 2-1401(a) "must be supported by affidavit or other appropriate showing as to matters not of record"); *Duree*, 319 Ill. App. 3d at 1043, 745 N.E.2d at 1280 ("the party attacking a . . . judgment on the ground of extrinsic fraud carries the burden of supporting his claim with adequate evidentiary support."); *see also Amerco Field Office v. Onoforio*, 22 Ill. App. 3d 989, 991, 317 N.E.2d 596, 598 (2nd Dist. 1974) (Section 2-1401 petition "must be supported by a sufficient and competent affidavit").

60.     Reece's affidavit is improper for several reasons. First, Reece's affidavit is based on hearsay rather than personal knowledge of the factual assertions set forth therein. Reece does not claim to have any personal knowledge of the events surrounding Justice Karmeier's election. Instead, he only reviewed various documents and conducted telephonic interviews of various non-party witnesses, none of whom have submitted their own affidavits or other written statements. Moreover, Reece merely presents his own summaries of these interviews. Reece's summaries contain virtually no direct quotations from the witnesses themselves, and it is simply impossible to determine how closely (if at all) these summaries track the apparently untranscribed and unrecorded hearsay

30

statements on which Reece's affidavit purports to rely. Such rank hearsay is not competent evidence.[11] (*See* Mot. to Strike Reece Aff. ¶¶ 11-16.)

61.    Reece's affidavit also offers inadmissible argument and lay opinions that are not based on his personal knowledge and merely serve as a conduit for the arguments of Plaintiffs' counsel, who "assisted" Reece in preparing his affidavit. Reece's arguments and opinions are not competent evidence because they are plainly not "based on concrete facts perceived from the witness' own senses." *People v. Novak,* 163 Ill. 2d 93, 103, 643 N.E.2d 762, 768 (1994), *abrogated on other grounds by People v. Kolton,* 219 Ill. 2d 353, 848 N.E.2d 950 (2006). (*See* Mot. to Strike Reece Aff. ¶¶ 17-19.)

62.    In addition, Plaintiffs have failed to properly authenticate the documents attached as exhibits to the Reece affidavit. These unauthenticated documents include, *inter alia,* purported summaries of witness interviews that generally lack direct quotations and do not indicate when or by whom the summaries were prepared. (*See* Pls' App. at A-28 to A-47.) One extended summary does not even identify the witness, who may or may not be Wojcieszak. (*See* Pls' App. at A-35 to A-36.) These unauthenticated materials are inadmissible.[12] (*See* Mot. to Strike Reece Aff. ¶¶ 20-21.)

---

[11]    *See, e.g., In re Estate of Barth,* 339 Ill. App. 3d 651, 662, 792 N.E.2d 315, 324 (1st Dist. 2003) ("If based on matters outside the trial record, a section 2-1401 petition must be supported by sworn allegations of the party or parties having personal knowledge of the relevant facts . . . ."); *People v. Perkins,* 260 Ill. App. 3d 516, 520, 636 N.E.2d 780, 783 (1st Dist. 1994) (Theis, J.) (referring to "the well-established rule that hearsay affidavits are insufficient to support a petition for relief from judgment"); *Windmon v. Banks,* 31 Ill. App. 3d 870, 876, 335 N.E.2d 116, 121 (1st Dist. 1975) ("A section 72 petition supported only by an affidavit of an attorney-affiant on pure hearsay renders the petition inadequate and insufficient.").

[12]    *See, e.g.,* ILCS Evid. Rule 901; *Anderson v. Human Rights Comm'n,* 314 Ill. App. 3d 35, 42, 731 N.E.2d 371, 377 (1st Dist. 2000) (proponent of evidence must demonstrate that document "is what its proponent claims it to be"); *CCP Ltd. P'ship v. First Source*
*(cont'd)*

31

63.     Wojcieszak's affidavit is inadmissible for similar reasons.  Wojcieszak's only involvement in the matters relating to Plaintiffs' submissions consists of purportedly having been offered, and having turned down, a position as manager of Justice Karmeier's campaign.     Much of Wojcieszak's affidavit simply reports statements allegedly made to him and is inadmissible hearsay.  Any personal knowledge Wojcieszak obtained from this rejected job offer was or should have been set forth in his original affidavit in support of Plaintiffs' 2005 recusal briefing.  Wojcieszak's new affidavit adds nothing but rank hearsay, speculation, and innuendo.  (*See* Mot. to Strike Wojcieszak Aff. ¶¶ 9-14.)

