IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK HALE, et al., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) Case No.  12-cv-660-DRH-SCW |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

This matter is before the Court on the discovery dispute regarding attorney-client privilege and the crime-fraud exception. Plaintiffs seek communications between State Farm and its attorneys which were made in preparing its 2005 and 2011 briefs to the Illinois Supreme Court. Defendants oppose the motion. On October 21, 2014 the Court heard arguments on the motion and took the matter under advisement. The Court now rules as follows.

### II.   Factual Background

Plaintiffs filed their class action Complaint on May 29, 2012 alleging two RICO claims against Defendants. Plaintiffs allege that State Farm devised a scheme to elect Judge Lloyd Karmeier to the Illinois Supreme Court, conceal its involvement in the financing and management of the campaign from Plaintiffs and the Illinois Supreme Court so that Judge Karmeier could preside over the *Avery* case which was then pending before the supreme court, and concealed their involvement by misrepresenting their involvement in two written briefs submitted to the Illinois Supreme Court in 2005 and 2011.

Central to Plaintiffs' claim is their assertion that State Farm ran and funded Judge Karmeier's 2004 campaign so that he could be elected to the Illinois Supreme Court and preside over the *Avery* case. Plaintiffs allege that State Farm made large contributions in secret by funneling money through JUSTPAC and the U.S. Chamber of Commerce, which then funneled the money to Illinois and the Karmeier election campaign. Plaintiffs allege that these indirect contributions totaled $4,200,417, and accounted for 85% of Karmeier's campaign contributions. Plaintiffs also allege that State Farm participated in the Illinois State Bar Association's candidate evaluation process and that several of the lawyers on the ISBA evaluation committee were employed by State Farm when they evaluated and gave Judge Karmeier a "highly qualified" rating. Plaintiffs further allege that after Karmeier's election to the Illinois Supreme Court, State Farm then tried to conceal its involvement in the campaign so that Karmeier could participate in the *Avery* decision. In order to hide their involvement, Plaintiffs allege that State Farm lied in two briefs that it submitted to the Illinois Supreme Court.

Specifically, Plaintiffs allege that State Farm provided false statements to the Illinois Supreme Court and Plaintiffs in briefs submitted in 2005 and 2011, thereby committing mail-fraud with its briefs. In its January 31, 2005 brief, Plaintiffs allege that State Farm concealed its support for the Karmeier campaign and denied its financial involvement in the election by making fraudulent statements in the brief. Specifically, Plaintiffs point to statements in the brief that State Farm's involvement in financing the Karmeier campaign was limited to officers and employees who made modest contributions. Plaintiffs contend this was fraudulent as State Farm contributed in excess of $4 million to the campaign. Plaintiffs also point out that the brief claimed that Edward Murnane, president of the Illinois Civil Justice League was not Karmeier's campaign manager when he in fact considered himself the campaign manager from 2003-2004.

Plaintiffs similarly allege that State Farm concealed the true roles of Murnane and William Shepherd in its September 19, 2011 filing with the Illinois Supreme Court. Plaintiffs point out that State Farm claimed in that brief that Plaintiffs' allegations that State Farm picked Karmeier as a candidate, managed his campaign, and financed it had no basis in reality. Plaintiffs argue that this statement was fraudulent because State Farm CEO Ed Rust was a board member for the U.S. Chamber of Commerce's Institute for the Legal Reform (ILR) and voted to send money given to the U.S. Chamber by State Farm back to Illinois for the campaign, and Murnane pledged and secured financial support for Karmeier. The brief also did not disclose that William Shepherd, an employee of State Farm and a member of the Illinois Civil Justice League Executive Committee, was a member of the committee that evaluated and promoted Judge Karmeier for the election.

As part of their discovery requests, Plaintiffs seek communications between State Farm and its lawyers relating to State Farm's 2005 and 2011 briefs to the Illinois Supreme Court. Plaintiffs maintain that these filings were fraudulent and serve as the predicate acts for Plaintiffs' RICO claims. Plaintiffs argue that State Farm cannot shield these communications from Plaintiffs' review under attorney-client privilege because the communications were used to further a fraud on the Illinois Supreme Court and Plaintiffs as the communications led to fraudulent statements in the 2005 and 2011 briefs. Plaintiffs argue that the communications are discoverable under the crime-fraud exception to the attorney-client privilege.

