IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, et al.,                )
                                  )
        Plaintiffs,            )
                                  )
vs.                               )  Case No.   12-cv-660-DRH-SCW
                                  )
STATE FARM MUTUAL AUTOMOBILE      )
INSURANCE COMPANY, et al.,        )
                                  )
        Defendants.            )

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I. Introduction

This matter is before the Court on State Farm's motion to overrule the Tillery Group's privilege assertions as to 413 documents (Doc. 236) related to documents subpoenaed from Douglas Wojcieszak and Tactical Investigations. The Tillery Group has filed a Response (Doc. 259) in opposition to the motion and State Farm has filed a Reply (Doc. 262). The Court took oral argument at a hearing on October 21, 2014. Further, the Court has reviewed in camera the 413 documents at issue in this dispute and issued its ruling at a hearing on December 4, 2014. The following memorializes the Court's findings and rulings at that hearing on the issue of privilege.

### II. Factual Background

Plaintiffs filed their class action Complaint on May 29, 2012 alleging two RICO claims against Defendants. Plaintiffs allege that State Farm devised a scheme to elect Judge Lloyd Karmeier to the Illinois Supreme Court, conceal its involvement in the financing and management of the campaign from Plaintiffs and the Illinois Supreme Court so that Judge Karmeier could preside over the *Avery* case which was then pending before the supreme court, and concealed their involvement by

misrepresenting their involvement in two written briefs submitted to the Illinois Supreme Court in 2005 and 2011.

As part of the *Avery* case, Doug Wojcieszak provided three affidavits in 2005 and 2011 in which he made factual assertions regarding State Farm's role in the Karmeier campaign (Doc. 13-6 at pp. 1-21).   In his 2011 affidavit, he claimed that State Farm was responsible for at least $3.2 million in contributions to the Justice Karmeier campaign (Id. at pp. 4 and 11-12).   As part of *this* litigation, in 2014, State Farm served subpoenas on Wojcieszak and his former firm, Tactical Investigations (Doc. 236-1 and 2).   State Farm sought documents regarding Wojcieszak's and Tactical Investigation's investigations into the Karmeier election campaign.   They sought all documents that Wojcieszak relied on or collected in forming his affidavits in the *Avery* case.   Korein Tillery, Randall Bono, Brad Lakin, Jeff Cooper, and John Simmons (hereinafter "the Tillery Group") objected to the production of 413 documents they claim to be privileged under a prior agreement with Wojcieszak and Tactical Investigations.

On November 1, 2003, Korein Tillery entered into an agreement with Douglas Wojcieszak and his business partner Tom Denton to provide litigation support in the case *Price v. Philip Morris* (Doc. 259-2).   The agreement protected as confidential and prevented from disclosure any information related to the business conducted by Tillery for a period of ten years after the agreement had ended (*Id.* at ¶ 6C).   The agreement ended in February 2006, thus the non-disclosure part of the agreement remains in effect until February 2016 (Doc. 259-1 at ¶ 4).   Korein Tillery argues that documents and confidential communications between Tillery and Wojcieszak are protected as work product as Wojcieszak was hired to provide litigation support in the *Price* case.   The rest of the Tillery Group also worked with Wojcieszak under the agreement with Tillery to provide support for political efforts regarding anti-tort reform efforts and the 2004 Karmeier/Maag election.   The Tillery Group

argues that those documents labeled with a First Amendment privilege in their privilege log reflect political activities, strategies, or communications in which the group engaged with Wojcieszak and Tactical Investigations.

State Farm seeks the documents listed in the Tillery Group's privilege log because they believe that the documents will show that Wojcieszak presented a nearly identical conspiracy theory regarding the funding of Justice Karmeier's 2004 campaign to the group as it did to the Plaintiff's in *Avery*, except Wojcieszak presented to the Tillery Group that Philip Morris, rather than State Farm, funded the Karmeier campaign. State Farm argues that the same dollars to Karmeier's campaign that Wojcieszak attributed to Philip Morris, he now attributes to State Farm in this case. State Farm believes the documents will show that Wojcieszak gave contradictory sworn statements in the *Avery* case and to the Tillery Group.

### III.  Analysis

The Tillery Group objects to the production of 413 documents it argues are protected under work product and First Amendment privileges. The Court will discuss each purported privilege in turn.

