# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, et al.,       )
                               )

           Plaintiffs,        )
                               )

vs.                               )   Case No.   12-cv-660-DRH-SCW
                               )

STATE FARM MUTUAL AUTOMOBILE     )
INSURANCE COMPANY, et al.,        )
                               )

           Defendants.       )

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I.    Introduction

Before the Court is The Honorable Justice Lloyd Karmeier's (hereinafter Justice Karmeier) Motion to Quash Subpoena, or in the Alternative, for a Protective Order (Doc. 299). Justice Karmeier seeks to quash the subpoena sent to him for a deposition in the present case. Justice Karmeier argues that Plaintiffs have not met their burden of showing extreme and extraordinary circumstances requiring the justice's deposition. Plaintiffs have filed a Response (Doc. 305) in opposition to the motion. Justice Karmeier (Doc. 309) and Defendant State Farm (Doc. 310) have filed Replies.

### II.    Factual Background

Plaintiffs filed their class action Complaint on May 29, 2012 alleging two RICO claims against Defendants. Plaintiffs allege that State Farm devised a scheme to elect Judge Lloyd Karmeier to the Illinois Supreme Court, and conceal its involvement in the financing and management of the campaign from Plaintiffs and the Illinois Supreme Court so that Justice Karmeier could preside over the *Avery* case which was then pending before the supreme court. Plaintiffs further allege that part of

the scheme involved State Farm misrepresenting its involvement in two written briefs submitted to the Illinois Supreme Court in 2005 and 2011.

As part of their discovery, Plaintiffs issued a Notice of Intent to Issue and Serve Subpoena to Testify at a Deposition to Justice Karmeier (Doc. 299-1).   In response to that Notice, counsel for Justice Karmeier filed the instant Motion to Quash. (Doc. 299).   Justice Karmeier argues that Plaintiffs have not shown extreme and extraordinary circumstances necessary to examine a judicial decision-maker.   In the alternative, Justice Karmeier seeks a protective order which would require Plaintiffs to first submit written questions to Justice Karmeier to determine if an oral deposition is necessary or if the discovery Plaintiffs seek can be obtained in another manner.   Justice Karmeier also asks, in the alternative, that if a deposition is allowed that this Court narrow the scope of that deposition in light of a judge's deliberative processes privilege.

### III.   Analysis

Justice Karmeier argues that Plaintiffs should not be allowed to take his deposition because they have not shown extreme and extraordinary circumstances to require the deposition of a sitting justice.   It is a long standing "proposition that high officials should rarely be compelled to testify regarding the deliberative process used to arrive at a decision within the scope of their government duties."   *In re United States*, **542 Fed.Appx. 944, 947 (Fed.Cir. Oct. 16, 2013) (citing** *United States v. Morgan***, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed.1429 (1941));** *In re Matter of Cook,* **49 F.3d 263, 265 (7th Cir. 1995) (citing** *Fayerweather v. Ritch***, 195 U.S. 276, 306 − 07 (1904)).**   Such examinations of judges are destructive to judicial responsibility and would disturb the integrity of the judiciary.   *See Morgan***, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) (citing** *Morgan v. United States***, 298 U.S. 468, 480, 56 S.Ct. 906, 80 L.Ed. 1288 (1939)).**   In the case of a judge, this "deliberative process" privilege extends not only to a judge's mental impressions but also to judicial

deliberations. *Thomas v. Page*, 361 Ill. App.3d 484, 488-89, 837 N.Ed.2d 483 (2nd Dist. 2005) (citing *Fayerweather*, 195 U.S. at 307); *United States v. Morgan*, 313 U.S. at 422, 61 S.Ct. 999, 85 L.Ed. 1429). In Illinois, the deliberation privilege also extends to a judge's discussions with his staff and other judges. *Id.* at 489-90, 837 N.E.2d 483 (citing *In the Matter of Certain Complaints Under Investigation by an Investigating Committee of the Judicial Council of the Eleventh Circuit*, 783 F.2d 1488, 1450 (11th Cir. 1986)).

