## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MARK HALE, TODD SHADLE,**
**LAURIE LOGER, and MARK COVINGTON,**
**on behalf of themselves and all**
**others similarly situated,**

**Plaintiffs,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, EDWARD**
**MURNANE, and WILLIAM G. SHEPHERD,**

**Defendants.**                                        **No. 12-0660-DRH**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

## Introduction and Background

Pending before the Court are two appeals filed by plaintiffs: (1) an appeal of a portion of Magistrate Judge Williams' January 12, 2015 Order (Doc. 332) and (2) an appeal of Magistrate Judge Williams' January 15, 2015 Order (Doc. 337). As the issues in these appeals are closely related, the Court considers the appeals at the same time.  First, plaintiffs ask the Court to reconsider and enter an order modifying the portion of Magistrate Judge Williams' January 12, 2015 Order granting State Farm's motion to quash plaintiffs' subpoena as to Robert Shultz and direct that his deposition proceed (Docs. 332 & 333).  Plaintiffs seek to depose Mr. Shultz regarding his participation as a member of the Illinois State Bar Association Judicial Evaluation Committee that engaged in conducting

evaluations of then-trial judge Lloyd Karmeier and then-appellate justice Gordon Maag with respect to the 2004 election to the Illinois Supreme Court.  State Farm and Shultz filed its opposition to the appeal (Doc. 348) as did the Illinois State Bar Association (Doc. 347).  Plaintiffs filed a reply (Doc. 352).  Second, Plaintiffs ask the Court to reconsider and modify Magistrate Judge Williams' Order barring plaintiffs from deposing Justice Karmeier and instead allowing them to serve 20 written interrogatories that were "strictly limited in scope" (Doc. 337).  Plaintiffs seek to depose Justice Karmeier regarding his "recruitment and selection as an Illinois Supreme Court candidate, his campaign and fundraising activities, his communications and relationships with persons and interest groups, including defendants and their employees, agents or representatives, and the activities of those persons and groups regarding his campaign and election."   Justice Karmeier filed an opposition to the appeal (Doc. 349) and plaintiffs filed a reply (Doc. 355).   Based on the following, the Court respectfully disagrees with Magistrate Judge Williams' findings as to these two depositions and allows plaintiffs to proceed with the depositions of both Mr. Shultz and Justice Lloyd Karmeier.

## Analysis

Local Rule 73.1(a) of the Southern District of Illinois provides:

> (a)   Appeal of Non-Dispositive Matters – 28 U.S.C. § 636(b)(1)(A)
> Any party may appeal a Magistrate Judge's order determining a motion or matter within **14 days** after issuance of a Magistrate Judge's order, unless a different time is prescribed by the Magistrate Judge or a District Judge.  The party shall file with the Clerk of the Court and serve on all parties a written request for an

appeal which shall specifically designate the order or part of the order that the parties wish the Court to reconsider. A District Judge shall reconsider the matter and shall set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to the law. A District Judge may also reconsider sua sponte any matter determined by a Magistrate Judge under this rule.

Also, under Federal Rule of Civil Procedure 72(a), the Court may modify or reverse a magistrate judge on a non-dispositive issue upon a showing that the magistrate judge's decision is "clearly erroneous or contrary to the law." Specifically, Federal Rule of Civil Procedure 72(a) provides:

> **Nondispositive Matters.** When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings, and when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to the law.

A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *See also Weeks v. Samsung Heavy Industries Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)("The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made.").

As to Mr. Shultz, the pleadings reveal the following. In 2003, Mr. Shultz was appointed to the ISBA Judicial Evaluation Committee's evaluations of Judge

Lloyd Karmeier and Justice Gordon Maag, who were candidates for the Fifth District seat on the Illinois Supreme Court.  In 2001, Justice Maag authored the *Avery* Illinois Appellate Opinion largely affirming the trial court's $1.05 billion judgment against State Farm.  During this time, Mr. Shultz was one of State Farm's principal lawyers in *Avery*, both at trial and on appeal, including the then-pending appeal before the Illinois Supreme Court. Shultz did not recuse himself from evaluating Karmeier and Maag.  Neither Shultz nor State Farm disclosed Shultz's participation in the ISBA's vetting process to the Illinois Supreme Court before it adjudicated *Avery*.  In February 2004, Judge Karmeier received a "highly qualified" rating from the ISBA, while Justice Maag received a "qualified" rating. The *Avery* appeal in the Illinois Supreme Court was under advisement from May 2003 until August 2005.

