**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

MARK HALE, TODD SHADLE, and LAURIE
LOGER, on behalf of themselves and all others
similarly situated,

        Plaintiffs

    v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, EDWARD
MURNANE, and WILLIAM G. SHEPHERD,

        Defendants.

Case No. 3:12-cv-00660-DRH-SCW

Judge David R. Herndon

Magistrate Judge Stephen C. Williams

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND INCORPORATED MEMORANDUM OF LAW**

1277344.2

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY .............................................................................1

II.    STATEMENT OF COMMON FACTS ........................................................................2

       A.    Phase I – the Set Up: Defendants Conspire to Place Karmeier on the
             Illinois Supreme Court. ...........................................................................2

             1.    State Farm Controls the ICJL. ...................................................2

             2.    Defendants Recruit Judge Karmeier and Manage His
                   Campaign. ........................................................................3

             3.    State Farm Covertly Funds the Karmeier Campaign .............................4

             4.    Defendants Improve Judge Karmeier's Odds Of Winning the
                   Election by Subverting the State Bar's Judicial Candidate
                   Evaluation Process. ................................................................9

       B.    Phase II – the Pay Off: State Farm Deceives the Illinois Supreme Court
             Regarding Its Participation in and Funding of the Karmeier Campaign.......... 10

III.   ARGUMENT .....................................................................................11

       A.    The Rule 23(a) Requirements Are Satisfied. .....................................................12

             1.    The *Hale* Class, Comprised of over Four Million People, is
                   Too Numerous for Individual Joinder. ................................................. 12

             2.    Answers to the Entirely Common Questions Relating to
                   Defendants' Ongoing Conduct Drive the Resolution of This
                   Action. ................................................................................ 12

             3.    The Named Plaintiffs' Claims Are Typical of the Class. ................... 13

             4.    Plaintiffs and Class Counsel Will Adequately Represent the
                   Class. ................................................................................. 13

       B.    The Rule 23(b)(3) Requirements Are Satisfied. ................................................ 14

             1.    Common Issues of Fact and Law Predominate for Plaintiffs'
                   RICO Claims. ....................................................................... 14

             2.    A Class Action Is Superior to Any Other Available Alternative. ....... 18

             3.    The Class Is Objectively Defined. ...................................................... 19

IV.    CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aetna Life Ins. Co. v. Lavoie*,
  475 U.S. 813 (1986)....................................................................................17

*Alliance to End Repression v. Rochford*,
  565 F.2d 975 (7th Cir. 1977) ......................................................................19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) ......................................................................2, 11, 16

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  746 N.E.2d 1242 (Ill. App. 2001), *rev'd*, 835 N.E.2d 801 (Ill. 2005) ...........................passim

*BCS Servs, Inc. v. Heartwood 88, LLC*,
  637 F.3d 750 (7th Cir. 2011) ................................................................. 16, 17

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
  280 F.R.D. 408 (N.D. Ill. 2012) ..................................................................20

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008).............................................................................. 14, 15

*Brown v. Allen*,
  344 U.S. 443 (1953).....................................................................................18

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013), *cert. denied* 134 S. Ct. 1277 (2014) ................................. 14, 18

*Caperton v. A.T. Massey Coal Co.*,
  556 U.S. 868 (2009)......................................................................... 10, 13, 17

*CGC Holding Co., LLC v. Hutchens*,
  773 F.3d 1076 (10th Cir. 2014) ...................................................................15

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ................................................................................18

*De La Fuente v. Stokely-Van Camp, Inc.*,
  713 F.2d 225 (7th Cir. 1983) .......................................................................13

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  No. 12-0660-DRH, 2013 WL 1287054, 2013 U.S. Dist. LEXIS 44270
  (S.D. Ill. Mar. 28, 2013)....................................................................1, 15, 16, 18

*Hughes v. Kore of Ind. Enter.*,
  731 F.3d 672 (7th Cir. 2013) .......................................................................18

*In re Community Bank of N. Va. Mortg. Lending Practices Litig.*,
  795 F.3d 380 (3d Cir. 2015)..........................................................................15

## TABLE OF AUTHORITIES
### (continued)

Page

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
   757 F.3d 599 (7th Cir. 2014) .................................................................12

*In re US FoodService Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) ...................................................................15

*Lau v. Arrow Fin. Servs., LLC*,
   245 F.R.D. 620 (N.D. Ill. 2007) .............................................................20

*Liquid Air Corp. v. Rogers*,
   834 F.2d 1297 (7th Cir. 1987) ................................................................15

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) ..................................................................19

*Malley-Duff & Assoc., Inc. v. Crown Life Ins. Co.*,
   792 F.2d 341 (3d Cir. 1986), *aff'd*, 483 U.S. 143 (1987) .....................17

*MCI Comm. Corp. v. Am. Tel. & Tel. Co.*,
   708 F.2d 1081 (7th Cir. 1983) ................................................................17

