## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, TODD SHADLE and )
LAURIE LOGER, on behalf of themselves )
and all others similarly situated, )
                         ) Case No.: 3:12-cv-00660-DRH-SCW
                         )
             Plaintiffs, ) Judge David R. Herndon
                         )
        v. ) Magistrate Judge Stephen C. Williams
                         )
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, ED MURNANE )
and WILLIAM G. SHEPHERD, )
                         )
            Defendants. )
                         )
_____ )

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND .......................................................................................................... 4

    A.   The Proceedings in *Avery* ............................................................... 4

    B.   Response to Plaintiffs' Factual Allegations Regarding State Farm's Purported  Support of Justice Karmeier's Campaign .................................. 6

    C.   State Farm's 2005 and 2011 Briefs Were Appropriate Advocacy. ........... 10

    D.   Plaintiffs' ISBA Assertions Are Inaccurate. ............................................ 12

ARGUMENT ............................................................................................................... 13

    I.   THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION ......... 13

    II.   CLASS CERTIFICATION IS BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL .................................................................... 14

    III.   PLAINTIFFS' PROPOSED CLASS DOES NOT MEET THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23 ............. 15

    A.   Applicable Standards ............................................................................ 15

    B.   Rule 23(b)(3)'s Requirement of a Predominance of Common Issues Is Not Satisfied. .................................................................... 16

        1.   RICO Causation Raises Predominating Individual Questions of Law and Fact ........................................................ 17

        2.   Plaintiffs' Asserted Property Interest Raises Individual Questions .................................................................................... 19

        3.   Injury and Damages Raise Individual Questions .......................... 22

    C.   Superiority and Manageability Are Not Satisfied ................................... 24

    D.   Plaintiffs Are Inadequate Representatives with Atypical Claims ............. 26

    E.   The Class is Not Ascertainable ............................................................. 27

    F.   Plaintiffs' Proposed Modification of the Class Definition Is Impermissible ...................................................................................... 28

    G.   Plaintiffs' Proposed Class Counsel Are Inadequate Because of Conflicts .............................................................................................. 29

CONCLUSION ............................................................................................................. 30

# **TABLE OF AUTHORITIES**

**Page**

## CASES

*Aiello v. Providian Financial Corp.*,
   239 F.3d 876 (7th Cir. 2001) ...................................................... 24

*American Honda Motor Co. v. Allen*,
   600 F.3d 813 (7th Cir. 2010) .................................................. 15, 16

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ................................................................ 17

*Apotex Corp. v. Merck & Co., Inc.*,
   229 F.R.D. 142 (N.D. Ill. 2005) ................................................. 11

*Augustus v. Progressive Corp.*,
   2003 WL 155267 (Ohio Ct. App. 2003) ....................................... 25

*Avery v. State Farm Mutual Automobile Insurance Co.*,
   835 N.E.2d 801 (Ill. 2005) .................................................. passim

*Avery v. State Farm Mutual Automobile Insurance Co.*,
   746 N.E.2d 1242 (Ill. App. Ct. 2001), *aff'd in part*,
   *rev'd in part*, 835 N.E.2d 801 (Ill. 2005) ................................ 23, 29

*Avery v. State Farm Mutual Automobile Insurance Co.*,
   1999 WL 1022134 (Ill. Cir. Ct. Oct. 8, 1999), *aff'd in part*,
   *rev'd in part*, 746 N.E.2d 1242 (Ill. App. Ct. 2001), *aff'd in part*,
   *rev'd in part*, 835 N.E.2d 801 (Ill. 2005) ..................................... 23

*Avery v. State Farm Mutual Automobile Insurance Co.*,
   1999 WL 955543 (Ill. Cir. Ct. Oct. 8, 1999), *aff'd in part*,
   *rev'd in part*, 746 N.E.2d 1242 (Ill. App. Ct. 2001),*aff'd in part*,
   *rev'd in part*, 835 N.E.2d 801 (Ill. 2005) ..................................... 23

*BCS Services, Inc. v. Heartwood 88, LLC*,
   637 F.3d 750 (7th Cir. 2011) ...................................................... 20

*Bridge v. Phoenix Bond & Indemnity Co.*,
   553 U.S. 639 (2008) ............................................................. 20, 21

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ...................................................... 23

*Brown v. Allen*,
   344 U.S. 443 (1953) ................................................................ 15

*Caperton v. A.T. Massey Coal Co.*,
   556 U.S. 868 (2009) ................................................................ 18

*Carr v. Tillery*,
   2010 WL 4781127 (S.D. Ill. Sept. 20, 2010) ..................................................... 14

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ............................................................................ 26

*Cimino v. Raymark Industries, Inc.*,
   151 F.3d 297 (5th Cir. 1998) ............................................................................ 23

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ...................................................................................... 24

*Corley v. Rosewood Care Center, Inc. of Peoria*,
   388 F.3d 990 (7th Cir. 2004) ............................................................................ 16

*Craig v. Ontario Corp.*,
   543 F.3d 872 (7th Cir. 2008) ............................................................................ 13

*Darvin v. International Harvester*,
   610 F. Supp. 255 (S.D.N.Y. 1985) .................................................................... 27

*Dawaji v. Askar*,
   618 F. App'x 858 (2015) ......................................................................... 2, 13, 14

*Deck v. Engineered Laminates*,
   349 F.3d 1253 (10th Cir. 2003) ........................................................................ 21

*Doe v. Roe*,
   958 F.2d 763 (7th Cir. 1992) ..................................................................... 3, 19, 21

*Empress Casino Joliet Corp. v. Johnston*,
   763 F.3d 723 (7th Cir. 2014) ............................................................................ 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011) ...................................................................................... 16

*Evans v. City of Chicago*,
   434 F.3d 916, 924-25, 932 (7th Cir. 2006), *overruled on other
   grounds*, *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) ................................. 21, 24, 26

*Evans v. City of Chicago*,
   689 F.2d 1286 (7th Cir. 1982), *overruled on other grounds*,
   873 F.2d 1007 (7th Cir. 1989) .................................................................... 19, 20

*Greenberger v. Geico General Insurance Co.*,
   631 F.3d 392 (7th Cir. 2011) ............................................................................ 24

*Hamilton v. O'Connor Chevrolet, Inc.*,
   2006 WL 1697171 (N.D. Ill. June 12, 2006) ..................................................... 25

*Harold v. Steel*,
   773 F.3d 884-85 (7th Cir. 2014) ................................................................... 2, 13

*Henry v. Farmer City State Bank*,
   808 F.2d 1228 (7th Cir. 1986) .......................................................................... 14

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992) ................................................................. 17

*Hurlbert v. Charles*,
    938 N.E.2d 507 (2010) .............................................................. 14

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*,
    333 F.3d 763 (7th Cir. 2003), *overruled on other grounds,*
    *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011) .......................... 14, 15

*In re General Motors Corp. Dex-Cool Products Liability Litigation*,
    241 F.R.D. 305 (S.D. Ill. 2007) ............................................... 20

*In re Marriage of Duggan*,
    877 N.E.2d 1140 (Ill. App. Ct. 2007) ....................................... 19

*In re Met-L-Wood Corp.*,
    861 F.2d 1012 (7th Cir. 1988) ................................................. 15

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices &*
    *Relevant Products Liability Litigation*,
    275 F.R.D. 270 (S.D. Ill. 2011) ............................................... 23

*Iqbal v. Patel*,
    780 F.3d 728 (7th Cir. 2015) ................................................. 2, 13

*Jamie S. v. Milwaukee Public Schools*,
    668 F.3d 481 (7th Cir. 2012) ................................................. 15

*Kimberlin v. National Bloggers Club*,
    2015 WL 1242763 (D. Md. Mar. 17, 2015)................................ 21

*Lauter v. Anoufrieva*,
    642 F. Supp. 2d 1060 (C.D. Cal. 2009) ................................... 22

*Lincoln House, Inc. v. Dupre*,
    903 F.2d 845 (1st Cir. 1990) ................................................. 21

*Magnum v. Archdiocese of Philadelphia*,
    253 F. App'x 224 (3d Cir. 2007) ........................................... 21

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000)................................................... 21

*Malley-Duff & Associates v. Crown Life Insurance Co.*,
    792 F.2d 341 (3d Cir. 1986), *aff'd*, 483 U.S. 143 (1987) ................ 21

*Marshall v. H & R Block Tax Servs. Inc.*,
    270 F.R.D. 400 (S.D. Ill. 2010) ............................................. 20

*McCormick v. City of Lawrence*,
    325 F. Supp. 2d 1191 (D. Kan. 2004) ..................................... 22

*McIntyre v. Household Bank*,
    2004 WL 2958690 (N.D. Ill. Dec. 21, 2004).............................. 27

