IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, TODD SHADLE,
LAURIE LOGER, and MARK COVINGTON,
on behalf of themselves and all
others similarly situated,

Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, EDWARD
MURNANE, and WILLIAM G. SHEPHERD,

Defendants.                                              No. 12-0660-DRH

### MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I.     Introduction

Pending before the Court is plaintiffs' motion to modify Memorandum and Order of February 26, 2015. (Doc. 466). In their motion, which was filed on December 18, 2015, plaintiffs seek modification of the Order allowing them to depose Justice Karmeier about a recorded interview and a timeline Justice Karmeier gave to a journalist, Brian Mackey. (Doc. 466 P1). Defendant State Farm filed a response on January 2, 2016. (Doc. 483). Justice Karmeier also filed a response on January 4, 2016. (Doc. 484). Both State Farm and Justice Karmeier oppose plaintiffs' motion to modify. Based on the following, the motion is **GRANTED in part and DENIED in part**.

## II. Background

The undersigned's original Order provides that plaintiffs are allowed "to depose Justice Karmeier as to his knowledge concerning all aspects of his campaign including his decision making process for running for the position in the first place and the persons with whom he consulted to make that decision, how the campaign was managed, how the campaign was financed, who was involved in the decision making and strategy of the campaign." (Doc. 358, ps. 12–13). The Order specifically restricts plaintiffs from asking about any of the Illinois Supreme Court's deliberations. (Doc. 358, p. 13). Plaintiffs now seek modification of that Order, claiming that Justice Karmeier "voluntarily disclosed information that is relevant" to the case in a recorded interview and a timeline he gave to journalist Brian Mackey. (Doc. 466 P1). Accordingly, plaintiffs request that this Court allow them "to depose Justice Karmeier about the timeline and what he told Mr. Mackey, without limitation." (Doc. 466, p. 14).

## III. Analysis

Discovery must be "relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1). Here the subject matter of the action is plaintiffs' allegation that the named defendants and unnamed co-conspirators conspired to have Justice Karmeier elected to the Illinois Supreme Court in 2004 so that he would rule in their favor on pending

appeals before that court, in particular the *Avery* case[1] decided in 2005. The vast majority of Justice Karmeier's statements in the interview and in the timeline at issue here are irrelevant to that allegation because they concern his 2014 retention campaign, which is not a subject of this litigation.

As to the information that is relevant, the parties disagree as to whether the deliberative process privilege[2] has been waived. This privilege protects "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The purpose of the privilege is to encourage government officials to "communicate candidly among themselves" and thereby enhance official decision-making. *Id.* at 8–9. Like other privileges, the deliberative process privilege may be waived. *See Florida House of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 946 (11th Cir. 1992) (explaining that the deliberative process privilege is waived where

---

[1] *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 835 N.E.2d 801 (2005).

[2] The Court notes that there are several overlapping privileges potentially applicable to the information at issue here, including the "deliberative process privilege," the "mental process privilege," and the "judicial deliberation privilege." Because waiver would affect all of these privileges, the Court simply refers to the deliberative process privilege. *See, e.g.*, *United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005) ("[W]here the mental processes privilege is available, the analysis is the same as that for the deliberative processes privilege."); *see also Matter of Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit*, 783 F.2d 1488, 1521 (11th Cir. 1986) (explaining that judicial privilege "aris[es] from similar constitutional underpinnings" and "shares similar limitations and restrictions" as the executive privilege).

"authorized disclosure is voluntarily made to a non-federal party"). But such a waiver only extends to "the document or information specifically released, and not . . . related materials." *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997).

Plaintiffs contend that by voluntarily giving the timeline and interview to Mr. Mackey, Justice Karmeier waived any privilege he had in that information. (Doc. 466, p. 6). Justice Karmeier responds that he "has not disclosed any privileged information about why he or the Court made certain decisions in *Avery*" but rather merely "state[d] facts about the process and when certain events took place." (Doc. 484, p. 10).

