# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, TODD SHADLE and
LAURIE LOGER, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

   v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, EDWARD MURNANE, and
WILLIAM G. SHEPHERD,

                Defendants.

Case No. 12-cv-00660-DRH-SCW

Judge David R. Herndon
Magistrate Judge Stephen C. Williams

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON GROUNDS OF *ROOKER-FELDMAN, RES JUDICATA*, AND COLLATERAL ESTOPPEL AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ........................................................................................... 1

STATEMENT OF FACTS ................................................................................ 4

    A.    The Avery Judgment and Decision........................................................ 4

    B.    Plaintiffs' Challenges to Justice Karmeier's Participation in Avery ..................... 7

    C.    The Proceedings in Hale .................................................................. 14

ARGUMENT ................................................................................................ 17

I.     SUMMARY JUDGMENT STANDARD ..................................................... 17

II.    PLAINTIFFS' CLAIMS ARE BARRED UNDER ROOKER-FELDMAN
     AS A MATTER OF LAW.................................................................... 18

    A.    Plaintiffs' Alleged Injuries Were Caused by State-Court Judgments.................. 19

    B.    Plaintiffs Cannot Evade Rooker-Feldman by Claiming that the
        Illinois Supreme Court's Decisions Were Obtained by Fraud............................ 23

    C.    Plaintiffs' Claims Impermissibly Seek Review of the Illinois
        Supreme Court's Decisions and Orders on Justice Karmeier's
        Participation in the Avery Decision ..................................................... 25

    D.    Plaintiffs Had a Reasonable Opportunity in the Illinois Supreme
        Court to Litigate the Issues Regarding Justice Karmeier's
        Participation in Avery ..................................................................... 29

    E.    The Seventh Circuit's Decision in Nesses v. Shepard Does Not
        Provide Plaintiffs With a Way Around Rooker-Feldman...................... 32

III.   PLAINTIFFS' CLAIMS ARE BARRED BY RES JUDICATA AS A
     MATTER OF LAW........................................................................... 36

IV.   PLAINTIFFS' CLAIMS ARE BARRED BY COLLATERAL
     ESTOPPEL AS A MATTER OF LAW...................................................... 39

CONCLUSION.............................................................................................. 40

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Avery v. State Farm Mutual Automobile Insurance Co.*,
  1999 WL 955543 (Ill. Cir. Ct. Oct. 8, 1999) ........................................................5

*Avery v. State Farm Mutual Automobile Insurance Co.*,
  1999 WL 1022134 (Ill. Cir. Ct. Oct. 8, 1999) ...................................................... 5

*Avery v. State Farm Mutual Automobile Insurance Co.*,
  746 N.E.2d 1242 (Ill. App. Ct. 2001) .................................................................. 6

*Avery v. State Farm Mutual Automobile Insurance Co.*,
  835 N.E.2d 801 (Ill. 2005) ......................................................................... 1, 4, 5, 6

*Beth-El All Nations Church v. City of Chicago*,
  486 F.3d 286 (7th Cir. 2007) .............................................................................. 27

*Bianchi v. Rylaarsdam*,
  334 F.3d 895 (9th Cir. 2003) .................................................................. 26, 28, 32

*Brackman v. Indiana*,
  93 F. App'x 989 (7th Cir. 2004) ......................................................................... 29

*Brazinski v. Amoco Petroleum Additives Co.*,
  6 F.3d 1176 (7th Cir. 1993) ................................................................................ 17

*Brokaw v. Weaver*,
  305 F.3d 660 (7th Cir. 2002) .............................................................................. 30

*Brown v. Allen*,
  344 U.S. 443 (1953)..................................................................................... 4, 38

*Carr v. Tilley*,
  2010 WL 4781127 (S.D. Ill. Sept. 30, 2010) .................................................... 36

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................................... 17

*Centres, Inc. v. Town of Brookfield*,
  148 F.3d 699 (7th Cir. 1998) .............................................................................. 19

*City of Chicago v. Midland Smelting Co.*,
  896 N.E.2d 364 (Ill. App. Ct. 2008) .................................................................. 37

*Clifton v. Schafer*,
  969 F.2d 278 (7th Cir. 1992) .............................................................................. 18

*Coley v. Abell*,
  --- F. App'x ----, 2017 WL 1166874 (7th Cir. Mar. 29, 2017) .................... 3, 24

*Cowell v. Auction Broad. Co.*,
    2017 WL 76925 (S.D. Ill. Jan. 9, 2017) .................................................................... 17, 18

*Crestview Village Apartments v. United States Department of Housing & Urban*
    *Development*,
    383 F.3d 552 (7th Cir. 2004) ...................................................................................... 2, 21

*Dababnah v. Burnside*,
    2000 U.S. App. LEXIS 11342 (4th Cir. May 12, 2000) .................................................. 28

*Davit v. Davit*,
    173 F. App'x 515 (7th Cir. 2006) .................................................................................. 33

*Dawaji v. Askar*,
    618 F. App'x 858 (7th Cir. 2015) ............................................................................ 23, 24

*Dookeran v. County of Cook, Illinois*,
    719 F.3d 570 (7th Cir. 2013) ...................................................................................... 2, 20

*Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*,
    744 N.E.2d 845 (Ill. 2001) ......................................................................................... 37, 39

*Ellison v. Brock*,
    122 F. App'x 519 (1st Cir. 2004) .............................................................................. 27, 28

*Ennenga v. Starns*,
    677 F.3d 766 (7th Cir. 2012) ............................................................................................ 38

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
    544 U.S. 280 (2005) ........................................................................................................ 19

*Federated Department Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981) ........................................................................................................ 39

*Fieger v. Ferry*,
    471 F.3d 637 (6th Cir. 2006) ............................................................................................ 28

*Fogarty Street, Ltd. v. Mortgage Electronic Registration System*,
    2012 WL 5831163 (N.D. Ind. Nov. 14, 2012) .......................................................... 1, 19

*Garry v. Geils*,
    82 F.3d 1362 (7th Cir. 1996) ............................................................................................ 22

*Grisanzio v. Bilka*,
    511 N.E.2d 762 (Ill. App. Ct. 1987) ................................................................................. 39

*Harold v. Steel*,
    773 F.3d 884 (7th Cir. 2014) ....................................................................... 3, 24, 27, 34

*Harvey v. Speedway SuperAmerica, LLC*,
    526 F.3d 1099 (7th Cir. 2008) .......................................................................................... 17

*Henson v. Department of Health & Human Services*,
    2017 WL 1090815 (S.D. Ill. Mar. 23, 2017) .................................................................. 18

*Highway J Citizens Goup v. United States Department of Transportation*,
    456 F.3d 734 (7th Cir. 2006) ....................................................... 37

*Holt v. Lake County Board Of Commissioners*,
    408 F.3d 335 (7th Cir. 2005) ....................................................... 30

*Howell v. Supreme Court of Texas*,
    885 F.2d 308 (5th Cir. 1989) ....................................................... 28

*Hurlbert v. Charles*,
    938 N.E.2d 507 (Ill. 2010) ........................................................... 39

*Illinois Extension Pipeline Co. v. Summann*,
    2016 WL 630022 (S.D. Feb. 17, 2016).......................................... 18

*Iqbal v. Patel*,
    780 F.3d 728 (7th Cir. 2015) ................................................... 3, 24

*La Salle National Bank v. County Board of School Trustees*,
    337 N.E.2d 19 (Ill. 1975) ............................................................. 36

*Lewis v. Anderson*,
    308 F.3d 768 (7th Cir. 2002) ................................................. 20, 29

*Long v. Shorebank Development Corp.*,
    182 F.3d 548 (7th Cir. 1999) ....................................................... 30

*Loubser v. Thacker*,
    440 F.3d 439 (7th Cir. 2006) .................................... 33, 34, 35, 36

*Mains v. Citibank, N.A.*,
    852 F.3d 669 (7th Cir. 2017) ...................... 3, 4, 20, 21, 23, 26, 35

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..................................................................... 18

*Nesses v. Shepard*,
    68 F.3d 1003 (7th Cir. 1995) ............................ 19, 33, 34, 35, 36

*R.J. Reynolds Tobacco Co. v. Walker*,
    No. 13-1193, 2014 WL 1711561 (Apr. 30, 2014) ........................ 38

*Reusser v. Wachovia Bank, N.A.*,
    525 F.3d 855 (9th Cir. 2008) ................................................. 26, 32

*Richardson v. Koch Law Firm, P.C.*,
    768 F.3d 732 (7th Cir. 2014) ................................................... 2, 20

*River Park, Inc. v. City of Highland Park*,
    703 N.E.2d 883 (Ill. 1998)............................................................ 36

*S.C. Johnson & Son, Inc. v. Buske*,
    2009 WL 3010833 (S.D. Ill. Sept. 17, 2009)............................1, 19

*Sheikhani v. Wells Fargo Bank,*
 526 F. App'x 705 (7th Cir. 2013) .............................................................33, 34

*Smith v. Bender,*
 350 F. App'x 190 (10th Cir. 2009) ................................................................ 28

*Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection,*
 560 U.S. 702 (2010)......................................................................................... 39

*Sykes v. Cook County Circuit Court Probate Division,*
 837 F.3d 736 (7th Cir. 2016) ................................................................... 21, 22

*Taylor v. Federal National Mortgage Association,*
 374 F.3d 529 (7th Cir. 2004) ................................................................... 22, 30

*Thomas v. Christ Hospital & Medical Center,*
 328 F.3d 890 (7th Cir. 2003) ......................................................................... 18

*Thompson v. Gutierrez,*
 2017 WL 1379832 (M.D. Fla. Mar. 27, 2017), *adopted,* 2017 WL 1365647 (M.D.
 Fla. Apr. 14, 2017)......................................................................................... 32

*Towle v. New Hampshire Department of Health & Human Services,*
 2007 WL 2682261 (D.N.H. Sept. 7 2007)...................................................... 32

*Wallis v. Fifth Third Bank,*
 443 F. App'x 202 (7th Cir. 2011) .................................................................... 2

*Walsh Construction Co. v. National Union Fire Insurance Co.,*
 153 F.3d 830 (7th Cir. 1998) ......................................................................... 37

*Warren County Soil & Water Conservation District v. Walters,*
 32 N.E.3d 1099 (Ill. 2015)....................................................................... 31, 36

*White v. Judicial Inquiry & Review Board of Pennsylvania,*
 744 F. Supp. 658 (E.D. Pa. 1990) ................................................................. 32

*Williams v. Brooks,*
 809 F.3d 936 (7th Cir. 2016), *cert. denied,* 137 S. Ct. 335 (2016)................................. 18

*Wilson v. Selma Water Works & Sewer Board,*
 522 F. App'x 634 (11th Cir. 2013) ................................................................ 29

*In re Yates,*
 274 F. App'x 312 (4th Cir. 2008) .................................................................. 32

*Young v. Murphy,*
 90 F.3d 1225 (7th Cir. 1996) ......................................................................... 18

## **Rules/Statutes**

Fed. R. Civ. P. 56(a) ............................................................................................ 17

18 U.S.C. § 1964(c) ................................................................................................... 2

42 U.S.C. § 1983 ................................................................................................. 2, 26

735 ILCS 5/2-1401. ........................................................................................ 27, 31, 36

735 ILCS 5/2-1401(f) ............................................................................................... 11

Comes now Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), by and through counsel, and pursuant to Fed. R. Civ. P. 56 and Local Rule 7.1 moves for summary judgment on grounds of *Rooker-Feldman*, *res judicata*, and collateral estoppel.   In support of this motion, State Farm submits the following memorandum of law:

## INTRODUCTION

In ruling on State Farm's motion to dismiss, the Court indicated that the issues of *Rooker-Feldman*, *res judicata* and collateral estoppel should be resolved on summary judgment.  *See* [67] at 15, 20.[1]   As shown below, based on undisputed facts and the applicable law, summary judgment should be granted in State Farm's favor, and all Plaintiffs' claims should be dismissed for lack of jurisdiction under *Rooker-Feldman*.   The doctrines of *res judicata* and collateral estoppel provide independent reasons entitling State Farm to judgment as a matter of law.

