**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARK HALE, TODD SHADLE and LAURIE LOGER, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 12-cv-00660-DRH-SCW |
| v. | Judge David R. Herndon<br>Magistrate Judge Stephen C. Williams |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, EDWARD MURNANE, and WILLIAM G. SHEPHERD, | |
| Defendants. | |

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON GROUNDS OF *ROOKER-FELDMAN*, *RES JUDICATA*, AND COLLATERAL ESTOPPEL**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFFS' CLAIMS ARE BARRED UNDER *ROOKER-FELDMAN* ....................... 2

    A. Plaintiffs' RICO Action Is Squarely Within *Rooker-Feldman* ............................... 2

    B. Plaintiffs Cannot Evade *Rooker-Feldman* by Claiming that the Illinois Supreme Court's Decisions Were Obtained by Fraud ............................... 3

    C. Plaintiffs Have Not Shown That Jurisdiction Exists Under *Nesses v. Shepard* ................................................................................................................ 4

        1. Jurisdiction Under *Nesses* Requires a Showing of Judicial Corruption ................................................................................................... 4

        2. Plaintiffs' Evidence Does Not Show Corruption on the Part of Justice Karmeier ....................................................................................... 6

        3. The U.S. Supreme Court's Decisions in *Caperton v. A.T. Massey Coal Co.* and *Williams v. Pennsylvania* Are Irrelevant to the *Nesses* Analysis ............................................................... 7

    D. Plaintiffs Had a Reasonable Opportunity to Present Their Claims in the Illinois Supreme Court .................................................................................. 9

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Anderson v. Anderson*,
 554 F. App'x 529 (7th Cir. 2014) ........................................................................... 5

*Andress v. Daubert Law Firm LLC*,
 144 F. Supp. 3d 1034 (E.D. Wis. 2015) .................................................................. 5

*Beth-El All Nations Church v. City of Chicago*,
 486 F.3d 286 (7th Cir. 2007) .................................................................................. 9

*Brokaw v. Mercer County*,
 235 F.3d 1000 (7th Cir. 2000) ................................................................................ 6

*Brokaw v. Weaver*,
 305 F.3d 660 (7th Cir. 2002) .................................................................................. 9

*Caperton v. A.T. Massey Coal Co.*,
 556 U.S. 868 (2009) ................................................................................................ 7

*Caperton v. A.T. Massey Coal Co.*,
 690 S.E.2d 322 (W. Va. 2009) ................................................................................ 9

*Centres, Inc. v. Town of Brookfield*,
 148 F.3d 699 (7th Cir. 1998) .................................................................................. 8

*Commonwealth Plaza Condominium Association v. City of Chicago*,
 693 F.3d 743 (7th Cir. 2012) .................................................................................. 9

*Davit v. Davit*,
 173 F. App'x 515 (7th Cir. 2006) ........................................................................... 5

*Dawaji v. Kohlhoss*,
 2014 WL 4913741 (N.D. Ill. Sept. 30, 2014), *aff'd*,
 618 F. App'x 858 (7th Cir. 2015) ........................................................................... 5

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
 544 U.S. 280 (2005) ................................................................................................ 2

*Frierson-Harris v. Kall*,
 198 F. App'x 529 (7th Cir. 2006) ........................................................................... 5

*Grisham v. Integrity First Bank*,
 2014 WL 1315411 (W.D. Wis. Apr. 1, 2014) .........................................................5

*Hay v. Indiana State Board Of Tax Commisioners*,
 312 F.3d 876 (7th Cir. 2002) .................................................................................. 1

*Hopes v. Mash*,
 2010 WL 3490991 (S.D. Ill. Aug. 31, 2010) .......................................................... 1

*Iqbal v. Patel*,
    780 F.3d 728 (7th Cir. 2015) ..................................................................................................4

*Jakupovic v. Curran*,
    850 F.3d 898 (7th Cir. 2017) ............................................................................................ 2, 3

*Johnson v. Pushpin Holdings, LLC*,
    748 F.3d 769 (7th Cir. 2014) ................................................................................................ 4

*Kelley v. Med-1 Solutions, LLC*,
    548 F.3d 600 (7th Cir. 2008) ............................................................................................ 2, 3

