## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, TODD SHADLE and
LAURIE LOGER, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

    v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY, ED-
WARD MURNANE, and WILLIAM G.
SHEPHERD,

                Defendants.

Case No. 12-cv-00660-DRH-SCW

Judge David R. Herndon
Magistrate Judge Stephen C. Williams

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' RICO CLAIMS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS .................................................................................... 3

    A.    The Underlying *Avery* Judgment and Decision ....................................... 3

    B.    Plaintiffs' Challenges to Justice Karmeier in *Avery* .............................. 5

    C.    The Proceedings in *Hale* ..................................................................... 10

ARGUMENT ................................................................................................... 18

I.      SUMMARY JUDGMENT STANDARD ................................................... 18

II.     PLAINTIFFS CANNOT SHOW RICO CAUSATION .............................. 19

III.    PLAINTIFFS HAVE NOT SUSTAINED A COGNIZABLE RICO
       INJURY ................................................................................................ 24

    A.    Plaintiffs Cannot Establish a RICO Injury to Property ....................... 24

    B.    Plaintiffs' Claimed Per Capita Damages Are Improper and Do Not
         Satisfy RICO's Damages and Injury Requirements ............................. 27

IV.    PLAINTIFFS' RICO CLAIMS ARE TIME-BARRED .............................. 29

    A.    Plaintiffs' Alleged RICO Claims Accrued in 2005 or 2006 and the
         Four-Year RICO Statute of Limitations Expired in 2009 or 2010 ....... 29

    B.    Plaintiffs Cannot Meet Their Burden on Equitable Tolling and
         Estoppel ............................................................................................... 32

         1.    Equitable Estoppel/Fraudulent Concealment. ........................... 32

         2.    Equitable Tolling .................................................................... 34

V.     PLAINTIFFS CANNOT SHOW PREDICATE ACTS .............................. 35

    A.    State Farm's Briefs Are Appropriate and Permissible Advocacy ......... 35

    B.    The Service or Filing of a Brief Is Not a RICO Predicate Act .............. 38

CONCLUSION ................................................................................................. 40

## TABLE OF AUTHORITIES

**Page**

## CASES

*Apotex Corp. v. Merck & Co.,*
    229 F.R.D. 142 (N.D. Ill. 2005) ...............................................................36, 38

*Avery v. State Farm Mut. Auto. Ins. Co.,*
    1999 WL 1022134 (Ill. Cir. Ct. Oct. 8, 1999) ........................................ 4, 12

*Avery v. State Farm Mut. Auto. Ins. Co.,*
    1999 WL 955543 (Ill. Cir. Ct. Oct. 8, 1999) ...............................................4

*Avery v. State Farm Mut. Auto. Ins. Co.,*
    835 N.E.2d 801 (Ill. 2005) ...............................................................*passim*

*Balderos v. City Chevrolet,*
    214 F.3d 849 (7th Cir. 2000) ................................................................39

*Blanche v. United States,*
    811 F.3d 953 (7th Cir. 2016) ................................................................32

*Bridge v. Phoenix Bond & Idem. Co.,*
    553 U.S. 639 (2008) ..........................................................................21

*Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,*
    559 F.3d 671 (7th Cir. 2009) ................................................................30

*Caperton v. A.T. Massey Coal Co.,*
    556 U.S. 868 (2009) ...............................................................10, 23, 34

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..........................................................................19

*In re Consol. U.S. Atmospheric Testing Litig.,*
    820 F.2d 982 (9th Cir. 1987) ................................................................26

*Cowell v. Auction Broad. Co.,*
    2017 WL 76925 (S.D. Ill. Jan. 9, 2017) ..................................................18

*Cueto v. Grogan,*
    2009 WL 2849007 (S.D. Ill. Sept. 1, 2009) .............................................31

*DeBoskey v. SunTrust Mortgage, Inc.*
    2017 WL 4083557 (M.D. Fla. Sept. 14, 2017)...........................................38

*DeGuelle v. Camilli,*
    664 F.3d 192 (7th Cir. 2011) ............................................................20, 23

*Del. Motel Assocs., Inc. v. Capital Crossing Serv. Co. LLC,*
    2017 WL 4224618 (N.E. Ill. Sept. 22, 2017) ............................................38

*Doe v. Roe*,
  958 F.2d 763 (7th Cir. 1992) ........................................................................24

*Evans v. City of Chicago*,
  434 F.3d 916 (7th Cir. 2006) .........................................................24, 26, 27

*Evans v. City of Chicago*,
  689 F.2d 1286 (7th Cir. 1982), *overruled on other grounds*,
  873 F.2d 1007 (7th Cir. 1989) ......................................................................25

*Furkin v. Smikun*,
  237 F. App'x 86 (7th Cir. 2007) ...................................................................32

*Guar. Rate, Inc. v. Barr*,
  912 F. Supp. 2d 671 (N.D. Ill. 2012) ...........................................................31

*Harvey v. Speedway SuperAmerica, LLC*,
  526 F.3d 1099 (7th Cir. 2008) ......................................................................19

*Hemi Grp., LLC v. City of New York*,
  130 S. Ct. 983 (2010) ...................................................................................20

*Henson v. Dep't of Health & Human Servs.*,
  2017 WL 1090815 (S.D. Ill. Mar. 23, 2017) ...............................................19

*Hentosh v. Herman M. Finch Univ. Of Health Scis./Chicago Med. Sch.*,
  167 F.3d 1170 (7th Cir. 1999) ......................................................................32

*Hosp. Ass'n of N.Y. State, Inc. v. Toia*,
  577 F.2d 790 (2d Cir. 1978) .........................................................................25

*Ileto v. Clock, Inc.*,
  565 F.3d 1126 (9th Cir. 2009) ......................................................................25

*Illinois Extension Pipeline Co. v. Summann*,
  2016 WL 630022 (S.D. Feb. 17, 2016) ........................................................19

*Int'l Bhd. of Teamsters, Local 734 Heath & Welfare Trust Fund v. Philip Morris*,
  196 F.3d 818 (7th Cir. 1999) ........................................................................40

*Ira Holtzman, C.P.A. & Assocs. Ltd. v. Turza*,
  728 F.3d 682 (7th Cir. 2013) ........................................................................28

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
  731 F.3d 556 (6th Cir. 2013) ........................................................................27

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
  610 F.3d 382 (7th Cir. 1981) ..................................................................30, 34

*Kaye v. D'Amato*,
  357 F. App'x 706 (7th Cir. 2009) ...........................................................22, 39

*Kimberlin v. Nat'l Bloggers Club*,
  2015 WL 1242763 (D. Md. Mar. 17, 2015) .................................................26

*Lathrop v. Juneau & Assocs., Inc.*,
    2005 WL 3797706 (S.D. Ill. Apr. 25, 2005) ................................................39

*Lauter v. Anoufrieva*,
    642 F. Supp. 2d 1060 (C.D. Cal. 2009) ......................................................27

*Limestone Dev. Corp. v. Vill. of Lemont, Ill.*,
    520 F.3d 797 (7th Cir. 2008) .....................................................................30

*Malley-Duff & Associates, Inc. v. Crown Life Insurance Co.*,
    792 F.2d 341 (3d Cir. 1986), *aff'd*, 483 U.S. 143 (1987) ...........................25

*In re Marriage of Duggan*,
    877 N.E.2d 1140 (Ill. App. Ct. 2007) ........................................................25

*McCormick v. City of Lawrence*,
    325 F. Supp. 2d 1191 (D. Kan. 2004) .......................................................27

*Mercatus Grp., LLC v. Lake Forest Hosp.*,
    641 F.3d 834 (7th Cir. 2011) .....................................................................40

*Mitchell v. Donchin*,
    286 F.3d 447 (7th Cir. 2002) .....................................................................35

*Motorists Mut. Ins. Co. v. Simpson*,
    404 F.2d 511 (7th Cir. 1968) .....................................................................28

*Nero v. Mayan Mainstreet Inv 1, LLC*,
    645 F. App'x 864 (11th Cir. 2016) ............................................................38

*OSF Healthcare Sys. v. Banno*,
    2008 WL 5170628 (C.D. Ill. 2008) ...........................................................21

*Price v. Pinnacle Brands, Inc.*,
    138 F.3d 602 (5th Cir. 1998) ...........................................................24, 25, 26

*Raney v. Allstate Insurance Co.*,
    370 F.3d 1086 (11th Cir. 2004) .................................................................38

*Reynolds v. E. Dyer Dev. Co.*,
    882 F.2d 1249 (7th Cir. 1989) ...................................................................39

*Rios v. Schlein*,
    2017 WL 3671194 (S.D.N.Y. Aug. 24, 2017) ..........................................26

*Rubloff Dev. Grp., Inc.. v. Supervalu, Inc.*,
    2012 WL 1032784 (N.D. Ill. Mar. 27, 2012) ...........................................40

*RWB Servs., LLC v. Hartford Computer Grp., Inc.*,
    539 F.3d 681 (7th Cir. 2008) .....................................................................20

*Sidney Hillman Health Ctr. Of Rochester v. Abbot Labs, Inc.*,
    782 F.3d 922 (7th Cir. 2015) ...........................................................30, 32, 34, 35

iv

*Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago,*
    9 F3d 1236 (7th Cir. 1993) ...................................................................35

*Stephan v. Goldinger,*
    325 F.3d 874 (7th Cir. 2003) ...............................................................34

*Thomas v. Christ Hosp. & Med. Ctr.,*
    328 F.3d 890 (7th Cir. 2003) ...............................................................19

*Travelers Prop. Cas. v. Good,*
    689 F.3d 714 (7th Cir. 2012) ..........................................................28, 29

*United States v. All Assets & Equip. of W. Side Bldg. Corp.,*
    188 F.3d 440 (7th Cir. 1999) ...............................................................23

*United States v. Pendergraft,*
    297 F.3d 1198 (11th Cir. 2002) ......................................................38, 39

*United States v. Weimert,*
    819 F.3d 351 (7th Cir. 2016) ...............................................................39

*Westchester Cnty. Independence Party v. Astorino,*
    137 F. Supp. 3d 586 (S.D.N.Y. 2015) ..................................................26

*Williams v. Brooks,*
    809 F.3d 936 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 335 (2016) .................19

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.,*
    2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016) .......................................25

*Wright v. Szczur,*
    2012 WL 268283 (W.D.N.Y. Jan. 30, 2012) .........................................27

*In re Yasmin (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,*
    2010 WL 3119499 (S.D. Ill. Aug. 5, 2010) ..........................................20

*Zalesiak v. UnumProvident Corp.,*
    2007 WL 4365345 (N.D. Ill. Dec. 12, 2007) .....................................30, 31

## STATUTORY AUTHORITIES

18 U.S.C. § 1962 ...............................................................................20

18 U.S.C. § 1964(c) ..........................................................20, 23, 24, 25, 27, 28

## RULES AND REGULATIONS

Fed. R. Civ. P. 56 .......................................................................1, 18, 19

Local Rule 7.1 ...................................................................................1

## CONSTITUTIONAL PROVISIONS

Ill. Const., art. VI, § 3 ................................................................................................23

U.S. Const., amend. I ..........................................................................................35, 40

Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), by and through counsel and pursuant to Fed. R. Civ. P. 56 and Local Rule 7.1, moves for summary judgment on Plaintiffs' RICO claims and submits the following memorandum of law.

