## IN UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, TODD SHADLE and
LAURIE LOGER, on behalf of
Themselves and all others similarly
situated,

                  Plaintiffs,

      v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, EDWARD MURNANE, and
WILLIAM G. SHEPHERD,

                Defendants.

Case no. 3:12-cv-00660-DRH-SCW

Judge David R. Herndon
Magistrate Judge Stephen C. Williams

## PLAINTIFFS' MOTION TO EXCLUDE
## EXPERT REPORT AND TESTIMONY OF MICHAEL T. REAGAN AND
## INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

**Table of Contents**

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    Legal standard. ................................................................................................. 2

II.   Mr. Reagan's General Legal Experience Does Not Qualify Him to Offer His Specific Opinions. .......................................................................................... 5

III.  Mr. Reagan's Opinions Should Be Excluded Because They Are Not Based on Sufficient Facts or Data and a Reliable Methodology. .................................... 8

   A. Mr. Reagan's Opinions Are Unreliable Because They Are Based on Research and Analysis Conducted by State Farm's Defense Counsel. .................................. 8

   B. Mr. Reagan's Opinions That (i) it is Increasingly Likely that a Supreme Court Decision Will Issue Soon Once Five Months Have Elapsed After Oral Argument, and (ii) Only Two to Five Percent of PLAs are Granted Are Not Based on Any Data or Analysis. ..... 11

   C. Mr. Reagan's Opinion That It Was Likely Some Aspect of *Avery* Would be Reversed is Unreliable. ........................................................................................ 12

   D. Reagan's Opinion that Justice Karmeier's Participation Would Not Have Altered the Legal Beliefs of Other Justices is Unreliable. .............................................. 15

IV.   The Court Should Exclude Mr. Reagan's Predictions of the *Avery* Outcome Based on His Reading of the *Avery* Opinion. ............................................................ 17

V.    Mr. Reagan's Opinions Regarding Plaintiffs' Experts Harrison and Shepherd Should be Excluded as Pure Legal Advocacy. .......................................................... 19

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Honda Motor Co. v. Allen*,
　600 F.3d 813 (7th Cir. 2010) ............................................................................6, 16

*Aponte v. City of Chic.*,
　No. 09-cv- 8082, 2011 WL 1838773 (N.D. Ill. May 12, 2011)....................................8

*Ault v. Speicher*,
　No. 07-cv-398, 2009 WL 799497 (S.D. Ill. Mar. 25, 2009)....................................24

*Brown v. Burlington N. Santa Fe Ry. Co.*,
　765 F.3d 765 (7th Cir. 2014) ....................................................................................7

*Charter Nat'l Bank and Trust v. Charter One Fin.*,
　No. 10-cv-905, 2001 WL 1035721 (N.D. Ill. Sept. 4, 2001)....................................9

*Chaudhry v. Provident Life & Accident Ins. Co.*,
　No. 12-cv-5838, 2015 WL 1980253 (N.D. Ill. May 1, 2015)....................................6

*Clark v. Takata Corp.*,
　192 F.3d 750 (7th Cir. 1999) ...............................................................................7, 21

*Lewis v. CITGO Petroleum Corp.*,
　561 F.3d 698 (7th Cir. 2009) ....................................................................................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
　509 U.S. 579 (1993).......................................................................................... *passim*

*Dhillon v. Crown Controls Corp.*,
　269 F.3d 865 (7th Cir. 2001) ....................................................................................7

*Erickson v. Baxter Healthcare, Inc.*,
　131 F. Supp. 2d 995 (N.D. Ill. 2001) ...............................................................6, 7, 15

*Gayton v. McCoy*,
　593 F.3d 610 (7th Cir. 2010) ................................................................................3, 6

*Gopalratnam v. Hewlett-Packard Co.*,
　877 F.3d 771 (7th Cir. 2017) ...........................................................................5, 6, 13

*Hale v. State Farm Mut. Auto. Ins. Co.*,
　No. 12-cv-660, 2016 WL 6947065 (S.D. Ill. June 2, 2016) ....................................16

*Klaczak v. Consol. Med. Transp. Inc.*,
   No. 96-cv-6502, 2005 WL 1564981 (N.D. Ill. May 26, 2005) ................................................15

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
   387 F. Supp. 2d 794 (N.D. Ill. 2005) .....................................................................................20

*Lyman v. St. Jude Medical S.C., Inc.*,
   580 F. Supp. 2d 719 (E.D. Wis. 2008) ...................................................................................13

*Lyons v. Leatt Corp.*,
   322 F.R.D. 327 (N.D. Ill. 2017) ......................................................................................7, 20

*McKeage v. Bass Pro Outdoor World, L.L.C.*,
   No. 12-cv-3157, 2014 WL 12754994 (W.D. Mo. Apr. 10, 2014) .........................................10

*Mid-State Fertilizer Co. v. Exch. Nat.l Bank of Chic.*,
   877 F.2d 1333 (7th Cir. 1989) .........................................................................................21, 22

*Muzzey v. Kerr-McGee Chem. Corp.*,
   921 F. Supp. 511 (N.D. Ill. 1996) .....................................................................................7, 16

*Obrycka v. City of Chic.*,
   792 F. Supp. 2d 1013 (N.D. Ill. 2011) .............................................................................11, 13

*Phares v. Manheim Remarketing, Inc.*,
   No. 14-cv-1190, 2016 WL 787627 (S.D. Ind. Feb. 18, 2016) ................................................7

*Premium Plus Partners, L.P. v. Davis*,
   653 F. Supp. 2d 855 (N.D. Ill. 2009) ....................................................................................18

*Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*,
   No. 04-cv-1587, 2007 WL 831613 (S.D. Ind. Mar. 5, 2007) ................................................23

*RLJCS Enters. Inc. v. Prof'l Benefit Trust*,
   No. 03-cv- 6080, 2005 WL 3019398 (N.D. Ill. Nov. 8, 2005) ..............................................24

*Sanders v. City of Chic. Heights*,
   No. 13-cv-221, 2016 WL 4398011 (N.D. Ill. Aug. 18, 2016) .................................................7

*Scott v. IBM Corp.*,
   196 F.R.D. 233 (D.N.J. 2000), *as amended* (Nov. 29, 2000) ................................................10

*Sommerfield v. City of Chic.*,
   254 F.R.D. 317 (N.D. Ill. 2008)..........................................................................11, 12, 13, 24

*State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.*,
   980 F. Supp. 2d 1031 (N.D. Ind. 2013) ......................................................................... *passim*

