## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, TODD SHADLE and
LAURIE LOGER, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

  v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, EDWARD MURNANE, and
WILLIAM G. SHEPHERD,

        Defendants.

Case No. 3:12-cv-00660-DRH-SCW

Judge David R. Herndon

Magistrate Judge Stephen C. Williams

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO EXCLUDE THE TESTIMONY AND REPORTS OF BRUCE GREEN AND MEMORANDUM OF LAW IN SUPPORT

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

GREEN'S OPINIONS ....................................................................................................4

STANDARD FOR THE ADMISSION OF EXPERT TESTIMONY ............................6

ARGUMENT ...................................................................................................................7

I.     GREEN'S OPINIONS ARE IMPROPER LEGAL CONCLUSIONS .............................7

II.    GREEN'S IMPERMISSIBLE SPECULATIONS ON MATTERS OF
       KNOWLEDGE AND INTENT TO DECEIVE SHOULD BE EXCLUDED...................9

III.   GREEN'S OPINIONS ON ETHICAL STANDARDS ARE IRRELEVANT .................10

IV.    GREEN'S  OPINIONS  ARE  IMPERMISSIBLY  BASED  ON  UNRELIABLE
       ASSUMPTIONS AND SPECULATION.........................................................................11

V.     GREEN'S PROPOSED TESTIMONY SHOULD BE EXCLUDED UNDER FED.
       R. EVID. 403 BECAUSE IT WOULD UNFAIRLY PREJUDICE STATE FARM,
       CONFUSE THE ISSUES, AND MISLEAD THE JURY .................................................16

CONCLUSION...............................................................................................................19

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*American Family Mutual Insurance Co. v. Electrolux Home Products, Inc.*,
　2014 WL 2893179 (W.D. Wisc. June 26, 2014) ............................................. 17

*In re C.R. Bard, Inc.*,
　948 F. Supp. 2d 589 (S.D. W. Va. 2013) .................................................. 2, 10

*C.W. ex rel. Wood v. Textron, Inc.*,
　807 F.3d 827 (7th Cir. 2015) .............................................................. 7

*Cain v. Osman*,
　286 F. App'x 934 (7th Cir. 2008) .......................................................... 11

*In re CESSNA 208 Series Aircraft Products Liability Litigation*,
　2009 WL 1357234 (D. Kan. May 12, 2009) ............................................... 17, 18

*Clark v. Takata Corp.*,
　192 F.3d 750 (7th Cir. 1999) .............................................................. 16

*Client Funding Solutions Corp. v. Crim*,
　943 F. Supp. 2d 849 (N.D. Ill. 2013) ..................................................... 7, 17

*Comcast Boat Corp. v. Brunswick Corp.*,
　1998 WL 35254137 (D. Ark. Mar. 2, 1998) .............................................. 3, 17

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
　650 F. Supp. 2d 314 (S.D.N.Y. 2009) ...................................................... 13

*United States v. Cortez*,
　205 F. Supp. 3d 768 (E.D. Va. 2016) ....................................................... 8

*Der v. Connolly*,
　2011 WL 31498 (D. Minn. Jan. 5, 2011), *aff'd in part*,
　666 F.3d 1120 (8th Cir. 2012) ............................................................ 14

*DiBella v. Hopkins*,
　403 F.3d 102 (2d Cir. 2005) ............................................................... 18

*Englebrick v. Worthington Industries, Inc.*,
　2016 WL 6637712 (C.D. Cal. Mar. 11, 2016) .............................................. 8

*Estate of* Lynott *ex rel. Moen v. Luckovich*,
　2018 WL 501577 (W.D. Wash. Jan. 22, 2018) ............................................. 9

*F.T.C. v. Amy Travel Service, Inc.*,
　875 F.2d 564 (7th Cir. 1989) ............................................................ 1, 8

*In re Fosamax Products Liability Litigation*,
    645 F. Supp. 2d 164 (S.D.N.Y 2009)..............................................................10

*United States v. Gallardo*,
    497 F.3d 727 (7th Cir. 2007) ..........................................................................10

*Gopalratnam v. Hewlett-Packard Co.*,
    877 F.3d 771 (7th Cir. 2017) ..................................................... 9, 11, 13, 15, 16

*Gregory v. Oliver*,
    2002 WL 31972165 (N.D. Ill. Dec. 27, 2002).................................................13

*Holmes Group, Inc. v. RPS Products, Inc.*,
    2010 WL 7867756 (D. Mass. June 5, 2010) .....................................................9

*In re Intel Corp. Microprocessor Antitrust Litigation*,
    526 F. Supp. 2d 461 (D. Del. 2007)..................................................................7

*King-Indiana Forge, Inc. v. Millennium Forge, Inc.*,
    2009 WL 3187685 (S.D. Ind. Sept. 29, 2009) ................................................12

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................................................6

*Lanteri v. Credit Protection Association*,
    2016 WL 4394139 (S.D. Ind. Aug. 17, 2016) ........................................... 1, 7, 8

*Lewis v. CITGO Petroleum Corp.*,
    561 F.3d 698 (7th Cir. 2009) ............................................................................6

*Marmo v. Tyson Fresh Meats, Inc.*,
    457 F.3d 748 (8th Cir. 2006) .....................................................................13, 14

*Negrete v. Allianz Life Insurance Co. of North America*,
    2013 WL 6535164 (C.D. Cal. Dec. 9, 2013) ...................................................9

*Owens v. McDermott, Will & Emery*,
    736 N.E.2d 145 (2000).....................................................................................10

*Pelletier v. Zweifel*,
    921 F.2d 1465 (11th Cir. 1991) ......................................................................11

