IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MARK HALE, TODD SHADLE,
and LAURIE LOGER, on behalf of
themselves and all others similarly situated,**

**Plaintiffs,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, EDWARD
MURNANE, and WILLIAM G. SHEPHERD,**

**Defendants.**              No. 12-0660-DRH

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### Introduction and Background

Now before the Court is defendants' motion for summary judgment on grounds of *Rooker-Feldman*, *res judicata*, and collateral estoppel (Docs. 646 & 669).[1] Plaintiffs vigorously oppose the motion (Doc. 661 & 662).[2] Based on the applicable case law, the extensive record before the Court and the following, the Court denies the motion.

Back in 2012, plaintiffs Mark Hale, Todd Shadle and Carly Vickers Morse, on behalf of themselves and all others similarly situated, filed a two-

---

[1] The Court allowed defendants Edward Murnane and William Shepherd to join in State Farm Mutual Automobile Insurance Company's motion for summary judgment and reply brief (Docs. 650, 654 & 672).

[2] After briefing was complete on the summary judgment motion, the Court allowed the parties to submit/address supplemental authority (Docs. 705 & 706).

count Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., class action complaint against State Farm Mutual Automobile Insurance Company ("State Farm"), Edward Murnane, William G. Shepherd and Citizens for Karmeier (Doc. 2).[3] Count One alleged violations of 18 U.S.C. §1962(c) and Count Two alleged violations of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(c). On November 4, 2014, plaintiffs filed a first amended complaint containing the same counts as the original complaint (Doc. 289).[4] In essence, plaintiffs allege that defendants secretly recruited Judge Karmeier to run for an open seat on the Illinois Supreme Court, where the *Avery v. State Farm Mutual Automobile Insurance Co.* appeal against State Farm was pending; that defendants organized and managed his campaign behind the scenes; that defendants covertly funneled millions of dollars to support his campaign through intermediary organizations over which State Farm exerted considerable influence; and, after Justice Karmeier was elected to the Illinois Supreme Court, defendants obscured, concealed and misrepresented the degree and nature of their support of Justice Karmeier so that Justice Karmeier could participate in the *Avery* decisions. Further, plaintiffs maintain that defendants' scheme deprived them of their

---

[3] On September 26, 2012, plaintiffs filed a notice of voluntary dismissal as to defendant Citizens for Karmeier (Doc. 54). That same day, the Court acknowledged the notice of voluntary dismissal and dismissed without prejudice defendant Citizens for Karmeier (Doc. 55).

[4] The first amended complaint added Mark Covington and Laurie Loger as named plaintiffs. Thereafter, on September 11, 2015, the Court granted named plaintiff Mark Covington's motion for withdrawal and dismissal of his claims without prejudice (Doc. 417).

constitutionally-guaranteed right to be judged by a tribunal uncontaminated by politics; that plaintiffs did not have an opportunity during the state court process to conduct the necessary discovery to uncover State Farm's conduct and that their motions to recuse were summarily denied and as a result Justice Karmeier participated in the *Avery* decision and broke the "deadlock[]" when he voted to overturn the judgment.[5]

At an attempt at brevity, the Court finds that it does not need to set forth in this Memorandum and Order the precise nature of the claims in this case, the lengthy procedural history of this case and the well known facts surrounding the underlying litigation of this case. These extensive details have been recited in the Court's previous Orders.

## **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could

---

[5] See *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005).

return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted). In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citation omitted).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing … that there is an absence of evidence to support the nonmoving party's case." *Id.* (citation and internal quotation marks omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor." *Id.* (alteration in original) (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "[S]peculation and conjecture" also cannot defeat a motion

for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

## Analysis

Defendants contend that the Court should grant summary judgment in their favor under the *Rooker-Feldman* doctrine, the doctrine of *res judicata* and collateral estoppel. *Res judicata* and collateral estoppel are affirmative defenses. By contrast, the *Rooker-Feldman* doctrine is not an affirmative defense; it is a limit on this Court's subject matter jurisdiction. If the *Rooker-Feldman* doctrine is applicable, the Court lacks jurisdiction over the plaintiffs' claims. "Where *Rooker-Feldman* applies, lower courts have no power to address other affirmative defenses, including *res judicata*." *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 535 (7th Cir. 2004).

