# Exhibit 10

CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ILLINOIS

```
MARK HALE, TODD SHADLE      )
and LAURIE LOGER, on        )
behalf of themselves        )
and all others              )
similarly situated,         )
                            )
          Plaintiffs,       )
     vs.                    ) Case No.
                            ) 3:12-cv-00660-DRH-SCW
STATE FARM MUTUAL           )
AUTOMOBILE INSURANCE        )
COMPANY, ED MURNANE,        )
and WILLIAM SHEPHERD,       )
                            )
          Defendants.       )
-------------------------------------------------
```

C O N F I D E N T I A L


VIDEOTAPED DEPOSITION OF EDWARD B. RUST, JR.

Normal, Illinois

Tuesday, August 29, 2017




Reported by:

JENNIFER L. WIESCH, CSR, RPR, CLR, CRR

Job no: 19111

CONFIDENTIAL

Page 169

```
 1   without it being disclosed by the NCLC or State
 2   Farm to the Illinois Supreme Court, correct?
 3          MR. SAFER:  Objection, foundation, assumes
 4   facts not in evidence.
 5   BY THE WITNESS:
 6       A.   Help me.  I'm not -- would you repeat
 7   that question?
 8   BY MR. BLONDER:
 9       Q.   My question is:  If State Farm made
10   contributions to be used in connection with the
11   National Chamber Litigation Center in the filing
12   of amicus briefs, that information wouldn't be
13   known by the Illinois Supreme Court unless either
14   State Farm or the National Chamber Litigation
15   Center disclosed that fact, right?
16          MR. SAFER:  Same objections.
17   BY THE WITNESS:
18       A.   In any contribution made to the
19   Institute for Legal Reform was to the broad agenda
20   with no instructions whatsoever as to where money
21   may or may not be spent.
22   BY MR. BLONDER:
23       Q.   My question wasn't about the Institute
24   for Legal Reform, just for the National Chamber
25   Litigation Center.
```

CONFIDENTIAL

Page 173

1    Farm supported the ILR, maybe other organizations,
2    that were involved in voter education.  What
3    occurred in the State of Illinois in the Karmeier
4    election, I have no idea where those dollars --
5    how they were allocated or where they came from.
6         Q.   Because you just buried your head in the
7    sand about that information, correct?
8         MR. SAFER:  Objection, argumentative,
9    improper.
10   BY THE WITNESS:
11        A.   No.  I support the broad missions of the
12   organizations that we have contributed to, but it
13   is up to them in determining their priorities and
14   where they spend their money.
15   BY MR. BLONDER:
16        Q.   And did you care where any of those
17   organizations spent their money?
18        A.   I didn't pay that much attention to it,
19   frankly.
20        Q.   I didn't ask you whether you paid
21   attention to it.  My question is:  Was it
22   important to State Farm to know where the
23   organizations that it contributed its money, where
24   they spent that money?
25        A.   State Farm's contribution was support of

CONFIDENTIAL

Page 174

```
 1    the broader agenda.  Exactly where the money was
 2    spent was left up to the individual organization.
 3         Q.   This will go a lot smoother if you
 4    listen to my question and answer the question I
 5    ask you.
 6         MR. SAFER:  He's answered the questions --
 7         MR. BLONDER:  No, he's answered --
 8         MR. SAFER:  -- and it will --
 9         MR. BLONDER:  -- the questions --
10         MR. SAFER:  -- go much more smoother if you
11    ask proper questions.
12    BY MR. BLONDER:
13         Q.   Did State Farm care where organizations
14    spent money when State Farm contributed to the
15    broad-based agendas of those organizations?
16         MR. SAFER:  Objection, asked and answered.
17    BY THE WITNESS:
18         A.   State Farm was supportive of the
19    broad-based agenda.  As far as directing funds one
20    way -- location or whatever, no, we did not do
21    that.
22    BY MR. BLONDER:
23         Q.   I didn't ask if you directed the funds.
24    My question is:  Did State Farm pay attention to
25    the -- the states in which organizations to which
```

CONFIDENTIAL

Page 176

```
 1          MR. SAFER:  Same --
 2   BY MR. BLONDER:
 3       Q.    -- in a variety of locations, would
 4   that -- would that have made a difference to State
 5   Farm in making its contributions as opposed to if
 6   the ILR was only focused in one state such as
 7   Hawaii or Montana?
 8          MR. SAFER:  Asked and answered.
 9   BY THE WITNESS:
10       A.    We've got too many things going on here.
11   Could you repeat the question?
12          MR. BLONDER:  You can read it back, please.
13                 (WHEREUPON, the record was read by
14                 the reporter.)
15          MR. SAFER:  Objection, vague and ambiguous.
16   And I don't -- I don't understand the question.
17   BY THE WITNESS:
18       A.    Well, let me come back, and we supported
19   the broad-based agenda of ILR.  The staff
20   determined where they would -- what their
21   priorities happened to be and where they would
22   expend the money, and that was fine with us.
23   BY MR. BLONDER:
24       Q.    And you knew, for example, the ILR was
25   spending money in Illinois, right?
```

1   allowed its donations of any kind to the ILR or
2   the Chamber to have been a matter of public
3   record?
4        A.   As I believe I said, I really didn't
5   think about that.  My thinking was in support of
6   the broad pro-business agenda, be it of ILR, be it
7   of the Chamber, that I felt was appropriate for
8   State Farm to support.
9        Q.   Right.  And you knew, though, that the
10  execution of that pro-business agenda of ILR would
11  have the consequence of them spending money in
12  connection with the election of Lloyd Karmeier in
13  Illinois?
14       MR. SAFER:  Objection, asked and answered.
15  BY THE WITNESS:
16       A.   I believe, as I have said, you know, our
17  contribution to ILR, there were no strings or
18  expectations around just what would be done.  It
19  was made in support of the broad pro-business
20  agenda being sought either by the Chamber or by
21  ILR.
22  BY MR. CLIFFORD:
23       Q.   Is it your testimony that at no time did
24  you ever encourage the ILR and the Chamber to do
25  what they could to elect Justice Lloyd Karmeier?

CONFIDENTIAL

Page 350

```
 1    STATE OF ILLINOIS )
 2                     ) SS:
 3    COUNTY OF W I L L )
 4                I, JENNIFER L. WIESCH, a Notary Public
 5    within and for the County of Will, State of
 6    Illinois, and a Certified Shorthand Reporter of
 7    said state, do hereby certify:
 8                That previous to the commencement of the
 9    examination of the witness, the witness was duly
10    sworn to testify the whole truth concerning the
11    matters herein;
12                That the foregoing deposition transcript
13    was reported stenographically by me, was
14    thereafter reduced to typewriting under my
15    personal direction and constitutes a true record
16    of the testimony given and the proceedings had;
17                That the said deposition was taken
18    before me at the time and place specified;
19                That I am not a relative or employee or
20    attorney or counsel, nor a relative or employee of
21    such attorney or counsel for any of the parties
22    hereto, nor interested directly or indirectly in
23    the outcome of this action.
24                IN WITNESS WHEREOF, I do hereunto set my
25    hand and affix my seal of office at Chicago,
```

CONFIDENTIAL

Page 351

1  Illinois, this 8th day of September, 2017.
2
3           *Jennifer L. Wiesch*
4           Notary Public, Will County, Illinois.
5           My commission expires June 8, 2020.
6
7  C.S.R. Certificate No. 84-4528.
8
9
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com