# Exhibit 11

CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ILLINOIS

```
MARK HALE, TODD SHADLE      )
and LAURIE LOGER, on        )
behalf of themselves        )
and all others              )
similarly situated,         )
                            )
          Plaintiffs,       )
     vs.                    ) Case No.
                            ) 3:12-cv-00660-DRH-SCW
STATE FARM MUTUAL           )
AUTOMOBILE INSURANCE        )
COMPANY, ED MURNANE,        )
and WILLIAM SHEPHERD,       )
                            )
          Defendants.       )
---------------------------------------------------
```

C O N F I D E N T I A L

VIDEOTAPED DEPOSITION OF STEVE MCMANUS

Normal, Illinois

Thursday, September 7, 2017

Reported by:

JENNIFER L. WIESCH, CSR, RPR, CLR, CRR

Job no: 19112

CONFIDENTIAL

Page 26

```
 1   themselves in voter education, others do not.
 2   Whether they involve themselves in judicial
 3   campaigns really is a question for those
 4   organizations.
 5          Q.   So State Farm has financially supported
 6   civil justice reform organizations that have
 7   engaged in voter education ads, is that true?
 8          MR. SAFER:  Objection to the form, vague and
 9   ambiguous.
10   BY THE WITNESS:
11          A.   Yeah, I -- I'm not sure exactly what
12   you're asking, but I know that we have contributed
13   to civil justice organizations.  They don't use
14   our money necessarily, but they use money gathered
15   from their members, and some may or may not
16   involve themselves in voter education efforts.  So
17   we don't earmark money for that purpose.
18   BY MR. THRASH:
19          Q.   So you do agree that State Farm has
20   financially supported civil justice reform
21   organizations that have engaged in voter education
22   ads?
23          MR. SAFER:  Object -- I'm sorry, were you --
24   you were done?
25               Objection, asked and answered, vague and
```

CONFIDENTIAL

Page 62

```
 1   BY THE WITNESS:
 2        A.   Yeah, I think I've answered the
 3   question.  State Farm wants judges on the court
 4   who are fair, who are open-minded, who are
 5   efficient in administering the cases before them.
 6   BY MR. THRASH:
 7        Q.   And in the law department, State Farm's
 8   law department, you referred to certain judges as
 9   liability restraining judges and liability
10   expanding judges with regard to analyzing
11   elections that were coming up, did you not?
12        MR. SAFER:  I'm sorry, you asked him that.
13   That mischaracterizes his testimony.
14   BY THE WITNESS:
15        A.   So I don't know if that language has
16   been used before in referring to judges.  It's
17   quite possible.  I think it's language that comes
18   out of the trade associations that involve
19   themselves in this arena, and it may have been
20   used by people in the law department, including
21   myself, although I have no recollection of it.
22   BY MR. THRASH:
23        Q.   And as part of the judicial civil
24   justice reform, these civil justice reform
25   organizations that State Farm supported were
```

```
 1   working to have an effect on the judicial
 2   elections, were they not?
 3          MR. SAFER:  Objection, asked and answered.
 4   BY THE WITNESS:
 5          A.   Yeah, I -- I think some may have been,
 6   some may not have been.  I don't know.  State Farm
 7   when it contributes to these trade associations,
 8   it pays its membership dues, and we buy into the
 9   entire program of their reform activity.  We don't
10   earmark our money.  We don't, you know, tie it
11   down to specific purposes.  And that's with
12   respect to the membership dues.  If we get special
13   requests for special projects, we'll look at those
14   on an individual basis.  But the trade
15   associations we work with know that State Farm
16   won't fund candidate political expenditures, so
17   they generally don't ask us for that.
18          MR. THRASH:  Move to strike, not responsive.
19   BY MR. THRASH:
20          Q.   What's -- what was the question I
21   just --
22          MR. SAFER:  It's directly --
23   BY MR. THRASH:
24          Q.   -- asked you, Mr. McManus?
25          MR. SAFER:  It was directly responsive.
```

