## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MARK HALE, TODD SHADLE,**
**and LAURIE LOGER, on behalf of**
**themselves and all others similarly situated,**

**Plaintiffs,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, EDWARD**
**MURNANE, and WILLIAM G. SHEPHERD,**

**Defendants.**                                           **No. 12-0660-DRH**


### MEMORANDUM and ORDER

**HERNDON, District Judge:**

### Introduction and Background

Now before the Court is defendants' motion for summary judgment on plaintiffs' RICO claims (Docs. 694 & 735).[1]  Plaintiffs sternly oppose the motion (Doc. 729).   Based on the applicable case law, the *voluminous* record before the Court and the following, the Court denies the motion based on the many disputes of material facts.

Back in 2012, plaintiffs Mark Hale, Todd Shadle and Carly Vickers Morse, on behalf of themselves and all others similarly situated, filed a two-count Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

---

[1] The Court allowed defendants Murnane and Shepherd to join State Farm's motion for summary judgment (Docs. 697 & 698).

U.S.C. § 1961 et seq., class action complaint against State Farm Mutual Automobile Insurance Company ("State Farm"), Edward Murnane, William G. Shepherd and Citizens for Karmeier (Doc. 2).[2]   Count One alleged violations of 18 U.S.C. §1962(c) and Count Two alleged violations of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(c).   On November 4, 2014, plaintiffs filed a first amended complaint containing the same counts as the original complaint (Doc. 289).[3]   In essence, plaintiffs allege that defendants secretly recruited Judge Karmeier to run for an open seat on the Illinois Supreme Court, where the *Avery v. State Farm Mutual Automobile Insurance Co.* appeal was pending; that defendants organized and managed his campaign behind the scenes; that defendants covertly funneled millions of dollars to support his campaign through intermediary organizations over which State Farm exerted considerable influence; and, after Justice Karmeier was elected to the Illinois Supreme Court, defendants obscured, concealed and misrepresented the degree and nature of their support of Justice Karmeier so that Justice Karmeier could participate in the *Avery* decisions.   Further, plaintiffs maintain that defendants' scheme deprived them of their constitutionally-guaranteed right to be judged by a tribunal uncontaminated by politics; that plaintiffs did not

---

[2]On September 26, 2012, plaintiffs filed a notice of voluntary dismissal as to defendant Citizens for Karmeier (Doc. 54).  That same day, the Court acknowledged the notice of voluntary dismissal and dismissed without prejudice defendant Citizens for Karmeier (Doc. 55).

[3]The first amended complaint added Mark Covington and Laurie Loger as named plaintiffs.  Thereafter, on September 11, 2015, the Court granted named plaintiff Mark Covington's motion for withdrawal and dismissal of his claims without prejudice (Doc. 417).

have an opportunity during the state court process to conduct the necessary discovery to uncover State Farm's conduct and that their motions to recuse were summarily denied and as a result Justice Karmeier participated in the *Avery* decision and broke the "deadlock[]" when he voted to overturn the judgment.[4]

The Court need not set forth the lengthy procedural history of this case as it is not needed to address the issues contained in the summary judgment motion and, of course, the parties are well aware of the procedural history.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks

---

[4] See *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005).

omitted).  In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party."  *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citation omitted).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary.  *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014).  "That burden may be discharged by showing … that there is an absence of evidence to support the nonmoving party's case."  *Id.* (citation and internal quotation marks omitted).  If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case."  *Id.* (citation and internal quotation marks omitted).  The nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor."  *Id.* (alteration in original) (citation and internal quotation marks omitted).  "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement."  *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).  "[S]peculation and conjecture" also cannot defeat a motion for summary judgment.  *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013).  In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit

