IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, TODD SHADLE,
and LAURIE LOGER, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, EDWARD
MURNANE, and WILLIAM G. SHEPHERD,

Defendants.                                                    No. 12-0660-DRH

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### Introduction and Background

Pending before the Court is another motion by defendants to exclude the testimony of Thomas A. Myers (Doc. 708).[1] Plaintiffs again oppose the motion (Doc. 751). Based on the following, the Court denies the motion.

### Legal Standard

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125

---

[1] On June 2, 2016, the Court entered a Memorandum and Order, denying, *inter alia,* defendants' motion to exclude the testimony of Thomas A. Myers (Doc. 541).

L.Ed.2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.,* 765 F.3d 765, 771 (7th Cir. 2014); *see also Lewis v. Citgo Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009). Rule 702, governing the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"In short, the rule requires that the trial judge ensure that any and all expert testimony or evidence admitted "is not only relevant, but reliable." *Manpower, Inc. v. Ins. Co. of Pa.* 732 F.3d 796, 806 (7th Cir. 2013) *(citing Daubert,* 509 U.S. at 589, 113 S.Ct. 2786); *see also Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 894 (7th Cir. 2011) (explaining that ultimately, the expert's opinion "must be reasoned and founded on data [and] must also utilize the methods of the relevant discipline"); *Lees v. Carthage College,* 714 F.3d 516, 521 (7th Cir. 2013) (explaining the current version of Rule 702 essentially codified *Daubert* and "remains the gold standard for evaluating the reliability of expert testimony"). The *Daubert* principles apply equally to scientific and non-scientific expert testimony. *See Manpower, Inc.,* 732 F.3d at 806 (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

Under the expert-testimony framework, courts perform the gatekeeping function of determining whether the expert testimony is both relevant and reliable prior to its admission at trial. *See Manpower, Inc.,* 732 F.3d at 806; *Lees,* 714 F.3d at 521; *United States v. Pansier,* 576 F.3d 726, 737 (7th Cir. 2009) ("To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."). In doing so, courts "make the following inquiries before admitting expert testimony: first, the expert must be qualified as an expert by knowledge, skill, experience, training, or education; second, the proposed expert must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case." *Lees,* 714 F.3d at 521–22; *see also Stollings v. Ryobi Techs., Inc.,* 725 F.3d 753, 765 (7th Cir. 2013); *Pansier,* 576 F.3d at 737. A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (citing *Daubert*, 509 U.S. at 596). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" based on *Id*. The *Stollings* Court instructed, at page 766, "[a]n expert

may provide expert testimony a valid and properly applied methodology and still offer a conclusion that is subject to doubt. It is the role of the jury to weigh these sources of doubt. In *Daubert* the Supreme Court expressly envisioned this continued role for the jury when it reminded all that '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (Citing *Daubert* at page 596.)

Furthermore, Rule 403 states:

The Court *may* exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

## Analysis

Defendants argue that Myers testimony should be excluded because Myers now admitted that plaintiffs' earlier descriptions of his methodology were inaccurate. Defendants maintain that at his October 19, 2017 deposition, Myers repeatedly denied that he had been retained as a forensic accountant and disavowed using a "forensic accounting methodology;" that he testified that he did not perform a forensic accounting analysis and disclaimed that any forensic accounting or general accounting standards governed his work. Further, defendants contend that Myers admitted that he analyzed no accounting records, he reviewed no financial statements, and he traced no funds. Plaintiffs counter that defendants are twisting and misrepresenting Myer's deposition testimony and that there is no need for the

Court to depart from its prior ruling denying defendants' motion to exclude Myers' testimony.

This second attempt to keep this evidence from the jury is, by a considerable margin, based on Myers' deposition testimony from October 19, 2017. Defendants' examiner in the deposition tried to pin Mr. Myers to a particular methodology that could be pigeon holed into one with which Mr. Shafer was familiar. What is clear is that Mr. Myers performed a fraud investigation by looking at various financial records, plus a plethora of emails and evidence which found the defendant parties to this case, as well as a number of other complicit parties and individuals, discussing what the financial records did not always demonstrate clearly, such as the reasons for moving the money involved in the way it was moved, which would allow an inference as to motivation and who knew. Consequently, what Myers did not do was an audit, nor a straight examination of payments and deposits and payments again for the purpose of constructing an accountant's recitation of assets and liabilities as well as a simple determination of how much money went where. To the extent that his worked called on him to employ generally accepted accounting principles, he testified that he did so. He also applied the generally accepted principles and procedures recognized by the Federal Bureau of Investigation (FBI) and the Department of Justice (DOJ). Among the many attributes which make Myers a highly qualified expert are his history of lecturing to the FBI and DOJ on fraudulent financial transactions and the same within the banking industry and the government

agencies charged with examining bank records for, among other things, fraud. Defendants do not contest his qualifications. Myers' work and opinions in the case are reliable and will assist the jury through the morass of documentary evidence. Some of what he does, in this case and generally, may seem to be common sense. For example, if someone writes a communication of appreciation for another person's financial transaction and adds that it will help a particular cause, one can see the clear relationship. However, those acting with an effort to hide and keep secret from inquiring minds the existence of a financial transaction, and more importantly the purpose, create a reason to have a fraudulent financial transaction expert. Thus, the Court sees no reason to depart from its prior ruling denying the motion.

### Conclusion

Accordingly, the Court DENIES defendants' motion to exclude the testimony of Thomas A. Myers (Doc. 708).

**IT IS SO ORDERED.**

Judge Herndon
2018.07.03
12:34:40 -05'00'

United States District Judge