## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, TODD SHADLE and
LAURIE LOGER, on behalf of themselves
and all others similarly situated,

                           Plaintiffs,

       v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY, ED-
WARD MURNANE, and WILLIAM G.
SHEPHERD,

                        Defendants.

Case No. 12-cv-00660-DRH-SCW

Judge David R. Herndon
Magistrate Judge Stephen C. Williams

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S

## TRIAL BRIEF

**TABLE OF CONTENTS**

                                                                              **Page**

**TABLE OF AUTHORITIES** ...................................................................... iii

**INTRODUCTION** ..................................................................................... 1

**ARGUMENT** ........................................................................................... 1

I.      **PLAINTIFFS' CLAIMS ARE BARRED BY *ROOKER-FELDMAN*,
        *RES JUDICATA* AND COLLATERAL ESTOPPEL** ............................... 1

II.     **PLAINTIFFS MUST PROVE THE ELEMENTS OF THEIR RICO
        CLAIMS** ............................................................................................ 2

        A.      Plaintiffs Must Prove an Association-In-Fact Enterprise ...................... 2

        B.      Plaintiffs Must Prove a Pattern of Racketeering Activity ...................... 3

        C.      Plaintiffs Must Prove that Defendants Conducted the Affairs of the
                Enterprise Through a Pattern of Racketeering Activity ......................... 4

        D.      Plaintiffs Must Prove Predicate Acts of Mail Fraud ............................ 5

        E.      Plaintiffs Must Prove a RICO Injury to Property .................................. 6

        F.      Plaintiffs Must Prove "But For" and Proximate Causation .................... 7

        G.      Plaintiffs Must Prove Actual Damages From A RICO Injury. .............. 8

        H.      Plaintiffs Must Prove A RICO Conspiracy ........................................... 10

III.    **PLAINTIFFS IMPROPERLY RELY ON THE *BCS* JURY
        INSTRUCTIONS** ................................................................................. 11

IV.     **PLAINTIFFS' CLAIMS ARE TIME-BARRED** ..................................... 12

        A.      State Farm Will Show That Plaintiffs' Claims Are Time-Barred .......... 12

        B.      Plaintiffs Must Prove a Factual Basis for Equitable Tolling or
                Estoppel ................................................................................................. 14

V.      **THE *NOERR-PENNINGTON* DOCTRINE APPLIES IN THIS CASE** ... 14

        A.      *Noerr-Pennington* Is Applicable to RICO Claims and to Response
                Briefs ..................................................................................................... 14

B.      Plaintiffs Must Prove Application Of The Sham Exception By
        Clear and Convincing Evidence, As Required By The Seventh
        Circuit. .................................................................................................... 16

VI.    **PLAINTIFFS ARE NOT ENTITLED TO POST-JUDGMENT
       INTEREST UNDER ILLINOIS LAW** ........................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988)..........................................................................................16

*Armada (Singapore) PTE Ltd. v. Amcol International Corp.*,
  885 F.3d 1090 (7th Cir. 2018) ...........................................................................7

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  746 N.E.2d 1242 (Ill. App. Ct. 2001), *aff'd in part, rev'd in part*,
  835 N.E.2d 801 (Ill. 2005).................................................................................9

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  No. 97-114, 1999 WL 1022134 (Ill. Cir. Ct. Oct. 8, 1999), *aff'd in part, rev'd
  in part*, 746 N.E.2d 1242 (Ill. App. Ct. 2001)..................................................9

*Avery v. State Farm Mutual Automobile Insurance Co.*,
  835 N.E.2d 801 (Ill. 2005)..........................................................................1, 10

*Baek v. Clausen*,
  886 F.3d 652 (7th Cir. 2018) .............................................................................2

*BCS Servs. Inc. v. BG Invs., Inc.*,
  728 F.3d 633 (7th Cir. 2013) ...........................................................................11

*Blaine v. City of Chicago*,
  8 N.E.2d 939 (Ill. 1937)...................................................................................19

*Bond v. Perley*,
  705 F. App'x 464 (7th Cir. 2018) ......................................................................2

*Boyle v. United States*,
  556 U.S. 938 (2009)............................................................................................3

*BP Prod. N. Am. Inc. v. Int'l Maint. Corp.*,
  2005 WL 5976553 (S.D. Tex. May 27, 2005)..................................................20

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) .............................................................................9

*Brown v. Allen*,
  344 U.S. 443 (1953)............................................................................................2

*Cancer Found., Inc. v Cerberus Capital Mgmt., LP*,
  559 F.3d 671 (7th Cir. 2009) ...........................................................................13

*Cimino v. Raymark Indus., Inc.*,
  151 F3d 297 (5th Cir. 1998) ...................................................................................10

*Crichton v. Golden Rule Ins. Co.*,
  576 F.3d 392 (7th Cir. 2009) ....................................................................................3

*Cueto v. Grogan*,
  No. 08-808, 2009 WL 2849007 (S.D. Ill. Sept. 1, 2009) ......................................14

*Dillon v. Alan H. Shifrin & Assocs., LLC*,
  No. 16-CV-05761, 2017 WL2480706 (N.D. Ill. June 8, 2017) ...............................6

*Doe v. Roe*,
  958 F.2d 763 (7th Cir. 1992) ....................................................................................7

*Eclipse Mfg. Co. v. U.S. Compliance Co.*,
  886 N.E.2d 349 (Ill. App. Ct. 2007) ......................................................................19

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*,
  831 F.3d 815 (7th Cir. 2016) ....................................................................................3

*Empress Casino Joliet Corp. v. Johnston*,
  763 F.3d 723 (7th Cir. 2013) ..................................................................................12

*Evans v. City of Chicago*,
  689 F.2d 1286 (7th Cir. 1982), *overruled on other grounds*,
  873 F.2d 1286 (7th Cir. 1989) ..................................................................................7

*Farrar v. Hobby*,
  506 U.S. 103 (1992)...................................................................................................9

*Franklin v. Warmington*,
  709 F. App'x 373 (7th Cir. 2017) ...........................................................................14

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) ................................................................................15

*G. Heileman Brewing Co. v. Anheuser-Busch Inc.*,
  676 F. Supp. 1436 (E.D. Wis. 1987), *aff'd*, 873 F.2d 985 (7th Cir. 1989) .............17

*Gen. Dynamics Corp. v. Am. Tel. & Tel. Co.*,
  650 F. Supp. 1274 (N.D. Ill. 1986) ........................................................................17

*Gray v. Lacke*,
  885 F.2d 399 (7th Cir. 1989) ....................................................................................6

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010).................................................................................................7, 8

iv

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989)....................................................................................................4

*Holmes v. Secs. Inv. Prot. Corp.*,
   503 U.S. 258 (1992)..................................................................................................12

*Hopes v. Mash*,
   No. 08-cv-713, 2010 WL 3490991 (S.D. Ill. Aug. 31, 2010)....................................1

*Illinois State Toll Highway Auth. v. Heritage Standard Bank & Trust Co.*,
   626 N.E.2d 213 (Ill. 1993)........................................................................................19

*In re Innovatio IP Ventures, LLC Patent Litig.*,
   921 F. Supp. 2d 903 (N.D. Ill. 2013) ...............................................................15, 16

*In re Marriage of Duggan*,
   877 N.E.2d 1140 (Ill. App. Ct. 2007) .......................................................................7

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris
   Inc.*,
   196 F.3d 818 (7th Cir. 1999) .............................................................................15, 16

