**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

MARK HALE, TODD SHADLE, and
LAURIE LOGER, on behalf of themselves and
all others similarly situated,

        Plaintiffs

        v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, EDWARD
MURNANE, and WILLIAM G. SHEPHERD,

        Defendants.

Case No. 3:12-cv-00660-DRH-SCW

Judge David R. Herndon

Magistrate Judge Stephen C. Williams

## PLAINTIFFS' TRIAL BRIEF

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I. Because Of The Nature Of This Rico Conspiracy Numerous Documents Are Admissible Pursuant To Fed. R. Evid. 801(d)(2)(e) ........................................ 2

II. The *Noerr-Pennington* Doctrine Is Inapplicable To This Case As A Matter Of Law ..................................................................................................................... 9

    A. The *Noerr-Pennington* Doctrine Protects Only A "Petition For Redress Of Grievances," Not State Farm's Arguments In Opposition To Such A Petition .................................................................................................... 9

    B. Even If *Noerr-Pennington* Could Apply To State Farm's Opposition Filings, The Doctrine Does Not Protect State Farm If Plaintiffs Prove The Sham Liability Exception By A Preponderance Of The Evidence .................... 12

III. The Statute Of Limitations Did Not Begin To Run Until Plaintiffs Discovered Both Their Injury *And* The Identity Of Their Injurer In 2011 ......................... 13

IV. Wojcieszak Was Not An "Agent" Of The *Hale* Plaintiffs From 2006 Through 2013 .................................................................................................................... 14

    A. State Farm Must Establish Wojcieszak As An Agent Of The *Hale* Plaintiffs For Each Matter ................................................................................. 15

        1. Express Authority ....................................................................... 16

        2. Apparent Authority ..................................................................... 17

    B. If Wojcieszak Is Deemed An Agent, State Farm Must Establish Three Requirements Under FRE 802(d)(2)(D) ............................................................ 17

V. State Farm's Statements About Its Political Activities, Contributions, And Civil Justice Reform Efforts Are Admissible Under The Fed. R. Evid. 803(6) "Business Records" Exception To The Hearsay Rule .......................................... 19

VI. Plaintiffs Can Introduce Deposition Testimony Of A State Farm Agent Or Co-Conspirator Even If The Witness Is Available To Testify At Trial ..................... 21

VII. State Farm Continues To Make What Plaintiffs Regard As Improper Evidentiary Objections .......................................................................................................... 23

VIII. Mark Covington's Testimony Should Be Excluded Because He Is Not A Party, And His Deposition Testimony Is Inadmissible Hearsay ................................... 24

IX. Current State Farm Policy Holders Should Be Excluded From Serving On This Jury ..................................................................................................................... 26

CONCLUSION ..................................................................................................... 27

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aliotta v. Nat'l R.R. Passenger Corp.*,
   315 F.3d 756 (7th Cir. 2003) ................................................................. 17

*Angelo v. Armstrong World Industs., Inc.*,
   11 F.3d 957 (10th Cir. 1993) ................................................................. 22

*Bourjaily v. United States*,
   483 U.S. 171 (1987)................................................................................. 3

*Buck's, Inc. v. Buc-ee's*,
   No. 8:08CV519, 2009 WL 1839007 (D. Neb. June 25, 2009) ................ 10

*Cancer Found., Inc. v Cerberus Capital Mgmt., LP*,
   559 F.3d 671 (7th Cir. 2009) ................................................................. 13

*Cardtoons, L.C. v. Major League Baseball Player's Ass'n*,
   208 F.3d 885 (10th Cir. 2000) ............................................................... 10

*Cebula v. General Elec. Co.*,
   614 F. Supp. 260 (D.C.Ill.1985) ............................................................ 19

*Coates v. Johnson & Johnson*,
   756 F.2d 524 (7th Cir. 1985) ................................................................. 20

*Coleman v. Wilson*,
   912 F. Supp. 1282 (E.D. Cal. 1995) ...................................................... 22

*Crawford v. Washington*,
   541 U.S. 36 (2004)................................................................................. 21

*Daughtry v. City of N.Y.*,
   No. 12-CV-2655 (NGG)(RER), 2015 WL 2454115 (E.D.N.Y. Feb. 23, 2015)...................... 25

*Fitzpatrick v. City of Fort Wayne*,
   259 F.R.D. 357 (N.D. Ind. 2009)............................................................ 25

*Freeman v. Lasky, Haas & Cohler*,
   401 F.3d 1180 (9th Cir. 2005) ............................................................... 11

*GTE Prods. Corp. v. Gee*,
   115 F.R.D. 67 (D. Mass. 1987) .............................................................. 22

*Hill v. Spiegel, Inc.*,
   708 F.2d 233 (6th Cir.1983) .................................................................. 18

*In re Hayes Lemmerz Int'l, Inc.*,
   340 B.R. 461 (Bankr. D. Del. 2006) ....................................................... 22

**TABLE OF AUTHORITIES**
**(continued)**

Page

*International Brotherhood of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris, et al.*,
  196 F.3d 818 (7th Cir. 1999) ................................................................ 10

*Jackson v. Local Union No. 211 of United Steel*,
  No. CV-07-JEO-0461-S, 2009 WL 10704345 (N.D. Ala. Nov. 2, 2009) ................ 25

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
  610 F.3d 382 (7th Cir. 2010) ................................................................ 13

*Kugler v. LexisNexis Occupational Health Sols., Inc.*,
  16 F. Supp. 3d 999 (E.D. Wis. 2014)........................................................ 15

*Leon v. Penn Central Co.*,
  428 F.2d 528 (7th Cir. 1970) ................................................................ 20

*Litton Sys., Inc. v. Am. Tel. & Tel. Co.*,
  700 F.2d 785 (2d Cir. 1983) ................................................................ 12

*Long Island Svgs. Bank, FSB v. U.S.*,
  63 Fed. Cl. 157 (2004) ...................................................................... 22

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
  708 F.2d 1081 (7th Cir. 1983) .............................................................. 13

*Mercatus Group LLC v. Lake Forest Hospital*,
  641 F3d 834 (7th Cir. 2011) ................................................................ 11

*Mister v. Ne. Illinois Commuter R.R. Corp.*,
  571 F.3d 696 (7th Cir. 2009) ................................................................ 17

*Ortiz v. Werner Enterpr., Inc.*,
  834 F.3d 760 (7th Cir. 2016) ................................................................. 3

*Palmer v. Hoffman*,
  318 U.S. 109 (1943)..................................................................... 20, 21

*Powell v. Collier Constr., L.L.C.*,
  No. Civ. A. 03-0707, 2005 WL 2429245 (W.D. La. Sept. 30, 2005)..................... 25

*Raney v. Allstate Insurance Co.*,
  370 F.3d 1086 (11th Cir. 2004) ............................................................ 12

*Shirokov v. Dunlap, Grubb & Weaver, PLLC*,
  No. CIV.A. 10-12043-GAO, 2012 WL 1065578 (D. Mass. Mar. 27, 2012)............... 10

*Smith v. Bray*,
  681 F.3d 888 (7th Cir. 2012) ................................................................. 3

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp.*,
    15 F.3d 1427 (7th Cir. 1994) ........................................................................... 13

*Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*,
    376 F.3d 664 (7th Cir. 2004) ............................................................... 15, 16, 17

*Staheli v. Univ. of Mississippi*,
    854 F.2d 121 (5th Cir.1988) ............................................................................. 18

*Tallarico v. Trans World Airlines, Inc.*,
    881 F.2d 566 (8th Cir.1989) ............................................................................. 18

