IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, TODD SHADLE,
and LAURIE LOGER, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, EDWARD
MURNANE, and WILLIAM G. SHEPHERD,

Defendants.                                                        No. 12-0660-DRH

## MEMORANDUM and ORDER

HERNDON, District Judge:

### Introduction and Background

Pending before the Court is defendants' motion to exclude the reports and testimony of Mark Harrison (Doc. 710). Plaintiffs oppose the motion (Doc. 746). Based on the following, the Court denies the motion.

### Legal Standard

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.,* 765 F.3d 765, 771 (7th Cir. 2014); *see also Lewis v. Citgo Petroleum Corp.,* 561 F.3d 698,

705 (7th Cir. 2009). Rule 702, governing the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"In short, the rule requires that the trial judge ensure that any and all expert testimony or evidence admitted "is not only relevant, but reliable." *Manpower, Inc. v. Ins. Co. of Pa.* 732 F.3d 796, 806 (7th Cir. 2013) *(citing Daubert,* 509 U.S. at 589, 113 S.Ct. 2786); *see also Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 894 (7th Cir. 2011) (explaining that ultimately, the expert's opinion "must be reasoned and founded on data [and] must also utilize the methods of the relevant discipline"); *Lees v. Carthage College,* 714 F.3d 516, 521 (7th Cir. 2013) (explaining the current version of Rule 702 essentially codified *Daubert* and "remains the gold standard for evaluating the reliability of expert testimony"). The *Daubert* principles apply equally to scientific and non-scientific expert testimony. *See Manpower, Inc.,* 732 F.3d at 806 (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

Under the expert-testimony framework, courts perform the gatekeeping function of determining whether the expert testimony is both relevant and reliable prior to its admission at trial. *See Manpower, Inc.,* 732 F.3d at 806; *Lees,* 714

F.3d at 521; *United States v. Pansier,* 576 F.3d 726, 737 (7th Cir. 2009) ("To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."). In doing so, courts "make the following inquiries before admitting expert testimony: first, the expert must be qualified as an expert by knowledge, skill, experience, training, or education; second, the proposed expert must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case." *Lees,* 714 F.3d at 521–22; *see also Stollings v. Ryobi Techs., Inc.,* 725 F.3d 753, 765 (7th Cir. 2013); *Pansier,* 576 F.3d at 737.

A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (citing *Daubert*, 509 U.S. at 596). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" based on *Id*. The *Stollings* Court instructed, at page 766, "[a]n expert may provide expert testimony a valid and properly applied methodology and still offer a conclusion that is subject to doubt. It is the role of the jury to weigh these sources of doubt. In *Daubert* the Supreme

Court expressly envisioned this continued role for the jury when it reminded all that '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Citing *Daubert* at page 596.

Furthermore, Rule 403 states:

The Court *may* exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

## Analysis

The defendants maintain that Harrison's opinions are nothing more than legal conclusions that invade the province of the jury and that Harrison lacks the required expertise and that his methodology is deficient. Defendants also argue that the opinions were rendered after an examination of certain documents but those documents are insufficient and that Harrison refused to consider key deposition testimony, that he mischaracterizes the facts and evidence and that his testimony is irrelevant and prejudicial. Lastly, defendants argue that Harrison should be barred because his former law firm, the Phoenix office of Bryan Cave, represented State Farm for years in class litigation similar to *Avery*. Plaintiffs counter that Harrison's opinions satisfy each and every part of the Rule 702/*Daubert* analysis. Plaintiffs contend that Harrison drew on his personal knowledge and wealth of experience in legal and judicial ethics to form his opinions; examined relevant authorities regarding disqualification and explained in detail his reasoning and the basis for his expert opinions. Further, plaintiffs

contend that his testimony will assist the jury in understanding the evidence relating to Justice Karmeier's involvement in *Avery* and assessing whether defendants engaged in broad-ranging RICO conspiracy. Lastly, Plaintiffs contend that Harrison does not have a conflict of interest because his former law firm represented State Farm in a single case almost twenty years ago as Harrison did not have a confidential relationship with State Farm or that State Farm shared confidential information regarding this case. The Court agrees with plaintiffs and denies the motion to exclude.