64.     Like Reece's affidavit, Wojcieszak's affidavit must also be rejected because it offers inadmissible lay opinions not based on any personal knowledge (*see id.* ¶¶ 15-19) and because the documents attached to the affidavit have not been authenticated (*see id.* ¶¶ 20-24).  Accordingly, the Reece and Wojcieszak affidavits are not competent evidence and cannot support post-judgment relief.

## PLAINTIFFS' RELIANCE ON *CAPERTON V. MASSEY* IS MISPLACED

65.     Plaintiffs' Petition relies heavily on the United States Supreme Court's decision in *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252 (2009), which was issued three years after the Supreme Court denied Plaintiffs' petition for a writ of certiorari in *Avery*.  Plaintiffs incorrectly contend that *Caperton* "extended" the law. (Pet. ¶ 34.)  On the contrary, the Supreme Court in *Caperton* applied settled due process principles to find that recusal was required under what the Court characterized as the "extreme" and

---

(*cont'd from previous page*)
*Fin., Inc.*, 368 Ill. App. 3d 476, 484, 856 N.E.2d 492, 498 (1st Dist. 2006) ("Without proper authentication no document is admissible.").

"exceptional" circumstances of that case. *Caperton*, 129 S. Ct at 2263, 2265-66. This Court in *In re Marriage of O'Brien*, 2011 IL 109039 (Aug. 4, 2011), which Plaintiffs cite, recognized the narrowness of the holding in *Caperton*. As this Court stated, the United States Supreme Court in *Caperton*

> took great pains to stress that its decision was limited to "an extraordinary situation where the Constitution requires recusal" (*Caperton, 556 U.S. at [ ], 129 S. Ct. at 2265*) in an "exceptional case" (*Caperton, 556 U.S. at [ ], 129 S. Ct. at 2263*) comprised of "extreme facts" and thus "[a]pplication of the constitutional standard implicated . . . will . . . be confined to rare instances." *Caperton, 556 U.S. at [ ], 129 S. Ct. at 2267.*

*O'Brien*, 2011 IL 109039, ¶ 47 (alterations in original). *See also People v. Jackson*, 205 Ill. 2d 247, 276, 793 N.E.2d 1, 19 (2001) ("'[O]nly under the most extreme cases would disqualification for bias or prejudice be constitutionally required.'") (quoting *People v. Coleman*, 168 Ill. 2d 509, 541, 660 N.E.2d 919, 935 (1995)) (alterations in original).

66.     The "extreme" circumstances of *Caperton* included that fact that a litigant's CEO contributed approximately $3 million to the election campaign of a justice whose participation in deciding the litigant's appeal was "foreseeable" and who knew of the litigant's contributions and was likely to "feel a debt of gratitude" to the litigant for his "'bestowal of his personal wealth.'" *Caperton*, 129 S. Ct. at 2258, 2262, 2264-65 (citation omitted). No such "extreme" circumstances are present in this case. Indeed, Plaintiffs rely not on actual contributions by State Farm or its employees, but on tenuous and improper assertions that the campaign contributions of others should be attributed to State Farm. Moreover, although Plaintiffs erroneously contend that Justice Karmeier "knew" the identity of his contributors (Pet. ¶ 3), there is no basis whatsoever for Plaintiffs' implication that Justice Karmeier knew or believed that he was (allegedly) receiving

33

extraordinary (or any) contributions from or attributable to State Farm itself. Furthermore, in *Caperton*, the election and campaign contributions occurred before the defendant filed its appeal, making it highly likely that the winner of that election would hear the *Caperton* appeal. In this case, State Farm's appeal was fully briefed, argued, and submitted to this Court for decision on May 14, 2003, and the Court's opinion could reasonably have been expected to issue long before Justice Karmeier's election in November 2004.