### III.   Analysis

The attorney-client privilege "'is the oldest of the privileges for confidential communications known to the common law.'" *Shaffer v. American Medical Association*, **662 F.3d 439, 446 (7th Cir. 2011) (quoting** *United States v. Jicarilla Apache Nations*, **-- U.S. --, 131 S.Ct. 2313, 2320, 180 L.Ed.2d 187 (2011)(quoting** *Upjohn Co. v. United States*, **449 U.S. 383, 389, 101**

S.Ct. 677, 66 L.Ed.2d 584 (1981))); *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). The privilege encourages full disclosure and facilitates open communication between attorneys and their clients. *Swidler*, 524 U.S. at 403, 118 S.Ct. 2081, 141 L.Ed.2d 379. It protects confidential communications between a lawyer and his client. *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). However, the "privilege takes flight if the relation is abused." *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933).

Plaintiffs here argue that State Farm's attorney-client privilege as to communications between State Farm and its lawyers in drafting its 2005 and 2011 briefs to the Illinois Supreme Court is overridden by the crime-fraud exception. "The crime-fraud exception places communications made in furtherance of a crime or fraud outside the attorney-client privilege." *United States v. BDO Seidman, LLP,* 492 F.3d 806, 818 (7th Cir. 2007). A party seeking to apply the crime-fraud exception must "present prima facie evidence that gives color to the charge by showing some foundation in fact." *Shaffer*, 662 F.3d at 447 (quoting *United States v. Boender*, 649 F.3d 650, 655 (7th Cir. 2011)); *BDO Seidman*, 492 F.3d at 818. The party must bring forth "sufficient evidence" to justify requiring the other side to provide a sufficient explanation for the evidence offered against it. *BDO Seidman*, 492 F.3d at 818. The prima facie evidence does not have to be such that it would support a verdict, "but whether it calls for inquiry." *United States v. Al-Shahin*, 474 F.3d 941, 946 (7th Cir. 2007) (*In re Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988)). The privilege remains "if the district court finds the explanation satisfactory." *BDO Seidman*, 492 F.3d at 818 **(internal citations omitted)(quoting** *United States v. Davis*, 1 F.3d 606, 609 (7th Cir. 1993)). Additionally, the Supreme Court has also stated that an *in camera* review of material subject to a claim of privilege should only be considered when there has been "'a showing of a factual basis adequate to support a good faith belief by a reasonable person'" that such a review may reveal evidence that the

exception applies. *United States v. Zolin*, **491 U.S. 554, 572 (1989)(quoting** *Caldwell v. District Court,* **644 P.2d 26, 33 (Colo 1982)).** Even then, in circumstances where that threshold showing has been made, it is still within the sound discretion of the district court whether to undertake an *in camera* review.

Here, Plaintiffs argue that they are entitled to communications between State Farm and its attorneys made in preparation of the 2005 and 2011 briefing because statements in the briefs were fraudulent and amount to mail fraud. Plaintiffs point to statements in the 2005 brief which Plaintiffs believe were fraudulent. In its 2005 brief to the Illinois Supreme Court, State Farm stated that "Although Plaintiffs attempt to link large sums in contributions by a variety of persons and organizations to Justice Karmeier's campaign to State Farm, their moving papers and supporting documentation in fact reveal that a limited number of State Farm officers and employees made quite modest contributions to Justice Karmeier's campaign." (Doc. 13-11 at p. 13). Plaintiffs allege that this statement was fraudulent because State Farm contributed in excess of $4 million. Plaintiffs specifically claim that State Farm wrote two $1 million checks to the U.S. Chamber of Commerce's Institute for Legal Reform (ILR) (Doc. 270, Ex. 1). Additionally, Plaintiffs claim, that as a board member, Ed Rust then voted to send the money, approximately $1.8 to $2 million, back to Illinois for the Karmeier campaign. (Doc. 270 at 11).

However, Plaintiffs' allegations do not have the foundation in fact required for the crime-fraud exception. Plaintiffs allege that State Farm contributed in excess of $4 million to Karmeier's campaign, but at this time Plaintiffs are not able to connect the dots on the money trail from State Farm to the Karmeier campaign. The evidence in the record indicates that State Farm made million dollar contributions in 2003 and 2004 to the U. S Chamber's ILR as a member (Doc. 270, Ex. 1). Other ILR members made the same annual contributions and, as Defendant points out, State