**A.  First Amendment[1]**

The Tillery Group argues that certain documents are protected from disclosure under the First Amendment privilege. "[T]he right of association is a 'basic constitutional freedom,' that is 'closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society.'" **Buckley v. Valeo, 424 U.S. 1, 25 (1976) (quoting Shelton v. Tucker, 364 U.S. 479, 486 (1960)).** Compelled production of political associations and their activities can have a chilling effect

---

[1] The Court has concluded that the following documents should have been classified as being subject to a First Amendment privilege: 37, 38, 39, 40, 41, 43, 44, 45, 49, 59, 78, 101, 224, 225, 226, and 317. The Court analyzed these documents under the First Amendment rubric.

on this right. *Perry v. Schwarzenegger*, **591 F.3d 1147, 1160 (9th Cir. 2010).** A First Amendment privilege, thus, applies to discovery issues and the privilege protects "against the disclosure of the identity of members and the content of internal communications between members, employees, and agents of associations." *Greenville v. Syngenta Crop Prot., Inc.*, **11-MC-10, 2011 WL 5118601, at * 6 (C.D. Ill. Oct. 27, 2011) (citing** *Perry*, **591 F.3d at 1162-63).** The privilege is not absolute, but if an association is "engaged in advocating controversial views and the publication of its internal files would expose members to retaliation for those views" an association may claim a privilege against disclosure of materials. *Marrese v. American Academy of Orthopaedic Surgeons*, **726 F.2d 1150, 1159 (7th Cir. 1984).** In order to claim the privilege, the association must make a *prima facie* showing that producing the documents "will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' association rights." *Perry*, **591 F.3d at 1160 (internal quotations omitted) (quoting** *Brock v. Local 375, Plumbers International Union of America, AFL-CIO*, **860 F.2d 346, 350 (9th Cir. 1988)).** The party seeking the documents must then show that the information is essential to their case and could not [be] "obtained by other means that would be less likely to discourage such advocacy." *Marrese*, **726 F.2d at 1159;** *Greenville*, **2011 WL 5118601, at * 6 (citing** *United States v. Citizens State Bank*, **612 F.2s 1091, 1094 (8th Cir. 1980).** The Court looks at three factors including: "(1) the relevance of the information sought, (2) the need for that information, and (3) the extent of injury that disclosure may cause to associational rights." *In re Heartland*, **2011 WL 1839482, at * 3 (citations or quotations omitted).** The information must be so relevant that it "goes to the heart of the matter." *Id.*

Here, the Tillery Group has made their *prima facie* showing for the First Amendment privilege. In an affidavit submitted to State Farm, Tillery has shown that he engages in political

advocacy that deals with controversial views and that he has a legitimate fear of repercussion if his associational activities were known. He specifically declared in his affidavit that he associates with others and engages in campaigning and fundraising for candidates and issues with which he agrees and campaigns against issues he does not agree with (Doc. 236-21 at ¶ 3). The candidates and issues he supports are controversial because he participates in judicial elections and, as an attorney, he may appear in front of those judges in the future (*Id.* at ¶ 5). He also associates with clients and referring counsel and, thus, he has shown a legitimate fear that if his support or opposition to candidates is known it could negatively affect his relationship with clients and other counsel who hold the opposite view of that candidate (*Id.* at ¶ 5). Tillery has also shown that disclosure of his associational activities would chill his speech because he would not participate in campaigns if the information could be disclosed (*Id.* at ¶ 7). State Farm has acknowledged that other members of the Tillery Group, including Messrs. Cooper, Simmons, Bono, and Lakin submitted identical affidavits to Tillery's and a review of the documents reveal that these communications involved this core group of people who were involved in election strategy (Doc. 236 at p. 16 fn. 21). *Perry*, 591 F.3d at 1165 n.12. Thus, the Court finds these declarations to be sufficient evidence of their *prima facie* burden. **See *Perry*, 591 F.3d at 1164 (finding that the declaration "creates a reasonable inference that disclosure would have the practical effects of discouraging political associations"); *City of Greenville*, 2011 WL 5118601, at \* 7 (collecting cases).**

The Court also finds Tillery Group's fears to be legitimate given their positions as attorneys in the community. As the Tillery Group points out, as attorneys they would be less likely to campaign if their communications and associations with a campaign were allowed to be disclosed as that might affect their relationship with the their clients and other attorneys who may have different political views. And, more importantly, if their communications and associations involving a judicial

race were exposed, that could negatively impact their ability to practice in front of a judge that they campaigned against. The Court notes that a review of the documents show that the information would not simply reveal who the Tillery Group voted for or provided money to, but would show the extent of those activities and behind the scenes election campaigning and discussions which would pose a legitimate fear of negative consequences. The Court finds that a highly contested supreme court judicial race is a controversial political issue and disclosures would deter the Tillery Group's participation for this very reason. *Perry*, **591 F.3d at 1162.** The Court also notes that a subsequent affidavit from Tillery shows that Tactical Investigations assisted him and other members of the Tillery Group with this political advocacy, particularly advocacy associated with the 2004 Karmeier elections. Thus, documents related to that advocacy are privileged, and the protective order in this case may not be sufficient to protect the First Amendment rights at issue. *Id.* **at 1164 ("A protective order limiting dissemination of this information will ameliorate but cannot eliminate these threatened harms.").**