Inquiries into an official's mental processes and deliberations can only be done on a showing of extraordinary circumstances. *In re United States*, 542 Fed.Appx. at 948 (court analyzed request of former shareholder of AIG to depose Chairmen Ben Bernanke regarding the Federal Reserve's decisions surrounding the terms for the bailout of AIG). The party seeking to depose the official must show extraordinary circumstances by showing that the judge has "personal involvement or first-hand knowledge of the underlying dispute." *Id.* (citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)). The party must also show that the information cannot be obtained from other sources or through the deposition of other individuals. *Id.* Thus, the party must show extraordinary circumstances or special need. *Id.* (citing *In re United States (Jackson)*, 624 F.3d 1368, 1372(11th Cir. 2010)).

However, this does not mean that an official, to include a judge, is immune from testifying on all matters. A high ranking official may be required to sit for a deposition if the party seeking the deposition shows that it will lead to admissible evidence. *Bagley v. Blagojevich*, 486 F.Supp.2d 786, 788 (C.D. Ill. 2007) (D.J., Mills)(quoting *Olivieri V. Rodriguez*, 122 F.3d 406, 410 (7th Cir. 1997)). The Supreme Court has also indicated, albeit in dicta, that there are no rules exempting judges from their "normal obligation to respond as a witness when he had information material to a criminal or civil proceeding." *Dennis v. Sparks*, 449 U.S. 24, 31, 101 S.Ct. 183, 66 L.Ed.2d 185

**(1980).** Importantly, however, *Dennis* makes no mention of the deliberative process privilege and specifically avoids the issue of other protections that may be afforded judges or other high ranking public officials. *Dennis,* **449 U.S. at 31, n. 7.**

Here, Plaintiffs have made clear that they do not intend to question Justice Karmeier on processes, judicial determination, or deliberations in the *Avery* or any other case.   There appears to be no dispute on this point.   However, as indicated in their response to Justice Karmeier's motion, they intend to depose Justice Karmeier regarding his "recruitment and selection as an Illinois Supreme Court candidate, his campaign and fundraising activities, his communications and relationships with persons and interest groups, including Defendants and their employees, agents or representatives, and the activities of those persons and groups regarding his campaign and election." (Doc. 305 at p. 2). To say the least, the scope of these topics is extremely broad.   And while the topics do not necessarily relate to the deliberative process surrounding the *Avery* decision *on the merits*, examination of the topics highlights the real crux of the issue before the Court - all of these topics relate to Justice Karmeier's decision not to *recuse* himself, and the Illinois Supreme Court's decision not to compel his *recusal*, in *Avery.*   The decision not to recuse is the most important deliberative choice at issue here. And the Court must also treat that decision as encompassing the deliberative process like any other decision. *United States v. Roebuck,* **271 F. Supp. 712, 718 – 721 (D.C.V.I. 2003)(attorney attempted to depose judges comprising territorial district court in support of her motion to disqualify judge presiding over her client's criminal case).**

The Plaintiffs in this case seek a *de facto* reversal of the decision not to recuse.   And, as their enumerated topics demonstrate, they seek Justice Karmeier's deposition for the purpose of conducting an exploratory search for any evidence of bias on his part or undue influence from another.   What's more, the scope of the intended topics potentially touches upon Justice Karmeier's

decision to participate in any number of other cases, to include *Price v. Phillip Morris.* **See *Philip Morris USA Inc. v. Appellate Court, Fifth District*, Case No. 117689 (Ill. Sept. 24, 2014) (order denying recusal)** (*See* Doc. 271 Ex. 8).