Plaintiffs argue that Magistrate Judge Williams' Order as to Shultz is clearly erroneous and contrary to the law as Mr. Shultz's deposition testimony is relevant to the issues in this case.  Specifically, plaintiffs contend that State Farm's January 31, 2005 brief opposing the *Avery* plaintiffs' motion for conditional non-participation and State Farm's September 19, 2011 response to the *Avery* plaintiffs' petition to recall the mandate and vacate the Illinois Supreme Court's August 18, 2005 opinion are the predicate acts of mail fraud supporting their RICO action.  They contend that the signature blocks for both briefs contain Shultz's name and that Shultz signed the 2011 response. Plaintiffs maintain that Shultz's participation in the evaluations of Karmeier and Maag is further evidence

of an overall scheme to defraud the *Avery* plaintiffs and the Illinois Supreme Court. Defendants respond that Magistrate Judge Williams properly ruled there was no evidence that any of the subpoenaed individuals were part of any fraud and that plaintiffs' recusal theory regarding Mr. Shultz was not a basis for waiving the judicial evaluation privilege. Further, defendants contend that plaintiffs' recusal theory regarding Shultz has nothing to do with plaintiffs' RICO claims. The Court agrees with plaintiffs, finds that Judge Williams did not consider the use of limitations and that he wrongly decided there was no relevance as to these depositions when clearly there is.

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding any matter, not privileged, that is relevant to any claim or defense of any party. Fed.R.Civ.P. 26(b)(1). Rule 501 of the Federal Rules of Evidence governs the applicability of any privilege in federal court. Fed.R.Evid. 501. Federal common law governs the applicability of privilege in cases based upon a federal cause of action even when the complaint also alleges a pendent state law claim. *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1061 (7th Cir. 1981); *see also Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004)(confirming that Illinois privilege law does not govern federal question claims). Thus, federal common law governs the privilege determination in this case. In general, evidentiary privileges are not favored. *See United States v. Nixon*, 418 U.S. 683, 710 (1974)(finding that

evidentiary privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth").

Where state law requires certain information to be privileged, "a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Memorial Hospital for McHenry County 6*64 F.2d at 1061. The following principles also guided the Court:

> First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case."

*Id.* at 1061–1062 (quoting *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 543 (7th Cir. 1977)). The parties agree that Illinois recognizes a privilege for the judicial evaluation process. See *In re Illinois Judicial Inquiry Board*, 128 Ill.App.3d 798, 801-802 (1st Dist. 1984). This case recognizes a privilege for confidential communications given in a peer review setting. The Illinois Appellate Court, relying on Wigmore's Evidence treatise, set forth the following requirements for the privilege:

> "(1) The communication must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of the litigation."

8 Wigmore, Evidence (McNaughton rev. 1961) Section 2285 (emphasis in original).

Consider the following hypothetical. Assume for the moment that a lawyer representing a large corporation in a case that is quite clearly destined for a decision before the state supreme court is serving on that state's bar association's screening committee for candidates standing for election to that high court. Assume further that the lawyer is mindful of his obligation to recuse in the deliberations of that screening committee should he feel his duty for impartiality is either actually challenged or appears that way to an observing public. He then makes the decision or, at least, is in the process of formulating his decision whether he should recuse from the upcoming screening process for the slate of supreme court candidates because he knows the case he is working on will be a significant one on the docket of either of the candidates he is asked to investigate on behalf of the Bar. Further assume that one of the candidates to be screened was the author of the opinion in the intermediate appellate court that affirmed the judgment of the trial court setting up the need for this high court appeal, a decision quite distressing to this client as well as to this lawyer who represented has represented this client at every stage. Further assume a principal corporate

officer of his client in the case somehow becomes aware of this decision or the process the lawyer is pursuing and discusses it with him via phone and email, thereby inserting himself into his decision and impresses upon him the subtle or not so subtle advantage that could result from his advocacy on the committee on behalf of a favored candidate.   As a result of the discussion, the committee member decides not to recuse and advocates for the client's favored candidate in the screening process.   At the same time, he is advocating against the appellate justice who authored an opinion which he professionally and his client economically found to be distressing at the very least.