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ..................................................................12

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) .............................................................19, 20

*Reyes v. Netdeposit, LLC*,
   __ F.3d __, 2015 WL 5131287 (3d Cir. 2015) ............................ 12, 15, 16, 18

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ...........................................................12, 15

*Rotella v. Wood*,
   528 U.S. 549 (2000) .................................................................................19

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) .................................................................................14

*Shady Grove Orthop. Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) .................................................................................11

*Spano v. Boeing Co.*,
   294 F.R.D. 114 (S.D. Ill. 2013) .........................................................13, 19

*Stivers v. Pierce*,
   71 F.3d 732 (9th Cir. 1995) ....................................................................17

**TABLE OF AUTHORITIES**
(continued)

Page

*Subedi v. Merchant,*
   No. 09 C 4525, 2010 WL 1978693
   (N.D. Ill. May 17, 2010) ................................................................................15

*United States v. Bergrin,*
   650 F.3d 257 (3d Cir. 2011) ..........................................................................16

*United States v. Van Dyke,*
   605 F.2d 220 (6th Cir. 1979) .........................................................................14

*United States v. Waymer,*
   55 F.3d 564 (11th Cir. 1995) .........................................................................15

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) ..................................................................................12

*Wilfong v. Rent-A-Center, Inc.,*
   No. 00-CV-0680-DRH, 2001 WL 1795093
   (S.D. Ill. Dec. 27, 2001) ................................................................................14

**Statutes**

18 U.S.C. § 1341 ......................................................................................... 14, 16

18 U.S.C. § 1961 *et seq.* ....................................................................................1

18 U.S.C. § 1961(4) ..........................................................................................14

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... 2, 11

Fed. R. Civ. P. 23(a)(1) .....................................................................................12

Fed. R. Civ. P. 23(a)(1)-(4) ...............................................................................12

Fed. R. Civ. P. 23(a)(2) .....................................................................................12

Fed. R. Civ. P. 23(b)(3) .....................................................................................12

Fed. R. Civ. P. 23(g) .........................................................................................14

Illinois Supreme Court Rule 63 .........................................................................10

- iv -

## I.        INTRODUCTION AND SUMMARY

The extraordinary conduct alleged in this lawsuit gives rise to claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., that are ideally suited for prosecution as a class action. Defendants engaged in a joint course of unlawful conduct to (1) secretly recruit a sitting judge to run for an open seat on the Illinois Supreme Court, (2) run his campaign behind the scenes, (3) fund his campaign to the tune of several millions of dollars and do so in such a manner so as to conceal the contributions from the public, and (4) then deny in court pleadings that they had done any of this—all in an effort to overturn a billion dollar judgment that was then pending against State Farm in the Illinois Supreme Court in *Avery v. State Farm Mut. Auto. Ins. Co*., 746 N.E.2d 1242, 1258-59 (Ill. App. 2001), *rev'd*, 835 N.E.2d 801 (Ill. 2005).

The proposed Class consists of the group Plaintiffs allege was deprived of its property interest in the *Avery* class judgment due to Defendants' scheme to taint the tribunal before which that judgment was then pending. This includes State Farm auto policyholders who made insurance claims from July 28, 1987 to February 24, 1998, and to whom State Farm provided a repair estimate for one of the non-Original Equipment Manufacturer ("non-OEM") replacement "crash parts" enumerated by the *Avery* trial court, or had such parts installed.[1] *See* Ex. 1 to the Declaration of Elizabeth J. Cabraser in Support of Motion for Class Certification.  This is the same group of people who comprised the *Avery* class, but it is not the same class.  In each case, *Avery* and *Hale*, State Farm's conduct created and defined the class: in *Avery*, that conduct was fraud and contract breach directed toward its policyholders; in *Hale*, that conduct involved fraud directed toward a tribunal, and deprivation of a property interest in the *Avery* judgment.  The courses of conduct are plainly distinct, separated in time, and independently wrongful.

---

[1] The *Avery* class definition initially referred to those who "had non-factory authorized and/or non-OEM (Original Equipment Manufacturer) 'crash parts' *installed* on their vehicles…." Ex. 1 (emphasis added). However, the *Avery* class judgment awarded damages to policyholders "who *received estimates* specifying non-OEM replacement parts." *Avery*, 746 N.E.2d at 1258-59. In other words, to obtain an interest in the *Avery* judgment, one needed only to have the non-OEM crash part quoted. Plaintiffs in *Hale* thus propose a Class comprised of State Farm insureds who "had non-factory authorized and/or non-OEM (Original Equipment Manufacturer) 'crash parts' installed on *or specified for* their vehicles or else received monetary compensation determined in relation to the cost of such parts." This adjustment aligns the *Hale* Class definition with those who possessed a property interest in the *Avery* judgment.