*Messner v. Northshore University HealthSystem,*
    669 F.3d 802 (7th Cir. 2012) ............................................................................ 15, 16

*Mullins v. Direct Digital, LLC,*
    795 F.3d 654 (7th Cir. 2015) ................................................................................... 27

*Oshana v. Coca-Cola Co.,*
    472 F.3d 506 (7th Cir. 2006) ................................................................................... 26

*Parko v. Shell Oil Co.,*
    739 F.3d 1083 (7th Cir. 2014) ................................................................................. 15

*Price v. Pinnacle Brands, Inc.,*
    138 F.3d 602 (5th Cir. 1998) ................................................................................... 21

*Randall v. Rolls–Royce Corp.,*
    637 F.3d 818 (7th Cir. 2011) ................................................................................... 26

*Schwendeman v. USAA Casualty Insurance Co.,*
    65 P.3d 1 (Wash. App. 2003) .................................................................................. 25

*Sherman v. Koch,*
    623 F.3d 501 (7th Cir. 2010) ................................................................................... 26

*Shigemura v. Duft,*
    211 F. App'x 499 (7th Cir. 2006) ............................................................................ 18

*Smith v. Bayer Corp.,*
    131 S. Ct. 2368 (2011) ....................................................................................... 14, 15

*Snell v. Geico Corp.,*
    2001 WL 1085237 (Md. Cir. Ct. Aug. 14, 2001) .................................................. 25

*Snider v. City of Excelsior Springs,*
    154 F.3d 809 (8th Cir. 1998) ................................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ........................................................................ 15, 16, 17, 18, 24

*Westchester County Independence Party v. Astorino,*
    __ F. Supp. 3d __, 2015 WL 5883718 (S.D.N.Y. Oct. 8, 2015) .............................. 22

*Wright v. Szczur,*
    2012 WL 268283 (W.D.N.Y. Jan. 30, 2012) .......................................................... 22

## <u>STATUTES AND RULES</u>

18 U.S.C. § 1962 ............................................................................................................ 16

18 U.S.C. § 1962(c) ....................................................................................................... 18

18 U.S.C. § 1962(d) ....................................................................................................... 18

18 U.S.C. § 1964(c) ........................................................................................................ 16

28 U.S.C. § 2072(b) ............................................................................................ 24

Fed. R. Civ. P. 23 ........................................................................................ 15, 17

Fed. R. Civ. P. 23(a)(4) ..................................................................................... 26

Fed. R. Civ. P. 23(b)(3) ..........................................................................2, 4, 16, 24

Illinois Rules of Professional Conduct Rule 1.7(a)(2) .......................................29

Illinois Rules of Professional Conduct Rule 3.3 ................................................30

## OTHER AUTHORITIES

ABA Standing Committee on Ethics and Professional Responsibility, Proposed Amended Rule 2.11(b), (c) ............................................................................................. 29

## INTRODUCTION

Plaintiffs' motion asks this Court to certify the same nationwide, 4.7 million-member class that was ***unanimously*** decertified by the Illinois Supreme Court more than a decade ago in *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005).[1] In *Avery*, Plaintiffs claimed that State Farm's specification of non-OEM parts in its insureds' car repair estimates breached its insurance policies and violated the Illinois Consumer Fraud Act ("ICFA"). In addition to rejecting Plaintiffs' claims on the merits, the Illinois Supreme Court held that Plaintiffs' claims presented an overwhelming predominance of individual and non-common issues arising from (*inter alia*) significant differences in the terms of the class members' policies, in the state laws governing the class claims, and in the individual circumstances of each of the approximately 4.7 million class members' car repairs. Plaintiffs now improperly contend that their loss of the judgment in *Avery* is a RICO injury and that State Farm's briefs mailed to the Illinois Supreme Court in response to Plaintiffs' motions to disqualify Justice Lloyd Karmeier were RICO predicate acts. Plaintiffs claim that Justice Karmeier's participation in *Avery* "tainted" the proceedings – a claim Plaintiffs have already made unsuccessfully four times in the Illinois Supreme Court and once in the U.S. Supreme Court.[2]

As an initial matter, this Court should reconsider its jurisdiction under *Rooker-Feldman* in light of recent Seventh Circuit decisions that are directly applicable to this case. Those decisions hold that where (as here) a plaintiff alleges that "false statements to a state court produce[d] an adverse decision" and the alleged "harm did not materialize until the adverse state-court judgment," "'the state court's judgment is the source of the injury of which plaintiffs complain in

---

[1] The two concurring/dissenting justices agreed in decertifying the nationwide class, but would have remanded for a determination whether subclasses were possible. *Avery*, 835 N.E.2d at 864, 869-70, 879.

[2] A timeline of these challenges is attached as Ex. 1 to the Declaration of Nick Kahlon in Support of State Farm's Memorandum in Opposition to Plaintiffs' Motion for Class Certification; *see also* Ex. 6 at 2-3.

federal court'" and a federal court is without jurisdiction. *Dawaji v. Askar*, 618 F. App'x 858, 859 (2015) (quoting *Harold v. Steel*, 773 F.3d 884-85 (7th Cir. 2014)); *see also Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) ("fraud (no matter how described) does not permit a federal district court to set aside a state court's judgment in a civil suit"). Under these cases, Plaintiffs' claims are barred by *Rooker-Feldman*, because their alleged harms (the purported tainting of the tribunal and the loss of the *Avery* judgment) did not materialize until the Illinois Supreme Court's decisions rejecting Plaintiffs' due process and other challenges to Justice Karmeier's participation, reversing certification of the nationwide class, and reversing the $1.05 billion *Avery* judgment. All of those decisions by the Illinois Supreme Court are protected under *Rooker-Feldman*, as well as by *res judicata* and collateral estoppel.

Class certification here also would be manifestly improper under Federal Rule of Civil Procedure 23. Individual issues central to Plaintiffs' RICO standing and to the elements of their RICO claim, combined with the individual issues that predominated in *Avery* and would require resolution here, make it impossible for Plaintiffs to satisfy Rule 23(b)(3)'s requirements of predominance of common issues, superiority and manageability.

Plaintiffs erroneously attempt to cast the RICO issues of causation, injury, and damages as common issues. Plaintiffs' analysis ignores the legal requirements for a RICO claim, and their purported common issues rest upon misstatements of the applicable law. First, Plaintiffs incorrectly contend that RICO causation can be satisfied on a common basis simply by showing that Justice Karmeier's participation "tainted" the tribunal. (Pl. Mem. at 1,11,16.) Such a showing would not satisfy RICO causation, which, as this Court has held (*see* [67] at 28), requires Plaintiffs to show that State Farm's actions were the "but-for" and proximate cause of Plaintiffs' claimed injury, namely the loss of the $1.05 billion judgment in *Avery*. The purported "tainting" of the tribunal by Justice Karmeier's participation, in the absence of a showing that the votes of

the other justices were actually affected, does not complete the chain of causation from the alleged RICO violations to the reversal of the judgment. Indeed, Plaintiffs' acknowledgment that "[i]t may be impossible to know if the Class would have prevailed had the system not been rigged against them" (Pl. Mem. at 2) concedes that they cannot show RICO causation.

Moreover, even if Plaintiffs could show some linkage between Justice Karmeier's participation and the outcome in *Avery* (which they cannot), the issue of causation would not be common. Rather, proving causation would require different showings for different class members, because the Illinois Supreme Court's decision consisted of multiple different rulings (*see infra* at 5, 18-19), each of which affected some putative class members but not others.

Plaintiffs also incorrectly assert that the putative class members have a common RICO property interest in the reversed *Avery* judgment. (Pl. Mem. at 2,13,17.)  Whether an interest is a property interest under RICO is "quintessentially a question of state law." *Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992). Thus, to support class certification, Plaintiffs were required to provide an analysis of the laws of the putative class members' home states and show that those variations would be manageable. But Plaintiffs have failed to show that Illinois or any other state recognizes a property interest in a non-final class judgment.  Indeed, it is clear that under Illinois law no such property interest exists.

Plaintiffs attempt to avoid individual issues of injury and damages by proposing that damages should be distributed "per capita" without any determinations as to whether individual class members actually sustained any injury or damages that would have entitled them to recover under *Avery*. Both the trial court and the Illinois Appellate Court in *Avery* acknowledged that individual determinations would be needed before any individual class member could recover under the *Avery* judgment. Plaintiffs' proposal to treat damages as a common issue by a "per capita" distribution not only is contrary to the Illinois courts' decisions in *Avery*, but also is

unsupported by any authority and violative of State Farm's constitutional rights. Even assuming *arguendo* that the loss of the *Avery* judgment could be a RICO injury to property, whether an individual putative class member actually had an interest in that property, and, if so, the dollar amount of that interest, would depend on each class member's individual entitlement to a share of the reversed $1.05 billion judgment in *Avery*. Thus, Plaintiffs' RICO claims would require litigation of all the individual issues identified by the Illinois Supreme Court in *Avery*, including each class member's policy terms, whether or not a non-OEM part was actually installed on the class member's car, and whether the car was restored to its pre-loss condition.