There are three different media containing Justice Karmeier's statements that are at issue here: (1) the timeline he provided to Mr. Mackey; (2) the statements he made in the recorded interview with Mr. Mackey; and (3) the statements quoted or attributed to him in the text of the article by Mr. Mackey.

1. *Timeline.*

As mentioned above, the majority of the timeline concerns the 2014 retention campaign, which is not a subject of this litigation. Thus these portions are not relevant within the meaning of Federal Rule of Civil Procedure 26 and are not proper subjects for Justice Karmeier's deposition.

The only portion of the timeline that has relevance to this case is Footnote 2, which states:

> When Justice Karmeier joined the Supreme Court in Dec. of 2004, he became the third 5th District Justice to sit on the court while the matter [*Avery*] was pending. The PLA was originally filed in May of 2001, when Moses Harrison was Chief Justice. The matter was argued and taken under advisement in May of 2003, when Justice Rarick was on the court. It remained pending when Justice Karmeier took office in 2004 because the court had been unable to reach a consensus on how to dispose of it. Initially Justice Karmeier did not participate in the case. He became involved only after the court deadlocked again when a revised draft was circulated at the Jan. 2005 term of court. Eight days after Justice Karmeier cast a confidential vote in favor of the proposed disposition, plaintiffs' counsel filed what they called a "conditional motion for [Justice Karmeier's] non-participation." Justice Karmeier referred the motion to the full court and was NP with respect to the motion. The motion was denied by the full court. When plaintiffs' counsel moved for reconsideration, the court, on its own motion, vacated its order and indicated that the decision was "exclusively within the determination of the individual judge." Because Justice Karmeier indicated that he would not disqualify himself, the court denied the motion for conditional non-participation and the motion to reconsider as moot.

(Doc. 466 Ex. 2). As counsel for Justice Karmeier points out, the footnote only contains statements of fact, and does not disclose "Justice Karmeier's deliberations, mental processes or the reasoning for his decisions in *Avery*." (Doc. 484, p. 6).

The first five sentences of the footnote contain only "commonly known statement[s] of fact." (Doc. 484 p. 6-7). No waiver can be gleaned from these sentences.

As to sentence 6 ("He became involved only after the court deadlocked again…"), Justice Karmeier discloses nothing about his reasons

for participating in *Avery*, only that he "became involved." Nor does he disclose any portions of the revised draft that was circulated. Therefore this sentence cannot support a waiver of privilege.

In sentence 7 ("Eight days after Justice Karmeier cast a confidential vote in favor…"), Justice Karmeier simply states that he voted in a certain way. Such a statement does not waive any privilege as to his reasoning for voting that way. *See Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1197 (D.C. Cir. 1991) ("The Court has refused to equate reference to a report's conclusions with adoption of its reasoning, and it is the latter that destroys the [deliberative process] privilege."). Moreover, the fact that Justice Karmeier decided to join the case and that he voted for the majority opinion would have already been public information because the opinion issued in *Avery* reflects that Justice Karmeier joined the majority.

The remaining sentences in Footnote 2 deal with the *Avery* plaintiffs' motion to have Justice Karmeier disqualified from participating in that case. Justice Karmeier does "reveal" that the court denied the motion because such a decision was "exclusively within the determination of the individual judge." But simply quoting the reason given by the court in a decision that is in the public record does not waive the privilege Justice Karmeier or any other member of the Illinois Supreme Court has in the reasoning behind this decision.

The cases that plaintiffs cite do not support their position regarding waiver. Plaintiffs largely rely on *Hobley v. Burge*, 445 F. Supp. 2d 990 (N.D. Ill. 2006).[3] In *Hobley*, former Illinois Governor Ryan contended he had an "executive communications privilege" in his reasoning for pardoning certain individuals. *Id.* at 997. The court found that because Governor Ryan publicly discussed the evidence he used and the basis for his decision, he waived any privilege he may have had in his reasoning. *Id.* at 999. Here, Justice Karmeier does not disclose his reasoning, only that he joined the *Avery* opinion and voted a certain way. Therefore *Hobley* does not support waiver of Justice Karmeier's privilege.