Plaintiffs bear "the burden of bringing forward 'competent proof' of the existence of subject matter jurisdiction" and "proving to the court by 'a preponderance of the evidence … that jurisdiction exists.'"  *S.C. Johnson & Son, Inc. v. Buske*, 2009 WL 3010833, at *2 (S.D. Ill. Sept. 17, 2009) (citations omitted).   That burden applies when a defendant challenges jurisdiction under the *Rooker-Feldman* doctrine.  *See id.*; *Fogarty St., Ltd. v. Mortg. Elec. Registration Sys.*, 2012 WL 5831163, at *2 (N.D. Ind. Nov. 14, 2012) (dismissing plaintiffs' claims under *Rooker-Feldman*).   A plaintiff's "recitation" of his or her allegations "doesn't satisfy [the] burden of demonstrating jurisdiction." *Fogarty St.*, 2012 WL 5831163, at *3.

Plaintiffs' claims are barred under *Rooker-Feldman* because their asserted injuries are not separate and independent from the decisions and judgments of the Illinois Supreme Court in *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005).  Plaintiffs

---

[1]  In its class certification Order, the Court also stated that it would address State Farm's *Rooker-Feldman, res judicata*, and collateral estoppel arguments on summary judgment. [556] at 2 n.2.

assert (i) injury consisting of the loss of the $1.05 billion judgment in *Avery* ([289] at ¶¶ 2, 14, 40, 97, 131), as well as (ii) injuries that purportedly occurred "en route" to the loss of the $1.05 billion judgment, consisting of the alleged deprivation of due process supposedly caused by Justice (now Chief Justice) Lloyd Karmeier's participation in the Illinois Supreme Court's *Avery* decision.[2] ([67] at 15-16; [50] at 11.)

Regardless of whether Plaintiffs intend to claim two separate injuries or one injury, every component of their claimed injuries flows directly from the Illinois Supreme Court's decisions and orders in *Avery*. The Illinois Supreme Court's unanimous decision on the merits in *Avery* reversed the Illinois Appellate Court's judgment, causing the loss of the $1.05 billion judgment. The purported violation of Plaintiffs' due process rights was the result of the Illinois Supreme Court's decisions denying Plaintiffs' 2005 and 2011 challenges to Justice Karmeier's participation in *Avery*. Because the Illinois Supreme Court's decisions were the "source" of Plaintiffs' purported injuries, *Rooker-Feldman* precludes jurisdiction here. *See, e.g.*, *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014) (*Rooker-Feldman* "applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court."); *Dookeran v. Cnty. of  Cook, Ill.*, 719 F.3d 570, 575 (7th Cir. 2013) (*Rooker-Feldman* is concerned with "'situations in which the state court's decision is the source of the harm that the federal suit is designed to redress'") (citation omitted); *Crestview Vill. Apts. v. U.S. Dep't of Housing & Urban Dev.*, 383 F.3d 552, 556-57 (7th Cir. 2004) (*Rooker-Feldman* barred federal

---

[2]   RICO of course requires an injury to business or property (*see* 18 U.S.C. § 1964(c)), and a due process "injury" in the form of a "tainted tribunal" is not cognizable under RICO. Plaintiffs bring only RICO claims and have not alleged any claims (such as a 42 U.S.C. § 1983 claim) that would permit a remedy for the claimed deprivation of their constitutional rights.  In any case, Plaintiffs "''may not seek a reversal of a state court judgment simply by casting [their] complaint in the form of a civil rights action,'''" *Crestview Vill. Apartments v. United States HUD*, 383 F.3d 552, 556-57 (7th Cir. 2004) (citation omitted), or in the guise of a RICO claim. *Wallis v. Fifth Third Bank*, 443 F. App'x 202, 204-05 (7th Cir. 2011).

action where the injury alleged was "complete" only after the state court entered its order). There can be no reasonable dispute that Plaintiffs are attempting to use this federal RICO case to seek redress for the Illinois Supreme Court's reversal of the $1.05 billion judgment in *Avery*.

Plaintiffs' allegation that State Farm procured the Illinois Supreme Court's decisions and rulings by fraudulent misrepresentations in its briefs to that Court does not change the result under *Rooker-Feldman*. Seventh Circuit law is very current and very clear: *Rooker-Feldman* prohibits federal courts from adjudicating claims "that the state court's [] judgment was in error because it rested on a fraud perpetrated by the defendants." *Mains v. Citibank, N.A.*, 852 F.3d 669, 676 (7th Cir. 2017). As the Seventh Circuit explained, "delv[ing] into the question whether fraud tainted the state court's judgment … would amount to an exercise of de facto appellate jurisdiction," which "is precisely what *Rooker-Feldman* prohibits." *Id.*; *see also, e.g.*, *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) ("fraud (no matter how described) does not permit a federal district court to set aside a state court's judgment in a civil suit"); *Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014) (rejecting contention that *Rooker-Feldman* did not apply because the defendant's "false statements, rather than the state court's decision, inflicted the injury of which he complains;" finding that "[n]o injury occurred until the state judge ruled against Harold"); *Coley v. Abell*, --- F. App'x ----, 2017 WL 1166874, at *2 (7th Cir. Mar. 29, 2017) (*Rooker-Feldman* barred plaintiff's claims that Indiana child services employees "lied about or omitted facts in court to obtain [a] removal order" and "thereby denied her due process").

Plaintiffs, moreover, had a reasonable opportunity to litigate in the Illinois Supreme Court the same due process and other issues they now raise in this federal court, and repeatedly did so. (*See infra* at 7-14.) In particular, in their 2011 petition to the Illinois Supreme Court for relief from judgment, Plaintiffs raised the same issues they raise here, asserting similar

allegations based on the same affidavits of Daniel Reece and Douglas Wojcieszak that are the predicate for Plaintiffs' allegations here.  That petition was denied by the Illinois Supreme Court, without Justice Karmeier participating, and that Court's resolution of those issues, factual and legal, cannot be relitigated in federal court.  As the Seventh Circuit held in *Mains*, the "proper place to remedy any potential fraud in the state court's judgment is the state court," and the federal courts "must accept the state court's resolution of the issue."  852 F.3d at 678.

Independently, Plaintiffs' claims are precluded on the grounds of *res judicata* and collateral estoppel.  Plaintiffs have already fully litigated their claims regarding Justice Karmeier's participation in *Avery*, and those claims were rejected by the Illinois Supreme Court in 2005 and 2011.  The United States Supreme Court's denial of Plaintiffs' 2006 petition for certiorari, which was based on the same allegations as are at issue here, also has *res judicata* effect and bars Plaintiffs' RICO claims.  *See Brown v. Allen*, 344 U.S. 443, 543 (1953) (Jackson, J., concurring) (the "minimum meaning" of a denial of certiorari is that "the judgment below … stand[s] with whatever consequences it may have upon the litigants involved under the doctrine of *res judicata* as applied either by state or federal courts" "even if new facts are discovered and even if a new theory of law were thought up").

Accordingly, for these reasons and those set forth below, the Court should grant summary judgment in favor of State Farm on Plaintiffs' claims.

## STATEMENT OF FACTS

### A.    The *Avery* Judgment and Decision

1.    *Avery* was a nationwide class action that was filed in the Circuit Court of Illinois, First Judicial Circuit, Williamson County in July 1997.  *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 810-12 (Ill. 2005); [289] at ¶ 45.

2.    The plaintiffs in *Avery* asserted breach of contract and Illinois Consumer Fraud Act

("ICFA") claims against State Farm based upon State Farm's specification of non-original equipment manufacturer "crash parts" for the repair of its insureds' automobiles. *Avery*, 835 N.E.2d at 810-11; [289] at ¶¶ 3, 45.  Plaintiffs here were among the named Plaintiffs and class members in *Avery*.  *Id*.

3.     In *Avery*ˏ the circuit court certified a class defined as: "All persons in the United States, except those residing in Arkansas and Tennessee, who, between July 28, 1987, and February 24, 1998, (1) were insured by a vehicle casualty insurance policy issued by Defendant State Farm and (2) made a claim for vehicle repairs pursuant to their policy and had non-factory authorized and/or non-OEM (Original Equipment Manufacturer) 'crash parts' installed on their vehicles or else received monetary compensation determined in relation to the cost of such parts."  [289] at ¶ 37; *see also* A00001-00017 (*Avery* Class Cert. Order); A00018-00020 (*Avery* Am. Class Cert. Order).  The circuit court excluded from the class all "persons who resided in Illinois and whose policies were issued/executed prior to April 16, 1994" and all "persons who resided in California and whose policies were issued/executed prior to September 26, 1996." A00002; A00017

4.     At trial, the jury awarded the certified class: (1) $243,740,000 in specification damages; (2) $212,440,000 in direct damages; and (3) $456,180 in interest.  For the ICFA claims, the circuit court imposed $130,000,000 in "disgorgement" damages and $600,000,000 in punitive damages (*id.*), and entered judgment against State Farm of over $1.1 billion in favor of the certified class.  *Avery v. State Farm Mut. Auto. Ins. Co.*, 1999 WL 955543, at *1 (Ill. Cir. Ct. Oct. 8, 1999); *Avery v. State Farm Mut. Auto. Ins. Co.*, 1999 WL 1022134, at *1 (Ill. Cir. Ct. Oct. 8, 1999).

5.     The Illinois Appellate Court largely affirmed the *Avery* judgment, but eliminated the

"disgorgement" damages as duplicative, reducing the damages award to just over $1.05 billion.  *Avery v. State Farm Mut. Auto. Ins. Co.*, 746 N.E.2d 1242 (Ill. App. Ct. 2001); [289] at ¶ 46.

6.     State Farm filed a petition for review, which was granted by the Illinois Supreme Court. In May 2003, the case was argued and submitted.  [289] at ¶ 47.

7.     Justice Karmeier was elected to the Illinois Supreme Court on November 4, 2004, and he was sworn in to the Court on December 6, 2004.  (A00021-00023 (Press Release, Ill. Supreme Court, The Hon. Lloyd A. Karmeier To Be Sworn In to Illinois Supreme Court (Dec. 2, 2004), *available at* www.state.il.us/court/Media/PressRel/2004/120204.pdf).)