*Lewis v. Anderson*,
    308 F.3d 768 (7th Cir. 2002) ................................................................................................ 2

*Long v. Shorebank Development Corp.*,
    182 F.3d 548 (7th Cir. 1999) ................................................................................................ 9

*Loubser v. Thacker*,
    440 F.3d 439 (7th Cir. 2006) ................................................................................................ 5

*Lozman v. Putnam*,
    2014 WL 3953948 (Ill. App. Ct. Aug. 13, 2014)............................................................... 10

*Mains v. Citibank, N.A.*,
    852 F.3d 669 (7th Cir. 2017) ............................................................................................ 2, 4

*Miller v. Fryzel*,
    499 F. App'x 601 (7th Cir. 2013) ......................................................................................... 1

*Nesses v. Shepard*,
    68 F.3d 1003 (7th Cir. 1995) ........................................................................... 4, 5, 6, 7, 8

*Olsson v. Madigan*,
    600 F. App'x 1009 (7th Cir. 2015) ....................................................................................... 9

*Parker v. Lyons*,
    757 F.3d 701 (7th Cir. 2014) ................................................................................................ 5

*Pavey v. Conley*,
    544 F.3d 739 (7th Cir. 2008) ................................................................................................ 1

*People v. Ross*,
    548 N.E.2d 527 (Ill. App. Ct. 1989) ...................................................................................10

*People v. Vincent*,
    871 N.E.2d 17 (Ill. 2007)................................................................................................... 10

*Sheikani v. Wells Fargo Bank*,
    526 F. App'x 705 (7th Cir. 2013) ......................................................................................5, 8

*United States v. Siegelman*,
    640 F.3d 1159 (11th Cir. 2011) ............................................................................................ 6

*Williams v. Pennsylvania*,
 136 S. Ct. 1899 (2016) .................................................................................................. 7, 9

*Young v. Murphy*,
 90 F.3d 1225 (7th Cir. 1996) ............................................................................................ 8

## Rules / Statutes

42 U.S.C. § 1983 ................................................................................................................... 6

735 ILCS 5/2-1401 ............................................................................................................... 10

## INTRODUCTION

State Farm respectfully submits that exceptional circumstances warrant submission of this reply, including the significance of State Farm's motion and the need to address Plaintiffs' erroneous contentions, particularly in respect to *Rooker-Feldman*. For example, Plaintiffs wrongly contend that "at this stage, all factual disputes must be resolved in Plaintiffs' favor" and must be resolved "by the jury as factfinder at trial." [661] at 1 n.1. To the contrary, Plaintiffs have the burden to establish by a preponderance of the evidence that subject-matter jurisdiction exists. *See Miller v. Fryzel*, 499 F. App'x 601, 603 (7th Cir. 2013); *see also Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) ("the plaintiff has the obligation to establish jurisdiction by competent proof"); [646] at 1, 18-19. Moreover, as this Court has stated, issues of subject-matter jurisdiction "are to be resolved by the court and not the jury," even if they "ultimately turn on factual disputes." *Hopes v. Mash*, 2010 WL 3490991, at *5 (S.D. Ill. Aug. 31, 2010) (citing *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)).

This reply will assist the Court in the exceptional task of determining the facts relevant to jurisdiction. As shown below, Plaintiffs have not met their burden of proving jurisdiction under *Rooker-Feldman* – and cannot. Through their RICO claims, Plaintiffs attempt on behalf of a national class to undo *Avery* by seeking to recover (and treble) the very judgment the Illinois Supreme Court took away when it unanimously decertified that same class in *Avery*. Plaintiffs also seek to overturn the Illinois Supreme Court's 2011 decision rejecting Plaintiffs' petition to reinstate the $1.05 billion judgment reversed in *Avery* based upon the purported constitutional impropriety of Justice Karmeier's participation in deciding that case. Notably, Plaintiffs do not contend that the 2011 decision, in which Justice Karmeier did not participate, was the product of a "tainted tribunal." The injuries Plaintiffs complain of here, both the loss of the $1.05 billion *Avery* judgment and the "tainting" of the tribunal by Justice Karmeier's participation, flowed

1

directly from the Illinois Supreme Court's decisions; they cannot be separated from those decisions. Accordingly, *Rooker-Feldman* deprives this Court of jurisdiction. *See Mains v. Citibank, N.A.*, 852 F.3d 669, 676 (7th Cir. 2017). For the reasons set forth herein and in State Farm's opening memorandum, the Court should dismiss Plaintiffs' claims for lack of jurisdiction or grant summary judgment in favor of State Farm based on *res judicata* or collateral estoppel.