## INTRODUCTION

Plaintiffs' theory of their RICO claims, which are based on the purported "tainting" of the Illinois Supreme Court's unanimous decision to reverse a $1.05 billion award, is a misguided attempt to shoehorn due process claims -- that have been repeatedly rejected by the Illinois and United States Supreme Courts -- into a RICO claim.  The only thing that has changed, however, is the label – RICO.  RICO is not some type of all-purpose legal claim of last resort.  RICO has rigorous requirements that Plaintiffs here cannot satisfy.  Plaintiffs cannot provide evidence giving rise to genuine issues of material fact regarding RICO's basic elements, including proximate cause, injury to business or property, and RICO predicate acts of mail fraud. Their claims are also time-barred.

Plaintiffs have acknowledged that they cannot show that the alleged predicate acts by State Farm led directly to Justice Karmeier's participation in *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005), or to the Illinois Supreme Court's unanimous decision to overturn the $1.05 billion judgment.  As Plaintiffs have conceded, "[i]t may be impossible to know if the Class would have prevailed had the system not been rigged against them." ([438] at 2.) In fact, there is no evidence that Justice Karmeier's participation in *Avery* changed the outcome for the parties. There is no proof that Justice Karmeier deliberated with the other Justices or influenced their votes. There is no evidence that any Justice changed his or her vote after Justice Karmeier joined the Court.  Nor can Plaintiffs overcome these failures in RICO causation by arguing that Justice Karmeier's participation deprived them of due process.  Due process principles are not relevant to proving a RICO claim and do not give

Plaintiffs a free pass on proximate cause or any other element of RICO.

Plaintiffs also cannot show an injury to business or property or "clear and definite" damages, as required for a RICO claim. In their First Amended Complaint ("FAC"), Plaintiffs' alleged injury is the loss of the *Avery* judgment. ([289] ¶¶ 2, 14, 40, 97, 131.) However, Plaintiffs have at times in their briefs characterized their purported injury as the supposed deprivation of due process and a fair tribunal purportedly caused by Justice Karmeier's participation in *Avery* and "related injuries." Neither characterization of their injury satisfies RICO. Plaintiffs' and the class members' purported "interest" in the non-final *Avery* judgment was contingent, speculative and uncertain and therefore, as a matter of law, does not qualify as property for purposes of a RICO claim. Moreover, Plaintiffs' purported due process injury is, as a matter of law, a personal injury, not an injury to business or property. As such, it cannot support a RICO claim. Nor, as a matter of law, are "related injuries," however characterized, that arise from a due process injury recoverable under RICO. In addition, Plaintiffs' claimed per capita damages are not "clear and definite" as required by RICO and fail to correspond to any distinct and separate economic losses actually sustained by the class members.

Furthermore, Plaintiffs' claims are barred by RICO's four-year statute of limitations. Their claims accrued with the Illinois Supreme Court's 2005 reversal of the *Avery* judgment, or at the latest with the United States Supreme Court's 2006 denial of certiorari, at which time Plaintiffs had sustained and discovered their alleged RICO injury. Plaintiffs' claims were barred four years later in 2009 or 2010, well before they filed this RICO action in 2012. Plaintiffs cannot demonstrate any grounds for equitable estoppel or equitable tolling that would permit them to salvage their time-barred claims.

Plaintiffs also cannot establish predicate acts of mail fraud. The statements that Plaintiffs

point to as fraudulent are statements in State Farm's legal briefs and are permissible and appropriate comments on the sufficiency of Plaintiffs' evidence and permissible and appropriate characterizations of the facts and evidence presented.  Furthermore, State Farm's briefs cannot, as a matter of law, provide a basis for RICO mail fraud claims.  In enacting RICO, Congress did not intend to punish ordinary litigation activity or to provide a vehicle for losing parties to re-litigate issues and claims that have been previously rejected by the courts.  Moreover, under the *Noerr-Pennington* doctrine, the alleged predicate acts are not actionable under RICO.

The absence of genuine issues of material fact on the basic elements of RICO and Plaintiffs' inability to overcome the statute of limitations are dispositive of their claims and warrant summary judgment in State Farm's favor.

## STATEMENT OF FACTS

### A.    The Underlying *Avery* Judgment and Decision

1.   *Avery* was a nationwide class action that was filed in the Circuit Court of Illinois, First Judicial Circuit, Williamson County in July 1997.  *Avery,* 835 N.E.2d at 810-12; [289] ¶ 45.

2.   The plaintiffs in *Avery* asserted breach of contract and Illinois Consumer Fraud Act ("ICFA") claims against State Farm based upon State Farm's specification of non-original equipment manufacturer "crash parts" for the repair of its insureds' automobiles.  *Avery,* 835 N.E.2d at 810-11; [289] ¶¶ 3, 45.  Plaintiffs here were among the named Plaintiffs in *Avery.  Id.*

3.   In *Avery¸* the circuit court certified a class of "[a]ll persons in the United States, except those residing in Arkansas and Tennessee, who, between July 28, 1987, and February 24, 1998, (1) were insured by a vehicle casualty insurance policy issued by Defendant State Farm and (2) made a claim for vehicle repairs pursuant to their policy and had non-factory authorized and/or non-OEM (Original Equipment Manufacturer) 'crash parts' installed on their vehicles or else received monetary compensation determined in relation to the cost of such parts." [289] ¶ 37;

*Avery v. State Farm Mut. Auto. Ins. Co.*, 1999 WL 955543, at *1 (Ill. Cir. Ct. Oct. 8, 1999).

4.   At trial, the jury awarded the class: $243,740,000 in specification damages; $212,440,000 for installation damages; and $456,180 in interest, and the circuit court entered judgment for those amounts. *Id*. For the ICFA claims, the circuit court imposed $130,000,000 in "disgorgement" damages and $600,000,000 in punitive damages, *Avery v. State Farm Mut. Auto. Ins. Co.*, 1999 WL 1022134, at *5 (Ill. Cir. Ct. Oct. 8, 1999)), for a total of over $1.1 billion.

5.   The Illinois Appellate Court largely affirmed the *Avery* judgment, but eliminated the "disgorgement" damages as duplicative, reducing the damages award to just over $1.05 billion. *Avery v. State Farm Mut. Auto. Ins. Co.*, 746 N.E.2d 1242 (Ill. Ct. App. 2001); [289] ¶ 46.

6.   State Farm filed a petition for review, which was granted by the Illinois Supreme Court. In May 2003, the case was argued and submitted.  [289] ¶ 47.

7.   The Hon. Lloyd A. Karmeier was elected to the Illinois Supreme Court on November 4, 2004, and he was sworn in to the Court on December 6, 2004.  (A00001-00003.)

8.   On August 18, 2005, the Illinois Supreme Court issued its decision in *Avery*, in which Justice Karmeier participated. As Plaintiffs acknowledge, all six participating Justices voted to reverse the $1.05 billion judgment, decertify the nationwide class, reverse the award of "specification" damages as having "no basis in law," and reverse the judgment on the plaintiffs' ICFA claim (the predicate for the punitive damages award). *See Avery*, 835 N.E.2d at 830, 855, 863; *see also id.* at 863-64, 880 (Freeman, J., concurring in part and dissenting in part, joined by Kilbride, J.); (A00011-00013; [692], pp. 8-10, Nos. 10-15.) Plaintiffs do not contend that any of the rulings on the merits in the Illinois Supreme Court's sweeping reversal were erroneous. (A00010-00011; [692], pp. 7-8, Nos. 7-9.) Nor do Plaintiffs contend that State Farm made any misrepresentations in its briefs on the merits.

### B.   Plaintiffs' Challenges to Justice Karmeier in *Avery*

9.   Between 2005 and 2011, Plaintiffs brought five challenges to Justice Karmeier's participation in the *Avery* decision: (i) a Conditional Motion for Non-Participation (and supporting Memorandum) on January 26, 2005 in the Illinois Supreme Court (A00078-00236) (ii) a Motion to Reconsider the Denial of Conditional Motion for Non-Participation and/or Recusal of Justice Karmeier (and supporting Memorandum) on March 22, 2005 (A00238-00310); (iii) a Petition for Rehearing filed on September 8, 2005 in the Illinois Supreme Court (A00312-00337); (iv) a Petition for Writ of Certiorari filed on December 27, 2005 in the United States Supreme Court (A00338-00356); and (v) a Petition to Recall Mandate and Vacate August 18, 2005 Judgment filed on September 9, 2011 (refiled on September 13, 2011), in the Illinois Supreme Court (A00358-00897.).  Plaintiffs lost all five challenges.

10.   Plaintiffs admit that, in each of these five challenges, they claimed that Justice Karmeier's participation would or did violate their due process rights.  (A00056-00058; [692], pp. 53-55, Nos. 102-106.) These due process claims were premised on State Farm's purported contributions to and other support of Justice Karmeier's 2004 election campaign, which Plaintiffs alleged State Farm concealed from the Illinois Supreme Court.  (A00078-00103; A000238-00243; A00266-00271; A00318-00323; A00349-00356; A00360-00388.)

**Plaintiffs' Conditional Motion for Non-Participation**

11.   In their January 26, 2005 Memorandum in Support of Appellees' Conditional Motion for Non-Participation, Plaintiffs sought the recusal or disqualification of Justice Karmeier from *Avery* on due process and other grounds.  Plaintiffs alleged that: (i) State Farm contributed to Justice Karmeier's campaign through organizations such as the Illinois Civil Justice League ("ICJL"); its political action committee, JUSTPAC; the U.S. Chamber of Commerce; the American Tort Reform Association ("ATRA"); and other organizations; and (ii) State Farm was con-

nected to Justice Karmeier's campaign through Edward Murnane of the ICJL and William Shepherd of State Farm. (A00090-00102.) Plaintiffs also submitted purported evidence, including an affidavit of Plaintiffs' investigator, Douglas Wojcieszak. (A00121-00125.)

12. On January 31, 2005, State Farm filed an Opposition to the Conditional Motion for Non-Participation, arguing that Plaintiffs' contentions and characterizations of the evidence contained serious inaccuracies and distortions. (A00899-01026.) Plaintiffs filed a Motion for Leave to File Response to State Farm's Opposition and a Memorandum in Response (A01028-01235). On February 9, 2005, State Farm filed an Opposition to Plaintiffs' Motion for Leave, in which State Farm again argued that "Plaintiffs' characterizations of State Farm and its employees as 'massive' contributors to and 'major players' in Justice Karmeier's campaign" were baseless. (A01237-01282.)

13. The Illinois Supreme Court denied Plaintiffs' Conditional Motion for Non-Participation on March 16, 2005, without Justices Karmeier and Thomas participating in the decision. (A01284.) No reason was provided by the Court for the denial. Accordingly, the reason for that denial is unknown. (A01289 ¶ 19.)

**Plaintiffs' Motion to Reconsider**

14. In their March 22, 2005 Motion to Reconsider, Plaintiffs sought to recuse Justice Karmeier from *Avery* on due process and other grounds, asserting that "participation by Justice Karmeier would violate the Appellees' ability to present their case to an impartial tribunal, which is a fundamental component of due process." (A00241.) Plaintiffs also re-asserted the arguments they made in their Conditional Motion for Non-Participation. (A00238-00243.)