*Sullivan v. Alcatel-Lucent USA Inc.*,
   No. 12-cv-7528, 2014 WL 3558690 (N.D. Ill. July 17, 2014) ................................................15

*In re Testosterone Replacement Therapy Prods. Liab. Litig. Coord. Pretrial
   Proceedings*,
   No. 14-cv-1748, 2017 WL 1833173 (N.D. Ill.. 2017) ..............................................................8

*In re TMI Litig.*,
   193 F.3d 613 (3d Cir. 1999)....................................................................................................13

*Trevino v. City of Rock Island Police Dep't*,
   91 F. Supp. 2d 1204 (C.D. Ill. 2000) ........................................................................19, 20, 21

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,
   670 F. Supp. 2d 768 (N.D. Ill. 2009) .....................................................................................15

*United States v. Frazier*,
   387 F.3d 1244 (2004)..............................................................................................................24

*United States v. Noel*,
   581 F.3d 490 (7th Cir. 2009) ..................................................................................................21

*Whiting v. Boston Edison Co.*,
   891 F. Supp. 12 (D. Mass. 1995) ...........................................................................................10

*Williams v. Pennsylvania*,
   136 S. Ct. 1899 (2016).......................................................................................................9, 19

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Plaintiffs hereby respectfully move the Court to exclude in its entirety the testimony and report of Defendants' expert Michael T. Reagan. Plaintiffs offer the following memorandum of points and authorities in support thereof, along with all accompanying exhibits.

## PRELIMINARY STATEMENT

Defendants proffer Mr. Reagan as an expert about the role of Justice Karmeier in the *Avery* decision and the likely outcomes had Justice Karmeier not participated. *See* Expert Report of Michael T. Reagan (Ex. A) ("Reagan Rpt."). Mr. Reagan concludes that:

1) Opinions of the Illinois Supreme Court ("ILSC") are issued within approximately five months from the date of oral argument, and as time passes beyond five months, it becomes increasingly likely that an opinion will issue soon. As a result, Defendants could not have reasonably believed, even in the summer of 2004, that Justice Karmeier would be sworn in before the *Avery* opinion was issued. Reagan Rpt. ¶ 20.

2) Notwithstanding the opinions of Plaintiffs' experts Mark Harrison and Dr. Joanna Shepherd that Justice Karmeier's participation influenced and tainted the *Avery* panel, *Avery* would have been reversed even without Justice Karmeier's participation because:

    a) The text of the majority and concurring opinions in *Avery* are strong evidence that *Avery* would have been reversed. *Id.* ¶¶ 29, 49.

    b) ILSC justices strive to reach a four-member concurrence to dispose of cases resulting in a high likelihood that the court will dispose of a case with four justices. *Id.* ¶¶ 32-34.

    c) As a matter of statistics, once the Court decided to hear the *Avery* appeal, it was likely that *Avery* would be reversed. *Id.* ¶¶ 61-63.

3) Because the other members of the court had strong personalities with individualistic, well-formed judicial approaches, they would not have been influenced by Justice Karmeier. *Id.* ¶¶ 71, 77.

Mr. Reagan's general experience as an appellate attorney does not qualify him to offer these opinions, and he admits he has no expertise that would qualify him to opine on statistical probabilities. Even if Mr. Reagan is so qualified, his opinions are inadmissible because they are

1

not based on reliable methodologies: he failed to apply any methodology or reasoning to reach many of his conclusions, relying instead on experience without explaining how that experience leads to his conclusions. And where he does use a methodology, it is unreliable and the results do not support his conclusions. His opinion based on the text of *Avery* is unreliable because he failed to consider any alternative hypotheses regarding Justice Karmeier's influence and, further, does not assist the jury because the jury is fully capable of reading *Avery* itself, understanding the positions of each ILSC justice, and counting their votes. Finally, his rebuttal of the opinions of Mr. Harrison and Dr. Shepherd are pure legal advocacy—a *Daubert* argument dressed up as expert opinion. For these reasons, Reagan's Report and testimony should be excluded.[1]

## ARGUMENT

### I. Legal standard.

*Daubert* and Federal Rule of Evidence 702 requires the Court to act as a gatekeeper to ensure an expert's testimony is both reliable and relevant to the action. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778 (7th Cir. 2017). The party proffering the opinion must demonstrate the expert opinion satisfies *Daubert*. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The *Daubert* inquiry involves a three-step evaluation to determine whether: (1) the expert is qualified; (2) the methodology applied is reliable; and (3) the testimony is relevant and will aid the trier of fact. *Gopalratnam*, 877 F.3d at 778-80.

---

[1] Mr. Reagan's Surrebuttal Report, which reiterates or relies on the Mr. Reagan's analyses and opinions discussed herein and rebuts certain of Plaintiffs' experts, suffers from these same deficiencies. *See* Surrebuttal Report of Michael Reagan (Ex. B). For example, the opinions are founded on his general rather than specialized legal experience. *E.g.* Reagan Surrebuttal Rpt. ¶ 5 (opinions are "based upon my years of appellate practice and study of the Supreme Court and the Supreme Court Rules . . . ."). Further, his opinions are pure *ipse dixit*—relying not on data but anecdotes and hunches. *E.g. id.* ¶¶ 6, 18. He employs the language of statistics without underlying statistical support. *Id.* ¶ 16. ("It is my conclusion that the opposite conclusion is far more likely."). A collection of cherrypicked anecdotes is not data and do not lend explanatory power to conclusions derived therefrom. Accordingly, the Court should exclude the opinions contained in Mr. Reagan's Surrebuttal Report.

An expert may be qualified by specialized knowledge, skill, experience, training, or education. *Daubert*, 509 U.S. at 588. But a court must assess not just "whether an expert . . . is qualified in general, but whether his qualifications provide the foundation for [him] to answer a specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (quotations omitted) (alteration in original). Rule 702 does not permit "experts to testify to any opinion based on general experience." *Erickson v. Baxter Healthcare, Inc.*, 131 F. Supp. 2d 995, 999–1000 (N.D. Ill. 2001). Experts relying solely or primarily on experience must explain "how that experience leads to the conclusion reached, why that experience is a sufficient bases for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory comm. note (2000 Amendments).