*Peoples State Bank v. Stifel, Nicolaus & Co., Inc.*,
    2013 WL 1024917 (S.D. Ind. Mar. 14, 2013)...................................................8

*In re Rezulin Products Liability Litigation*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004).....................................................2, 9, 18

*Rosen v. Ciba-Geigy Corp.*,
    78 F.3d 316 (7th Cir. 1996) ..............................................................................7

*Roundy's Inc. v. N.L.R.B.*,
    674 F.3d 638 (7th Cir. 2012) ............................................................................7

*Sims v. Mulcahy*,
    902 F.2d 524 (7th Cir. 1990) .......................................................................... 18, 19

*Smith v. Ford Motor Co.*,
    215 F.3d 713 (7th Cir. 2000) .............................................................................. 10

*State Farm Fire & Casualty Co. v. Electrolux Home Products, Inc.*,
    980 F. Supp. 2d 1031 (N.D. Ind. 2013) ............................................................ 13

*Stopka v. Alliance of American Insurers*,
    141 F.3d 681 (7th Cir. 1998) .......................................................................... 18, 19

*Tockstein v. Spoeneman*,
    2009 WL 2143762 (E.D. Mo. July 14, 2009) ..................................................... 8

*Town of Westport v. Monsanto Co.*,
    2017 WL 1347671 (D. Mass. Apr. 7, 2017), *aff'd*, 877 F.3d 58 (1st Cir. 2017).............. 9

*Tyger Construction Co. Inc. v. Pensacola Construction Co.*,
    29 F.3d 137 (4th Cir. 1994) ............................................................................... 12

*Vandenberg v. Brunswick Corp.*,
    --- N.E.3d ----,  2017 WL 5759845 (Ill. App. Ct. Nov. 27, 2017).................... 11

*In re Welding Fume Products, Liability Litigation*,
    2005 WL 1868046 (N.D. Ohio Aug. 8, 2005) .................................................. 18

*Wolfe v. McNeil-PPC, Inc.*,
    2011 WL 1673805 (E.D. Pa. May 4, 2011) ...................................................... 18

*Woods v. Olin Corp.*,
    2002 WL 34371098 (S.D. Ill. July 9, 2002) ........................................................ 6

## RULES / STATUTES

Fed. R. Evid. 401 ....................................................................................................... 1

Fed. R. Evid. 403 ................................................................................ 1, 3, 16, 17, 18

Fed. R. Evid. 702 .............................................................................................. *passim*

Fed. R. Evid. 702(b)................................................................................................... 3

Fed. R. Evid. 704 ....................................................................................................... 1

Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), by and through counsel and pursuant to Fed. R. Evid. 401-03 and 702-04, moves to exclude the initial and rebuttal reports and testimony of Plaintiffs' expert Bruce Green and submits the following memorandum of law.

## INTRODUCTION

In this RICO case, Plaintiffs retained Green, a law professor, to opine on "how judicial opinions and rules of professional conduct apply to aspects of the conduct of State Farm's in-house and outside counsel in connection with the *Avery* lawsuit." Initial Report of Bruce A. Green, attached as Exhibit 1 at 1. His flawed and irrelevant opinions should be excluded in full.

Green's reports and testimony consist almost entirely of impermissible legal conclusions regarding the law of attorney ethics and the application of ethical rules and standards to selectively chosen assumed facts and opinions regarding the purported conduct of State Farm and its unidentified lawyers. As with other legal opinions and conclusions, courts will not admit "expert opinions regarding the legal issue of whether [a party's] counsel have violated the applicable ethical rules." *Lanteri v. Credit Prot. Ass'n, L.P.*, 2016 WL 4394139, at *3 (S.D. Ind. Aug. 17, 2016) (Lawrence, J.). Green, who undertook no factual investigation of his own, also opines that statements in State Farm's briefs are "misleading" and "deceptive"[1] -- these opinions are likewise impermissible legal conclusions. *See F.T.C. v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989) (an expert may not testify as to whether particular practices were "deceptive or misleading" "since the question called for [the expert] to render a legal opinion").

Green's speculative opinions as to what State Farm's lawyers "knew" and whether State Farm's lawyers "deliberately" intended to deceive the Illinois Supreme Court are also

---

[1]   Ex. 1 at 16, 18, 19, 21, 22; Deposition of Bruce Green, attached as Exhibit 2, at 67:10-14; 78:6-12; 78:20-79:4.

impermissible and should be excluded.  Such opinions "have no basis in any relevant body of knowledge or expertise," *see In Re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (Kaplan, J.), and are "inferences for the jury to determine, not for an expert to opine." *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 628 (S.D. W. Va. 2013) (Goodwin, J.).

Furthermore, Green's opinions on the application of ethical rules and standards are irrelevant to any issue in this RICO case.  Violations of ethical obligations, as a matter of Illinois law, do not give rise to a cause of action for damages, and as Green admits, do not constitute predicate acts under RICO.  Nor are they relevant to proving other elements that Plaintiffs will have to establish to prevail on their RICO claims.  Accordingly, Green's testimony does not meet the most basic standards for admissibility.

Green's opinions and methodology are not reliable. Following Plaintiffs' counsel's instructions, Green accepts, unquestioningly, the allegations in Plaintiffs' First Amended Complaint and the conclusions and opinions of Plaintiffs' purported expert Thomas Myers.  He also accepts, as Plaintiffs' counsel asked him to do, the assumption – which Green admits is without evidentiary support -- that State Farm's lawyers "knew" that statements in State Farm's 2005 and 2011 briefs were false or deceptive.  In the process of formulating his hypothetical opinions, Green made no effort to evaluate any of these assumptions.  He did not read any of the reports or depositions of State Farm's experts or the depositions of numerous fact witnesses, including the State Farm witnesses whose integrity he impugns.[2]  In particular, Green failed to read the report of State Farm's expert Bruce Dubinsky, who addressed the deficiencies of Myers' Report, on which Green principally relies.  Thus, Green's testimony and opinions are not "based

---

[2]  In preparing his rebuttal report, Green read three of State Farm's experts' reports (Morgan, O'Brien, and Painter).  Ex. 3 at 1 n.1.

on sufficient facts or data," as required by Fed. R. Evid. 702(b).