The *Rooker–Feldman* doctrine derives from two Supreme Court cases in which plaintiffs "litigated and lost in state court ... [then] essentially invited federal courts of first instance to review and reverse [the] unfavorable state court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283, 125 S. Ct. 1517 (2005), discussing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149

(1923) and *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983). Because Congress empowered only the Supreme Court to exercise appellate authority to reverse and modify state court judgments, see 28 U.S.C. § 1257, such suits were declared "out of bounds, *i.e.,* properly dismissed for want of subject-matter jurisdiction." *Saudi Basic Indus.*, 544 U.S. at 283–84, 125 S. Ct. 1517. The doctrine is a limitation on the subject matter jurisdiction of lower federal courts that prohibits them from exercising appellate review over state court decisions. *Arnold v. KJD Real Estate*, 752 F.3d 700, 704 (7th Cir. 2014); *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509 (7th Cir. 1996).

There is a fine distinction between the *Rooker-Feldman* doctrine and *res judicata*. See *Nesses v. Shepard* , 68 F.3d 1003, 1004 (7th Cir. 2005). The *Rooker-Feldman* doctrine is narrowly confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Saudi Basic Indus.*, 544 U.S. at 284, 125 S. Ct. 1517. Cases requiring dismissal under *Rooker-Feldman* involve plaintiffs who are "attacking the judgment itself." *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993)(The *Rooker-Feldman* doctrine applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court). *Rooker-Feldman* comes into play only when the federal court

assesses the propriety of a state court judgment. Claims that directly seek to set aside a state-court judgment are *de facto* appeals that trigger the doctrine. *Sykes v. Cook Cnty, Cir. Cit. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016). "But even federal claims that were not raised in state court, or that do not on their face require review of a state court's decision, may be subject to *Rooker-Feldman* if those claims are closely related to a state-court judgment." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017). "'In other words, [for *Rooker-Feldman* to apply] there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment.'" *Id.* (quoting *Sykes*, 873 F.3d at 742). "*Rooker-Feldman* thus applies where the plaintiff seeks relief that is tantamount to vacating the state judgment." *Id.* (citing *Taylor v. Fannie Mae*, 374 F.3d 529, 533 (7th Cir. 2004)). "If the suit does not seek to vacate the judgment of the state court and instead seeks damages for independently unlawful conduct, it is not barred by *Rooker-Feldman*." *Id.* (citing *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014)); *Saudi Basic Indus.*, 544 U.S. at 293, 125 S. Ct. 1517 (citing *GASH*, 995 F.2d at 728) ("If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached," then *Rooker-Feldman* does not bar the court's jurisdiction.).

*Res judicata* and collateral estoppel, on the other hand, are affirmative defenses that require federal courts to give a state court

judgment the same preclusive effect it would have in state court. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999). "[W]hen considering whether a claim has preclusive effect, the Court must apply the *res judicata* doctrine of the state from which the decision occurred. *Long*, 182 F.3d at 560. The distinction between the two concepts is that the *Rooker-Feldman* doctrine addresses whether a federal district court has subject matter jurisdiction over a particular matter, while *res judicata* and collateral estoppel are affirmative defenses that depend on the Full Faith and Credit Statute. *Id.*; 28 U.S.C. § 1738.

First, defendants maintain that plaintiffs' claims should be dismissed for lack of jurisdiction under *Rooker-Feldman* as plaintiffs' asserted injuries are not separate and independent from the decisions and judgments of the Illinois Supreme Court in *Avery*. Defendants contend that plaintiffs are attempting to use this case to seek redress for the Illinois Supreme Court's reversal of the $1.05 billion judgment in *Avery*. Defendants state that plaintiffs' purported injuries were directly caused by the Illinois Supreme Court's decisions and orders in *Avery*, including the court's decision reversing the $1.05 billion judgment on the merits in *Avery*, but also that the court's rulings rejecting plaintiffs' challenges to Justice Karmeier's participation in *Avery*. Defendants argue that the "'tainting' of the tribunal by Justice Karmeier's participation in the *Avery* merits decision occurred through the Illinois Supreme Court's denial of