CONFIDENTIAL

Page 169

```
 1   financially committed to the civil justice reform?
 2        A.   State Farm makes membership
 3   contributions to civil justice reform trade
 4   associations.
 5        Q.   And so they -- they were -- and those
 6   questions that I just asked you, that was correct
 7   in 2003 and 2004?
 8        MR. SAFER:  Object to the form.
 9   BY THE WITNESS:
10        A.   Which question, sir?
11   BY MR. THRASH:
12        Q.   Well, the question about State Farm's
13   committed to civil justice reform, that line of
14   question was in 2003 and 2004.
15        A.   Yes, State Farm was committed to civil
16   justice reform at that time and remains so.  State
17   Farm contributed to civil justice trade
18   associations at that time.
19        Q.   Okay.  And would you agree that civil
20   justice reform includes the election of liability
21   restraining judges to court positions?
22        MR. SAFER:  Objection, asked and answered.
23   BY THE WITNESS:
24        A.   Yeah, from State Farm's perspective, not
25   necessarily.  When we support a civil justice
```

CONFIDENTIAL

Page 170

```
 1    trade organization, we buy into the whole program.
 2    We don't buy into specific aspects of it with our
 3    membership dues.  If an opportunity comes along
 4    that's of interest to us to fund beyond our
 5    membership dues, we'll look at it.  But, you know,
 6    the membership dues -- when we pay membership dues
 7    to the U.S. Chamber's Institute for Legal Reform,
 8    we buy into this general support of their
 9    programmatic activities, their overhead,
10    everything.  We don't segregate our monies to
11    specific aspects of it.
12            MR. THRASH:  Move to strike, not responsive.
13            MR. SAFER:  It was directly responsive.
14    BY MR. THRASH:
15        Q.   In 2004 -- strike that.
16             You don't deny that State Farm made a
17    major commitment to the Civil Justice Reform Group
18    both financially and with its employees, do you?
19            MR. SAFER:  Objection, foundation, form,
20    vague and ambiguous.
21    BY THE WITNESS:
22        A.   State Farm for many, many years long
23    before 2004 and up to this very day has an
24    interest in a civil justice system that serves its
25    customers well.
```

Page 274

1   what this call was about.  I do know that State
2   Farm doesn't earmark money when it contributes to
3   civil justice organizations.  And so if your
4   suggestion in your question is would State Farm
5   had -- would State Farm have contributed money to
6   JUSTPAC through ATRA, the answer is absolutely
7   not.
8          MR. THRASH:  Move to strike the response,
9   nonresponsive.
10         MR. SAFER:  It's directly responsive.
11  BY MR. THRASH:
12         Q.   Did State Farm send another $50,000 to
13  another civil justice reform organization about
14  the same time it ended up at JUSTPAC?
15         A.   I don't know that State Farm sent any
16  money to any other civil justice organization at
17  this same time.  And again I refute the
18  insinuation that State Farm contributed money to
19  any organization to be furthered on to JUSTPAC.
20  That's categorically false.
21         MR. THRASH:  Move to strike, nonresponsive.
22         MR. SAFER:  You asked the question.  It was
23  directly responsive.
24  BY MR. THRASH:
25         Q.   Did --

CONFIDENTIAL

Page 524

```
 1   STATE OF ILLINOIS )
 2                     ) SS:
 3   COUNTY OF W I L L )
 4             I, JENNIFER L. WIESCH, a Notary Public
 5   within and for the County of Will, State of
 6   Illinois, and a Certified Shorthand Reporter of
 7   said state, do hereby certify:
 8             That previous to the commencement of the
 9   examination of the witness, the witness was duly
10   sworn to testify the whole truth concerning the
11   matters herein;
12             That the foregoing deposition transcript
13   was reported stenographically by me, was
14   thereafter reduced to typewriting under my
15   personal direction and constitutes a true record
16   of the testimony given and the proceedings had;
17             That the said deposition was taken
18   before me at the time and place specified;
19             That I am not a relative or employee or
20   attorney or counsel, nor a relative or employee of
21   such attorney or counsel for any of the parties
22   hereto, nor interested directly or indirectly in
23   the outcome of this action.
24             IN WITNESS WHEREOF, I do hereunto set my
25   hand and affix my seal of office at Chicago,
```

CONFIDENTIAL

Page 525

1  Illinois, this 13th day of September, 2017.
2
3
4     Notary Public, Will County, Illinois.
5     My commission expires June 8, 2020.
6
7  C.S.R. Certificate No. 84-4528.

*Jennifer L. Miesch* (signature)