under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

## Undisputed Facts

*Avery* was a nationwide class action filed in an Illinois State Circuit Court in 1997, based on allegations that State Farm specified non-original equipment manufacturer crash parts for its insureds' vehicles in breach of their contracts and in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 835 N.E.2d 801, 810-811 (2005). Some of the named *Avery* plaintiffs are the named plaintiffs in the lawsuit at bar. The *Avery* trial court certified a class of "[a]ll persons in the United States, except those residing in Arkansas and Tennessee, who, between July 28, 1987, and February 24, 1998, (1) were insured by a vehicle casualty insurance policy issued by Defendant State Farm and (2) made a claim for vehicle repairs pursuant to their policy and had non-factory authorized and/or non-OEM (Original Equipment Manufacturer) 'crash parts' installed on their vehicles or else received monetary compensation determined in relation to the costs of such parts." In 1999, the trial court entered judgment against State Farm for over $1.1 billion.[5] In 2001, the Illinois Appellate Court mostly affirmed the trial court judgment, but eliminated the disgorgement damages as duplicative and reduced the damages to just over

---

[5] At trial, the jury awarded the class: $243,740,000 in specification damages; $212,440,000 for installation damages; and $456,180 in interest. On the consumer fraud claims the trial court imposed $130,000,000 in disgorgement damages and $600,000,000 in punitive damages.

$1.05 billion. State Farm filed a petition for review with the Illinois State Supreme Court. In 2002, the Illinois Supreme Court granted State Farm leave to appeal, in May 2003, the Illinois Supreme Court heard oral argument, and over two years later on August 18, 2005, the Illinois Supreme Court along with Justice Karmeier participating in the decision reversed the $1.05 billion judgment.[6]

While *Avery* was proceeding through the Illinois State appeals process, Justice Karmeier ran for an open spot on the Illinois Supreme Court, was elected to the Illinois Supreme Court on November 4, 2004 and was sworn in as a justice on the Illinois Supreme Court on December 6, 2004.

### Disputed Facts[7]

Plaintiffs contend that the evidence shows that defendants recruited Justice Karmeier, convinced him to run, and managed the most important aspects of his campaign. Plaintiffs maintain that State Farm accomplished this largely through defendant Murnane and the organization he ran, the Illinois Civil Justice League ("ICJL").[8] In 2000, after the *Avery* trial court verdict, State Farm Chairman and CEO Edward B. Rust, Jr., became

---

[6] All six participating Illinois State Supreme Court Justices voted to reverse the $1.05 billion judgment, to decertify the nationwide class, to reverse the award of "specification" damages as having "no basis in law," and to reverse the judgment on the *Avery* plaintiffs' ICFA claim. *Avery*, 835 N.E.2d at 830, 855, 863.

[7] These facts are disputed as the parties do not agree and offer competing interpretations of the evidence.

[8] Plaintiffs claim that the ICJL is a tort reform group created by and serving as an instrument of the Illinois Business Round Table ("IBRT"). The IBRT is a group of corporations sympathetic to corporate interests in Illinois.

chairman of the IBRT, which shared offices with the ICJL. Rust was active on the ICJL's Board and Executive Committee and the ICJL provided support for the IBRT's Civil Justice Reform Task Force. The ICJL had only three paid employees: Murnane, the president, Al Adomite, who joined in 2004 and who was assigned to Justice Karmeier's campaign, and Murnane's assistant. When a seat opened on the Illinois Supreme Court in 2002, Murnane and the ICJL spearheaded the search for a candidate, hand-picked Justice Karmeier, promised to help him raise millions of dollars, and convinced him to run. For the reporting period of January 2003 to June 2003, JUSTPAC, the Political Action Committee of the Illinois Civil Justice League, had $68.82 in January and had $8.20 in June. On July 26, 2003, Murnane sent an email to Justice Karmeier, Murnane informed Karmeier that he would seek $2 million dollars during his visit to Washington.

Murnane regularly reported to the ICJL Executive Committee and the Executive Committee authorized his activities with Justice Karmeier's campaign. The IBRT was a member of Executive Committee as was Shepherd, who was State Farm's in-house counsel and lobbyist.