*Ira Holtzman, C.P.A., & Assocs. Ltd. v. Turza*,
   728 F.3d 682 (7th Cir. 2013) .....................................................................................9

*Jennings v. Auto Meter Prod., Inc.*,
   495 F.3d 466 (7th Cir. 2007) .................................................................................3, 4

*Jimenez v. City of Chicago*,
   732 F.3d 710 (7th Cir. 2013) .....................................................................................1

*Johnson v. City of South Bend*,
   680 F. App'x 475 (7th Cir. 2017) ............................................................................14

*Kaye v. D'Amato*,
   357 F. App'x 706 (7th Cir. 2009) ..............................................................................4

*Lennon v. City of Carmel*,
   865 F.3d 503 (7th Cir. 2017) .....................................................................................2

*Limestone Dev. Corp. v. Village of Lemont*,
   520 F.3d 797 (7th Cir. 2008) ...............................................................................3, 13

*MCI Communications Corp. v. American Telephone & Telegraph Co.*,
   708 F.2d 1081 (7th Cir. 1983) ............................................................................17, 18

*McLaughlin Equip. Co. v. Servaas*,
   No. 98-127, 2004 WL 1629603 (S.D. Ind. Feb. 18, 2004)......................................13

v

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008)................................................................10

*Medical Emergency Servs. Assocs. v. Foulke*,
  844 F.2d 391 (7th Cir. 1988) .............................................................4

*Mercatus Grp., LLC v. Lake Forest Hosp.*,
  641 F.3d 834 (7th Cir. 2011) .........................................................16, 18

*Miller v. Fryzel*,
  499 F. App'x 601 (7th Cir. 2013) ......................................................1

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
  14 F. Supp. 3d 191 (S.D.N.Y. 2014)..................................................16

*Needham v. White Labs., Inc.*,
  847 F.2d 355 (7th Cir. 1988) ...........................................................19

*Nero v. Mayan Associates Mainstreet Inv. 1, LLC*,
  645 F. App'x 864 (11th Cir.), *cert. denied*, 137 S. Ct. 592 (2016)............6

*Nesses v. Shepard*,
  68 F.3d 1003 (7th Cir. 1995) ............................................................2

*New W., L.P. v. City of Joliet*,
  491 F.3d 717 (7th Cir. 2007) ...........................................................15

*People ex rel. Farwell v. Kelly*,
  13 N.E.2d 181 (Ill. 1938)...................................................................19

*Poliszczuk v. Winkler*,
  962 N.E.2d 610 (Ill. App. Ct. 2011) .................................................20

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) ........................................................12

*Roppo v. Travelers Commercial Ins. Co.*,
  869 F.3d 568 (7th Cir. 2017) .............................................................6

*Rotella v. Wood*,
  528 U.S. 549 (2000)...........................................................................13

*RWB Servs., LLC v. Hartford Computer Grp., Inc.*,
  539 F.3d 681 (7th Cir. 2008) .............................................................7

*Sanchez v. City of Chicago*,
  880 F.3d 349 (7th Cir. 2018) .............................................................2

*Smith v. United States*,
    568 U.S. 106 (2013)..................................................................................................10

*Spence-Jones v. Rundle*,
    991 F. Supp. 2d 1221 (S.D. Fla. 2013) ...................................................................6

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..........................................................................................10

*Stachon v. United Consumers Club, Inc.*,
    229 F.3d 673 (7th Cir. 2000) ...............................................................................10

*State of Ill. ex rel. Hartigan v. Panhandle E. Pipe Line Co.*,
    730 F. Supp. 826 (C.D. Ill. 1990) (Mihm, J), *aff'd sub nom. State of Ill., ex rel.*
    *Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469 (7th Cir. 1991).................17

*Suh v. Pierce*,
    630 F.3d 685 (7th Cir. 2011) .................................................................................8

*Tarpley v. Keistler*,
    188 F.3d 788 (7th Cir. 1999) ...............................................................................15

*Toyo Tire & Rubber Co. v. Atturo Tire Corp.*,
    No. 14 C 0206, 2017 WL 1178224 (N.D. Ill. Mar. 30, 2017) ...............................16

*Tri-G, Inc. v. Burke, Bosselman & Weaver*,
    856 N.E.2d 389 (Ill. 2006)...............................................................................18, 19

*Tyson Foods v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)..........................................................................................10

*United Mine Workers of Am. v. Pennington*,
    381 U.S. 657 (1965)..............................................................................................16

*United States v. Pendergraft*,
    297 F.3d 1198 (11th Cir. 2002) .............................................................................5

*United States v. White*,
    610 F.3d 956 (7th Cir. 2010) ...............................................................................16

*Weaver v. Boriskin*,
    No. 16-cv-688, 2017 WL 5201433 (E.D.N.Y. Sept. 30, 2017) ...............................4

*Williams v. Jones & Jones Mgmt. Grp., Inc.*,
    No. CV 14-2179, 2015 WL 349443 (C.D. Cal. Jan. 23, 2015) ...............................16

*Wilson v. Garcia*,
    471 U.S. 261 (1985)................................................................................................6

**Statutes**

18 U.S.C. § 1964(c) ..............................................................................................6

28 U.S.C. § 1961(a) ............................................................................................19

**Other Authorities**

*BCS Services v. Heartwood 88, LLC,*
    No. 05-cv-4095 (N.D. Ill. Nov. 3, 2011) .......................................................11, 12

Committee Comment to the Seventh Circuit Pattern Criminal Jury Instructions
    (2012).............................................................................................................11

Leonard B. Sand, et al., 4 Modern Federal Jury Instructions-Civil P 84.05 (2018) ....................10

Seventh Circuit Pattern Criminal Jury Instructions (2012)...........................................10

*Shuffle Tech Int'l v. Scientific Games Corp.*,
    1:15-cv-03702 (N.D. Ill. Aug. 8, 2018) .............................................................17

## **INTRODUCTION**

In 2005, the six participating Justices of the Illinois Supreme Court voted unanimously to reverse the $1.05 billion nationwide class judgment in *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801, 830, 855, 863 (Ill. 2005). As this Court has stated, "[a]ll six participating Illinois State Supreme Court Justices voted to reverse the $1.05 billion judgment, to decertify the nationwide class, to reverse the award of 'specification' damages as having 'no basis in law,' and to reverse the judgment on the *Avery* plaintiffs' ICFA claim." [846] at 6 n.6. Plaintiffs do not contend that any of the Illinois Supreme Court's rulings on the merits were erroneous, [692], at 7-8, Nos. 7-9, and those rulings remain the law of Illinois. Plaintiffs, having lost before the Illinois Supreme Court in 2005 and 2011 and before the United States Supreme Court in 2006, have come to federal court seeking to recover the full amount of the reversed $1.05 billion judgment, nearly $1.8 billion in so-called post-judgment interest on the reversed judgment, and treble damages, in the guise of a RICO claim. As shown below, Plaintiffs' claims are not supported by the law or the evidence, and Plaintiffs' proposed jury instructions are erroneous and improper.