*Thompson v. Queen City, Inc.*,
    No. Civ. A. 2002359-18, 2002 WL 32345733 (D.S.C. July 9, 2002) ................... 25

*U.S. v. Cameron*,
    699 F.3d 621 (1st Cir. 2012) ...................................................................... 20, 21

*U.S. v. Keplinger*,
    776 F.2d 678 (7th Cir. 1985) .......................................................................... 20

*United States v. Arrellano*,
    757 F.3d. 623 (7th Cir. 2014) ............................................................................. 4

*United States v. Cox*,
    923 F.2d 519 (7th Cir. 1991) .............................................................................. 3

*United States v. Cruz-Rea*,
    626 F.3d 929 (7th Cir. 2010) .............................................................................. 4

*United States v. Elder*,
    840 F.3d 455 (7th Cir. 2016) .............................................................................. 4

*United States v. Ferra*,
    900 F.2d 1057 (7th Cir. 1990) ............................................................................ 3

*United States v. Int'l Bus. Mach. Corp.*,
    90 F.R.D. 377 (S.D.N.Y. 1981) ......................................................................... 22

*United States v. Johnson*,
    927 F.2d 999 (7th Cir. 1991) .............................................................................. 3

*United States v. Kaden*,
    819 F.2d 813 (7th Cir. 1987) .............................................................................. 4

*United States v. Potts*,
    840 F.2d 368 (7th Cir. 1987) .............................................................................. 4

*United States v. Pust*,
    798 F.3d 597 (7th Cir. 2015) .............................................................................. 4

## TABLE OF AUTHORITIES
### (continued)

Page

*United States v. Santos*,
   20 F.3d 280 (7th Cir. 1994) ................................................................. 3

*United States v. Shoffner*,
   No. 4:13CR00158, 2014 WL 1494134 (E.D. Ark., Apr. 15, 2014) ......................... 3

*United States v. Smith*,
   746 F.2d 1183 (6th Cir. 1985) ............................................................. 25

*Warnock v. State Farm Mut. Automobile Ins. Co.*,
   No. 5:08CV01-DCB-JMR, 2008 WL 4594129 (S.D. Miss. Oct. 14, 2008) ............... 10

*Wilk v. American Medical Association*,
   719 F.3d 207 (7th Cir. 1983) ............................................................. 11

*Wright v. DeArmond*,
   977 F.2d 339 (7th Cir. 1992) ............................................................. 11

**Rules**

Fed. R. Civ. P. 32(a)(1) ...................................................................... 24

Fed. R. Civ. P. 32(a)(4) ................................................................. 21, 24

Fed. R. Evid. 104(a) .......................................................................... 3

Fed. R. Evid. 801 advisory committee note, 1972 Proposed Rules ........................ 18

Fed. R. Evid. 801(d)(2)(A) .............................................................. 21, 25

Fed. R. Evid. 801(d)(2)(D) ...................................................... 17, 18, 21, 22

Fed. R. Evid. 801(d)(2)(E) .................................................... 3, 9, 21, 23

Fed. R. Evid. 803(6) ......................................................................... 19

**Other Authorities**

58 Am.Jur. Proof of Facts 3d 395 (Originally published in 2000) ........................ 26

5–803 Weinstein's Federal Evidence § 803.08[1] (2d ed. 1997-present) .................... 20

RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006) ......................................... 15

## INTRODUCTION

Trial in this matter is set to begin on September 4, 2018.  Plaintiffs seek relief under the Racketeer Influenced Corrupt Organizations Act, or RICO, pursuant to 18 U.S.C. §§ 1962(c) and (d).  Plaintiffs allege that State Farm sought to reverse a billion dollar judgment pending against it in the Illinois Supreme Court by engaging in a scheme to defraud the class members who had obtained that judgment.  In the process State Farm and its co-conspirators undermined the integrity of the Illinois Supreme Court because the scheme depended on State Farm falsely denying to the Court that it had substantial connections to the Karmeier campaign and had given substantial monies to it.  Only with such denials could Justice Karmeier participate in the *Avery* case then pending before the Illinois Supreme Court.

The RICO conspiracy proved successful.  Not only did Justice Karmeier participate in the *Avery* case, but he "broke the deadlock" that would otherwise have resulted in an affirmance of the $1.056 billion judgment in favor of the class members.

By this case, *Hale* Plaintiffs seek to prove that Defendants State Farm, Ed Murnane and William Shepherd engaged in a RICO conspiracy and advanced that conspiracy through the use of the United States mail.  These Defendants conspired among themselves and with others to taint the Illinois Supreme Court and fraudulently deprived these *Hale* Plaintiffs of the $1.056 billion judgment.

## ARGUMENT

I.   **Because Of The Nature Of This Rico Conspiracy Numerous Documents Are Admissible Pursuant To Fed. R. Evid. 801(d)(2)(e)**

Plaintiffs have alleged a RICO conspiracy and have identified the conspirators as the named Defendants as well as the following unnamed defendants:  the Illinois Civil Justice League, headed by Defendant Ed Murnane; JUSTPAC, the political action committee of the ICJL, also headed by Defendant Ed Murnane; the US Chamber of Commerce, as well as the US Chamber's Institute of Legal Reform, including the US Chamber's President Tom Donohue and the ILR's President Lisa Rickard and Rob Engstrom; the Illinois Chamber of Commerce; the American Tort Reform Association, including its President Sherman "Tiger" Joyce; the Illinois Business Roundtable, including its President Jeffrey Mays; the Civil Justice Reform Group; the Illinois Jobs Coalition; Citizens for Karmeier,[1] including David Leuchtefeld, its chairman, Dwight Kay, its finance chairman, Al Adomite, a key member of Citizens for Karmeier on assignment from the ICJL, and Cliff Pintak, another key member of Citizens for Karmeier and paid media consultant to the campaign and to ICJL; as well as Ed Rust, the CEO of Defendant State Farm during the relevant time period.

Plaintiffs allege that the conspiracy had several goals, the three most important of which were: 1) to elect Justice Karmeier by funding his campaign so that he could participate in the *Avery* appeal; 2) to allow State Farm to provide the overwhelming majority of the funding for the campaign while concealing the fact of its funding from the public; and 3) to enable State Farm to falsely deny its role in funding the campaign so that Justice Karmeier could participate in deciding *Avery* in the Illinois Supreme Court if he were elected.

---

[1] Citizens for Karmeier was previously named as a defendant in the original Complaint in this case but was subsequently dropped from the lawsuit because Citizens for Karmeier is no longer a viable legal entity.

Federal Rule of Evidence 801(d)(2)(E) provides that a statement offered against a party is not hearsay if the statement was "made by the party's coconspirator during and in furtherance of the conspiracy."  Plaintiffs bear the burden of proving by a preponderance of the evidence that statements offered pursuant to Fed. R. Evid. 801(d)(2)(E) were made by individuals or entities who were members of the same conspiracy as the Defendants and were made in furtherance of the conspiracy.  The Court decides whether the Plaintiffs have met their burden pursuant to Fed. R. Evid. 104(a).  *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

The Seventh Circuit has indicated that when a party in a criminal action seeks to rely on coconspirator statements it is advisable for a district court to require a party to state what it believes the evidence will be and decide whether that is sufficient, *United States v. Ferra*, 900 F.2d 1057, 1059 (7th Cir. 1990), which the Seventh Circuit has described as a preview of the evidence.  *United States v. Shoffner*, No. 4:13CR00158, 2014 WL 1494134 (E.D. Ark., Apr. 15, 2014); *see also United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991).  The Seventh Circuit has also held that the coconspirator rule "encompasses a broad definition that goes well beyond the more confined concept of criminal conspiracy" and includes any "joint venture or concerted action."  *Smith v. Bray*, 681 F.3d 888, 904 (7th Cir. 2012) *rev'd on other grds.*, *Ortiz v. Werner Enterpr., Inc.*, 834 F.3d 760 (7th Cir. 2016).