Mark Harrison is a member of the law firm of Osborn Maledon, P.A. and licensed to practice law in both Arizona (1961) and Colorado (1991). For the last 20 years of his practice, Harrison has been involved in matters dealing with legal ethics, lawyers' licensure, professional liability, judicial ethics and discipline and risk management. He has represented and prosecuted judges in judicial conduct proceedings and is familiar with the codes of judicial conduct throughout the United States. Harrison was the Chair of the American Bar Association ("ABA") Commission to Revise the Model Code of Judicial Conduct (the "Model Code"), Between 2008 and 2016, Harrison served as a member and later as Chair of the Board of Directors of Justice at Stake, a national non-profit organization dedicated to preserving fair and impartial courts. Over the past five years, Harrison has written amicus briefs to United States Supreme Court involving judicial conduct. Reviewing Mr. Harrison's qualifications, it appears that he has extensive experience in the field of judicial ethics.

Plaintiffs retained Harrison to express opinions about whether the decision of the Illinois Supreme Court to overturn the $1.5 billion judgment in favor of the plaintiff class in *Avery v. State Farm* was tainted, denied plaintiffs due process and deprived plaintiffs of the consideration and disposition of the appeal by a fair and impartial Court. In rendering his opinion, Harrison relied upon documents, testimony and information provided by plaintiffs' counsel, his review of pertinent case law and ethics opinions and on his experience in the field of judicial ethics. In summary, Harrison opined: "The decision of the Illinois Supreme Court to overturn the $1.05 billion judgment in favor of plaintiff class in *Avery v. State Farm*, was tainted and denied plaintiffs due process and deprived plaintiffs of the consideration and disposition of the appeal by a fair and impartial Court." In addition, Harrison also offered several other opinions:

(1) There are factual disputes about the extent of Justice Karmeier's knowledge of the nature and extent of State Farm's direct and indirect involvement in and financial support of his candidacy and election campaign. However, it is neither appropriate nor necessary for me to resolve this factual question because the Illinois Judicial Ethics Opinion 93-11 and case law previously cited confirm that the judge's actual knowledge of facts which would warrant recusal did not relieve him of the duty to recuse. In fact, it was incumbent on Justice Karmeier to remain aware of any "potentially disqualifying information" and to bring it "to the attention of the litigants". The cases and ethics opinion make quite clear that a judge cannot remain willfully ignorant of campaign contributions in order to insulate himself or herself from the risk of recusal.
(2) The *Avery* case goes far beyond the ICJC's standard for recusal. As in *Caperton*, the facts in *Avery* were "exceptional", involving substantial contributions and a large verdict pending against a large company. And as in *Caperton*, the facts in *Avery* implicated the due process rights and the right to an impartial Court for the plaintiff class. In *Caperton*, the donor whose case was in issue had contributed approximately $3 million or 64% of the funds contributed to the pivotal justice's campaign

and the Supreme Court concluded that under the circumstances, that level of support violated due process. In the *Avery* case, State Farm contributed, directly or through various organizations, $3.52 million to Justice Karmeier's campaign, funding 74 percent of the final Karmeier campaign budget. The stakes for State Farm in *Avery* were far greater than the stakes for Massey Coal Co. in *Caperton* -- $1 billion+ for State Farm, $50 million for Massey Coal. A fact not present in *Caperton* which raises an additional concern about the legitimacy of the decision in *Avery* is the fact that a major percentage on the funds contributed to the Karmeier campaign were funneled through various organizations like JUSTPAC and the Chambers of Commerce by State Farm and other entities which were not obligated to and did not disclose the names of their contributors. It is hard to imagine that any reasonable person, *aware of all the pertinent facts*, would have *objectively* believed Judge Karmeier could be impartial in deciding State Farm's fate when $1 billion was hanging in the balance.