      67.    This case does not fall under *Caperton*, and vacating the Court's opinion in this case would have severe deleterious consequences on the stability and orderly development of the law in this State. It would also detrimentally affect the Illinois system of judicial elections and the First Amendment right of litigants, attorneys, businesses and individuals to contribute to, participate in, and engage in speech regarding judicial elections, for fear that they would be subject to attempts to disqualify the judge or justice they had supported. As the United States Supreme Court recognized in *Citizens United v. Federal Election Commission*, 130 S. Ct. 876 (2010), "First Amendment freedoms need breathing space to survive," *id.* at 882, and rules that affect conduct and speech protected by the First Amendment necessarily chill "any speech arguably within their reach." *Id.* at 895. Thus, First Amendment considerations require that, as the Supreme Court intended, *Caperton* be restricted to only the most extreme cases. *Caperton* does not abrogate the longstanding rule that "[n]ot every campaign contribution by a litigant or attorney creates a probability of bias the requires a judge's recusal," *Caperton*, 129 S. Ct. at 2263, and the Due Process Clause can "coexist[] with the election of judges" as it has "ever since it was adopted," *Republican Party of Minn. v. White*, 536

34

U.S. 765, 783 (2002).

68. In addition, even if the 2009 *Caperton* opinion had "extended" or otherwise changed the law applicable to Plaintiffs' 2005 recusal and disqualification motions, that would not warrant post-judgment relief. After virtually any United States Supreme Court decision, "there is a losing litigant somewhere who could argue similarly for reopening his case because it was decided erroneously in light of the subsequent Supreme Court decision." *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 397 F.3d 334, 338 (5th Cir. 2005). Nevertheless, res judicata dictates that prior judgments be left undisturbed. *See id.* at 338-39 & n.27. The United States Supreme Court has recognized that "retroactivity [of new decisional law] must be limited by the need for finality . . .; once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 541 (1991).

69. Numerous courts have likewise held that "[a] change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment." *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990); *see also DeWeerth v. Badinger*, 38 F.3d 1266, 1272-73, 1275 (2d Cir. 1994) (reversing trial court's order granting relief from 4-year-old judgment based on new decisional law); *Marshall v. Bd. of Educ.*, 575 F.2d 417, 422 (11th Cir. 1978) (affirming denial of post-judgment relief and rejecting argument "that a subsequent change in constitutional law operates to void a judgment"). As one court explained, "[l]itigation must end some time, and the fact that a court may have made a mistake in the law when entering judgment, or that there may have been a judicial change in the court's

35

view of the law after its entry, does not justify setting it aside." *Collins v. City of Wichita*, 254 F.2d 837, 839 (10th Cir. 1958).

70.     The doctrine of res judicata and the principle of finality of judgments apply with particular force herein.  The judgment in this case has been settled law for nearly six years.  As discussed above, hundreds of state and federal courts have favorably cited this Court's opinion in this case for its various propositions.  Granting Plaintiffs' Petition would not just disturb the finality of the judgment in this case, but would foment chaos by inviting other disappointed litigants to attempt to re-open the judgments against them based on their judges' reliance on this Court's opinion in *Avery*.

## PLAINTIFFS ARE NOT ENTITLED TO THE REMEDIES THEY REQUEST

71.     Even if Plaintiffs' Petition had merit (which it does not), they would not be entitled to any of the remedies they request.  Citing no pertinent authority, Plaintiffs request "the recall of the mandate in this case, an order vacating that judgment, an order quashing the grant of State Farm's petition for leave to appeal, and finally, reinstatement of the Appellate Court's decision." (Pet. ¶ 13; *see also id.* ¶ 65.)  Alternatively, Plaintiffs request reinstatement of "the portions of the opinion to which there would not be the Constitutional[l]y required concurrence of four Justices of the Court, absent Justice Karmeier's . . . vote." (*Id.* ¶ 66.)