Farm's contributions comprised less than 3% of the $38 million in contributions the ILR received that year (Doc. 278, Ex. 2).  Further, there is no evidence that the contributions made by State Farm ended up targeted to the Kameier campaign.  Of all the money contributed by members, Plaintiffs have shown that $1.8 to $2 million went to Illinois (Doc. 270, Ex. 2, p. 3).  But there is no evidence at this time that only the money State Farm donated went to Illinois.  The evidence in the record indicates that a number of members made contributions and that some of that money went to Illinois.  That money was sent to Illinois for advertising, media, and grassroots efforts with the Illinois Civil Justice League (ICJL) (Doc. 270, Ex. 2).  While all of this money sent by the ILR to Illinois may have been earmarked for the Justice Karmeier campaign, the documents submitted by Plaintiff suggest that similar campaigns were to be launched in Mississippi, West Virginia, and California (*Id.*).  Thus, at this time there is no foundation in fact for Plaintiffs' assertions that State Farm's statement that they made modest contributions to Karmeier was fraudulent because of the money donated by the ILR.  Plaintiffs are unable to show, at this time, that their allegations that State Farm funneled massive amounts of money to the Karmeier campaign is founded in fact in the record.

Further, the Court notes that Plaintiffs' own statement that Ed Rust, State Farm's CEO, voted to send the money back to Illinois is not founded in fact, and, in fact, is wholly inaccurate.  It is true that Ed Rust was on the board of directors for the ILR in 2003.  However, the evidence suggests that Rust was not at the meeting and the bylaws did not allow for a proxy vote.   As such, Rust did not vote to send contributions back to the Karmeier campaign as Plaintiffs suggest (Doc. 278, E).  Thus, Plaintiffs' first allegation of fraud in the 2005 brief is not founded in fact.

Plaintiffs further argue that State Farm's statement in its 2005 brief states that Ed Murnane was not Justice Karmeier's campaign manager was fraudulent and misleading (Doc. 13-11 at pp. 15-16).  Plaintiffs indicate that Murnane considered himself Karmeier's campaign manager in

2003 and 2004 and that Karmeier's campaign chairman, David Leuchtefeld, indicated that he was the campaign chairman in name only. However, Plaintiffs' allegations are not founded in fact. Murnane was not Karmeier's campaign manager. Steve Tomaszewski was the campaign manager (Doc. 270-11 at p. 3; Doc. 278-6). While Murnane did state in an email that he was a senior advisor or de facto campaign manager for Karmeier and that they hoped to hire a campaign manager soon, State Farm points out that at the time Murnane made this statement, Karmeier had not announced his candidacy (Doc. 270-5, 270-6, 270-7). He did not announce his candidacy until a full month later and Steve Tomaszewski was ultimately selected as Karmeier's campaign manager. Further, the documents Plaintiffs point to seem to suggest that Murnane acted as an advisor or unofficial campaign manager until a campaign manager was found (*Id.*). Further, that David Leuchtefeld believes he was the campaign chairman in name only does not make State Farm's statement false as Luechtefeld was the campaign chairman, not the campaign manager. Further, Leuchtefeld testified in his deposition that Tomaszewski, not Murnane, was "sort of…kind of the campaign chairman" (Doc. 278-4). Plaintiff has pointed to no evidence to suggest that Luechtefeld thought that *Murnane* was the campaign chairman. Thus, there is no indication in the evidence presented at this time by Plaintiffs that Murnane was Karmeier's campaign manager, thus making State Farm's statement to the contrary false.

Nor has Plaintiffs shown that the "fraud" found in the 2011 brief is backed by any foundation in fact. Plaintiffs point to a statement in State Farm's 2011 brief which states that plaintiffs' allegations that "State Farm somehow picked Justice Karmeier as a candidate, managed his campaign, and made massive contributions to his campaign" have "no relationship in reality". (Doc. 13-9 at p. 3). Plaintiffs argue that is false and point to a string of events and people that they believe shows that State Farm did participate heavily in the campaign.

Once again, however, Plaintiffs fail to connect the dots from State Farm to Karmeier's

campaign.   Plaintiffs argue that they have learned that ICJL formed a campaign team in 2002 for the Illinois Supreme Court seat and State Farm was a member of the ICJL's Board of Directors with Shepherd serving as a member of its Executive Committee, and State Farm CEO's Ed Rust was Chairman of the Illinois Business Roundtable (IBRT), which gave office space to the ICJL.   Murnane then met with Karmeier in July 2003 and sent an email stating that he would secure $2 million for the campaign.   Plaintiffs maintain that these facts show that State Farm was trying to conceal their actual involvement in the campaign when they stated that their involvement had "no relationship in reality." Again, these facts do not show that State Farm picked Karmeier or provided massive contributions and ran Karmeier's campaign, as Plaintiff's contend, so that State Farm's statement would constitute mail fraud.   Plaintiffs allegations are not grounded in any evidence supporting their claims.   While further discovery and evidence may lead to the facts Plaintiffs need to prove their RICO claims, the evidence presented thus far does not show a fraud on State Farm's part which would allow Plaintiffs to override State Farm's attorney-client privilege.