After conducting in camera review of all of the documents in the privilege log,[2] the Court also finds that most of the documents are not essential to State Farm's case. As the Tillery Group points out this case concerns State Farm's involvement in the 2004 Karmeier election, not the Tillery Group's involvement. However, the in camera review of the privileged documents, the Court has identified some documents that are essential to State Farm's defense. These documents relate to factual assertions which could be contrasted with the factual positions taken by Plaintiffs as well as those assertions in affidavits submitted by Plaintiffs from Wojcieszak. This does not mean that the documents are relevant only for purposes of impeachment, as all the documents would be relevant for impeachment purposes and the Seventh Circuit is reluctant to require production of documents over a

---

[2] The Court also directed the Tillery Group to provide a hard copy of document 114 to the Court which it has not yet reviewed.

privilege assertion solely on the basis of impeachment. *See Sandra T.E.,* **600 F.3d at 622-623 (noting reluctance of court to provide discovery over a work product privilege for impeachment purposes) (citing** *Hauger v. Chi., Rock Island & Pac. R.R. Co.***, 216 F.2d 501, 508 (7th Cir. 1954)).** Instead, the Court finds that these documents go to the heart of State Farm's defense in this case. Thus, the Court finds these documents to be essential and will direct that they be produced, albeit with some redactions. The Court accordingly **DIRECTS** that the following documents be produced: 38 (with redactions), 67, 115 (with redactions, 127, 194 (with redactions), 195, 196, 197, 198 (with redactions), 199, 205 (with redactions), 206, 207, 208, 209 (with redactions), 210, 211, 212, 213, 214, 215, 217, 218, 224, 236, 237, 240, 251 (with redactions), 261, 278, 279, 283, 295, 299, 339 (with redactions). The Court has provided these redactions to the Tillery Group and Wojcieszak and Tactical Investigations are **DIRECTED** to produce the documents by December 19, 2014.

**B.    Work Product**

The work product doctrine protects from disclosure those "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives." **Fed.R.Civ.P.26(b)(3)(A).** The purpose of the doctrine is to "establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary" and also prevents the other litigants from "taking a free ride on the research and thinking of his opponent's lawyer." *Hobley v. Burge***, 433 F.3d 946, 949 (7th Cir. 2006)(citing** *In re Special Sept. 1978 Grand Jury II***, 640 F.2d 49, 62 (7th Cir. 1980);** *United States v. Frederick***, 182 F.3d 496, 500 (7th Cir. 1999));** *Menasha Corp. v. U.S. Dept. of Justice***, 707 F.3d 846, 847 (7th Cir. 2013) (citing** *Mattenson v. Baxter Healthcare Corp.***, 438 F.3d 763, 768 (7th Cir. 2006)).** The doctrine provides additional protection to the "mental impressions, conclusions,

opinions, or legal theories of a party's attorney or other representative concerning the litigation." **Fed.R.Civ.P. 26(b)(3)(B).** Thus, even when fact work product is discoverable under the "substantial need" exception, opinion work product must still be protected. *Appleton Papers, Inc. v. Environmental Protection Agency*, **702 F.3d 1018, 1023 (7th Cir. 2012).**

However, in certain circumstances documents that would be considered work product are discoverable if a "party can establish a substantial need for the documents and cannot obtain equivalent materials without undue hardship." *Sandra T.E. v. South Berwyn School Dist. 100*, **600 F.3d 612, 622 (7th Cir. 2010) (quoting Fed.R.Civ.P. 26(b)(3)(A)(ii)).** The Seventh Circuit has been "extremely reluctant to allow discovery of attorney work product simply as impeachment evidence." *Sandra T.E.,* **600 F.3d at 622-623 (citing** *Hauger v. Chi., Rock Island & Pac. R.R. Co.***, 216 F.2d 501, 508 (7th Cir. 1954)).**