The Court's search reveals that most cases suggest that the scope of the "deliberative process" privilege would not extend to historical facts concerning the financing of a campaign that predates a judge's assumption of office. Nor would the privilege extend to extrajudicial contacts with non-court personnel. ***See Matter of Complaints*, 783 F.3d at 1520 & 1520 n. 28 (privilege does not extend to telephone message books and logs that do not "reveal the substance of communications with other judges, with staff, or the like" relating to official judicial business such as the "framing and researching of opinions orders and rulings."); *Thomas,* 361 Ill.App.3d at 488 – 492 (Illinois' qualified privilege extends to communications "between judges, judges and their law clerks, between a judge and another judge's law clerk, and between law clerks," provided the communications relate to the judicial decision making process.); *see also In re Matter of the Enforcement of a Subpoena*, 463 Mass. 162, 174 – 75 (2012) (absolute privilege does not extend to judge's memory of non-deliberative events or ex parte communications during the deliberative process)**. Nevertheless, the testimony Plaintiffs seek from Justice Karmeier is directly relevant to his deliberative judicial determination not to recuse in the *Avery* case and, potentially, others. In that important respect this case is distinguishable from cases involving, for example, personal injury, employment discrimination, or sexual harassment where the deposition of a judge is sought because he is a witness or a party to events having nothing to do with his judicial duties. ***See Bagley*, 486 F. Supp. 2d at 789 (The governor was alleged decision maker in employment decision); *Jones v. Clinton*, 72 F.3d 1354 (8th Cir. 1996) (sitting president direct defendant in sexual harassment lawsuit)**. Cases such as those would not implicate, or even touch

upon, a judge's deliberative process or decision making.  This case is different.  Plaintiffs want to impeach a decision of Justice Karmeier and the Illinois Supreme Court.

The *Roebuck* court was faced with a situation analogous to the issues presented here. In that case, counsel for the defendant - an attorney whose public comments about the sitting judge had apparently caused him to recuse in other cases – sought a deposition of the judge, and other judges on the court, concerning a broad range of topics that might touch upon his bias towards the attorney in question. **271 F.Supp.2d at 719 – 720.**   The requested topics of deposition sought information that was clearly extra-judicial, such as; how the judge first came to know about the attorney and whether he had heard comments about her, whether the judge had made any extrajudicial comments about the attorney, and whether he had learned anything from third parties about the lawyer or her firm as well as the substance of that information. *Id.* **at 719.**   Yet, while the *Roebuck* court seemed to recognize that some of this information could be considered purely factual, it still found that the topics fell "directly within the prohibition established by *Morgan* and its progeny." *Id.* **at 721 (citing *Morgan*, 313 U.S. at 421 – 422) (and collecting cases).**

Here, the Court recognizes that some of the information sought by Plaintiffs may not fall squarely within the prohibitions established by *Morgan*.  But it comes dangerously close.   So close that those concerns which animate *Morgan* and its progeny are front and center. Recognizing this, the Court also is mindful of its broad discretion in supervising discovery, including depositions.  *Olivieri v. Rodriguez,* **122 F.3d 406, 409 (7th Cir. 1997); F.R.C.P. 26(c)**.   Thus, if appropriate, the Court will limit the use of discovery tools if there are countervailing interests that require it. Here, while the deposition of Justice Karmeier Plaintiffs seek may not fall squarely within the deliberative process privilege, the Court still finds that it must treat this case differently than one where a judge is alleged to have personal knowledge of facts completely removed from his decision making.  To do otherwise

would invite abuse. It would suggest that any time a disgruntled litigant moved to recuse a judge based on a theory of improper outside influence, he could also compel the judge's deposition. This would render courts vulnerable to "frivolous attacks upon [their] dignity and integrity." *U.S. v. Dowdy,* **440 F.Supp. 894, 96 (W.D. VA 1977)(quoting** *U.S. v. Valenti* **120 F.Supp. 80 (D.N.J.));** *Roebuck,* **271 F.Supp.2d at 722;** *See also Crenshaw v. Dywan***, 34 F.Supp.2d 707 (N.D. Ind. 1999).**   This Court believes something more is needed.

Plaintiffs conceded at oral argument that they cannot prove, and do not contend, that Justice Karmeier himself engaged in a *quid quo pro* fraud. (Doc. 324 at p. 56).   Plaintiffs went so far as to say they found suggestions by counsel for Justice Karmeier that they he was being accused of accepting a bribe to be offensive.[1]  (Doc. 324 at pp. 40-41).   Setting aside whether or not at some point Plaintiffs may offer some evidence of Justice Karmeier's complicity in the fraud alleged in the Amended Complaint, thus far they have offered nothing of the sort.   The Court finds that allowing a deposition of a sitting justice under these circumstances raises concerns for the dignity and integrity of the Illinois courts. *See Morgan,* **313 U.S. at 422;** *Roebuck,* **271 F.Supp.2d at 722.**   Especially when the sitting justice is a non-party and there is neither evidence, nor allegation, of wrongdoing.

Plaintiffs contend that Justice Karmeier's first-hand knowledge of his campaign and the financing of his campaign will lead to evidence about State Farm's involvement in the campaign. While this may be true, under the circumstances of this case, the Court sees that there are other, less disruptive, mechanisms available.   First, the Plaintiffs can seek, and are in the process of seeking, the same evidence from the defendants in this case.   Of course Plaintiffs contended that this is

---

[1] While Plaintiffs claim to be offended at the suggestion that they are accusing Justice Karmeier of taking a bribe, their response brief seems to suggest as much. Doc. 305, p. 9 ("The 'expected consequence' of secretly controlling, orchestrating and financing an election campaign is that you will get a favorable vote when you need it. That is what happened here."). Moreover, they have specifically accused Justice Karmeier of being a participant in the enterprise engaged in the fraudulent scheme alleged in their Amended Complaint. Doc. 299 at pars. 28 & 29.

insufficient as only Justice Karmeier can provide facts concerning his personal knowledge. (Doc. 305 at p.2).   That Justice Karmeier is the only one who can testify concerning his personal knowledge is no doubt true. But that argument would apply to any witness.   In reality, if Plaintiffs allegations are true, it only follows that every relevant fact they seek in discovery from Justice Karmeier is also within the personal knowledge of someone else.   In particular, any defendant in this case who is alleged to have been part of this fraudulent enterprise could be deposed regarding their knowledge of the scheme. *See In re United States* **542 Fed. Appx. at 948 (discovery of high ranking official only permitted where other persons cannot provide information);** *Roebuck,* **271 F.Supp.2d 724 – 725.**

Additionally, there are less disruptive ways in which discovery can be sought from Justice Karmeier personally.   Justice Karmeier has proposed in the alternative that Plaintiffs submit written interrogatories before he is deposed in order to determine proper topics for the deposition. Yet even that process presupposes a subsequent deposition which, on this record, the court will not allow.

The Court will allow interrogatories to be served on Justice Karmeier in lieu of a deposition. In order to further the interests previously discussed, the topics of these interrogatories will be strictly limited. The Court will not allow questioning on any discussions Karmeier may have had at any time regarding "class actions" generally[2], the *Avery* case generally, or any other "broad" topics which Plaintiffs have not shown a basis for questioning on.   To allow such questioning would allow Plaintiffs to engage in the sort of exploratory expedition that the protections afforded the judiciary (and other officials) are designed to prevent. *In re United States,* **542 Fed. Appx. at 949.**   Instead, the Court will allow questions concerning the extent of his knowledge concerning the involvement of State Farm, either directly or indirectly, in supporting or financing his campaign.   The Court will also

---

[2] Plaintiffs' counsel suggested this line of inquiry at oral argument.

allow questions concerning contacts and communications that Justice Karmeier has had with any of the defendants in this case, or anyone he understood to be acting on their behalf, concerning the financing of his campaign or any aspect of the *Avery* case.   Plaintiffs shall be limited to 20 interrogatories, which although in response to a subpoena, shall be served and answered in accordance with FRCP 33 except that the Court will narrow the time frame for Justice Karmeier's response, which will be provided within 14 days of receipt.   Plaintiffs shall propound the interrogatories within 30 days of today's date.

## IV.   Conclusion

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Justice Karmeier's motion to quash (Doc. 299).   While the Court **DENIES** Plaintiffs' request for a deposition of Justice Karmeier, and thus **GRANTS** the motion to quash, the Court will allow written interrogatories to be submitted to Justice Karmeier, but only as to the extent of his knowledge concerning the involvement of State Farm in supporting or financing his campaign and any contacts and communications that Justice Karmeier has had with any of the defendants in this case, or anyone he understood to be acting on their behalf, concerning the financing of his campaign or any aspect of the *Avery* case. Interrogatories shall be submitted to Justice Karmeier within thirty days of the date of this Order.

**IT IS SO ORDERED**.
DATED:   January 16, 2015.

/s/ Stephen C. Williams
STEPHEN C. WILLIAMS
United States Magistrate Judge