That discussion has nothing whatsoever to do with attorney client privilege. It is a conspiracy between two individuals that quite likely is in violation of the RICO Act.   The discovery and uncovering of it does not violate the judicial evaluation process or, if it does, the federal interest of discovering it and its content far outweigh the state interest of keeping it secret.   This undersigned judge is not saying that a deposition will uncover facts such as these in *Hale v State Farm*, and it is just these kinds of allegations that have been made by the plaintiffs, but if a deposition does not occur it is certain that such facts or anything close to it will never be uncovered or disproven.   If a party is not allowed to pursue in discovery the facts the may support its theory because the assertion of a privilege is allowed to hide those facts from that party and the public, then the federal rules are rendered useless.   Thus, in accordance with both *Memorial Hospital for McHenry* and *In re Illinois Judicial Inquiry Board*, the Court finds

that a deposition of Mr. Shultz that is limited in subject matter is relevant and is appropriate under the circumstances of this case.

Thus, the Court **ALLOWS** plaintiffs to depose Mr. Shultz regarding any conversations he had with anyone from State Farm or acting in any way on State Farm's behalf, or any of the named defendant's or unnamed co-conspirators, regarding the screening process of Supreme Court candidates.  He further may be asked questions regarding his decision making process regarding the issue of his recusal and why he chose not to recuse from the screening of Karmeier and Maag and whether he consulted anyone on that issue.   A fair area of inquiry may include whether he made any attempt to persuade his fellow committee members in any way and if so what his motives in doing so were and whether he was encouraged to do so by anyone acting on behalf of State Farm or any of the named defendant's or unnamed co-conspirators. He may not be asked about the positions taken by the other screening committee members unless it is necessary to show that because he was motivated by assisting State Farm or any of the named defendant's or unnamed co-conspirators, he was compelled to attempt to change the vote of a certain member or other and so the positions of other members can only be developed if the ill-motive of Mr. Shultz has first been developed.  So, it should be clear to everyone that the Court's limitations on the inquiry are centered around only Mr. Shultz's direct contact and decision-making with and for State Farm or anyone acting on its behalf or any of the named defendant's or unnamed co-conspirators, that would tend to lead to relevant

evidence that would tend to prove or disprove that Mr. Shultz failed to recuse in an effort to advance State Farm's cause in the *Avery* case by attempting to skew this portion of the Bar Association's screening process to make it appear to the public that Judge Karmeier was the more favorable candidate than Justice Maag. The inquiry shall not delve in any way to Mr. Shultz's work as an attorney on the *Avery* case.

The Court turns now to address plaintiffs' appeal regarding Justice Karmeier. Plaintiffs argue that Magistrate Judge Williams' Order is clearly erroneous and contrary to the law for the following reasons: (1) Justice Karmeier did not meet his burden that the deliberative process privilege applies; (2) Magistrate Judge Williams misinterpreted the law on the deliberative process privilege and wrongly concluded that Justice Karmeier's extrajudicial activities and communications predating his election to the Illinois Supreme Court implicated the judicial process and that plaintiffs' proposed pre-election inquiry necessarily implicates Justice Karmeier's deliberations in *Avery* or his reasons for not recusing himself from that decision; (3) Magistrate Judge Williams wrongly concluded that other sources were available to plaintiffs who could provide the same information as Justice Karmeier; and (4) Magistrate Judge Williams wrongly determined that limited interrogatories, severely restricted in both topic and timing, are a reasonable substitute for an oral deposition. Defendants counter that plaintiffs have not and cannot meet their heavy burden to succeed on this appeal. Defendants maintain that Judge Williams' Order demonstrates a clear

understanding of the record before him as well as the relevant Rules and cases upon which he relied in making his ruling.

As to Justice Karmeier, the Court finds that Magistrate Judge Williams was wrong in finding that the plaintiffs could not depose Justice Karmeier and instead allowing interrogatories with limitations. The Court finds that those limitations would serve better in the deposition setting rather than in interrogatory setting as Justice Karmeier is a fact witness to the allegations presented in this case. Plaintiffs have made it clear that they do not intend to question Justice Karmeier on process, judicial determination or deliberations in the *Avery* or any other case. Clearly, such a line of questioning would be immaterial to the issues pled and improper under the circumstances of the inquiry required for this case. The line of questioning that the Court intends to allow does not implicate Justice Karmeier's deliberative process while on the Illinois Supreme Court as the information that plaintiffs seek preceded his election to the Illinois Supreme Court. The information that plaintiffs seek is relevant, is not privileged and is not related to his duties as a sitting judge, thus, plaintiffs are entitled to depose Justice Karmeier on these topics. *See Bagley v. Blagojevich*, 486 F.Supp.2d 786, 788 (C.D. Ill. 2007)(D.J., Mills)(quoting *Olivieri v. Rodriquez*, 122 F.3d 406, 410 (7th Cir. 1997); *see also Dennis v. Sparks*, 449 U.S. 24, 31 (1980)(The Supreme Court has indicated, albeit in dicta, that there are no rules exempting judges from their "normal obligation to respond as a witness when he had information material to a criminal or civil proceeding."). It is entirely appropriate

that the parties be able to listen to his answers, observe his demeanor, and ask follow up questions.

Add to the above hypothetical that one of the candidates standing for election is indeed favored by the committee member's client.  In fact, that a principal employee of that client was part of a task force of "concerned citizens" who sought out viable candidates and actually interviewed the person who ultimately became this favored candidate. This group of citizens not only recruits the candidate but is primarily responsible for raising campaign funds and takes a principle role in the management of the campaign.  That candidate ultimately would able to connect the dots, so to say, if he were elected and takes a seat on the state's highest court and learns that the screening committee member is one of the principal lawyers of that client in a case that generates a great deal of publicity and interest because it has a high stakes economic value to the parties in interest.

Once again, there is no intent to predict what will be learned only a suggestion that what has been pleaded in this complaint, whether it can ever be proven, must be accorded a fair opportunity for both sides to explore the facts and for the public, in the face of such allegations, to learn the truth.  Without allowing the inquiry, there will never be light on the facts of this case and the federal rules will be thwarted.

The Court **ALLOWS** plaintiffs to depose Justice Karmeier as to his knowledge concerning all aspects of his campaign including his decision making process for running for the position in the first place and the persons with whom

he consulted to make that decision, how the campaign was managed, how the campaign was financed, who was involved in the decision making and strategy of the campaign.  The plaintiffs may not go into detail about these issues but may get the names of the persons who filled these various roles unless the persons involved in the various aspects of the campaign had any connection with State Farm or any of the named defendant's or unnamed co-conspirators.  To the extent that such is the case or to the extent that State Farm or any of the named defendant's or unnamed co-conspirators, had any role in any aspect of then-Judge Karmeier's recruitment or campaign for the Illinois Supreme Court, plaintiffs will be allowed to exhaustively explore the relationships.  Plaintiffs will not be allowed to ask about any of the Supreme Court's deliberations.

### Conclusion

Accordingly, the Court **GRANTS** plaintiffs' appeals (Docs. 332 & 337). Further, the Court **REVERSES** in part Magistrate Judge Williams' January 12, 2015 Order as it pertains to Mr. Shultz (Doc. 326) and **REVERSES** Magistrate Judge Williams' January 16, 2015 Order (Doc. 328).  The Court **ALLOWS** the depositions of Mr.  Shultz and Justice Lloyd Karmeier as outlined in this Memorandum and Order.

**IT IS SO ORDERED.**

Signed this 26th day of February, 2015.

Digitally signed by David R. Herndon
Date: 2015.02.26 14:46:00 -06'00'

**United States District Court**