It may be impossible to know if the Class would have prevailed had the system not been rigged against them; Defendants' conduct denied the Class precisely that right and opportunity. What is certain, however, is that the common questions of fact regarding Defendants' pattern of conduct deprived the Class of an unbiased judicial forum, resulting in the loss of the judgment, which was the property of the Class. Certification is warranted because the claims all rely on the same evidence and will rise or fall in unison. "In no event will the individual circumstances of particular class members bear on the inquiry." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

Based on the voluminous common evidence in this record, the Rule 23 requirements are satisfied and class certification should be granted.

## II.   STATEMENT OF COMMON FACTS

This case is about Defendants' scheme to elect an Illinois Supreme Court Justice beholden to State Farm, to hide what they were doing, and then to lie about it, so that State Farm's elected Justice would not have to recuse himself from participating in the appeal of the $1.05 billion judgment against it. The common facts which Plaintiffs have adduced from discovery thus far paint a compelling picture. Plaintiffs present these not for determination on the merits—that is the fact finder's role—but to summarize the common conduct underlying the claims, raising questions of fact and law whose answers are entirely common to the Class.

### A.   Phase I – the Set Up: Defendants Conspire to Place a Justice on the Illinois Supreme Court.

#### 1.   State Farm Controls the ICJL.

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

███████████████████████

   2.      **Defendants Recruit Judge Karmeier and Manage His Campaign.**

██████████████████████████████████████████

██████████████████████████████ ██ ████████████████████ ▪

████████████████████████████████████████████████

████████████████████████████████████████████████

▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▪████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████
▪████████████████████████████████████████████████
███████████████████████████



3.      **State Farm Covertly Funds the Karmeier Campaign**



████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████ ▪ ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

▪

4.    **Defendants Improve Judge Karmeier's Odds Of Winning the Election by Subverting the State Bar's Judicial Candidate Evaluation Process.**

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████

▪ ████████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

**B.**     **Phase II – the Pay Off: State Farm Deceives the Illinois Supreme Court Regarding Its Participation in and Funding of the Karmeier Campaign.**

Having succeeded in placing Justice Karmeier on the high court, Defendants had to make sure he was not disqualified from participating in *Avery*. At the time of Justice Karmeier's election, Illinois Supreme Court Rule 63 mandated that a Justice "*shall* disqualify himself or herself in a proceeding in which the judge's impartiality *might reasonably be questioned*." Ill. S. Ct. R. 63C (emphasis added). Moreover, on June 8, 2009, before State Farm's second offensive mailing, the United States Supreme Court held that due process requires recusal "when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009).  This is exactly what State Farm had done. ██████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

In a January 31, 2005 brief mailed to the Illinois Supreme Court, State Farm falsely denied its extraordinary support for Karmeier's candidacy; falsely denied that it had "engineered contributions" for "the purpose of impacting the outcome of this case"; failed to disclose that State Farm officials had helped recruit and vet Judge Karmeier; and failed to disclose that State Farm had organized, funded, and directed the Karmeier campaign. Ex. 85. In addition, and by way of example, State Farm's submission stated that

- "Plaintiffs have concocted a contention that State Farm somehow engineered contributions to Justice Karmeier's campaign for the purpose of impacting the outcome of this case. This is not … unsupported by any facts…." *Id.* at 11.

- "Plaintiffs' assertion that campaign contributions from organizations like ATRA were part of an 'attempt [by State Farm] to cloak their influence over Lloyd Karmeier's election … is incorrect and meritless." *Id.* at 12

- "Although Plaintiffs attempt to link large sums in contributions by a variety of persons and organizations to Justice Karmeier's campaign to State Farm, their moving papers and supporting documentation in fact reveal that a limited number of State Farm officers and employees made **quite modest** contributions to Justice Karmeier's campaign." *Id.* at 13 (emphasis added).

Nine months after his election, and after rejecting multiple disqualification requests, Justice Karmeier voted to overturn the *Avery* class judgment.

State Farm's second offensive mailing was its September 19, 2011 brief to the Illinois Supreme Court again falsely denying Murnane's extensive role in the Karmeier campaign. Ex. 86. State Farm also failed to state that its lawyer Bill Shepherd helped to recruit and vet Judge Karmeier and helped ensure the ICJL supported the Karmeier campaign. *Id.* In addition, State Farm's submission stated that

- "State Farm itself made no contribution to the campaign." *Id.* at 3.

- "[T]here was no 'funnel[ing]' of money from State Farm through JUSTPAC to Justice Karmeier." *Id.* at 24.

- "According to [the *Avery*] Plaintiffs, State Farm somehow picked Justice Karmeier as a candidate, managed his campaign, and made massive contributions to his campaign. The picture [the *Avery*] Plaintiffs attempt to paint has **no relationship to reality**." *Id.* at 3 (emphasis added).

After receiving the deceptive brief, the Illinois Supreme Court summarily denied the *Avery* plaintiffs' final petition.

## III.   ARGUMENT

Plaintiffs seek to certify a Class of people who allege deprivation of a property interest in the *Avery* judgment as a result of Defendants' RICO-violative scheme. This group consists of State Farm insureds who had non-OEM "crash parts" installed on or specified for their vehicles or else received monetary compensation determined in relation to the cost of such parts from July 28, 1987 to February 24, 1998. Although the Class is comprised of the same people in the *Avery* class, the Class in this case is defined by an independent, post-judgment wrong: Defendants' fraudulent scheme to taint a judicial tribunal and thereby rob the Class members of their interest in a money judgment.

Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthop. Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The court undertakes a "rigorous" analysis while exercising broad discretion to decide if certification is appropriate. *Amgen*, 133 S. Ct. at 1194, 1212. In deciding whether to certify a class, the court should make any factual and legal inquiries necessary under Rule 23, even if they overlap the merits of the case. *Id.* at 1194. But "the court should not turn the class certification proceedings into a

dress rehearsal for the trial…." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

Here, Defendants' every act in the RICO scheme uniformly affected the Class: each act furthered a common goal—to deprive the Class of its *Avery* judgment. Thus, the "overarching material and defining aspects of [Defendants'] conduct" are the same for each Class member. *Reyes v. Netdeposit, LLC*, __ F.3d __, 2015 WL 5131287, at *19 (3d Cir. 2015). The facts are disputed, but the answer to *every* question of fact and law that matters to the determination of liability is common to the Class. This complete commonality surpasses the Rule 23(a)(1)-(4) and (b)(3) requirements, and dictates a Class trial as the best, and only, procedure to fairly and efficiently adjudicate the common questions.

## A.      The Rule 23(a) Requirements Are Satisfied.

### 1.      The *Hale* Class, Comprised of over Four Million People, is Too Numerous for Individual Joinder.

Numerosity under Fed. R. Civ. P. 23(a)(1) cannot be disputed here: the Class is largely coextensive with the class of "more than four million" certified in *Avery*. 746 N.E.2d at 1247.

### 2.      Answers to the Entirely Common Questions Relating to Defendants' Ongoing Conduct Drive the Resolution of This Action.

Rule 23(a)(2) requires "questions of law or fact common to the class," and is satisfied if the claims of the named plaintiff and the class "depend upon a common contention…. of such a nature that it is capable of classwide resolution," *i.e.*, "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke" and will "drive resolution" of the case. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2562 (2011); *see In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014) (explaining *Wal-Mart* recognizes "the need for *conduct* common to members of the class") (emphasis in original). Here, *all* questions of law and fact are common: the Class asserts a federal statutory claim elucidated by federal common law. The nature of the claim, with its emphasis on Defendants' conduct, raises entirely common questions of pertinent fact. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (affirming RICO certification based on "[a] common nucleus of operative fact").

The common contention here is that Defendants acted in concert over a period of time to select and elect Justice Karmeier and to fraudulently conceal the nature and scope of their involvement to

enable and defend his participation in *Avery*. This conduct involves "something exceptional and far more disturbing" than the usual complaints about judicial elections: "the nature and extent of the financial support in question created a substantial risk of actual bias that triggered the need for disqualification." Ex. 87 (Geyh Rpt., ¶¶ 22, 26). Of particular concern to Professor Charles G. Geyh—a renowned scholar in judicial conduct, ethics, and elections—were State Farm's efforts to hide its contributions by using intermediaries, undermining any notion of transparency. For this reason, Professor Geyh regards State Farm's involvement here as even more troubling than the due process violations described in *Caperton*. *Id.* at ¶¶ 27-30.

### 3.    The Named Plaintiffs' Claims Are Typical of the Class.

Typicality is met on this record. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Here, all named Plaintiffs and Class members were subject to the same course of conduct. Each Plaintiff asserts civil RICO claims based on this same factual predicate and the same legal doctrines that underlie the claims of every other Class member. All Plaintiffs and Class members had an interest in the *Avery* judgment; all were deprived of that judgment before the proceeds could be allocated and distributed among them; and all thus pursue an identical claim for loss of their property interest in that judgment due to Defendants' wrongdoing. Plaintiffs' claims have the same characteristics as those of the Class.

### 4.    Plaintiffs and Class Counsel Will Adequately Represent the Class.

The interests of the Class and its representatives are united, and the representative parties will fairly and adequately protect the interests of the class. *See Spano v. Boeing Co.*, 294 F.R.D. 114, 124 (S.D. Ill. 2013) (Adequacy is demonstrated if there are "no inconsistencies between the interests of the named party and the class that he or she represents.").

All Plaintiffs here seek the same relief and share an identical interest in establishing Defendants' liability: when they prove their own claims, Plaintiffs will necessarily be proving the claims of their fellow Class members. As Plaintiff Todd Shadle put it, this case is about "fairness," and the guarantee of "an impartial tribunal" for all Class members. Ex. 88 (Shadle Dep. at 94:23, 125:6).

The interests of Plaintiffs and the Class are completely aligned.  Plaintiffs have retained skilled counsel with extensive experience in prosecuting RICO fraud, class actions, and other complex cases.[14] These counsel have engaged in extensive investigations, filed detailed pleadings, and defended the Class' RICO claims against a motion to dismiss. Counsel have also engaged in substantial discovery, litigated discovery issues, and are devoting the resources needed to prosecute this action for the Class.

**B.**     **The Rule 23(b)(3) Requirements Are Satisfied.**

The predominance inquiry focuses on efficiency and class cohesion. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013), *cert. denied* 134 S. Ct. 1277 (2014). "Common issues 'predominate' . . . when they constitute a significant part of the litigation." *Wilfong v. Rent-A-Center, Inc*., No. 00-CV-0680-DRH, 2001 WL 1795093, at *8 (S.D. Ill. Dec. 27, 2001).

**1.**     **Common Issues of Fact and Law Predominate for Plaintiffs' RICO Claims.**

Common issues of law and fact predominate civil RICO claims, which require a showing of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985) An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" includes predicate acts of mail fraud, which occur "whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1341). This standard

> is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society. It is not necessary that the scheme be fraudulent on its face but the scheme must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive…. The question of fraudulent intent under § 1341 is for the jury.

*United States v. Van Dyke*, 605 F.2d 220, 225 (6th Cir. 1979) (footnote, quotations and citations omitted). Materially misleading acts, such as action taken to conceal, is the equivalent of a deceptive statement, *Overstreet v. Ky. Central Life Ins. Co*., 950 F.2d 931, 940 (4th Cir. 1991), and failure to

---

[14] Plaintiffs ask the Court to appoint these firms as Class Counsel under Rule 23(g): Lieff Cabraser Heimann & Bernstein, LLP; Barrett Law Group, P.A.; Hausfeld, LLP; Clifford Law Offices; Much Shelist, P.C.; Thrash Law Firm, P.A.; Law Offices of Gordon Ball; Pendley, Baudin & Coffin, LLP; and Erwin Chemerinsky, Esq. Resumes for these firms are attached as Exhibits 89-97 of the Cabraser Declaration.  The appointment of these Class Counsel is not intended to affect the Co-Lead and Liaison Counsel appointments the Court made in its prior Order.  Doc. 181.

represent a material fact is the equivalent of an affirmative misrepresentation, *United States v. Waymer*, 55 F.3d 564, 571 (11th Cir. 1995). In short, material omissions matter.

In *Bridge*, the Supreme Court confirmed that RICO plaintiffs may recover for property injury in the form of deprivation of an expected monetary gain. The plaintiffs alleged a collusive bidding scheme that "deprived them and other bidders of their fair share of [tax] liens and the attendant financial benefits." 553 U.S. at 644. The Court held that the plaintiffs "suffered a 'real injury' when they lost the valuable chance to acquire more liens"—an injury that can be redressed under RICO "even if no one relied on any misrepresentation." *Id.* at 645-48.

Accordingly, civil RICO claims are frequently certified for class treatment. *See, e.g.*, *Rosario*, 963 F.2d at 1017-20 (affirming certification based on common evidence that beauty schools were shams: "that there is some factual variation among the class grievances will not defeat a class action," and "a plaintiff injured by RICO violations deserves 'complete recovery.'") (citing *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1310 (7th Cir. 1987)); *Subedi v. Merchant*, No. 09 C 4525, 2010 WL 1978693, at *6 (N.D. Ill. May 17, 2010) (certifying RICO class: "Plaintiffs claim that Defendants engaged in standardized conduct that violated specified laws, and the class will therefore be cohesive.")); *see also In re Community Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015); *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076 (10th Cir. 2014); *In re US FoodService Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013). The Third Circuit, reversing a denial of RICO class certification, recently observed: "a properly supported RICO allegation will often contain common issues" because the claim "elements focus on the defendants' joint conduct vis-à-vis the plaintiffs." *Reyes*, 2015 WL 5131287, at *13.

This case is similarly well-suited for class treatment because of the predominating common questions surrounding Defendants' acts and omissions to evade the *Avery* class judgment. In *Reyes*, certification was warranted even though "some plaintiffs were offered government grants, while others were offered healthcare discount cards, and still others had no direct involvement at all as their account information was purchased by a defendant." *Id.* at *14. Here, certification is more appropriate because there are no differences among Class members with respect to proving liability, causation, and classwide damages. No Defendants took different positions vis-à-vis particular Class members. The right to an impartial tribunal is at issue for every member of the *Hale* class, each of whom claims that

State Farm's conduct deprived him or her of the right to a fair proceeding before the Illinois Supreme Court. All members of the proposed class suffered from the same violations.

Common evidence shows that State Farm, Shepherd, and Murnane formed an unlawful enterprise to elect a jurist secretly partial to State Farm. Through a pattern of concealment and deceit, Defendants engineered Justice Karmeier's victory, enabled his non-recusal, and thereby deprived the Class of the *Avery* judgment.[15] The racketeering conduct includes the predicate acts of mail fraud that inhere in State Farm's false statements in the briefs it mailed to the Illinois Supreme Court. 18 U.S.C. § 1341; *cf. United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) ("RICO's reach can be exceptionally broad.").

Common evidence further shows a direct connection between Defendants' conspiracy and the loss of the *Avery* class judgment. *See BCS Servs, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011) (Posner, J.) (holding that RICO causation "requires merely a probability of a harm attributable to the defendant's wrongful act"). The Class alleges a common motivation: Defendants would not have poured so much effort into recruiting Karmeier and funding and managing his campaign had they believed his vote in *Avery* would make no difference. Rather, reversal of *Avery* was the foreseeable outcome of Defendants' efforts to install a Justice of their choosing in a way that permitted them to deny that they had done so.

Class certification based on RICO violations is warranted "even if establishing an injury is not as conducive to common proof, so long as … the plaintiffs have presented a plausible theory for proving a class-wide injury as a result of the racketeering activities …." *Reyes*, 2015 WL 5131287, at *15 (internal quotation marks, alterations, and citation omitted). Here, the evidence and law show that causation of harm is, at minimum, plausible because it is not Justice Karmeier's actual vote that matters, or the votes of other members of the Court, but simply the fact of his participation. Federal common law is clear that a judicial decision of a multi-member panel carries a taint if a biased member participated in deliberations.

---

[15] As this Court found, Plaintiffs' claims are "for an independent legal wrong: the illegal acts or omissions by defendants." *Hale v. State Farm Mut. Auto. Ins. Co*., No. 12-0660-DRH, 2013 WL 1287054, at *7, 2013 U.S. Dist. LEXIS 44270, at *21 (S.D. Ill. Mar. 28, 2013). Lest Defendants raise their *Rooker-Feldman* or preclusion defenses in opposition to class certification, Plaintiffs note that those asserted defenses are likewise common questions supporting class certification. *Amgen*, 133 S. Ct. at 1191; *see also Abbott v. Lockheed Martin Corp*., 725 F.3d 803, 810 (7th Cir. 2013).

*Caperton* is instructive on this point. There, the U.S. Supreme Court held that a litigant's contributions on behalf of the campaign of an eventual state supreme court justice abridged due process. The Court explained there is "a serious risk of actual bias … when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent." 556 U.S. at 884. Critically, the Court held that the "proper inquiry" is *not* whether the campaign contributions "were a necessary and sufficient cause of [the litigant's] victory," but whether "the contributor's influence on the election under all the circumstances 'would offer a possible temptation to the average … judge to … lead him not to hold the balance nice, clear and true.'" *Id*. at 885 (citation omitted); *see also, e.g.*, *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 831 (1986) (Brennan, J., concurring) ("[W]hile the influence of any single participant in this [deliberative] process can never be measured with precision, experience teaches us that each member's involvement plays a part…"); *id*. at 831.[16] Thus, a showing of actual *or apparent* bias on the part of Karmeier supports a causation finding due to his participation in rendering *Avery*.

The damages correspond to the loss of the judgment, a concrete and recognized property interest[17] that the entire Class possessed prior to the RICO misconduct. Plaintiffs' proposal to allocate any damages award in this case on a *per capita* basis, with an equal share to each Class member, defeats any argument based on asserted individualized damages issues. The *per capita* plan is reasonable because the class members possessed an *undivided* interest in the *Avery* judgment: a plan of allocation had neither been proposed nor approved when the appeal was taken. And, "[o]nce *causation* of damages" from "a series of unlawful acts intertwined with one another" has been shown, "the *amount* of damages may be determined by a just and reasonable estimate" that is non-speculative. *MCI Comm. Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983) (emphasis in original); *accord BCS Servs.*, 637 F.3d at 759 ("Once the plaintiff proves injury" in a RICO case, "broad latitude

---

[16] *See also Stivers v. Pierce*, 71 F.3d 732, 748 (9th Cir. 1995) (holding that where multiple judges participate in a decision-making process and "circumstances create the appearance that one member is biased, the proceedings violate due process"—even absent evidence that "the biased member's vote was decisive or that his views influenced those of other members.").

[17] Deprivation of a cause of action constitutes a loss of property under RICO. *Malley-Duff & Assoc., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 354 (3d Cir. 1986), *aff'd*, 483 U.S. 143 (1987).

is allowed in quantifying damages, especially when the defendant's own conduct impedes quantification," because "[o]therwise 'the more grievous the wrong done, the less likelihood there would be of a recovery.'"). Even if a more particularized allocation is ultimately deemed necessary here, certification would remain appropriate given the common issues of Defendants' conspiracy and its effects. *Butler*, 727 F.3d at 801 (holding that a need for particularized damages findings does not preclude certification "[i]f the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses") (applying *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)); *Reyes*, 2015 WL 5131287, at *11 (explaining that "an inability to calculate damages on a classwide basis will not, on its own, bar certification.").

In short, RICO liability, causation, and damages will be proved with common evidence, and stem from the same source: the undue influence that foreclosed the neutral adjudication of Plaintiffs' claims in the Illinois Supreme Court.

## 2.   A Class Action Is Superior to Any Other Available Alternative.

The common issues also make a class trial vastly superior to a series of separate trials, which would waste resources and risk inconsistent results. In fact, the small individual claims at issue here would make separate actions entirely infeasible, or, more likely, nonexistent. *Hughes v. Kore of Ind. Enter.*, 731 F.3d 672, 675 (7th Cir. 2013) ("The smaller the stakes to each victim of unlawful conduct, the greater the economies of class action treatment and the likelier that the class members will receive some money rather than (without a class action) probably nothing"); *Reyes*, 2015 WL 5131287, at *18 ("[T]he average victim of such a scheme [to defraud] nearly always finds it far easier—and much cheaper—to reluctantly accept any loss and move on than to undertake the expense and inconvenience endemic in the protracted process of trying to recover a few dollars years later.").[18]

---

[18] State Farm's designated expert, Richard Painter, suggests that a class action is not a superior way to resolve these claims because the *Avery* plaintiffs could have sought review in the U.S. Supreme Court after the Illinois Supreme Court's 2011 denial of the Petition to Recall the Mandate. That is wrong for three reasons. First, Painter's theory wrongly assumes that Plaintiffs here are pursuing a direct "appeal [of the] state court's decision on a recusal motion," a notion this Court properly rejected in denying State Farm's motion to dismiss. *See Hale*, 2013 WL 1287054, at *7, 2013 U.S. Dist. LEXIS 44270, at *20-21. Second, the *Avery* plaintiffs unsuccessfully sought U.S. Supreme Court review in 2006. When certiorari has been denied, *res judicata* bars a successive petition in the same case. *Brown v. Allen*, 344 U.S. 443, 543 (1953) (Jackson, J., concurring). Third, superiority analysis pragmatically considers

Where, as here, the consequences of individual trials include the added institutional burdens of repetitious litigation and the inability of most of the defrauded persons to seek any recovery, a class action is not just the fairest and most cost-effective form of litigation, it is also the only means of fulfilling civil RICO's "objective of encouraging civil litigation to supplement Government efforts to deter … racketeering activity." *See Rotella v. Wood*, 528 U.S. 549, 557 (2000); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015) (noting "equally important policy objective of class actions: deterring and punishing corporate wrongdoing."). A class action here provides the most efficient way to resolve this controversy and to deter similar misconduct.

Rule 23(b)(3) requires a comparative, cost-benefit analysis: will the interests of society, the courts, and the litigants be better served by application of the class mechanism, or by another existing available procedure? *See Mullins*, 795 F.3d at 672; *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). In *Mullins*, the Seventh Circuit reminds us that the challenges of manageability that attend controversies of large scale or high complexity are *not* grounds to abjure class treatment: "district courts have considerable experience with and flexibility in engineering solutions to difficult problems of case management." *Mullins*, 795 F.3d at 664. Further, cases presenting the toughest issues, and the greatest manageability challenges, are often those where superiority dictates class treatment— not only because these challenges "yield the greatest pay-off" when the case is adjudicated efficiently and preclusively—but because without a class, "there realistically is no other alternative." *Id.*

### 3.    The Class Is Objectively Defined.

Class certification also requires "a sufficiently definite" class. *Spano*, 294 F.R.D. at 118 (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977-78 (7th Cir. 1977)). As the Seventh Circuit recently explained, class definitions must "satisfy the established meaning of ascertainability by defining classes clearly and with objective criteria. If a class is ascertainable in this sense, courts should not decline certification merely because the plaintiff's proposed method for identifying class members relies on affidavits." *Mullins*, 795 F.3d at 672. The Seventh Circuit thus rejected the Third Circuit's *actually* "available methods," *see Mullins*, 795 F.3d at 658—not those which hypothetically might have been earlier pursued.

heightened demand, finding that such a requirement has the detrimental "effect of barring class actions where class treatment is often most needed." *Id*. at 658.

Here, the contours of the Class are set by a precise and objective definition, not to subjective criteria or mental states. The Class is composed of individuals who held a property interest in the *Avery* judgment, a group which is limited to State Farm insureds who, during a particular time period, received quotes for certain non-OEM auto parts and/or had those parts installed. Not only is this group objectively defined in the judgment itself, but many Class members can be definitively identified using State Farm's own records. *Cf. Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D. Ill. 2007) (citing cases "in which the definition required investigation into various records to determine which individuals from a large population qualify for class membership.").

The remainder of the Class can be ascertained through additional records from State Farm and others, and by Class-member provided affidavits and/or repair quotes, which can be easily evaluated by a claims administrator to verify Class membership. *See Boundas v. Abercrombie & Fitch Stores, Inc*., 280 F.R.D. 408, 417 (N.D. Ill. 2012). Here, then, it will be administratively feasible to determine, by reference to objective proof, whether any given claimant belongs to the Class.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify this Class.

Dated: October 19, 2015                      Respectfully submitted,

                                             /s/ *Elizabeth J. Cabraser*
                                             Elizabeth J. Cabraser
                                             Robert J. Nelson
                                             Kevin R. Budner
                                             Lieff Cabraser Heimann & Bernstein, LLP
                                             275 Battery Street, 29th Floor
                                             San Francisco, CA 94111-3339
                                             Tel: 415-956-1000

Robert A. Clifford #0461849
Kristofer S. Riddle
Clifford Law Offices
120 N. LaSalle Street, 31st Floor
Chicago, IL 60602
Tel: 312-899-9090

John W. "Don" Barrett
Barrett Law Group, P.A.
404 Court Square North
P.O. Box 927
Lexington, MS 39095-0927
Tel: 662-834-2488

Patrick W. Pendley
Pendley, Baudin & Coffin, LLP
Post Office Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Tel: 888-725-2477

Thomas P. Thrash
Marcus N. Bozeman
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201
Tel: 501-374-1058

Brent W. Landau
Hausfeld, LLP
325 Chestnut Street
Suite 900
Philadelphia, PA 19106
Tel: 215-985-3273

Gordon Ball
Gordon Ball PLLC
550 Main Street
Bank of America Center, Ste. 600
Knoxville, TN 37902
Tel: 865.525.7028

Steven P. Blonder #6215773
Jonathan L. Loew
Much Shelist, P.C.
191 N. Wacker, Suite 1800
Chicago, IL 60606-2000
Tel: 312-521-2402

Erwin Chemerinksy
University of California, Irvine School of Law
401 E. Peltason
Irvine, CA 92697-8000
(949) 824-7722

Richard R. Barrett
Law Offices of Richard R. Barrett, PLLC
2086 Old Taylor Road, Suite 1011
Oxford, Mississippi 38655
Tel: 662-380-5018

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to Local Rule 7.1(b), I certify that a copy of this MOTION FOR CLASS

CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW was served upon on the

following counsel on October 19, 2015, via the Court's CM/ECF system and FedEx.

| | |
|---|---|
| <u>***Counsel for State Farm***</u><br>Patrick D. Cloud<br>Heyl, Royster, Voelker & Allen<br>Mark Twain Plaza III, Suite 100<br>105 W. Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025 | <u>***Counsel for State Farm***</u><br>J. Timothy Eaton<br>Taft, Stettinius & Hollister<br>111 E. Wacker Drive, Suite 2800<br>Chicago, IL 60601 |
| <u>***Counsel for State Farm***</u><br>Sheila L. Birnbaum<br>Douglas W. Dunham<br>Ellen P. Quackenbos<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>51 W. Madison Avenue, 22nd Floor<br>New York, NY 10010<br>212.849.7000 | <u>***Counsel for State Farm***</u><br>Ronald S. Safer<br>Joseph A. Cancila, Jr.<br>James P. Gaughan<br>Harnaik (Nick) Kahlon<br>Kevin Reidy<br>Patricia Mathy<br>Schiff Hardin, LLP<br>233 S. Wacker Drive, Suite 6600<br>Chicago, IL 60606 |
| <u>***Counsel for State Farm***</u><br>Jonathan M. Redgrave<br>Redgrave LLP<br>14555 Avion Parkway, Suite 275<br>Chantilly, VA  20151<br>703.592.1155 | <u>***Counsel for William Shepherd***</u><br>Russell K. Scott<br>Andrew J. Tessman<br>Megha Shah<br>Greensfelder, Kemker & Gale PC<br>12 Wolf Creek Drive, Suite 100<br>Belleville, IL 62226 |
| <u>***Counsel for Ed Murnane***</u><br>David Gavin Jorgensen<br>Karim Basaria<br>Patrick E. Croke<br>Paul Veith<br>Andrew Chinsky<br>Sidley Austin Llp<br>One S. Dearborn Street, Suite 900<br>Chicago ,IL 60603 | |

/s/ *Elizabeth J. Cabraser*