Plaintiffs' inability to establish a predominance of common issues (or even the existence of any common issue) precludes certification of a class under Rule 23(b)(3). The requirements of typicality, adequacy of the named Plaintiffs and class counsel, ascertainability, and an appropriate class definition raise further insuperable obstacles to class certification. For all these reasons and the reasons set forth below, class certification should be denied.

## BACKGROUND

### A.     The Proceedings in *Avery*

The named Plaintiffs, Mark Hale, Todd Shadle and Laurie Loger, were named Plaintiffs and class representatives in *Avery*. ([289] ¶3.) They now seek to certify the same class that was unanimously decertified by the Illinois Supreme Court.[3]

**The Illinois Supreme Court's Rulings.**  The Illinois Supreme Court made binding substantive rulings in *Avery* both on the merits of Plaintiffs' breach-of-contract and ICFA claims and on the impropriety of class certification of those claims. The Court unanimously held that nationwide certification of the *Avery* breach-of-contract class was erroneous and improper. *Avery,*

---

[3] Plaintiffs admit that they seek to certify "the same group of people who comprised the *Avery* class." (Pl. Mem. at 1.)  A chart comparing the class unanimously decertified in *Avery* to the class asserted here is Ex. 2.

835 N.E.2d at 819-25, 864-69. The Court found that there were "material policy differences" among State Farm's nationwide insurance policies that precluded class treatment of the contract claims: "Where a putative class includes members who are insured under policies that are materially different, the commonality and predominance requirement [for class certification] cannot be met." *Id.* at 821, 824, 826. With regard to the majority of State Farm's policies, which obligated State Farm to specify parts "sufficient to restore a vehicle to its pre-loss condition" and "expressly permit[ted] the specification of non-OEM parts," the Court held that to show a breach, a plaintiff would have to show that the parts specified and used "did not restore the vehicle to its preloss condition." *Id.* at 826. As the Court concluded, the necessary "individual examination of hundreds of thousands, if not millions, of vehicles" would "overwhelm any question common to the subclass," such that predominance could not be met. *Id.* at 826-27.

The Illinois Supreme Court further ruled that individual issues predominated with respect to injury and damages. The Court unanimously rejected Plaintiffs' specification damages theory that all class members had sustained an injury from the mere fact that non-OEM parts were specified on their estimates, stating that "[n]o possible damage could come to a policyholder simply because a non-OEM part was listed on his repair estimate." *Id.* at 832. Rather, "[o]nly if the part were actually installed, and only if it were shown that this part failed to restore the vehicle to its preloss condition, could it possibly be said that the policyholder suffered damage." *Id.*; *see also id.* at 864.[4] The Court also unanimously reversed certification of Plaintiffs' ICFA claims, ruling that no deceptive statement was shown, *id.* at 845-47, and that ICFA does not apply nationwide. *Id.* at 853. Plaintiffs do not challenge the Illinois Supreme Court's rulings in

---

[4] The Court also rejected Plaintiffs' purported class-wide proof of damages, ruling that "the evidence offered [by Plaintiffs] . . . was too speculative and uncertain to support an award of damages" to the class or to provide a "valid basis for awarding such damages with regard to a subclass." *Id.* at 834-35. The Court noted that Plaintiffs' damages expert conceded that his estimate "could be incorrect by as much as $1 billion." *Id.* at 834.

*Avery* and acknowledge that these rulings are the law of Illinois. ([50] at 10,11; [87] at 4.)

**B.      Response to Plaintiffs' Factual Allegations Regarding State Farm's Purported Support of Justice Karmeier's Campaign**

Plaintiffs state this case is about "Defendants' scheme to elect an Illinois Supreme Court Justice beholden to State Farm, to hide what they were doing, and then to lie about it, so that State Farm's elected Justice would not have to recuse himself from participating in the appeal" of *Avery*. (Pl. Mem. at 2.) This purported scheme is a fictional narrative concocted by Plaintiffs and is not supported by the evidence.

**State Farm Made No Contributions to Justice Karmeier.** State Farm made ***no*** contributions in 2003 or 2004 to: Justice Karmeier's campaign (Citizens for Karmeier); the political action committee of the Illinois Civil Justice League ("ICJL"), known as JUSTPAC; the Illinois Republican Party; or the political action committee of the Illinois Chamber of Commerce.[5] ███████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ Consistent with traditional political alignments in Illinois, these business interests and the Illinois Republican Party supported Justice Karmeier, and his opponent, Justice Maag, was supported by the Illinois Democratic Party and the trial bar, with massive and roughly equivalent aggregate contributions being made to both sides. (*See* Ex. 6 at 3; Ex. 7 at 17.)

███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[5] The D-2 forms filed by these entities and the records publicly available at the Illinois Board of Elections website confirm that State Farm made no such corporate contributions. (*See* Exs. 8 & 9; Ex. 7 at 14.)

█████████████████████████████████



The fact that State Farm employees have been on the boards of such organizations does not support Plaintiffs' alleged scheme. Under Plaintiffs' theory, each board member could be deemed separately responsible for all of the organizations' contributions, which is illogical and impossible.

**U.S. Chamber of Commerce.** Plaintiffs claim that State Farm directed funds from the U.S. Chamber and ILR to the Karmeier campaign, based in part on the fact that CEO Ed Rust was an ILR Director in 2003 and 2004. Mr. Rust was just one of thirty-six ILR Board members,



Not only is Plaintiffs' contribution-by-association theory unsupported, but it also has no logical end.[12] As State Farm's expert, Professor Painter, stated, this theory could be cut-and-pasted to challenge Justice Karmeier's participation in any case involving myriad companies that were members of organizations that contributed to the Illinois Republican Party or Karmeier campaign. (Ex. 6 at 26-27.) This is exactly what happened in *Price*. (*See* Point III.G *infra*.)

## C.   State Farm's 2005 and 2011 Briefs Were Appropriate Advocacy.

The RICO predicate acts asserted in the Complaint are that State Farm made intentional misrepresentations in its 2005 and 2011 briefs mailed to the Illinois Supreme Court. The allegedly "misleading" statements identified by Plaintiffs cannot be construed as fraud. On their face, they are comments on the sufficiency of the "evidence" relied upon by Plaintiffs in their

_____

 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs' Motion is replete with other misrepresentations, such as that "Murnane . . . worked with State Farm to hold rallies at State Farm offices in Marion, Collinsville, and Mount Vernon." (Pl. Mem. at 4.) Plaintiffs' exhibits do not show that Murnane had anything to do with these events, which were actually candidate forums (not "rallies") where candidates of both parties were invited to speak, including Justice Maag. (Denzler Dep. at 22-23 (Ex. 19).) Regarding the so-called "major event in State Farm's hometown of Bloomington" (Pl. Mem. at 4), Plaintiffs conceal that this was a fundraiser hosted by a doctor, not State Farm. (Ex. 20.)

[12] This is illustrated by Plaintiffs' motion, which also attempts to attribute to State Farm not just contributions by the aforementioned organizations, but also contributions by other entities such as the Illinois Coalition for Jobs, Growth and Prosperity. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

motion to recuse Justice Karmeier and their Petition to Recall the Mandate.[13] Comments on the sufficiency of evidence are advocacy, not fraud. *Apotex Corp. v. Merck & Co.,* 229 F.R.D. 142, 147, 149 (N.D. Ill. 2005); *see* Ex. 6 at 11-15 (State Farm's briefs were appropriate advocacy).

In fact, in rejecting Plaintiffs' crime-fraud challenge to State Farm's assertions of privilege, Magistrate Judge Williams evaluated the evidence put forth by Plaintiffs and found that Plaintiffs' allegations were "not founded in fact." ([300] at 5,6,7.)[14] Judge Williams found that State Farm's statement in its 2005 brief that ""Mr. Murnane ... was not Karmeier's campaign manager" was neither false nor misleading, agreeing with State Farm that "Murnane was not Karmeier's campaign manager. Steve Tomaszewski was the campaign manager." ([300] at 6, 7.) In addition, Judge Williams rejected Plaintiffs' contentions regarding the supposed falsity of State Farm's statement in its 2005 brief that "[a]lthough Plaintiffs attempt to link large sums in contributions by a variety of persons and organizations to Justice Karmeier's campaign to State Farm, their moving papers and supporting documentation in fact reveal that a limited number of State Farm officers and employees made quite modest contributions to Justice Karmeier's campaign." Judge Williams specifically found that this was a comment on the sufficiency of Plaintiffs' evidence, and was permissible advocacy, not fraud. ([300] at 9.) Nevertheless, in their present motion, Plaintiffs continue to point to this same sentence as an example of State Farm's supposedly deceptive statements to the Illinois Supreme Court. (Pl. Mem. at 11.)

Nor did Judge Williams find fraud in State Farm's 2011 brief. ([300] at 7.) Plaintiffs continue to point to State Farm's 2011 statement that Plaintiffs' allegations that "State Farm somehow picked Justice Karmeier as a candidate, managed his campaign, and made massive

---

[13] Plaintiffs deleted key portions of the quotations that make it clear they were advocacy, not factual assertions. A chart comparing Plaintiffs' recitation against the actual full statement, including citations to record evidence supporting each statement, is attached as Exhibit 3.

[14] Plaintiffs' interrogatory answers assert only three alleged fraudulent statements, each of which was found not be fraudulent by Judge Williams. (*See* Ex. 21 at Resp. No. 12; [300] at 6, 7.)

contributions to his campaign" have "no relationship to reality" (Pl. Mem. at 11), Judge Williams found that this again was advocacy. ([300] at 10-11.) He concluded that the evidence cited by Plaintiffs did "not show that State Farm picked Karmeier or provided massive contributions and ran Karmeier's campaign, as Plaintiffs contend, so that State Farm's statement would constitute mail fraud." (*Id.* at 6, 8.)[15] Notably, Plaintiffs did not challenge Judge Williams's findings.

**D.    Plaintiffs' ISBA Assertions Are Inaccurate.**

Plaintiffs' assertions about the purportedly "subverted" Illinois State Bar Association evaluations of Justices Karmeier and Maag (Pl. Mem. at 9-10) are demonstrably untrue. Mr. Sternberg and Mr. Shultz were two of the ***seventeen*** volunteer members of the ISBA Judicial Evaluations Committee ("JEC") who were involved in rating the Illinois Supreme Court candidates in 2004. ([301-5] at 4-6.) Plaintiffs conceded that Mr. Sternberg could not have been part of a scheme to "subvert" the 2004 ISBA judicial evaluation process, given that he had served on the JEC for more than two decades. (Jan. 8, 2015 Hrg. Tr. [327] at 31.) That is reflected in Judge Williams's January 12, 2015 Order.[16] Plaintiffs' accusation against Mr. Shultz, a respected trial lawyer, is equally baseless: Mr. Shultz joined the JEC months before it was known that there would be an open seat on the Illinois Supreme Court, and he continued to serve on the JEC through 2009 ([301] at 2 n.2), hardly a one-off appointment. (Shultz Dep. at 150 (Pl. Ex. 81).)  He certainly had no reason to expect that the *Avery* decision (which had been pending for many months) would remain outstanding after the election. (Id. at 58-60.)  Moreover, as Plaintiffs are aware, a poll of hundreds of ISBA members conducted by the ISBA's Judicial

---

[15] Plaintiffs nowhere mention the testimony of State Senator Leuchtefeld, Justice Karmeier's childhood friend, that he persuaded Justice Karmeier to run for the supreme court. (Ex. 22 at 54-55.) It is not surprising that others tried to take credit after Justice Karmeier won. As John F. Kennedy once said, "Victory has a thousand fathers."

[16] *See* [326] at 5 ("Plaintiffs do not deny [] that Sternberg was a member of the ISBA's Judicial Evaluation Committee since 1992 and there is no evidence that State Farm was scheming at that time to place him on the committee in order to manipulate the evaluation process.").

Advisory Polls Committee gave Justice Karmeier an 89.42 percent rating for meeting the requirements of office, compared to a 76.41 rating for Justice Maag. Thus, a rating process overseen by a separate ISBA committee demonstrates that the views of 676 polled lawyers were consistent with the JEC evaluation that Plaintiffs assert was "subverted." (*See* [278-5] at 2.)

## ARGUMENT

## I. THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION

This Court may reconsider subject matter jurisdiction at any point during this litigation. *See Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008). State Farm respectfully requests that the Court reexamine its jurisdiction in light of recent *Rooker-Feldman* decisions by the Seventh Circuit.[17]  These decisions clarify that "when false statements to a state court produce an adverse decision, 'the state court's judgment is the source of the injury of which plaintiffs complain in federal court,'" and *Rooker-Feldman* applies. *Dawaji*, 618 F. App'x at 859 (quoting *Harold*, 773 F.3d at 885);[18] *see also Iqbal*, 780 F.3d at 730 (fraud does not permit federal court to set aside state court's judgment in a civil suit; jurisdiction existed *only* to the extent plaintiff alleged "extrajudicial" injuries that "predated the state court's judgments").

Plaintiffs here assert that State Farm's briefs deceived the Illinois Supreme Court regard-

---

[17] Plaintiffs' cited cases do not support their contention that *Rooker-Feldman* presents "common questions supporting class certification." (*See* Pl. Mem. at 16 n.15.) If the Court lacks jurisdiction under *Rooker-Feldman*, it does not have jurisdiction to entertain Plaintiffs' motion for class certification.

[18] In *Dawaji*, the Seventh Circuit rejected the plaintiff's argument that "her injuries stem[med] from [defendants' fraudulent] actions, not the state-court judgment," reasoning that "[b]ecause the harm did not materialize until the adverse state court judgment, that judgment, not the alleged [fraudulent] misconduct that preceded the judgment, is the source of the injury." *Dawaji*, 618 F. App'x at 858-59. Similarly, in *Harold*, the Seventh Circuit held that *Rooker-Feldman* barred a federal claim based on allegations that the defendant made false statements to the state court to obtain a garnishment order. *Harold*, 773 F.3d at 885-87. The Seventh Circuit rejected the plaintiff's assertion that "the false statements, rather than the state court's decision, inflicted the injury of which he complains," holding that there had been no loss "independent of the [state court] suit's outcome" and that "[n]o injury occurred until the state judge ruled against Harold." *Id.* at 886. Here also Plaintiffs contend that they were injured by "illegal acts or omissions by defendants" in "procuring" the Illinois Supreme Court's decision in *Avery*, not by the Illinois Supreme Court. ([67] at 15.) Their present motion makes clear, however, that their asserted injury (loss of the *Avery* judgment) materialized only with the Illinois Supreme Court's decisions declining to recuse Justice Karmeier and reversing the *Avery* judgment.

ing the its alleged involvement in Justice Karmeier's election campaign, thus securing his partic-

ipation in the *Avery* decision and "rob[bing] the Class members of their interest in a money

judgment." (Pl. Mem. at 10-11, 16.) Under *Dawaji*, *Harold*, and *Iqbal*, the alleged "tainting" of

the tribunal and loss of the *Avery* judgment did not "materialize" until the Illinois Supreme

Court's adverse decisions allowing Justice Karmeier's participation and reversing the *Avery*

judgment and are not independent legal wrongs. *Dawaji*, 618 F. App'x at 859; *see also Snider v.*

*City of Excelsior Springs*, 154 F.3d 809, 812 (8th Cir. 1998) (federal court did not have jurisdic-

tion under *Rooker-Feldman* to re-decide state court's class certification determination). Thus,

Plaintiffs' present action and their motion for class certification are barred by *Rooker-Feldman*.

## II.   CLASS CERTIFICATION IS BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL

Plaintiffs' motion for class certification also should be denied on grounds of *res judicata*

and collateral estoppel. The three named Plaintiffs, Mark Hale, Todd Shadle, and Laurie Loger

were named plaintiffs and class representatives in *Avery*. ([289] ¶ 3.) A class was certified in the

Illinois trial court, and the class members were represented as parties at the class trial.[19] Thus,

Plaintiffs and the putative class are bound by the Illinois Supreme Court's determinations, in-

cluding its decertification of the class.[20] *See In re Bridgestone/Firestone, Inc., Tires Prods. Liab.*

*Litig.*, 333 F.3d 763, 767-68 (7th Cir. 2003) (decision that class certification was untenable was

"sufficiently firm" to be final judgment with preclusive effect), *overruled on other grounds*,

---

[19] This case does not fall under the holding in *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2380 (2011), that a putative class member of a class that was *never* certified was not bound by the denial of certification because the putative class member was never a party and because "a properly conducted class action" did not "exist[] at any time."

[20] The federal courts apply Illinois law to determine whether an Illinois state court judgment is subject to *res judicata* or collateral estoppel. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1231-35 (7th Cir. 1986). Under Illinois law, collateral estoppel and *res judicata* apply to the Illinois Supreme Court's decisions and rulings in *Avery* because the reversal of the class certification was part of a final judgment on the merits, the parties are the same, and the same class certification that are raised in this case were finally determined in *Avery*, *see Hurlbert v. Charles*, 938 N.E.2d 507, 512 (2010), and the claims in both cases rest on a "substantially similar factual basis." *Carr v. Tillery*, 2010 WL 4781127, at *5 (S.D. Ill. Sept. 20, 2010).

*Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2381 (2011).[21] Here, the Illinois Supreme Court made binding determinations that Plaintiffs' claims would present overwhelming individual issues and require individual proof. *See supra* at 4-5. The fact that Plaintiffs' Complaint raises these same issues in the guise of federal RICO claims does not prevent the application of collateral estoppel and res judicata. *See, e.g., In re Met-L-Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir. 1988) ("RICO is many things, but it is not an exception to res judicata.").

## III.   PLAINTIFFS' PROPOSED CLASS DOES NOT MEET THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23

### A.   Applicable Standards

Plaintiffs must show by a preponderance of the evidence that each requirement of Rule 23 is met. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). "Class certification is appropriate only if, 'after a rigorous analysis,' the trial court is satisfied that the requirements of Rule 23 have been met." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). "'Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.'" *Id.* (citation omitted). "[W]hen factual disputes bear on issues vital to certification ... the court must 'receive evidence ... and resolve the disputes before deciding whether to certify the case.'" *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (citation omitted).[22]

---

[21] The binding nature of the Illinois Supreme Court's rulings is confirmed by the United States Supreme Court's denial of Plaintiffs' 2006 petition for certiorari in *Avery*, which argued that Justice Karmeier's participation violated due process based on the same allegations that Plaintiffs make here. The "minimum meaning" of the denial of certiorari is that the Illinois Supreme Court's decisions and rulings in *Avery* are allowed "to stand with whatever consequences [they] may have upon the litigants involved under the doctrine of res judicata as applied either by state or federal courts," and are "binding and conclusive even if new facts are discovered and even if a new theory of law were thought up, except for some provision for granting a new trial which usually is discretionary with the trial court and limited in time." *Brown v. Allen*, 344 U.S. 443, 543 (1953) (Jackson, J., concurring). Plaintiffs acknowledge that the Supreme Court's denial of certiorari in *Avery* is *res judicata*. (*See* Pl. Mem. at 18.)

[22] The Seventh Circuit has repeatedly held that a *Daubert* analysis applies to expert evidence proffered in the class certification context. *See Messner*, 689 N.E.2d at 812; *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010). Furthermore, "[i]f a district court has doubts about whether an expert's opinions may be critical for a class certification decision, the court should make an explicit *Daubert* ruling." *Messner*, 669 F.3d at 812. Plaintiffs'

**B.      Rule 23(b)(3)'s Requirement of a Predominance of Common Issues Is Not Satisfied.**

Plaintiffs' claims raise non-common questions of proximate cause, liability, injury and damages, which Plaintiffs ignore or attempt to evade in their moving papers. A common question must be "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. However, an analysis of the questions Plaintiffs contend are common shows that those questions are not central or relevant to Plaintiffs' RICO claims, but are based upon incorrect assertions of law regarding the nature of the issues that are actually raised by Plaintiffs' RICO claims and what Plaintiffs must prove to prevail on their RICO claims.

Analysis of predominance under Rule 23(b)(3) "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). As an initial matter, to have standing to bring a RICO claim and to satisfy the elements of a RICO claim, a plaintiff must show that he was "injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." *See* 18 U.S.C. § 1964(c). That showing requires that the defendant's RICO violation was the proximate and "but for" cause of injury to the plaintiff's business or property. *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1005 (7th Cir. 2004). In this case, the RICO elements of proximate cause, RICO injury, and a cognizable property interest raise a predominance of individual issues. In addition, each class member's injury and damages in *Avery*, if any, would have to be established individually. These individual issues overwhelm any common issues and render class certification improper.

---

class certification motion explicitly relies on the opinions of Plaintiffs' experts Myers and Geyh, and the Court should therefore decide State Farm's motions challenging these experts' opinions on *Daubert* grounds and exclude their opinions and reports in their entirety. *See Am. Honda*, 600 F.3d at 815-16; *Messner*, 669 F.3d at 812.

1.     **RICO Causation Raises Predominating Individual Questions of Law and Fact**

Plaintiffs erroneously claim that RICO causation may be satisfied by a showing that Justice Karmeier's participation "taint[ed]" the Illinois Supreme Court. (Pl. Mem. at 1,11,16.) Whether the tribunal was tainted is not a common issue "central to the validity" of Plaintiffs' claims and does not support class certification. *Dukes*, 131 S. Ct. at 2551.

Under the law of RICO, the element of causation requires that the purported RICO violation is the "but for" and proximate cause of the alleged injury to Plaintiffs' property. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Plaintiffs must show a "direct relation between the injury asserted and the injurious conduct alleged." *Id.*; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (the alleged RICO violation must have "led directly to the plaintiff's injuries."). In this case, Plaintiffs must show that State Farm's purported RICO mail fraud scheme led directly to the injury to property alleged by Plaintiffs, namely, the loss of the *Avery* judgment. (Pl. Mem. at 2,13,17.) The alleged "tainting" of the tribunal, on its face, does not provide a causal link to the alleged injury, and is not a common issue under Rule 23.

The Seventh Circuit's decision in *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723 (7th Cir. 2014), illustrates the required direct causal linkage. In *Empress Casino*, the Seventh Circuit held that, to support causation for RICO bribery claims, plaintiffs would have to show not only that defendants bribed the governor, but that there was a linkage between the alleged bribe to the governor and passage of legislation that allegedly resulted in injury to plaintiffs' business or property. *Id.* at 729-30. The RICO claim failed because plaintiffs did not show that the governor pressured or influenced the legislators to pass the legislation. *Id.* Under *Empress Casino*, proximate and "but for" causation would be a common question only if Plaintiffs could show not only that the purported State Farm campaign contributions actually occurred and influ-

enced Justice Karmeier (which they cannot), but also that Justice Karmeier's participation influenced other justices and led directly to the reversal of the *Avery* judgment.

Plaintiffs essentially concede they cannot show RICO causation, stating that "[i]t may be impossible to know if the Class would have prevailed had the system not been rigged against them." (Pl. Mem. at 2.) Thus, Plaintiffs improperly attempt to manufacture a common question regarding whether there was "'a substantial risk of actual bias" and "tainting" of the tribunal from State Farm's alleged contributions to Justice Karmeier's campaign. (*Id.* at 1,11,13,16-17.) Plaintiffs cite only due process cases, not RICO cases, in their discussion of "tainting." (*Id.* at 16-17.) But due process is not an issue in Plaintiffs' RICO claims, and Plaintiffs have not asserted a due process claim.[23] "Tainting" is irrelevant to RICO causation in this case and does not create a common issue "central to the validity of" Plaintiffs' claims. *Dukes*, 131 S. Ct. at 2551.[24]

Moreover, even if Plaintiffs could show a linkage between Justice Karmeier's participation and the outcome in *Avery*, the issue of causation would not be common. Rather, proving causation would require different showings for different class members, because the Illinois Supreme Court's decision consisted of multiple different rulings (*see supra* at 4-5), each of which affected some putative class members but not others. To show proximate causation for a particular class member or plaintiff would require showing that Justice Karmeier's participation some-

---

[23] The two counts of the Complaint are violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). The words "due process" appear once in the Complaint, in Plaintiffs' description of *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), which Plaintiffs allege prompted them to further investigate their claims. (*See* [289] ¶ 60.) However, even if Plaintiffs had alleged a due process claim, it would be barred by *Rooker-Feldman* and *res judicata* (*see* Points I & II *supra*) and would fail on the merits under *Caperton*, given, *inter alia*, the lack of evidence that Justice Karmeier knew of the purported contributions or the other support allegedly provided by State Farm. *Caperton* involved campaign contributions that were known to the judge and would cause him to "feel a debt of gratitude" to a party. *Caperton*, 556 U.S. at 882. Plaintiffs' contention that they do not need to show that Justice Karmeier knew of the purported contributions from State Farm (*see* Ex. 21 at Resp. No. 8) is erroneous. If Justice Karmeier did not know of the purported contributions, there was no "'possible temptation'" that would "'lead him not to hold the balance nice, clear and true.'" 556 U.S. at 885.

[24] Even where (unlike here) a plaintiff has asserted a due process claim, only nominal damages may be awarded unless there is a causal connection between the due process violation and a monetary injury to the plaintiff. *Cf. Shigemura v. Duft*, 211 F. App'x 499, 501(7th Cir. 2006) (a procedural due process violation is limited to nominal damages unless the plaintiff can "show that he has been injured as a result of the procedural violations").

how caused the ruling that affected that class member or plaintiff. For example, a class member claiming "specification damages" was not affected by the ruling that the evidence for "installation damages" was too speculative, and a class member claiming "installation damages" was not affected by the ruling that "specification damages" had no legal basis. Likewise, an out-of-state class member claiming under ICFA was affected by the Illinois Supreme Court's ruling that ICFA did not apply out-of-state, while Illinois class members were affected by the Court's ruling that no Illinois named plaintiff had substantiated an ICFA claim.

In short, RICO "but for" and proximate causation, if it could be established at all, would require a showing of a direct causal relationship between State Farm's alleged conduct and the specific ruling(s) relevant to each class member, raising individual questions of causation. The Illinois Supreme Court's decision was composed of many holdings that affected different Plaintiffs and class members differently depending on the different factual and legal issues raised by each Plaintiff's or class member's claim. Accordingly, individual questions regarding the impact of Justice Karmeier's participation on various aspects of the Court's decision would have to be resolved to determine whether his participation caused injury to any specific class member.

### 2.   Plaintiffs' Asserted Property Interest Raises Individual Questions.

Plaintiffs incorrectly assert that the class members have a common RICO property interest in the reversed *Avery* judgment. (Pl. Mem. at 2,13,17.)  Whether an interest is a property interest under RICO is "quintessentially a question of state law." *Doe*, 958 F.2d at 768. Plaintiffs' purported interest in the *Avery* judgment is not a property interest under Illinois law because it was contingent upon the outcome in the Illinois Supreme Court. *See In re Marriage of Duggan*, 877 N.E.2d 1140, 1144-45 (Ill. App. Ct. 2007) (a judgment under appeal is not a "final judgment" and not a vested right of property); *Evans v. City of Chicago*, 689 F.2d 1286, 1296 (7th Cir. 1982) ("Under Illinois law, a judgment becomes a vested right of property once it is no

longer subject to review or modification."), *overruled on other grounds*, 873 F.2d 1007 (7th Cir. 1989). Whether putative class members from other states could claim a property interest in the *Avery* judgment is a non-common question depending on the law of each state.

Plaintiffs, however, have failed to provide any analysis of any state's law on the issue of whether an interest in a non-final judgment is a property interest and have not shown that state laws on the issue are uniform. It was their burden to do so. *See In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 319 (S.D. Ill. 2007) ("[I]t is Plaintiffs' burden as the proponents of class certification ... to show convincingly that variations in state law do not defeat predominance and manageability."). Moreover, to support class certification, Plaintiffs would need to show that each state recognized not just a property interest in a judgment generally, but that each state recognized that class members have a property interest in a non-final class judgment that was reversed before plaintiffs and class members had made the individual showing of injury and amount of damages required to recover under the judgment. The need to apply "multiple states' laws to [the putative] class members' claims" "eliminate[s]" any purported common question as to the RICO requirement of a property interest. *Marshall v. H & R Block Tax Servs. Inc.*, 270 F.R.D. 400, 407 (S.D. Ill. 2010).

In claiming that they sustained a common injury to property, Plaintiffs erroneously rely on *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008). (Pl. Mem. at 14-15.) *Bridge* is irrelevant. The plaintiffs in *Bridge* were 0% bidders for tax liens. When there was more than one 0% bidder, the liens were awarded on a "rotational basis." *Id.* at 643. The defendants arranged to have multiple phony bidders bidding for them, skewing the rotation in their favor and allowing them to acquire more liens, while the plaintiffs necessarily received fewer. There was nothing contingent or speculative about the injury. *See BCS Servs., Inc. v. Heartwood*, 637 F.3d 750, 757 (7th Cir. 2011) (injury and causation "obvious if the auctioneers awarded tax liens in identical-

bid cases on a strictly rotational basis").[25] Here, in contrast, Plaintiffs and the putative class members' right to recover under the *Avery* judgment was contingent on the judgment being affirmed by the Illinois Supreme Court and on each Plaintiff or class member's being able to substantiate their right to relief in further individual proceedings. The deprivation of such a contingent and uncertain expectancy is not an injury to property for RICO standing. *See, e.g.*, *Kimberlin v. Nat'l Bloggers Club*, 2015 WL 1242763, at *12 (D. Md. Mar. 17, 2015).

    *Malley-Duff & Associates, Inc. v. Crown Life Insurance Co.*, 792 F.2d 341, 354 (3d Cir. 1986), *aff'd*, 483 U.S. 143 (1987) (cited in Pl. Mem. at 17), also does not support Plaintiffs' contention that their "property interest" in the *Avery* judgment is a common issue. *Malley-Duff* did not hold that all causes of actions are property for purposes of RICO. Rather, it held that when a cause of action "arises out of the termination of a business," conduct impairing that cause of action may be a "business injury." *Malley-Duff*, 792 F.2d at 354; *see also Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 228 (3d Cir. 2007); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1259 (10th Cir. 2003). That holding does not apply here.[26]

    Moreover, to the extent Plaintiffs are claiming that the property interest at issue is a due process "right to an impartial tribunal" (*e.g.*, Pl. Mem. at 15-16), that right does not constitute

---

[25] Moreover, although the Court in *Bridge* did not specify whether the injury at issue was an injury to property or to the plaintiffs' businesses, it is apparent from the opinion that the plaintiffs were in the *business* of bidding for liens, and were not merely occasional bidders. *See* 553 U.S. at 643. Here, Plaintiffs and the class members allege only an injury to their purported *property* interests.

[26] Even if a particular state's law recognized some property right in a non-final judgment, that right does not satisfy RICO "if it would contravene Congress' intent in enacting RICO." *Doe*, 958 F.2d at 768. For RICO standing, each class member must have sustained a "concrete and actual" injury to business or property, and not an injury that was merely "speculative and amorphous," and must be entitled to a "clear and definite" amount of damages. *Evans*, 434 F.3d at 932; *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (RICO injury "'requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest;'" overpayment of premiums for inferior HMO plan was not a RICO injury because plan membership was an "intangible" contract right, not property under RICO) (citation omitted). In their motion, Plaintiffs describe their purported injury to property as the "loss of the [*Avery*] judgment, which was the property of the class." (Pl. Mem. at 2; *see also id.* at 1 (class "was deprived of its property interest in the *Avery* class judgment"); *id.* at 15 (asserting "property injury in the form of deprivation of an expected monetary gain"). *See also Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("[i]njury to mere expectancy interests or to an 'intangible property interest'" insufficient under RICO); *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847-48 (1st Cir. 1990) (contingent, unliquidated damages insufficient under RICO).

property under RICO and therefore does not give rise to a common issue. "[T]he deprivation of constitutional rights is a personal injury that is not protected by RICO." *Westchester Cnty. Independence Party v. Astorino*, __ F. Supp. 3d __, 2015 WL 5883718, at *17 (S.D.N.Y. Oct. 8, 2015); *see also Wright v. Szczur*, 2012 WL 268283, at *4 (W.D.N.Y. Jan. 30, 2012) ("deprivation of constitutional rights" not a RICO injury); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1085-86 (C.D. Cal. 2009) ("plaintiff's alleged deprivation of his constitutional rights to file suit and to due process of law are ... personal in nature" and not a RICO injury), *aff'd*, 130 Fed. App'x 987 (10th Cir. 2005); *McCormick v. City of Lawrence*, 325 F. Supp. 2d 1191, 1209 (D. Kan. 2004) (similar). Thus, Plaintiffs cannot avoid the individual issues of state law inherent in their claims of injury to business or property by characterizing their injury as a violation of their due process rights. Accordingly, the necessary element of an injury to business or property presents predominating individual questions of law and fact.

### 3.    Injury and Damages Raise Individual Questions

The determination of injury and damages would also entail extensive individual fact-finding. To avoid individual issues of injury and damages, Plaintiffs contend (without citation to any authority) that Plaintiffs and the putative class members possess an *undivided* interest in the *Avery* judgment and propose a *per capita* distribution of the *Avery* judgment. (Pl. Mem. at 17.)[27] As explained by State Farm's expert, Dr. Lauren Stiroh, there is "no basis for Plaintiffs' claim that all purported class members suffered injury in the amount of an equal share of the full amount of the Illinois Appellate Court verdict." (Ex. 5 at 17.) Rather, Plaintiffs' and the class members' purported damages from the loss of the *Avery* judgment varied considerably, as did the

---

[27] Plaintiffs base their proposed *per capita* damages on the theory that "[e]ach class member suffered from the same tainted tribunal" and thus "an equal share to all class members best accounts for the harms suffered." (Ex. 21 at Resp. No. 1.) This theory has no relationship to Plaintiffs' RICO claims which allege that the RICO injury to property is the loss of the monetary judgment (not the tainted tribunal).

factual circumstances of their repairs and the legal theories under which each might attempt to show injury and damages. Whether individual class members would have been entitled to *any* recovery if the *Avery* judgment had been affirmed presents overwhelming individual issues of liability, injury and amount of damages. (*See id*. at 5, 13-17.)

Indeed, the Illinois Appellate Court's decision acknowledged that "individual determinations as to damages w[ould] be necessitated." *Avery*, 746 N.E.2d 1242, 1255 (Ill. App. Ct. 2001). Furthermore, contrary to Plaintiffs' contentions (Pl. Mem. at 17), a "plan of allocation" was in place. If the *Avery* judgment had not been reversed, the case would have been returned to the trial court for determinations of the amount, if any, each class member would have received.[28] Plaintiffs' assertion that the fact that these determinations did not take place somehow gives the class members an undivided interest in the judgment amount is not supported by legal authority or by common sense. Plaintiffs allege that the class members' purported damages in *Avery* ranged from approximately several hundred dollars to $2,500 ([289] ¶43), and Mr. Shadle's damages were "about $45." *Avery*, 835 N.E.2d at 815; Ex. 5 at 13-17. The treble damages Plaintiffs now seek under RICO extend the range of damages to approximately $135 to $7,500, plus interest. Under the Rules Enabling Act and due process, the existence of these significant differ-

---

[28] The *Avery* trial court retained jurisdiction to "administer and distribute the common fund resulting from [the] Judgment . . . based upon appropriate proof of class membership and claims, to be obtained insofar as is practicable from the records of State Farm, and augmented, if and as necessary, by documents and information from class members and their vehicles." *Avery v. State Farm. Mut. Auto. Ins. Co.*, 1999 WL 1022134, at *6, 1999 WL 955543, at *1 (Ill. Cir. Ct. Oct. 8, 1999). Notably, the Illinois Supreme Court made clear that "State Farm's records did not contain" information as to "which class members' vehicles had actually been repaired with non-OEM parts, as well as which class members still owned vehicles that had been repaired with non-OEM parts" and that therefore "any determinations as to which plaintiffs were eligible for damages would require the examination of each individual class member's vehicle and repair" and that the class improperly included persons who had no injury whatsoever. *Avery*, 835 N.E.2d at 831-32; Ex. 5 at 14-15. Furthermore, the $600 million punitive award included in the verdict was not awarded classwide and could only be distributed among members of the smaller ICFA subclass. The need to resolve these and other individual issues cannot as a matter of due process and the right to a jury trial be avoided through "per capita" or aggregate determinations or post-trial proceedings. *See, e.g., Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 320 (5th Cir. 1998); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 343, 345 (4th Cir. 1998); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, 275 F.R.D. 270, 278-79 (S.D. Ill. 2011) (Herndon, J.).

ences in injury and damages cannot be ignored for the sake of manufacturing common issues.[29] *See Dukes*, 131 S. Ct. at 2561; 28 U.S.C. § 2072(b); *see also* n.28 *supra*.

In sum, as the Illinois Supreme Court ruled in *Avery*, neither injury nor damages are capable of common proof. Because the 4.7 million Plaintiffs' and class members' individual claims of injury and damages necessarily rest upon their individual and unproven entitlement to damages under the reversed *Avery* judgment, those claims cannot be resolved without individual examination of the circumstances of the class members' underlying claims in *Avery*. As in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013), without a permissible methodology to measure damages on a class-wide basis, Plaintiffs here "cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.*; *see also Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001).[30]

### C.    Superiority and Manageability Are Not Satisfied

Plaintiffs argue that superiority is satisfied because the "small individual claims at issue here would make separate actions entirely infeasible, or, more likely, nonexistent." (Pl. Mem. at 18.) However, as noted above, Plaintiffs allege that the class members' damages in the underly-

---

[29] For example, as the Seventh Circuit has stated, the Illinois Supreme Court's decision in *Avery* "established the common-sense proposition that a policyholder's suit against his insurer for breach of its promise to restore his collision-damaged car to its preloss condition cannot succeed without an examination of the car." *Greenberger v. Geico Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011). Other individual showings regarding each class member's entitlement to relief in *Avery* would also be required, including whether a class member actually had a non-OEM part installed (as opposed to merely specified on a repair estimate), and whether a class member who sold his or her car received the same fair market value as if the car had been repaired with an OEM part, and so on. (*See* Ex. 5 at 10-15;) *Avery*, 835 N.E.2d at 829-30. Class members who (like Shadle, also a named Plaintiff here) paid extra to have an OEM part installed, would have to show that the non-OEM part specified by State Farm would not have returned his or her car to its preloss condition. As Plaintiffs concede, determining each proposed class member's "share of the property lost – the *Avery* judgment" would involve individualized inquiries such as "the number of non-OEM crash parts quoted to each individual, the damages associated with the installation of those parts, and potentially the strength of evidence available to prove same." (Ex. 21 at Resp. No. 1.)

[30] Neither Plaintiffs' RICO claims here nor their underlying ICFA and contract claims permit awarding damages to a class member without regard to whether the class member actually sustained damages as a result of wrongful conduct by State Farm and in what amount. *See Avery*, 835 N.E.2d at 832 (for breach of contract, "the claimant must establish an actual loss or measurable damages resulting from the breach in order to recover"); *Evans*, 434 F.3d at 932 (RICO requires proof of "clear and definite" amount of damages).

ing *Avery* lawsuit typically ranged from several hundred dollars to $2,500. Plaintiffs now seek treble damages, years of interest, and attorneys fees. Such claims do not fall within the principle that class actions are a superior method to resolve small consumer or "negative value" claims. *See Hamilton v. O'Connor Chevrolet*, 2006 WL 1697171, at *11 (N.D. Ill. June 12, 2006) (statutory remedies, such as attorneys fees and costs, provide "substantial incentives to bring meritorious individual suits" and "are material when assessing whether class treatment is superior").

Moreover, as shown above, the overwhelming individual issues inherent in RICO injury to business or property, the underlying injury in *Avery*, and amount of damages would render this case unmanageable. As the Illinois Supreme Court held in *Avery* and as other courts have held in other non-OEM parts cases, the need for individualized resolution of issues of liability and damages means that the requirements of superiority and manageability are not met. *See Avery*, 835 N.E.2d at 826-27 (citing, *inter alia, Augustus v. Progressive Corp.*, 2003 WL 155267, at *4 (Ohio Ct. App. 2003); *Schwendeman v. USAA Cas. Ins. Co.*, 65 P.3d 1, 8 (Wash. Ct. App. 2003); *Snell v. Geico Corp.*, 2001 WL 1085237 (Md. Cir. Ct. Aug. 14, 2001)).

Plaintiffs also erroneously claim that, in assessing superiority, the Court may not consider the other methods that Plaintiffs had available, but decided not to pursue. In particular, Plaintiffs improperly take issue with the opinion of State Farm's expert, Richard Painter, that review of a state court judge's refusal to recuse himself belongs in the state courts, and, thereafter in the U.S. Supreme Court, if certiorari is granted. (Ex. 6 at 15-17.) Here, after the Illinois Supreme Court in 2011 denied Plaintiffs' petition to recall the mandate in *Avery,* Plaintiffs made the deliberate choice to bypass the U.S. Supreme Court in favor of filing a RICO complaint in federal district court. (*See* Ex. 36 ("[A]t the last minute, Don Barrett convinced us we should not file [a certiorari petition], as others were concerned it might have a negative impact on our RICO lawsuit.").)

Plaintiffs argue that a petition for certiorari to review the Illinois Supreme Court's 2011

denial of Plaintiffs' petition to recall the mandate would have been barred by *res judicata*. (Pl. Mem. at 18 n.18.) Only the U.S. Supreme Court had jurisdiction to review the Illinois Supreme Court's denial of that petition. Plaintiffs' argument that a petition for a writ of certiorari was not available to them in 2011 because of *res judicata* does not demonstrate that a RICO lawsuit in federal court over the same issues is superior. Rather, it concedes that Plaintiffs have already litigated these issues and claims and that this litigation is barred by *res judicata*.

### D.   Plaintiffs Are Inadequate Representatives with Atypical Claims

The named Plaintiffs lack standing under RICO and are inadequate class representatives with atypical claims. *See Sherman v. Koch*, 623 F.3d 501, 506 (7th Cir. 2010). They have no "concrete and actual" injury to business or property and no "clear and definite" amount of damages. *See Evans v. City of Chicago*, 434 F.3d 916, 924-25, 932 (7th Cir. 2006), *overruled on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). The purported property interest that Plaintiffs claim was injured ("the individual and aggregate benefits of the $1.05 billion judgment" ([289] ¶ 132) is not a property interest, but merely a judgment subject to review and modification, and their individual claims were not adjudicated by a jury. *See* Point III.B.2 *supra*. Thus, Plaintiffs lack RICO standing and are inadequate representatives under Rule 23(a)(4).

The named Plaintiffs also are atypical and inadequate because their individual claims suffer from factual deficiencies that expose them to unique defenses.[31] Hale testified that his claim in *Avery* was for a car accident in April 1998, outside of the class period, and thus he is not a member of the class at all. (Hale Dep. at 25 (Ex. 23).)[32] An inspection of Loger's vehicle

---

[31]   *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (atypicality); *Randall v. Rolls–Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) (inadequacy). The presence of "'even an arguable defense'" unique to the named plaintiffs will destroy typicality and adequacy. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (citation omitted).

[32]   Although Mark Hale had other insurance claims with State Farm prior to 1998, he has no evidence that any non-OEM "crash parts" were actually installed as part of those claims, or that he paid anything more than his deductible

during *Avery* revealed that she had actually received all OEM crash parts following her accident. (Ex. 24 at 140-41.) Because Hale and Loger did not preserve their vehicles, and have no records to show any non-OEM parts affected the value they received for the vehicles, they also cannot show any right to recovery in the *Avery* verdict. (Loger Dep. at 41-42 (Ex. 25); Ex. 23 at 79-80.)

Further, Hale and Shadle reside outside of Illinois, which bars them from representing any claims for damages under ICFA that were part of the *Avery* verdict. *Avery,* 835 N.E.2d at 853. In addition, while Shadle (a lawyer) claims to have lost an interest in the *Avery* judgment, he admitted that the *Hale* class is not entitled to any portion of the *Avery* judgment and that he is not entitled to any share of that judgment. (Shadle Dep. at 142, 145, 176 (Ex. 26).) He cannot represent a class whose recovery theory he denies.[33]

### E.     The Class is Not Ascertainable

Plaintiffs base their contention that the class is properly defined on the Seventh Circuit's decision in *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661 (7th Cir. 2015), which holds that it is not a requirement for class certification that there be an administratively feasible way to determine whether a particular person is a member of the class. The defendant in *Mullins* has filed a certiorari petition in the U.S. Supreme Court, and State Farm respectfully submits that administrative feasibility should be required at the class certification stage.

In this case, there is no administratively feasible or objectively determinable way to identify class members. Plaintiffs' proposed nearly nationwide class includes millions of putative members who had their cars repaired over a 10½-year period (from July 28, 1987 to Feb. 24,

---

for the repairs. (*See* Ex. 23 at 31-33,34,36-37,51,55-57,60.) The mere fact that an estimate may list non-OEM "crash parts" does not mean the parts were actually installed. *Avery*, 835 N.E.2d at 833.

[33]   *See, e.g., McIntyre v. Household Bank*, 2004 WL 2958690, at *6 (N.D. Ill. Dec. 21, 2004) (typicality cannot be satisfied where the named plaintiff's theories of relief are different than those of the class); *Darvin v. Int'l Harvester*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) (named plaintiff is inadequate if his testimony "could become the focus of cross examination and unique defenses at trial, to the detriment of the class").

1998) and either had non-OEMs parts used in the repair or had non-OEM parts specified on their repair estimates.  As the Illinois Supreme Court held, there is no way of identifying the majority of class members from State Farm's records, as those records do not establish which class members' cars actually had non-OEM parts installed.[34] *Avery*, 835 N.E.2d at 831.

The class ascertainability problems have magnified in the decades since *Avery*. Any vehicles from the *Avery* class period were likely disposed of long ago, making it impossible to determine whether putative class members had non-OEM parts installed on their vehicles or whether the installation diminished the vehicle's value as required for class membership.[35] Plaintiffs offer no way to identify members of the putative class in the face of these problems.

### F.   Plaintiffs' Proposed Modification of the Class Definition Is Impermissible

Plaintiffs improperly propose to expand the *Avery* class definition approved by the trial court and appellate court. (Pl. Mem. at 1 n.1.) Plaintiffs' change would improperly include in the class persons not entitled to recover under the *Avery* judgment in which Plaintiffs claim a property interest. The original class definition included persons who "received monetary compensation determined in relation to the cost of [non-OEM] parts," otherwise known as "specification damages." (*Id.*) As the Illinois Appellate Court held, Plaintiffs' theory was that if a cheaper non-OEM part was specified on an insured's estimate and used by State Farm to



(Ex. 5 at 12.)

determine the amount paid to the bodyshop, the insured did not "receive the benefit of his bargain" from State Farm, even if an OEM part was used in the repair at no extra cost to the insured. *Avery*, 746 N.E.2d at 1258. This theory depended on State Farm's actually using a non-OEM part to determine the amount it paid to the repair facility. Plaintiffs now want to include in the class insureds whose estimates included a non-OEM part, but whose bodyshops were later authorized *by State Farm* to use an OEM part and were paid *by State Farm* based on the OEM part. Such insureds received the "benefit of their bargain" and had no injury even under Plaintiffs' own theory. Plaintiffs' expanded class definition is contrary to the appellate court's decision and violative of State Farm's due process rights.

### G.    Plaintiffs' Proposed Class Counsel Are Inadequate Because of Conflicts

Plaintiffs' motion fails to mention the significant contributions their own counsel made in the 2004 election cycle to the Democratic Party and Friends of Madigan, both of which subsequently contributed to Justice Maag's campaign, and the contributions made by their own counsel in support of other Illinois Supreme Court justices who sat on the *Avery* appeal in 2005 and 2011.[36] None of this was mentioned in Plaintiffs' filings in the Illinois Supreme Court or this Court, and these omissions demonstrate that not even Plaintiffs' counsel believe the contribution-by-association theory they advocate here.[37]   As Professor Painter explains, this calls into question their candor and creates a conflict of interest with the class they seek to represent.[38]

Plaintiffs' motion also fails to mention that their own investigators (and competing Plaintiffs' lawyers) have attributed the third-party contributions that Plaintiffs contend State Farm failed to disclose to "Big Tobacco" instead, not State Farm. Documents produced by

---

[36] These contributions are summarized in the chart attached as Exhibit 4.

[37] (*See* Ex. 21 at Resp. Nos. 26 and 27 (characterizing contributions by Plaintiffs' counsel to Justice Maag's campaign as "de minimis").)

[38] (*See* Ex. 6 at Section III(4);) *see also* ABA Standing Committee on Ethics and Professional Responsibility, Proposed Amended Rule 2.11(b), (c); Rule 1.7(a)(2) of the Illinois Rules of Professional Conduct.

Plaintiffs' investigators show them attributing the same contributions to Big Tobacco for the *Price v. Phillip Morris* plaintiffs (*see* Ex. 32), for whose counsel they previously worked, which they have attributed here to State Farm. (*See* [13-6] at SF00287-307.)[39] Having used the same investigators, Plaintiffs' counsel must have been aware of these contradictory attributions, but they never disclosed this information to this Court or to the Illinois Supreme Court. Nor did Plaintiffs' counsel disclose, either in the Illinois Supreme Court or this Court, that their investigators were paid operatives on the side of the losing Maag campaign.[40] As Professor Painter states, this further calls into question the candor of Plaintiffs' counsel and their adequacy to represent the class. (*See* Ex. 6 at Section III(5); Rule 3.3, Ill. R. Prof. Conduct.)

## CONCLUSION

For the foregoing reasons, the Court should find that *Rooker-Feldman* bars Plaintiffs' claims. If the Court finds jurisdiction, it should deny Plaintiffs' motion for class certification.

Dated: December 18, 2015                    Respectfully submitted,

J. Timothy Eaton, #0707341                  /s/ Patrick D. Cloud
TAFT STETTINUS & HOLLISTER, LLP             Patrick D. Cloud #06282672
111 East Wacker, Suite 2800                 HEYL, ROYSTER, VOELKER & ALLEN
Chicago, IL 60601                           Mark Twain Plaza III, Suite 100
                                            105 West Vandalia Street, P.O. Box 467
                                            Edwardsville, IL 62025

Of Counsel:                                 Ronald S. Safer #6186143
Sheila L. Birnbaum                          Joseph A. Cancila, Jr. #06193252
Douglas W. Dunham                           James P. Gaughan #6204406
Ellen P. Quackenbos                         Nick Kahlon #6280309
QUINN EMANUEL URQUHART &                     SCHIFF HARDIN, LLP
  SULLIVAN, LLP                             6600 Sears Tower
51 Madison Avenue, 22nd Floor               233 South Wacker Drive
New York, New York 10010                    Chicago, IL 60606

---

[39] The *Price* plaintiffs then claimed that $3.4 million in contributions to the Karmeier campaign were attributable to Phillip Morris, not State Farm. (Ex. 33 at 1, 4-6; *see also* ███████████████████████████████████████████████████████████████ Ex. 35 ("Murnane works for Philip Morris."); Ex. 6 at 25-26.) *See* [306] at 2.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above Defendant State Farm Mutual Automobile Insurance Company's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification was served upon counsel on December 18, 2015, via the Court's CM/ECF system:

Dated: December 18, 2015

/s/ Patrick D. Cloud
Attorney for Defendant State Farm