Plaintiffs also rely on *Di Lapi v. City of New York*, No. 06-CV-2864 RJD JMA, 2012 WL 37576 (E.D.N.Y. Jan. 6, 2012). In *Di Lapi*, a quasi-judicial officer waived his "mental process privilege" when he publicly discussed his role and *reasoning* in an administrative proceeding. *Id.* at *3. Here Justice Karmeier only discussed his role, not his reasoning, so *Di Lapi* also does not support waiver.

Plaintiffs string-cite a list of other cases that supposedly support their position. (Doc. 466 P8–9).[4] None of these cases allow for waiver of deliberative process privilege where, as here, the person simply stated that

---

[3] Plaintiffs mistakenly cite this as a Seventh Circuit opinion.

[4] Plaintiffs cite *Smith v. U.S. Dist. Court for S. Dist. of Illinois*, 956 F.2d 647 (7th Cir. 1992); *United States v. $177,844.68 in U.S. Currency*, No. 2:13-CV-100-JCM-GWF, 2015 WL 4227948 (D. Nev. July 10, 2015); *Davis v. Garrity*, No. 2:13CV349 DS, 2013 WL 5745554 (D. Utah Oct. 23, 2013); *E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600 (E.D. Va. 2010); *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33 (D. Kan. 1996); *Clark v. Twp. of Falls*, 124 F.R.D. 91 (E.D. Pa. 1988).

he participated in a decision and voted a certain way. In fact, one of the cases plaintiffs cite later in their Motion actually supports the opposite conclusion. In *U.S. E.E.O.C. v. Cont'l Airlines, Inc.*, 395 F. Supp. 2d 738, 743 (N.D. Ill. 2005), the court found that an EEOC Investigator did not waive his deliberative process privilege as to an investigative report. Although he described, "in a very broad and general sense, the manner in which [the report], and other reports, are complied, and the method employed to determine what evidence to include/exclude from the report," he did not disclose selected portions, specific facts that he included or excluded, or the commentary he included in the report. *Id.* Because he "did not selectively disclose any substantive information contained in the investigative report," he did not waive the deliberative process privilege. *Id.* Similarly here, Justice Karmeier disclosed, in a general sense, that he joined the *Avery* opinion and voted for the majority opinion. His general disclosure did not waive the deliberative process privilege as to his reasoning behind these decisions.

Therefore, the Court **ALLOWS** plaintiffs to depose Justice Karmeier about the timeline only for the limited purpose of confirming the factual statements made in Footnote 2. The Court reiterates that Plaintiffs will not be allowed to ask about any of the Illinois Supreme Court's deliberations or about Justice Karmeier's reasons for joining the *Avery* decision or voting the way he did.

2. *Audio Recording of Interview.*

Justice Karmeier made additional comments in the portion of the audio recording of the interview available online. These statements have been transcribed below:

1. Regarding the 2014 retention campaign: "I was surprised by the tone, the intensity and by the people who were behind it."
2. Regarding campaign fundraising: "Well it's pretty clear when you attend an event and people are paying $50 or $150, I presume that they had contributed. I studiously avoided, I never looked at, the reports that were available, on the public site, I never have to this day, as far as my 2004 campaign."
3. Regarding campaign fundraising: "Now the problem, of course, with that, is everybody else looks at it and then they put in the pleadings or they put it in the paper, and they say 'Well, he took this,' and by then of course it's knowledge to me too, and it changes, it changes the landscape."
4. Regarding allegations of quid pro quo: "The appearance of impropriety, that's…we've completely lost control of that because people can plead something or they can put something in the newspaper, and the public then perceives it, and that, is that the appearance of impropriety? If it is, then we've got difficulties, because anyone can create it then."
5. Regarding the attorneys who funded the opposition to Justice Karmeier's 2014 retention: "Until lawyers have some ethics in what they're doing, it's going to be difficult to stop this."

Neither party spends much time on the comments made by Justice Karmeier in the recorded interview. Counsel for Justice Karmeier does acknowledge that "[t]he article/interview does touch, to a small extent, on the 2004 campaign, and to the extent it falls within the Court's existing order, inquiry about that topic would be appropriate." (Doc. 484, p. 5). Statements 2–4 above do touch on the 2004 election campaign, and to the

extent that Justice Karmeier had any privilege in these statements to begin with, such privilege has been waived by his disclosure to Mr. Mackey. Statements 1 & 5 deal with the 2014 retention campaign and are not relevant.

Therefore, the Court **ALLOWS** plaintiffs to depose Justice Karmeier as to statements 2–4 above.

3. *Text of the Article.*

The text of the article quotes or attributes statements to Justice Karmeier as well. They are as follows:

1. Direct Quotes:
    A. Regarding fundraising records: "When I was running in 2004, the given way for judges to do it was to simply avoid and not know, and then you couldn't be considered having any bias or problems."
    B. Regarding allegations that State Farm funded the campaign: "As far as I was concerned, that was all hyperbole, and all a creation, and still is."
    C. Regarding the 2014 retention campaign: "We did not expect this. I was surprised by the tone, the intensity and by the people who were behind it."
    D. Comparing the 2004 and 2014 campaigns: "Then it was political. It was Republican against Democrat. It was a philosophy of perhaps being more liberal in certain areas and I was more moderate or conservative. And that's OK," he says. "But when you get into a retention election, if you've done your job — unless there's been problems, and there's never been any criticism that I haven't shown up for work or I haven't done my share or that I haven't tried to be fair — suddenly a group of … lawyers says, no, we've got to change this. And spend $2 million. It seems to me a little different."
    E. Regarding the fact that some conservatives activists had previously tried to oust a different judge: "Oh yeah, and that

        was sponsored by a group that supported me 10 years ago, unfortunately," Karmeier says, referring to the Civil Justice League. "[That's] very disappointing."
- F. Regarding a system in which judges must fundraise and campaign: "The fact that somebody gives you money, we consider that a quid pro quo for politicians. Not just necessarily that they're going to be favorable, but 'maybe we can get a special favor.' Why wouldn't you think the same thing about judges?"

2. Statements Attributed to Justice Karmeier:
   - A. Regarding campaign financing: "[H]e's made it his practice to not look at campaign contributors — at least not until after the election this year."
   - B. Regarding a different allegation of improper campaign financing: "Karmeier rightly points out that at the time Dot made the donations, the company had no case pending before the Supreme Court. And he maintains he was not aware of his campaign contributors — at least not until Keefe called him out."

Again, neither side spends much time discussing these statements. Statements 1.A, B, D & F and 2.A appear to touch on the 2004 campaign and therefore are relevant to the case. 1.C & E are irrelevant. The portion of 2.B that says "he maintains he was not aware of his campaign contributors" is relevant; the rest of 2.B is not.

Therefore, the Court **ALLOWS** plaintiffs to depose Justice Karmeier as to statements 1.A, B, D, F & 2.A and the portion of 2.B identified above.

### IV. Conclusion

Accordingly, plaintiffs' motion to modify Memorandum and Order of February 26, 2015 (Doc. 466) is **GRANTED in part and DENIED in part**.

The Court **ALLOWS** the deposition of Justice Lloyd Karmeier as modified by this Memorandum and Order.

**IT IS SO ORDERED.**

Signed this 2nd day of March, 2016.

Digitally signed by Judge David R. Herndon
Date: 2016.03.02 10:53:15 -06'00'

**United States District Judge**