8.     On August 18, 2005, the Illinois Supreme Court (with Justice Karmeier participating) ruled unanimously that the trial court's certification of the *Avery* class was erroneous. *See Avery*, 835 N.E.2d at 830, 863; *see also id.* at 864, 880 (Freeman, J., concurring in part and dissenting in part, joined by Kilbride, J.).  All six of the participating Illinois Supreme Court Justices voted unanimously to reverse the judgment in favor of the *Avery* plaintiffs and to decertify the class certified by the circuit court.  *See Avery*, 835 N.E.2d at 830, 855, 863; *see also id.* at 863-64, 880 (Freeman, J., concurring in part and dissenting in part, joined by Kilbride, J.).

9.     Plaintiffs admit that all six of the participating Illinois Supreme Court Justices in *Avery* unanimously voted in favor of: (i) reversing the judgment in favor of the *Avery* plaintiffs; (ii) decertifying the nationwide class certified by the circuit court as erroneous; (iii) reversing the judgment in favor of the *Avery* plaintiffs on their breach of contract claim for "specification damages" as having "no basis in law"; and (iv) reversing the judgment in favor of the *Avery* plaintiffs on their ICFA claim, which was the predicate for the

circuit court's punitive damages award, because, *inter alia*, the ICFA could not be applied to the claims of policyholders outside of Illinois.  [610] at 8-11, 22.

10.    Plaintiffs further admit that only the two partially concurring and dissenting Illinois Supreme Court Justices would have remanded any part of the case to the circuit court, and then only to determine whether any subclass could be certified as to the breach of contract claim.  [610] at 13-14.

11.    Plaintiffs state that they do not contend that any of the rulings in the Illinois Supreme Court's decision on the merits in *Avery* were erroneous.  [610] at 7-8.

**B.    Plaintiffs' Challenges to Justice Karmeier's Participation in *Avery***

12.    Between 2005 and 2011, Plaintiffs brought five challenges to Justice Karmeier's participation in the *Avery* decision: (i) a Conditional Motion for Non-Participation (and supporting Memorandum) on January 26, 2005 in the Illinois Supreme Court (A00024-00183); (ii) a Motion to Reconsider the Denial of Conditional Motion for Non-Participation and/or Recusal of Justice Karmeier (and supporting Memorandum) on March 22, 2005 in the Illinois Supreme Court (A00316-00389); (iii) a Petition for Rehearing filed on September 8, 2005 in the Illinois Supreme Court (A00390-00416); (iv) a Petition for Writ of Certiorari filed on December 27, 2005 in the United States Supreme Court (A01914-01932); and (v) a Petition to Recall Mandate and Vacate August 18, 2005 Judgment filed on September 9, 2011 (refiled on September 13, 2011), pursuant to section 2-1401 of Illinois Code of Civil Procedure, in the Illinois Supreme Court (A00421-00961).

13.    Plaintiffs admit that, in each of these five challenges, they claimed that Justice Karmeier's participation would or did violate their due process rights.  [610] at 53-55. These due process claims were premised on State Farm's purported contributions to and

other support of Justice Karmeier's 2004 election campaign, which Plaintiffs alleged State Farm concealed from the Illinois Supreme Court. (A00025-00028; A00037-00049; A00317-00319; A00345-00349; A00392-00395; A01921-01924; A00439-00451.)

**Plaintiffs' Conditional Motion for Non-Participation**

14.    In their January 27, 2005 Memorandum in Support of Appellees' Conditional Motion for Non-Participation, Plaintiffs sought the recusal or disqualification of Justice Karmeier from *Avery* on due process and other grounds.  Plaintiffs alleged that: (i) State Farm contributed to Justice Karmeier's campaign through organizations such as the Illinois Civil Justice League ("ICJL"); its political action committee, JUSTPAC; the U.S. Chamber of Commerce; the American Tort Reform Association ("ATRA"); the Illinois Coalition for Jobs, Growth and Prosperity; the Illinois State Chamber of Commerce; and other organizations whose contributions Plaintiffs claimed were connected to State Farm; and (ii) State Farm was connected to Justice Karmeier's campaign through Edward Murnane of the ICJL, who Plaintiffs claimed recruited Justice Karmeier to run for the Illinois Supreme Court and essentially managed his campaign, and who Plaintiffs claimed had a direct relationship with William Shepherd of State Farm. (A00036, A00039-00048; A00068-00072 (1/25/2005 Aff. of Wojcieszak)[3] at ¶¶ 3-7.)  Plaintiffs also submitted purported evidence, including an affidavit of Douglas Wojcieszak.  (A00044-00048; A00068-00072.)  Mr. Wojcieszak has been described by Plaintiffs as one of their private investigators ([270] at 6), and he also provided an affidavit in support of Plaintiffs' 2011

---

[3]   Plaintiffs attached the January 25, 2005 Affidavit of Douglas B. Wojcieszak as Exhibit 1 to the Memorandum in Support of Appellees' Conditional Motion for Non-Participation. A00045. Plaintiffs subsequently submitted a second Affidavit of Douglas B. Wojcieszak, dated February 3, 2005, which stated that Plaintiffs' supporting exhibits for the Conditional Motion were "a true and accurate print-out of the information obtained in [his] research and investigation" for Plaintiffs' counsel in *Avery*. (A01936.)

Petition to Recall Mandate.  (A00612-00626.)[4]

15.   On January 31, 2005, State Farm filed an Opposition to the Conditional Motion for Non-Participation, in which it contended that Plaintiffs' arguments and their characterizations of the evidence contained serious inaccuracies and distortions.  (A00184-00312.)

16.   The Illinois Supreme Court denied Plaintiffs' Conditional Motion for Non-Participation on March 16, 2005, without Justice Karmeier participating in the decision. (A01934.)

**Plaintiffs' Motion to Reconsider**

17.   In their March 22, 2005 Motion to Reconsider, Plaintiffs sought the recusal or disqualification of Justice Karmeier from *Avery* on due process and other grounds, asserting, *inter alia*, that "participation by Justice Karmeier would violate the Appellees' ability to present their case to an impartial tribunal, which is a fundamental component of due process."  (A00320.)   Plaintiffs further "request[ed] that Justice Karmeier recuse himself from ruling on this matter," arguing that recusal was "an act unique to his own decision." (A00318; A00322.) Plaintiffs also re-asserted the arguments contained in their Conditional Motion for Non-Participation.  (A00317-00322.)

18.   On May 20, 2005, the Illinois Supreme Court vacated its March 16 Order, stating that under the Illinois Rules, disqualification was "a decision exclusively within the determination of the individual judge" and that Justice Karmeier had "advised the court that he will not disqualify himself."  (A00314.)  Accordingly, the Court denied Plaintiffs' Motion to Reconsider as moot.  (*Id.*)

**Plaintiffs' Petition for Rehearing**

19.   After the Illinois Supreme Court issued its August 18, 2005 decision reversing the

---

[4]  Plaintiffs attached the July 30, 2011 Affidavit of Douglas B. Wojcieszak as Exhibit 4 to the Petition to Recall Mandate.  (A00427.)

judgment against State Farm in *Avery*, Plaintiffs filed their September 8, 2005 Petition for Rehearing.  In that petition, Plaintiffs sought rehearing of *Avery* on due process grounds based on Justice Karmeier's participation in the *Avery* decision.  Plaintiffs repeated their allegations that State Farm, Mr. Shepherd and Mr. Murnane were involved in various organizations (*e.g.*, ICJL, JUSTPAC, and the U.S. and Illinois Chambers of Commerce) that supported Justice Karmeier's campaign and that State Farm had contributed "massive sums of money" through these organizations to the campaign.  (A00394-00395.)

20.　The Illinois Supreme Court denied Plaintiffs' Petition for Rehearing on September 26, 2005.  (A00418.)

**Plaintiffs' Petition for Certiorari**

21.　In their December 27, 2005 Petition for Writ of Certiorari to the United States Supreme Court, Plaintiffs again challenged Justice Karmeier's participation in *Avery* on due process grounds, based on State Farm's purported support for Justice Karmeier's campaign.  (A01921-01928.)  Plaintiffs asserted, *inter alia*, that "much" of the nearly $5 million raised for Justice Karmeier's campaign "came directly from State Farm and its agents or from groups of which State Farm was an active member and supporter" (A01922) and detailed the purported contributions made by JUSTPAC, the U.S. Chamber of Commerce and other entities.  Plaintiffs also included the allegations that "Mr. Murnane and his State Farm-funded and supported groups … recruited Justice Karmeier to run" and repeated other allegations from their motions and briefing in the Illinois Supreme Court, including allegations regarding Mr. Shepherd.  (A01922-01923.)

22.　The United States Supreme Court denied Plaintiffs' Petition for a Writ of Certiorari on

March 6, 2006.  (A00420 (3/6/2006 Order Denying Certiorari).)

**Plaintiffs' Petition to Recall the Mandate**

23.  On September 8, 2011, Plaintiffs filed in the Illinois Supreme Court a Petition to Recall Mandate and Vacate August 18, 2005 Judgment (refiled on September 13, 2011). Pursuant to 735 ILCS 5/2-1401(f), Plaintiffs requested that the Illinois Supreme Court vacate the *Avery* decision and reinstate the $1.05 billion judgment on grounds of due process and fraud, arguing that "newly-discovered evidence" showed that State Farm had "lied to and misled" and "concealed information from" the Illinois Supreme Court regarding State Farm's supposed "extraordinary financial and political support for Justice Karmeier's 2004 campaign" in order to "thwart Justice Karmeier's disqualification." (A00423-00424.)   This purported new evidence included: (1) William Shepherd's membership on the ICJL executive committee; (2) Shepherd's purported selection of Ed Murnane to "run Judge Karmeier's 2004 Illinois Supreme Court campaign;" (3) State Farm's alleged use of JUSTPAC to raise over $1 million for Justice Karmeier's campaign; and (4) "State Farm-influenced contributions" to Justice Karmeier's campaign that "may have" amounted to "more than $4 million in direct, indirect, and in-kind support." (A00423-00426; A00439-00440.)   Plaintiffs also alleged that State Farm, "through Shepherd, Murnane and others" "recruit[ed]" Justice Karmeier (A00427-A00428) and had "immensely powerful … control over and support of Justice Karmeier's campaign." (A00427.)  Plaintiffs alleged that through its concealment of such actions, "State Farm committed an extrinsic fraud on [the Illinois Supreme] Court" that "render[ed] the Court's judgment void and reviewable pursuant to [the] Petition." (A00429.)

24.  In their 2011 Petition, Plaintiffs alleged that State Farm deliberately misrepresented or concealed the following information: (1) Shepherd was a member of the ICJL Executive Committee and an alleged "central figure in Justice Karmeier's campaign;" (2) Murnane allegedly "ran Justice Karmeier's campaign;" and (3) State Farm's purported provision of "extraordinary financial support of Justice Karmeier's campaign." (A00440-00448.) Plaintiffs claimed that the *Avery* judgment "was procured through State Farm's concealment of a fraud on this Court." (A00425.)

25.  In the 2011 Petition, Plaintiffs further asserted that "State Farm's extraordinary financial and political support for Justice Karmeier's 2004 campaign created a constitutionally-unacceptable risk of bias such that his participation and vote to reverse the *1.05 billion* judgment deprived Petitioners of their due process rights …." (A00423; *see also* A00428 ("State Farm's actions – through Shepherd, Murnane and others – in recruiting Justice Karmeier, providing him substantial financial support and managing his campaign, paired with Justice Karmeier's decision to participate in the appeal, created a constitutionally – unacceptable risk of bias which deprived Petitioners of their due process rights").)

26.  Plaintiffs also claimed that "one of Justice Karmeier's key campaign consultants (Adomite[5]) candidly acknowledged that Justice Karmeier was undoubtedly aware of the sources of his campaign funds" (A00427), and that Justice Karmeier, "knowing he was being called upon to decide an appeal which could restore over ***1.05 billion*** to his principal supporter, … opted to do just that, voting in State Farm's favor in all parts of the Court's decision." (A00427 (emphasis in original).)

27.  In the 2011 Petition, Plaintiffs claimed that Justice Karmeier's participation

---

[5]  Al Adomite worked part-time for the ICJL and part-time for its political action committee JUSTPAC.  (A00962-00966 (Adomite Dep. Tr.).)

presumptively affected the Court's deliberations and conclusions in *Avery*: "[I]t must be assumed that the presence and participation of Justice Karmeier had, or could have had, from an objective observer's viewpoint, some influence on the panel.  Put another way, where in a deliberation it is discovered that for extensive reasons that an individual should not have participated, it is presumed that such person had an influence on the entire outcome."  (A00450.)

28.   In support of their Petition, Plaintiffs submitted the affidavits of Daniel Reece, a retired FBI agent, who Plaintiffs stated "accumulated" new evidence "through person-to-person interviews" (A00423-00424), and Douglas Wojcieszak, who Plaintiffs identify as "a former Murnane associate and Illinois tort reform-insider."  (A00427.)

29.   On September 19, 2011, State Farm filed a Response in Opposition to Plaintiffs' Petition to Recall Mandate, arguing, among other things, that the Illinois Supreme Court had already rejected Plaintiffs' claims and their supposedly new evidence was a recycled version of prior submissions.  (A01073-01082.)

30.   State Farm also filed motions to strike the Reece and Wojcieszak affidavits submitted by Plaintiffs in support of the 2011 Petition.  State Farm argued, *inter alia*, that the Reece Affidavit was "comprised almost entirely of hearsay, inappropriate statements of Reece's lay opinions and conclusions, and other matters entirely lacking in foundation" and that "Reece ha[d] no personal knowledge whatsoever of the matters addressed in his Affidavit."  (A00973 (9/19/2011 Motion to Strike Aff. of Reece.)  State Farm also argued, *inter alia*, that Wojcieszak's affidavit "repeatedly refer[red] to inadmissible hearsay statements" and "attempt[ed] to introduce numerous lay opinions and inferences concerning matters that lie well outside his (very limited) personal knowledge of the

matters raised by the Petition," and "relie[d] primarily on his inadmissible speculations regarding what '[other] individuals would testify to if sworn.'"  (A01015 (9/19/2011 Motion to Strike Aff. of Wojcieszak) (quoting A00614 (7/30/2011 Wojcieszak Aff.) ¶ 6).)  Plaintiffs filed responses to State Farm's motions to strike.  (A00990-01012; A01031-01051.)

31.  On November 17, 2011, the Illinois Supreme Court unanimously denied Plaintiffs' Petition to Recall Mandate, without Justice Karmeier's participation in the decision. (A01864-01865.)  The Illinois Supreme Court also granted State Farm's motions to strike the Reece and Wojcieszak Affidavits.  (A01866-01867.)

32.  In a document produced by Plaintiffs' investigators in discovery in this case, Plaintiffs' counsel state that they did not file a petition for writ of certiorari to the United States Supreme Court from the denial of their Petition to Recall the Mandate out of concern that "it might have a negative impact on our RICO lawsuit."  (A01868-01869.)

### C.   The Proceedings in *Hale*

33.  On May 29, 2012, Plaintiffs filed their original Complaint [2], later amended [289], alleging that State Farm violated RICO by supposedly defrauding the Illinois Supreme Court through two allegedly mailed briefs: (1) State Farm's January 31, 2005 Opposition to Plaintiffs' Conditional Motion for Non-Participation; and (2) State Farm's September 19, 2011 Response in Opposition to Recall Mandate and Vacate August 18, 2005 Judgment. (*See* [2] ¶¶ 13, 40, 51-54, 94, 100-08; [289] ¶¶ 93, 99, 100-07; *see also* A00184-00312 (State Farm's January 31, 2005 Opposition to Plaintiffs' Conditional Motion for Non-Participation); A01052-01863 (State Farm's September 19, 2011 Response in Opposition to Petition to Recall Mandate and Vacate August 18, 2005 Judgment).)

34. Plaintiffs' First Amended Complaint asserts injury in the loss of the $1.05 billion *Avery* judgment, which was unanimously reversed by the Illinois Supreme Court.  ([289] at ¶¶ 2, 14, 40, 97, 131.) Plaintiffs seek to recover "the amount of the lost judgment, $1,056,636,180, as well as any interest available under applicable law, with the total amount trebled per the RICO statute.  (A01871-01873.)   In their briefing and sworn interrogatory answers, Plaintiffs have also asserted that they sustained an injury or injuries "en route" to the Illinois Supreme Court's merits decision in *Avery*, based upon the contention that State Farm violated their due process rights by securing Justice Karmeier's participation in *Avery* and thus creating a "tainted tribunal."  ([67] at 16; *see also* Pls. Consol. Resp. in Opp. to Motions to Dismiss of Appearing Defs. at 11 [50]; Pls. Resp. in Opp. to Mot. to Alter or Amend at 10 [87]; A01871-01873 (Plaintiffs' Amended Responses to State Farm's First Set of Interrogatories).)

35. On March 28, 2013, the Court denied State Farm's motion to dismiss, which raised *Rooker-Feldman*, *res judicata*, collateral estoppel, and other issues.  [67]  The Court's denial of State Farm's *Rooker-Feldman*, *res judicata*, collateral estoppel arguments was limited to that "stage of the pleadings." (*Id.* at 15, 20.)

36. In discovery, State Farm served an interrogatory requiring Plaintiffs to state the factual basis for their allegation that "Justice 'Karmeier knew the sources of his contributions,' and specifically whether and how Justice Karmeier knew that State Farm was allegedly the source for each contribution" identified by Plaintiffs.  (A01876); *see also* [289] at ¶¶ 77-89.  Plaintiffs' response was that they would rely on the testimony of Justice Karmeier and Al Adomite, while also stating that "Plaintiffs need not show that Justice Karmeier knew the source of his donations to prove their claims."  (A01876-01877.)  Plaintiffs also

referred to an email that "identifies two sources of separate $5,000 contributions (Illinois State Medical Society and JUSTPAC)," which Plaintiffs described as "part of a 'thread' of emails that includes an email from Justice Karmeier suggesting a way to hide attorney contributions from the public."  (*Id.*)  That thread of emails does not reference State Farm.  (A00661.)

37.     In his deposition, Justice Karmeier testified unequivocally that (aside from Plaintiffs' assertions in their recusal motions) he did not know the sources of his contributions, did not have any knowledge that anyone from State Farm or related to State Farm supported his campaign, and did not know that State Farm or anyone related to State Farm had contributed to his campaign whether directly or indirectly.  (A01908-01910 (J. Karmeier Dep. Tr.).)  Justice Karmeier also testified that he had no memory of ever meeting Defendant William Shepherd, who Plaintiffs have claimed was a "central figure" in his campaign (*supra* at 12, ¶ 24), and that Mr. Shepherd never served on his campaign committee or campaign finance committee.  (A01911-01912 (J. Karmeier Dep. Tr.)

38.     In his deposition, Al Adomite testified that he did not have any knowledge of Justice Karmeier knowing anything about the sources of his contributions and that he himself had no knowledge of State Farm providing any support to Justice Karmeier.  (A00967-00968 (Adomite Dep. Tr.)

39.     On September 16, 2016, over State Farm's objections, the Court certified the same class that the Illinois Supreme Court had decertified in *Avery*: "All persons in the United States, except those residing in Arkansas and Tennessee, who, between July 28, 1987, and February 24, 1998, (1) were insured by a vehicle casualty insurance policy issued by Defendant State Farm and (2) made a claim for vehicle repairs pursuant to their policy

and had non-factory authorized and/or non-OEM (Original Equipment Manufacturer) 'crash parts' installed on their vehicles or else received monetary compensation determined in relation to the cost of such parts."[6]   [556] at 28.   In its class certification Order, the Court stated that it would not address State Farm's *Rooker-Feldman, res judicata*, or collateral estoppel arguments until summary judgment.   [556] at 2 n. 2.

## ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD

"Summary judgment is warranted when the movant shows no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Cowell v. Auction Broad. Co.*, 2017 WL 76925, at *1 (S.D. Ill. Jan. 9, 2017) (Herndon, J.) (citing Fed. R. Civ. P. 56(a)).   A party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden is satisfied if the movant can point to an absence of evidence to support an essential element of the nonmoving party's claim.   *Id.* at 325; *accord Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Once the moving party meets its burden, the nonmoving party "may not simply rest upon the pleadings but must submit evidentiary materials that 'set forth facts showing that there is a genuine issue for trial.'"   *Harvey v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th

---

[6]   On February 23, 2017, Plaintiffs moved to "clarify" the class definition, asserting that the words "or specified for" should be added to include persons who "'had non-factory authorized and/or non-OEM (Original Equipment Manufacturer) "crash parts" installed on *or specified for* their vehicles or else received monetary compensation determined in relation to the cost of such parts,'" which Plaintiffs claimed would "align" the class definition "with those who possessed a property interest in the *Avery* judgment."   [587] at 1-3 (quoting [438] at 1 n.1).   On March 6, 2017, over State Farm's objections, the Court granted Plaintiffs' motion.   [596].

Cir. 2008) (citation omitted).  The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Illinois Extension Pipeline Co. v. Summann*, 2016 WL 630022, at *3 (S.D. Feb. 17, 2016) (Herndon, J.) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "'[I]nstead, the nonmovant must present definite, competent evidence in rebuttal,' … and 'must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial.'" *Henson v. Dep't of Health & Human Servs.*, 2017 WL 1090815, at *2 (S.D. Ill. Mar. 23, 2017) (Herndon, J.) (citations omitted).  "An issue of material fact exists only when the fact at issue is outcome determinative; '[i]rrelevant or unnecessary factual disputes do not preclude summary judgment.'" *Illinois Extension Pipeline Co.*, 2016 WL 630022, at *3 (quoting *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992)).

In evaluating a motion for summary judgment, "[a]ll facts and reasonable justifiable inferences are construed in the nonmovant's favor." *Cowell*, 2017 WL 76925, at *1. However, the Court will not draw inferences "'supported by only speculation or conjecture,'" *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (citation omitted), *cert. denied*, 137 S. Ct. 335 (2016), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892-93 (7th Cir. 2003).

## II.   PLAINTIFFS' CLAIMS ARE BARRED UNDER *ROOKER-FELDMAN* AS A MATTER OF LAW

Under *Rooker-Feldman*, "lower federal courts have no jurisdiction 'over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'" *Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1996).  Plaintiffs bear "the burden of bringing forward 'competent proof' of the existence of subject matter jurisdiction"  *S.C. Johnson & Son, Inc. v. Buske*, 2009 WL

3010833, at *2 (S.D. Ill. Sept. 17, 2009); *see also Fogarty St., Ltd. v. Mortg. Elec. Registration Sys.*, 2012 WL 5831163, at *2 (N.D. Ind. Nov. 14, 2012) (plaintiff "bears the burden of demonstrating subject matter jurisdiction by competent proof;" dismissing claims under *Rooker-Feldman* for lack of jurisdiction). A plaintiff's "recitation" of his or her allegations "doesn't satisfy [the] burden of demonstrating jurisdiction." *Fogarty St.*, 2012 WL 5831163, at *3.

As shown below, *Rooker-Feldman* bars Plaintiffs' claims because the Illinois Supreme Court's decisions are the source of Plaintiffs' alleged injuries. There is one and only one reason Plaintiffs have brought this RICO case: they had a $1.05 billion judgment and the Illinois Supreme Court took it away. As made clear in a series of recent Seventh Circuit decisions, Plaintiffs cannot escape *Rooker-Feldman* by contending that State Farm procured the judgment in *Avery* by fraud. Plaintiffs had a reasonable opportunity to fully litigate in the Illinois Supreme Court all the due process issues they raise here regarding Justice Karmeier's participation in *Avery* and cannot evade *Rooker-Feldman* by the mere expedient of repackaging those issues as RICO claims. In addition, Plaintiffs cannot establish facts showing that this case is within the exception to *Rooker-Feldman* set forth in *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995).

### A.    Plaintiffs' Alleged Injuries Were Caused by State-Court Judgments

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court held that *Rooker-Feldman* deprives the lower federal courts of subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 281 (2005). Where a plaintiff's alleged injury stems from a state-court judgment, the appellate jurisdiction to reverse or modify that judgment is lodged "exclusively in [the United States Supreme Court]." *Id.*; *see also Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998) ("Litigants who believe that a state judicial

19

proceeding has violated their constitutional rights must appeal that decision through their state courts and then to the Supreme Court.").

Thus, as the Seventh Circuit has long held, under *Rooker-Feldman*, the "pivotal question … is 'whether the injury alleged by the federal plaintiff result[s] from the state court judgment itself or is distinct from that judgment.'"  *Lewis v. Anderson*, 308 F.3d 768, 772 (7th Cir. 2002) (citation omitted).  This core principle of federalism is alive and robust.  In recent years, the Seventh Circuit has repeatedly made clear that, if a plaintiff's alleged injury was caused by the decision of a state court, the federal courts (except the United States Supreme Court) have no jurisdiction over the case, even if the state-court judgments were alleged to have been procured by misrepresentations.  *See, e.g.*, *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017) (question under *Rooker-Feldman* is "whether the federal plaintiff is alleging that his injury was caused by the state-court judgment"); *see also Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014) ("The *Rooker-Feldman* doctrine applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court."); *Dookeran v. Cnty. of Cook, Ill.*, 719 F.3d 570, 575 (7th Cir. 2013) (*Rooker-Feldman* is concerned with "'situations in which the state court's decision is the source of the harm that the federal suit is designed to redress'") (citation omitted).

Here, Plaintiffs have identified their injuries as the loss of the $1.05 billion judgment in *Avery* and/or the deprivation of their right to an unbiased tribunal in the Illinois Supreme Court. *See supra* at 15, ¶ 34.  These purported injuries were directly caused by the Illinois Supreme Court's decisions and orders in *Avery*, including not only that Court's decision reversing the $1.05 billion judgment on the merits in *Avery*, but also that Court's rulings rejecting Plaintiffs' challenges to Justice Karmeier's participation in *Avery*.  Plain and simply, there can be no factual

dispute regarding the source of Plaintiffs' claimed injuries.  Neither the loss of the $1.05 billion judgment nor the purported unfair tribunal would have occurred without the Illinois Supreme Court's judgments and rulings.  *See Crestview Vill. Apartments v. U.S. Dep't of Housing & Urban Dev.*, 383 F.3d 552, 556-57 (7th Cir. 2004) (*Rooker-Feldman* barred federal action where the injury alleged was "complete" only after the state court entered its order).  Plaintiffs' unsupported contentions that their alleged injuries were "solely the result of [Defendants'] conduct," and "not … any action of the Illinois Supreme Court" ([50] at 2), are contrary to reality, given the nature of the injuries they claim, which would not have occurred absent the rulings of the Illinois Supreme Court.

Because Plaintiffs have not alleged any injury that is separate from or antecedent to the decisions of the Illinois Supreme Court, there is no subject matter jurisdiction under *Rooker-Feldman*.  As the Seventh Circuit opined in *Mains*, *Rooker-Feldman* applies when (as here) there is "'no way for the injury complained of by a plaintiff to be separated from a state court judgment.'"  *See Mains*, 852 F.3d at 675 (quoting *Sykes v. Cook Cnty. Cir. Ct. Probate Div.*, 837 F.3d 736, 742 (7th Cir. 2016)).  Plaintiffs' loss of the $1.05 billion judgment in *Avery* occurred when the Illinois Supreme Court issued its decision reversing that judgment.  The purported "tainting" of the tribunal by Justice Karmeier's participation in the *Avery* merits decision occurred through the Illinois Supreme Court's denial of Plaintiffs' motions for Justice Karmeier's recusal and Plaintiffs' petitions for rehearing and recall of the mandate.  All of these motions and petitions were based on the supposed impropriety, constitutional and otherwise, of Justice Karmeier's participation in *Avery*, and the Illinois Supreme Court's orders rejecting Plaintiffs' motions on that issue were the cause of Justice Karmeier's participation and the source of the allegedly "tainted tribunal" of which Plaintiffs complain in this federal lawsuit.  Plaintiffs'

purported injuries cannot be separated from these orders and judgments.

Moreover, although Plaintiffs have claimed that they do not attack the merits of the decision in *Avery* and are not seeking to reverse the principles of law announced in that decision, their lawsuit is aimed at undoing the Illinois Supreme Court's judgment that they were not entitled to the $1.05 billion damages affirmed by the Illinois Appellate Court.   That determination is the Court's judgment.   The loss of that $1.05 billion judgment was "executed through [the Illinois Supreme Court's] order," and "there is no conceivable way to redress the wrong without overturning the order of [the] state court," an "outcome" that "*Rooker-Feldman* does not permit." *Sykes*, 837 F.3d at 743.   Plaintiffs' "request for damages" here in the exact amount that Plaintiffs lost in the Illinois Supreme Court is "'merely another way to contest … the Illinois Supreme Court's decision.'" *Garry v. Geils*, 82 F.3d 1362, 1370 (7th Cir. 1996); *see also Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 534 (7th Cir. 2004) (suit requesting "recovery of [plaintiff's] home" or "compensatory damages in the amount of the value of [plaintiff's] home" was "tantamount to a request to vacate the state court's judgment of foreclosure"). Indeed, Plaintiffs' RICO theory rests on their (erroneous) contention that Plaintiffs and the class members had a "property interest" in the $1.05 billion judgment that was reversed in *Avery*. (*See, e.g.*, Pls. Motion for Class Certification at 13, 17 [438]; Pls. Reply Mem. in Support of Their Motion for Class Certification at 2-3 [492]; [289] ¶ 43 ("Defendants defrauded a Court and deprived the Class of its property").)   Plaintiffs' RICO theory demonstrates that their federal RICO claim is aimed not at remedying an injury that is separate and independent from the Illinois Supreme Court's decision in *Avery*, but at undoing that decision and the purported loss of "property" that resulted from that decision.   Plaintiffs' claims fall squarely within the ambit of *Rooker-Feldman*.

**B.**    **Plaintiffs Cannot Evade *Rooker-Feldman* by Claiming that the Illinois Supreme Court's Decisions Were Obtained by Fraud**

According to Plaintiffs, *Rooker-Feldman* does not apply "where the federal plaintiff claims that the state judgment was procured by fraud, misrepresentation, or other improper means, as is the case here." (Pls.' Resp. in Opp. to Mot. to Alter or Amend Mar. 28, 2013 Order at 10 [87].)   Plaintiffs contend that because the state court judgments were obtained by Defendants' fraud, any purported injuries resulting from that judgment "were not caused by the state court, but by these Defendants."  (Pls. Consolidated Resp. in Opp. to Mots. to Dismiss of Appearing Defendants at 8 [50].)

The Seventh Circuit, however, has repeatedly rejected virtually identical contentions by plaintiffs attempting to avoid *Rooker-Feldman*.  Under the Seventh Circuit rule, where (as here) a federal claim is based upon allegations that the defendant procured a judgment in a state court by means of misrepresentations to the state court, the source of the injury is the state court's judgment and *Rooker-Feldman* bars the federal claim.  Thus, in *Mains*, the Seventh Circuit held that *Rooker-Feldman* precludes federal courts from adjudicating claims "that the state court's [] judgment was in error because it rested on a fraud perpetrated by the defendants."  852 F.3d at 676.  As the Seventh Circuit stated, "delv[ing] into the question whether fraud tainted the state court's judgment … would amount to an exercise of *de facto* appellate jurisdiction," which is "precisely what *Rooker-Feldman* prohibits."  *Id.*  The "proper place to remedy any potential fraud in the state court's judgment is the state court," and the federal courts "must accept the state court's resolution of the issue."  *Id.* at 678.  *Mains* is directly applicable here.

Similarly, in *Dawaji v. Askar*, 618 F. App'x 858 (7th Cir. 2015), the court affirmed dismissal pursuant to *Rooker-Feldman*, rejecting the plaintiff's argument "that her suit focused not on the state-court judgment but on [defendants'] fraudulent criminal-contempt petition,

which they used to force her into the unfavorable financial settlement that the state court approved." *Id.* at 859.  The Seventh Circuit stated: "But if a federal plaintiff alleges that a fraud produced an adverse state-court decision, then the judicial decision is the source of the injury for *Rooker-Feldman* purposes."  *Id.*; *see also Iqbal v. Patel*, 780 F.3d  728, 730 (7th Cir. 2015) ("fraud (no matter how described) does not permit a federal district court to set aside a state court's judgment in a civil suit"); *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014) (when false statements to a state court produce an adverse decision, "the state court's judgment is the source of the injury of which plaintiffs complain in federal court" and *Rooker-Feldman* applies); *Coley v. Abell*, --- F. App'x ----, 2017 WL 1166874, at *2 (7th Cir. Mar. 29, 2017) (*Rooker-Feldman* barred a plaintiff's claims that state child services employees "lied about or omitted facts in court to obtain [a] removal order" and "thereby denied her due process").

Under this well-established binding case law, *Rooker-Feldman* bars Plaintiffs' RICO claim.  Plaintiffs' core allegation in support of their RICO claim is that State Farm obtained the reversal of the judgment in *Avery* by misrepresenting its support for Justice Karmeier's judicial campaign in briefs to the Illinois Supreme Court.  *See, e.g.*, [289] ¶ 7 (alleging that State Farm's response to their 2005 disqualification motion in *Avery* "grossly misrepresent[ed] the magnitude of State Farm's financial support (and the degree of participation by its executives, surrogates, lawyers and employees) of Karmeier's campaign"); *id.* ¶ 13 (alleging in its 2005 brief State Farm engaged in "a continuing concealment" of its support for Justice Karmeier "to permit Karmeier to participate in the deliberations and cast his vote to overturn the judgment in 2005" and in its 2011 brief "with[e]ld[] information from the Illinois Supreme Court that would have conceivably led it to vacate the decision in 2011"); ¶ 130 (alleging a "scheme" to "support and elect Karmeier to the Illinois Supreme Court and conceal that support to insure Karmeier participated in the

*Avery* decision") (emphasis omitted); ¶ 131 (alleging "Defendants' conduct of the Enterprise was designed to, and succeeded in, defrauding the Illinois Supreme Court and in ultimately depriving Plaintiffs and the Class of the individual and aggregate benefits of the $1.05 billion judgment").[7]

In short, Plaintiffs' RICO claims are based on allegations that State Farm procured the Illinois Supreme Court's judgment in *Avery* by fraudulent statements to that Court.  As such, under well-established Seventh Circuit law, the Illinois Supreme Court's judgment is the source of Plaintiffs' injury, and Plaintiffs' claims are barred under the *Rooker-Feldman* doctrine.

### C.  Plaintiffs' Claims Impermissibly Seek Review of the Illinois Supreme Court's Decisions and Orders on Justice Karmeier's Participation in the *Avery* Decision

Plaintiffs have contended that they allege "***independent*** injuries and violations, separate from the *Avery* judgment itself."  (Pls. Consol. Resp. in Opp. to Motions to Dismiss of Appearing Defs. at 9 [50] (Plaintiffs' emphasis).)  That purported "independent" injury was "the denial of [Plaintiffs'] constitutional rights and the related injury" (*id.* at 11), through the supposed tainting of the tribunal by Justice Karmeier's participation.[8]  That purported injury is not separate and independent from the Illinois Supreme Court's decisions rejecting Plaintiffs' challenges to Justice Karmeier's participation in *Avery*.  Indeed, Plaintiffs admit that the same due process violations that they assert in this case were raised in their 2005 submissions and their 2011 petition.  *See supra* at 7-8, ¶ 13.

*Rooker-Feldman* not only protects the Illinois Supreme Court's merits decision in *Avery* from re-litigation in the federal courts, but also protects the Illinois Supreme Court's rulings and judgments on the issue of Justice Karmeier's participation.  In contrast to *Dawaji* and the other

---

[7]  *See also* [289] ¶¶ 20, 39(a),(b), 99, 100-08.

[8]  As discussed above, RICO does not provide a remedy for a denial of constitutional rights, but rather requires an injury to business or property directly caused by the RICO violation.  *See supra* at 2 n.2.

cases cited above, which held that *Rooker-Feldman* barred claims where a federal plaintiff asserted that the defendant's fraud had resulted in an adverse state court judgment, Plaintiffs here actually litigated in state court the same issues of alleged fraud on the Illinois Supreme Court that they now attempt to relitigate in this federal court in the guise of RICO claims. *Rooker-Feldman* bars that relitigation of those issues. *See, e.g.*, *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859-860 (9th Cir. 2008) (*Rooker-Feldman* barred claim in federal court that defendants in state-court litigation obtained default judgment by "extrinsic fraud" because plaintiffs had already litigated same alleged fraud in state-court action to vacate the default judgment); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 899-900 (9th Cir. 2003) (*Rooker-Feldman* barred 42 U.S.C. § 1983 claim based on allegation that judge on state-court appellate panel was biased because plaintiff had sought a writ of mandate from the California Supreme Court based on same allegations).

As the Seventh Circuit stated in *Mains*, the "proper place to remedy any potential fraud in the state court's judgment is the state court." *Mains*, 852 F.3d at 678. Where, as here, a plaintiff has in fact asked the state court to remedy a defendant's alleged fraud in procuring a judgment and been denied, the federal courts "*must accept the state court's resolution of the issue.*" *Id.* (emphasis added). As discussed above (*see supra* at 7-10), in 2005 Plaintiffs twice asked the Illinois Supreme Court to disqualify Justice Karmeier from participating in *Avery* and, after the decision in *Avery*, petitioned for rehearing, asking the Illinois Supreme Court to vacate its judgment on grounds virtually identical to those Plaintiffs urge here. Plaintiffs' motions and their petition for rehearing were denied by the Illinois Supreme Court.

In 2011, Plaintiffs again asked the Illinois Supreme Court to vacate its judgment in *Avery* on the same grounds, raising the same due process issues and making the same factual allegations as Plaintiffs pursue in this case. *See supra* at 11-14. Plaintiffs alleged that Justice

Karmeier's "participation and vote to reverse the *$1.05 billion* judgment deprived Petitioners of their due process rights" (Petition to Recall Mandate and Vacate August 18, 2005 Judgment (A00423)) and that "State Farm deliberately lied to and misled this Court, and concealed information from this Court in 2005 in an effort to conceal its extraordinary support of Justice Karmeier's campaign and to thwart Justice Karmeier's disqualification." A00424. The Illinois Supreme Court denied their petition. A01865.

The Illinois Supreme Court's decisions on Plaintiffs' motions to recuse Justice Karmeier and/or to vacate its judgment in *Avery* because of Justice Karmeier's participation are protected by *Rooker-Feldman*. As the Seventh Circuit has held, judgments for purposes of *Rooker-Feldman* include procedural rulings by a state court. Thus, in *Harold v. Steel*, the Seventh Circuit rejected the argument that *Rooker-Feldman* does not apply to procedural rulings, stating: "This line of argument is embarrassed by the fact that *Rooker* itself arose from a contention that the state court (at the adverse litigant's instigation) had used constitutionally forbidden procedures to reach its judgment." 773 F.3d 884, 887 (7th Cir. 2014). Thus, "[u]nless *Rooker* were to be overruled, there could not be a 'procedural exception' to the *Rooker-Feldman* doctrine." *Id.*

Moreover, the Plaintiffs' 2011 Petition was a proceeding for post-judgment relief under 735 ILCS 5/2-1401. The Seventh Circuit has specifically held that a judgment in such a proceeding is a judgment for purposes of *Rooker-Feldman*. *See Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007); *cf. also Ellison v. Brock*, 122 F. App'x 519, 520 (1st Cir. 2004) (*Rooker-Feldman* barred jurisdiction where federal claim was based on New Hampshire Supreme Court's denials of plaintiffs' motions for relief from judgment).

Likewise, the Courts of Appeals have consistently held that the federal courts do not have jurisdiction under *Rooker-Feldman* to review rulings by state courts on issues of judicial recusal

and disqualification.  For example, in *Howell v. Supreme Court of Texas*, before bringing suit in federal court, the plaintiff (like Plaintiffs here) had already raised in state court a due process challenge to the participation of certain justices and that challenge had been decided against him.  *See* 885 F.2d 308, 312 (5th Cir. 1989).  The Fifth Circuit held that *Rooker-Feldman* barred a new constitutional challenge in federal court because "[t]he due process issue was explicit in [the plaintiff's] motion to recuse and was necessarily rejected by the justices in denying his motion."  *Id.*  In *Smith v. Bender*, 350 F. App'x 190, 193 (10th Cir. 2009), the Tenth Circuit held that "the *Rooker-Feldman* doctrine bars [the plaintiff] from relitigating the refusal of the Justices of the Colorado Supreme Court to recuse from his appeal" in an earlier litigation.  The Tenth Circuit stated: "Because the recusal issue was inextricably intertwined with the state-court judgment, [plaintiff's] only available avenue for relief was to seek certiorari review in the United States Supreme Court."  *Id.*  Like Plaintiffs here, Mr. Smith had sought "certiorari review of the recusal issue," and the "Supreme Court denied his certiorari petition."  *Id.* at 193-94.

The First, Fourth, Sixth, Ninth and Eleventh Circuits have also applied *Rooker-Feldman* to bar relitigation in federal court of denials of motions to recuse or disqualify state court judges.  *See Ellison*, 122 F. App'x at 520 (*Rooker-Feldman* barred jurisdiction where the "premise of plaintiff's damage claim is that the New Hampshire Supreme Court was incorrect in denying plaintiff's various motions for relief from judgment based on the alleged disqualification of [state supreme court justice]"); *Dababnah v. Burnside*, 2000 U.S. App. LEXIS 11342, at *5 (4th Cir. May 12, 2000) (*Rooker-Feldman* barred review of state court decisions on disqualification of state court judge); *Fieger v. Ferry*, 471 F.3d 637, 644 (6th Cir. 2006) (*Rooker-Feldman* barred claim that state court justices' refusal to recuse themselves in past cases violated due process); *Bianchi*, 334 F.3d at 899-900 (*Rooker-Feldman* barred relitigation of state court judge's failure

to recuse himself); *Wilson v. Selma Water Works & Sewer Bd.*, 522 F. App'x 634, 635 (11th Cir. 2013) (per curiam) (*Rooker-Feldman* barred claims that plaintiff's due process rights were violated by state-court trial judge's failure to recuse himself.).

Accordingly, Plaintiffs' purported due process injury is not separate and independent from the judgments of the Illinois Supreme Court and does not provide a basis for jurisdiction under *Rooker-Feldman*. Plaintiffs' lawsuit would impermissibly require that this Court review the Illinois Supreme Court's rulings on Plaintiffs' motions to recuse Justice Karmeier and to reconsider or vacate its decision in *Avery*, all of which were based on the same contentions regarding Justice Karmeier's participation. Plaintiffs' attempt to raise these issues via their RICO claims in this case can "'succeed[] only to the extent that the state court wrongly decided the issues before it,'" and jurisdiction is lacking under *Rooker*-Feldman. *Brackman v. Indiana*, 93 F. App'x 989 (7th Cir. 2004) (quoting *Lewis v. Anderson*, 308 F.3d 768, 772 (7th Cir. 2002)).

### D. Plaintiffs Had a Reasonable Opportunity in the Illinois Supreme Court to Litigate the Issues Regarding Justice Karmeier's Participation in *Avery*

Plaintiffs had a reasonable opportunity to litigate in the Illinois Supreme Court the issues they now raise via their RICO claims regarding Justice Karmeier's participation in *Avery* and State Farm's supposed misrepresentations – and in fact did so on multiple occasions.

To show for purposes of *Rooker-Feldman* that they had no reasonable opportunity to litigate in state court the issues of a "tainted" tribunal and the supposed deprivation of due process that they raise in their RICO claims, Plaintiffs must demonstrate that "state court rules or procedures, or difficulties caused by factors 'independent of the actions of the opposing parties' prevented the issues from being raised in the state court proceeding that preceded [the federal] action." *Holt v. Lake Cnty. Bd. Of Comm'rs*, 408 F.3d 335, 336 n.1 (7th Cir. 2005) (citation omitted); *see also Taylor*, 374 F.3d at 534-35; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 557-

58 (7th Cir. 1999). "[I]f the plaintiff could have raised the issue in state court proceedings, the claim is barred under the *Rooker-Feldman* doctrine." *Taylor*, 374 F.3d at 533.

A reasonable opportunity to raise the issue in state court is lacking in a proceeding that, by statute, addresses a single limited issue. *See Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002) (federal plaintiff "did not have a reasonable opportunity to raise her constitutional claims in the state court child neglect proceedings," which by statute at the hearing stage "allowed the court to 'consider only the question whether the minor is abused, neglected, delinquent, in need of supervision, or dependent'" and did not provide plaintiff "with a mechanism to present a claim … for [the] alleged violations of her constitutional rights") (citation omitted); *Long*, 182 F.3d at 559-60 (*Rooker-Feldman* did not apply because state court's forcible entry and detainer proceedings were so summary that they did not give the plaintiff a reasonable opportunity to contest an allegation of overdue rent).

No state court rule or procedures or other independent factors prevented Plaintiffs here from raising in the Illinois Supreme Court all issues relevant to Justice Karmeier's participation in *Avery*, and Plaintiffs cannot provide any facts or legal authorities to back up their contention that they lacked a "reasonable opportunity" to litigate those issues in the Illinois Supreme Court, either in 2005 or in 2011. (Pls.' Consolidated Resp. in Opp. to Motions to Dismiss of Appearing Defs. at 13 [50]). Plaintiffs previously argued that the Illinois Supreme Court "Rules permitted Justice Karmeier alone to decide the issue of his recusal and precluded the full Court from interfering in that decision" such that "Justice Karmeier's failure to step aside prevented Plaintiffs from raising their claims before the full Court, and thus, was an independent factor that prevented Plaintiffs from pursuing their arguments." *Id.* Plaintiffs neglected to mention that, after the Illinois Supreme Court (without Justice Karmeier's participation) denied their initial

motion for Justice Karmeier's non-participation, Plaintiffs themselves urged that Court to have Justice Karmeier alone decide whether he would participate.  *See supra* at 9, ¶ 17.

Furthermore, Justice Karmeier did not "alone decide" the issues and merits of Plaintiffs' 2005 motion for rehearing or their 2011 petition.  Indeed, Justice Karmeier did not participate in the Illinois Supreme Court's decision denying Plaintiffs' 2011 petition, and neither the Supreme Court rules nor Justice Karmeier prevented Plaintiffs from pursuing their arguments in that petition.  Thus, even if Plaintiffs' arguments could be accepted with regard to their initial 2005 motion for Justice Karmeier's recusal (a doubtful proposition, given that it was Plaintiffs who requested the Court to have Justice Karmeier decide the issue), those arguments certainly do not and cannot show that Plaintiffs lacked a reasonable opportunity to litigate their later due process challenges to Justice Karmeier's participation – particularly their 2011 due process challenge, which was decided without Justice Karmeier's participation.  Further, under 735 ILCS 5/2-1401 (the Illinois post-judgment relief statute pursuant to which Plaintiffs brought their 2011 Petition), Plaintiffs were able to submit new evidence and affidavits in support of their 2011 petition.  *See Warren Cnty. Soil & Water Conservation Dist. v. Walters*, 32 N.E.3d 1099, 1105 (Ill. 2015) ("A proceeding under section 2-1401 … must be supported by affidavit or other appropriate showing for matters not in the record.").  Indeed, "'a section 2-1401 petition is ordinarily used to bring facts to the attention of the [] court which, if known at the time of judgment, would have precluded its entry.'"  *Id.* (citation omitted).  As noted above (*see supra* at 14, ¶ 31), the Illinois Supreme Court granted State Farm's motions to strike the affidavits submitted by Plaintiffs in support of their 2011 Petition.  Relitigation of that evidentiary ruling is also barred by *Rooker-Feldman.  See, e.g., In re Yates*, 274 F. App'x 312, 318 (4th Cir. 2008) (review of state court's

evidentiary ruling was "foreclosed by the *Rooker-Feldman* doctrine").[9]

The fact that the Illinois Supreme Court's orders denying Plaintiffs' 2011 petition and Plaintiffs' earlier motions challenging Justice Karmeier's participation in *Avery* were issued without opinion does not prevent the application of *Rooker-Feldman*. "A federal district court does not serve as an auxiliary state supreme court to hear … arguments rejected without written opinion by a state supreme court." *White v. Judicial Inquiry & Review Bd. of Pa.*, 744 F. Supp. 658, 672 n.8 (E.D. Pa. 1990) (dismissing claims for lack of jurisdiction under *Rooker-Feldman*). *See Bianchi*, 334 F.3d at 900 ("Because we cannot grant the relief Bianchi seeks without 'undoing' the decision of the state court, it is immaterial that the state courts did not specify the grounds on which they denied Bianchi's claims."); *id.* at 901 ("[T]he *Rooker-Feldman* doctrine is not limited to claims that were actually decided by the state courts, but rather it precludes review of all 'state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." (citation omitted)); *Reusser*, 525 F.3d at 855, 860 (*Rooker-Feldman* barred relitigation in federal court of claims based on state court's order denying plaintiffs' motion to vacate a default judgment; rejecting plaintiffs' arguments that *Rooker-Feldman* did not apply because the state court order (i) did not specify the grounds for the denial and (ii) was allegedly obtained by defendant's fraud).

E.    **The Seventh Circuit's Decision in *Nesses v. Shepard* Does Not Provide Plaintiffs With a Way Around *Rooker-Feldman***

Plaintiffs have erroneously contended that *Rooker-Feldman* does not apply in this case

---

[9]  *See also Towle v. N.H. Dep't of Health & Human Servs.*, 2007 WL 2682261, at *5 (D.N.H. Sept. 7 2007) (*Rooker-Feldman* precluded the federal court from "delv[ing] into the propriety of [state-court] evidentiary rulings" and the "credibility of the witnesses and evidence"); *Thompson v. Gutierrez*, 2017 WL 1379832, at *4 (M.D. Fla. Mar. 27, 2017) ("Plaintiff is asking this Court to overturn the admissibility ruling of the state trial court, which runs afoul of the *Rooker-Feldman* doctrine."), *adopted*, 2017 WL 1365647 (M.D. Fla. Apr. 14, 2017).

under the Seventh Circuit's decisions in *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), and *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006).  As the Seventh Circuit explained in *Loubser*, *Nesses* stated that "[t]he claim that a defendant in a civil rights suit 'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment' is not barred by … *Rooker-Feldman*."  *Loubser*, 440 F.3d at 441 (quoting *Nesses*, 68 F.3d at 1005)).  *Nesses* and *Loubser* apply only where there is actual judicial corruption, *i.e.*, "a conspiracy among the judge and state-court adversaries to corrupt the litigation process."  *Sheikhani v. Wells Fargo Bank*, 526 F. App'x 705, 706 (7th Cir. 2013); *see also Loubser*, 440 F.3d at 441-42 (plaintiff claimed conspiracy among state judges and lawyers); *Nesses*, 68 F.3d at 1004 (plaintiff claimed "a vast tentacular conspiracy among the lawyers and the judges"); *Davit v. Davit*, 173 F. App'x 515, 517 (7th Cir. 2006) (*Rooker-Feldman* does not apply where there are "claims of judicial corruption that went to the heart of the administration and resolution of [the state court] proceedings").

Plaintiffs' contention that this case is within the ambit of *Nesses* and *Loubser* fails as a matter of law because, first, *Nesses* and *Loubser* have no application to the Illinois Supreme Court's denial of their 2011 petition to vacate the *Avery* judgment.  Justice Karmeier did not participate in that decision, and Plaintiffs do not allege (and certainly cannot show) any "corruption" on the part of the Justices participating in that decision.  Second, Plaintiffs cannot carry their burden of establishing by competent evidence that Justice Karmeier was "corrupt" or that the *Avery* judicial proceedings in which he participated were corrupt.

The term "corruption" for purposes of *Nesses* and *Loubser* clearly does not include mere allegations that the defendants made fraudulent misrepresentations to the state court or procured a judgment by fraud. *See Sheikhani*, 526 F. App'x at 706 (plaintiff's allegations that in foreclosure action defendant "defrauded the state court into believing that [defendant] held the

mortgage" did not support jurisdiction based on *Nesses*).  Such allegations fall under the rule, oft-repeated by the Seventh Circuit, that "when false statements to a state court produce an adverse decision, 'the state court's judgment is the source of the injury of which plaintiffs complain in federal court,'" and *Rooker-Feldman* applies.  *Dawaji*, 618 F. App'x at 859 (quoting *Harold*, 773 F.3d at 885); *see also* Point II.B *supra*.

Clearly, the Illinois Supreme Court's 2011 decision does not fall within the ambit of *Nesses* and *Loubser*.  The Illinois Supreme Court denied Plaintiffs' 2011 petition without Justice Karmeier participating.  Plaintiffs have not alleged and cannot show that any of the Justices that decided their 2011 petition were "corrupted" or that the tribunal was "[]contaminated by politics," *see Nesses*, 68 F.3d at 1005, as required under *Nesses* and *Loubser*.[10]  Rather, Plaintiffs merely allege that State Farm made misrepresentations in its 2011 opposition brief.  As shown above, that is not a basis for applying *Nesses* and *Loubser*.  *See Sheikhani*, 526 F. App'x at 706 (plaintiff's allegations that defendant "defrauded the state court" did not support jurisdiction based on *Nesses*).  Moreover, the Illinois Supreme Court's decision satisfies all the other requirements for the application of *Rooker-Feldman*.  In their 2011 petition, Plaintiffs brought before the Illinois Supreme Court all their allegations of fraud in procurement of the *Avery* judgment and the purported constitutional impropriety of Justice Karmeier's participation in the *Avery*.  *See supra* at 11-14.  In 2011, the Illinois Supreme Court determined that its decision and judgment in *Avery* should stand.  Under *Rooker-Feldman*, the Illinois Supreme Court's decision on Plaintiffs' petition must be accepted by this Court, and Plaintiffs' federal lawsuit must be

---

[10]   Furthermore, under *Nesses*, to show harm from a purported violation of the right to an uncontaminated tribunal ("if it is a right"), Plaintiffs would have to show that the Illinois Supreme Court's decision in *Avery* was erroneous.  *Nesses*, 68 F.3d at 1005.  Plaintiffs have conceded, however, that they do not quarrel with the legal merits of the Illinois Supreme Court's decision in *Avery*.  ([610] at 7-8.)

dismissed for lack of jurisdiction.  *See Mains*,  852 F.3d at 678.[11]

Moreover, *Nesses* and *Loubser* are inapplicable for the further reason that Plaintiffs cannot establish with competent proof that Justice Karmeier was in any way engaged in judicial corruption.  Plaintiffs have *alleged* that Justice Karmeier was a participant in the alleged RICO enterprise and knew of the "sources of his contributions."  ([289] ¶¶ 29, 89.)  Plaintiffs have asserted that the factual basis for that claim would be provided by testimony from Justice Karmeier and Al Adomite.  *See supra* at 15, ¶ 36.  But the proof is not forthcoming.  Plaintiffs have *no* evidence that Justice Karmeier knew that any campaign contributions came from State Farm or anyone related to State Farm or that he knew of any State Farm support of his campaign.  To the contrary, Justice Karmeier's uncontroverted testimony is that he had no knowledge of campaign contributions or other support from or in any way related to State Farm.  *See supra* at 16, ¶ 37.  Likewise, Al Adomite testified at his deposition in this case that he had no knowledge that Justice Karmeier knew anything about the sources of his contributions and that Adomite himself had no knowledge of State Farm providing any support to Justice Karmeier's campaign. *See supra* at 16, ¶ 38.  Notably, Plaintiffs now contend that they do not need to show that Justice Karmeier knew anything about supposed State Farm contributions in order to prove their RICO claims.  *See supra* at 15-16, ¶ 36.  But Plaintiffs cannot prove that *Nesses* and *Loubser* provide jurisdiction in this case without proving that Justice Karmeier knew of the financial support Plaintiffs claim he received from State Farm and that his vote to reverse in *Avery* was corrupt. Plaintiffs cannot meet their burden to show jurisdiction pursuant to *Nesses* and *Loubser* in this case.  Accordingly, for the above reasons, Plaintiffs' claims are barred by *Rooker-Feldman*.

---

[11]  The same is true of the Illinois Supreme Court's denial in 2005 of Plaintiffs' initial motion for Justice Karmeier's nonparticipation, as Justice Karmeier did not take part in deciding that motion.  (The order denying that motion was later vacated.)

## III.   PLAINTIFFS' CLAIMS ARE BARRED BY *RES JUDICATA* AS A MATTER OF LAW

Even if *Rooker-Feldman* did not apply, Plaintiffs' claims would be barred by *res judicata*.  As this Court has recognized, in determining the extent to which a prior Illinois state court judgment bars the relitigation of claims or issues in federal court, the federal courts apply Illinois law.  *See* [67] at 17; *Carr v. Tilley*, 2010 WL 4781127, at *3 (S.D. Ill. Sept. 30, 2010) (Herndon, J.). Under Illinois law, *res judicata* applies where "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). *Res judicata* bars not only claims that were asserted in the prior action, but also all other claims that could have been asserted.  *See La Salle Nat'l Bank v. Cnty. Bd. of Sch. Trs.*, 337 N.E.2d 19, 22 (Ill. 1975).

Here, the record demonstrates that *res judicata* bars Plaintiffs' claims as a matter of law. The Illinois Supreme Court issued a final judgment on the merits, reversing the $1.05 billion judgment, and rejected Plaintiffs' repeated challenges to Justice Karmeier's participation in the judgment.  Plaintiffs allege that each Plaintiff here was a named plaintiff and class member in *Avery* ([289] ¶¶ 3, 45), and State Farm was the defendant. Moreover, Plaintiffs' 2011 Petition, brought pursuant to 735 ILCS 5/2-1401, "constitute[d] an independent and separate action from the original action" in *Avery* and permitted Plaintiffs to make an evidentiary showing (which they did). *See Warren Cnty.*, 32 N.E.3d at 1105.  Plaintiffs' 2011 Petition addressed the same purported "wrongs" that are at issue in this case regarding the defendants' purported support of Justice Karmeier's election campaign and the purported constitutional impropriety of Justice Karmeier's participation in *Avery*.  (A00421-00961; *see supra* at 11-14, ¶¶ 23-32.)

Under Illinois' "transactional test," there is identity of cause of action even if different

kinds or theories of relief are asserted, provided "both cases arise from the 'same transaction' and involve 'the same, or nearly the same[,] factual allegations.'" *Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 740 (7th Cir. 2006) (citation omitted); *see also City of Chicago v. Midland Smelting Co.*, 896 N.E.2d 364, 376 (Ill. App. Ct. 2008) (identity of cause of action exists if claims are based on "'a single group of operative facts'" (citation omitted)). Under this test, Plaintiffs' claims are the same as those previously adjudicated. *See Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 851 (Ill. 2001) (presenting "somewhat different evidence on what is essentially the same claim will not bar preclusion"). Thus, under whatever legal theory, Plaintiffs may not seek to reinstate the $1.05 billion judgment reversed by the Illinois Supreme Court or relitigate the issues of Justice Karmeier's participation and the defendants' purported fraud.

In considering State Farm's motion to dismiss, this Court declined to rule on *res judicata* and collateral estoppel "at this stage in the proceedings," stating that it was "unclear from the record before the Court what merits were reached regarding the issues contained in plaintiffs' *complaint* at bar and it is unclear whether plaintiffs had a full and fair opportunity to litigate those issues during the *Avery* proceedings." [67] at 20.  Now, on this summary judgment motion, the record facts reveal that Plaintiffs had a full and fair opportunity in state court to litigate these issues and did so.  The Seventh Circuit has held that the Illinois post-judgment relief statute provides a full and fair opportunity to litigate issues regarding the validity of a judgment. *See Walsh Constr. Co. v. Nat'l Union Fire Ins. Co.*, 153 F.3d 830, 833 (7th Cir. 1998).  The record establishes that in their 2011 petition for post-judgment relief, Plaintiffs raised in state court all the issues they now raise in federal court, including their purported "new" evidence regarding Justice Karmeier's campaign. *See supra* at 11-14.  Accordingly, the Illinois Supreme Court's

rejection of Plaintiffs' claims that the judgment in *Avery* was obtained by fraud is *res judicata*.

Moreover, *res judicata* does not require a written opinion or restrict the preclusive effect of a judgment to issues actually ruled on.  Rather, where the three elements of *res judicata* are met, it bars "'not only every matter that was actually determined in the first suit, *but also every matter that might have been raised and determined in that* suit.'"  *Ennenga v. Starns*, 677 F.3d 766, 777 (7th Cir. 2012).  Significantly, the state-court judgment at issue in *Ennenga* was simply a judgment dismissing the plaintiffs' case after the plaintiffs abandoned the suit.  *Id.* at 771, 776.  The Seventh Circuit looked to Illinois law in determining that "[t]his was a final judgment on the merits."  *Id.* at 776.  In holding that the judgment was *res judicata*, the Seventh Circuit did not limit the judgment's preclusive effect to matters actually decided and ruled upon.  *See id.* at 777.

The United States Supreme Court's denial of Plaintiffs' petition for certiorari, which was based on the same allegations as are at issue here (*see supra* at 10-11, ¶¶ 21-22), also has *res judicata* effect and bars Plaintiffs' RICO claims.  As Plaintiffs' counsel here have told the United States Supreme Court, "[p]ut in its simplest terms, the denial of certiorari is not without consequences."[12]  "While the denial of certiorari may not have a precedential force for stare decisis purposes, it does have preclusive effect for the litigation *sub judice*."[13]  In the words of Justice Jackson, which Plaintiffs' counsel quoted to the Supreme Court,[14]  the "minimum meaning" of a denial of certiorari is that "the judgment below … stand[s] with whatever consequences it may have upon the litigants involved under the doctrine of *res judicata* as applied either by state or federal courts." *Brown v. Allen*, 344 U.S. 443, 543 (1953) (Jackson, J.,

---

[12]  Brief in Opposition to Petition for a Writ of Certiorari, *R.J. Reynolds Tobacco Co. v. Walker*, No. 13-1193, 2014 WL 1711561, at *3 (Apr. 30, 2014), *cert. denied*, 134 S. Ct. 2727 (2014).

[13]  *Id.* at *14.

[14]  *Id.*

concurring).  This principle of preclusion applies "even if new facts are discovered and even if a new theory of law were thought up." *Id.*; *see also, e. g.*, *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 727-28 (2010) ("If certiorari were denied … the matter would be *res judicata*").  The *res judicata* consequences of a final judgment on the merits are not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  For these reasons, Plaintiffs' claims are precluded by *res judicata* as a matter of law.

## IV.   PLAINTIFFS' CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL AS A MATTER OF LAW

Plaintiffs' claims are also barred by collateral estoppel, because the issue of the propriety of Justice Karmeier's participation in *Avery* and the legitimacy of the judgment in that case were finally and conclusively litigated and adjudicated by the Illinois Supreme Court.  As a matter of law, Plaintiffs are collaterally estopped from re-litigating that issue here.

"[C]ollateral estoppel, also referred to as issue preclusion, promotes fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions." *DuPage Forklift Serv.*, 744 N.E.2d at 849. Under Illinois law, collateral estoppel bars an issue from being re-litigated if "'(1) the issue decided in the prior adjudication is identical [to] the one presented in the [subsequent action], (2) there was a final judgment on the merits in the prior [action], and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior [action].'" *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010) (citation omitted); *see also DuPage Forklift Serv.*, 744 N.E.2d at 849 (collateral estoppel applies to prior determinations of fact and law).  In addition, the issues sought to be precluded must have been "actually or necessarily finally determined." *Grisanzio v. Bilka*, 511 N.E.2d 762, 764 (Ill. App. Ct. 1987) (citation omitted) (internal quotation marks omitted).

Each of these requirements is satisfied here.  First, the record establishes that the issue presented in this action as to whether *Avery* was improperly reversed based on Justice Karmeier's participation and State Farm's alleged misrepresentations, was raised repeatedly by Plaintiffs and was actually and necessarily decided by the Illinois Supreme Court.  *See supra* at 7-14.  Second, the Illinois Supreme Court issued a final judgment on the merits in *Avery*.  Third, Plaintiffs, the parties against whom collateral estoppel is asserted, were named plaintiffs and class members in *Avery*. ([289] ¶¶ 3, 45.)  Thus, as a matter of law, Plaintiffs are collaterally estopped from re-litigating the same issue here, and their Complaint should be dismissed with prejudice on summary judgment.

## CONCLUSION

For all the foregoing reasons, the Court should enter an order granting summary judgment in favor of State Farm on all of Plaintiffs' claims.

Dated: July 14, 2017

J. Timothy Eaton, #0707341
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker, Suite 2800
Chicago, IL 60601

Michael P. Kenny
Jonathan D. Parente
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309

Of Counsel:
Sheila L. Birnbaum
Douglas W. Dunham
Ellen P. Quackenbos
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010

Respectfully submitted,

/s/ *Ronald S. Safer*
Ronald S. Safer #6186143
Joseph A. Cancila, Jr. #06193252
James P. Gaughan #6204406
Nick Kahlon #6280309
RILEY SAFER HOLMES
  & CANCILA LLP
Three First National Plaza
70 W. Madison St., Ste. 2900 Chicago, IL 60602

Patrick D. Cloud, #06282672
HEYL, ROYSTER, VOELKER & ALLEN
Mark Twain Plaza III, Suite 100
105 W. Vandalia St.
P.O. Box 467
Edwardsville, IL 62025

*Attorneys for Defendant State Farm Mutual Automobile Company*

40

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment on Grounds of *Rooker-Feldman*, Collateral Estoppel and *Res Judicata* and Memorandum of Law in Support Thereof was served upon all counsel of record on July 14, 2017, via the Court's CM/ECF system.

Dated: July 14, 2017                     */s/ Ronald S. Safer* _____