## ARGUMENT

**I.       PLAINTIFFS' CLAIMS ARE BARRED UNDER *ROOKER-FELDMAN***

      **A.       Plaintiffs' RICO Action Is Squarely Within *Rooker-Feldman***

This case falls squarely within the "narrow ground occupied by *Rooker-Feldman*" because Plaintiffs are "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Plaintiffs' arguments to the contrary are sophistry. Plaintiffs' proclaimed "focus … on Defendants' fraudulent scheme to deprive Plaintiffs of an impartial tribunal" ([661] at 16) does not allow them to evade *Rooker-Feldman*. The "pivotal question" under *Rooker-Feldman* is not Plaintiffs' focus, but "'whether the injury alleged by the federal plaintiff result[s] from the state court judgment itself or is distinct from that judgment.'" *Lewis v. Anderson*, 308 F.3d 768, 772 (7th Cir. 2002) (citation omitted). Thus, the Seventh Circuit has repeatedly rejected attempts by plaintiffs (such as Plaintiffs here) to escape *Rooker-Feldman* by claiming to challenge a defendant's conduct, not the state court's judgments. *See Jakupovic v. Curran*, 850 F.3d 898, 903 (7th Cir. 2017) (rejecting plaintiff's claim that "he d[id] not challenge the *state court*'s judgments keeping him detained" but "challenge[d] defendants-appellees' 'procedure'" used to obtain his detention); *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 605 (7th Cir. 2008) (rejecting plaintiff's claim that his injury was caused not by the state court's award of attorney's

fees, but by the opposing attorneys' fraudulent misrepresentations to the state court).

Here, Plaintiffs' alleged injuries were directly caused by, and did not occur until, the rulings of the Illinois Supreme Court. The non-cognizable RICO injury, consisting of a purported deprivation of an "impartial tribunal" ([661] at 16), was caused by the Illinois Supreme Court's rejection of their motions to disqualify Justice Karmeier and its denial of Plaintiffs' 2005 petition for rehearing and 2011 petition to recall the *Avery* mandate, based on Justice Karmeier's participation in the *Avery* merits decision. Likewise, the loss of the $1.05 billion judgment[1] occurred only with the Illinois Supreme Court's decision to reverse it. [661] at 18-19. Plaintiffs' specious assertions to the contrary are similar to the plaintiffs' assertions that were flatly rejected by the Seventh Circuit in *Jakupovic* and *Kelley* and should be rejected here.

Plaintiffs erroneously assert that "the Seventh Circuit has long recognized that *Rooker-Feldman* does not apply to claims … of a tainted state court tribunal." [661] at 18. However, Plaintiffs cite **no** case in the Seventh Circuit or elsewhere in which *Rooker-Feldman* permitted jurisdiction over claims of a "tainted state court tribunal," when the plaintiff had previously litigated those claims in state court without the participation of the judge who supposedly tainted the earlier proceedings. This is precisely what Plaintiffs did in 2011. The Illinois Supreme Court's 2011 decision, rendered without Justice Karmeier's participation, is protected by *Rooker-Feldman*, and Plaintiffs may not relitigate their "tainted tribunal" claims in federal court.

> **B.  Plaintiffs Cannot Evade *Rooker-Feldman* by Claiming that the Illinois Supreme Court's Decisions Were Obtained by Fraud**

Manufacturing a meaningless distinction, Plaintiffs argue that *Rooker-Feldman* "does not

---

[1] For purposes of RICO, Plaintiffs have identified their injury as the loss of the $1.05 billion *Avery* judgment, in which they claim a property interest. [438] at 1, 11, 13, 17. They now attempt to disavow that injury for purposes of *Rooker-Feldman*. [661] at 30. But regardless of whether that alleged loss is an injury or merely damages, it was caused by, and cannot be separated from, the Illinois Supreme Court's merits decision in *Avery*. *See* [646] at 20-21.

3

bar Plaintiffs' claims" because they "'are challenging defendants' actions in procuring the *Avery* judgment,'" in particular, "'defendants' [alleged] mail fraud containing misrepresentations to the Illinois Supreme Court'" which allegedly "'resulted in the denial of their constitutional rights and the related injury.'" [661] at 16-17 (quoting [67] at 15-16). The Seventh Circuit has rejected that very argument, holding that when a federal claim is based upon allegations that the defendant procured a judgment in a state court by means of misrepresentations to the court, the source of the injury is the state court's judgment and *Rooker-Feldman* bars the federal claim. *See, e.g.*, *Mains*, 852 F.3d at 676 (*Rooker-Feldman* precludes federal courts from adjudicating claims "that the state court's [] judgment was in error because it rested on a fraud perpetrated by the defendants"); *see also* [646] at 23-25 (citing cases).[2] As the Seventh Circuit explained, "delv[ing] into the question whether fraud tainted the state court's judgment … would amount to an exercise of *de facto* appellate jurisdiction," which is "precisely what *Rooker-Feldman* prohibits." *Mains*, 852 F.3d at 676. The "proper place to remedy any potential fraud in the state court's judgment is the state court," and the federal courts "must accept the state court's resolution of the issue." *Id.* at 678. *Mains* governs the outcome here.

      **C.**      **Plaintiffs Have Not Shown That Jurisdiction Exists Under** ***Nesses v. Shepard***

           **1.**      **Jurisdiction Under** ***Nesses*** **Requires a Showing of Judicial Corruption**

Plaintiffs misrepresent the scope of *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), in arguing that the *Nesses* exception to *Rooker-Feldman* applies upon a mere showing that "'the defendants made fraudulent representations to the state court or procured a judgment by fraud'" or that "Defendants' actions in the state court tainted that tribunal." [661] at 22. No such broad

---

[2] Plaintiffs mistakenly rely on *Johnson v. Pushpin Holdings,* LLC, 748 F.3d 769 (7th Cir. 2014). As the Seventh Circuit has explained, *Pushpin* holds only "that federal courts retain jurisdiction to award damages for fraud that imposes extrajudicial injury." *Iqbal v. Patel*, 780 F.3d 728, 729-20 (7th Cir. 2015). Plaintiffs do not claim extrajudicial injuries.

4

rule is set forth in *Nesses*, and there is overwhelming authority in the Seventh Circuit to the contrary.  *See* Point B *supra*; [646] at 23-24 (citing cases).

Indeed, the Seventh Circuit has made clear that "the *Nesses* principle applies to 'claims … premised on detailed allegations that the winning party obtained a favorable civil judgment by *corrupting the state judicial process*.'"  *Dawaji v. Kohlhoss*, 2014 WL 4913741, at *5-6 (N.D. Ill. Sept. 30, 2014) (citation omitted, emphasis added), *aff'd*, 618 F. App'x 858 (7th Cir. 2015).  *Nesses* "applies *only*" where "the state court itself was or became corrupt," "*not* where the federal plaintiff alleges merely that its state court opponent or the opponent's lawyer was corrupt or committed fraud."[3]  *Id*.; s*ee also Andress v. Daubert Law Firm LLC*, 144 F. Supp. 3d 1034, 1045 (E.D. Wis. 2015) (*Nesses* did not apply; plaintiff "allege[d] that the *defendants* engaged in various forms of misconduct," but "ha[d] not alleged that the state court somehow corrupted the proceedings"), *aff'd*, 667 F. App'x 154 (7th Cir. 2016).  Contrary to Plaintiffs' contentions, *Sheikani v. Wells Fargo Bank*, 526 F. App'x 705 (7th Cir. 2013), requires corruption in the state judicial proceedings for *Nesses* to apply.  More precisely, *Sheikani* makes clear that the "state court" itself – not just the defendant – must have corruptly "imposed an insurmountable obstacle to adjudication." *Sheikani*, 526 F. App'x at 706.  Plaintiffs have adduced no such evidence here.

Plaintiffs also are wrong in asserting that *Nesses* "made clear that 'judicial corruption' is not necessary to trigger the exception by analogizing Nesses' claims to one in which a plaintiff sued 'police officers … for having fabricated evidence that resulted in the plaintiff's being

---

[3]  *See also Loubser v. Thacker*, 440 F.3d 439, 440 (7th Cir. 2006) (state judges, court reporters, lawyers, former husband and others conspired to manipulate divorce proceedings); *Frierson-Harris v. Kall*, 198 F. App'x 529, 530 (7th Cir. 2006) (requiring "a dishonest judicial proceeding"); *Parker v. Lyons*, 757 F.3d 701, 706 (7th Cir. 2014) (defendant "vitiated the state-court process by collaborating with a friendly judge to rush the case to a foreordained judgment"); *Davit v. Davit*, 173 F. App'x 515, 516-17 (7th Cir. 2006) ("judicial corruption" claims based on alleged conspiracy between adversary's attorney and judges); *Anderson v. Anderson*, 554 F. App'x 529, 530 (7th Cir. 2014) (judge "corruptly participated in the [opposing party's] fraud"); *Grisham v. Integrity First Bank*, 2014 WL 1315411, at *3 (W.D. Wis. Apr. 1, 2014) (plaintiffs "say nothing about how the judge or court might have been corrupted").

5

convicted in a state court.'" [661] at 22 (quoting *Nesses*, 68 F.3d at 1005). With that analysis, Judge Posner provided a theoretical underpinning for the *Nesses* exception by analogy to § 1983 claims – he did not give corrupt conduct by police officers as an example of a *Nesses* scenario. *See Nesses*, 68 F.3d at 1005. In any case, Judge Posner's analogy does not dispense with the requirement of *corruption* of the judicial proceedings and does not help Plaintiffs here.[4]

### 2. Plaintiffs' Evidence Does Not Show Corruption on the Part of Justice Karmeier

Plaintiffs have presented no evidence that Justice Karmeier or the Illinois Supreme Court was corrupt, as required by *Nesses*. Instead, Plaintiffs claim that Justice Karmeier "knew [that] State Farm played a significant role in funding his campaign" ([661] at 11[5]), a claim that, even if supported by the evidence, would not establish corruption. Plaintiffs, moreover, ignore Justice Karmeier's unequivocal testimony that he had no knowledge of State Farm, or anyone related to State Farm, supporting or contributing to his campaign in any way, directly or indirectly, [646] at 15-16, ¶¶ 36-38, and that testimony is not controverted by evidence cited by Plaintiffs. For example, Plaintiffs argue that "Judge Karmeier knew his campaign would be expensive and was told that he could not win the election without the support of the U.S. Chamber and the most influential Illinois corporations, which included State Farm." [661] at 11. Plaintiffs' citations, however, contain no mention of the U.S. Chamber, Illinois corporations, or State Farm. *See* PA00921-24; PA0095. Plaintiffs also assert that Justice Karmeier "had a private meeting with U.S. Chamber representatives and Ed Murnane on November 24, 2003." [661] at 11. This

---

[4] Plaintiffs also miss the point that, under section 1983, the defendants must be state actors or persons who conspired with state actors to violate the plaintiff's rights, a showing that requires agreement by state actor to violate the plaintiff's federal rights, not merely "a campaign donation followed by an act favorable toward the donor." *See United States v. Siegelman*, 640 F.3d 1159, 1170-72 (11th Cir. 2011); *see also Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1016 (7th Cir. 2000).

[5] [661] is the redacted version of Plaintiffs' opposition brief that was publicly filed. An unredacted version has been provided to chambers.

6

assertion (i) does not have anything to do with State Farm and (ii) is based on testimony by Justice Karmeier saying no such meeting occurred. PA0100. Similarly, Plaintiffs' statement that "[c]ritically, at the very least, [Justice Karmeier's] campaign staff knew State Farm was backing his campaign" ([661] at 11) is based upon hearsay in a document by an unknown author (which includes State Farm in a large and apparently off-the-cuff listing of actual and/or potential backers) and is contradicted by the testimony of Justice Karmeier's campaign chairman. [467-23] at 9-13. Furthermore, Plaintiffs' statement refers only to Justice Karmeier's campaign staff, and not to Justice Karmeier. [661] at 11. Plaintiffs have also failed to show a causal connection between Justice Karmeier's participation in *Avery* and the outcome of the case, as is required by *Nesses*. *See Nesses*, 68 F.3d at 1005 (requiring showing "that the violation caused the decision to be adverse to [plaintiff] and thus did him harm"). Although Plaintiffs assert, based on inadmissible hearsay, that Justice Karmeier broke a "deadlock" in *Avery*, they do not specify whether the deadlock concerned the decision to reverse or affirm the national class and the $1.05 billion judgment, or merely the rationale for reversing. Nor do Plaintiffs contend that the Illinois Supreme Court's decision was erroneous, a fatal concession that they have suffered no redressable injury.[6]

### 3. The U.S. Supreme Court's Decisions in *Caperton v. A.T. Massey Coal Co.* and *Williams v. Pennsylvania* Are Irrelevant to the *Nesses* Analysis

Plaintiffs erroneously rely on *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), and *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), to argue that the *Nesses* exception does not require actual judicial corruption, but is satisfied by the "*risk* of actual bias." [661] at 23. In

---

[6] *See Nesses*, 68 F.3d at 1005 ("Nesses cannot show injury from the alleged conspiracy unless the decision dismissing his suit … was erroneous."). The decision in *Avery* to decertify the class and vacate the $1.05 billion judgment was unanimous, although the two concurring and dissenting judges had a different rationale for the decision – a fact that strongly suggests that any alleged deadlock was merely over the grounds for reversal.

fact, *Caperton* and *Williams* have nothing to do with the *Nesses* jurisdictional analysis, but simply clarify the due process standard for recusal. The fact that a state-court determination on issues of recusal may be erroneous or even unconstitutional does not overcome the *Rooker-Feldman* bar on jurisdiction. *See Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1996) (under *Rooker-Feldman*, "lower federal courts have no jurisdiction 'over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional'") (citation omitted). Rather, the *Nesses* exception to *Rooker-Feldman* applies only when "the state court imposed an insurmountable obstacle to adjudication, for example through a conspiracy among the judge and state-court adversaries to corrupt the litigation process." *Sheikhani*, 526 F. App'x at 706.

Far from supporting jurisdiction here, *Caperton* and *Williams* illustrate the fundamental limiting principle of federalism that "[l]itigants who believe that a state judicial proceeding has violated their constitutional rights must appeal that decision through their state courts and then to the Supreme Court." *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998). In both *Caperton* and *Williams*, the litigants appealed to the U.S. Supreme Court after a state supreme court denied their due process challenges to a state-court judge's participation in the decision on appeal. Plaintiffs here did the same in 2006, filing a certiorari petition after the Illinois Supreme Court denied their challenges to Justice Karmeier's participation in *Avery*. The U.S. Supreme Court denied certiorari. After the Illinois Supreme Court denied their 2011 petition to recall the mandate, Plaintiffs decided not to file a certiorari petition and instead brought their federal RICO lawsuit. That lawsuit is barred by *Rooker-Feldman* because Plaintiffs "exhausted their federal constitutional claims in state court" and were limited to "seek[ing] review of the state court decision[s] in the Supreme Court of the United States." *See*

8

*Commw. Plaza Condo. Ass'n v. City of Chicago*, 693 F.3d 743, 748 (7th Cir. 2012).[7]

### D. Plaintiffs Had a Reasonable Opportunity to Present Their Claims in the Illinois Supreme Court

Plaintiffs erroneously contend that *Rooker-Feldman* does not apply because they did not have an "'reasonable opportunity'" to fully present their claims in state court. [661] at 25 (citation omitted). But the "reasonable opportunity" exception "is inapplicable to cases like this one 'in which the plaintiff complains of an injury that cannot be separated from the state court judgment.'" *Olsson v. Madigan*, 600 F. App'x 1009, 1011 (7th Cir. 2015) (citation omitted). Here, Plaintiffs cannot separate their alleged injury from *Avery*.

Moreover, the Seventh Circuit has made clear that the inquiry under *Rooker-Feldman* into whether the plaintiff had a "reasonable opportunity" to present its claims in state court focuses on difficulties caused by "state-court rules or procedures." *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007). For example, in *Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002), the Seventh Circuit held that a plaintiff "did not have a reasonable opportunity to raise her constitutional claims in the state court child neglect proceedings" because Juvenile Court Act "allowed the court to 'consider only the question whether the minor is abused, neglected, delinquent, in need of supervision, or dependent.'" (citation omitted). *See also Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 559-60 (7th Cir. 1999) (no reasonable opportunity to raise federal claims in state-court "forcible entry and detainer action" that addressed the issue of possession only). Plaintiffs point to no similar barriers in *Avery*.

In particular, although Plaintiffs complain they were not granted the discovery they

---

[7] Furthermore, with their 2011 petition, which was decided by the Illinois Supreme Court without Justice Karmeier's participation, Plaintiffs have already had the remedy to which they would have been entitled under *Caperton* and *Williams*, if they had successfully appealed to the U.S. Supreme Court. *See Williams*, 136 S. Ct. at 1910 (remanding for rehearing by the Pennsylvania Supreme Court without the participation of the disqualified judge); *Caperton v. A.T. Massey Coal Co.*, 690 S.E.2d 322, 332-33 (W. Va. 2009) (on remand, rehearing the case without the participation of the disqualified judge).

9

requested in their 2011 petition, Plaintiffs have not shown that there were *procedural* barriers to discovery. It was certainly within the power of the Illinois Supreme Court to grant discovery if it believed discovery was warranted. Indeed, under 735 ILCS 5/2-1401, petitions for post-judgment relief "are subject to the usual rules of civil practice." *People v. Vincent*, 871 N.E.2d 17, 23 (Ill. 2007). If a petition survives an initial challenge on the pleadings, there may be discovery and/or an evidentiary hearing. *See*, *e.g.*, *Lozman v. Putnam*, 2014 WL 3953948, at *11 (Ill. App. Ct. Aug. 13, 2014). Section 2-1401 codifies common law remedies for post-judgment relief, *see People v. Ross*, 548 N.E.2d 527, 532 (Ill. App. Ct. 1989), and the procedures it provides would be within the inherent powers of the Illinois Supreme Court, affording Plaintiffs a reasonable opportunity to present their claims. *See also* [646] at 29-32.

Contrary to Plaintiffs' contentions, the fact that the Illinois Supreme Court denied their petition without permitting discovery and rejected the flawed affidavits of Plaintiffs' investigators, which consisted largely of hearsay statements from their investigators' interview notes ([646] at 13-14 ¶ 30), does not render *Rooker-Feldman* inapplicable. Even if erroneous, such state-court evidentiary, discovery and merits rulings are protected from review by the lower federal courts under *Rooker-Feldman*. *Id.* at 31-32 & n.9.

## CONCLUSION

The Court should grant summary judgment for State Farm on all of Plaintiffs' claims.

Dated: August 9, 2017

Respectfully submitted,
*/s/ Ronald S. Safer*

| | | |
|---|---|---|
| J. Timothy Eaton #0707341 | Patrick D. Cloud, #06282672 | Ronald S. Safer #6186143 |
| TAFT, STETTINIUS & HOLLISTER, LLP | HEYL, ROYSTER, VOELKER & ALLEN | RILEY SAFER HOLMES & CANCILA LLP |
| 111 East Wacker, Ste. 2800 | Mark Twain Plaza III, Suite 100 | Three First National Plaza |
| Chicago, IL 60601 | 105 W. Vandalia St. | 70 W. Madison St., Ste. 2900 |
| | Edwardsville, IL 62025 | Chicago, IL 60602 |

*Attorneys for Defendant State Farm Mutual Automobile Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment on Grounds of *Rooker-Feldman*, Collateral Estoppel and *Res Judicata* and Memorandum of Law in Support Thereof was served upon all counsel of record on August 9, 2017, via the Court's CM/ECF system.

Dated: August 9, 2017                               */s/ Ronald S. Safer*