15. On March 31, 2005 State Farm filed an Objection to Plaintiffs' Motion to Reconsider. (A01309-01318.) In the Objection, State Farm argued, *inter alia*, that there was "no legal or fac-

tual basis for attributing to State Farm contributions made by the U.S. Chamber of Commerce" and that "the purported connections between Justice Karmeier and State Farm" already had been properly rejected by the Illinois Supreme Court.  (A01310, A01311.)

16.  On May 20, 2005, the Illinois Supreme Court vacated its March 16 Order, stating that under the Illinois Rules, recusal was "a decision exclusively within the determination of the individual judge" and that Justice Karmeier had "advised the court that he will not disqualify himself." (A01320.)  Accordingly, the Court denied Plaintiffs' Motion to Reconsider as moot.  (*Id.*)

17.  After Plaintiffs filed their motion for recusal (*i.e.* Conditional Motion for Non-Participation), Justice Karmeier asked his senior law clerk to check Illinois Board of Elections records to determine if there were contributions from State Farm to the Citizens for Karmeier. (A01322-01323.)  There were none found.  (A01328-01570.)

**Plaintiffs' Petition for Rehearing**

18.  After the Illinois Supreme Court issued its August 18, 2005 *Avery* decision, Plaintiffs filed their September 8, 2005 Petition for Rehearing.  Plaintiffs sought rehearing on due process grounds based on Justice Karmeier's participation in the *Avery* decision.  Plaintiffs repeated their allegations that State Farm and Messrs. Shepherd and Murnane were involved in various organizations that supported Justice Karmeier's campaign and that State Farm had contributed "massive sums of money" through these organizations to the campaign.  (A00315.)

19.  The Illinois Supreme Court denied Plaintiffs' Petition for Rehearing. (A01572.)

**Plaintiffs' Petition for Certiorari**

20.  In their December 27, 2005 Petition for Writ of Certiorari to the United States Supreme Court, Plaintiffs again challenged Justice Karmeier's participation in *Avery* on due process grounds, based on State Farm's purported support for and role in Justice Karmeier's campaign.

(A00349-00356.) Plaintiffs asserted, *inter alia*, that "much" of the nearly $5 million raised for Justice Karmeier's campaign "came directly from State Farm and its agents or from groups of which State Farm was an active member and supporter" (A00346) and detailed the purported contributions made by JUSTPAC, the U.S. Chamber of Commerce and other entities.  Plaintiffs also included the allegations that "Mr. Murnane and his State Farm-funded and supported groups … recruited Justice Karmeier to run," as well as other allegations from their motions and briefing in the Illinois Supreme Court, including allegations regarding Shepherd.  (A00346.)

21. On February 3, 2006, State Farm filed its Brief in Opposition to Plaintiffs' Petition (A01573-01610), arguing, *inter alia*, that Plaintiffs' factual assertions "contained serious inaccuracies and distortions," that "Plaintiffs' allegations of 'massive' contributions made directly or indirectly by State Farm had no basis in fact," that "State Farm itself made *no* contributions to Justice Karmeier's campaign," and that "plaintiffs' allegations regarding State Farm's supposed role as a 'major player' in Justice Karmeier election campaign" were "equally misleading." (A01582; A01585; A01589.)

22.  The United States Supreme Court denied Plaintiffs' Petition on March 6, 2006.  (A01612.)

**Plaintiffs' Petition to Recall the Mandate**

23.  On September 8, 2011, Plaintiffs filed in the Illinois Supreme Court a Petition to Recall Mandate and Vacate August 18, 2005 Judgment (refiled on September 13, 2011). Plaintiffs requested that the Illinois Supreme Court vacate the *Avery* decision and reinstate the $1.05 billion judgment on grounds of due process and fraud, arguing that "newly-discovered evidence" showed that State Farm had "lied to and misled" and "concealed information from" the Illinois Supreme Court regarding State Farm's supposed "extraordinary financial and political support for Justice Karmeier's 2004 campaign" in order to "thwart Justice Karmeier's disqualification."

(A00359-00360.)  This purported new evidence included: (1) William Shepherd's membership on the ICJL executive committee; (2) Shepherd's purported selection of Ed Murnane to "run Judge Karmeier's 2004 Illinois Supreme Court campaign;" (3) State Farm's alleged use of JUSTPAC to raise over $1 million for Justice Karmeier's campaign; and (4) "State Farm-influenced contributions" to Justice Karmeier's campaign that "may have" amounted to "more than $4 million in direct, indirect, and in-kind support." (A00360-00376.)  Plaintiffs also alleged that State Farm, "through Shepherd, Murnane and others" "recruit[ed]" Justice Karmeier (A00364) and had "immensely powerful … control over and support of Justice Karmeier's campaign." (A00363.)  Plaintiffs claimed that the *Avery* judgment "was procured through State Farm's concealment of a fraud on this Court," and that "State Farm's extraordinary financial and political support for Justice Karmeier's 2004 campaign created a constitutionally unacceptable risk of bias such that his participation and vote to reverse the *$1.05 billion* judgment deprived Petitioners of their due process rights …." (A00359; A00361.)

24.  Plaintiffs also argued that it should be "presumed" that Justice Karmeier's participation had affected the Court's deliberations and conclusions in *Avery*.  (A00386.)

25.  In support of their Petition, Plaintiffs submitted the affidavits of Daniel Reece, who Plaintiffs stated had "accumulated" new evidence "through person-to-person interviews" (A00359.), and Douglas Wojcieszak, who Plaintiffs identified as "a former Murnane associate and Illinois tort reform-insider."  (A00363.)

26.  On September 19, 2011, State Farm filed a Response in Opposition to Plaintiffs' Petition, arguing, *inter alia*, that the Illinois Supreme Court had already rejected Plaintiffs' claims and their supposedly new evidence was a recycled version of prior submissions.  (A01614-02425.)

27.  On September 19, 2011, State Farm also filed motions to strike the Reece and Wojcieszak

affidavits because they were comprised of hearsay, improper lay opinions, conclusions and speculation and lacking in foundation.  (A02427-02444; A02446-02462.)

28.  On November 17, 2011, the Illinois Supreme Court unanimously denied Plaintiffs' Petition, without the participation of Justice Karmeier or Justice Thomas.  (A02464.) The Court also struck the Reece and Wojcieszak Affidavits.  (A02466.)  Justices Theis and Burke, who were not on the Court in 2005, participated in these decisions.  (A01299.)

29.  Plaintiffs' counsel did not file a petition for writ of certiorari to the United States Supreme Court from the denial of the 2011 Petition, out of concern that "it might have a negative impact on our RICO lawsuit." (A02467-02468.)

      **C.**    **The Proceedings in *Hale***

**Plaintiffs' Pleading and Motion Practice**

30.  Plaintiffs filed their original Complaint ([2]) on May 29, 2012, and their FAC ([289]) on November 4, 2014.  Plaintiffs claim that State Farm violated RICO by supposedly defrauding the Illinois Supreme Court through two allegedly mailed briefs: (1) State Farm's January 31, 2005 Opposition to Plaintiffs' Conditional Motion for Non-Participation; and (2) State Farm's September 19, 2011 Response to Plaintiffs' Petition to Recall Mandate and Vacate August 18, 2005 Judgment. (*See* [289] ¶¶ 93, 99, 100-07.)  These two challenged briefs are the only State Farm briefs Plaintiffs assert as RICO predicate acts. ([289] ¶¶ 13, 99-107.)

31.  In their FAC, Plaintiffs assert that "Plaintiffs' counsel launched an investigation into State Farm's covert involvement in the Karmeier campaign" in "December 2010, spurred in part by a recent United States Supreme Court decision vacating a West Virginia Supreme Court ruling," *i.e.*, *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868 (2009).  ([289] ¶ 9.)

32.  Plaintiffs' investigator Wojcieszak testified that he resumed working on *Avery* in July 2009 and by September 2009 was evaluating potential "RICO violations by the U.S. Chamber and

their affiliates." (A02511-02515; A02517-02518.)

33.  Plaintiffs' FCA asserts injury in the loss of the $1.05 billion *Avery* judgment, which was unanimously reversed by the Illinois Supreme Court.  ([289] ¶¶ 2, 14, 40, 97, 131.)   In their briefing and sworn interrogatory answers, Plaintiffs have also asserted that they sustained a constitutional injury or injuries "en route" to the Illinois Supreme Court's merits decision in *Avery*, based upon the contention that State Farm violated their due process rights by securing Justice Karmeier's participation in *Avery* and thus creating a "tainted tribunal."  ([67] p. 16; *see also*, *e.g.*, [50] p. 11; [87] p. 10; A02470-02471, A02474, A02477, Nos. 1, 6, 10.)

34.  On September 16, 2016, this Court certified a class including the original *Avery* class members and persons who State Farm argued were excluded from the *Avery* class.  ([556] p. 28.)

### The Class Members' Purported Damages

35.  State Farm's Interrogatories required Plaintiffs to "[d]escribe with specificity" how they "plan[ned] to prove … the alleged damage to which each putative class member would allegedly be entitled." (A02472, No. 4.)  Without citation to the RICO text or governing caselaw, Plaintiffs answered that "each class member submitting a claim will receive an equal share of the damages, irrespective of how many non-OEM replacement crash parts were estimated to be placed in that class member's vehicle and irrespective of the amount or value of the non-OEM crash parts actually installed in that class member's vehicle," so that "each Plaintiff's specific allocation in this case will depend not on the number of non-OEM crash parts quoted or installed in his or her vehicle, but on the total number of class members who participate in the action and recovery." (A02470-02472, incorporated by Plaintiffs as Response to No. 4.)

36.  Plaintiffs contend that each class member is entitled to a per capita share of the total amount of damages irrespective of whether the class member (a) resides in Illinois, (b) did not have a

non-OEM part installed on their vehicle, (c) had a vehicle that was restored to its pre-loss condition, (d) had OEM parts installed on their vehicle at no additional cost, (e) sold the vehicle and received the same value as if it had been repaired with OEM parts, or (f) had multiple claims. (A00025-00027, Nos. 43-49.)

37.  State Farm's economist expert, Dr. Lauren Stiroh, opined that "[t]here is no basis to assume, and *Hale* Plaintiffs provide no basis to support their assumption, that but for any alleged wrongful conduct on behalf of State Farm, *Hale* Plaintiffs would have received an equal share, or any share, of the $1.05 billion judgment." (A02529, ¶ 14(vi).)  She observed that the "proposed per capita payments based on an equal share of the *Avery* judgment do not account for differences in class members' claimed economic damages, and would result in windfalls for those who would likely have received zero payments in the but-for world." (*Id.*)  Dr. Stiroh stated that a payment of economic damages would likely have been based on the circumstances of each class member's claim, which would have resulted in widely divergent payments, if any, to class members. (A02542-02545, ¶¶ 49-54).)  For example, as Dr. Stiroh noted, the *Avery* plaintiffs and the *Avery* trial and appellate courts all contemplated that the "installation" damages to which a class member might be entitled would depend upon the non-OEM parts received.  (A02543-02545, ¶¶ 51-53); *Avery*, 1999 WL 1022134, at *6; A02573-02749, pp. 49, 67-68; *Avery*, 746 N.E.2d at 1260.)

38.  The circumstances of the *Avery* and *Hale* plaintiffs, as summarized by Dr. Stiroh, were widely variant, where some received non-OEM crash parts and others did not, some only had non-OEM parts specified, and the prices of specified non-OEM parts varied exponentially. Dr. Stiroh also observed that class members may have made multiple claims and that multiple class members might be covered under the same claim.  (A02542-02545, ¶¶ 50-54; A02665-02666.)

39.  Dr. Stiroh analyzed Plaintiffs' assertions that their claimed damages here were caused by the

Defendants' alleged wrongful conduct and concluded that neither Plaintiffs nor their experts have established that the economic outcomes experienced by Plaintiffs are any different than they would have been but for State Farm's alleged wrongful conduct.  (A02527-02528, ¶ 14(i), (ii).)  In particular, she observed that Plaintiffs and their experts have failed to establish that the Illinois Supreme Court's decision and the reversal of the *Avery* judgment would have been any different had Justice Karmeier not participated in the decision.  (*Id.*, ¶ 14(ii).)

**Fundraising for Justice Karmeier's Campaign**

40.  In his deposition, Justice Karmeier testified unequivocally that he did not know the sources of his contributions, did not have any knowledge that anyone from State Farm or related to State Farm supported his campaign, and did not know that State Farm or anyone related to State Farm had contributed to his campaign whether directly or indirectly. (A01323-01324.) Justice Karmeier had heard nothing about purported State Farm contributions to his campaign until Plaintiffs filed their Conditional Motion for Non-Participation. (*Id.*) He had no memory of ever meeting Defendant William Shepherd (alleged to be a "central figure" in his campaign ([289] ¶ 52)), and testified that Shepherd never served on his campaign committees.  (A01325-01326.)

41.  State Farm's expert Sheila O'Brien, retired Illinois Appellate Court Justice, explains that in every judicial campaign she has been involved in, including her own campaign and the judicial campaigns where she has had a formal or advisory role, she recommended and followed the practice of keeping herself and the judicial candidates out of fundraising and unaware of the amount and identity of their contributors, in order to comply with Illinois Supreme Court Rule 67(B)(2).  (A02756, ¶ 30.)  She explains that Justice Karmeier's testimony that he was not involved in any aspect of fundraising is consistent with her experience that Illinois judges do not know and do not want to know who gave money to their campaign.  (A02756, ¶ 32); *see also*

A02779-02781 (referencing published statements by Justice Gordon Maag during the 2004 campaign that he "had deliberately avoided any knowledge of who has contributed to his campaign or how much"). Justice O'Brien also explains that in her experience, a judge facing a recusal motion based on campaign contributions should ask his or her clerk to consult the publicly-available State Board of Elections records, as Justice Karmeier testified he did when Plaintiffs moved to recuse him in *Avery*.  (A02758, ¶ 39; A02777-02778; SOF ¶ 17.)

42.  State Farm's expert Richard Painter, a professor of lawyer and judicial ethics, testified that he is not aware of any authority suggesting that a judge should investigate beyond the contributions reported in the public record when evaluating a recusal challenge.  (A02784-02789.)

43.  Plaintiffs' expert Richard Means, an election law lawyer, goes "even farther than Judge O'Brien" and counsels judicial candidates to "consciously and purposely wall" themselves off from knowledge about contributions to their campaigns.  (A02793-A02794.)

44.  Plaintiffs' expert Joanna Shepherd offers an opinion based on "empirical social science literature," not her own work, that Justice Karmeier's involvement in the *Avery* decision may have "influenced the thinking and votes of the other judges deciding the case." (A02797.)  At her deposition, however, Shepherd admitted that Justice Karmeier may have voted the way he did in *Avery* "simply because he was predisposed to vote for a pro-business interest" and that one "can't know" whether State Farm's alleged conduct had anything to do with how he voted. (A02809-02810.) Shepherd testified that: (a) it's "impossible" to determine whether Justice Karmeier had "an influence on other judges" on the *Avery* panel and "there's just no way of knowing whether Justice Karmeier caused any [J]ustice to change any vote on any issue in the Avery case"; (b) "[n]o one" knows and "[t]here's no way of knowing" what took place in the Supreme Court deliberations in *Avery*; and (c) one would "just have to speculate" or "just guess"

as to whether the *Avery* outcome would have been different but for the alleged RICO violations by State Farm and Justice Karmeier's participation.  (A02799-02810.)

**State Farm's Purported Involvement With Other Organizations**

45.  In 2003 and 2004, State Farm made no contributions to Citizens for Karmeier, JUSTPAC, the Illinois Republican Party, or the political action committees of the Illinois Coalition for Jobs, Growth and Prosperity and Illinois Chamber of Commerce. (A01328-01570; A02812-03022.)

46.  In June 2003, State Farm made an annual contribution of $100,000 to the U.S. Chamber of Commerce for its Leadership Fund. (A03027-03030; A03080-03081; A03085.)  In June 2004, State Farm made another annual contribution of $100,000 to the U.S. Chamber of Commerce for its Leadership Fund.  (A03031-03034; A03081; A03085.)  As Plaintiffs' expert Thomas Myers admitted at his deposition, State Farm made this annual contribution, in the same amount, to the U.S. Chamber of Commerce's Leadership Fund every year from 2002 to 2011.  (A03023-03069; A03079; A03087; A03101.)

47.  In May 2003, State Farm made an annual dues payment of $1,000,000 to the Institute for Legal Reform ("ILR") of the U.S. Chamber of Commerce.  (A03110-03113; A03081; A03085.)  In May 2004, State Farm made another annual dues payment of $1,000,000 to the ILR.  (A03114-3117; A03081; A03085.)  Again, Myers admitted that State Farm made this annual dues payment, in the same or greater amount, to the ILR every year from 2002 to 2011.  (A03106-3165; A03086.)

48.  State Farm's witnesses and the representatives of the U.S. Chamber of Commerce, the ILR, ATRA, and the Illinois Chamber of Commerce have all testified that no one at State Farm earmarked any of its contributions to those organizations for the Karmeier campaign or any other political purpose, nor did anyone at State Farm direct any of those organizations to spend money

on the Karmeier campaign or in any other way.[1]  State Farm's dues and/or contributions were only a small percentage of their revenues.  (A03268, ¶ 21); A03089-03093; A03319-03357; A03358-03386; A03384; A03385-03400.)

49.  The staffs of the U.S. Chamber of Commerce, the ILR, ATRA, and the Illinois Chamber of Commerce made the decisions about how those organizations' monies were spent. (A03181-03182, A03184, A03188-03190; A03199-03200, A3202, A3205; A03229-03230, A03233-03234.) The boards of directors did not make those decisions.

50.  State Farm was among dozens of entities whose employees were on the boards of the ILR, ATRA, and the Illinois Chamber of Commerce, and among the hundreds whose employees were on the board of the U.S. Chamber of Commerce.  (A03072; A03197-03198; A03238, A03242-03243.) State Farm had no leadership or active role on those boards during 2003-04. (A03191-03192; A03221-03222; A03247-03249, A03253-03254, A03257-03259.)

51.  Plaintiffs' expert Myers conceded that he "wasn't able to make th[e] determination" whether the organizations identified by Plaintiffs earmarked money from State Farm for particular purposes "because [he] didn't have enough information."  (A03084.)  State Farm's forensic accounting expert, Bruce Dubinsky, explained that Myers "makes speculative, unfounded assumptions and conclusions [regarding supposed earmarking] that are, in fact, absolutely contradicted by the evidence as presented." (A03431.)[2]

**State Farm's Alleged Misrepresentations and Magistrate Judge Williams'**
**Ruling on the Crime Fraud Exception**

52.  State Farm's interrogatories required Plaintiffs to identify "all statements in State Farm's

---

[1] (A03167-03171; A03175-03176; A03096-03100, A03102-03103; A03179, A03184-03185, A03187; A03189-03191, A03193-03194; A03202-03203, A03208; A03214-03218, A03223-03226, A03229-03232, A03235-03237, A03239; A03245-03246, A03249-03252, A03255.)

[2]  Plaintiffs' other experts all rely on Myers' flawed and speculative assumptions and conclusions. State Farm will seek to exclude Myers' opinions and testimony under *Daubert*.

briefing in the *Avery* Litigation that you contend were false." (A02478, No.12.)  Plaintiffs answered that in State Farm's January 31, 2005 brief, State Farm "falsely and/or misleadingly represented that: its support for Justice Karmeier consisted of 'quite modest contributions,' it had not funneled $350,000 to Justice Karmeier's campaign or peddled its enormous political influence to his benefit as 'incorrect and meritless,' and 'it had not been involved in 'engineering contributions' to Justice Karmeier's campaign 'for the purpose of impacting the outcome of his case.'" (A02478-02479.) Plaintiffs also asserted that State Farm "failed to disclose that its own employee, Defendant Shepherd, was a member of the Illinois Civil Justice League Executive Committee that had recruited and endorsed Justice Karmeier, and that through Defendant Murnane, State Farm organized, funded and directed Justice Karmeier's campaign."  (A02479.) Plaintiffs further asserted that in its September 19, 2011 brief, State Farm "falsely and/or misleadingly stated that 'Murnane was not Karmeier's campaign manager ....'" (*Id.*)

53.  In response to State Farm's Interrogatory requiring Plaintiffs to "[s]tate the factual basis for any … contention" by them "that the Justices of the Illinois Supreme Court were deceived" by any of the foregoing statements, Plaintiffs answered: "Plaintiffs do not speculate, nor are they required to, as to whether any Justice on the Illinois Supreme Court was 'deceived' by or relied upon State Farm's false and/or misleading statements."  (A02477, No. 10.)

54.  In order to evaluate Plaintiffs' crime-fraud challenge to State Farm's privileges, Magistrate Judge Williams examined the evidence put forth by Plaintiffs to support their allegations of misstatements.  Judge Williams repeatedly concluded that Plaintiffs' allegations were "not founded in fact." (A035521-03523; [300] pp. 5-7.)  For example, Judge Williams found that Plaintiffs had failed to show any falsity in State Farm's statement that, despite Plaintiffs' attempt to link large sums in contributions to Justice Karmeier's campaign to State Farm, in fact, "a limited number

17

of [its] officers and employees made quite modest contributions." (A03521; [300] p. 5.) Judge

Williams explained that Plaintiffs were "not able to connect the dots on the money trail from

State Farm to the Karmeier campaign" and were "unable to show … that their allegation[] that

State Farm funneled massive amounts of money to the Karmeier campaign is founded in fact in

the record." (A03521-03522; [300] pp. 5-6.) Likewise, Judge Williams found that State Farm's

statement that Murnane was not Justice Karmeier's campaign manager was true because

"Murnane was not Karmeier's campaign manager. Steve Tomaszewski was." (A03523; [300] p.

7.) Judge Williams also rejected Plaintiffs' challenge to State Farm's statement that Plaintiffs'

theory of State Farm's involvement in the Karmeier campaign had "no relationship in reality,"

ruling again that Plaintiffs had "fail[ed] to connect the dots from State Farm to Karmeier's cam-

paign." (A03523-03524; [300] pp. 7-8.) Judge Williams concluded that State Farm's challenged

statements "represent[ed] advocacy in that the statements commented on the evidence presented

by Plaintiffs at the time" and such "comment[ary] on the evidence" is "not indicative of a fraud."

(A03525-03526; [300] pp. 9-10.) Plaintiffs did not object to Judge Williams' rulings.

55. State Farm's expert Richard Painter has opined that State Farm's contentions in its 2005 and

2006 briefs (such as that it does not control the organizations identified by Plaintiffs and that its

payments of dues and/or contributions to such organizations were not contributions to the

Karmeier campaign) are permissible advocacy and a rational interpretation of the facts.

(A03281-03295, §§ V-VI.)

## ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD

"Summary judgment is warranted when the movant shows no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." *Cowell v. Auction

Broad. Co.*, 2017 WL 76925, at \*1 (S.D. Ill. Jan. 9, 2017) (Herndon, J.) (citing Fed. R. Civ. P.

56(a)).  In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden is satisfied if the movant can point to an absence of evidence to support an essential element of the nonmoving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its burden, the nonmoving party "may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth facts showing that there is a genuine issue for trial.'" *Harvey v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (citation omitted).  The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Illinois Extension Pipeline Co. v. Summann*, 2016 WL 630022, at *3 (S.D. Feb. 17, 2016) (Herndon, J.) (citation omitted).  "'[I]nstead, the nonmovant must present definite, competent evidence in rebuttal,' ... and 'must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial.'" *Henson v. Dep't of Health & Human Servs.*, 2017 WL 1090815, at *2 (S.D. Ill. Mar. 23, 2017) (Herndon, J.) (citations omitted).  "An issue of material fact exists only when the fact at issue is outcome determinative; '[i]rrelevant or unnecessary factual disputes do not preclude summary judgment.'" *Illinois Extension Pipeline Co.*, 2016 WL 630022, at *3 (citation omitted).

In evaluating a motion for summary judgment, the Court will not draw inferences "'supported by only speculation or conjecture,'" *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir.) (citation omitted), *cert. denied*, 137 S. Ct. 335 (2016), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892-93 (7th Cir. 2003).

## II.    PLAINTIFFS CANNOT SHOW RICO CAUSATION

RICO has exacting requirements. Plaintiffs can recover under a RICO claim only if they establish that they sustained an injury to business or property "by reason of" a violation of 18

U.S.C. § 1962.  *See* 18 U.S.C. § 1964(c).  The statutory language "by reason of" requires both "but for" and proximate causation.  *See DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011); *Hemi Grp., LLC v. City of New York*, 130 S. Ct. 983, 989 (2010).  As this Court has held, there must be "a direct relationship between the plaintiff's injury and the defendant's injurious conduct."  *In re Yasmin (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 WL 3119499, at *4 (S.D. Ill. Aug. 5, 2010) (Herndon, J.); *see also RWB Servs., LLC v. Hartford Computer Grp., Inc.*, 539 F.3d 681, 686 (7th Cir. 2008) (RICO plaintiffs must show both that the injury would not have happened without the defendant's alleged conduct and that the conduct "'led directly to the plaintiff's injuries.'") (citation omitted).  Proximate cause is not satisfied where the "link" is "'too remote,' 'purely contingent,' or 'indirect'" or where causation depends on the independent actions of third parties.  *See Hemi Grp.*, 130 S. Ct. at 989 (citation omitted).

Plaintiffs cannot show a direct line of causation between their alleged injury (the loss of the $1.05 billion judgment in *Avery*) and the alleged predicate acts (the mailing of State Farm's January 31, 2005 and September 8, 2011 briefs).  Plaintiffs do not contend that there is any evidence to suggest that, in making the August 18, 2005 merits decision reversing the $1.05 billion judgment, the Illinois Supreme Court or any Justice of the Court relied on State Farm's January 31, 2005 brief, which dealt with recusal – not the merits issues.  Thus, there is no direct connection between the Illinois Supreme Court's *Avery* decision and the alleged predicate acts.

Because there is no direct connection, Plaintiffs are left with only the indirect and speculative argument that, after State Farm filed its January 31, 2005 brief, (i) the Illinois Supreme Court and/or Justice Karmeier relied on the supposed misrepresentations in State Farm's brief in deciding whether Justice Karmeier should participate; (ii) but for that reliance, Justice Karmeier would not have participated; and (iii) Justice Karmeier's participation caused

the reversal of the *Avery* judgment.  Plaintiffs cannot establish any of these essential causal links.

First, there is no evidence that either the Illinois Supreme Court or Justice Karmeier relied on the alleged misrepresentations in State Farm's January 31, 2005 brief.[3]  Indeed, in response to a State Farm Interrogatory, Plaintiffs identified no "factual basis for any contention" by them "that the Justices of the Illinois Supreme Court were deceived" by any alleged misstatements in State Farm's briefs. (SOF ¶ 53.) Instead, Plaintiffs conceded that "Plaintiffs do not speculate, nor are they required to, as to whether any Justice on the Illinois Supreme Court was 'deceived' by or relied upon State Farm's false and/or misleading statements."  (*Id.*)

Second, there is no evidence that State Farm's purported misrepresentations in its brief led to Justice Karmeier's participation in *Avery*.  To the contrary, Justice Karmeier's uncontroverted testimony is that he himself had no knowledge that State Farm supported his campaign in any way and that he decided to participate after having his senior law clerk check the Illinois elections website for contributions from State Farm. (A01322-01323; SOF ¶¶ 17, 40.) In other words, Justice Karmeier did not rely upon any purported misrepresentations by State Farm, and there is no causal link between the alleged misrepresentations and his participation.

Third, Plaintiffs can offer no more than conjecture and surmise as to how the Illinois Supreme Court would have resolved *Avery* if Justice Karmeier had not participated in the decision.  There is no evidence that Justice Karmeier's participation caused the Illinois Supreme Court to reverse the judgment in *Avery*. As Plaintiffs' expert Shepherd conceded, there is no evidence that Justice Karmeier's participation had any effect on the votes of the other Justices,

---

[3]  RICO plaintiffs alleging injury "by reason of" predicate acts of mail fraud must "show[] that *someone* relied on the defendants' misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658-59 (2008). Because Plaintiffs did not rely on State Farm's alleged misrepresentations, they must show reliance by the Illinois Supreme Court or Justice Karmeier – which they cannot. *See OSF Healthcare Sys. v. Banno*, 2008 WL 5170628, at *4 (C.D. Ill. 2008) (Mihm, J.).

who were unanimous in reversing certification of the nationwide *Avery* class and the nationwide $1.05 billion judgment in favor of the class. (SOF ¶ 44.) In fact, Plaintiffs admitted that they cannot prove causation when they acknowledged that "[i]t may be impossible to know if the Class would have prevailed had the system not been rigged against them." ([438] p. 2.) *See James Cape & Sons Co.*, 453 F.3d at 403 (RICO causation not satisfied where it could not be shown "whether [the plaintiff] would have won any of the contracts that were the subject of the conspiracy 'for any number of reasons unconnected to the asserted pattern of fraud'") (citation omitted); *Kaye v. D'Amato*, 357 F. App'x 706, 716 (7th Cir. 2009) (RICO causation not satisfied because plaintiff could not demonstrate that the city "would have sold him the Kane Place property had they not decided to sell it to Kohler"). Under *James Cape* and *Kaye*, "impossible to know" equals failure of causal proof.

Moreover, at his deposition, Justice Karmeier testified unequivocally that, until Plaintiffs filed their Conditional Motion for Nonparticipation, he had no knowledge of any alleged contributions to his judicial campaign, direct or indirect, from State Farm or anybody related to State Farm. (SOF ¶ 40.). That testimony is uncontroverted. If Justice Karmeier did not know of any contributions from State Farm and believed, based on his clerk's check of the elections records, that there were no such contributions, Plaintiffs' attempt to base causation on the theory that the purported contributions influenced his vote to reverse in *Avery* fails completely. There is no demonstrable causal link between the alleged RICO predicate acts and Justice Karmeier's vote.[4]

Justice Karmeier's vote was not decisive. All six participating Justices were unanimous

---

[4]   The second alleged predicate act, State Farm's 2011 brief in response to Plaintiffs' Petition to Recall the Mandate, caused no new RICO injury to business or property. The Illinois Supreme Court's 2011 denial of the Petition simply left its 2005 decision in place. Moreover, Justice Karmeier did not participate in the Court's 2011 decision, and there is no evidence that the 2011 tribunal was "tainted" in any way or did not afford Plaintiffs due process. Finally, because the 2011 decision was not accompanied by a written opinion, the grounds for the decision are not known and it cannot be shown that the Court relied upon any alleged misrepresentation by State Farm in reaching its decision.

in reversing certification of the nationwide class and the $1.05 billion judgment, the award of specification damages, and the judgment on Plaintiffs' ICFA claim.  That the Justices disagreed on the rationale for some rulings does not alter the fact that the outcome was unanimous and that even without Justice Karmeier's vote there were five votes to reverse -- one more than the four votes for a decision required by the Illinois Constitution.  Ill. Const., art. VI, § 3.

Plaintiffs' recycled contentions that Justice Karmeier's participation "tainted" the Illinois Supreme Court and deprived Plaintiffs of due process and a fair tribunal (*e.g.*, [438] pp. 15-16) have no relevance to, and do not provide a means of satisfying, RICO causation. The RICO causation inquiry is whether a defendant's predicate acts were the direct, proximate, and "but-for" cause of the injury to the plaintiffs' business or property.  *See DeGuelle*, 664 F.3d at 199. The RICO causation inquiry is not the *Caperton* due process inquiry.

Plaintiffs provide absolutely no authority to support their contention that some supposed due process "presumption" or exception can be grafted onto the causation requirement set forth in the statutory text of 18 U.S.C. § 1964(c).  The plain text of RICO provides a private right of action only for an injury to business or property *caused* by a RICO violation.  *See id.*  Moreover, Plaintiffs' purported due process "presumption" of causation does not exist.  A plaintiff asserting a due process or other constitutional claim cannot recover more than nominal damages unless he or she shows that the due process violation caused actual injury or damages.  *See, e.g.*, *United States v. All Assets & Equip. of W. Side Bldg. Corp.*, 188 F.3d 440, 444 (7th Cir. 1999) (To recover compensatory damages for a constitutional violation, a plaintiff must "demonstrate actual injury *resulting from* the violation." (emphasis added)).

The RICO statute and case law are clear: Plaintiffs must actually prove that the alleged RICO violations were the "but for" and proximate cause of RICO injuries to business or

property, which in this case necessitates a showing that the alleged predicate acts actually changed the outcome of the *Avery* case in the Illinois Supreme Court.  Moreover, as discussed below, RICO does not provide a cause of action for constitutional violations or permit recovery of monetary damages arising from constitutional violations (*see* Point III.A *infra*), much less provide recovery for such injuries without proof of proximate causation.  Plaintiffs cannot circumvent the need for proof that the alleged RICO predicate acts led directly to their purported injury to business or property by arguing that their constitutional rights were violated.

## III.   PLAINTIFFS HAVE NOT SUSTAINED A COGNIZABLE RICO INJURY

Plaintiffs do not claim an injury to business, so they must show an injury to property.  *See* 18 U.S.C. § 1964(c). They cannot do so, and their claims fail as a matter of law.

### A.   Plaintiffs Cannot Establish a RICO Injury to Property

At different times, Plaintiffs have asserted two purported injuries: (i) the loss of the "rightful damages awarded to [Plaintiffs and class members] by the *Avery Action* judgment" ([289] ¶ 98), and (ii) a due process injury consisting of the loss of a fair tribunal.  ([67] pp. 15-16; [50] p. 11.)   Whether Plaintiffs are claiming two separate injuries or only one, neither purported injury is cognizable under RICO.

**The Alleged Loss of the *Avery* Judgment.**  To satisfy RICO, a property interest must qualify as such under state law. *Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992) (whether a property interest exists for RICO purposes is "quintessentially a question of state law.").  The alleged injury also must be "concrete and actual" and not "speculative and amorphous." *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006). "Injury to mere expectancy interests or to an 'intangible property interest'" is insufficient under RICO.  *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998). Plaintiffs' purported injuries do not meet these requirements.

Plaintiffs' asserted interest in the non-final judgment of the Illinois Appellate Court is not

a property interest under Illinois law. *See In re Marriage of Duggan*, 877 N.E.2d 1140, 1145 (Ill. App. Ct. 2007) ("a judgment that is pending on appeal is not a final judgment" and not a vested right of property); *Evans v. City of Chicago*, 689 F.2d 1286, 1296 (7th Cir. 1982) ("Under Illinois law, a judgment becomes a vested right of property once it is no longer subject to review or modification."), *overruled on other grounds*, 873 F.2d 1007 (7th Cir. 1989).  Plaintiffs have not cited any case that holds that an interest in a non-final judgment, such as the judgment of the Illinois Appellate Court here, is a property interest under the law of Illinois or any other state. Federal law is substantially the same. As one court stated in holding that an interest in a non-final judgment did not constitute "property" for purposes of the Hobbs Act, an interest in a "non-final judgment" would "'not vest until a final unreviewable judgment [was] obtained.'"  *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, 2016 WL 1298987, at *6 (S.D.N.Y. Mar. 31, 2016) (Nathan, J.) (dismissing RICO claims) (quoting *Ileto v. Clock, Inc.*, 565 F.3d 1126, 1141 (9th Cir. 2009)); *Hosp. Ass'n of N.Y. State, Inc. v. Toia*, 577 F.2d 790, 797 (2d Cir. 1978) (party "possessed no vested right in the judgment entitling it to protection under the Due Process Clause because it had not yet become final and unreviewable").[5]

Moreover, even if a particular state's law recognized a property right in a non-final judgment, that right would not satisfy the additional requirements of RICO. *Doe*, 958 F.2d at 768.  *See also Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("[E]ven though courts may look to state law to determine, for RICO purposes, whether a property interest exists, it does not follow that any injury for which a plaintiff might assert a state law claim is necessari-

---

[5]  *Malley-Duff & Associates, Inc. v. Crown Life Insurance Co.*, 792 F.2d 341 (3d Cir. 1986), *aff'd*, 483 U.S. 143 (1987), cited previously by Plaintiffs ([438] p. 17 n.17), does not support Plaintiffs' contention that a cause of action is property for purposes of 18 U.S.C. § 1964(c). *Malley-Duff* held that when a cause of action "arises out of the termination of a business," conduct impairing that cause of action may be a "business injury."  *Malley-Duff*, 792 F.2d at 354. *Malley-Duff* is irrelevant to whether Plaintiffs here have sustained an injury to property.

ly sufficient to establish a claim under RICO.").  Under RICO, an injury to property is not satis-fied if the injury or the alleged property interest is a "mere expectancy" or is contingent, specula-tive, intangible, or amorphous.  *See, e.g.*, *Evans*, 434 F.3d at 932 (requiring a "'concrete and ac-tual'" injury to business or property, and not an injury that was merely "speculative and amor-phous") (citation omitted); *Price*, 138 F.3d at 607 ("[i]njury to mere expectancy interests or to an 'intangible property interest'" insufficient under RICO) (citation omitted).

Under these rules, Plaintiffs' intangible interest in a non-final judgment does not qualify as property for purposes of RICO. That interest was contingent both upon the judgment being affirmed by the Illinois Supreme Court and upon each Plaintiff's or class member's ability to substantiate their claim to relief in further individual proceedings. (*See infra* at 28.)   Such a contingent and uncertain expectancy is not an injury to property under RICO.  *Kimberlin v. Nat'l Bloggers Club*, 2015 WL 1242763, at *12 (D. Md. Mar. 17, 2015) (speculative "[i]njury to mere expectancy interests" not sufficient under RICO); *cf. In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 989 (9th Cir. 1987) (cause of action "is property of a substantially different nature than real or personal property or vested intangible rights" and "does not afford the holder the traditional bundle of rights associated with the ownership of property;" "'[i]ts value is contingent on successful prosecution to [final, unreviewable] judgment'" (citation omitted)).

**The Alleged Deprivation of Due Process and a Fair Tribunal.**  Plaintiffs' purported deprivation of due process and a "fair tribunal" (*e.g.*, [438] pp. 1, 11, 13, 15) is not a RICO injury, but a personal injury.  RICO does not provide a remedy for such injuries.  *See Rios v. Schlein*, 2017 WL 3671194, at *3 (S.D.N.Y. Aug. 24, 2017) (Wood, J.) ("'deprivation of constitutional rights is a personal injury that is not protected by RICO'") (quoting *Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015)); *Wright v.*

*Szczur*, 2012 WL 268283, at \*4 (W.D.N.Y. Jan. 30, 2012) (Skretny, J.) ("deprivation of constitutional rights" is not a RICO injury); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1085-86 (C.D. Cal. 2008) ("plaintiff's alleged deprivation of his constitutional rights to file suit and to due process of law are ... personal in nature" and not a RICO injury), *adopted*, 642 F. Supp. 3d 1060 (C.D. Cal. 2009 (Selna, J.); *McCormick v. City of Lawrence*, 325 F. Supp. 2d 1191, 1209 (D. Kan. 2004) (Van Bebber, J.) (similar), *aff'd*, 130 F. App'x 987 (10th Cir. 2005).

Moreover, the RICO statutory terms "business or property" preclude recovery not only for personal injuries, but also for "*pecuniary losses incurred therefrom.*" *Evans*, 434 F.3d at 925 (emphasis added); *see also Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565 (6th Cir. 2013) (RICO "exclud[es] damages 'arising directly out of' a personal injury, even though personal injuries often lead to monetary damages that would be sufficient [under § 1964(c)] if the plaintiff alleged a non-personal injury'"). Thus, neither Plaintiffs' claimed "'denial of their constitutional rights'" nor the "'related injury'" that was supposedly incurred therefrom (the loss of the *Avery* judgment) is compensable under RICO. ([661] at 24.)

**B.    Plaintiffs' Claimed Per Capita Damages Are Improper and Do Not Satisfy RICO's Damages and Injury Requirements**

A RICO plaintiff must show entitlement to "clear and definite" damages.  *See Evans*, 434 F.3d at 932.  No Plaintiff or class member meets that requirement because the *Avery* trial court's planned individual determinations on the class members' damages never occurred given the reversal of the judgment. Plaintiffs' arbitrary proposal to shortcut the process by distributing the $1.05 billion judgment per capita to the class members is improper both under RICO and under the economic principles governing damages.[6]

---

[6]   In granting class certification, this Court accepted Plaintiffs' proposal for per capita damages, holding that per capita damages were permissible because "the injury in this case is based on the interest the plaintiffs and the proposed class members had in a neutral forum," an interest that the

Contrary to Plaintiffs' contentions, Plaintiffs and the class members do not have a common and undivided interest in the $1.05 billion *Avery* judgment.  Rather, had that judgment stood, each Plaintiff and class member would have had to demonstrate the amount of damages he or she was entitled to.  *Avery*, 746 N.E.2d at 1255; (SOF ¶¶ 37-38).  Plaintiffs have provided no legal authority for their contention that the fact that individual damages were never determined in *Avery* transformed Plaintiffs' and the class members' interest into an undivided interest.

Whether a common fund exists in which plaintiffs or class members have an undivided interest "depends on the 'nature of the right asserted, not whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs.'" *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 720 (7th Cir. 2012).  Claims based upon separate transactions do not create a common fund, even if the claims arise from the same incident.  *See, e.g.*, *Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511, 512-13 (7th Cir. 1968) (separate claimants in the same auto accident caused by the insured had separate and distinct injuries and insurer's potential liability to them would have been several, not joint).

The Seventh Circuit has applied these principles in determining the nature of a class action judgment and how it should be distributed.  For example, in *Ira Holtzman, C.P.A. & Assocs. Ltd. v. Turza*, 728 F.3d 682, 688 (7th Cir. 2013), the Seventh Circuit held that "[a] class certified under Rule 23(b)(3) is not a juridical entity," and "[e]ach class member has an interest in his own damages."  Where that is the case, and the class action "stems from discrete injuries," "it does not create a common fund."  *Id.*  That is the situation here.

Moreover, an undivided interest in a single title or right requires not only a "common fund from which the plaintiffs seek relief," but also a "joint interest in that fund, such that the

Court held was "undivided."  ([556] pp. 20-21.)  As shown above, however, an interest in a neutral forum is not property within the meaning of section 1964(c).  *See* Point III(A) *supra*.

plaintiffs' rights are … affected by the rights of co-plaintiffs." *Travelers*, 689 F.3d at 721. Here, as the Illinois Supreme Court held in *Avery*, neither injury nor damages were capable of common proof. *Avery*, 835 N.E.2d at 826-27, 831.  Even if Plaintiffs had prevailed in the Illinois Supreme Court with a complete affirmance, they still would not have been entitled to a particular amount, let alone a per capita share, of the $1.05 billion judgment.  Rather, "individual determinations as to damages w[ould] be necessitated."  *Avery*, 746 N.E.2d at 1255; (SOF ¶¶ 37-38). There is no economic basis for Plaintiffs' claim that all purported class members suffered injury, much less that all suffered damages in the amount of equal shares of the judgment.  (SOF ¶¶ 37-38.)  To the contrary, Plaintiffs admit that the class members' purported damages in *Avery* ranged from several hundred dollars to $2,500 ([289] ¶ 43), and that the circumstances of the class members varied greatly.  (SOF ¶¶ 37-38.) Damages determined economically would have resulted in widely divergent payments, if any, to class members. (*Id.*)

Plaintiffs' proposal for *per capita* damages is an admission that they cannot present evidence of individual damages and do not intend to try.  Accordingly, Plaintiffs cannot prove clear and definite damages and cannot prevail on their RICO claims.

## IV.   PLAINTIFFS' RICO CLAIMS ARE TIME-BARRED

This Court held that, based on the allegations contained in Plaintiffs' Complaint, dismissal of Plaintiffs' claims as time-barred was not appropriate at the motion-to-dismiss stage in these proceedings.  ([67] p. 26.)  Based on the undisputed facts, it is now clear that there is no genuine issue of material fact on the issue of statute of limitations, and that summary judgment should be granted in State Farm's favor on that issue.

### A.   Plaintiffs' Alleged RICO Claims Accrued in 2005 or 2006 and the Four-Year RICO Statute of Limitations Expired in 2009 or 2010

Plaintiffs' claims are time-barred under RICO's four-year statute of limitations.  The

statute of limitations for a civil RICO cause of action "begins to run when the plaintiffs discover, or should, if diligent, have discovered, that they had been injured by the defendants." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) (citing *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 800 (7th Cir. 2008)).  Also, for a RICO claim to accrue, there must have been a RICO violation, *i.e.*, at least two predicate acts. *See Zalesiak v. UnumProvident Corp.*, 2007 WL 4365345, at *4 (N.D. Ill. Dec. 12, 2007) (Kendall, J.). However, the discovery rule does not apply to the two predicate acts: "the victim doesn't have to know he's been injured by a RICO violation, which is to say by a pattern of racketeering activity (that is, a series of predicate acts)." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 387 (7th Cir. 1981); *see also Sidney Hillman Health Ctr. Of Rochester v. Abbot Labs, Inc.*, 782 F.3d 922, 926 (7th Cir. 2015) (under RICO, "discovery of the injury, not discovery of the other elements of a claim, … starts the clock." (citation omitted)).

Plaintiffs' alleged RICO injury, the loss of the $1.05 billion judgment in *Avery* (SOF ¶ 33), took place on August 18, 2005, when the Illinois Supreme Court's decision issued, or at the latest in 2006, when the United States Supreme Court denied Plaintiffs' certiorari petition. Moreover, before the decision issued, Plaintiffs had repeatedly expressed the view that Justice Karmeier's participation had deprived them of a fair tribunal and due process. (SOF ¶¶ 10-20.) Accordingly, there can be no contention that Plaintiffs had not discovered their injury in 2005.

Plaintiffs have attempted to escape the statute of limitations by claiming that they were injured in 2011 by the Illinois Supreme Court's denial of their Petition to Recall the Mandate in *Avery*.  ([50] p. 20.)  That contention is demonstrably false.  In 2011, Plaintiffs merely once again asked the Illinois Supreme Court to give them back the judgment that the Court had already taken away.  As a matter of law, the Court's refusal to do so is not a new injury that

restarts the statute of limitations. *See, e.g.*, *Cueto v. Grogan*, 2009 WL 2849007, at *3 (S.D. Ill. Sept. 1, 2009) (Herndon, J.) (disbarred plaintiff's injury occurred when his law license was first suspended; not when license was later revoked); *Zalesiak*, 2007 WL 4365345, at *6 (subsequent denials and delays of disability benefits did not result in new injuries for purposes of RICO statute of limitations). When Plaintiffs' 2011 Petition was denied, Plaintiffs were in precisely the same position that they had been in since August 2005 – *i.e.*, "deprived" of the *Avery* judgment. There was no "new injury" for purposes of the statute of limitations.

Plaintiffs also erroneously argue that their RICO claims did not accrue until 2011 because there was no pattern of predicate acts until State Farm filed its 2011 brief. According to Plaintiffs' contrived argument, the mailing of that brief was the second predicate act of mail fraud. ([289] ¶¶ 99, 103-07; SOF ¶ 30.) Plaintiffs' argument is contrary to the actual facts of this case. Accepting *arguendo* Plaintiffs' theory that State Farm's briefs can constitute predicate acts of mail fraud (which they cannot), then at least four predicate acts occurred in 2005-2006. During that period, State Farm filed not only the January 31, 2005 brief in opposition to Plaintiffs' Conditional Motion for Non-Participation (SOF ¶ 12), but also three more briefs in opposition to Plaintiffs' motions and petitions in support of their attempts to recuse Justice Karmeier, namely, (i) State Farm's February 9, 2005 Opposition to Plaintiffs' Motion for Leave to File Memorandum in Response to Appellant's Opposition to Appellees' Conditional Motion for Non-Participation (SOF ¶ 12), (ii) State Farm's March 31, 2005 Objection to Plaintiffs' Motion to Reconsider the Denial of Conditional Motion for Non-Participation (SOF ¶ 15), and (iii) State Farm's February 3, 2006 Opposition to Plaintiffs' Petition for Certiorari (SOF ¶ 21).[7]

---

[7] To determine when a RICO claim accrued, a court need not determine whether there is a RICO pattern. It need only determine "the point at which two predicate acts occurred." *See Guar. Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 682 (N.D. Ill. 2012) (Kendall, J.).

These submissions all contain statements and arguments that are substantially similar to the statements and arguments that Plaintiffs have labeled false or fraudulent in the two State Farm briefs they claim as predicate acts. (*See* SOF ¶¶ 12, 15, 21.) Accordingly, based on Plaintiffs' theory of their case, multiple supposed predicate acts took place in 2005-06, such that the statute of limitations began to run at that time. Plaintiffs cite no authority that would allow them to strategically pick and choose among predicate acts in order to avoid the statute of limitations.

Under the undisputable facts, Plaintiffs' RICO claims accrued in 2005 or 2006 at the latest and became time-barred in 2009 or 2010, well before they filed their Complaint in 2012.

**B.      Plaintiffs Cannot Meet Their Burden on Equitable Tolling and Estoppel**

**1.      Equitable Estoppel/Fraudulent Concealment.**

Plaintiffs cannot establish equitable estoppel/fraudulent concealment.  Equitable estoppel "'comes into play if the defendant takes active steps to prevent the plaintiff from suing in time,'" "'such as by hiding evidence or promising not to plead the statute of limitations.'" *Hentosh v. Herman M. Finch Univ. Of Health Scis./Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999) (citations omitted). Equitable estoppel must be based on wrongdoing above and beyond the wrongdoing upon which the plaintiffs' claim is founded, *id.* at 1174, and requires both that the plaintiffs have actually and reasonably relied upon the defendant's improper conduct and that the plaintiffs "act with reasonable diligence to discover and file their claims."  *Sidney Hillman*, 782 F.3d at 931. It is Plaintiffs' burden to establish that these requirements are met.  *See, e.g.*, *Blanche v. United States*, 811 F.3d 953, 962 (7th Cir. 2016); *Furkin v. Smikun*, 237 F. App'x 86, 89 (7th Cir. 2007).  Plaintiffs cannot meet that burden for multiple reasons.

First, Plaintiffs base their equitable estoppel arguments on the same conduct that forms the basis of their RICO claims, namely, the alleged fraudulent misrepresentations in State Farm's briefs "falsely denying its substantial role in Justice Karmeier's election" ([50] p. 18), and

specifically by State Farm's failure to disclose "the prominent role played by [Defendant William] Shepherd in forming the ICJL, as a member of the ICJL Executive Committee;" its supposedly false denial of "'[Defendant Ed] Murnane's involvement in Karmeier's campaign'" and declaration that "'Murnane … was not Karmeier's campaign manager or campaign finance chairman and was not employed by Karmeier's campaign …'" (*id.* pp. 19-20.)   There is no conduct above and beyond the conduct that is the basis of Plaintiffs' claims. ([289] ¶¶ 100-07.)

Second, Plaintiffs cannot show that they relied on the purported misstatements or reasonably delayed filing their RICO Complaint because of them. In their 2005 and 2006 briefs and submissions, Plaintiffs had already argued that Shepherd was "instrumental in the foundation of" the ICJL and JUSTPAC  (A00315; A00346); that Shepherd "play[ed] an active role in the Illinois Civil Justice League," "confers often with Ed Murnane," and "attends many ICJL meetings and conference calls" (A00098-000990); that "Ed Murnane had a direct relationship with State Farm through Shepherd and Ed Rust" (A01829); and that "Murnane in concert with State Farm lobbyist/attorney Bill Shepherd recruited Justice Karmeier to run for the Illinois Supreme Court and managed Justice Karmeier's campaign." (A01829-01830.) Indeed, in 2006, Plaintiffs stressed the supposed "importance" of their purported "showing of the connections of their lobbyist Bill Shepherd to Justice Karmeier." (A02228.) Likewise in 2005 and 2006 Plaintiffs were already claiming that State Farm was responsible for "more than a million dollars more in indirect donations" to the Karmeier campaign. (A02176.) Indeed, Plaintiffs told the United States Supreme Court that "there were no real disputes as to the primary facts underlying the recusal motion." (A02228.) Plaintiffs never retreated from their repeated allegations of purported wrongdoing and did not rely on any statements to the contrary by State Farm.

Third, Plaintiffs cannot show due diligence.  A "plaintiff cannot fold his hands, sit back,

and do nothing" but "has to continue investigating diligently." *Jay E. Hayden*, 610 F.3d at 385-86.  Plaintiffs began investigating potential RICO claims in mid-2009 (SOF ¶¶ 31-32) -- two years *before* the they filed their 2011 Petition to Recall the Mandate and nearly three years before they filed their RICO Complaint.  Their decision to investigate was prompted not by the discovery of previously unavailable evidence, but by the United States Supreme Court's June 8, 2009 decision in *Caperton*.  ([289] ¶ 9; SOF ¶¶ 31-32.)  Plaintiffs' delay in filing their RICO claims until nearly seven years after the Illinois Supreme Court's decision in *Avery* does not, as a matter of law, satisfy due diligence.

### 2.      Equitable Tolling

For many of the same reasons, Plaintiffs cannot establish that the requirements for equitable tolling are met. Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Id.*  Equitable tolling applies "only when extraordinary circumstances far beyond the litigant's control prevented timely filing." *Sidney Hillman*, 782 F.3d at 930.

Plaintiffs have contended that they "could not have been aware of Defendants' pattern of misconduct before September 19, 2011, when State Farm submitted to the Illinois Supreme Court … its response to the petition to recall the mandate and vacate the August 18, 2005 judgment." ([289] ¶ 92.)  This contention should be rejected as a matter of law, because (1) a plaintiff need not have discovered the pattern of predicate acts for the RICO statute of limitations to start, *Jay E. Hayden*, 610 F.3d at 387, (2) Plaintiffs had already repeatedly claimed in 2005 and 2006 that there were substantial misrepresentations in State Farm's briefs, and (3) Plaintiffs developed their RICO theory in mid-2009, in response to the *Caperton* decision. (SOF ¶¶ 31-32)

In any case, a defendant's denials of a plaintiff's allegations, as a matter of law, are not a sufficient basis for equitable tolling or equitable estoppel. *See, e.g.*, *Stephan v. Goldinger*, 325

F.3d 874, 877 (7th Cir. 2003) ("[A] denial of liability is not a basis for equitable estoppel -- otherwise a statute of limitations would never run unless the potential defendant confessed error before he was sued!"); *accord Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993); *Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002). In short, no "extraordinary circumstances far beyond [Plaintiffs'] control prevented timely filing." *Sidney Hillman*, 782 F.3d at 930 (citation omitted). There is no basis for equitable tolling or equitable estoppel, and Plaintiffs' RICO claims are time-barred.

## V.   PLAINTIFFS CANNOT SHOW PREDICATE ACTS

Plaintiffs' RICO claims also fail because the claimed predicate acts -- State Farm's mailing of its 2005 and 2011 briefs -- do not constitute acts of mail fraud.  Under established Seventh Circuit jurisprudence, State Farm's briefs cannot be deemed to contain fraudulent misrepresentations or omissions, but are rather appropriate and permissible comments on the sufficiency of Plaintiffs' evidence or otherwise permissible advocacy.  Moreover, courts across the country have rejected the premise that a party's brief can be a predicate act as contrary to the purposes of RICO. Finally, State Farm's briefs are protected by the First Amendment from RICO liability under the *Noerr-Pennington* doctrine.

### A.   State Farm's Briefs Are Appropriate and Permissible Advocacy

The statements that Plaintiffs complain about in State Farm's briefs are, on their face, comments on the sufficiency of the "evidence" cited by Plaintiffs in their motions to disqualify Justice Karmeier or express permissible views of the facts and evidence. The supposed misrepresentations are (i) statements disputing Plaintiffs' characterizations of the "evidence" as purportedly showing that other organizations' contributions to the Karmeier campaign should be attributed to State Farm or as showing that State Farm "controls" or has influence over these organizations such that their contributions should be considered as coming from State Farm, (ii)

statements that Defendant Murnane was not Justice Karmeier's campaign manager, and (iii) that "State Farm itself made no contribution to the campaign." (SOF ¶¶ 11, 23, 52.) Such statements are permissible advocacy and draw permissible inferences from the facts and evidence. As such, they are not a basis for a claim. *See Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 147 (N.D. Ill. 2005) (Kennelly, J.).

In denying Plaintiffs' motion on the crime-fraud exception, Magistrate Judge Williams examined each of the challenged statements in State Farm's briefs and ruled that Plaintiffs' claims of fraudulent misrepresentations by State Farm were "not founded in fact." (A03521-03523, [300] pp. 5-7; SOF ¶ 54.) Specifically, Judge Williams found that State Farm's statement in its 2011 brief that Plaintiffs' allegation that "'State Farm somehow picked Justice Karmeier as a candidate, managed his campaign, and made massive contributions to his campaign'" had "'no relationship to reality'" was permissible advocacy (A03523-03424 (citation omitted)), and that Plaintiffs' evidence did "not show that State Farm picked Karmeier or provided massive contributions and ran Karmeier's campaign, as Plaintiffs contend, so that State Farm's statement would constitute mail fraud." (A03524.)[8]   Likewise, Judge Williams examined State Farm's statement that "'[a]lthough Plaintiffs attempt to link large sums in contributions by a variety of persons and organizations to Justice Karmeier's campaign to State Farm, their moving papers and supporting documentation in fact reveal that a limited number of State Farm officers and employees made quite modest contributions to Justice Karmeier's campaign'" and found it was a comment on the sufficiency of Plaintiffs' evidence, and was advocacy, not fraud. (A03524-03525; [300] pp. 8-9.)

---

[8]  Judge Williams observed that "State Farm has pointed to several statements in Plaintiffs' own brief that arguably do not adequately characterize the truth…. Plaintiffs were clearly mistaken in their factual assertion about the record. And it was a significant mistake." (A03525-03526 n.1.).

Indeed, State Farm's arguments and statements are backed by undisputed facts that Plaintiffs have chosen to disregard.  For example, Plaintiffs' theory that contributions made by organizations such as the Chamber of Commerce and ATRA can be attributed to State Farm disregards the uncontroverted testimony of representatives of those organizations that State Farm did not "earmark" its dues or contributions for any particular use, including campaign contributions.  (SOF ¶¶ 48-49.)  Plaintiffs' purported expert Myers admitted that he "wasn't able to make that determination [as to whether the organizations at issue earmarked money for particular purposes] because [he] didn't have enough information."  (SOF ¶ 51; A03084.)  Thus, as State Farm's forensic accounting expert, Bruce Dubinsky, opined, Myers "makes speculative, unfounded assumptions and conclusions [regarding the supposed earmarking] that are, in fact, absolutely contradicted by the evidence as presented." (A03431; SOF ¶ 51.)

Plaintiffs' theory also disregards the facts and evidence showing that State Farm is only one of the numerous members of these organizations that pay dues, make contributions, and serve on the boards and committees of these organizations and that State Farm's dues and/or contributions are only a small percentage of their revenues.  (SOF ¶¶ 48-50.)  As State Farm's expert, Richard Painter points out, State Farm's contentions that it does not control those organizations and that its payments of dues and/or contributions to such organizations are not contributions to the Karmeier campaign, are permissible advocacy and a rational interpretation of the facts. (SOF ¶ 55; A03281-03295, §§ V-VI.)

In short, the supposedly "misleading" statements identified by Plaintiffs are on their face comments on the sufficiency of the "evidence" relied upon by Plaintiffs in their motions or comments on Plaintiffs' unwarranted inferences from and characterizations of their "evidence." Comments on the sufficiency of evidence are well within the bounds of permissible advocacy,

and not fraud.  *Apotex*, 229 F.R.D. at 147; SOF ¶ 54.  It is irrelevant to this summary judgment motion whether a jury would ultimately adopt Plaintiffs' view of the facts or State Farm's.  The crucial and dispositive point is that, as a matter of law, State Farm's briefs are not predicate acts of mail fraud, on which a RICO claim can be based.[9]

### B.    The Service or Filing of a Brief Is Not a RICO Predicate Act

State Farm submits that the Court should reconsider its earlier ruling that the service of a brief by mail can constitute a RICO predicate act of mail fraud.  As the Eleventh Circuit observed in *United States v. Pendergraft*, "[a] number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility." 297 F.3d 1198, 1208 (11th Cir. 2002), *see also Del. Motel Assocs., Inc. v. Capital Crossing Serv. Co. LLC*, 2017 WL 4224618 (N.D. Ill. Sept. 22, 2017) (Kennelly, J.) (same). In *Pendergraft* and in its later decision in *Raney v. Allstate Insurance Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004), the Eleventh Circuit explained "that Congress did not intend to punish citizens merely for accessing the legal system" and stated that the Court was "troubled by *any* use of this federal criminal statute to punish civil litigants." *Raney*, 370 F.3d at 1088 (quoting *Pendergraft*, 297 F.3d at 1206-07).  Subsequent Eleventh Circuit decisions have now made clear that the "rule" that "federal fraud charges cannot be based on the filing of court documents" is unqualified.  *See Nero v. Mayan Mainstreet Inv. 1, LLC*, 645 F. App'x 864, 868 (11th Cir. 2016).[10]

---

[9]  Plaintiffs have abandoned their allegation of a predicate act of honest services fraud under 18 U.S.C. § 1346. (*See* [289] at ¶ 121; [324] pp. 40-41, 56-57; [328] p. 7.)  As Judge Williams found, Plaintiffs have conceded that "they cannot prove, and do not contend, that Justice Karmeier himself engaged in a *quid quo pro* fraud." ([328] p. 7.)

[10]  This Court held that *Pendergraft* applied only where there was no intent to deceive.  ([67] pp. 39-40.) This qualification is not present in numerous cases rejecting RICO mail fraud claims based on the filing of litigation papers by mail or wire, including more recent cases from the Eleventh Circuit such as *Nero* and *DeBoskey v. SunTrust Mortgage, Inc.*, 2017 WL 4083557, at *8-9 (M.D. Fla. Sept. 14, 2017).

The present case bears out the Eleventh Circuit's concern that "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system" and lead to a "piling of litigation on litigation without end." *Pendergraft*, 297 F.3d at 1207-08. Moreover, given that the briefs at issue were all filed in response to Plaintiffs' motions, holding that briefs can serve as predicate acts would effectively permit plaintiffs to "create a predicate act," "entrap[ping] defendants in otherwise nonexistent crimes." *Lathrop v. Juneau & Assocs., Inc.*, 2005 WL 3797706, at *7 (S.D. Ill. Apr. 25, 2005). This concern is particularly acute here, where Plaintiffs were crafting their RICO claims years *before* State Farm's 2011 brief. (SOF ¶¶ 31-32.)

As the Seventh Circuit has repeatedly stated, "[n]ot all conduct that strikes a court as sharp dealing or unethical conduct is a 'scheme or artifice to defraud'" as those terms are used in the "mail and wire fraud statutes." *United States v. Weimert*, 819 F.3d 351, 357 (7th Cir. 2016) (citation omitted); *see also Kaye*, 357 F. App'x at 714 (same); *Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989) (same). The Seventh Circuit explained that "[g]iven the pervasive use of the mails and of telephone and related services in the business world, along with the ease of satisfying the mailing or wiring requirement, such a broad meaning of fraud for the mail and wire fraud statutes 'would put federal judges in the business of creating what in effect would be common law crimes, i.e., crimes not defined by statute.'" *Reynolds*, 882 F.2d at 1252 (citations omitted). Likewise, "mere failure to disclose," as opposed to an "affirmative step to conceal," generally does not constitute mail or wire fraud. *Id.*

Thus, not all mailings, even purportedly fraudulent ones, can constitute RICO predicate acts. *Balderos v. City Chevrolet*, 214 F.3d 849, 854 (7th Cir. 2000). *Balderos* rejected the theory that "a violation of the Truth in Lending Act that is accomplished through mail or wire

communications is a predicate act," stating that "[i]t is a rare case of extension of credit that does not involve mail or wire communications, and so the practical effect of the plaintiff's argument would be to criminalize the Truth in Lending Act." *Id.*  Just as Congress in enacting RICO did not intend to criminalize the Truth in Lending Act, it did not intend to criminalize response briefing or to make RICO a last-resort vehicle for challenging a litigation outcome where all avenues of appeal have been exhausted.

Finally, the First Amendment bars Plaintiffs' claims under the *Noerr-Pennington* doctrine, which is "applicable to RICO suits." *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris*, 196 F.3d 818, 826 (7th Cir. 1999). That doctrine "eliminate[s] the petitioning of ... the courts ... from liability" under RICO. *Rubloff Dev. Grp., Inc. v. Supervalu, Inc.,* 863 F. Supp. 2d 732, 744 (N.D. Ill. 2012) (Leinenweber, J.). As shown in Point II above, the alleged misrepresentations in State Farm's briefs had no "ascertainable effect" on the outcome in *Avery*, as required to preclude application of *Noerr-Pennington*, *see Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011), because Justice Karmeier's vote was not decisive.

## CONCLUSION

The Court should grant summary judgment for State Farm on all of Plaintiffs' claims.

Dated:  January 16, 2018

Respectfully submitted,
*/s/ Ronald S. Safer*

| | | |
|---|---|---|
| J. Timothy Eaton #0707341 | Patrick D. Cloud, #06282672 | Ronald S. Safer #6186143 |
| TAFT, STETTINIUS & | HEYL, ROYSTER, VOELKER | RILEY SAFER HOLMES & |
| HOLLISTER, LLP | & ALLEN | CANCILA LLP |
| 111 East Wacker, Ste. 2800 | Mark Twain Plaza III, Suite 100 | Three First National Plaza |
| Chicago, IL 60601 | 105 W. Vandalia St. | 70 W. Madison St., Ste. 2900 |
| | Edwardsville, IL 62025 | Chicago, IL 60602 |

*Attorneys for Defendant State Farm Mutual Automobile Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment on Plaintiffs' RICO Claims and Memorandum of Law in Support Thereof was served upon all counsel of record on January 16, 2018, via the Court's CM/ECF system.

Dated: January 16, 2018                    */s/ Ronald S. Safer*