The reliability prong requires an evaluation of the reliability of the methodology used, whether the methodology or opinion was based on sufficient facts or data, and whether the methodology was correctly applied. *Gopalratnam*, 877 F.3d at 780-81. "In the "quantitative" sense, 'sufficient facts or data' means that the expert considered sufficient data to employ the methodology,'" and to be "qualitatively adequate," an expert must rely on the type of facts or data that other experts in the field would reasonably use. *Gopalratnam*, 877 F.3d at 781 (internal quotations omitted). Additionally, courts consider whether: (1) the testimony is the result of research conducted independent of the litigation or solely for the litigation; (2) the expert has unjustifiably extrapolated to reach an unfounded conclusion; (3) the expert considers alternative hypotheses or explanations. *See, e.g.*, *Chaudhry v. Provident Life & Accident Ins. Co.*, No. 12-cv-5838, 2015 WL 1980253, at *2 (N.D. Ill. May 1, 2015); *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010); *Muzzey v. Kerr-McGee Chem. Corp.*, 921 F. Supp. 511, 519 (N.D. Ill. 1996) (testimony based on research conducted independent of the litigation provides

3

important, objective proof of reliability).

Expert testimony must "rise above subjective belief or unsupported speculation." *Lyons v. Leatt Corp.*, 322 F.R.D. 327, 338-39 (N.D. Ill. 2017); *see also Brown v. Burlington N. Santa Fe Ry. Co*., 765 F.3d 765, 771–72 (7th Cir. 2014) (experts must rely on facts or data, not subjective impressions); *Baxter Healthcare*, 131 F. Supp. 2d at 1000 (experts may not make "bald assertions of opinion without any support"); *Phares v. Manheim Remarketing, Inc.*, No. 14-cv-1190, 2016 WL 787627, at *2 (S.D. Ind. Feb. 18, 2016) (a court may not "simply tak[e] the expert's word for it") (quotations and citation omitted). Courts must exclude opinion based on bare assertions or the *ipse dixit* of the expert. *Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999). And where analytical gap between the data and the opinions offered, the opinion is inadmissible. *See Lyons*, 322 F.R.D. at 339.

Finally, to assist the trier of fact, expert testimony must be both relevant to the case and be on a subject outside the understanding of a layperson. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001); *Sanders v. City of Chic. Heights*, No. 13-cv-221, 2016 WL 4398011, at *4 (N.D. Ill. Aug. 18, 2016) ("Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony."). Where an expert offers no more than a "bottom line" conclusion, he does not aid the jury. *Takata Corp.*, 192 F.3d at 759. And when a jury can draw inferences on their own without the assistance of the expert, expert testimony does not aid the jury. *See Aponte v. City of Chic.*, No. 09-cv- 8082, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011).

## II.  Mr. Reagan's General Legal Experience Does Not Qualify Him to Offer His Specific Opinions.

Mr. Reagan is an attorney. He was first retained by State Farm to advise them on what the ILSC would have done under different scenarios and, later, to render expert opinion on those subjects. Reagan Dep. 10:21-11:10 (Ex. C). Mr. Reagan tries cases in Illinois state trial courts, and argues appeals before appellate courts and the ILSC. Reagan Rpt. ¶¶ 1-3. He has defended State Farm in several matters and currently represents it in two matters. Reagan Dep. 9:20-10:13. He has a general civil litigation practice, with a focus on appellate law. Reagan Dep. 12:2-13:17. His qualifications summary and *curriculum vitae* indicate no emphasis in RICO or class actions. Reagan Rpt. 1-2 & Ex. A. He has experience from "various seminars" he attended on appellate court practice at which some members of the ILSC would speak and from his discussion of the topics "because it's a big part of what [he does]."  Reagan Dep. 36:23-37:14.

Mr. Reagan's published work related to the ILSC is limited to short, non-analytical summaries of civil ILSC opinions in the *Illinois Bar Journal* from 2001 to 2003. Reagan Rpt. ¶ 8. And for the last seven years, he and two others have provided short summaries of ILSC decisions, which are emailed by the Bar Association after the decisions are rendered. He has served on three committees related to the ILSC: The Judicial Performance Committee; committees related to ILSC's rule on unpublished opinions; and, 22 years ago, on a committee addressing jury instructions. Reagan Rpt. ¶¶ 5, 7 & Ex. A. He follows the ILSC "because of the nature of [his] practice and [his] desire to keep up with legal developments." *Id.* ¶ 10.

Mr. Reagan, an undoubtedly excellent appellate lawyer, may be qualified to opine on appellate practice under Rule 702, but he has no specialized experience that qualifies him to predict what the *Avery* outcome might have been without Justice Karmeier's participation or

whether Justice Karmeier influenced other justices.[2] *Gayton*, 593 F.3d at 617. Mr. Reagan does

not claim to have experience in predicting ILSC outcomes or evaluating the independence of

ILSC justices or the factors that influence their decisions, other than from his general

observations as a practitioner—observations any Illinois practitioner following the ILSC could

make—and has never conducted any quantitative or qualitative analysis or research on those

subjects other than the badly flawed analyses he conducted solely for this litigation. Other than

the brief summaries of ILSC decisions for the *Illinois Bar Journal*, Mr. Reagan has never

published specifically about the ILSC. And none of his slim published works (Reagan Rpt. ¶¶ 8-

9, Ex. A) involves any quantitative analyses of ILSC decisions, analyses of the ILSC's decision

making processes, ILSC trends, or the independence of ILSC justices.

      Thus, although Mr. Reagan may practice before the ILSC, may have read and

summarized ILSC opinions and related commentary about the ILSC as part of his practice, he

has done nothing more than any practitioner would do and thus has no special qualification over

any average appellate lawyer in this state, which is insufficient to qualify him as an expert on the

very specific opinions and predictions regarding *Avery* that he offers.[3] *Charter Nat'l Bank and

Trust v. Charter One Fin.,* No. 10-cv-905, 2001 WL 1035721, at *6 (N.D. Ill. Sept. 4, 2001)

(lawyer was not qualified to opine on trademark law because reading law, cases, and

commentary was no more than what any motivated lawyer could do, and teaching classes where

---

[2] And, as the United States Supreme Court warns, such predictions regarding tainted tribunals are both
impossible and unhelpful. *E.g.*, *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1909 (2016) ("The
deliberations of an appellate panel, as a general rule, are confidential. As a result, it is neither possible nor
productive to inquire whether the jurist in question might have influenced the views of his or her
colleagues during the decisionmaking process.").

[3] Mr. Reagan's published works in the *Illinois Bar Journal* have addressed the law of contribution, joint
and several liability, and comparative fault, general verdict rule liability, and brief summaries of the ILSC
cases for particular years. Other publications include co-authorship of a chapter ("Duty to Defend") in
liability insurance publications and CLE materials regarding civil appellate practice. Reagan Rpt. Ex. A

trademark law was a component was not sufficiently specialized, and concluding "there is no

special or unique perspective, other than his intelligence" the expert could bring); *cf. Whiting v.*

*Boston Edison Co.,* 891 F. Supp. 12, 24 (D. Mass. 1995) ("Just as a lawyer is not by general

education and experience qualified to give an expert opinion on every subject of the law, so too a

scientist or medical doctor is not presumed to have expert knowledge about every conceivable

scientific principle or disease.").

     Importantly, Mr. Reagan lacks the qualifications to offer his many opinions about, and

founded upon, his statistical analysis.[4] Mr. Reagan admits he is not a statistician, has never

taught statistics or math, and is not an expert in statistics. Reagan Dep. 21:14-22:19; 142:17-19;

161:15-16. His summary of qualifications and CV identify no practical experience in statistical

analysis, probability theory, or quantitative analysis that might otherwise qualify him to conduct

the empirical analyses on which he basis his conclusions about probable outcomes in *Avery*.

Accordingly, the Court should exclude all of Mr. Reagan's opinions founded on his statistical

analyses. *See Scott v. IBM Corp.*, 196 F.R.D. 233, 251 (D.N.J. 2000), *as amended* (Nov. 29,

2000) (doubting admissibility of a party's statistical expert testimony on the likelihood of an

outcome where expert had taken only one course in probability theory, did not employ statistical

methodologies in his work, does not teach in the field, and acquired only limited specialized

---

[4] Mr. Reagan offers the following probabilities and statistics: (1) the ILSC reverses a majority of cases it
agrees to hear; (2) after a period of five months following oral argument, if an opinion has not yet issued,
it becomes *increasingly likely* that an opinion of the [ILSC] will issue soon; (3) there is a *high likelihood*
that the ILSC will issue a decision on a four-member concurrence; (4) there is a *significant likelihood* that
the [Hale] defendants would receive favorable treatment on some aspect of their case by action of the
Supreme Court;" and (5) *it was likely* that some aspect of the lower court's decision in *Avery* would be
reversed." Reagan Rpt. ¶¶ 20, 32, 61-63.

Much of Mr. Reagan's "statistical" analysis is merely simple addition and division. State Farm's lawyers
could do the same. This type of rudimentary analysis requires no expertise beyond simple math skills.
*See McKeage v. Bass Pro Outdoor World, L.L.C.*, No. 12-cv-3157, 2014 WL 12754994, at *5 (W.D. Mo.
Apr. 10, 2014) (concluding comparable analyses required no specialized knowledge or expertise).

knowledge of statistical analysis); *State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.*,
980 F. Supp. 2d 1031, 1046 (N.D. Ind. 2013) (medical doctor may offer opinions based on
statistics because of educational background and experience conducting risk analysis similar to
analysis in the action); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated
Pretrial Proceedings*, No. 14-cv-1748, 2017 WL 1833173, at *6 (N.D. Ill. May 8, 2017)
(statistical testimony admissible where the expert led a firm specializing in applied mathematical
and statistical analyses, held advanced degrees in mathematics and statistics, and taught and
conducted relevant research at universities).

### III. Mr. Reagan's Opinions Should Be Excluded Because They Are Not Based on Sufficient Facts or Data or a Reliable Methodology.

Even if Reagan is qualified, he does not rely on sufficient facts or data, does not employ
reliable methodologies (or any methodology, for several opinions), and, where his opinions are
based on experience, fails to explain how that experience leads to his conclusion, relying instead
on bald assertions of opinion.

### A. Mr. Reagan's Opinions Are Unreliable Because They Are Based on Research and Analysis Conducted by State Farm's Defense Counsel.

As an initial matter, several of Mr. Reagan's opinions are unreliable because they are
based entirely on table summaries of largely unverified research and analysis conducted by State
Farm's defense counsel. *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 324 (N.D. Ill. 2008)
("Those courts that have considered the issue raised in this case have concluded that summaries
of depositions or data prepared by a party's lawyer are not sufficiently reliable that they may
form the basis of an expert's opinion."); *Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013, 1026
(N.D. Ill. 2011) (finding expert's uncritical reliance on summaries of case materials provided by
counsel did not provide a reliable basis for expert's opinion). Although an expert is permitted to

rely on information provided by counsel, at a minimum, the information must be independently

verified. *See State Farm Fire & Cas. Co.*, 980 F. Supp. 2d at 1048 (finding an expert is permitted

to rely on information given to him or her by a party or counsel, but "must independently verify

that information before utilizing it in [her] calculations."). Courts are highly skeptical of

summaries and analyses provided by a party's counsel because counsel views the case through a

partisan lens. *Cf. Sommerfeld*, 254 F.R.D. at 322 (addressing expert's reliance on deposition

summaries, and concluding "single-minded devotion to a client's interests . . . is incompatible

with the neutrality and evenhandedness that are necessary" for summary to be reliable).

Here, several of Mr. Reagan's conclusions are based entirely or largely on legal research

conducted by State Farm's counsel, Zack Clark, an associate with the Taft Law Firm, State

Farm's Defense Counsel, who took instruction from Tim Eaton, counsel of record in this case

(Reagan Dep. 9:12-19; 16:4-14):

1) Mr. Reagan's opinion's in paragraph 32—that the ILSC "strives to reach an opinion
   with at least some disposition"— is based, in part, on legal research described in
   paragraph 34 and conducted by State Farm defense counsel. Reagan Rpt. ¶ 32-34;
   Reagan Dep. 147:16-152:3. Mr. Clark provided a summary table of the cases he
   found. *Id.* 152:4-16. Mr. Reagan was unaware of what research database Mr. Clark
   used for that research. *Id.* 153:12-15.

2) Mr. Reagan's opinion in paragraph 63 of his report—that "as a matter of statistics . . .
   it was likely that some aspect of the lower court's decision would be reversed"—was
   based on the legal research identified in paragraphs 61 (PLAs that were reversed) and
   62 (class cases with outcomes favorable to defendants) of his report. Reagan Dep.
   165:4-166:3. Mr. Clark conducted that research: he collected and evaluated class
   action decisions and qualitatively determined which party benefitted more from the
   outcome and provided a summary of cases. Reagan Dep. 154:3-20; 157:4-158:4.

Mr. Clark ran legal database searches,[5] selected cases, read some cases, and provided

summaries of his findings; Mr. Reagan merely "spot checked" the cases in State Farm counsel's

summary tables, and "made some calculations and evaluations of [his] own based upon the

---

[5] Mr. Reagan did not outline any written parameters for the search. Reagan Dep. 98:10-21.

results of that outcome." Reagan Dep. 15:5-16:3; 154:3-20; 157:4-158:4. Mr. Reagan did not,

apparently, conduct any independent research to verify whether Mr. Clark's research was

complete. And, other than his "spot-check," conducted no evaluation to determine whether the

table summaries of cases[6] provided to him were accurate.

Mr. Reagan's largely uncritical reliance on State Farm attorneys' legal research and

summaries renders his opinions unreliable. *See Sommerfield*, 254 F.R.D. at 324; *Obrycka*, 792 F.

Supp. 2d at 1026; *State Farm Fire & Cas. Co.*, 980 F. Supp. 2d at 1048-49 (excluding opinion

where expert did nothing to independently verify the reliability of this information provided by a

party, rendering statistical analysis unreliable); *Lyman v. St. Jude Medical S.C., Inc.*, 580 F.

Supp. 2d 719, 726-27 (E.D. Wis. 2008) (excluding expert testimony because the expert failed to

verify the reliability of the data handed to him by counsel); *In re TMI Litig.*, 193 F.3d 613, 697

(3d Cir. 1999) (affirming exclusion of expert testimony because sole basis for the testimony was

summaries prepared by party's attorney).

The concerns courts espouse about expert reliance on the work of counsel are even more

troubling here: State Farm conducted most of the legal searches and undertook at least some

qualitative analysis such that the Court cannot be assured that the searches were thorough or the

analysis unbiased; and Mr. Reagan not only represented State Farm in the past but continues to

do so today. Reagan Dep. 9:20-10:13. Under these circumstances, coupled with Mr. Reagan's

largely uncritical reliance on State Farm's counsel's work, Mr. Reagan's opinions in paragraphs

32-34 and 60-63 lack the indicia of reliability that *Daubert* requires.

---

[6] Mr. Reagan did not include in his Report any of the table summaries or even a listing of cases on which
he relied to conduct his calculations and draw his conclusions. Thus, his methodology and conclusions
cannot be tested and independently verified and should be excluded on that basis alone. *Gopalratnam*,
877 F. 3d at 779 (reliability requires consideration of whether the proffered theory can be and has been
tested). Indeed, the Court cannot even evaluate whether Mr. Reagan used "sufficient data" on which to
conduct his calculations because Mr. Reagan did not disclose the data on which he relied.

**B. Mr. Reagan's Opinions That (i) it is Increasingly Likely that a Supreme Court Decision Will Issue Soon Once Five Months Have Elapsed After Oral Argument and (ii) only Two to Five Percent of PLAs are Granted Are Not Based on Any Data or Analysis.**

Mr. Reagan opines that "as time passes beyond the five-month point [after oral argument], it becomes increasingly likely that an opinion will issue soon" and that, accordingly, "an informed party could not reasonably believe, even in the summer of 2004, that even if Justice Karmeier won the election in November 2004, he would be sworn in before the issuance of the *Avery* opinion." Reagan Rpt. ¶ 20. That conclusion is not based on any data, analysis, or methodology in even the loosest sense. Even though Mr. Reagan's opinion is expressed as a probability, Mr. Reagan admits his reference to "increasingly likely" was merely a "qualitative term that [he] thought of," to which he could assign no statistic, and which was based not on data or methodology, but instead only generally on his experience. Reagan Dep. 46:14-48:2. Rather than analyze, quantitatively (or even qualitatively), how soon after that five-month threshold opinions in cases not decided before that threshold are, in fact, issued, Mr. Reagan simply guesses. It may be more likely that if an opinion is not issued within five months after oral argument, the opinion will not issue for months or years. Mr. Reagan does not actually know.

Similarly, Mr. Reagan opines that rate at which PLAs are granted by the ILSC ranges between 2%-5%, based on his "experience and common understanding." Reagan Rep. ¶ 59. Setting aside the irrelevance of this opinion,[7] it, too, is the product of a hunch rather than reasoned analysis. He did not conduct a study to reach that conclusion and could not provide any analysis to support it. Reagan Dep. 153:16-154:2 (did not conduct calculations, and couldn't say

---

[7] The rate at which PLAs are granted has no relevance to this case (since the PLA was granted) or even to Mr. Reagan's opinion that *Avery* would have been reversed. He insisted that he was not implying that the ILSC grants appeals only when it intends to reverse (Reagan Dep. 102:15-21), though that is the precise inference his report draws. Reagan Rpt. ¶¶ 59, 61, 63 (rate PLAs are granted is low; majority of PLAs granted are reversed, and once *Avery* PLA was granted, it was likely to be reversed).

what time period that statistic applied to); *id.* 35:15-21 (did not conduct a study).

And although experts may rely on their experience, Mr. Reagan does nothing to explain how his experience leads to these conclusions much less how he can express them in terms of probabilities or statistics. *See, e.g., id.* 47:5-16 (from time to time he made "calculations" but hasn't done so in a while, participated in seminars attended by Supreme Court justices, and talked to other lawyers). Accordingly, the Court should exclude the opinions in paragraphs 20 and 59.[8] *See* Fed. R. Evid. 702 advisory comm. note (2000 Amendments) (when relying on experience, an expert must connect his experience to the conclusion reached, explain why that experience is a sufficient basis for the opinion, and how it is reliably applied); *Baxter*, 131 F. Supp. 2d at 999–1000 (N.D. Ill. 2001) (expert may not make bald assertions of opinion); *State Farm Fire & Cas. Co.*, 980 F. Supp. 2d at 1044 ("Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology.").

### C.  Mr. Reagan's Opinion That It Was Likely Some Aspect of *Avery* Would be Reversed is Unreliable.

Mr. Reagan opines that "purely as a matter of statistics, once the Court decided to hear the *Avery* appeal, it was *likely* that some aspect of the lower court's decision in *Avery* would be reversed." Reagan Rpt. ¶ 63 (emphasis added). This prediction is based on his purported "statistical" findings in paragraphs 61 and 62 of his report (respectively, of PLAs granted, the majority are reversed; and significantly likely that the Court will decide class action matters in

---

[8] Mr. Reagan's opinion that Defendants could not have reasonably believed that Justice Karmeier would participate in the *Avery* decision must also be excluded because the *reasonableness* of any such belief is not at issue in this case and that opinion regarding Defendants' state of mind supplants the fact-finding role of the jury. *See, e.g., Klaczak v. Consol. Med. Transp. Inc.*, No. 96-cv-6502, 2005 WL 1564981, at *10 (N.D. Ill. May 26, 2005) (striking opinion regarding defendants' states of mind); *Sullivan v. Alcatel-Lucent USA Inc.*, No. 12-cv-7528, 2014 WL 3558690, at *7 (N.D. Ill. July 17, 2014) (expert may not testify as to motive); *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 768, 774 (N.D. Ill. 2009) ("Such opinions [regarding intent] merely substitute the inferences of the expert for those the jury can draw on its own.").

favor of defendants). Reagan Dep. 165:4-166:3. But not only are the data on which he relied

unreliable because they were supplied by State Farm's counsel and uncritically accepted by Mr.

Reagan, the conclusions in paragraphs 61 and 62, are not based on a reliable methodology, and

the results of that flawed methodology do not lead to the conclusion proffered.[9] *Hale v. State*

*Farm Mut. Auto. Ins. Co*., No. 12-cv-660, 2016 WL 6947065, at *8 (S.D. Ill. June 2, 2016)

(excluding opinion containing only "rudimentary analysis . . . that contains bias that can be

associated with the consulting fee paid to him").

Although Mr. Reagan opines that "in a majority of cases" between 2003 through 2005,

the ILSC reversed the cases it agreed to hear (Reagan Rpt. ¶ 61), he conceded that, in fact, it was

a "small majority . . . only slightly greater than 50 percent." Reagan Dep. 141:2-142:16; 154:3-

155:5. To the extent that a rudimentary calculation of the percentage of cases reversed or

affirmed has predictive power (and it does not), Mr. Reagan's own analysis should have led him

to the conclusion that it is nearly *equally likely* that *Avery* would have been affirmed. That is an

analytical gap—relying on data that does not support a conclusion—Mr. Reagan cannot bridge.

Moreover, although he presents his opinion as probability analysis (i.e., what would have

likely happened), he employed no statistical model.[10] He did not control for the issues in the

cases, the size of the defendant, the nature of the plaintiff, the value of the judgment at issue, or

---

[9] The reliability of these opinions is further undermined because Mr. Reagan conducted these analyses solely for purposes of this litigation; he has never before conducted empirical research predicting court outcomes, evaluating how or whether justices are influenced by one another, or the voting history and independence of ILSC justices. *See, e.g.*, *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010) (noting *Daubert* considerations included "whether the testimony relates to matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" and excluding opinion where *inter alia* expert's proposed standard was developed initially for litigation ); *Muzzey*, 921 F. Supp. at 519 (research conducted independent of the litigation provides important, objective proof of reliability).

[10] Mr. Reagan similarly opines on the *likelihood* in any given case that the ILSC will reach a four-member concurrence based on simple addition and division rather than a statistical model. Reagan Rpt. ¶¶ 32-34. That the ILSC infrequently fails to achieve a four-member concurrence says nothing about whether absent Justice Karmeier's participation, it would have achieved that concurrence in *Avery*.

changes in the makeup of the ILSC that might have allowed him to predict whether *Avery* would have suffered an outcome similar to the "majority" of the cases heard. *Id.*  99:22-101:14.

The flaws in his analysis presented in paragraph 62 are equally disqualifying. First, Mr. Reagan does not explain what constitutes "favorable treatment" in class action decisions by the ILSC or how State Farm's counsel determined that a particular outcome was more favorable to defendants than plaintiffs when conducting its research for Mr. Reagan. Reagan Rpt. ¶ 62. Mr. Reagan, who does not purport to have any expertise in class actions and the complex issues involved in class certification, does not explain how he evaluated State Farm's conclusions about "favorable" decisions, which he admits require value judgments that might vary by the observer and are thus unverifiable. Reagan Dep. 158:22-160:1. Mr. Reagan did not even, apparently, evaluate whether the issues in the class action cases evaluated were comparable to those in *Avery*. Worse, Mr. Reagan proffers a statistical probability (a "significant likelihood"), yet admits that conclusion was the result of simple division, not an empirical analysis—he was merely "looking to get a sense of what the Court was doing." *Id.* 158:18-159:5.

Finally, though he bases his ultimate conclusion—that "it was likely that . . . *Avery* would be reversed"—on both his analysis of cases reversed (using 2003-2005 for his sample) and the outcomes in class action cases (using 1999-2010 as the sample), he does not explain why, other than for convenience, these sample periods should be different. He admitted that his selection of the period 2003-2005 was selected to make the review task manageable. *Id.* 156:3-18; 163:10-164:9. And Mr. Reagan conceded that his opinion regarding the outcome of PLAs granted (a majority of cases are reversed) might not stand if a larger sample time period were selected.  *Id.* 156:19-157:2. And his use of differing time periods for his class action analysis and the PLA-reversal analysis is methodologically unsound. The conditions and circumstances in one time

14

period (such as the makeup of the court) may differ from those in another so consistent time periods must be used. *See Premium Plus Partners, L.P. v. Davis*, 653 F. Supp. 2d 855, 868 (N.D. Ill. 2009) (excluding expert's comparative analysis where he used data from different time periods where market conditions in one period might not be comparable to another); *cf. Electrolux Home Prod., Inc.,* 980 F. Supp. 2d at 1050 (N.D. Ind. 2013) (use of different data sets rendered analysis unreliable). Thus, Mr. Reagan's opinions in paragraph 61 through 63 should be excluded.[11]

### D.  Mr. Reagan's Opinion that Justice Karmeier's Participation Would Not Have Altered the Legal Beliefs of Other Justices is Unreliable.

Mr. Reagan opines that, based on (1) his finding that "it was likely that some aspect of . . . *Avery* would be reversed" and (2) his experience with all of the justices on the court and [familiarity] with their work as expressed in their opinions," the other ILSC justices are so strong willed and independent minded that they could not have been influenced by Justice Karmeier. Reagan Rpt. ¶¶ 58-63, 64-79, 81, 83. As an initial matter, as the United States Supreme Court warns, where a panel is tainted, it is neither possible nor productive to speculate about the effect of the disqualified judge on judicial deliberations. *Williams v. Pa.*, 136 S. Ct. 1899, 1909 (2016). In any event, the former basis—his finding of the likelihood of reversal—is unreliable and cannot support Mr. Reagan's conclusion.  The latter basis—Mr. Reagan's familiarity with the Justices and their opinions—is not sufficient to support the dramatic conclusory leap he makes. Indeed, this opinion is the quintessential impermissible *ipse dixit* of an expert. *See Trevino v. City of Rock Island Police Dep't*, 91 F. Supp. 2d 1204, 1208 (C.D. Ill. 2000).

---

[11] Mr. Reagan should not be permitted to present even the rudimentary percentage calculations. Those percentages have no predictive power and thus say nothing about what would have happened in *Avery* but for Justice Karmeier's participation, creating the risk of misleading the jury.

The *only* support Mr. Reagan offers to buttress his opinion of the justice's independence, are brief biographies of each justice. Reagan Rpt. ¶¶ 65-70, 75-76. Insufficient as they are as a basis for his opinion (as they say nothing about the justices' independence), these biographies were merely plucked from the ILSC website; Mr. Reagan made a few minor word changes.[12] This is hardly the result of Mr. Reagan's insights from his appellate experience. *See Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 814 (N.D. Ill. 2005) ("Spending a few minutes on the internet does not make one an expert on any 'industry' or topic.").

Based solely on his experience and these biographies he opines, as to Justices McMorrow, Garmin, Fitzgerald, Freeman, and Kilbride:

> [T]hose justices had clear views of the law and of their role on the court. While each of those members of the court is respectful of the views of their fellow justices, it is my opinion that in 2005 it is unlikely that Justice Karmeier would have been able to sway their opinion to divert from what their independent view of the law was based upon their own knowledge and research, and the work of their individual clerks. The other members of the court were each strong personalities with individualistic well-formed judicial approaches, with many years of substantial service. They were each known to be strong, independent proponents of their own views.

Reagan Report ¶ 71. As to Justices Burke and Theis, he similarly opines:

> Each of those justices also had strong views of the law, and they each had significant experience on the appellate court before

---

[12] *Compare* Reagan Report ¶ 65 *with* Illinois Courts, Mary Ann G. McMorrow, http://www.illinoiscourts.gov/SupremeCourt/JusticeArchive/Bio_McMorrow.asp; Reagan Report ¶ 66 *with* Illinois Courts, Rita B. Garman, http://www.illinoiscourts.gov/SupremeCourt/Justices/Bio_Garman.asp; Reagan Report ¶ 67 *with* first four paragraphs of Illinois Courts, Thomas R. Fitzgerald, http://www.illinoiscourts.gov/SupremeCourt/JusticeArchive/Bio_Fitzgerald.asp; Reagan Report ¶ 68 *with* Illinois Courts, Charles E. Freeman, http://www.illinoiscourts.gov/SupremeCourt/Justices/Bio_Freeman.asp; Reagan Report ¶ 69 *with* Illinois Courts, Thomas L. Kilbride, http://www.illinoiscourts.gov/SupremeCourt/Justices/Bio_Kilbride.asp; Reagan Report ¶ 75 *with* Illinois Courts, Anne M. Burke, http://www.illinoiscourts.gov/SupremeCourt/Justices/Bio_Burke.asp; Reagan Report ¶ 76 *with* Illinois Courts, Mary Jane Theis, http://www.illinoiscourts.gov/SupremeCourt/Justices/Bio_Theis.asp.

ascending to the Supreme Court. They, too, would vote their own
minds and their own consciences.

Mr. Reagan does not identify the nature of his relevant experience or how it might lead to
his conclusions. Nor does he provide any analysis, quantitative or qualitative, conducted
personally or by others, regarding how each of these justices decide cases, the number of
majority, concurring, or dissenting opinions each joined in, or how often they alone dissented.
Under *Daubert* that is not enough. *See Lyons*, 322 F.R.D. at 337 (excluding expert that failed to
provide "how and why" he reached his result other than his knowledge and experience).[13] Mr.
Reagan should not be permitted to mislead the jury by offering "subjective factual suppositions
in the guise of expert testimony." *Trevino*, 91 F. Supp. 2d at 1208.

## IV. The Court Should Exclude Mr. Reagan's Predictions of the *Avery* Outcome Based on His Reading of the *Avery* Opinion.

Mr. Reagan also opines that based on the text of the *Avery* opinion, it is "highly likely
that the five remaining members of the court would have issued collective opinions vacating the
appellate court's opinion" even if Justice Karmeier had not participated. Reagan Rpt. ¶ 49. Mr.
Reagan regurgitates the findings of the *Avery* majority and concurring opinions, and opines,
unsurprisingly, that both the majority and concurring justices agreed that a nationwide class
cannot be certified, the specification damages claim could not be sustained, and the non-Illinois
plaintiffs lacked a claim under the Illinois consumer fraud statute. *Id.* ¶¶ 41-49.

This opinion is pure *ipse dixit*. Classically "begging the question," he assumes that when
a justice clearly articulates his or her views in the text of an opinion, they must have always held

---

[13] *See also Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chic.*, 877 F.2d 1333, 1339 (7th Cir. 1989)
(excluding expert who provided "nothing but conclusions-no facts, no hint of an inferential process, no
discussion of hypotheses considered and rejected" other than his own experience); *United States v. Noel*,
581 F.3d 490, 497 (7th Cir. 2009) (excluding expert with experience in child pornography investigations
whose opinion amounted to "I am familiar with the definition . . . and this meets that definition because I
said so.").

those views and thus concludes from the *Avery* text that the members of the *Avery* panel were not influenced by Justice Karmeier's participation, when the former premise is very much in dispute.[14] *See Takata Corp.*, 192 F.3d at 757 (finding opinion that assumes the truth of "the very question that [the expert] was called upon to resolve" is unreliable). Moreover, Mr. Reagan does not explain how his experience (to the extent he is even drawing on it) leads to this conclusion. Nor did he consider any alternative hypotheses regarding the influence of Justice Karmeier's participation or what the votes may have been without it. He did not consider the views the justices may have had before Justice Karmeier joined the ILSC; did not address (much less provide a basis for disregarding) evidence that the justices were deadlocked prior to Justice Karmeier's participation; and did not consider whether the more than 18-month delay from oral argument to decision raised the inference that the court was at an impasse and justices later changed their minds. Reagan Dep. 49:24-50:9; 57:23-63:15; 69:22-74:16; 97:3-21; 109:22-116:7. He did not attempt to determine whether the cases in which the ILSC was unable to obtain a four-member concurrence (Reagan Rpt. 33) suffered decision delays comparable to those in *Avery* to evaluate whether the delay in *Avery* suggested a deadlock that Justice Karmeier might have broken. Reagan Dep. 118:4-119:5. His conclusion—that five of the six justices would have voted the same way absent Justice Karmeier's participation—is thus neither based on sufficient facts and data nor reached after consideration and rejection of alternative hypotheses. *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chic.*, 877 F.2d 1333, 1339 (7th Cir. 1989) (excluding expert that provided "nothing but conclusions-no facts, no hint of an inferential process, [and] no discussion of hypotheses considered and rejected" other than his own experience).

---

[14] Reagan asserts his opinion is grounded upon "very, very specific statements as to the law made in both the majority opinion and in the concurring and dissenting opinion, and in [his] further *belief* that justices adhere to their views of the law." Reagan Dep. 121: 3-7 (emphasis added). That "belief" is not a sufficient foundation.

18

In any event, given that Mr. Reagan's opinion is based on only a plain reading of the

*Avery* text, Mr. Reagan's opinion about the text of *Avery* is not beyond the understanding of an

ordinary lay person. The jury is capable of listening to Defendant's opening and closing

arguments about the *Avery* opinions, read those opinions, count the votes, and draw their own

inferences about whether the *Avery* outcome was foreordained. Mr. Reagan's opinion on the

*Avery* text offers no particular insight or expertise that would aid the trier of fact. *Cf. Reginald*

*Martin Agency, Inc. v. Conseco Med. Ins. Co.*, No. 04-cv-1587, 2007 WL 831613, at *3 (S.D.

Ind. Mar. 5, 2007) (opinion that merely repeated the terms of a contract that were not beyond the

understanding of a layperson was inadmissible).

## V.  Mr. Reagan's Opinions Regarding Plaintiffs' Experts Harrison and Shepherd Should be Excluded as Pure Legal Advocacy.

Mr. Reagan spills considerable ink attempting to rebut the opinions of Plaintiffs' experts

Mark Harrison and Dr. Joanna Shepherd. Reagan Rpt. ¶¶ 21-29, 53-58.  Mr. Harrison—an expert

in legal and judicial ethics and discipline—after reviewing the relevant case law and judicial

ethics rules—opines that ILSC's decision in *Avery* was tainted by the participation of Justice

Karmeier. Harrison Report ¶ 21 (Ex. D). Dr. Shepherd, an expert in judicial decision making,

reviewed social science research on judicial decision making and the influence of contributions

on judicial decisions and opined that she would expect Justice Karmeier's involvement in *Avery*

influenced other justices and that *Avery* was tainted. Shepherd Rpt. 16 (Ex. E).

Mr. Reagan criticizes these experts because, he claims, their opinions are speculative,

constitute "legal opinion," and are based on insufficient facts and knowledge.[15] He does not

challenge (nor could he) their methodologies, their interpretation of the case law or the ethical

---

[15] For example, he contends these experts failed to consider the lack of evidence regarding, and lacked personal knowledge of, Justice Karmeier's actions; lacked familiarity with the PLAs granted or reversed; and lacked knowledge of the ILSC's deliberative process Reagan Rpt. ¶¶ 21-29; 53-58.

rules, or the social science research on which Dr. Shepherd relies. He does not bring to bear his own purported expertise in the ILSC to level these criticisms nor does he purport to have expertise in the fields in which Mr. Harrison and Dr. Shepherd practice that might lead him to challenge their conclusions. His rebuttal is pure advocacy dressed up as expert opinion—a *Daubert* argument on qualifications and reliability. Defendants are free to challenge Plaintiffs' experts on these bases in their own motion but they may not use another attorney in the guise of an expert to do so. *See Ault v. Speicher*, No. 07-cv-398, 2009 WL 799497, at *5 (S.D. Ill. Mar. 25, 2009) (Herndon, J.) (excluding expert opinion "cleverly disguised legal argument and analysis" that would have accomplished the same if argued in a motion).[16] Accordingly, the Court should exclude Mr. Reagan's opinions regarding Mr. Harrison and Dr. Shepherd.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the entry of an order excluding Michael T. Reagan's expert report and testimony.

Dated: January 30, 2018                    Respectfully Submitted,

                                           /s/ *Robert A. Clifford*
                                           Robert A. Clifford #0461849
                                           George S. Bellas
                                           Kristofer S. Riddle
                                           Clifford Law Offices
                                           120 N. LaSalle Street
                                           31st Floor
                                           Chicago, IL 60602
                                           Tel: 312-899-9090

---

[16] *See also RLJCS Enters. Inc. v. Prof'l Benefit Trust*, No. 03-cv-6080, 2005 WL 3019398, at *5 (N.D. Ill. Nov. 8, 2005) (noting parties may retain attorney-experts as co-counsel, "but dressing up their legal arguments as 'expert reports' does not make them any more persuasive and is plainly disallowed under the Federal Rules of Evidence."); *Sommerfield*, 254 F.R.D. at 332 (expert's conclusion that party had done little to counter or refute the allegations raised in the complaint was inadmissible legal argument not expert opinion); *United States v. Frazier*, 387 F.3d 1244 (2004) ("[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue . . . .).

Steven P. Blonder #6215773
Jonathan L. Loew
Much Shelist, P.C.
191 N. Wacker
Suite 1800
Chicago, IL 60606-2000
Tel: 312-521-2402

John W. "Don" Barrett
Barrett Law Group, P.A.
404 Court Square North
P.O. Box 927
Lexington, MS 39095-0927
Tel: 662-834-2488

Patrick W. Pendley
Pendley, Baudin & Coffin, LLP
Post Office Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Tel: 888-725-2477

Thomas P. Thrash
Marcus N. Bozeman
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201
Tel: 501-374-1058

Gordon Ball
Gordon Ball PLLC
550 Main Street
Bank of America Center, Ste. 600
Knoxville, TN 37902
Tel: 865.525.7028

Elizabeth J. Cabraser
Robert J. Nelson
Kevin R. Budner
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000

Brent W. Landau
Hausfeld, LLP
325 Chestnut Street
Suite 900
Philadelphia, PA 19106
Tel: 215-985-3273

Erwin Chemerinsky
University of California, Berkeley School of Law
215 Boalt Hall,
Berkeley, CA 94720
(510) 642-6483

Richard R. Barrett
Law Offices of Richard R. Barrett, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, Mississippi 38655
Tel: 662-380-5018

Stephen A. Saltzburg
The George Washington University Law School
2000 H. Street, NW
Washington, D.C. 20052
Tel. 202-994-7089

*Attorneys for Plaintiffs*

21

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 7.1(b), I certify that a copy of the foregoing was served upon counsel on via the Court's CM/ECF system on January 30, 2018.

/s/ *Kristofer S. Riddle*