Green's reasoning and methodology are also faulty because he does not "adequately account[] for obvious alternative explanations," which is a benchmark for reliability. *See* Fed. R. Evid. 702, 2000 amend., adv. comm. note. Based on the assumptions that Myers is correct as to the facts and that therefore statements in State Farm's briefs must be incorrect, Green acknowledges only two possibilities: some unidentified State Farm attorneys deliberately lied or inadvertently misled the Illinois Supreme Court. Ex. 2 at 78:6-23. Green ignores the obvious third possibility: State Farm's attorneys reasonably and honestly disagreed with Plaintiffs' characterizations of the facts, and their conclusions and inferences (and still do). State Farm's evidence, expert reports, and depositions demonstrate a more than reasonable basis for State Farm's defense in this case and in *Avery*. Green's failure to consider them and to rule out reasonable disagreement on the part of State Farm's attorneys renders his opinions inadmissible and unreliable. No expert can simply assume away the record evidence.

Green's opinions also should be excluded under Fed. R. Evid. 403. Even assuming *arguendo* that Green's proposed testimony regarding alleged violations of ethical standards by unnamed State Farm lawyers might have some minimal relevance to the issues in this RICO case (which it does not), any probative value of such testimony would be far outweighed by the manifest risks of unfair prejudice to State Farm, confusion of the issues, and misleading the jury. There is a substantial danger that the jury would erroneously infer from Green's testimony that, because unnamed counsel for State Farm might have violated ethical standards, State Farm must have violated RICO. *See*, *e.g*., *Comcast Boat Corp. v. Brunswick Corp*., 1998 WL 35254137, at *3 (E.D. Ark. Mar. 2, 1998) (Moody, J.) (excluding plaintiff's ethics expert's proffered testimony

because, *inter alia*, "the jury may incorrectly assume that a breach of an 'ethical obligation' equals a violation of a legal standard.  The potential for such a result cannot be disregarded").

Accordingly, Green's proposed testimony and reports should be excluded in their entirety from any trial of this case.

## GREEN'S OPINIONS

Green is a professor at Fordham Law School, where he teaches on "lawyers' professional conduct."  Ex. 1 at 1.  Plaintiffs hired Green to opine on "how judicial opinions and rules of professional conduct apply to aspects of the conduct of State Farm's in-house and outside counsel in connection with the *Avery* lawsuit."  *Id.*

In forming his opinions, Green, as instructed by Plaintiffs' counsel, relied upon materials supplied to him by Plaintiffs' counsel.  *See id.* at 3 & Ex. B; Ex. 2 at 11:10-21.  As Green admits, he based his opinions on the biased assumption that "the allegations of the First Amended Class Action Complaint in this case and [] the factual findings and conclusions in the Expert Report of Thomas A. Myers" were true.  Ex. 1 at 3; Ex. 2 at 26:24-27:4.  Forsaking any pretense of intellectual rigor, Green's assumptions were drawn exclusively from the selective materials he was handed by Plaintiffs' counsel.  "The only documents [he] reviewed were those that the plaintiffs' lawyers provided."  Ex. 2 at 109:12-18; *see also id.* at 11:19-12:15.

For purposes of his Report, Green also was "asked to assume" that "State Farm, and particularly its in-house lawyers, were aware of the extent of State Farm's support" for Justice Karmeier's campaign. Ex. 2 at 61:10-62:6; Ex. 1 at 4.  Green admits that neither the First Amended Complaint nor Myers' Report mentions anything about State Farm's lawyers and their purported "knowledge" (Ex. 2 at 32:21-33:19), and that he had seen "no direct evidence" that any State Farm lawyer knew that State Farm (purportedly) "funneled" contributions to Justice Karmeier's campaign or provided support to the campaign.  *Id.* at 41:11-16; *see also id.* at 49:12-14 ("I don't

know based on the record what [State Farm's lawyers] knew or didn't know"). Nevertheless, Green acknowledges "what [State Farm's] lawyers knew and what they did" is the "essential factual premise" for his opinions. *Id.* at 48:19-49:2.

Green's testimony "assum[es] … that [Plaintiffs' purported expert Myers'] Report is essentially correct as to the funneling of money from State Farm for the benefit of the Karmeier campaign" and that "based on that that the 2005 and 2011 State Farm submissions were deceptive." *Id.* at 78:6-12. According to Green's false dichotomy, the question then becomes "whether the lawyers were acting improperly or whether they were acting inadvertently in submitting those two briefs…." *Id.* at 78:12-16.

In preparing his Report, Green made the conscious decision *not* to learn what key witnesses had testified to under oath at their depositions. Green was aware that "extensive depositions had been taken" in this action. *Id.* at 20:14-21:17. Yet Green repeatedly testified that he deliberately chose not to read these transcripts. *Id.* at 108:12-25; 110:7-14. Thus, for example, Green purports to offer opinions about the conduct of lawyers in State Farm's "general counsel's office under Kim Brunner," even though Green "never read Kim Brunner's sworn deposition testimony." *Id.* at 53:25-54:11. Green also did not read any depositions of witnesses from the Chamber of Commerce, the Institute for Legal Reform, or the American Tort Reform Association ("ATRA"), despite these organizations' purported central role in Plaintiffs' allegations. *Id.* at 21:3-21.

Based on the assumed facts he took from the Myers Report and First Amended Complaint, Green hypothetically opines that, "[*i*]*f* these factual assumptions are correct, then, based on my review of State Farm's 2005 and 2011 briefs, both briefs were deceptive and misleading, in contravention of accepted standards of advocacy governing parties' and lawyers' interactions with the court." (Rebuttal Report of Bruce A. Green, attached as Exhibit 3, at 2 (emphasis added)); *see*

*also* Ex. 2 at 26:5-23.  Green admits that he is "not making [or] giving [an] opinion[] on whether in fact … money was funneled from State Farm into the Karmeier campaign."  Ex. 2 at 67:6-14. Rather, Green is hypothetically opining that, "if" State Farm did "funnel" money to the Karmeier campaign, and "if" State Farm's lawyers were aware of that, then State Farm's filings in the Illinois Supreme Court would violate ethical obligations under the Illinois Rules of Professional Conduct and common law—in particular, the duty of candor, the duty not to mislead the court, and the duty to investigate facts.  Ex. 1 at 14-23.

Although Green opines that State Farm's in-house and outside counsel might have violated their ethical obligations, Green is unable to identify a single lawyer who actually violated these obligations, even if Green's assumed facts turn out to be true.  Indeed, Green admitted that "I haven't opined that any particular lawyer has violated a particular rule … because I'm taking assumed facts."  Ex. 2 at 38:12-39:6.  Green also has "no opinion one way or the other about what was done in the preparation and submission of [State Farm's] briefs" to the Illinois Supreme Court—this was "not a question for me."  *Id.* at 48:2-7.  Green further admits that he had "seen no evidence of [] what the lawyers specifically knew" when preparing these briefs.  *Id.* at 49:3-8.  Nor does Green know "what, if any, inquiry the lawyers did."  *Id*. at 74:9-21.

## STANDARD FOR THE ADMISSION OF EXPERT TESTIMONY

"*Daubert* requires that the trial judge perform a gatekeeping function with respect to expert testimony."  *Woods v. Olin Corp*., 2002 WL 34371098, at *1 (S.D. Ill. July 9, 2002) (Herndon, J.); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999) (applying *Daubert* to non-scientific testimony).   Plaintiffs as "[t]he proponent of the expert bear[] the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard."  *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).  Rule 702 sets forth the elements a proponent must satisfy to introduce expert testimony:  (1) the witness must be "qualified as an expert by

knowledge, skill, experience, training, or education"; (2) the testimony must "help the trier of fact to understand the evidence or to determine a fact in issue"; and (3) the testimony must be reliable, which requires the proponent to demonstrate (a) that it "is based on sufficient facts or data," (b) that it is "the product of reliable principles and methods," and (c) that "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). As the Seventh Circuit has long held, "'an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'" *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) (citation omitted).

## <u>ARGUMENT</u>

## I.   GREEN'S OPINIONS ARE IMPROPER LEGAL CONCLUSIONS

"Rules 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case." *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012) (internal quotation marks omitted). Green's contingent and hypothetical opinions are merely legal conclusions.[3]   Indeed, his Report is basically a legal brief, divided into two sections: one, legal opinion interpreting some ethical rules governing attorney conduct (Ex. 1 at 6-14), and, two, legal conclusions regarding the potential application of those ethical rules to his assumptions about the conduct of State Farm's lawyers. *Id.* at 14-23.

Expert opinions "that amount to legal conclusions do not assist the trier of fact, and expert testimony that is 'largely on purely legal matters and made up of solely legal conclusions' is not admissible." *Client Funding Solutions Corp. v. Crim*, 943 F. Supp. 2d 849, 863 (N.D. Ill. 2013) (Dow, J.) (citation omitted). Pursuant to this rule, courts will not admit "expert opinions regarding the legal issue of whether [a party's] counsel have violated the applicable ethical rules." *Lanteri*,

---

[3]  Green has previously had his opinions excluded as impermissible legal conclusions. *See In re Intel Corp. Microprocessor Antitrust Litig.*, 526 F. Supp. 2d 461, 466 (D. Del. 2007)  (Farnan, J.).

2016 WL 4394139, at *3.  Green admitted at his deposition that his opinions as to whether State Farm lawyers violated ethical rules constitute a legal conclusion.  Ex. 2 at 42:21-25.  As a result, his testimony plainly falls within the scope of the rule against experts offering legal conclusions. *See, e.g.*, *Tockstein v. Spoeneman*, 2009 WL 2143762, at *2 (E.D. Mo. July 14, 2009) (Webber, J.) (excluding expert's opinion that a contract was entered into in violation of the state's ethical rules on the basis that this opinion was "'little more than [a] legal conclusion[]'") (citation omitted); *Englebrick v. Worthington Indus., Inc.*, 2016 WL 6637712, at *1 (C.D. Cal. Mar. 11, 2016) (Carney, J.) (rejecting expert declaration that opined as to actions an attorney was required to take to be in compliance with his ethical duties); *United States v. Cortez*, 205 F. Supp. 3d 768, 776 (E.D. Va. 2016) (Ellis, J.) (excluding testimony that would present a legal conclusion as to the applicability of rules of professional conduct).

Moreover, Green, based on a hopelessly skewed and narrow selection of the vast record, repeatedly offers improper opinions that State Farm's lawyers made "misleading" and "deceptive" statements in State Farm's submissions to the Illinois Supreme Court.[4]  Such opinions are also legal conclusions. The Seventh Circuit has held that an expert may not testify as to whether particular practices were "deceptive or misleading" "since the question called for [the expert] to render a legal opinion." *Amy Travel Serv., Inc.*, 875 F.2d at 573.  Indeed, courts routinely exclude expert opinions evaluating truth or falsity. *See, e.g.*, *Peoples State Bank v. Stifel, Nicolaus & Co.*, 2013 WL 1024917, at *9 (S.D. Ind. Mar. 14, 2013) (Young, J.) (excluding expert opinion about whether a defendant's statements were "misleading," and violated securities laws, holding that the opinion "embrace[d] legal conclusions and usurp[ed] the trier of fact's role."). Green's testimony and opinions consist almost entirely of such legal conclusions and should be excluded.

---

[4]   *See e.g.*, Ex. 1 at 16, 18, 19, 21, 22; Ex. 2 at 67:10-14; 78:6-12, 78:20-79:4.

## II.   GREEN'S IMPERMISSIBLE SPECULATIONS ON MATTERS OF KNOWLEDGE AND INTENT TO DECEIVE SHOULD BE EXCLUDED

Green also proceeds to offer repeated opinions characterizing the supposed "misleading" statements in State Farm's submissions as "lies" and as "deliberately" misleading, "knowingly misleading", and "intentionally misleading."  *See e.g.*, Ex. 1 at 16, 21; Ex. 2 at 67:4-68:5; 89:17-23.  These opinions are inadmissible.  First, Green is a professor of legal ethics; he does not claim professional expertise in determining what is a "lie" and whether a purported lie is intentional or deliberate or what the supposed liar's motivation was.  Indeed, there is no such field of expertise.  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 546 ("[T]he opinions of [expert] witnesses on the intent, motives or states of mind of corporations … have no basis in any relevant body of knowledge or expertise."); *Holmes Grp., Inc. v. RPS Prods., Inc.*, 2010 WL 7867756, at *5 (D. Mass. June 25, 2010) (Saylor, J.) ("An expert witness may not testify as to another person's intent.  No level of experience or expertise will make an expert witness a mind-reader.").[5]

Moreover, even without reference to issues of expertise, courts have routinely held that experts may not testify as to a defendant's "supposed intent to deceive," "awareness of various issues," "motivation[]" or similar matters.  *See Town of Westport v. Monsanto Co.*, 2017 WL 1347671, at *3 (D. Mass. Apr. 7, 2017) (Casper, J.), *aff'd*, 877 F.3d 58 (1st Cir. 2017); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, 2013 WL 6535164, at *23-24 (C.D. Cal. Dec. 9, 2013) (Snyder, J.) (excluding expert testimony regarding defendant's "supposed intent to deceive"); *Estate of Lynott ex rel. Moen v. Luckovich*, 2018 WL 501577, at *2 (W.D. Wash. Jan. 22, 2018) (Lasnik, J.) (rejecting expert opinions that a defendant was "a knowing participant" in alleged

---

[5]  As Green admits, his reference to "lie[s]" by State Farm's lawyers are without support in either Myers' report or in the allegations of the First Amended Complaint. Ex. 2 at 90:11-22. Although Green disclaims an intent to provide factual testimony that State Farm's lawyers "lied" (*id.* at 90:7-10), his repeated assumptions, speculations, inferences and suggestions that they did so cannot meaningfully be differentiated from factual testimony and should be excluded in either case.

fraud).  Thus, "knowledge, motivations, intent, state of mind, or purposes ... [are] not a proper subject for expert or even lay testimony." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y 2009) (Keenan, J.).  Conclusions about intent are "inferences for the jury to determine, not for an expert to opine." *In re C.R. Bard, Inc.*, 948 F. Supp. 2d at 628.

In short, to the extent that Green's opinions and testimony regarding intent to deceive, purpose and motivations can be characterized as factual conclusions, they would impermissibly usurp the role of the jury.  To the extent he opines that State Farm and/or lawyers intentionally or deliberately contravened ethical rules by lying, his opinions and testimony would impermissibly usurp the province of the Court.  All of Green's testimony on this topic should be excluded.

## III.    GREEN'S OPINIONS ON ETHICAL STANDARDS ARE IRRELEVANT

Expert testimony, like any other evidence at trial, must be relevant to be admitted—that is, it must be "pertinent to an issue in the case."  *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).  Rule 702 and *Daubert* require that expert testimony be "relevant and factually linked to the case in order to meet Rule 702's 'helpfulness' requirement."  *United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007).

Green's opinions on purported ethical breaches by State Farm's lawyers are irrelevant to this RICO case.  Plaintiffs do not contend that the purported ethical breaches constitute predicate acts under RICO.  Nor are Green's opinions about these purported ethical breaches or the purported breaches themselves relevant to establish other elements of RICO, such as a RICO injury to business or property, or a RICO enterprise, or a proximate causal relationship between the alleged predicate acts and Plaintiffs' loss of the *Avery* judgment.

It is well-established under Illinois law that the violation of an ethical rule "does not, in and of itself, give rise to a cause of action for damages."  *Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 157 (Ill. App. Ct. 2000).  Indeed, the Illinois Rules of Professional Conduct make

clear that a violation of an ethical rule does not even "'create any presumption in such a case that a legal duty has been breached …. [The Rules] are not designed to be a basis for civil liability.'" *Vandenberg v. Brunswick Corp.*, --- N.E.3d ----,  2017 WL 5759845, at *6 (Ill. App. Ct. Nov. 27, 2017) (quoting Ill. R. of Prof. Conduct, preamble); *see also Cain v. Osman*, 286 F. App'x 934, 938 (7th Cir. 2008) (plaintiff's "allegations perhaps suggest an ethical breach, but the mere fact that an attorney may have violated professional ethics does not, in and of itself, give rise to a cause of action for damages." (internal quotation marks and citation omitted)).  As the Eleventh Circuit stated in *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991), even if allegations that a lawyer "committed a breach of professional ethics" were true, they were "simply irrelevant" because "[s]uch conduct … does not in and of itself give rise to civil RICO liability." *Id.* at 1517 n. 91.

In sum, Green's opinions about State Farm's ethical conduct have nothing to do with whether or not State Farm violated RICO. All of Green's testimony and opinions should be excluded on grounds of irrelevance.

## IV.   GREEN'S OPINIONS ARE IMPERMISSIBLY BASED ON UNRELIABLE ASSUMPTIONS AND SPECULATION

An expert's opinion is not reliable, and therefore is not admissible, unless it is "based on sufficient facts or data."  Fed. R. Evid. 702.  "'[A]n expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert.'"  *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017) (citation omitted).  Rather, "'the facts or data relied upon must themselves be the kind that 'experts in the particular field would reasonably rely on … in forming an opinion on the subject.'"  *Id.* (quoting Fed. R. Evid. 702).  In addition, the "benchmarks relevant in assessing an expert's reliability" include, *inter alia*, "'[w]hether the expert has adequately accounted for obvious alternative explanations."  *Id.* at 779-80 (quoting Fed. R. Evid. 702, 2000 amend., adv. comm. note). Green's opinions fail to meet these benchmarks.

Rather than examining the available record and evidence, Green relies almost entirely on assumed facts taken from another purported expert (Myers) or from Plaintiffs' First Amended Complaint, the allegations of which State Farm denies.  Green does not state that he has evaluated or is even competent to evaluate the reliability of Myers' opinions about factual conclusions.  In fact, as discussed above (*see supra* at 4), Green was provided with Myers' Report by Plaintiffs' counsel and asked to base his analysis on the assumption that Myers is correct.  Green chose not to evaluate the validity of the Myer's conclusions and opinions and has not examined the mountain of contrary testimony and other evidence in this case.  Moreover, Green's key assumption – that State Farm's lawyers knew of State Farm's purported support for the Karmeier campaign (*see* Ex. 1 at 4) – is not even grounded in the opinion of another expert, but is simply an unsupported assumption that Plaintiffs' counsel asked Green to make, with no apparent basis in fact.  Ex. 2 at 40:13-23.  Indeed, Green admits that neither the First Amended Complaint nor Myers' Report says anything about State Farm's lawyers and their purported "knowledge" (*id.* at 32:21-33:19) and that he had seen "no direct evidence" that any State Farm lawyer knew what Myers alleges occurred in this case.  *Id.* at 41:11-16.  Accordingly, "the essential factual premise" (*id.* at 48:19-49:2) for Green's opinions has no basis in the evidence, but is the mere speculation and conjecture of Plaintiffs' Counsel.  In short, Green's opinions are hypothetical opinions based on assumed facts that Green has no personal knowledge of and has not vetted.  Ex. 2 at 26:24-28:24; Ex. 1 at 3.

"An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."  *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994).  And "[w]hen an expert's proffered opinion merely parrots information provided to him by a party, that opinion is generally excluded."  *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009) (Barker, J.).

"Moreover, when an expert relies upon information given to him by a party or counsel, [h]e must independently verify that information before utilizing it…." *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc,* 980 F. Supp. 2d 1031, 1048 (N.D. Ind. 2013) (Lee, J.) (internal quotations omitted). Nor is expert testimony admissible when, like Green, the expert has merely reviewed "everything on [one party's] side of the case, but nothing from [the other party's] version of events." *Gregory v. Oliver*, 2002 WL 31972165, at *3 (N.D. Ill. Dec. 27, 2002) (Shadur, J.).

An expert's opinion may not be based on "assumptions that have no basis in fact or reality." *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 319 (S.D.N.Y. 2009) (Rakoff, J.) (excluding as unreliable expert testimony that was not based on "actual data or analysis"). *See also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) ("Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case."). Here, Green's conclusions are based on a string of speculative assumptions: Plaintiffs' factual assertions are assumed to be correct; therefore State Farm's factual assertions must be assumed to be "deceptive;" and State Farm's lawyers are assumed to have knowledge that State Farm's factual assertions are deceptive because Plaintiffs' counsel instructed Green to proceed on that assumption. *See* Ex. 2 at 78:6-79:6; Ex. 1 at 3; Ex. 3 at 2. All these assumptions are either inadequately supported or not supported at all. They are not a sufficient basis for Green's contingent conclusion that State Farm's lawyers might have breached their ethical obligations.

In his Report and testimony, Green also fails to account for "'obvious alternative explanations.'" *See Gopalratnam*, 877 F.3d at 779 (quoting Fed. R. Evid. 702, 2000 amend., adv. comm. note). Where State Farm's 2005 and 2011 briefs disagree with facts that Green assumes to be true, Green sees only two possibilities: either "[State Farm's] lawyers were acting improperly

or whether they were acting inadvertently in submitting those two briefs….” Ex. 2 at 78:6-23. However, contrary to the logical fallacy espoused by Green, the problem Green ignores is the possibility that his assumed facts are untrue, which they are. Moreover, when opposing parties in a lawsuit put forward different versions of the facts (as they generally do), it does not follow that one party’s version must be “deceptive” or that one party’s lawyers must be acting either improperly or mistakenly. Losing parties in a lawsuit often may have a reasonable basis for their versions of events. Their lawyers are not automatically deemed to have breached their ethical duties or to have violated Rule 11 simply because their version of the facts is rejected by a court or jury. *See, e.g.*, *Der v. Connolly*, 2011 WL 31498, at *5 (D. Minn. Jan. 5, 2011) (Schlitz, J.) (party’s position “although underwhelming in the Court’s eyes, and rejected quickly and completely by the jury, was not ‘frivolous, unreasonable, or groundless.’”) (citation omitted), *aff’d in part*, 666 F.3d 1120 (8th Cir. 2012).

Here, Green does not explain why State Farm’s lawyers or anybody at State Farm would have to agree with Myers’ (or Plaintiffs’) factual allegations, theories, inferences, and characterizations, such that it would be dishonest not to accept them as “facts.” Green’s analysis does not acknowledge or address the possibility of honest disagreement by State Farm and its lawyers with Plaintiffs’ characterization of the facts or explain how that possibility can be ruled out. Green’s failure to address or rule out the obvious alternative possible explanation that State Farm’s lawyers reasonably disagreed with Plaintiffs’ and Myer’s conclusions renders his conclusion that State Farm’s lawyers were guilty of deliberate misrepresentation fundamentally unreliable. *See Marmo*, 457 F.3d at 758 (excluding expert testimony where expert did not “exclude confounding factors,” leaving open “‘the possibility of competing causes’”) (citation omitted).

Green’s unwarranted assumption that Myers was correct in his opinions and conclusions

does not support or excuse Green's failure to consider the possibility of reasonably based disagreement.  Even if Green were justified in accepting Myers' theories as true for purposes of his analysis, he was not justified in assuming that there could be no alternate reasonable view of the facts and evidence that Myers relied on, or in disregarding that possibility and failing to rule it out.  *See Gopalratnam*, 877 F.3d at 779-80.  Indeed, Green could not have excluded that possibility without some evaluation of the evidence in this case supporting State Farm's version of events, an evaluation which, by his own admission, Green refused to undertake.

Moreover, the possibility of an alternate, reasonable interpretation of the "facts" is plainly indicated by the very nature of the central question in Myers' report, namely what was the proper characterization of State Farm's payments to entities such as the U.S. Chamber of Commerce and ATRA -- were these payments contributions or dues paid to those entities to use however they saw fit, or were they disguised campaign contributions "earmarked" for Justice Karmeier's campaign?  It should have been plain to Green from Myers' report that he needed to rule out the possibility that State Farm and its lawyers reasonably viewed the payments as dues or no-strings-attached contributions to these entities, and not as campaign contributions to the Karmeier campaign.  Moreover, had Green ventured to look at State Farm's experts' reports, particularly that of forensic accountant Bruce Dubinsky, and at the depositions taken in this case, the basis for reasonable disagreement would have been even plainer.  In short, Green's analysis is logically flawed, fails to account for all the possibilities, and is fundamentally unreliable.

Green also failed to ascertain what, if anything, the record showed with regard to other factual questions relevant to his conclusion that State Farm's lawyers deliberately lied in the 2005 and 2011 briefs.  For example, Green opines that "State Farm's outside counsel were culpable if they refrained from inquiring of State Farm's representatives, thereby avoiding learning the basic

facts regarding State Farm's support for Justice Karmeier's campaign." Ex. 1 at 16. But Green has no information on that topic, and Myers provided none. Ex. 2 at 53:11-55:11, 74:9-21.

At best, Green can only offer the jury the very logical tautology he is starting with: "if, in fact, it's proven that particular lawyers … violated their duty of candor, then my opinion would be that they violated their duty of candor…." *Id*. at 37:20-38:11. *See Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) ("[A]n expert does not assist the trier of fact in determining whether a product failed if he starts his analysis based upon the assumption that the product failed (the very question that he was called upon to resolve)….").[6]

## V. GREEN'S PROPOSED TESTIMONY SHOULD BE EXCLUDED UNDER FED. R. EVID. 403 BECAUSE IT WOULD UNFAIRLY PREJUDICE STATE FARM, CONFUSE THE ISSUES, AND MISLEAD THE JURY

Introduction of Green's proposed testimony would also be improper under Federal Rule of Evidence 403. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury…." Fed. R. Evid. 403. Even assuming *arguendo* that Green's proposed testimony regarding alleged violations of ethical standards by unnamed State Farm lawyers might have some minimal relevance to the issues in this RICO case (which it does not), any probative value of such testimony would be far outweighed by the manifest risks of unfair prejudice to State Farm, confusion of the issues, and misleading the jury.

Admission of Green's proposed testimony would unduly prejudice State Farm because

---

[6] Green's opinion also must be excluded because of his reliance on Myers, whose testimony should also be excluded for reasons State Farm has set out in a separate motion. If "Expert A" relies largely on facts drawn from an excluded "Expert B," then Expert A's opinions must also be excluded, lest the unreliable opinions of Expert B make their way to the jury under the guise of Expert A's factual assumptions. *See Gopalratnam*, 877 F.3d at 789. Indeed, Green himself admitted at his deposition that "[i]f the assumptions [he relied on] turn out to be unproven, then my opinion probably isn't very helpful…." Ex. 2 at 62:12-63:3.

there is a significant risk that the jury would erroneously infer from his testimony that his underlying assumptions were fact and not assumptions, or that because unnamed counsel for State Farm purportedly violated ethical standards, State Farm must have violated RICO.   Green's proposed testimony would also confuse the issues and mislead the jurors by distracting their attention from the actual issues in this case.   "Ethical standards are different from the standards the jury must apply" in this RICO case. *See American Family Mut. Ins. Co. v. Electrolux Home Prods., Inc.*, 2014 WL 2893179, at *8 (W.D. Wisc. June 26, 2014) (Crocker, J.) (excluding expert testimony under Rule 403 where "permitting [plaintiff's expert] to opine that [defendant] behaved 'unethically' would confuse the jury and unfairly prejudice [defendant]").   The risk of unfair prejudice is heightened by the serious and inflammatory nature of Green's accusations against State Farm's lawyers and the danger that the jury would perceive Green to "'necessarily be deeming Plaintiffs' version of the facts to be the credible account, which is prohibited.'"   *Crim*, 943 F. Supp. 2d at 863 (citation omitted).

Under closely analogous circumstances, federal courts have repeatedly excluded under Rule 403 the proposed testimony of experts on ethics.   For example, in excluding the plaintiffs' ethics expert in *Comcast Boat Corp. v. Brunswick Corp.*, 1998 WL 35254137 (E.D. Ark. Mar. 2, 1998) (Moody, J.), the court explained that "[n]o matter how unethical Defendant's conduct may have been, if that conduct does not meet the legal standards for the various claims as instructed by the Court, Defendant will not be liable." *Id*. at *1.   The court stated that, "[h]owever, the jury may incorrectly assume that a breach of an 'ethical obligation' equals a violation of a legal standard. The potential for such a result cannot be disregarded." *Id.*

Similarly, in *In re CESSNA 208 Series Aircraft Products Liability Litigation*, 2009 WL 1357234 (D. Kan. May 12, 2009) (Vatril, J.), the district court excluded the plaintiffs' ethics expert

pursuant to Rule 403.  As the court stated, "'[e]ven assuming that the proposed ethics testimony were reliable and marginally relevant under Rule 702, it would be likely unfairly to prejudice and confuse the trier [of fact] by introducing the "experts'" opinions and rhetoric concerning ethics as alternative and improper grounds for decision on bases other than the pertinent legal standards.'" *Id.* at *3 (quoting *In re Rezulin*, 309 F. Supp. 2d at 543-44); *see also Wolfe v. McNeil-PPC, Inc*. 2011 WL 1673805, at *9 (E.D. Pa. May 4, 2011) (DuBois, J.) (excluding plaintiff's expert under Rule 403 because "[w]hatever benefit could be derived from his opinions about [defendant's] social responsibility and ethical obligations is vastly outweighed by the tendency of such testimony to encourage the jury to impose liability on an improper basis").[7]

Moreover, as the Seventh Circuit has held, "when the evidence appears to be of slight probative value, district courts may properly exclude it under Rule 403 to avoid a series of collateral 'trials within the trial' which would result in confusion and undue delay."  *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 687 (7th Cir. 1998) (quoting *Sims v. Mulcahy*, 902 F.2d 524, 530-31 (7th Cir. 1990)).  In this case, if Plaintiffs were allowed to present Green's proposed testimony regarding purported violations of ethical standards by unnamed State Farm lawyers, State Farm would have to introduce rebuttal evidence, including testimony from its experts, to show that its lawyers acted appropriately and complied with ethical standards.  This would create a trial within a trial that would prolong and complicate the trial of this case.  It would lead to a substantial and disproportionate amount of testimony, evidence, and time being devoted to

---

[7]  *See also DiBella* v. *Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) (affirming exclusion of expert testimony that it was "unethical" to solicit payment because real issue was whether payment was a bribe and whether recipient believed it was a bribe); *In re Welding Fume Prods. Liab. Litig.*, 2005 WL 1868046, at *20 (N.D. Ohio Aug. 8, 2005) (McDonald, J.) (excluding plaintiffs' ethics expert because "the critical question for the jury … is whether the defendant corporations did what the law *required* them to do, not whether … they did what an 'ethical corporation' *should have* done": expert's ethics opinions were "likely to confuse" and "misdirect the finder of fact").

collateral issues that are wholly irrelevant to this case.  In short, permitting the introduction of Green's testimony would result in a needlessly time-consuming, confusing, and wasteful trial within a trial. *See Stopka*, 141 F.3d at 687 (affirming district court's exclusion of evidence on collateral issues that had "the potential for jury confusion and undue delay"); *Sims*, 902 F.2d at 530-31 (same).

## CONCLUSION

For the foregoing reasons, State Farm respectfully requests that the Court exclude entirely the testimony and reports of Bruce Green.

Dated:  January 30, 2018                                          Respectfully submitted,

*/s/ Ronald S. Safer*

| | | |
|---|---|---|
| Michael P. Kenny | Patrick D. Cloud, #06282672 | Ronald S. Safer #6186143 |
| Jonathan D. Parente | HEYL, ROYSTER, VOELKER & | Joseph A. Cancila, Jr., |
| ALSTON & BIRD LLP | ALLEN | #6193252 |
| One Atlantic Center | Mark Twain Plaza III, Suite 100 | Nick Kahlon, #6280309 |
| 1201 West Peachtree St. | 105 W. Vandalia St. | RILEY SAFER HOLMES & |
| Atlanta, Georgia 30309 | Edwardsville, IL 62025 | CANCILA LLP |
| | | Three First National Plaza |
| | | 70 W. Madison St., Ste. 2900 |
| | | Chicago, IL 60602 |
| J. Timothy Eaton, | Sheila L. Birnbaum | |
| #0707341 | Douglas W. Dunham | |
| TAFT STETTINIUS & | Ellen P. Quackenbos | |
| HOLLISTER LLP | QUINN EMANUEL URQUHART | |
| 111 East Wacker, Suite | & SULLIVAN, LLP | |
| 2800 | 51 Madison Avenue, 22nd Floor | |
| Chicago, IL 60601 | New York, New York 10010 | |

*Attorneys for Defendant State Farm Mutual Automobile Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Defendant State Farm Mutual Automobile Insurance Company's Motion to Exclude the Testimony and Reports of Bruce Green and Memorandum of Law in Support Thereof was served upon all counsel of record on January 30, 2018, via the Court's CM/ECF system.

Dated: January 30, 2018                          */s/ Ronald Safer*