Plaintiffs' motions for Justice Karmeier's recusal and Plaintiffs' petitions for rehearing and recall of the mandate. All of these motions and petitions were based on the supposed impropriety, constitutional or otherwise, of Justice Karmeier's participation and the source of the allegedly 'tainted tribunal' of which Plaintiffs complain in this federal lawsuit." Thus, according to defendants, there can be no factual dispute that the source of plaintiffs' alleged injuries and claims squarely fall within the ambit of *Rooker-Feldman*. Additionally, defendants argue that plaintiffs had a reasonable opportunity to litigate in the Illinois Supreme Court the same due process and other issues that they raise in this case and that plaintiffs repeatedly did so. Defendants assert that plaintiffs, in their 2011 petition to the Illinois Supreme Court for relief from judgment, raised the same issues they raise in this case and asserted similar allegations based on the same affidavits of Daniel Reece and Douglas Wojcieszak that are the predicate for plaintiffs' allegations in this case.

Plaintiffs counter that the *Rooker-Feldman* doctrine does not apply in this case. Plaintiffs assert that "the evidence in this case shows that State Farm and its co-conspirators rigged the state court judicial system at the highest levels, concealing their extraordinary level of organizational and financial support for a Supreme Court justice who, because of State Farm's RICO-violative scheme, was able to participate in the deliberations to review and ultimately overturn a $1.05 billion judgment pending against State

Farm. These facts bring the case squarely within the ambit of *Nesses* and its progeny – cases which, as State Farm, recognizes, constitute an 'exception to *Rooker-Feldman.*'" (Doc. 661, p. 26).

Reviewing the record, the Court finds once again that that the *Rooker-Feldman* doctrine does not apply to this case.[6] This case boils down to a complete and different cause of action that does not ask this Court to overturn or vacate the Illinois state court judgment in *Avery*. Plaintiffs' federal claims allege different injuries and different violations that are separate from the *Avery* state court judgment. Specifically, what plaintiffs allege and what plaintiffs have in evidence that may create an inference to support plaintiffs' cause is that a judgment was rendered in the Illinois Supreme Court but that process was tainted by politics depriving plaintiffs of the opportunity for due process and a fair hearing, that damaged plaintiffs by taking away something of value which plaintiffs had in the jury's verdict and in the trial court and the appellate court judgments. It is clear that plaintiffs are not asking this Court to overturn or review the Illinois Supreme Court's *Avery* judgment. It is also clear that

---

[6] On March 28, 2013, the Court, in its Memorandum and Order denying defendants' motion to dismiss, found that the *Rooker-Feldman* doctrine did not apply to the facts of this case and concluded that the Court did have subject matter jurisdiction over this litigation (Doc. 67, ps. 15-16). The Court also stated: "that making such factual determinations regarding *res judicata* and/or collateral estoppel at this stage in the proceedings is not proper and declines to do so. It is unclear from the record before the Court what merits were reached regarding the issues contained in plaintiffs' complaint at bar and it is unclear whether plaintiffs had a full and fair opportunity to litigate those issues during the *Avery* proceedings before the Illinois Supreme Court. The Court concludes that these arguments are better suited for discussion and decision after discovery has been completed." (Doc. 67, p. 20).

plaintiffs are not attacking the merits of the *Avery* judgment. Plaintiffs bring this different cause of action, alleging fraud and RICO violations, in order to compensate them for *that* damage. In essence, plaintiffs are asserting claims for an independent legal wrong which is the illegal acts or omissions of defendants. These claims are based on defendants' conduct – including misrepresentations to and concealment from plaintiffs and the court – not the state court decisions. These claims could not have been asserted in the state court proceedings; they did not fully manifest until after the *Avery* plaintiffs' last state court filing and they were not litigated in the state court proceedings. Plaintiffs seek to vindicate their right to "judged by a tribunal that is uncontaminated by politics." *Nesses*, 68 F.3d at 1005. A finding for plaintiff on these RICO claims would not disturb the Illinois state court judgment in *Avery*. See *Loubser v. Thacker,* 440 F.3d 439, 441 (7th Cir. 2006) (quoting *Nesses* 68 F.3d at 1005)("The *Rooker–Feldman* doctrine does not apply to claims that a 'defendant in a civil rights suit 'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment.'").

Moreover, the Court finds that the recent supplemental authority/cases out of the Seventh Circuit regarding *Rooker-Feldman*, *Abatangelo v. Wells Fargo Bank, N.A.*, --- Fed.Appx. --- (7th Cir. 2017), 2017 WL 6398140 and *Bond v. Perley*, 705 Fed.Appx. 464 (7th Cir. 2018), do not change the law in the Seventh Circuit and are not helpful to the

defendants. These cases are inapposite to *Hale* since the plaintiffs in those cases are clearly trying to vacate the state court judgments. Specifically, the *Abantangelo* plaintiffs asked the district court to send the cases back to state court with instructions. *Abantangelo*, 2017 WL 6398140 at * 1 & 2 ("They asked the district court to invalidate all of the state-court decisions in their cases, order of the return of their homes, and dismiss Wells Fargo's and DLJ's foreclosure actions. …. And they explicitly ask this court to 'send the cases back to the Illinois Appellate Court.'"). Likewise, in *Bond*, the plaintiff argued "that his prosecution and conviction were unlawful because the complaint was 'void' without the victim's signature." *Bond*, 705 Fed.Appx. at 465. Further, the Court notes that these two opinions are unpublished Orders. *See* U.S.Ct. of App. 7th Rule 32.1("Orders, which are unsigned, are release in photocopied form, are not published in the Federal Reporter, and are not treated as precedents."). Thus, the Court denies defendants' motion for summary judgment based on the *Rooker-Feldman* doctrine.

As to their affirmative defenses of *res judicata* and collateral estoppel, defendants argue that plaintiffs have fully litigated their claims regarding Justice Karmeier's participation in *Avery* and that those claims were rejected by the Illinois Supreme Court in 2005 and 2011. Further, defendants argue that the United States Supreme Court's denial of

plaintiffs' 2006 petition for certiorari, also based on the allegations contained in this case, has *res judicata* effect and bars plaintiffs' claims.

Plaintiffs counter that they did not have a full and fair opportunity to litigate their RICO claims in that the RICO claims did not accrue until the very end of the state court proceedings. Specifically, plaintiffs contend that State Farm cannot demonstrate the issues raised in this action are identical to any issues that were decided by a final judgment on the merits in the *Avery* proceeding, thus, neither *res judicata* nor collateral estoppel bar plaintiffs' claims. The Court agrees with plaintiffs.

The doctrine of *res judicata,* also known as claim preclusion, prevents re-litigation of matters that were fully litigated in an earlier suit that resulted in a judgment on the merits. *Groesch v. City of Springfield,* 635 F.3d 1020, 1029 (7th Cir. 2011). Because of the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect that the court rendering the judgment would give it. *Haber v. Biomet, Inc.,* 578 F.3d 553, 556 (7th Cir. 2009); *Licari v. City of Chicago,* 298 F.3d 664, 666 (7th Cir. 2002). Thus, when examining whether an Illinois court judgment bars a federal lawsuit because of *res judicata* the Court looks to the preclusive effect an Illinois court would give the judgment in question. *Groesch,* 635 F.3d at 1029; *Licari,* 298 F.3d at 666.

Under Illinois law, *res judicata* applies if the prior decision (1) was a final judgment on the merits rendered by a court of competent jurisdiction, (2) involved the same parties or their privies, and (3) constituted the same cause of action as the current suit. *Nowak v. St. Rita High Sch.,* 197 Ill.2d 381, 258 Ill.Dec. 782, 757 N.E.2d 471, 477 (Ill. 2001); *People ex rel. Burris v. Progressive Land Developers, Inc.,* 151 Ill.2d 285, 176 Ill.Dec. 874, 602 N.E.2d 820, 825 (Ill.1992); *Groesch,* 635 F.3d at 1029; *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011). "If the three elements necessary to invoke res judicata are present, *res judicata* will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit." *Chicago Title*, 664 F.3d at 1079 (quoting *Rein v. David A Noyes & Co.*, 172 Ill.2d 325, 216 Ill. Dec 642, 665 N.E. 2d 1199, 1205 (Ill. 1996)). "The purpose of *res judicata* is to promote judicial economy by requiring parties to litigate, in one case, all rights arising out of the same set of operative facts...." *River Park, Inc. v. City of Highland Park,* 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 896 (Ill. 1998)(internal quotation omitted).

28 U.S.C. § 1738's "full faith and credit" requirement also encompasses the equitable principle of collateral estoppel. Generally, collateral estoppel prohibits the re-litigation of any settled issue that was

necessary to a prior final judgment. Under Illinois law the "minimum requirements" for application of collateral estoppel are:

> the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Gumma v. White,* 216 Ill.2d 23, 295 Ill.Dec. 628, 833 N.E.2d 834, 843 (Ill. 2005).

The Court finds that neither *res judicata* nor collateral estoppel apply in in this matter. The petition to recall the mandate was not a cause of action. Plaintiffs' RICO claims, which were not raised in state court, did not accrue until State Farm's 2011 mailing. Further, there is no "identity of cause of action" between *Avery* and this cause of action. As the parties are well aware, *Avery* was about State Farm's failure to equip its insureds' vehicles with proper replacement parts and this case is about State Farm's alleged conduct in secretly recruiting Judge Karmeier, covertly funneling millions of dollars to support Judge Karmeier's campaign and concealing and misrepresenting the degree and nature of its support of Justice Karmeier. Clearly, these are two separate causes of action that do not arise from the same transactions or involve the same factual allegations. Simply, defendants' actions in the two cases are entirely different and do not seek redress from the same wrong.

Moreover, the *Avery* plaintiffs did not have the benefit of discovery regarding their recusal motions and the depth of State Farm's conduct. The first motion for recusal stated that Justice Karmeier should not participate in the decision because his campaign had received "substantial donations" from State Farm's attorneys and law firms, a trial witness of State Farm and State Farm employees and lobbyists. Further, that motion was supported largely by newspaper articles and public campaign disclosure records. While those articles did show that people associated with State Farm contributed to Justice Karmeier's campaign; those articles did not reveal State Farm's influence over the ICJL and Murnane; State Farm's involvement with the selection of Justice Karmeier; its financial support and direction of funds for Justice Karmeier's campaign through intermediaries and its influence over the intermediaries; or its subversion of the Illinois State Bar Association's judicial candidate evaluation process. State Farm repeatedly denied its role in Justice Karmeier's election and the level of support for Justice Karmeier's candidacy. Thereafter, the *Avery* plaintiffs filed a petition to recall mandate and vacate based on new information that State Farm had played a role in Justice Karmeier's election; this motion was based on affidavits by FBI Special Agent Daniel Reece and private investigator Douglas Wojcieszak. However, the *Avery* plaintiffs were unable to find out exactly the extent of defendants' involvement without discovery and State Farm continued to deny the extent

of its role. Plaintiffs have alleged and have evidence that one could rely on to infer that they did not have the opportunity or the possibility to litigate these matters in the Illinois Supreme Court because the evidence had not yet been uncovered and the judgment was already entered. Further, since plaintiffs did not yet have the evidence to support their arguments/theories; plaintiffs could not pursue a discovery process or compel witnesses to testify.

Similarly, the Court finds that collateral estoppel does not apply for the same reasons stated with regard to *res judicata*. The issues decided in the *Avery* proceedings are not the same issues raised in this litigation. Therefore, defendants have not met their burden of demonstrating that collateral estoppel bars plaintiffs' claims. Thus, the Court denies defendants' motion for summary judgment based on *res judicata* and collateral estoppel.

## Conclusion

Accordingly, the Court **DENIES** defendants' motion for summary judgment on grounds of *Rooker-Feldman*, res judicata, and collateral estoppel (Doc. 646).

**IT IS SO ORDERED.**

Judge Herndon
2018.02.06
15:16:12 -06'00'

United States District Judge