During Justice Karmeier's campaign, Murnane met with Rust at State Farm's Bloomington offices. On the night of Justice Karmeier's election, Murnane sent an email to Rust informing him of the results. The next day, Rust responded: "Ed, have a good day! You deserve it!!!!! Ed Rust" Further,

on the day when Illinois Supreme Court overturned *Avery* Rust emailed Murnane asking for information.

Kim Brunner, State Farm's General Counsel thought that Justice Karmeier would be a good judge for *Avery* because of his "general feelings toward State Farm."

Plaintiffs also contend that Shepherd and Murnane were close. From January 1, 2003 through November 3, 2004 (the election of Justice Karmeier), State Farm and the ICJL exchanged a total of 244 phone calls. In February 2004, Murnane wrote a letter to Shepherd thanking him for his continued interest and support to improve the judicial climate in Illinois. In particular, asked Shepherd the following in support:

> We are going to continue to ask for support – big support. We are trying to raise from $3 to $5 million to compete effectively. As of the current campaign finance reporting period, our PAC, JUSTPAC, has raised less than $70,000, with another $150,000 to $200,000 pledged. The Citizens for Karmeier has raised less than $100,000, although there are several major fundraisers in the works.
> We need your continued support, and we need it soon. We need substantial support: not $1,000, but $10,000. Or $20,000. Or $50,000. That's what it is going to take.

On December 9, 2005, Murnane wrote a letter to Shepherd thanking him for his support which contained a handwritten note: "Bill – As you know we greatly appreciate the great support we received from State Farm – Ed"

According to plaintiffs, Murnane bragged that he found the candidate, convinced him to run, pledged support up front and worked to build his organization. Murnane and the ICJL played a critical role in organizing and

running the Karmeier campaign. In August 2003, Murnane sent donors an ICJL campaign plan for Justice Karmeier. Steve Tomaszewsk, the campaign director, when asked if Murnane participated in all aspects of the Karmeier campaign that were strategically important, admitted that Murnane was involved in very many of them. Further, State Senator David Luechtefeld, in a written letter, stated: "In fact I was the campaign chairman in name only."

Plaintiffs also maintain that the evidence shows that money was needed to ensure Justice Karmeier was elected and that State Farm provided much of it in donations to the Karmeier campaign and for the most part kept it secret. Plaintiffs' expert witness, Thomas A. Myers, a forensic accountant, concluded that State Farm funneled over $3.5 million to Justice Karmeier's campaign which accounted for over three quarters of the reported campaign funds.

Further, plaintiffs assert the evidence shows that after securing Justice Karmeier's election in 2004, defendants had to make sure Justice Karmeir was not disqualified from participating in *Avery* and that defendants did this by concealing State Farm's support of Justice Karmeier through State Farm's filings to the Illinois Supreme Court in *Avery*. The first filing was mailed on January 31, 2005 and the second filing was mailed on September 19, 2011. Plaintiffs assert that these filings grossly misrepresented State Farm's involvement in Justice Karmeier's campaign.

Specifically, State Farm repeatedly denied that it directed monies to Justice Karmeier's campaign through intermediary groups and denied that it had recruited Justice Karmeier or that it helped manage Justice Karmeier's campaign. Further, State Farm told the Illinois Supreme Court that it had "made no contribution to the campaign," and the *Avery* plaintiffs' contention that State Farm "picked Justice Karmeier as a candidate, managed his campaign, and made massive contributions to this campaign … has no relationship to reality." Plaintiffs maintain that as a result of those deceptive filings, neither plaintiffs nor the Illinois Supreme Court knew the full extent of State Farm's involvement with and support to Justice Karmeier's campaign.

Further, plaintiffs contend that the evidence reveals that according to Justice Karmeier, the Illinois Supreme Court was "deadlocked" in the *Avery* case prior to Justice Karmeier's decision to participate. Plaintiffs also contend that Justice Karmeier's choice to partake broke the deadlock and tainted the judicial panel thereby causing plaintiffs to lose the entirety of their $1.05 billion judgment.

## Analysis

The Racketeer Influenced and Corrupt Organizations Act allows for a civil cause of action by "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter …" 18 U.S.C. § 1964(c). RICO's main purpose is to "eradicate[e] organized, long term, habitual

criminal activity." *Gamboa v. Velez*, 457 F.3d 703 (7th Cir. 2006). Section 1962(c) prohibits any individual or entity "employed by or associated with" an "enterprise" engaged in interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To prove their § 1962(c) claim, plaintiffs must adduce evidence showing that defendants engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 822 (7th Cir. 2016); *see also Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015); *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007).

Section 1962(d) prohibits conspiracies to violate § 1962(c). To prove the § 1962(d) claim, plaintiffs must adduce evidence showing "that (1) the defendants agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendants further agreed that someone would commit at least two predicate acts to accomplish these goals." *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 734–35 (7th Cir. 2014) (alteration omitted); *see also DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011).

Both RICO claims require a showing that defendants committed or agreed to engage in a pattern of "racketeering activity," a term the RICO statute "define[s] in terms of a long list of crimes." *United States v. Benabe*, 654 F.3d 753, 776 (7th Cir. 2011) (citing 18 U.S.C. § 1961(1)). A "pattern of" racketeering activity requires at least two predicate acts of racketeering over a ten-year period. *See DeGuelle*, 664 F.3d at 199 (citing 18 U.S.C. § 1961(5)). Showing two predicate acts is necessary, though not sufficient, to establish a RICO violation. *See Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1002 (7th Cir. 2004); *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 298 (7th Cir. 2003). Establishing that the acts were part of a "pattern" further requires that they be related and pose a continuing threat—requirements generally referred to as "relationship" and "continuity." *See Corley*, 388 F.3d at 1002; *Williams*, 351 F.3d at 298. A plaintiff may rely on similar conduct directed at others to help establish a pattern, but he must nevertheless show that at least one act of racketeering was directed at him and caused him injury. *See Corley*, 388 F.3d at 1004–05 ("[The plaintiff] does need to demonstrate a triable issue of fact on injury to himself from at least one predicate act ...."). Both mail fraud and wire fraud—the racketeering acts that plaintiffs allege, qualify as predicate acts. *See* 18 U.S.C. § 1961(1)(B) (incorporating by reference 18 U.S.C. §§ 1341, 1343); *Bible*, 799 F.3d at 657.

**RICO CAUSATION/COGNIZABLE INJURY**

Defendants maintain that plaintiffs have not sustained a cognizable RICO injury as plaintiffs cannot establish a RICO injury to property and that the claimed per capita damages are improper and do not satisfy RICO's damages and injury requirements. First, defendants argue that there is no evidence that Justice Karmeier's participation in the *Avery* deliberations changed the outcome for the parties. Defendants also argue that there is no proof that Justice Karmeier deliberated with the others Justices or influenced their votes. And that there is no evidence that any Justice changed his or her vote after Justice Karmeier joined the Illinois Supreme Court. Further, defendants argue that plaintiffs cannot overcome these failures by arguing that Justice Karmeier's participation deprived them of due process as due process principles are not relevant to proving a RICO claim.

In evaluating RICO causation – whether an alleged RICO injury was caused "by reason of" a violation of the statute – the Supreme Court has held that a defendant's RICO violation, must not only be the "but for" cause of the plaintiff's injuries, but also the "proximate cause." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 276 (1992) (holding that because the alleged conspiracy did not proximately cause the injury claimed, plaintiff "failed[ed] to make out a right to sue [the defendant] under §

1964(c)"). In so holding, the Court explained that it used the term "'proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts." *Id.* at 268. As set forth in *Holmes*, in a civil RICO action, proximate cause is determined by examining whether a direct relationship exists between the injury asserted and the injurious conduct alleged. *See Id.* at 268-269 (describing the interpretation federal courts had given to the term in the past and holding the same interpretation applies to section 1964(c) the Court stated that "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendants' acts [is] generally said to stand too remote a distance to recover." *Id; see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ("When a court evaluates a RICO claim for proximate causation the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

The Seventh Circuit has held that to satisfy the proximate cause component, a plaintiff's RICO injury requires proof of "a concrete financial loss." *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2013) overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (internal quotations omitted). As a part of this discussion, the *Evans* court cited the Second Circuit's standard requiring the amount of RICO damages to be "clear and definite" as articulated in *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003).

Here, the Court finds that plaintiffs have advanced evidence in support of its allegations to establish causation. There are questions of material fact on which a jury could reasonably rely to conclude that Justice Karmeier was aware that State Farm was heavily involved in recruiting him, managing his campaign and securing the majority of the contributions of campaign. Further, a reasonable jury could find that either Justice Karmeier or any member of the Illinois Supreme Court relied upon State Farm's misrepresentations. Likewise, a reasonable jury could find that had State Farm's involvement been revealed, Justice Karmeier's "impartiality" could have been "reasonably questioned" and he could not have participated in the *Avery* decision and plaintiffs would not have suffered the injury or the damages. In addition, a reasonable jury could find that defendants' alleged fraudulent conduct tainted the *Avery* proceedings/decision and that defendants foresaw, intended and secretly worked to achieve the end result: with Justice Karmeier's participation the *Avery* judgment was reversed.

Further, there are questions of fact as to whether plaintiffs would have kept the *Avery* judgment absent Justice Karmeier's participation. There is evidence that Justice Karmeier "broke the 'deadlock[]'" – one that had prevented the Illinois Supreme Court from issuing an opinion for over two years – "when he voted to overturn the judgment." The Illinois constitution mandates that when no decision with four supporting votes can

be reached, the order of the intermediate appellate court is reinstated without precedential effect. Ill. Const. Art. VI, § 3; *Chultem v. Ticor Title Ins. Co.*, No. 120448, 2017 IL 120448 (Ill. May 18, 2017).

As to cognizable RICO injury, the Court finds that there are questions of material fact that preclude summary judgment. Again, plaintiffs have presented evidence which a reasonable jury to conclude that State Farm provided significant funds to Justice Karmeier's campaign and that Justice Karmeier did not recuse himself and voted to overturn the *Avery* judgment. As stated in a previous Memorandum and Order "what plaintiffs allege and what plaintiffs have in evidence that may create an inference to support plaintiffs' cause is that a judgment was rendered in the Illinois Supreme Court but that process was tainted by politics depriving plaintiffs of the opportunity for due process and a fair hearing, that damaged plaintiffs by taking away something of value which plaintiffs had in the jury's verdict and in the trial court and the appellate court judgments." (Doc. 726, p. 10). "A cause of action is recognized as a property right that can suffer injury." *Armado (Singapore) PTE Ltd. v. Amcol International Corp.*, 885 F.3d 1090, 1093 (7th Cir. 2018) (citations omitted.) Further, the Court rejects defendants' arguments regarding per capita damages. Plaintiffs allege that State Farm's wrongful conduct denied them an impartial forum of review, that defendants' fraudulent conspiracy prevented the damage allocation in *Avery* and that plaintiffs' interest is in the judgment that was undivided at

that time.  The damages claimed by plaintiffs are not nonexistent and are based on defendants' alleged fraudulent conspiracy conduct that prevented the damage calculation in *Avery*.  Based on the disputes of fact, the Court denies summary judgment on this issue.

**RICO Statute of Limitations**

Next, defendants argue that plaintiffs' claims are barred by RICO's four-year statute of limitations.  Specifically, defendants maintain that plaintiffs' claims accrued with the Illinois Supreme Court's 2005 reversal of the *Avery* judgment or at the latest with the United States Supreme Court's 2006 denial of certiorari, at which time, plaintiffs had sustained and discovered their alleged RICO injury.  Thus, according to defendants, plaintiffs' claims should have been filed in either 2009 or 2010 to be timely.  Further, defendants contend that plaintiffs cannot demonstrate any grounds for equitable estoppel or equitable tolling that would allow plaintiffs to salvage their time-barred claims.

Civil RICO causes of actions are governed by a four year statute of limitations.  *Jay E. Hayden*, 610 F.3d at 383; *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) ("The statute of limitations for a civil RICO cause of action is a fairly generous four years."); *Rotella v. Wood*, 528 U.S. 549, 552–53 (2000). The limitations period begins running when the plaintiff is injured by a predicate act, even if the enterprise continues committing criminal acts

after that date. *Jay E. Hayden*, 610 at 386–87. Due to RICO's pattern requirement, a RICO claim cannot accrue at the time of the first predicate act, but any acts after the second or subsequent acts that injure the plaintiff start the statute of limitations. *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 801–02 (7th Cir. 2008).

Here, viewing the evidence in the light most favorable to plaintiffs as the Court must, the Court finds that the mailing of State Farm's response to the petition to recall the mandate on September 19, 2011, which revealed the identity of the injurers (defendants) was the second predicate act. In it's brief, State Farm disclosed for the first time that its own lawyer and lobbyist, Shepherd, represented State Farm on the ICJL's Executive Committee. This information provided key material connecting the injury to the injurers and allowed plaintiffs to realize defendants' conduct. The ICJL Executive Committee endorsed Justice Karmeier and permitted Murnane and the ICJL to recruit Justice Karmeier, select his campaign team, raise campaign funds, and run his campaign. State Farm's earlier filings did not disclose defendants' extensive roles in orchestrating Justice Karmeier's 2004 election to the Illinois Supreme Court and did not disclose defendants' extensive conduct in concealing/denying these facts to both the Illinois Supreme Court and plaintiffs.

Assuming *arguendo* that the claims are time barred (which they are not), the Court again addresses equitable estoppel and equitable tolling.

While the doctrine of equitable tolling does not require fault on the part of the defendant, it is applied sparingly and only where extraordinary circumstances beyond the litigant's control prevented timely filing. *Asher v. Chase Bank United States, N.A.*, 310 Fed. Appx. 912, 917 (7th Cir. 2009); *see also United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). Equitable tolling is frequently confused with fraudulent concealment, a subset of equitable estoppel. *Shropshear v. Corp. Counsel of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001); *see also Asher*, 310 Fed. Appx. at 917. However, the Seventh Circuit has clearly held that equitable tolling and fraudulent concealment are two separate doctrines. *See Shropshear*, 275 F.3d at 595.

Unlike equitable estoppel, equitable tolling "applies when the plaintiff, though diligent, could not have obtained the information necessary to file a claim before the end of the limitations period." *Asher*, 310 Fed. Appx. at 917. Under the doctrine of equitable tolling, "even if a defendant is not responsible for the plaintiff's failure to sue within the limitations period, the [plaintiff] can get an extension of time within which to sue if it would have been unreasonable to expect him to be able to sue earlier." *Shropshear*, 275 F.3d at 595. However, "an essential element [of such an extension] is that the plaintiff have exercised due diligence; in other words that he have acted reasonably." *Id.* Furthermore, the plaintiffs bear the burden of demonstrating that the applicable statute of limitations should be

tolled. *Asher*, 310 Fed. Appx. at 917. While fraudulent concealment implies deliberate efforts by the defendant to prevent the plaintiff from suing within the applicable statute of limitation, which efforts are above and beyond the wrongdoing upon which the plaintiff's underlying claim is based. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1990).

Viewing the facts in the light most favorable to plaintiffs, the Court agrees with plaintiffs that there are questions of material fact as to State Farm's fraudulent concealment and plaintiffs' due diligence (because of State Farm's conduct) to obtain the information to discover the injury which would toll the statute of limitations. The record reveals that until September 19, 2011, State Farm did not inform the Illinois Supreme Court or the plaintiffs in *Avery* that it held a seat on the ICJL Executive Committee. Prior to this time, State Farm did not disclose any information in its briefs regarding recusal that would link itself to Justice Karmeier's campaign. Thus, the issues are whether State Farm in denying and misrepresenting its involvement in Justice Karmeier's election in its briefs to the Illinois Supreme Court acted deceptively; whether plaintiffs reasonably relied upon State Farm's misrepresentations or omissions and the extent that plaintiffs relied upon the filings of State Farm, through its lawyers in the appeals process, so that plaintiffs did not discover the injury sooner.

**Predicate Acts**

Lastly, defendants argue that plaintiffs cannot establish predicate acts of mail fraud. Specifically, defendants avow that the statements plaintiffs point to as fraudulent misrepresentations or omission in State Farm's legal briefs are permissible and proper comments on the sufficiency of plaintiffs' evidence and are permissible and proper characterizations of the facts and evidence presented. Moreover, defendants argue that State Farm's briefs, as a matter of law, cannot provide a basis for RICO mail fraud claims. Furthermore, defendants assert that under the *Noerr-Pennington* doctrine the alleged predicate acts are not actionable under RICO.

As to defendants' arguments that State Farm's briefs are appropriate and permissible advocacy, the Court finds that there are disputes of fact and that a jury could reasonably conclude that the misrepresentations were material and made with an intent to deceive the Illinois Supreme Court and plaintiffs and that a jury could reasonably conclude that the alleged coordination between State Farm's agents and other donors in the Karmeier campaign was material and central as to the question of Justice Karmeier's impartiality. Furthermore, the Supreme Court explained that the predicate act of mail fraud "occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'

The graveman of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element,' even if the mailing itself 'contain[s] no false information." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (citations omitted).

As to defendants' arguments regarding the *Noerr-Pennington* doctrine and *United States v. Pendergraft*, the Court finds that reconsideration is not warranted. The Court has re-examined its reasoning for rejecting defendants' arguments at the dismissal stage and the cases cited by defendants in support of summary judgment and finds that its decision that such court documents can, as a matter of law, constitute RICO predicate acts is proper. *See* Doc. 67, ps. 38-41.[9] The Court finds that defendants have not presented a compelling reason to change the Court's ruling. Further, the Court finds that a there are disputes of material facts of whether State Farm's misrepresentations to the Illinois Supreme Court and plaintiffs were material and made with an intent to deceive.

---

[9] "'[A] misrepresentation renders an adjudicative proceeding a sham only if the misrepresentation (1) was intentionally made, with knowledge of its falsity; and (2) was material, in the sense that it actually altered the outcome of the proceeding.' *Id.* at 843 (citations omitted). Further, defendants cite *United States Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) for the proposition that 'servicing legal documents by mail' cannot constitute mail fraud. However, the Court notes that the accurate holding is 'Similarly, we held in *Pendergraft* that **absent an intent to deceive** the victim, the 'mailing of litigation documents, even perjurious ones, did not violate the mail-fraud statute.' *Raney v. Allstate Insurance Co.*, 370 F.3d 1086, 1088 (7th Cir. 2004)(emphasis added). … " (Doc. 67, ps. 39-40).

## Conclusion

Accordingly, the Court **DENIES** defendants' motion for summary judgment on plaintiffs' RICO claims (Doc. 694). The Court **REMINDS** the parties that this matter is set for Final Pretrial Conference on August 7, 2018 at 1:30 p.m. and that this matter is set for jury trial on Tuesday, September 4, 2018 at 9:00 a.m. Lastly, the Court **DIRECTS** the parties to contact Magistrate Judge Williams' chambers if a settlement conference would be beneficial.

**IT IS SO ORDERED.**

Judge Herndon
2018.07.03
11:55:10 -05'00'

**United States District Judge**