## **ARGUMENT**

### I.   **PLAINTIFFS' CLAIMS ARE BARRED BY** *ROOKER-FELDMAN*, *RES JUDICA-TA* **AND COLLATERAL ESTOPPEL**

Whether jurisdiction is barred under the *Rooker-Feldman* doctrine presents issues of law and fact for the Court to resolve based on the record at trial. *See Hopes v. Mash*, No. 08-cv-713, 2010 WL 3490991, at *5 (S.D. Ill. Aug. 31, 2010) (Herndon, J.) (citing *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008), *aff'd*, 663 F.3d 899 (7th Cir. 2011)); *Jimenez v. City of Chicago*, 732 F.3d 710, 718 (7th Cir. 2013) (the record at trial supersedes the record on summary judgment). Plaintiffs bear the burden to establish subject matter jurisdiction by a preponderance of the evidence. *See Miller v. Fryzel*, 499 F. App'x 601, 603 (7th Cir. 2013). Here, the evidence will leave no doubt that Plaintiffs' purported injury (whether characterized by Plaintiffs as the loss of the $1.05 judgment or as the "tainting" of the tribunal) "flow[ed] directly" from the

Illinois Supreme Court's merits decision and its rulings on Justice Karmeier's participation in *Avery*. *See Lennon v. City of Carmel*, 865 F.3d 503, 507 (7th Cir. 2017). There is no "fraud exception" to *Rooker-Feldman*, *see Bond v. Perley*, 705 F. App'x 464, 465 (7th Cir. 2018), and Plaintiffs cannot make the necessary factual showings to establish that the exception to *Rooker-Feldman* set forth in *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), applies in this case.[1]

In addition, *res judicata* and collateral estoppel bar Plaintiffs' claims, which impermissibly seek to re-litigate their entitlement to the $1.05 billion judgment and the constitutional propriety of Justice Karmeier's participation. *See Baek v. Clausen*, 886 F.3d 652, 660 (7th Cir. 2018) (*res judicata* barred RICO claims based on same "single group of operative facts" as earlier state law claims); *Sanchez v. City of Chicago*, 880 F.3d 349, 357 (7th Cir. 2018) (plaintiff collaterally estopped from rearguing issues argued in state court); *Nesses*, 68 F.3d at 100 (state-court judgment barred plaintiff's effort to litigate the same claim in federal court; affirming dismissal based on *res judicata*). The United States Supreme Court's denial of Plaintiffs' petition for certiorari in *Avery*, which was based on the same allegations as are at issue here, also has *res judicata* effect and bars Plaintiffs' RICO claims. *See Brown v. Allen*, 344 U.S. 443, 543 (1953) (Jackson, J., concurring) (the "minimum meaning" of a denial of certiorari is that "the judgment below … stand[s] with whatever consequences it may have upon the litigants involved under the doctrine of *res judicata* as applied either by state or federal courts").

## II.   PLAINTIFFS MUST PROVE THE ELEMENTS OF THEIR RICO CLAIMS

### A.   Plaintiffs Must Prove an Association-In-Fact Enterprise.

Liability under section 1962(c) requires proof of an enterprise.   Plaintiffs allege an

---

[1] The *Nesses* exception would require Plaintiffs to show that the *Avery* decision reversing the $1.05 billion judgment was "erroneous" and that there was judicial "corruption." *Nesses*, 68 F.3d at 1005; [669] at 5-6. Plaintiffs have conceded that they do not quarrel with the legal merits of the *Avery* decision. [610] at 7-8. Moreover, regardless of any bogus 2005 corruption allegations, Plaintiffs cannot show that the Illinois Supreme Court's 2011 denial of Plaintiffs' petition to re-instate the *Avery* judgment falls within the *Nesses* exception. Not only did Justice Karmeier not participate in that decision, but the Illinois Supreme Court included two new Justices. That 2011 decision is ironclad protected from Plaintiffs' attack by *Rooker*-Feldman.

association-in-fact enterprise, supposedly "conducted by" State Farm and consisting of Defendants, various persons and organizations supposedly involved in supporting Justice Karmeier's campaign, or with ties to such organizations, and Justice Karmeier himself. *See* [289] ¶ 29. Plaintiffs cannot show that this amorphous group of persons and entities functioned as an association-in-fact. To do so, Plaintiffs would have to show "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 944-45 (2009). An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*; *see Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 805 (7th Cir. 2008) (enterprise "requires proof of 'an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making'" (citation omitted)). Such an enterprise "must be meaningfully distinct from the entities that comprise it" such that a defendant "can be said to have controlled and conducted the enterprise rather than merely its own affairs." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009).

Plaintiffs' proposed instructions on enterprise consist of three sentences and would not provide the necessary guidance to the jury on what the law requires as proof of an association-in-fact enterprise. These proposed instructions advise the jury only that it should "consider" whether the group has an ongoing organization or structure. Pls.' Proposed Instructions at 6. Furthermore, Plaintiffs' instructions also fail to explain that one defendant cannot be the enterprise itself. That instruction is necessary given Plaintiffs' central focus on Defendant State Farm. *See* Defs.' Proposed Instructions at 5.

### B.    Plaintiffs Must Prove a Pattern of Racketeering Activity.

To prove a pattern of racketeering, the alleged predicate acts must be related and have "continuity." *See Jennings v. Auto Meter Prod., Inc.*, 495 F.3d 466, 475 (7th Cir. 2007). The continuity requirement is designed to ensure that "RICO targets 'long-term criminal conduct'" rather than "one-off crimes." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831

F.3d 815, 828 (7th Cir. 2016). Continuity may be either "closed-ended," consisting of "'a series of related predicates extending over a substantial period of time,'" or "open-ended," consisting of "'past conduct that by its nature projects into the future with a threat of repetition.'" *Id.* (citation omitted). Plaintiffs' allegations do not describe either a "closed-ended" or "open-ended" pattern. The two alleged predicate acts (the 2005 and 2011 State Farm briefs) are not "ongoing over a period of time," *Medical Emer. Serv. Assocs. v. Foulke*, 844 F.2d 391, 395 (7th Cir. 1988), or "part of [the alleged enterprise's] regular way of doing business," *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 243 (1989). Rather, each is "a singular predicate act" and "isolated or sporadic." *Jennings*, 495 F.3d at 473-74. Furthermore, purported acts of concealment, even if themselves illegal, "'do nothing to extend the duration'" of a purported RICO scheme. *Id.* at 474; *see also Weaver v. Boriskin*, No. 16-cv-688, 2017 WL 5201433, at *9 (E.D.N.Y. Sept. 30, 2017) ("a handful of fraudulent filings, over a brief period" in a single case did not establish pattern).

Plaintiffs' proposed instructions do not inform the jury that finding two or more violations may be insufficient to prove a pattern. *Compare* Pls.' Proposed Jury Instructions at 7 *with Jennings*, 495 F.3d at 472 ("A pattern of racketeering activity consists, *at the very least*, of two predicate acts of racketeering committed within a ten-year period.") (emphasis added) *and* Seventh Circuit Pattern Criminal Jury Instructions (2012) at 525 *and* Defs' Proposed Jury Instructions at 12. Indeed, all Plaintiffs propose telling the jurors on continuity is that they can find it if the violations are "ongoing over a substantial period or are part of a regular way of conducting one's business." Pls.' Proposed Jury Instructions at 7. That is a misstatement of the law. First, the inquiry is not limited to these two factors (which are in any event irrelevant to Plaintiffs' allegations). Plaintiffs' proposed instruction also fails to inform the jury that isolated acts involving the same transaction or injury do not show continuity "even if the purported scheme takes years to unfold." *Kaye v. D'Amato*, 357 F. App'x 706, 716 (7th Cir. 2009).

### C.  Plaintiffs Must Prove that Defendants Conducted the Affairs of the Enterprise Through a Pattern of Racketeering Activity.

The purported pattern of racketeering activity in this case does not relate to any purported

4

affairs of the alleged association and was not used to conduct those purported affairs. The 2005 and 2011 briefs were drafted by State Farm's lawyers. Plaintiffs can provide no evidence that the alleged association still existed and still had (or ever had) "affairs" to conduct at the time of the 2005 mailing, much less at the time of the 2011 mailing. Plaintiffs can provide no evidence that the alleged association members had a common purpose of obtaining reversal of the *Avery* judgment or any other common purpose that continued after Justice Karmeier's election on November 4, 2004. State Farm's briefs have no connection to the alleged enterprise, nor is there any evidence that Defendants conducted the affairs of the alleged enterprise through State Farm's filing of legal pleadings. Thus, neither State Farm nor any other Defendant conducted the affairs of the enterprise through the alleged racketeering activity.

Plaintiffs' proposed instructions impermissibly denude the statutory requirement and would erroneously allow the jury to find liability for a Defendant that never conducted or participated in the conduct of the enterprise. *See* Pls.' Proposed Instructions at 8.

### D.    Plaintiffs Must Prove Predicate Acts of Mail Fraud,

Plaintiffs also cannot prove that State Farm's 2005 and 2011 response briefs contained fraudulent statements or served a scheme to defraud. State Farm's briefs were legitimate advocacy; they appropriately argued the evidence and the inferences to be drawn from the evidence. *See* Mem. & Order [300] at 9 (Williams, M.J.) (citing and quoting *Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 147 (N.D. Ill. 2005)). Implicitly recognizing the propriety of these briefs, Plaintiffs' proposed instructions would erroneously tell the jury that State Farm's briefs themselves need not contain fraudulent statements to be predicate acts of mail fraud. *See* Pls.' Proposed Instructions at 10. Plaintiffs have not alleged, however, any other manner in which the Illinois Supreme Court was or could have been deceived, which is the gist of their fraud claim. If the briefs do not contain fraudulent statements (and they do not), there is no mail fraud scheme in this case.

Furthermore, litigation conduct of the kind alleged here as a matter of law does not constitute a RICO predicate act of mail fraud. *See, e.g.*, *United States v. Pendergraft*, 297 F.3d

1198, 1208 (11th Cir. 2002) ("serving litigation documents by mail" cannot constitute RICO predicate acts); *Nero v. Mayan Associates Mainstreet Inv. 1, LLC*, 645 F. App'x 864, 868 (11th Cir.) (in RICO action, making clear that the "rule" that "federal fraud charges cannot be based on the filing of court documents" is unqualified), *cert. denied*, 137 S. Ct. 592 (2016); *Dillon v. Alan H. Shifrin & Assocs., LLC*, No. 16-CV-05761, 2017 WL2480706, at *5 n.4 (N.D. Ill. June 8, 2017) (Gottschall, J.) (following *Nero* in RICO case and finding that Plaintiff's "predicate acts stemming from various kinds of fraud fail because he bases them on court filings"). As the Seventh Circuit has stated, "[t]he state courts … have ample tools to correct any individual instances of fraud or other misconduct" that occur during litigation. *Jennings*, 495 F.3d at 473.

### E.   Plaintiffs Must Prove a RICO Injury to Property.

RICO requires an injury to business or property. *See* 18 U.S.C. § 1964(c). Plaintiffs, however, once again claim a due process injury based on their contention that they were deprived of a fair tribunal. Such a constitutional injury, as a matter of law, is not a RICO injury to business or property, but a personal injury claim. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (a due process claim is a claim for an "injury to the individual rights of the person"); *Gray v. Lacke*, 885 F.2d 399, 407 (7th Cir. 1989) (claims for violation of constitutional rights are personal injury claims). Thus, the numerous district courts that have ruled on the issue are correct in holding that a constitutional injury cannot be the basis for a RICO claim. *E.g.*, *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1254 (S.D. Fla. 2013) (Middlebrooks, J.) (plaintiff did not allege a RICO injury to business or property; her "claims in this case are for personal injury – to her individual constitutional rights and to her personal reputation."); [694] at 26-27 (citing cases). Plaintiffs' contention that their purported constitutional injury resulted in financial loss by causing the reversal of the $1.05 billion *Avery* judgment does not change the result. RICO's requirement of injury to business or property "preclude[s] recovery for personal injuries *and the pecuniary losses incurred therefrom*." *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 590 (7th Cir. 2017) (emphasis added).

Moreover, to the extent that Plaintiffs allege that their injury is the loss of the judgment in

*Avery*, that loss also is not an injury to business or property.  First, whether an asserted interest qualifies as a property interest is "quintessentially a question of state law," *see Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992), and, under Illinois law, a non-final judgment is not property.  *See In re Marriage of Duggan*, 877 N.E.2d 1140, 1145 (Ill. App. Ct. 2007) ("a judgment that is pending on appeal is not a final judgment" and not a vested right of property protected by due process); *Evans v. City of Chicago*, 689 F.2d 1286, 1296 (7th Cir. 1982) ("Under Illinois law, a judgment becomes a vested right of property once it is no longer subject to review or modification."), *overruled on other grounds*, 873 F.2d 1286, 1296 (7th Cir. 1989).

The Seventh Circuit's recent decision in *Armada (Singapore) PTE Ltd. v. Amcol International Corp.*, 885 F.3d 1090 (7th Cir. 2018), is not to the contrary, because the judgment claimed as a property interest in that case was a ***final*** judgment that the plaintiff was trying to collect while the defendant was trying to thwart collection by siphoning off assets. *Id.* at 1093. Here, in contrast, Plaintiffs' claimed property interest is an interest in a non-final judgment that was reversed by the Illinois Supreme Court – a property interest that was inchoate before the Illinois Supreme Court's decision and non-existent afterwards. And the actual final judgment is the law of Illinois.

### F.    Plaintiffs Must Prove "But For" and Proximate Causation.

Under civil RICO, Plaintiffs are "required to show that a RICO predicate offense 'not only was a "but for" cause of [their] injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010); *see also RWB Servs., LLC v. Hartford Computer Grp., Inc.*, 539 F.3d 681, 686-87 (7th Cir. 2008). Notably, Plaintiffs' proposed jury instructions omit "but for" causation and would incorrectly permit the jury to find proximate causation based on foreseeability.  *See* Pls.' Proposed Instructions at 7 (causation exists if "the injury resulted directly from *or* was a reasonably probable consequence of the defendants' conduct") (emphasis added).  This proposed instruction is contrary to *Hemi Group*, which states that, "in the RICO context," the "focus" of the proximate cause analysis "is on the directness of the relationship between the conduct and the harm" and rejects a foreseeability analysis.  *See Hemi Grp.*, 559

U.S. at 12.  Where a defendant's conduct is separated from a plaintiff's injury by "independent factors" or "multiple steps," the causal link may be too remote or attenuated to satisfy proximate cause.  *Id.* at 9-10, 15, 17-18.

Plaintiffs cannot meet their burden on causation. Plaintiffs claim that, in order to recoup the entire reversed $1.05 billion judgment in *Avery*, they need only prove that the Illinois Supreme Court was "tainted" by Justice Karmeier's participation. There is no such recoverable injury under RICO, nor can Plaintiffs prove that a predicate act by Defendants caused Justice Karmeier's participation, that Justice Karmeier's participation in turn "tainted" the Illinois Supreme Court, or that the supposed "tainting" caused Plaintiffs' loss of the *Avery* judgment. There are "multiple steps" in each of these stages in the chain of causation.  For example, to show that Justice Karmeier's participation "tainted" the Illinois Supreme Court, Plaintiffs would have to present evidence that, contrary to Justice Karmeier's sworn statement, Justice Karmeier knew of the purported contributions supposedly made by State Farm. *See Suh v. Pierce*, 630 F.3d 685, 691-92 (7th Cir. 2011) ("[I]f the judge does not even know about [the disqualifying] financial interest, how could he be tempted to undermine the case?").  Likewise, Plaintiffs cannot prove that Justice Karmeier's participation in 2005 had any effect on any of the multiple outcomes in the final judgment, and, of course, he did not even participate in 2011. Plaintiffs cannot provide evidence of the multiple links required to hold their chain of causation together. Instead, they propose overbroad and erroneous instructions that misstate the requirements for RICO causation.

### G.    Plaintiffs Must Prove Actual Damages From A RICO Injury.

After six years, Plaintiffs have offered no evidence or authority that would provide factual or legal support for their contention that the class members each are entitled to a *per capita* share of the purported damages they claim to have sustained on the basis of two RICO claims.  *See, e.g.*, Pls.' Reply Mem. in Support of Their Mot. For Class Certification, [492] at 4-5. Only if parties have a common and undivided interest in a single title or right, are *per capita* damages permissible. There is no such remedy under RICO. In any event, where, as here, a class

action "stems from discrete injuries," "it does not create a common fund." *See Ira Holtzman, C.P.A., & Assocs. Ltd. v. Turza*, 728 F.3d 682, 688 (7th Cir. 2013). "A class certified under Rule 23(b)(3) is not a juridical entity," and "[e]ach class member has an interest in his own damages." *Id.* RICO damages must be proven with reasonable certainty, and *per capita* damages is nothing more than an arbitrary construct to salvage Plaintiffs' inability to meet their legal proof requirements.

Characterizing a claim for denial of due process as a RICO claim is no help because a plaintiff who shows a denial of due process is entitled only to "'nominal damages without proof of actual injury.'" *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (citation omitted). Thus, Plaintiffs' alleged common due process injury does not mean that Plaintiffs and class members need not each show the amount of their purported damages, *i.e.*, the amount they would have been entitled to recover in *Avery* if the judgment had been upheld. That amount (if any) would have been determined individually, based on the facts and circumstances of the individual repair and the number and kind of non-OEM parts specified and used in the repair. In entering judgment in *Avery*, the Illinois trial court retained jurisdiction to "administer and distribute the common fund resulting from [the] Judgment … based upon appropriate proof of class membership and claims, to be obtained insofar as is practicable from the records of State Farm, and augmented, if and as necessary, by documents and information from class members and their vehicles." *Avery v. State Farm Mut. Auto. Ins. Co.*, No. 97-114, 1999 WL 1022134, at *6, (Ill. Cir. Ct. Oct. 8, 1999), *aff'd in part, rev'd in part*, 746 N.E.2d 1242 (Ill. App. Ct. 2001). The Illinois Appellate Court also acknowledged that "individual determinations as to damages w[ould] be necessitated." *Avery v. State Farm Mut. Auto. Ins. Co.*, 746 N.E.2d 1242, 1255 (Ill. App. Ct. 2001), *aff'd in part*, *rev'd in part*, 835 N.E.2d 801 (Ill. 2005). Indeed, Plaintiffs themselves admit that the class members' purported damages in *Avery* ranged from several hundred dollars to $2,500 ([289] ¶ 43), and that the circumstances of the class members varied greatly. (SOF ¶¶ 37-38, [694] at 19.) Defendants have a Seventh Amendment and due process right to litigate these individual issues of causation, injury and damages. *See*, *e.g.*, *Broussard v.*

*Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 343, 345 (4th Cir. 1998); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231-32 (2d Cir. 2008); *Cimino v. Raymark Indus., Inc.*, 151 F3d 297, 311-22 (5th Cir. 1998).

Furthermore, as the Illinois Supreme Court pointed out, the class defined by the Illinois trial court in *Avery* included persons who had not sustained any injury or damages, and the issues of injury and damages in *Avery* were overwhelmingly individual. *See, e.g.*, *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 858-60 (Ill. 2005). Moreover, in this case, the Court has expanded the class definition to include persons whose cars were repaired with OEM parts paid for by State Farm, even though their original estimates included non-OEM parts. Awarding such class members *per capita* damages would be constitutionally impermissible. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (plaintiffs must prove "'concrete'" injury that "actually exist[s]" and is "'real,' and not 'abstract'" (citations omitted)); *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not") (Roberts, C.J., concurring, joined by Alito, J.).

### H.     Plaintiffs Must Prove A RICO Conspiracy.

Plaintiffs' RICO conspiracy allegations are insufficient for the same reasons that their substantive RICO allegations fail. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000) (because plaintiffs "fail[ed] to establish a violation of section 1962(c), their 1962(d) claim based on the same facts must fail as well."). Furthermore, a RICO conspiracy requires a knowing agreement to commit a RICO violation – in this case, to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity. *See Smith v. United States*, 568 U.S. 106, 110 (2013); *see also* Seventh Circuit Pattern Criminal Jury Instructions (2012) at 529; Leonard B. Sand, et al., 4 Modern Federal Jury Instructions-Civil P 84.05 (2018) (model instruction 85-36) (modified). There is no such proof in this case.

Plaintiffs' Proposed Jury Instructions misstate the law of RICO conspiracy.  For example, the "definitions" section vaguely states that there must be a "formal or informal agreement between two or more persons or entities to accomplish an unlawful purpose," without specifying

10

that the purpose must be unlawful *under RICO*. *Compare* Pls.' Proposed Instructions at 8 *with* 4 Modern Federal Jury Instructions-Civil P 84.05 *and* Defs.' Proposed Instructions at 15-16. Plaintiffs' other proposed instructions on the elements of conspiracy are confusing, incorrect, and internally contradictory. *See* Pls.' Proposed Instructions at 5. Incredibly, Plaintiffs propose telling the jury that "plaintiffs are not required to prove that any racketeering activity was actually committed," but that "at least one member of the conspiracy [must have] committed an overt act in furtherance of the conspiracy," which "overt act may itself be a lawful act."[2] But the same instruction contradictorily acknowledges that Plaintiffs must prove that "[a]t least one overt act which is an act of racketeering caused the [RICO injury]." *Id.* at 5. Plaintiffs' lawless instructions will confuse and mislead the jury and should not be given.

## III.  PLAINTIFFS IMPROPERLY RELY ON THE *BCS* JURY INSTRUCTIONS

Plaintiffs attempt to justify their proposed RICO jury instructions by relying almost entirely on the instructions supposedly given by the district court in *BCS Services v. Heartwood 88, LLC,* No. 05-cv-4095 (N.D. Ill. Nov. 3, 2011). *See* Pls.' Proposed Instructions at 1-10. Significantly, although the Seventh Circuit affirmed the judgment in *BCS*, it did not endorse the jury instructions. It addressed only two of the *BCS* instructions, which it held that the district court properly refused to give, one because it was irrelevant on the facts of the case and the other because it was duplicative of another instruction given to the jury. *See BCS Servs. Inc. v. BG Invs., Inc.*, 728 F.3d 633, 637 (7th Cir. 2013). Moreover, Plaintiffs here modeled many of their proposed jury instructions on *draft* instructions in *BCS* that are substantially different than the *final* instructions actually given to the jury, and Plaintiffs made significant changes to those draft instructions. *Compare* Draft Final Jury Instructions, *BCS Servs.* [Dkt. 874], *with* Tr. of Jury Instructions, *BCS Servs.* [Dkt. 1072] *and* Pls.' Proposed Instructions.

Most glaringly wrong, Plaintiffs' proposed instruction on causation would allow the jury to find causation if the injury was a "reasonably probable consequence of the defendants'

---

[2] According to the Committee Comment to the Seventh Circuit Pattern Criminal Jury Instructions (2012), at 525, RICO conspiracy instructions should not include an overt act requirement.

conduct." Pls.' Proposed Instructions at 7. As discussed above, that proposed instruction is squarely contrary to Supreme Court and Seventh Circuit precedent. *See, e.g.*, *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO requires "'but for' cause" and "proximate cause"). Notably, unlike Plaintiffs' instructions, the final *BCS* instructions required but-for causation. *See BCS*, [Dkt. 1072] at 118 ("[P]laintiff must prove that its claimed injury would not have occurred in the absence of defendants' conduct.").[3] Plaintiffs' Proposed Instructions also, *inter alia*, remove *mens rea* elements included in the final *BCS* instructions, keep an instruction that the Plaintiffs need not prove a "gain or loss" to establish mail fraud which was removed from the final *BCS* instructions, and rewrite the conspiracy causation element in a way that creates confusion and internal contradictions.[4] *Compare* Pls.' Proposed Instructions at 4, 5, 10 *with BCS*, [Dkt.1072] at 114-15, 120-21. In any case, the *BCS* instructions are not binding precedent, and should not be used here, particularly given that they depart from the Seventh Circuit Criminal Pattern Instructions and from Seventh Circuit and United State Supreme Court pronouncements on the law of RICO and the proof required to sustain a RICO claim.

## IV.   PLAINTIFFS' CLAIMS ARE TIME-BARRED

### A.     State Farm Will Show That Plaintiffs' Claims Are Time-Barred.

A RICO claim accrues when (1) the plaintiffs knows, or should reasonably know, of his

---

[3] *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016), and *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 729 (7th Cir. 2013), cited by Plaintiffs on p. 8 of their Proposed Instructions, do not support their proximate cause instruction. Under *Ray*, Plaintiffs must prove *both* "'but-for' <u>and</u> proximate causation," and "the fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action – the injury must be direct." 836 F.3d at 1349. Under *Empress Casino*, the "'central question'" on proximate cause is whether the alleged RICO violation "led directly" to the plaintiff's injuries. 763 F.3d 729. Neither case supports Plaintiffs' either/or formulation, which would improperly permit the jury to find proximate cause based solely on whether the purported injury "was a reasonably probable consequence of the defendants' conduct." Pls. Proposed Instructions at 7. Plaintiffs' proposed instruction is further objectionable because of its vague references to "conduct" and "acts" instead of repeating the words "predicate acts" as necessary for clarity.

[4] Plaintiffs' Proposed Instructions also include *BCS* instructions that are irrelevant here, such as a willful blindness instruction that is not supported by the facts here and is contrary to the requirement of a specific intent to defraud.  *See* Pls.' Proposed Instructions at 9.

or her injury, and (2) at least two predicate acts have been committed by the defendant. *Cancer Found., Inc. v Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) (RICO statute of limitations "begins to run when the plaintiffs discover, or should, if diligent, have discovered, that they had been injured by the defendants"); *Limestone*, 520 F.3d at 802 (a RICO claim accrues when there have been two "predicate acts that took place outside the limitations period."). A plaintiff need not know of the pattern of predicate acts for the statute of limitations to run. *See Rotella v. Wood*, 528 U.S. 549, 558-59 (2000). Defendants have the burden of proving the application of the statute of limitations by a preponderance of the evidence. *See McLaughlin Equip. Co. v. Servaas*, No. 98-127, 2004 WL 1629603, at *5 (S.D. Ind. Feb. 18, 2004) (Tinder, J.).

Defendants contend that the uncontroverted facts of the history of the *Avery* case establishes that Plaintiffs' claims are time-barred. According to Plaintiffs, the first predicate act in this case was State Farm's mailing of its January 31, 2005 brief opposing Plaintiffs' conditional motion for Justice Karmeier's participation. That brief was followed by three more State Farm briefs, mailed on or around February 9, 2005, March 31, 2005, and February 3, 2006, opposing Plaintiffs' contentions in further motions and submissions that State Farm had misrepresented its support for Justice Karmeier's campaign and that Justice Karmeier's participation in *Avery* had deprived Plaintiffs of due process. *See* [694] at 6-8. Plaintiffs cannot have it both ways. If State Farm's mailing of its January 31, 2005 brief was a predicate act of mail fraud, then its three other briefs must also be deemed predicate acts of mail fraud. Thus, based on Plaintiffs' own theory of predicate acts, the statute of limitations began to run no later than 2005 or 2006, by which time Plaintiffs had suffered the reversal of the $1.05 billion *Avery* judgment and no fewer than four briefs had been mailed. The statute expired four years later by 2009 or 2010 at the latest, well before Plaintiffs filed their RICO complaint on May 29, 2012. Moreover, State Farm's brief in response to Plaintiffs' 2011 Petition to the Illinois Supreme Court, which Plaintiffs have incorrectly labeled the second predicate act, did not restart the four-year period because no new, independent injury to property resulted from it. *See Limestone*, 520

13

F.3d at 802; *Cueto v. Grogan*, No. 08-808, 2009 WL 2849007, at *3 (S.D. Ill. Sept. 1, 2009) (Herndon, J.).

**B.    Plaintiffs Must Prove a Factual Basis for Equitable Tolling or Estoppel.**

Plaintiffs bear the burden to prove facts that would entitle them to equitable tolling or equitable estoppel. *See Johnson v. City of South Bend*, 680 F. App'x 475, 478 (7th Cir. 2017). To satisfy that burden, Plaintiffs would need to show either (1) that they could not have obtained vital information to file a claim before the end of the four-year period and that extraordinary circumstances far beyond their control prevented them from timely filing their lawsuit, or (2) that Defendants actively engaged in wrongdoing to prevent Plaintiffs from suing in time, that the purported wrongdoing went beyond the wrongdoing on which Plaintiffs' RICO claims are based, and that Plaintiffs reasonably relied on the defendants' improper conduct. *See Franklin v. Warmington*, 709 F. App'x 373, 375 (7th Cir. 2017). Plaintiffs cannot meet this burden. They have been repeating essentially the same factual allegations since 2005.

State Farm's jury instructions on the statute of limitations accurately reflect the law, and State Farm is entitled to have these issues presented to the jury for decision.[5]

**V.    THE *NOERR-PENNINGTON* DOCTRINE APPLIES IN THIS CASE**

**A.    *Noerr-Pennington* Is Applicable to RICO Claims and to Response Briefs.**

State Farm has argued from this case's inception that *Noerr-Pennington* protects State Farm's petitioning activity in filing its response briefs in the Illinois Supreme Court in *Avery*.[6] Moreover, Plaintiffs acknowledged in their summary judgment briefing that the "doctrine

---

[5] Plaintiffs improperly propose an instruction that "Plaintiffs' suspicion, concern, or fear that they had been injured and that the Defendants were the ones that caused the injury is not enough to begin the four-year period …." Pls.' Proposed Instructions at 14. Given that, starting in 2005, Plaintiffs repeatedly argued to the Illinois Supreme Court that, because of State Farm's supposed support for Justice Karmeier's campaign, his participation in *Avery* violated due process, Plaintiffs' contention that they had only "suspicion, concern, or fear" is frivolous.

[6] *See, e.g.,* [21] at 30 (Mot. to Dismiss) ("The *Noerr-Pennington* doctrine is applicable to RICO suits"); [691] at 47 (Mot. for Summary Judgment) (arguing that *Noerr-Pennington* is applicable to RICO suits and the sham exception for fraudulent misrepresentations does not apply).

protects from liability the petitioning of legislative bodies, administrative agencies, and the courts," and argued that the "sham exception" to the doctrine applies. *See* [729] at 38. And, in ruling on summary judgment, this Court found that "there are disputes of material facts" concerning the materiality and intent prongs of the sham exception, which (as discussed below) necessitates instruction on those issues and a decision by the jury. *See* [846] at 22 & n. 9.[7]

Plaintiffs now erroneously suggest that *Noerr-Pennington* is inapplicable because it is limited to the antitrust context, citing inapposite, out-of-circuit cases. *See* Plfs' Proposed Instructions at 19 n.1. Plaintiffs fail to acknowledge Seventh Circuit precedent directly contrary to their position. The Seventh Circuit has made clear that "*Noerr-Pennington* has been extended beyond the antitrust laws, where it originated, and is today understood as an application of the first amendment's speech and petitioning clauses." *New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) (applying *Noerr-Pennington* to civil rights and Fair Housing Act claims). More specifically, the Seventh Circuit has held that "[a]lthough the *Noerr-Pennington* doctrine originated in antitrust law, its rationale is equally applicable to RICO suits." *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999); *see also Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999) (applying *Noerr-Pennington* doctrine to non-antitrust-related § 1983 case alleging defendants conspired to violate plaintiff's constitutional rights); *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 911 (N.D. Ill. 2013) (Holderman, J.) ("Seventh Circuit has applied the [*Noerr-Pennington*] doctrine broadly, including to RICO claims") (collecting cases).

Plaintiffs also incorrectly suggest *Noerr-Pennington* protects their right to bring a lawsuit but not a defendant's right to defend against it. *See* Pls.' Proposed Instructions at 19 n.1. As the Ninth Circuit has stated, "*Noerr-Pennington* immunity, and the sham exception, also apply to defensive pleadings, because asking a court to deny one's opponent's petition is also a form of petition; thus, we may speak of a 'sham defense' as well as a 'sham lawsuit.'" *Freeman v.*

---

[7] State Farm submits that *Noerr-Pennington* bars Plaintiffs' claims as a matter of law.

*Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (citing *In re Burlington N., Inc.,* 822 F.2d 518, 532-33 (5th Cir. 1987));[8] *cf. Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 842 (7th Cir. 2011) (explaining *Noerr-Pennington* sham exception where defendant allegedly violated the law by *opposing* zoning approvals); *Int'l Bhd. of Teamsters*, 196 F.3d at 826 (holding *Noerr-Pennington* immunizes statements designed to "ward off" unfavorable decisions).  In any event, under *Noerr-Pennington*'s broad protection, State Farm's briefing need not be "core petitioning activity" (which it is) to be covered, so long as it is incidental to petitioning activity.[9]

### B.     Plaintiffs Must Prove Application Of The Sham Exception By Clear and Convincing Evidence, As Required By The Seventh Circuit.

Where, as here, Plaintiffs' theory of liability implicates *Noerr-Pennington*, a jury "should [be] instructed" on the doctrine. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965).[10]  Plaintiffs erroneously cite out-of-circuit authority as support for instructing the jury that the sham exception requires only a preponderance of the evidence standard. *See* Pls.'

---

[8] *See also Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14 C 0206, 2017 WL 1178224, at *5 (N.D. Ill. Mar. 30, 2017) (Lee, J.) (finding that "'core petitioning activity'" includes "'direct communications with the court,'" such as "'documents and pleadings, in which plaintiffs *or defendants* make representations and present arguments to support their request that the court do or not do something.'" (*quoting Freeman*, 410 F.3d at 1184; emphasis added)); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 204 (S.D.N.Y. 2014) (finding that "answer[ing] allegations" implicates *Noerr-Pennington* protection); *Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14-2179, 2015 WL 349443, at *9 (C.D. Cal. Jan. 23, 2015) (Morrow, J. & McDermott, M.J.) (dismissing RICO suit alleging that defendants and their attorneys "filed papers" with misrepresentations in previous state court action because such "defensive petitioning activity" constitutes a "burden on petitioning rights.").

[9] *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 503 (1988) (The reach of *Noerr-Pennington* is broad and not limited to "direct petitioning of government officials, for *Noerr* itself immunized a form of 'indirect' petitioning."); *In re Innovatio IP Ventures*, 921 F. Supp. 2d at 911 (Holderman, J.) (holding even pre-suit cease and desist correspondence is sufficiently incidental to core petitioning activity to be immunized).

[10] *See also United States v. White*, 610 F.3d 956, 962 (7th Cir. 2010) (where "inferences that can be drawn from facts" determine whether the conduct is protected by the First Amendment or not, both sides argue their inferences from the evidence to the jury, and the court may instruct the jury on "the legal requirements imposed by the First Amendment.").

Proposed Instructions at 19-20 n.1 (citing *Litton Sys., Inc. v. Am. Tel. & Tel. Co*., 700 F.2d 785, 813-14 (2d Cir. 1983)). Plaintiffs ignore the Seventh Circuit's holding in *MCI Communications Corp. v. American Telephone & Telegraph Co.*, 708 F.2d 1081, 1155 (7th Cir. 1983), that it is the Plaintiffs' burden to establish the sham exception by clear and convincing evidence. In *MCI Communications,* the Seventh Circuit expressly approved of the district court's jury instruction in that case regarding the sham exception to the *Noerr-Pennington* doctrine, which involves First Amendment concerns. The Seventh Circuit explained that the district court's jury instruction "stressed that [Plaintiff's] burden on this claim is higher (clear and convincing evidence) because of these First Amendment concerns." *Id.* The Seventh Circuit concluded that through this jury instruction "the essentials of the [*Noerr-Pennington*] doctrine and the exception to it for sham litigation were *clearly and correctly explained*." *Id.* (emphasis added). In accord with *MCI Communications*, Judge Kennelly of the Northern District of Illinois just recently instructed a jury that the sham litigation exception "requires the plaintiffs to prove by clear and convincing evidence [that the exception applies]."[11] *Shuffle Tech Int'l v. Scientific Games Corp.*, 1:15-cv-03702, [291] at 17 (N.D. Ill. Aug. 8, 2018).

Under Seventh Circuit precedent, establishing the sham exception requires Plaintiffs to prove by clear and convincing evidence that a misrepresentation "(1) was intentionally made, with knowledge of its falsity; and (2) was material, in the sense that it actually altered the

---

[11] District courts in this circuit have repeatedly and consistently construed the Seventh Circuit's opinion in *MCI Communications* as requiring that the sham exception must be proven by clear and convincing evidence. *See, e.g., State of Ill. ex rel. Hartigan v. Panhandle E. Pipe Line Co.*, 730 F. Supp. 826, 937 (C.D. Ill. 1990) (Mihm, J) (under *Noerr-Pennington*, "liability can be imposed only upon clear and convincing evidence that the defendant's [petitioning activity] ... was a sham," citing *MCI Communications*), *aff'd sub nom. State of Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469 (7th Cir. 1991); *G. Heileman Brewing Co. v. Anheuser-Busch Inc.*, 676 F. Supp. 1436, 1476 (E.D. Wis. 1987) (Curran, J.) (under the sham exception to *Noerr-Pennington*, "[t]he plaintiffs must prove the defendant's bad faith by clear and convincing evidence," citing *MCI Communications*), *aff'd*, 873 F.2d 985 (7th Cir. 1989); *Gen. Dynamics Corp. v. Am. Tel. & Tel. Co.*, 650 F. Supp. 1274, 1288 & n.14 (N.D. Ill. 1986) (Nordberg, J.) (refusing to apply collateral estoppel to *Noerr-Pennington* defense where Second Circuit applied preponderance of the evidence standard instead of "clear and convincing evidence" standard required in the Seventh Circuit in *MCI Communications*).

outcome of the proceeding." *Mercatus Grp., LLC*, 641 F.3d at 843; *MCI Commc'ns Corp.*, 708 F.2d at 1155.  This is the test and evidentiary standard as to which the Court should instruct the jury, consistent with Defendants' Proposed Jury Instructions, at 35-42.

## VI.    PLAINTIFFS ARE NOT ENTITLED TO POST-JUDGMENT INTEREST UNDER ILLINOIS LAW

Plaintiffs incorrectly contend that, under the Illinois post-judgment interest statute, their "damages … includes the amount of the *Avery* judgment after the court of appeals decision *and* any post-judgment interest thereon …," and that "the property interest" that they purportedly lost "included both the amount of the *Avery* judgment … *and* any interest that had accrued on that judgment as a matter of Illinois law." [861] at 2 (emphasis added). Plaintiffs' theory that they can collect *post*-judgment interest on a judgment reversed by the Illinois Supreme Court shows the hypocrisy of their *Rooker-Feldman* arguments and is contrary to Illinois law. Plaintiffs should be precluded from having their expert, Thomas Myers, present to the jury their claim for approximately $1.8 billion in post-judgment interest. *See* [708-17] at 3.

The Illinois post-judgment interest statute, 735 ILCS 5/2-1303, does not allow post-judgment interest on a reversed or vacated judgment. Under the Illinois statute, post-judgment interest accrues only on valid and actually "recovered" judgments, not on theoretical judgments that merely "should have been recovered." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 411 (Ill. 2006). In *Tri-G*, a legal malpractice case, the Illinois Supreme Court refused to award post-judgment interest dating back to the judgment that the plaintiff hypothetically should have won, but for the defendant attorneys' negligence. *See id.* The Court held that the relevant date for post-judgment interest was not the date of the "purported, hypothetical judgment," but the date judgment was entered on the plaintiff's malpractice claim, "which was the only judgment rendered in this [case]." *Id.* Thus, under the Illinois statute, no post-judgment interest could begin to accrue in this case unless and until there is a final judgment

in favor of Plaintiffs.[12] There can be no post-judgment interest dating back to the reversed $1.05 billion *Avery* judgment because that judgment will never be reinstated and, indeed, Plaintiffs claim they do not seek its reinstatement. *See Needham v. White Labs., Inc.*, 847 F.2d 355, 361 (7th Cir. 1988) (under the Illinois post-judgment interest statute, where a judgment was "set aside, the case was retried, and a new judgment was entered, albeit one identical in amount to the old judgment," post-judgment interest could not be awarded from the date of the old judgment).

Moreover, contrary to Plaintiffs' contentions ([861] at 2), post-judgment interest is not "by way of damages." *People ex rel. Farwell v. Kelly*, 13 N.E.2d 181, 182 (Ill. 1938). "The right to judgment interest, apart from contract, 'does not emanate from the controversy, or from the judgment, or from anything of a judicial nature'…. It is purely statutory." *Tri-G*, 856 N.E.2d at 411 (citation omitted). Thus, in *Tri-G*, the Illinois Supreme Court expressly rejected the plaintiff's contention that post-judgment interest constituted "compensatory damages." *Id.*; *see also Blaine v. City of Chicago*, 8 N.E.2d 939, 941 (Ill. 1937) (post-judgment interest is not part of the judgment, but compensates delayed payment of a "final judgment").

Accordingly, post-judgment interest under the Illinois statute "is directly connected to the enforcement of the judgment, preventing the judgment debtor from benefitting from retention of the money judgment and providing the judgment debtor an incentive to pay the judgment promptly." *Eclipse Mfg. Co. v. U.S. Compliance Co.*, 886 N.E.2d 349, 361 (Ill. App. Ct. 2007). Plaintiffs have cited no case in which "post-judgment" interest was applied to a reversed, never-reinstated judgment as part of compensatory damages, or in which a court granted post-judgment interest on a judgment from another court in a different litigation.

Furthermore, post-judgment interest would be a matter of law for the Court to determine, whether under Illinois law or under federal law (which properly governs in this case), and not a matter that "must be ascertained by a jury." *Blaine*, 8 N.E.2d at 941; *see also*, *e.g.*, *Illinois State Toll Highway Auth. v. Heritage Standard Bank & Trust Co.*, 626 N.E.2d 213, 221 (Ill. 1993)

---

[12] Likewise, under the relevant federal statute, postjudgment interest could only be awarded on a judgment "recovered in [this] district court." *See* 28 U.S.C. § 1961(a).

(trial court was required "'to ascertain the interest accruing upon the verdict, and include it in the judgment"); *Poliszczuk v. Winkler*, 962 N.E.2d 610, 612, 614-15 (Ill. App. Ct. 2011) (reviewing trial court's determination as to accrual dates for post-judgment interest for abuse of discretion).

Plaintiffs have cited no case in which an expert was allowed to testify before a jury on issues regarding post-judgment interest. To the contrary, in the rare cases where a party attempts to proffer an expert on this subject, courts exclude the testimony. *See, e.g.*, *BP Prod. N. Am. Inc. v. Int'l Maint. Corp.*, 2005 WL 5976553, at *5 (S.D. Tex. May 27, 2005) (Atlas, J.) ("challenge to [expert]'s proffered opinion regarding pre-and post-judgment interest [was] well-taken;" "[t]he applicable interest rate is a question of law…determined in accordance with the Federal statute."). In sum, issues of post-judgment interest, as well as prejudgment interest and trebling, should be resolved by the Court through post-trial motions.

Dated:  August 21, 2018

Respectfully submitted,
*/s/ Ronald S. Safer*

| | | |
|---|---|---|
| Michael P. Kenny | Patrick D. Cloud, #06282672 | Ronald S. Safer #6186143 |
| ALSTON & BIRD LLP | HEYL, ROYSTER, VOELKER | RILEY SAFER HOLMES & |
| One Atlantic Center | & ALLEN | CANCILA LLP |
| 1201 West Peachtree St. | Mark Twain Plaza III, Suite 100 | Three First National Plaza |
| Atlanta, GA 30309 | 105 W. Vandalia St. | 70 W. Madison St., Ste. 2900 |
| | Edwardsville, IL 62025 | Chicago, IL 60602 |
| | | |
| J. Timothy Eaton, | Of Counsel: | |
| #0707341 | Sheila L. Birnbaum | |
| TAFT STETTINIUS & | Douglas W. Dunham | |
| HOLLISTER LLP | Ellen P. Quackenbos | |
| 111 East Wacker | DECHERT LLP | |
| Suite 2800 | Three Bryant Park | |
| Chicago, IL 60601 | 1095 Avenue of the Americas | |
| | New York, New York  10036 | |

*Attorneys for Defendant State Farm Mutual Automobile Company*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of Defendant State Farm Mutual Automobile Insurance Company's Trial Brief was served upon all counsel of record on August 21, 2018, via the Court's CM/ECF system.

Dated: August 21, 2018                              */s/ Ronald S. Safer*