Additionally, while the statements must be made in furtherance of the conspiracy, the Seventh Circuit has taken an expansive approach to this issue, admitting any statement that is "part of the information flow between conspirators intended to help each perform his role."  *United States v. Santos*, 20 F.3d 280, 286 (7th Cir. 1994) (quoting *United States v. Johnson*, 927 F.2d 999, 1002 (7th Cir. 1991)).  Further, statements that keep coconspirators advised as to the progress of the conspiracy are in furtherance of that conspiracy, *United States v. Potts*, 840 F.2d

368, 371 (7th Cir. 1987), and statements made to conceal the objectives of the conspiracy are made in furtherance of the conspiracy.  *United States v. Kaden*, 819 F.2d 813, 820 (7th Cir. 1987).  A coconspirator's statement may satisfy the "in furtherance" requirement "even if the statement was not 'exclusively, or even primarily, made to further the conspiracy.'"  *United States v. Elder*, 840 F.3d 455, 459 (7th Cir. 2016) (quoting *United States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010)).  In *Elder*, for example, the Seventh Circuit referenced the "number of ways" that statements can further a conspiracy, and found sufficient statements that are part of the "ordinary 'information flow'" among conspirators designed to "help each perform his role."  *Elder*, 840 F.3d at 459 (citing *United States v. Alviar*, 573 F.3d 526, 545 (7th Cir. 2009)).  In *United States v. Pust*, 798 F.3d 597, 603 (7th Cir. 2015), the Seventh Circuit recognized email correspondence between a wire-fraud defendant and his coconspirators as circumstantial evidence of the existence of the conspiracy and the defendant's participation in it.  *See also United States v. Arrellano*, 757 F.3d. 623 (7th Cir. 2014) (use of phone calls to and from a cell phone help demonstrate participation in conspiracy).

Plaintiffs submit the Statement of Facts contained in their Opposition to State Farm Mutual Insurance Company's Motion for Summary Judgment on Plaintiffs' RICO Claims [842] as their evidentiary proffer.  842 at 2-23.  This proffer is sufficient for the Court to conditionally admit statements of the alleged coconspirators against the named Defendants.  What follows is meant as a summary of that proffer:

This case involves an intricate web of relationships that Defendants exploited to advance the essential goal of this conspiracy to overturn the *Avery* judgment pending in the Illinois Supreme Court.  First, there was the relationship between and among Defendants:  Ed Murnane headed the Illinois Civil Justice League and JUSTPAC; William Shepherd, a State Farm

- 4 -

lobbyist, served on ICJL's Executive Committee during the relevant time frame, and helped determine Murnane's compensation and set the goals and priorities of the organization, which was instrumental in all aspects of the Karmeier campaign.

As President of ICJL and JUSTPAC, Ed Murnane reported to and took orders from the ICJL Executive Committee.  The Executive Committee authorized his activities with respect to the Karmeier campaign, including the task of recruiting then-Judge Karmeier to run for the open seat on the Illinois Supreme Court.  (PA0008; PA0017-27, PA1240-42; PA1246-51; PA1253-58).[2]

The ICJL, which consisted solely of Ed Murnane at its conception, was created by the Illinois Business Roundtable (IBRT), which also served on ICJL's Executive Committee (ICJL0013).  State Farm's Chief Executive Officer, Ed Rust, was central to the IBRT, as he served on its Executive Committee, as well as Emeritus Chairman, during the relevant time period.  While at the helm of the Board of Directors for IBRT in 2003, Ed Rust received a memo from Ed Murnane, regarding how "costly" the effort to elect Judge Karmeier will be (IBR0106-107).  According to Ed Rust, IBRT "rose to the challenge" and contributed "hundreds of thousands of dollars" to get Justice Karmeier elected."  (IBR0103).

The Illinois Chamber of Commerce ("ILCC"), with State Farm's Peggy Echols on the board of directors, was a willing participant in the conspiracy as a pass-through for funding of Karmeier campaign monies.  In an email to the U.S. Chamber's Rob Engstrom regarding how much the U.S. Chamber can give without disclosing itself or its donors, Ed Murnane confirmed that the ILCC and others are serving as a conduit for campaign donations when he stated:

---

[2] These documents, as well as all other documents referenced in this summary proffer, are attached hereto and combined into a single Exhibit 1.

The yellow highlighted section shows major sources of funding we are anticipating. You'll note that there are several from ATRA; they are funds coming from various sources to ATRA which we expect to be passed on to JUSTPAC. Similarly, Illinois State Medical Society is making two separate contributions (one may be from the ISMS Insurance Exchange). *The Illinois Chamber contributions are from sources that are being paid to the Illinois Chamber for the purpose of forwarding them to JUSTPAC.* Same situation is true with the Illinois Jobs Coalition." (Murnane000937) (emphasis added).

State Farm was one of the few contributors who spent over $150,000.00 to The Coalition of Jobs, Growth and Prosperity ("Illinois Jobs Coalition"), an Illinois group that supported Justice Karmeier's election effort by directly spending money on more than half a million mailers in support of the Karmeier campaign effort as well as funneling money from its donors to the ICJL. Ed Murnane served as a Board member of that group; Bill Shepherd was also a founding member of the Jobs Coalition.

Beyond these Illinois relationships, Ed Rust was also close to Tom Donohue, the President of the US Chamber of Commerce. Mr. Rust served on the President's Advisory Group of the US Chamber of Commerce, and helped create the US Chamber's Institute for Legal Reform, a group focused on funding judicial candidates and that steered millions of dollars to Karmeier's election campaign. Not only did State Farm's Ed Rust serve on ILR's Board of Directors during the relevant time period, State Farm officials also served on other ILR committees, including the ILR's Election Task Force with specific focus on the 2004 election in Illinois, as well as the ILR's Audit Committee.

The US Chamber's President Tom Donohue "managed" and "was the principal person dealing with senior folks … at State Farm". Donohue Dep., 107: 3-21. State Farm was one of nine "original members of the [US Chamber's] President's Advisory Group". *Id* at 130:24-133:5. Not surprisingly, after State Farm gave $2 million to the ILR in 2003 and 2004, the notes from a Rust-Donohue meeting in February of 2004 indicate that Rust asked Donohue "[**t**]**o keep**

**an eye on their Supreme court case in IL**.”  (USCC 4471) (emphasis in original).  Further and not long after *Avery* was overturned, Ed Rust, in apparent appreciation for the US Chamber's assistance in getting *Avery* overturned, finally confirmed his commitment to give an additional $5 million donation to the Chamber's "War Chest" (USCC003287, 92), something Rust and Donohue had been discussing since December of 2003, after then-Judge Karmeier was recruited and the Karmeier campaign effort was in full swing. (USCC03045 and 04403).

Watching over all these tightly woven connections was the Civil Justice Reform Group ("CJRG"), of which State Farm was not only a steering committee member and co-chair, but served on the operating committee as well.  During 2001-2006, the CJRG was a group of general counsel that served as a "brain trust" whose members played leadership roles in other key reform groups and were positioned to ensure that activities like the Karmeier campaign were well coordinated.(PA0710-12). State Farm's general counsel Kim Brunner was co-chair of the Steering committee of the CJRG, and State Farm's Herman Brandau was co-chair of the specific Illinois Subcommittee (PA 1771) and William Shepherd and Steve McManus were members (PA0715), working closely with Ed Murnane in that capacity during the Karmeier candidacy. (PA0716-17).

The American Tort Reform Association ("ATRA") also was a key player in the conspiracy by funneling monies to ICJL/JUSTPAC and others. (Sherman Joyce Dep. at 34:20-25).  State Farm's Dave Hill served on the Board of Directors of ATRA, as did Ed Murnane .(*Id*. at 52:22-53:5).  Importantly, and in fundraising coordination, Ed Murnane wrote to Matt Fullenbaum of ATRA that for donors who would rather not be disclosed, they could donate through the ICJL, saying: "We're not discouraging contributions to Citizens for Karmeier but there are some other options for donors who might not want to be too visible. JUSTPAC already

is the largest contributor to Citizens for Karmeier ($43,000 so far) and I suspect we will continue to be so contributors can rest assured that their contribution will get where they want it." (ATRA0056).  ATRA did not just contribute election cycle funds to JUSTPAC, it also was the funnel for $100,000 to the Illinois Chamber of Commerce. (ATRA00009).

These conspirators not only contributed monies to the Karmeier campaign, but they did so in ways that allowed all of State Farm's massive contributions to remain hidden from election authorities. (ATRA0056, Murnane000890, Murnane00937, Murnane Depo at 244:3-22). Indeed, in 2001, Tom Donohue marketed the US Chamber as a way to help elect friendly judges without disclosing corporate involvement. (Donohue Depo., Ex. 12 -*Wall Street Journal* article, 09/11/2001.  Likewise, the Jobs Coalition told its members that it would raise money for the election effort through JUSTPAC such that donors would not be disclosed. (PA1962-63). The ultimate goal of the conspiracy – the reversal of the *Avery* judgment – could only be effective if State Farm's contributions were not made public  .After all, if State Farm's massive contributions were publicly recorded, then Justice Karmeier would have had to recuse himself from participating in *Avery*.  As such, these organizations furthered the conspiracy by allowing State Farm's "dark money" to influence the election.  If State Farm's campaign contributions could remain under the table, the reasoning went that Justice Karmeier would not have to recuse himself from participating in the *Avery* case.

As evidence supporting the conspiracy, Plaintiffs also intend to introduce phone logs. For example, between August 1, 2003, when Judge Karmeier first committed to run for the open seat, and November 4, 2004, the day after the 2004 judicial election, there were 208 phone calls between State Farm and members of the Karmeier Campaign Committee, which included Ed Murnane; there were 183 phone calls between State Farm and the ICJL; there were 242 phone

calls between State Farm and the US Chamber; there were 203 phone calls between State Farm and the IBRT.

Because Murnane conspired with State Farm, Murnane's statements are admissible against State Farm.  Moreover, because State Farm conspired with other groups such as the US Chamber, the Chamber's Institute for Legal Reform, IL Chamber of Commerce, CJRG, ATRA, and the Illinois Jobs Coalition, the statements of these organizations are also admissible against Defendants under FRE 801(d)(2)(E).

*                         *                         *

Of course, the Court can monitor the Plaintiffs' showing as the trial proceeds.  *United States v. Davis*, 845 F.3d 282, 286 (7th Cir. 2016)  .Plaintiffs submit that there is ample evidence that no later than 2002, the Defendants used the conspiring entities to permit State Farm to make contributions that it intended to be earmarked for the Karmeier campaign to organizations that would see that the State Farm contributions reached their target while concealing the fact that the money actually originated from State Farm.  As a result, Plaintiffs submit that any communications among the coconspirators that enabled them to recruit Justice Karmeier, receive State Farm payments, deliver those payments to the Karmeier campaign, conceal the origination of the payments from State Farm, and misrepresent State Farm's role in electing Justice Karmeier are admissible under Rule 801(d)(2)(E).

**II.      The *Noerr-Pennington* Doctrine Is Inapplicable To This Case As A Matter Of Law**

**A.      The *Noerr-Pennington* Doctrine Protects Only A "Petition For Redress Of Grievances," Not State Farm's Arguments In Opposition To Such A Petition**

The *Noerr-Pennington* doctrine originated in antitrust law, and rests—at least in part— "on a statutory interpretation of the Sherman Act that limits the scope of the Act so as to not reach activity associated with the political process."  *Shirokov v. Dunlap, Grubb & Weaver,*

*PLLC*, No. CIV.A. 10-12043-GAO, 2012 WL 1065578, at *20 (D. Mass. Mar. 27, 2012).  There

is, therefore, "some debate . . . as to whether the *Noerr-Pennington* doctrine applies outside of

the antitrust field," *id.* at 19, and a number of courts have refused to extend the doctrine in other

contexts.  *See, e.g.*, *Warnock v. State Farm Mut. Automobile Ins. Co.*, No. 5:08CV01-DCB-JMR,

2008 WL 4594129, at *8-9 (S.D. Miss. Oct. 14, 2008) (Noting that "[t]he doctrine originated in

the antitrust complex and has been applied with restraint since its beginning" and holding that

the "defendants' argument that the *Noerr-Pennington* doctrine applies to this RICO action is not

well-taken."); *Buck's, Inc. v. Buc-ee's*, No. 8:08CV519, 2009 WL 1839007, at *9 (D. Neb. June

25, 2009) ("As no precedent exists to apply the doctrine [to a non-antitrust case], the court finds

the defendant's argument for the application of *Noerr-Pennington* doctrine to be without

merit."); *see also Cardtoons, L.C. v. Major League Baseball Player's Ass'n*, 208 F.3d 885, 889-

90 (10th Cir. 2000) ("[I]t is more appropriate to refer to immunity as *Noerr-Pennington*

immunity only when applied to antitrust claims.  In all other contexts . . . such immunity derives

from the [constitutional] right to petition. . . .  Antitrust cases that grant *Noerr-Pennington*

immunity do so based upon both the Sherman Act and the right to petition.  These precedents,

founded in part upon a construction of the Sherman Act, are not completely interchangeable with

cases based on the right to petition.")

       While the Seventh Circuit has stated that "[a]lthough the *Noerr-Pennington* doctrine

originated in antitrust law, its rationale is equally applicable to RICO suits", *International*

*Brotherhood of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris, et al.*,

196 F.3d 818, 826 (7th Cir. 1999), the Seventh Circuit has never held that the doctrine applies to

an opposition pleading.  Indeed, the court has made clear that *Noerr-Pennington* protects only a

party's petition "for the redress of grievances," and not—as Defendants' posit here—to State

Farm's *opposition* to the *Avery* plaintiffs' redress of grievances.  *Mercatus Group LLC v. Lake
Forest Hospital*, 641 F3d 834, 838 (7th Cir. 2011); *see also Wilk v. American Medical
Association*, 719 F.3d 207, 229 (7th Cir. 1983) ("The *Noerr-Pennington* doctrine extends
protection to businesses and other associations when they join together to petition legislative
bodies, administrative agencies, or courts for action that may have anticompetitive effects.");
*Wright v. DeArmond*, 977 F.2d 339, 348-9 (7th Cir. 1992) ("As the Court emphasized in *Noerr*,
the doctrine is grounded in the concern that applying the antitrust laws to attempts to influence
governmental action would deprive business entities of an opportunity to participate in a
legitimate effort to obtain a favorable change in the law from those governmental bodies with the
authority to make such changes.").  The predicate acts of mail fraud underlying Plaintiffs' RICO
claims reflect State Farm's efforts to deny Plaintiffs' request for redress and are not properly
construed as "a petition . . . for action that may have anticompetitive effects" or a "legitimate
effort to obtain a favorable change in the law."  *See Wilk*, 719 F.3d at 229; *Wright*, 977 F.2d at
349.  Those acts, therefore, are not protected by the *Noerr-Pennington* doctrine as a matter of
law.

One appellate court has found that the doctrine applies to defensive pleadings.  *See
Freeman v. Lasky, Haas & Cohler*, 401 F.3d 1180, 1184 (9th Cir. 2005).  This reading of *Noerr-
Pennington* is fundamentally at odds with the purpose of the doctrine, which is to protect
petitioning activity.  Application of *Noerr-Pennington* to the defensive pleadings at issue here
would be a wildly expansive view of the doctrine that cannot be reconciled with its origins and
purpose.  If State Farm's defensive filings are protected under *Noerr-Pennington*, then it would
seem that anything filed in court by a party would be deemed protected by the First Amendment
right to petition government.  So, for example, courts would be limited in their ability to punish

vexatious litigants or to impose sanctions for vexatiously multiplying proceedings because all of that would be seen as petitioning government.

*Noerr-Pennington* is primarily an antitrust doctrine and applies only where the filing can be seen as petitioning government for a redress of grievances.  It should have no applicability here.

**B.      Even If *Noerr-Pennington* Could Apply To State Farm's Opposition Filings, The Doctrine Does Not Protect State Farm If Plaintiffs Prove The Sham Liability Exception By A Preponderance Of The Evidence**

State Farm does not dispute that its briefs in the Illinois Supreme Court are not protected by the First Amendment and may constitute mail fraud if they contain a misrepresentation that was (1) intentionally made, with knowledge of its falsity, and (2) was material, in the sense that it actually altered the outcome of the proceeding.  *See* State Farm's Proposed Jury Instructions on *Noerr-Pennington*; *Raney v. Allstate Insurance Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004) (the *Noerr-Pennington* doctrine does not apply if there is "an intent to deceive the victim.").  State Farm contends that Plaintiffs must prove the so-called sham liability exception by clear and convincing evidence.  The better reasoned authority, however, holds that the burden of proof is merely a preponderance of the evidence.  In *Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785 (2d Cir. 1983), for example, the Second Circuit rejected the defendant's argument that "the sham exception should be subject to the higher standard of clear and convincing evidence" because "by requiring a plaintiff to prove that a defendant's conduct was a sham, the Supreme Court has already struck a rough balance between the competing First Amendment and antitrust interests." *Id*. at 813.  Thus, the court found "no reason to impose any higher burden of proof on the antitrust plaintiff asserting sham than would ordinarily be applicable in any civil issue" and affirmed a jury instruction holding that such a sham need be proved only by a preponderance of the evidence.  *Id*. at 813-814.  The one Seventh Circuit case that State Farm cites for the contrary

position mentioned the burden of proof issue only in passing and did not involve arguments that

a lesser standard applied.  *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1155

(7th Cir. 1983) (holding only that the district court's instructions correctly explained the doctrine

and the exception from it).  *MCI* does not justify the burden State Farm seeks to impose here, and

the rationale articulated in *Litton* should control.

### III.      The Statute Of Limitations Did Not Begin To Run Until Plaintiffs Discovered Both Their Injury *And* The Identity Of Their Injurer In 2011

The parties agree that the RICO statute of limitations does not run until a plaintiff

discovers the identity of his injurer.  Indeed, both sides' proposed jury instructions make this

point clear.  *See* State Farm's Proposed Jury Instructions at [need final submission]; Plaintiffs'

Proposed Jury Instructions at 13, 15.  So do this Court's orders.  *See* [846] at 18 (the statute of

limitations did not begin to run until September 19, 2011, when State Farm's brief "revealed the

identity of the injurers (defendants).");  [67] at 20-23.  This is well established law.  *Jay E.*

*Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386 (7th Cir. 2010) (The statute of

limitations "starts running when the prospective plaintiff discovers (or should if diligent have

discovered) ***both*** *the injury that gives rise to his claim **and** the injurer* or (in this case) injurers.")

(emphasis added); *Cancer Found., Inc. v Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th

Cir. 2009) (RICO statute of limitations "begins to run when the plaintiffs discover, or should, if

diligent, have discovered, that they had been injured ***by the defendants***.") (emphasis added).  The

Seventh Circuit has also confirmed that courts "cannot apply statute of limitations law in a way

that pressures litigants to file suits based merely on suspicions and fears . . . [because] suspicion

and fear are not sufficient predicates for launching a lawsuit."  *Sokol Crystal Prod., Inc. v. DSC*

*Commc'ns Corp.*, 15 F.3d 1427, 1430 (7th Cir. 1994).

Defendants nevertheless have argued—and are expected to argue at trial—that the statute of limitations began to run in this case in either 2005 or 2006, simply because, according to Defendants, a second RICO predicate act occurred in one of those years. Even assuming *arguendo* that Defendants could prove the briefs mailed in 2005 or 2006 constituted RICO predicate acts and therefore established a pattern of racketeering activity, this alone would not trigger the statute of limitations. This is because, as this Court already concluded, it was not until "State Farm's response to the petition to recall the mandate on September 19, 2011" that State Farm

> [r]evealed the identity of the injurers (defendants) was the second predicate act. In its brief, State Farm disclosed for the first time that its own lawyer and lobbyist, Shepherd, represented State Farm on the ICJL's Executive Committee. This information provided key material connecting the injury to the injurers and allowed plaintiffs to realize defendants' conduct. The ICJL Executive Committee endorsed Justice Karmeier and permitted Murnane and the ICJL to recruit Justice Karmeier, select his campaign team, raise campaign funds, and run his campaign. State Farm's earlier filings did not disclose defendants' extensive roles in orchestrating Justice Karmeier's 2004 election to the Illinois Supreme Court and did not disclose defendants' extensive conduct in concealing/denying these facts to both the Illinois Supreme Court and plaintiffs.

[846] at 18.

Finally, as this Court also concluded, "[a]ssuming *arguendo* that the claims are time barred (which they are not) . . . there are questions of material fact" regarding the equitable estoppel and equitable tolling exceptions to the statute of limitations. *Id.* at 18-20.

## IV. Wojcieszak Was Not An "Agent" Of The *Hale* Plaintiffs From 2006 Through 2013

Defendants have indicated that they intend to argue that because Doug Wojcieszak was employed at various times by Robert A. Clifford, one of *Hale* Plaintiffs' Class Counsel, such that all of Wojcieszak's statements and conduct can somehow be attributed to *Hale* Plaintiffs. This is not the law. Mr. Clifford did not begin work for the *Hale* Plaintiffs until beginning in 2013, and he stopped working for the *Avery* Plaintiffs when the *Avery* mandate issued in February of 2006.

Because Clifford was not working for the *Hale* Plaintiffs for the seven years following the withdrawal of the *Avery* mandate, Wojcieszak's conduct and/or statements during this period cannot be attributed either to Clifford or the *Hale* Plaintiffs.

### A. State Farm Must Establish Wojcieszak As An Agent Of The *Hale* Plaintiffs For Each Matter

Defendants cannot categorically declare Wojcieszak as an agent of the Plaintiffs for all matters. "One may be an agent with respect to some matters but not others; one may be an independent contractor agent or a servant agent; and some agents are actually called agents while most operate under other titles." *Kugler v. LexisNexis Occupational Health Sols., Inc.*, 16 F. Supp. 3d 999, 1002 (E.D. Wis. 2014) (internal citations omitted). For each admission it wishes to use, State Farm must establish Wojcieszak as an agent of the *Hale* Plaintiffs for that matter.

Agency is "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006). Here, Wojcieszak is presumably the agent, and only has the power to act on the principal's behalf (here, *Hale* Plaintiffs) to the extent authorized. Thus, if State Farm wishes to use Wojcieszak's statements against the *Hale* Plaintiffs, it is the acts of the *Hale* Plaintiffs that will determine the scope of Wojcieszak's authority:

> An agent's authority may be either actual or apparent .... *However, [o]nly the alleged principal's words and conduct, not those of the alleged agent, establish the agent's authority.* Finally, the party alleging an agency relationship. . . bears the burden of proving its existence by a preponderance of the evidence.

*Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004) (internal citations omitted) (emphasis added).

- 15 -

State Farm must therefore establish the precise scope of any agency it alleges that Wojcieszak had.  In order for State Farm to establish agency for Wojcieszak, it must satisfy either the test for express or apparent authority.

### 1.     Express Authority

"An agent has express authority when the principal explicitly grants the agent the authority to perform a particular act." *Id.*

Wojcieszak has previously testified about the many engagements that he has had for various law firms, over disparate time frames, and matters (the *Avery* matter, the *Price* tobacco case, attorney Clifford, etc.).  Wojcieszak Dep. at 8:1-7; 16:12-17:20; 26:11- 27:10.  However, Wojcieszak's past work for the *Avery* case cannot be construed as work for the *Hale* Plaintiffs. Since counsel for the *Hale* Plaintiffs were not even retained until 2012, any work done by Wojcieszak between the end of *Avery* (in February of 2006 when the Illinois Supreme Court issued the mandate) and 2012 cannot be based on a grant of express authority for the *Hale* Plaintiffs and thus cannot be used against them in this case.  Express authority can only be granted by a principal, and since the *Hale* Plaintiffs in this case could not have given such authority until 2012, Wojcieszak's work post-*Avery* starting in February 2006 and prior to the *Hale* engagement in 2012 cannot be construed to the *Hale* Plaintiffs.

Although Mr. Clifford hired Wojcieszak to conduct various investigations between 2006 and 2012, none of those investigations is attributable to the *Hale* Plaintiffs because Clifford did not work for the *Hale* Plaintiffs during this time.  Whether Mr. Clifford or any other lawyer gave express authority to Wojcieszak to conduct work during this period simply is not relevant to this lawsuit, and Wojcieszak's statements or conduct during this period cannot in any way be attributable to the *Hale* Plaintiffs or somehow used against them based on some kind of agency relationship.

### 2. **Apparent Authority**

Under Illinois law, the party asserting the existence of apparent authority has to meet a three-part test and show that: (1) the *Hale* Plaintiffs consented to or knowingly acquiesced in Wojcieszak's exercise of authority; (2) based on the actions of the *Hale* Plaintiffs and Wojcieszak, the third person reasonably concluded that Wojcieszak was an agent of the *Hale* Plaintiffs; and (3) the third person justifiably and detrimentally relied on the Wojcieszak's apparent authority. *Sphere Drake*, 376 F.3d at 673. Again, establishing apparent authority is not possible during the period between February of 2006 and 2012.

### B. **If Wojcieszak Is Deemed An Agent, State Farm Must Establish Three Requirements Under FRE 802(d)(2)(D)**

In order for State Farm to use Wojcieszak's testimony as an admission of a party opponent, Federal Rule of Evidence 801(d)(2)(D) "requires that the statement be made by an individual who is an agent, that the statement be made during the period of the agency, and that the matter be within the subject matter of the agency." *Mister v. Ne. Illinois Commuter R.R. Corp.*, 571 F.3d 696, 698 (7th Cir. 2009). Thus, State Farm must establish three requirements under Rule 801(d)(2)(D) in this Circuit. First, State Farm must establish that Wojcieszak is an agent of the *Hale* Plaintiffs during the relevant period. Second, State Farm must show that Wojcieszak's statement was made during the period of the agency. Third, State Farm must show that the matter is within the subject matter of the agency. *Id.*; *see also Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 761–62 (7th Cir. 2003).

First, as set forth above, as to any statements Wojcieszak made, *Hale* Plaintiffs argue that State Farm cannot establish the first required element by a preponderance of the evidence: i.e., that Wojcieszak was an agent of the *Hale* Plaintiffs. Wojcieszak had neither express nor apparent authority of the *Hale* Plaintiffs from 2006 till 2012. Mr. Clifford was not even retained

to represent the *Hale* Plaintiffs until 2013.  As such, State Farm cannot establish the first requirement under FRE 801(d)(2)(D).  Second, Plaintiffs therefore argue that statements made by Wojcieszak after the mandate issued in *Avery* and before the *Hale* Plaintiffs were retained in 2012 are outside the scope of any agency that could be construed to the *Hale* Plaintiffs.  Thus, State Farm cannot establish any Wojcieszak statement during this time as made during the period of agency.  As such, State Farm cannot establish the second required element of FRE 801(d)(2)(D) for the vast majority of Wojcieszak's statements that pre-date the existence of the *Hale* Plaintiffs in 2012.

Third, Rule 801(d)(2)(D) admissions can be made "concerning [any ] matter within the scope of the ... employment."  *See* Fed. R. Evid. 801 advisory committee note, 1972 Proposed Rules (noting that since "few principals employ agents for the purpose of making damaging statements," admissible admissions may be made as to all matters within the scope of the agency or employment and include more than just statements made in circumstances meeting "the usual test of agency").  It is therefore necessary, in order to support admissibility, that the content of the Wojcieszak's statement concerned a matter within the scope of his agency.

Not every act of an agent is within the scope of his employment.  *See Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir.1983); *see, e.g.*, *Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 572 (8th Cir.1989) (In tort suit brought by handicapped minor against airline, trial court did not abuse discretion in refusing to admit derogatory remarks of airline employees as vicarious admissions, where employees were non-management personnel who were not involved in decision to keep minor from boarding aircraft.); *Staheli v. Univ. of Mississippi*, 854 F.2d 121, 127 (5th Cir.1988) (In decision affirming denial of university professor's tenure, proffered testimony of fellow accounting professor was not an admission where accounting professor had

nothing to do with tenure decision and testimony did not concern matter within scope of his agency.); *Cebula v. General Elec. Co.*, 614 F. Supp. 260, 266 (D.C.Ill.1985) (In age discrimination suit against employer, statements of low-level co-workers could not be attributable to employer as admissions, and thus constituted inadmissible hearsay, where plaintiff offered no evidence to suggest that any of the co-workers was involved in the termination decision, or was speaking as to a matter within the scope of their agency or employment.).  Thus, for any admission by Wojcieszak, State Farm must first make a threshold showing that it was within the scope of employment for which Wojcieszak was engaged *by the Hale Plaintiffs*. Absent such a showing, statements of Wojcieszak constitute inadmissible hearsay.

**V.      State Farm's Statements About Its Political Activities, Contributions, And Civil Justice Reform Efforts  Are Admissible Under The Fed. R. Evid. 803(6) "Business Records" Exception To The Hearsay Rule**

State Farm takes the extreme position that its own preserved documents relating to its political activities, contributions and civil justice reform efforts, which were regularly created by its own knowledgeable employees at or near the time the information was transmitted, and were produced in discovery, somehow are not admissible under Fed. R. Evid. 803(6) because the documents do not address what State Farm now claims is its "core" business.  State Farm's argument is both factually and legally untenable.

By its own public statements, State Farm pursues a vast range of regularly conducted political and civil justice reform activities.  State Farm's former CEO, Ed Rust, has unequivocally testified that one such activity is support for tort reform: "We have a long history, as I said, around safety issues, around pursuing tort reform.  We have been involved in numerous referendums, initiatives across the country.  We have been involved in legislative battles in states such as New Jersey, Michigan, West Virginia, New York, Texas, California."  [790] (Rust Dep. at 239-40).  Kim Brunner, State Farm's former General Counsel, has testified that at State Farm,

reporting on such activities to one's superiors is "a regular responsibility which goes with the territory." [790] (Brunner Dep. at 208-09). State Farm's own documentation establishes that very fact. *See* [790] at 4-13, 25-26, 28-29, 31-38. At a Civil Justice Reform Group retreat in Tucson, Arizona on March 23, 2006, Brunner indicated that State Farm's "products are woven into the CJ [civil justice] system." (Exhibit 2, HALEM00000894, at 1.) According to State Farm, these activities are an inseparable part of State Farm's operations—indeed, it has salaried employees in Washington and Illinois who do nothing else. It tracks such matters continuously and spends millions of dollars annually as a part of those efforts. Internally, State Farm calls such expenditures "business expenses." (Exhibit 3, HALEM00027999.)

The Seventh Circuit has adopted the universally endorsed view that the "regularly conducted activity" exception to the hearsay rule is to be liberally interpreted. *See Coates v. Johnson & Johnson*, 756 F.2d 524, 549-50 (7th Cir. 1985); *U.S. v. Keplinger*, 776 F.2d 678, 693-94 (7th Cir. 1985). "Because of the general trustworthiness of regularly kept records and the need for such evidence in many cases, the business record exception has been construed generously in favor of admissibility." 5–803 Weinstein's Federal Evidence § 803.08[1] (2d ed. 1997-present).

State Farm has yet to identify circuit authority to support its argument about the "core business" exception. Nor have Plaintiffs been able to identify such cases. Defendants previously cited two inapposite cases, *Palmer v. Hoffman*, 318 U.S. 109 (1943) and *U.S. v. Cameron*, 699 F.3d 621 (1st Cir. 2012). [843] at 6. *Palmer* was decided in 1943 under a far more restrictive business records rule. The Seventh Circuit has noted *Palmer*'s narrow reach. *See Leon v. Penn Central Co.*, 428 F.2d 528, 530 (7th Cir. 1970). *Palmer* involved a document prepared in anticipation of use in impending litigation, for which the Court established a conditional

trustworthiness limitation.  318 U.S. at 111-14.  But *Palmer* does not support Defendants' "core" business gloss on Rule 803(6)—the documents State Farm wants to exclude here are not remotely similar to the document considered by the *Palmer* Court.

*Cameron* is also unhelpful.  It involved an appeal from a conviction for possession of child pornography.  The issue was whether the defendant's right to confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004), was violated by the use of internet service provider records.  *Cameron*, 699 F.3d at 638-41.  The court's "core" business remark, made in passing and without explanation, *id.* at 646, was dicta, nothing more.

At all times relevant to this case, State Farm has contributed to civil justice reform groups and aggressively advanced its tort reform agenda through its officers and executives. Knowledgeable employees regularly memorialized those activities and contributions by keeping contemporaneous records of them.  Defendants' objection to the admission of those records under FRE 803(6) is groundless.

**VI.**    **Plaintiffs Can Introduce Deposition Testimony Of A State Farm Agent Or Co-Conspirator Even If The Witness Is Available To Testify At Trial**

Pursuant to Fed. R. Civ. P. 32(a)(4), Defendants object to Plaintiffs' use of deposition testimony in their case in chief where Defendants' witnesses or co-conspirators are available to testify at trial.  This Court should overrule Defendants' objection.  Plaintiffs need not show that any witness whose deposition testimony they seek to admit at trial is unavailable where the deposition: (1) is offered against an opposing party and was made by the party in an individual or representative capacity; (2) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (3) was made by the party's co-conspirator during and in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(A), (D), (E).

The Federal Rules of Evidence "provide the general rules regarding the use at trial of depositions." *Coleman v. Wilson*, 912 F. Supp. 1282, 1295 (E.D. Cal. 1995). FRCP 32 "defines some circumstances in which a deposition is admissible, leaving most issues of admissibility to the Federal Rules of Evidence." *Id.* (depositions of employees about matters within the scope of their employment were admissible under Fed. R. Evid. 801(d)(2)(D), without regard to Rule 32).

The depositions of State Farm employees are admissible as an exception to the hearsay rule under Rule 801(d)(2)(D) without a showing as to the availability of the witness. Numerous courts have held that Rule 32 and Rule 801(d)(2) "are independent bases for the admission of a deposition." *United States v. Int'l Bus. Mach. Corp.*, 90 F.R.D. 377, 384 (S.D.N.Y. 1981). "Deposition testimony is normally inadmissible hearsay, but Fed. R. Civ. P. 32(a) creates an exception to the hearsay rules. Depositions may also be independently admissible under the Federal Rules of Evidence." *Angelo v. Armstrong World Industs., Inc.*, 11 F.3d 957, 962-63 (10th Cir. 1993) (internal citations omitted); *see also GTE Prods. Corp. v. Gee*, 115 F.R.D. 67, 69 (D. Mass. 1987) ("party noticing the depositions of non-managing agents and servants retains the right to seek to have the [deposition] testimony admitted against the corporate party at trial either pursuant to Rule 32(a)(2) … or Rule 801(d)(2)(D)"); *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 468-69 (Bankr. D. Del. 2006) ("The Court concludes that Rule 32 is not the exclusive means by which depositions can be admitted and that Rule 801(d)(2)(D) is an independent basis for admissibility."); *Long Island Svgs. Bank, FSB v. U.S.*, 63 Fed. Cl. 157, 163-64 (2004) ("this court has been unable to locate any decision . . . for the propositions that Fed. R. Evid. 801(d)(2)(D) requires a showing of unavailability of the witness or that Fed. R. Evid. 801(d)(2)(D) is dependent upon [Rule 32(a)]. Those propositions contravene the plain and straightforward text of Fed. R. Evid. 801(d)(2)(D). In short, Long Island need not demonstrate

that any of the declarants whose deposition testimony it seeks to admit at trial pursuant to Fed. R. Evid. 801(d)(2)(D) will be unavailable as witnesses at trial.").

The same would be true of co-conspirators who advanced the objectives of Defendants' conspiracy.  An out-of-court statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party [made] during the course of and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  Among others, Plaintiffs have identified as participants and co-conspirators in Defendants' RICO enterprise Al Adomite (hired by Defendant Murnane to work on the 2004 Karmeier campaign), Dwight Kay (finance chairman of the 2004 Karmeier campaign), and David Leuchtefeld (the "chairman" of "Citizens for Karmeier," all of whom worked for Citizens for Karmeier, and whose discarded emails evidence the inner-workings of the 2004 Karmeier campaign).  [289] ¶ 29.

Of course, Defendants may present available witnesses in their own case.  But they may not use Rule 32 to block Plaintiffs from exercising their independent right under Rule 801(d)(2) to present the deposition testimony of witnesses in their case in chief, even if these witnesses are available.  Accordingly, this Court should overrule Defendants' objections to Plaintiffs' use of deposition testimony in their case in chief.

## VII.    State Farm Continues To Make What Plaintiffs Regard As Improper Evidentiary Objections

The parties continue to meet and confer on evidentiary issues.  As a part of that process, the parties have agreed that numerous exhibits are genuine and relevant and admissible.  But Defendants stop short of stating that these exhibits can be admitted into evidence.  Specifically, Defendants take the position that each exhibit must be "tethered" to a specific witness with knowledge of the creation of the specific exhibit at issue, and the exhibit must be introduced through that witness.  Defendants seemingly ignore that part of the Court's Final Pretrial

Conference rules designed to promote the concurrence on facts not in dispute and encourage the parties "not to raise frivolous foundational objections, particularly as an expediency to avoid examining and evaluating the exhibits in advance of the conference as required."  Plaintiffs take the view that if an exhibit is authentic and relevant and otherwise admissible, then it may be admitted into evidence upon motion by any party and shown to any witness.  Plaintiffs are unaware of any "tethering" requirement in FRE 801(d)(2)(C), (D), or (E) nor in any recognized principle of evidence.  At this point in the meet and confer process it appears that the parties are at an impasse and that guidance from the Court is now necessary.

## VIII.   Mark Covington's Testimony Should Be Excluded Because He Is Not A Party, And His Deposition Testimony Is Inadmissible Hearsay

Mark Covington was originally a named Plaintiff in this case.  On August 7, 2015, Covington moved to withdraw as a named Plaintiff and to dismiss his individual claims without prejudice.  [411].  The reason for the withdrawal and dismissal is that his claim took place outside the *Avery* class period; as such, he is not a part of the *Avery* class.  This Court granted Covington's motion.  [417].  Defendants may seek to present Covington's deposition testimony in evidence at trial.  Because Covington is no longer a party to this case, the Court should exclude his deposition testimony.  Such testimony is hearsay, is not admissible as an exception to the hearsay rule, and plainly is not relevant.

All or part of a deposition may be used against a party if: (a) the party was present or represented at the taking of the deposition; (b) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and (c) Fed. R. Civ. P. 32 otherwise allows its use.  Fed. R. Civ. P. 32(a)(1).  A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds that the witness is more than 100 miles from the place of trial.  Fed. R. Civ. P. 32(a)(4).  Because Covington is more than 100

miles from the place of trial, the issue is whether his testimony would be admissible under the Federal Rules of Evidence were he present to testify.

Covington's testimony would be offered as an opposing party's statement under Fed. R. Evid. 801(d)(2)(A), under which an out-of-court statement is not hearsay if offered against an opposing party and "was made by the party in an individual or representative capacity." However, many cases hold that the admission-by-a-party exception to the hearsay rule only applies if the declarant is a party at the time of trial; if not, the statement is not admissible under Rule 801(d)(2)(A).  *See, e.g., United States v. Smith*, 746 F.2d 1183, 1185 (6th Cir. 1985) (after co-defendant pleaded guilty and was severed from the case, his confession was inadmissible under Rule 801(d)(2)(A) because he was not a party); *Jackson v. Local Union No. 211 of United Steel*, No. CV-07-JEO-0461-S, 2009 WL 10704345, at *5 (N.D. Ala. Nov. 2, 2009) ("Because the International is no longer a party, the statements of the International or its agents cannot qualify at trial as an admission of a party opponent under Rule 801(d)(2)"); *Fitzpatrick v. City of Fort Wayne*, 259 F.R.D. 357, 366-67 (N.D. Ind. 2009) (former party's testimony was inadmissible under Rule 801(d)(2)(A); "a party's statement is admissible as non-hearsay only if it is offered against that party"); *Thompson v. Queen City, Inc.*, No. Civ. A. 2002359-18, 2002 WL 32345733, at *6 (D.S.C. July 9, 2002) (former defendant's note was inadmissible against the remaining defendant); *Powell v. Collier Constr., L.L.C.*, No. Civ. A. 03-0707, 2005 WL 2429245, at *2 n.2 (W.D. La. Sept. 30, 2005) ("Plaintiffs' admission by a party opponent argument fails because the statements were not offered against a party by an opposing party. There is no dispute that Barbo was dismissed from this case and . . . there is no hearsay rule regarding admissions by a former party opponent.") (emphasis in original); *Daughtry v. City of N.Y.*, No. 12-CV-2655 (NGG)(RER), 2015 WL 2454115, at *4 (E.D.N.Y. Feb. 23, 2015)

- 25 -

(employee's statements while employed by defendant were inadmissible against defendant after the filing of an amended complaint which did not name the employee as a defendant; "since Gonsalves is not a party, his statements are not admissible under 801(d)(2)(A)").

Because Covington is not a party to the case, this Court should exclude his deposition testimony under Rule 801(d)(2)(A) and on relevancy grounds.

## IX.    Current State Farm Policy Holders Should Be Excluded From Serving On This Jury

State Farm is a mutual insurance company, meaning that it is owned entirely by its policy holders. Any profits earned by a mutual insurance company such as State Farm are either retained within the company or rebated to policy holders in the form of dividend distributions or reduced future premiums. The converse is also true: if State Farm is obligated to pay a substantial judgment against it, then policyholders could be called upon to pay higher premiums or even be asked to assist paying a portion of the judgment.

One well recognized ground for challenging for cause is if a juror has any pecuniary interest in the outcome of the lawsuit. "This has been regularly construed to mean any financial interest whatsoever, no matter how slight, indirect or remote. 58 Am.Jur. Proof of Facts 3d 395 (Originally published in 2000).

Because State Farm is a mutual insurance company, and because its policy holders own the company, State Farm policy holders should not serve as jurors in this case and should be excused for cause. It is not enough that a juror on the venire advise the Court and parties that he or she could be fair. The simple fact is that any and all State Farm policy holders are owners of the company and so have a pecuniary interest in the outcome of the case.

## CONCLUSION

Plaintiffs look forward to trial of the case on September 4, 2018, and believe that resolution of the issues outlined herein will help ensure an efficient and fair trial.

Dated: August 21, 2018

Respectfully submitted,

/s/ *Steven P. Blonder*
Steven P. Blonder #6215773
Jonathan L. Loew
Much Shelist, P.C.
191 N. Wacker, Suite 1800
Chicago, IL 60606-2000
Tel: 312-521-2402

Robert A. Clifford #0461849
George S. Bellas
Kristofer S. Riddle
Clifford Law Offices
120 N. LaSalle Street, 31st Floor
Chicago, IL 60602
Tel: 312-899-9090
John W. "Don" Barrett
Barrett Law Group, P.A.
404 Court Square North
P.O. Box 927
Lexington, MS 39095-0927
Tel: 662-834-2488

Elizabeth J. Cabraser
Robert J. Nelson
Kevin R. Budner
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Brent W. Landau
Jeannine M. Kenney
Hausfeld, LLP
325 Chestnut Street
Suite 900
Philadelphia, PA 19106
Tel: 215-985-3273

Patrick W. Pendley
Pendley, Baudin & Coffin, LLP
Post Office Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Tel: 888-725-2477

Erwin Chemerinsky
University of California, Berkeley
  School of Law
215 Boalt Hall,
Berkeley, CA 94720
Tel: 510- 642-6483

Thomas P. Thrash
Marcus N. Bozeman
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201
Tel: 501-374-1058

Richard R. Barrett
Law Offices of Richard R. Barrett, PLLC
2086 Old Taylor Road, Suite 1011
Oxford, Mississippi 38655
Tel: 662-380-5018

Gordon Ball
Gordon Ball PLLC
550 Main Street
Bank of America Center, Ste. 600
Knoxville, TN 37902
Tel: 865-525-7028

Stephen A. Saltzburg,
The George Washington University Law School
2000 H. Street, NW
Washington, D.C. 20052
Tel: 202-994-7089

*Class Counsel*

- 27 -

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 7.1(b), I certify that a copy of the foregoing was served upon counsel via the Court's CM/ECF system.

<u>/s/ *Steven P. Blonder*</u>

9135648_1