(3) Under Illinois law, each justice decides alone whether to recuse himself or herself. (*In the Marriage of O'Brien*, 958 N.E.2d at 728). This rule is legally anomalous because when a panel is deciding a case, the decision of one member of the panel to recuse has the potential to affect or invalidate the decision of the entire panel. As the Supreme Court in *Williams v. Pennsylvania, and Aetna v. Lavoie*, confirmed, decisions of an appellate court reflect the interchange and exchange between and among all members of the panel and "[a] multimember court must not have its guarantee of neutrality undermined, for the appearance of bias demeans the reputation and integrity not just of one jurist but of the larger institution of which he or she is a part." *Williams*, 136 S.Ct. at 1909; *Aetna*, 475 U.S. at 827-828. In view of the opinions of the Supreme Court in *Williams and Aetna*, Justice Karmeier's participation tainted the decision of the entire Court, denied plaintiffs due process, and deprived plaintiffs of the consideration and disposition of the appeal by a fair and impartial Court.

Here, the Court rejects defendants' arguments and finds, pursuant to Rule 702, Harrison's opinions are both relevant and reliable. Harrison's extensive experience in the judicial ethics field provides sufficient basis for him to offer his opinions. Further, the Court does not perceive anything in Harrison's expert report as an attempt to offer legal conclusions. It is clear that Harrison is not

serving as an expert to determine whether defendants violated RICO. His testimony relates to judicial ethics issues.

In fact, Harrison's report describes his methodology in that he explains that he first examined evidence which he gleaned from the many documents that he reviewed and put together a compendium of facts and evidence that are relevant to his ultimate inquiry. Further, Harrison pronounces in detail the ethical provisions he found relevant given the facts that he relied upon, as well as the pertinent case law. The facts he relies on are, by the Court's finding, sufficient and reliable. Further, the Court agrees with plaintiffs' assessment of the facts and the reliability issues. After going through the documents, facts and evidence, the case law and the ethical provisions, Harrison derived conclusions and opinions about how those facts relate to the law and the ethics regulations and then Harrison opines about the preliminary issue of Justice Karmeier's ethical violations. As stated previously, Harrison's opinions do not go to the ultimate issue in this case of whether or not defendants committed a RICO violation. *See Naeem v. McKesson Drug*, 444 F.3d 593, 610 (7th Cir. 2006)(Seventh Circuit finding admission of expert testimony regarding Department of Transportation (DOT) regulations was not plain error: "the DOT regulations at issue do not determine the outcome of Ms. Naeem's claims; rather, they are only a piece of evidence regarding whether one of the disciplinary actions against Ms. Naeem was justified."). The Court notes that neither Justice Karmeier nor any other Illinois Supreme Court Justice is a defendant in this matter. Moreover, Harrison goes

into more detail about his methodology which confirms that his methodology is acceptable and reliable and it looks to trustworthy evidence to ultimately be able to get to his conclusions and opinions.

Further, Federal Rule of Evidence 703 provides that an "expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed.R.Evid. 703. "Unless the court orders otherwise, an expert may state an opinion – and give the reasons for it- with-out first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination." Fed.R.Evid. 705. Clearly, defendants may cross examine Harrison on why they feel his method is flawed and may cross examine Harrison to point out any discrepancies as to the correctness of Harrison's opinions based upon facts that Harrison may or may not know.

Lastly as to defendants' argument regarding Harrison's alleged conflict of interest, the Court agrees with plaintiffs and finds that a conflict of interest is not present. The litigation at bar is nothing like the one Harrison's firm represented State Farm almost twenty years ago, substantially remote in time. Harrison did not have a confidential relationship with State Farm, Harrison neither worked on the case nor talked to attorneys in the firm about the case and State Farm did not disclose confidential information to Harrison that is relevant to this litigation.

### Conclusion

Accordingly, the Court **DENIES** defendants' motion to exclude the reports and testimony of Mark Harrison (Doc. 710).

**IT IS SO ORDERED.**

Judge Herndon
2018.08.21
17:02:42 -05'00'

United States District Judge