72.     Plaintiffs' request for an order quashing the grant of leave to appeal is utterly nonsensical.  This Court granted leave to appeal on October 2, 2002, more than two years before Justice Karmeier was elected to serve on this Court.  (*See id.* ¶ 18.) Justice Karmeier's participation in the *Avery* appeal clearly could not retroactively invalidate an order issued without his involvement more than two years earlier.

73.     Moreover, most of this Court's holdings in *Avery* were unanimous,

36

meaning that Justice Karmeier's participation was not necessary to satisfy the constitutional minimum for reversing lower court decisions. This Court unanimously held that: (a) the Illinois Consumer Fraud Act ("ICFA") did not apply to transactions outside Illinois and therefore a nationwide class should not have been certified, and (b) the only named plaintiff from Illinois had not shown the necessary elements of actual damages, actual deception, and proximate cause. *See Avery*, 216 Ill. 2d at 185, 190, 203, 835 N.E.2d at 853, 855, 863; *see also id.* at 234-35, 835 N.E.2d at 880 (Freeman, J., concurring in part; joined by Kilbride, J.). Accordingly, the entire Court agreed that the judgment against State Farm on Plaintiffs' ICFA claim and the $600 million punitive damages award entered thereon should be reversed. Plaintiffs have offered no legal authority or logical reason for vacating these holdings merely because Justice Karmeier cast a constitutionally unnecessary sixth vote in support.[13]

74. There is also no basis for granting the relief Plaintiffs request with respect to Plaintiffs' breach-of-contract claim. A four-Justice majority of this Court held that it was error to certify a nationwide breach-of-contract class. *See Avery*, 216 Ill. 2d at 134-35, 835 N.E.2d at 824. The two remaining Justices concurred, rendering this holding unanimous. *See id.* at 210-11, 215, 835 N.E.2d at 867, 869 (Freeman, J., concurring in part; joined by Kilbride, J.) The majority also held that subclassing would be impermissible. *See id.* at 136, 835 N.E.2d at 825. Justices Freeman and Kilbride dissented on that point and would have remanded the case for a determination whether

---

[13] There is no basis for Plaintiffs' speculation that Justice Karmeier's participation in the *Avery* opinion affected the vote of any other Justice of this Court. Justice Karmeier did not participate at oral argument because he had not yet been elected, nor did he draft an opinion in this case. Justice Karmeier merely joined in the majority opinion drafted by Chief Justice McMorrow.

there existed any subclass for which some portion of the verdict on the breach-of-contract claim might be upheld. *See id.* at 232, 835 N.E.2d at 879.

75.     In sum, even if Justice Karmeier had not participated in the *Avery* appeal, the Appellate Court's opinion would have been reversed and the trial court's judgment vacated pending a determination regarding subclassing. Plaintiffs are not entitled to have all or any part of the Appellate Court's legally erroneous decision reinstated, immunized from review by this Court, and granted precedential value in future cases.

38

# CONCLUSION

For all the foregoing reasons, State Farm respectfully submits that Plaintiffs' Petition to Recall Mandate and Vacate August 18, 2005 Judgment should be denied in its entirety.

Respectfully submitted,

Robert H. Shultz, Jr., #03122739
HEYL, ROYSTER, VOELKER & ALLEN
Mark Twain Plaza III, Suite 100
105 West Vandalia Street
P.O. Box 467
Edwardsville, IL 62025

J. Timothy Eaton, #0707341
SHEFSKY & FROELICH, LTD.
111 East Wacker
Suite 2800
Chicago, IL 60601

Joseph A. Cancila, Jr. #06193252
SCHIFF HARDIN, LLP
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606

Of Counsel:

Sheila L. Birnbaum
Douglas W. Dunham
Ellen P. Quackenbos
David S. Weinraub
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM
Four Times Square
New York, NY 10036

39