Further, the Court notes that State Farm has come forth with an adequate explanation for the statements in their briefs.   If a party comes forth with evidence of a crime or fraud, then the other side must provide a sufficient explanation for the evidence offered against it.   *BDO Seidman*, **492 F.3d at 818.**   Here, even if Plaintiffs allegations were grounded in fact, State Farm has offered an explanation for those statements.   State Farm argues that its counsel was merely advocating their client's position based on the facts that Plaintiffs presented in their briefs.   State Farm points out that the full statement regarding its contributions to the Karmeier campaign in its 2005 brief indicated that "Although Plaintiffs' attempt to link large sums in contributions by a variety of persons and organizations to Justice Karmeier's campaign to State Farm, their moving papers and supporting documentation in fact reveal that a limited number of State Farm officers and employees made quite

modest contributions to Justice Karmeier's campaign." (Doc. 13-11 at p. 13). The statement appears to be commenting on the sufficiency of Plaintiffs' evidence. This sort of advocacy does not usually constitute fraud. *See Apotex Corp. v. Merck & Co. Inc.*, **229 F.R.D. 142, 147 (N.D. Ill. June 29, 2005).**

Although not binding on this Court, the similar situation presented in the *Apotex* case from the Northern District of Illinois is instructive. In that case, Apotex argued that Merck committed fraud in an earlier case when it failed to advise the court of certain facts relevant to the case in briefs to the court. The District Court, in denying Apotex's request to compel Merck to turn over documents protected by attorney-client privilege, found that the statements in Merck's brief were not an attempt to defraud the court, but "[r]ather, they were comments on the sufficiency of the evidence that was submitted" and "[a]s such, the statements were true." *Apotex*, **229 F.R.D. at 147.** The Court further stated that it was not fraud to "argue the inferences from the evidence that had been presented in the case"… "even if it now turns out that the evidence that presented might not have represented the full story." *Id.*

State Farm's statements in its 2005 and 2011 brief similarly represent advocacy in that the statements commented on the evidence presented by Plaintiffs at the time. State Farm noted in its 2005 brief that Plaintiffs' papers and documentation revealed only that a limited number of State Farm officers made modest contributions. This was a comment on the evidence, not "an attempt to characterize the truth." *Id.*[1] The statements in State Farm's brief merely commented on the

---

[1] State Farm has pointed to several statements in Plaintiffs' own brief that arguably do not adequately characterize the truth. For instance, Plaintiffs argued in their brief that "Ed Rust voted on September 29, 2003…to send that money back to Illinois for the Karmeier campaign." (Doc. 270 at p. 11). However, the evidence presented by State Farm and at the hearing shows that Ed Rust was not at the September 29, 2003 ILR meeting and did not vote on funds being sent to Illinois. (Doc. 278, Ex. 3). If the Court considered State Farm's statements commenting on Plaintiffs' evidence in its 2005 brief fraud, how should it construe such factual statements in Plaintiffs' brief ? State Farms says those

evidence presented by Plaintiffs and is not indicative of a fraud. *Apotex*, **229 F.R.D. at 147.** The Court finds this explanation to be sufficient.

As Plaintiffs have not met their prima facie showing of a fraud by State Farm necessary to invoke the crime-fraud exception and State Farm as offered a sufficient explanation for their statements, the Court **DENIES** Plaintiff's motion

### IV. Conclusion

Accordingly, the Court **DENIES** Plaintiffs' request for communications between State Farm and its attorneys made in preparation of the 2005 and 2011 supreme court briefs. Plaintiffs have not met their prima facie showing of a crime or fraud. Further, State Farm has provided an explanation for the evidence which this Court accepts as adequate.

**IT IS SO ORDERED**.

DATED: November 25, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge

---

assertions would be fraud too. The Court agrees with State Farm that this simply cannot be the case. Plaintiffs were clearly mistaken in their factual assertion about the record. And it was a significant mistake. But setting that mistake aside, both sides have generated examples of advocacy based on a record. A record that at this point is very thin.