Here, State Farm first argues that the Tillery Group's work product claims should be overruled because they are not a party to the case and thus cannot benefit from the protections under Rule 26(b). State Farm cites to *Cook v. City of Chicago*, **2010 WL 331737, at \*1 (N.D. Ill. Jan. 26, 2010).** In that case, the district court held that a non-party could not assert work product under Rule 26(b) because the language of the rule specifically provided that a party could not obtain the work product of "another party or its representative", thus limiting the protection to parties in the case. *Id.* However, the Court does not find that the Seventh Circuit has drawn such a distinction. In fact, in *Appleton Papers*, the Seventh Circuit specifically applied Rule 26 and the work product doctrine to a nonparty seeking information outside of the scope of litigation through a Freedom of Information Act request. *Appleton Papers, Inc.*, **702 F.3d at 1023**. In that case, a nonparty to the initial litigation sought information created by consulting firms the United States had hired to prepare in preparation for litigation. The Seventh Circuit applied Rule 26(b) and found that the information the nonparty

sought was protected work product under Rule 26(b).  *Id.*  The Seventh Circuit further employed the work product rule under Rule 26(b) towards a nonparty attorney in *Hobley*, finding that an attorney "has an independent interest in privacy, even when the client has waived its own claim."  **Hobley, 433 F.3d at 949-50.**  Thus, the Court finds no basis for rejecting the Tillery Group's work product privilege under a theory that Rule 26(b) does not apply to nonparties.   It is clear to this Court from the caselaw that the Seventh Circuit has applied Rule 26(b) and the work product doctrine to nonparties.

State Farm also argues that any privilege that the Tillery Group had has been waived because Wojcieszak has shared this information with Plaintiffs in the *Avery* case.  However, the Seventh Circuit has also spoken directly to this issue in *Appleton*.  The Seventh Circuit noted in that case that "disclosure of some documents does not necessarily destroy work-product protection for other documents of the same character."  **Appleton, 702 F.3d at 1025.**  Instead, the Court must look at whether the "specific assertions of privilege are reasonably consistent with the purposes for which the privilege was created."  *Id.*  Further, as the Tillery Group points out, the focus of the disclosure of the claimed work product materials is on whether the disclosure "substantially increased the opportunities for potential adversaries to obtain the information."  **BASF Aktiengesellschaft v. Reilly Industries, Inc., 224 F.R.D. 438, 441-42 (S.D. Ind. 2004) (citing 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2024 (2d ed. 1994)).**

Here, some documents were disclosed to the Plaintiffs in the *Avery* case, although as the Tillery Group points out this disclosure was not authorized by Tillery and was in direct conflict with their agreement not to disclose.  Although some documents were disclosed, these documents, according to Tillery's affidavit, were not work product materials and were not on their privilege log. Further, the documents were not disclosed to any potential adversaries.   Instead, the disclosures were made among Plaintiff's attorneys litigating similar cases to the case pursued by Tillery.  Thus, the

Court finds that the materials shared with the Plaintiffs in *Avery* did not waive the privilege as there was no increased potential for adversaries to obtain the information.

Having found that Rule 26(b) work product privilege can be asserted by the Tillery Group and that they have not generally waived their privilege, the Court undertook an in-camera review of the documents. The Court finds that some of the documents are work product and thus protected from disclosure. State Farm argues that they are entitled to the privileged documents because they have shown a substantial need for the documents. But most of the materials would simply be useful to impeach testimony from Mr. Wojcieszak based on his bias and the Court does not find that to be a substantial need. *See Sandra T.E.*, **600 F.3d at 622-623 (citing** *Hauger v. Chi., Rock Island & Pac. R.R. Co.,* **216 F.2d 501, 508 (7th Cir. 1954)).**

However, certain of the documents for which the work product privilege was asserted clearly related to public relations (documents 7,8, 10, 12, 16, 17, 21, 24, 26, and 32). As to those documents the Court is still considering whether they should properly be protected by the work product privilege. *See Burke v. Lakin Law Firm, PC,* **Case No 07-CV-76-MJR, 2008 WL 117838 (S.D. Ill. Jan. 7, 2008).** Additionally, in reviewing the documents subject to a work product claim of privilege, it became clear to the Court that some of those documents were not only purely public relations related, but, to the extent the privilege might attach to such documents, the privilege was waived through production to a reporter. Thus, at this time, the Court only **ORDERS** production of those public relations documents to which the privilege clearly does not extend. Accordingly, Tactical Investigations and Wojcieszak are **DIRECTED** to produce documents 339 (with redactions), 340, 341, 342, 343, 381 (with redactions), 382, 383, 384, 385, 386, 387, 388, 390 (with redactions), 391, 392, 393, 394, 395, 396, 398, 399. These documents shall be produced by **December 19, 2014**.

## IV. Conclusion

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** State Farm's Motion to overrule the Tillery Group's privilege assertions (Doc. 236). The Court finds that the majority of the 431 documents submitted for in-camera review are protected by First Amendment or work product privileges. However, the Court does **ORDER** that certain documents essential to the heart of State Farm's defense and those public relation documents which were exposed to the public domain shall be produced to State Farm. Tactical Investigations and Wojcieszak has until December 19, 2014 to produce those documents with the directed redactions.

**IT IS SO ORDERED**.
DATED: December 5, 2014.

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge