# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MARK HALE, TODD SHADLE,**
**and LAURIE LOGER, on behalf of**
**themselves and all others similarly situated,**

**Plaintiffs,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, EDWARD**
**MURNANE, and WILLIAM G. SHEPHERD,**

**Defendants.**                                                    **No. 12-0660-DRH**

## <u>MEMORANDUM and ORDER</u>

**HERNDON, District Judge:**

Pending before the Court are the numerous motions in limine filed by the parties. As these extensive motions are ripe, the Court rules as follows.

The district court has the inherent authority to manage the course of a trial. *Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). The court may exercise this power by issuing an evidentiary ruling in advance of trial. *Id.* A party may seek such a ruling by filing a motion in limine, which requests the court's guidance on what evidence will (or will not) be admitted at trial. *Perry v. City of Chicago,* 733 F.3d 248, 252 (7th Cir. 2013). Prudent motions in limine serve a gatekeeping function by allowing the judge "to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury." *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997). By defining the evidentiary boundaries, motions in

limine both permit "the parties to focus their preparation on those matters that will be considered by the jury," *id.* and help ensure "that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues," *United States v. Tokash,* 282 F.3d 962, 968 (7th Cir . 2002).

As with all evidentiary matters, the court has broad discretion when ruling on motions in limine. *United States v. Ajayi,* 808 F.3d 1113, 1121 (7th Cir. 2015); *Jenkins v. Chrysler Motors Corp.,* 316 F.3d 663, 664 (7th Cir. 2002). Moreover, the Court can change its ruling at trial, "even if nothing unexpected happens[.]" *Luce,* 469 U.S. at 41, 105 S.Ct. 460. Rulings in limine are speculative in effect; essentially, they are advisory opinions. *Wilson v. Williams,* 182 F.3d 562, 570 (7th Cir. 1999) (Coffey, J., concurring in part and dissenting in part).

## **Plaintiffs' motion in limine to admit documents in evidence (Doc. 790)**

1. Exhibit 1, June 22, 2004 email from Regina Dillard to Kim Brunner (HAL00000031-32). State Farm does not dispute the emails may be admissible for the limited purpose of showing that State Farm had notice of what Ms. Dillard heard Lisa Rickard and/or others said. The Court **GRANTS** the motion and **ADMITS** the **June 22, 2004 email from Regina Dillard to Kim Brunner (HAL00000031-32) with a limiting instruction that the statements cannot be considered for the truth of the matters asserted**.

2. Exhibit 2, Ms. Dillard's handwritten notes from the ILR preconference conference call of June 22, 2004 (HALEM00000046-47). State Farm does

not dispute the documents may be admissible for the limited purpose of showing that State Farm had notice of what Ms. Dillard heard Lisa Rickard and/or others said. Thus, the Court **GRANTS** the motion and **ADMITS Ms. Dillard's handwritten notes from the ILR preconference conference call of June 22, 2004 (HALEM00000046-47) with a limiting instruction that the statements cannot be considered for the truth of the matters asserted**.

3. Exhibit 3, Ms. Dillard's handwritten notes taken at a USCC donor meeting on May 25, 2004 (HALEM00000033-40). State Farm does not dispute the documents may be admissible for the limited purpose of showing that State Farm had notice of what Ms. Dillard heard Lisa Rickard and/or others said. Thus, the Court **GRANTS** the motion and **ADMITS Ms. Dillard's handwritten notes taken at a USCC donor meeting on May 25, 2004 (HALEM00000033-40) with a limiting instruction that the statements cannot be considered for the truth of the matters asserted**.

4. Exhibit 4, seven draft letters dated May 7, 2004 written by Kim Brunner (HALEM00008084). The Court agrees with State Farm's reasoning regarding relevance and hearsay as to these letters. Thus, the Court **DENIES** the motion and will not admit these letters without more qualifying evidence.

5. Exhibit 5, the agenda for the CJRG Steering Committee of June 22, 2004 (HALEM000000137). The Court agrees with State Farm's reasoning

regarding hearsay. However, State Farm does stipulate to the admission to show that State Farm "knew of the agenda and the meeting." Thus, the Court **GRANTS** the motion and **ADMITS the agenda for the CJRG Steering Committee of June 22, 2004 (HALEM000000137) to show that State Farm "knew of the agenda and the meeting."**

6. Exhibit 6, December 9, 2005 letter from Murnane to Shepherd (HALEM000000633-34): Murnane agrees that it can be admitted as a statement against his interest and State Farm does not object. Thus, the Court **GRANTS** the motion and **ADMITS** this **December 9, 2005 letter from Murnane to Shepherd (HALEM000000633-34)**.

7. Exhibit 7, February 24, 2004 letter from Murnane to Shepherd (HALEM00000812-13): Murnane agrees that it can be admitted as a statement against his interest and State Farm does not object. Thus, the Court **GRANTS** the motion and **ADMITS** this **December 9, 2005 letter from Murnane to Shepherd (HALEM00000812-13)**.

**<u>Plaintiffs' omnibus motions in limine (Doc. 798)</u>**

**Plaintiffs move to bar references to plaintiffs' counsel's public contributions to justices and judicial candidates.**

The Court finds that the nature of the contributions made by plaintiffs' counsel is irrelevant and immaterial. The only contributions material and relevant in this case are those of the defendants and its affiliates. A further example of immateriality and irrelevance would be the multiple people who constitute the twenty-five percent of all contributions to the Karmeier campaign

but whose contributions and motives cannot be inferred by the evidence at the behest of defendants. Thus, the Court **GRANTS** this part of plaintiffs' motion. The Court **BARS references to plaintiffs' counsel's public contributions to justices and judicial candidates.**

> **Plaintiffs move to bar references to the participation of Douglas Wojcieszak and Tom Denton in discussions to publicize the sexuality of a 2004 Karmeier campaign staff member**.

Defendants oppose the motion arguing that this evidence bears on the credibility of factual assertions and underlying plaintiffs' 2005 and 2011 *Avery* motions and underlying the case that plaintiffs and their expert continue to press in this RICO litigation. The Court agrees with plaintiffs. This evidence has to do with two guys and their firm, who during the Karmeier campaign, discussed the possibility of publicizing the sexual orientation of a person in the Karmeier campaign to show the hypocrisy of the campaign. Subsequent to the 2004 campaign, Wojcieszak began working with the class and the class lawyers. The Court finds that this evidence is irrelevant and not admissible. In addition, although not addressed by either party, this appears to the Court to be Federal Rule of Evidence 404 evidence.[1] Prior bad acts, and the defendants suggest there is an inference that what they want to introduce are bad acts, is not admissible except for a few narrowly tailored exceptions (which do not apply in a civil case)

---

[1] Rule 404(a)(1) provides: "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion that person acted in accordance with the character or trait." Further, Rule 404(b)(1) provides: "Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion that person acted in accordance with the character."

or through Rules of Evidence 607, 608, or 609, none of which are applicable to this case.

Defendants seem to argue that the evidence goes to bias. However, that does not take away from the fact that the evidence would be introduced as a window to the witness' character. Under Federal Rule of Evidence 608, the Court will not allow this evidence to come in. Moreover, looking at Federal Rule of Evidence 403, it strikes the Court on balance to be far more prejudicial to plaintiffs who had nothing to do with his pre-election activities than it is probative of some bias. The activity making up the bad acting took place prior to the election and prior to when these people were working to help plaintiffs. Thus, the Court **GRANTS** the motion. The Court **BARS references to the participation of Douglas Wojcieszak and Tom Denton in discussions to publicize the sexuality of a 2004 Karmeier campaign staff member**.

> **Plaintiffs move to bar evidence or references to communications between Douglas Wojcieszak or Tom Denton and Dwight Kay's former wife.**

Plaintiffs contend that this evidence is irrelevant and unfairly prejudicial. Further, plaintiffs contend that neither Wojcieszak nor Denton worked for plaintiffs or their counsel in 2004. Defendants counter that this evidence is highly probative and not unfairly prejudicial in that it shows dishonesty of Wojcieszak. The Court **GRANTS** this motion based on the reasoning utilized in *supra* regarding the Karmeier campaign staffer. Thus, the Court **BARS evidence or**

references to communications between Douglas Wojcieszak or Tom Denton and Dwight Kay's former wife.

**Plaintiffs move to bar evidence or references to Douglas Wojcieszak or a contractor searching through the trash outside the home of David Luechtefeld.**

Plaintiffs again contend this was before Wojcieszak and Denton worked with plaintiffs and plaintiffs' counsel. Plaintiffs point to email found in the trash in which Murnane told Judge Karmeier he had "passed all the tryouts we need." This email has been authenticated by Murnane. That email is certainly relevant to the issues in this case but how it was obtained is not relevant. Thus, the testimony about how it was obtained will not be allowed. In addition, balancing interests of the parties under Rule 403 weighs in favor of the plaintiffs as obviously far more prejudicial to plaintiffs who had nothing to do with the activity at issue than it is probative for defendants for an activity that is otherwise irrelevant. Accordingly, the Court **GRANTS** this portion of the motion.

**Plaintiffs move to bar references to or arguments of any purported judicial finding that plaintiffs' allegations in the case are not factually supported.**

Plaintiffs assert that such evidence is misleading and confusing. Specifically, plaintiffs are referring to Magistrate Judge Williams' November 25, 2014 Order wherein he made reference to the facts as they were presented as of that date. Plaintiffs maintain that whether appropriate or not defendants have cherry picked the pertinent language out of that order numerous times for a variety of reasons. Defendants, in turn, maintain that it is appropriate as a finding of the court in this matter without regard to when it was written and the

state of the record and discovery at the time. Defendants argue that to disallow reliance on Magistrate Judge Williams' findings is to ignore the hard work and arduous litigation that had occurred prior to his ruling.

Here, the Court finds that plaintiffs are correct in the rationale they employ. The November 25, 2014 Order is predated by a considerable amount of time and hard work. The Court is not ignoring the hard work that had been pursued prior to Magistrate Judge Williams' Order in November 2014, rather the Court is recognizing and taking action on the need to refrain from using a snapshot in time, when all facts were not known and the record stood undeveloped. Magistrate Judge Williams' Order addressed a discrete legal issue at a particular point in time. Using that Order, a snapshot in time, and ignoring all the evidence acquired through additional work and litigation would not give the jury a complete look at the facts. The undersigned judge, with a look at the evidence after discovery was complete, stated: "Here, the Court finds that plaintiffs have advanced evidence in support of its allegations to establish causation. … In addition, a reasonable jury could find that defendants' alleged fraudulent conduct tainted the *Avery* proceedings/decision and that defendants foresaw, intended and secretly worked to achieve the end result…" (Doc. 846, pg. 15). Accordingly, the Court **GRANTS** this portion of the motion in limine.

> **Plaintiffs move to bar arguments that defendants' political and funding activities in support of the 2004 Karmeier campaign constitute protected First Amendment free speech activities.**

Plaintiffs argue that the First Amendment is not an issue in the case and claims that the First Amendment protects defendants' political funding activities as free speech are irrelevant and are confusing and misleading to the jury. On the other hand, defendants argue that they have a well-established right to participate in political and funding activities. Further, defendants contend that the jury in this case needs to determine whether State Farm's alleged misrepresentations in its briefs are protected by the *Noerr-Pennington* doctrine. The Court agrees with defendants and **DENIES** this portion of the motion.

**Plaintiffs move to bar references to State Farm Attorney Patricia Brown Homes or State Farm expert Sheila M. O'Brien as "Judge" during trial.**

The Court **GRANTS** this motion by consent of defendants. The Court **BARS references to Ms. Brown or Ms. O'Brien as "judge" during the trial**.

**Plaintiffs' motion to bar evidence or references to advertisements or literature opposing or supporting Justice Karmeier's 2014 judicial retention campaign.**

Next, plaintiffs argue that this case is about the 2004 campaign and not the 2014 judicial retention campaign and that such evidence is irrelevant and is confusing or misleading to the jury. Plaintiffs maintain that this is improper enhancement to the credibility of Justice Karmeier. Defendants oppose this portion of the motion arguing that this evidence will provide a complete picture to the jury. The Court agrees with plaintiffs. To give the jury a complete picture the jury would have to hear evidence about the effects of numerous factors which either aid or hamper the jury's understanding of the whys and wherefores of the election. More specifically, the parties are viewing the Karmeier retention as a

simple vote on the worth or value of the Karmeier tenure. However, simply presenting the fact that he won the retention election involves many issues, such as though not inclusive of all potential factors, the statistical advantage of an incumbent running for retention in a state supreme court race, the statistical advantage or disadvantage of a supreme court justice running without an opponent in the form of a person in the retention race, the relative advantages or disadvantages to retention versus rejection for retention when comparing the marketing strategies of each side of the issue and the funds available and funds spent if there is a difference, plus more analyses of the various differences between the first competitive race with an opponent and the second race, without a specific opponent but with an opposition marketing campaign. Obviously, the two campaigns were different, held at a different time and under starkly different circumstances and so the second campaign, the retention vote, is irrelevant and will not be allowed. Of course, if Justice Karmeier testifies in person or by deposition he will be allowed to testify that he is currently a justice sitting on the Illinois Supreme Court (the exact wording not critical). However, any discussions about running for retention, having a second campaign to remain in office or anything about how he came to be in the same position more than ten years after the first election, will not be allowed. Obviously, the politically astute among the jurors will recognize that Justice Karmeier won a retention election. Using a standard instruction which directs the jury to base their decision only on the evidence produced in court or as otherwise instructed by the Court will prevent

the jury from speculating how Justice Karmeier gained the ability to remain on the Court after his first ten years. So this Court's prohibition to providing evidence about the retention election includes refraining from asking any witness how he remains on the court after his first term. Thus, the Court **GRANTS** this portion of the motion and **BARS evidence or references to advertisements or literature opposing or supporting Justice Karmeier's 2014 judicial retention campaign.**

   **Plaintiffs move to bar evidence of Justice Karmeier's good character, skills or abilities.**

   Additionally, plaintiffs move, pursuant to Federal Rules of Evidence 402 and 403, to bar evidence of Justice Karmeier's reputation for integrity, honesty, and overall good character, including 2004 campaign literature or advertisements lionizing Justice Karmeier as irrelevant and confusing and misleading to the jury. Plaintiffs contend that none of these references bear on whether defendants violated RICO. State Farm contends that it has the right to introduce evidence of Justice Karmeier's integrity and reputation to demonstrate that the ISBA Judicial Evaluation Committee's conclusions were well grounded in fact and were not the result of any purported subversion by State Farm.

   Federal Rule of Evidence 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Rule 608 states that "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." Fed. R. Evid. 608(a).

Further, Rule 402's requirement that the evidence be relevant and Rule 403's requirement that its "probative value" not be "substantially outweighed by … unfair prejudice." Fed. R. Evid. 403.

From the Court's reading of the record, the plaintiffs have not attacked the character of Justice Karmeier except to the extent that plaintiffs contend that he should have recused from the case. This is not a personal attack on Justice Karmeier's character. Based on plaintiffs' reasoning, the Court agrees and finds that this evidence is irrelevant and that any possible probative value would be substantially outweighed by the sympathy it would garner for defendants. Thus, the Court, pursuant to Rules 404, 608, 402 and 403, **GRANTS** this portion of the motion in limine.

> **Plaintiffs move to limit use of tax returns of the American Tort Reform Association, the United States Commerce, the Institute of Legal Reform, and the Illinois State Chamber of Commerce.**

The Court finds this a particularly difficult issue because plaintiffs do not want income tax returns in for these organizations which would show, purportedly, their contributions to various campaigns showing the jury, it is argued, that State Farm's contributions were actually minimal and one could not conclude there was a pass through of money. It is possible that the assertion by defendants' counsel is true, but it is hard to tell at this juncture, particularly without looking at the tax returns. The Court **DEFERS** ruling on this matter until the undersigned has had the opportunity to examine the returns in camera.

**Plaintiffs move to exclude witnesses.**

In this section of the motion, plaintiffs invoke the Rule on Witnesses. Defendants, referring to the undersigned's own procedural guidance, seek to have the Rule not apply to expert witnesses. In light of the discovery, the reports and the depositions, as well as motions and orders in limine, the Court **APPLIES** the Rule to expert witnesses as well in order to prevent experts from changing their opinions. Thus, the Court **GRANTS** this portion of the motion.

**Plaintiffs' miscellaneous motions**

In this section of plaintiffs' omnibus motion, plaintiffs move pursuant to Rules 402 and 403 to bar the following:

A. Any inference that any award of damages in this case will adversely affect the ability of any member of the jury to purchase or have available insurance in the future, or affect the cost thereof, or have any adverse effect on the insurance products available in the United States. The Court **GRANTS** this section by agreement of the parties.
B. Any inference that a verdict for plaintiffs will or could result in people losing their job or lead to lay-offs. The Court **GRANTS** this section by agreement of the parties.
C. Any testimony that this case may cause an increase in the cost of purchasing or maintaining insurance. The Court **GRANTS** this section by agreement of the parties.
D. Any testimony that this case may cause an increase in the cost of purchasing insurance for the public. The Court **GRANTS** this section by agreement of the parties.
E. Any testimony about how, when, or under what circumstances plaintiffs chose or employed any of their attorneys. The Court **GRANTS in part** this section by agreement of the parties. Defendants do not agree to evidence going to the issue of due diligence as it relates to the statute of limitations issue. The Court agrees and **EXCLUDES all the testimony about plaintiffs hiring attorneys except for the evidence of when they re-engaged**

**counsel and any thought processes associated with when to do so and the reasons behind the timing**.

F.  Any testimony tending to suggest or in any way reflect the financial status of or resources of any of plaintiffs' attorneys or their law firms, or any of those attorneys other cases.  The Court **GRANTS** this section by agreement of the parties.

G.  Any testimony relating to travel by private jet for any of the lawyers or witnesses involved in this case.  The Court **GRANTS** this section by agreement of the parties.

H.  Any mention that plaintiffs' recovery will be increased or enhanced by operation of law. The Court **GRANTS** this section by agreement of the parties.

I.  Any comment or testimony about the plaintiffs' fee agreement and who is paying expenses or who is responsible for expenses in connection with this litigation. The Court **GRANTS** this section by agreement of the parties.

J.  Any evidence mentioning that if defendants are made to pay a judgment that it may negatively affect the Illinois economy or the economy of any state. The Court **GRANTS** this section by agreement of the parties.

K.  Any evidence or comment that bolsters the unchallenged character (e.g., honest) or traits (e.g., generous) of the defendants' current or former employees, managers, consultants, experts, agents or fiduciaries preemptively.  The Court finds that this section is general and only refers to categories of persons.  Defendant objects on the basis that persons in each of the named categories has had his or her character besmirched during the discovery phase of this case.  The Court concludes that what matters is not what has happened pretrial but what happens during the trial in the presence of the jury.  Therefore, the Court **DEFERS** ruling in limine on this issue but will wait until the evidence comes before the jury resulting in the plaintiff, as the defendants say, "opening the door" to character evidence.

L.  Any evidence that the class representatives lack sufficient knowledge of the facts and theories of the case. Plaintiff seeks to exclude evidence about what the named members know about the case because the adequacy of class counsel is not an issue for the jury.  Defendants want to examine the plaintiffs named, in part, relative to issues of diligence and the statute of limitations as in E above.  Defendants also want to question the named plaintiffs about the merits of their case to the extent they know.  The Court **GRANTS in part** and **DENIES in part** this section in that **defendants can inquire of the named plaintiffs regarding the matters related to the**

**statute of limitations and the merits of the case. The defendants cannot suggest or argue to the jury that one or more named plaintiffs are not qualified to be a named plaintiff, which is a determination for the Court.**

M. Any discussion or evidence that a verdict for the plaintiffs or a trebling thereof or interest thereon would be a windfall for any other party or person. Plaintiffs seek to prevent any discussion or argument about interest on the verdict nor the possibility of trebling damages by the Court. Defendants agree to that portion and, thus the Court **GRANTS** it. However, defendants object to the portion of the motion that states, "because 'the law of the case' establishes that plaintiffs are entitled to the entire amount of damages they seek." The Court need not rule on whether the plaintiffs are "entitled" to the damages they seek. Plaintiffs certainly will be allowed to argue the issue of damages before the jury but must not advise the jury that damages must be awarded regardless of the evidence. The argument before the jury must be that the jury may award damages to the extent they are a reasonable inference from the evidence.

N. Any comment or evidence that plaintiffs were or might have been involved in other accidents which State Farm covered before or after the Avery verdict. Plaintiffs move to prevent any evidence of any other accidents before or after the *Avery* verdict in that such accidents are irrelevant. Defendants seek to introduce evidence of all accidents during the time covered by the *Avery* litigation since the evidence is relevant to a per capita argument for recovery. One example, defendants give though is a plaintiff who had one accident that was covered by *Avery*, and then before the matter was resolved he had another totaling his car, thereby precluding him from being eligible for damages on that car. The Court finds that defendants are allowed to introduce evidence about damages associated with the *Avery* litigation, however, any accidents before or after the accident which causes that plaintiff to be eligible to participate in *Avery* is not allowed by the Court on the basis that such accidents are irrelevant to the *Avery* litigation and therefore to this litigation. The Court **GRANTS in part** and **DENIES in part** this portion of the motion.

### Plaintiffs' motion in limine to exclude re Wojcieszak and Denton's attribution of money to Karmeier campaign (Doc. 800)

Plaintiffs move to bar "defendants from presenting evidence and argument referring to Doug Wojcieszak and Tom Denton's attribution of money supporting

the 2004 Karmeier Campaign to Philip Morris," pursuant to Fed.R.Evid. 402 and 403 (Doc. 800). Specifically, plaintiffs argue that the Court should exclude evidence that Wojcieszak, and Denton for a short time, were responsible for attributing a large amount of Karmeier campaign donations to Philip Morris because such evidence is completely irrelevant to the pending case and would confuse the issues, mislead the jury and result in unfair prejudice to the plaintiffs. Furthermore, plaintiffs assert that their case "does not depend on evidence uncovered or generated by the Investigators," but instead "relies on information obtained in discovery revealing the extent of the relationships and funding between Defendants and third-party organizations involved in the 2004 Illinois Supreme Court campaign." (*Id.* at 2).

Defendants, on the other hand, assert that Wojcieszak's attribution shift between Philip Morris and State Farm is "relevant and essential" to State Farm's defense in this case, as it goes directly to Wojcieszak's credibility. Defendants further argue that the changes in Wojcieszak's story are relevant to this case, and his work for the Maag campaign is relevant to show his bias. Specifically, defendants assert that Wojcieszak was working for the *Price v. Philip Morris* plaintiffs' counsel when he came up with research designed to show that just under $4,000,000 of the Karmeier campaign donations came directly, and indirectly, from Philip Morris, its affiliates, and its supporters of the Karmeier campaign donations. Almost immediately thereafter, Wojcieszak was hired by the *Avery* plaintiffs' counsel, at which time he produced a "white paper" that showed

the exact same contributions to the Karmeier campaign, mentioned above, were attributable to State Farm, not Philip Morris.

Clearly, if what is asserted by defendants is true, or the evidence is such that a jury can reasonably infer that it is true, such evidence is highly relevant in this case. The proposed evidence is also clearly more probative than prejudicial and highly relevant because it gives some insight into the credibility of Wojcieszak. Thus, the Court **DENIES** the motion (Doc. 800).

**Plaintiffs' motion in limine regarding tort reform and etc.  (Doc. 802)**

Plaintiffs move to exclude evidence or reference of "tort reform" or a purported "litigation crisis," "lawsuit crisis," "medical crisis," "medical malpractice crisis," or similar concepts or phases.  Also, plaintiffs move to exclude references to Williamson County, Illinois or Illinois Judge John Speroni as being part of or contributing to a "judicial hellhole" and exclude any argument or suggestion that this case is "frivolous" or "lawyer driven" or mentioning at trial the May 2003 "subpoena incident" at the Madison County Courthouse. Defendants assert that many of the words sought to be banned are central to the defense of their lack of ill motive in seeking to defeat Judge Gordon Maag in the election.  They seek to have the liberty to defend against the plaintiffs' pursuit here by describing why different players were involved in this campaign in the first place.

The Court will prohibit using the subject words in a comment, characterization or accusation about the class action lawsuit at bar (*Hale*) or the

underlying suit (*Avery*). However, those words can be used, to the extent they appropriately describe a relevant matter. For example, it is permitted for a defendant witness to testify that he was involved with tort reform and anti-lawsuit abuse causes because of his beliefs and not because this particular case or the *Avery* case. Thus, the Court **GRANTS in part** and **DENIES in part** this motion.

**Plaintiffs' motion in limine to exclude *Skene v State Farm* (Doc. 803)**

Plaintiffs' eighth motion seeks exclusion of any evidence of, or reference to *Skene v. State Farm,* a 1999 class action filed in Arizona State Court in which Bryan Cave defended State Farm (Doc. 803). Specifically, plaintiffs argue that the fact that Bryan Cave represented State Farm in *Skene*, a class action similar to *Avery v. State Farm,* is simply not relevant to plaintiff's RICO allegations in this case, and also is inappropriate for the cross examination of Mark Harrison, plaintiffs' judicial ethicist.

Plaintiffs assert that Harrison, who was employed by Bryan Cave at the time they defended State Farm in the *Skene* class action, did not work on the *Skene* case and knew nothing specific about it. Specifically, plaintiffs point out that "Mr. Harrison testified that although he was generally aware that Bryan Cave had represented State Farm when he worked there, he testified that he was not aware of the nature of the case and certainly had never worked on it while at the firm." (Doc. 803, pg. 2). Defendants counter arguing that Harrison, as a member of Bryan Cave, had a duty to know about the *Skene* litigation (Doc. 850). Additionally, defendants argue that since his firm represented State Farm, he

cannot now be heard to provide expert testimony in a manner inconsistent with State Farm's interest.

Upon review of Mark Harrison's deposition testimony, the Court finds that it clearly demonstrates that the *Skene* case, being a 1999 class action, is too remote in time, and Harrison's lack of responsibility for the case file in the office presents no prohibition for him to testify as an expert witness in this case. Harrison had no financial interest in the legal entity that is State Farm and has no financial interest in the case at bar. Therefore, the Court **GRANTS** the motion (Doc. 803).

## Plaintiffs' motion in limine to exclude certain testimony from defendants' expert Thomas D. Morgan (Doc. 805)

Plaintiffs seek to exclude evidence of Judge Williams' November 25, 2014 Memorandum and Order, the fact that the Order was not appealed from and Mr. Morgan's opinion's about the significance of the Order.[2]  Defendants counter that this motion is an ill-fated, ill-timed *Daubert* motion and should be denied. Defendants contend that Morgan claims they are entitled to rely on and to refer to Magistrate Judge Williams' Order because it is relevant and covered by Federal Rule of Evidence 703.  Further, defendants contend that it does not matter if

---

[2] In Morgan's expert report, he cites to Magistrate Judge Williams' November 25, 2014 Memorandum and Order and recounts various of Judge Williams' findings including that plaintiffs did not make a prima facie showing of fraud.  Further in his report, Morgan observes: "Plaintiffs did not ask the presiding Judge, Chief Judge Herndon, to review Judge Williams' findings and conclusion. Nor have Plaintiffs made any subsequent attempt to make a factual showing that would justify invoking the crime-fraud exception to the attorney-client privilege."  Later in his report, Morgan states: "it is now almost three years since Judge Williams' Order and the Plaintiffs have not brought additional material before Judge Williams to renew their attempt to pierce the attorney-client privilege."  Morgan opines that there are insufficient facts supporting plaintiffs' views and that defendants or their lawyers misrepresented material facts and law to the Illinois Supreme Court in 2005 and 2011.

Morgan is wrong, he should be allowed to present his testimony and let the jury decide this issue.

The Court does not find the motion to be a *Daubert* motion as plaintiffs did not ask the Court to disqualify witness Morgan. Simply, plaintiffs ask the Court if it is appropriate for an expert witness to testify about and rely on a certain order of the Court. The principle problem with the testimony by Dean Morgan regarding the early Order by Magistrate Judge Williams is that it will not assist the jury. Judge Williams' Order was not dispositive of any issues in this case. It was entered early in the litigation before all the facts were known and before discovery closed. It will not assist the jury to know what the state of affairs were when the ruling was entered, any more than it would assist the jury to know the undersigned judge entered an Order nearly the polar opposite years later. The jury will have to decide the facts according to the evidence presented at trial. Furthermore, under Federal Rule of Evidence 403 it would be highly prejudicial to the plaintiffs and have no probative value in light of the timing of the Order. In addition, allowing the testimony in the trial will likely only confuse the jury. The Court would be required to instruct the jury that the undersigned judge entered a much later Order, providing both dates to the jury, and that the undersigned judge found, after the close of the discovery, that there was sufficient evidence to go forward on the issues that the other judge found, some year before and before discovery was completed, there was not. The jury, even after such an explanation from the Court, likely would not understand, trying to decipher for themselves

which judge was correct. The chance of the jury understanding the difference, made with the passage of time and the databank of knowledge being larger, is slim. Accordingly, the Court **GRANTS** the motion and **BARS this testimony of defendants' expert Thomas D. Morgan**.

**Plaintiffs' motion for permission to use leading questions as to Justice Karmeier and his campaign staff (Doc. 806)**

Plaintiffs move to allow counsel for plaintiffs to examine Justice Karmeier and his 2004 campaign staff with leading questions. Plaintiffs assert that each is so closely aligned with one or more of the defendants that their interests are adverse to the plaintiffs. Murnane argues that plaintiffs have not yet shown the necessary closeness between the defendants as to allow leading questions this far in advance of the trial. State Farm argues there is no evidence of the kind of facts which would prompt the court to allow leading questions.

The district court has the inherent authority to manage the course of a trial. *Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). The court may exercise this power by issuing an evidentiary ruling in advance of trial. *Id.* Clearly, from reading the record in this case, including the depositions and the arguments in this case, most of which State Farm's counsel wrote for all three defendants, the defendants' interests are so closely aligned as to precipitate this ruling of the Court, in limine, to grant plaintiffs' request to ask leading questions of Justice Karmeier and his 2004 campaign staff. Accordingly, the Court **GRANTS** the motion and **ALLOWS plaintiffs to examine Justice Karmeier and his 2004 campaign staff with leading questions**.

**Plaintiffs' motion to bar testimony of (1) Illinois State trial and appellate process; (2) best practices in judicial campaigns & recusal motions; and (3) the credibility of fact witnesses (Doc. 808)**

Plaintiffs argue that certain of defendants' experts, Justice O'Brien and Stiroh, should be precluded from relying on certain facts in arriving at their opinions. Substantively, plaintiffs argue that the matters they seek to exclude are irrelevant, or, if relevant, are unduly prejudicial, misleading and likely to create substantial confusion. Specifically, plaintiff's main concern with regard to Justice O'Brien's testimony regarding the issues in this motion is that in addition to being irrelevant the fact that she is a retired appellate judge could heighten the likelihood that jurors will believe her testimony and raise it to the level of something relevant to the ultimate issues in this case. One of those issues is the best practices for campaigns and the conduct of court business which plaintiffs argue are irrelevant to the issues in this case. Plaintiffs also suggest that Justice O'Brien's opinion about whether Justice Karmeier would keep his promise to the voters, whether he decided the case free from outside influence, whether Stiroh's testimony about the issue of Justice Karmeier knowing or not about the sources of his campaign funding, is irrelevant as mere opinions of one witness regarding the other witnesses' credibility. Defendants counter that the motion is an ill-timed *Daubert* motion. Defendants argue further that the testimony regarding the workings of the other courts is relevant and needed to provide the jury with background information about the courts. Defendants assert that the propriety of Justice Karmeier's knowledge or lack of knowledge of the identity of contributors

to his campaign and his related conduct is directly relevant to proving or disproving plaintiffs' claims.

The Court finds this motion is proper and not a regurgitated *Daubert* motion. The plaintiffs' motion is not directed to the qualifications of the witnesses but rather to the relevance of the testimony to be elicited. On the subject of the workings of the appellate courts, the Court finds such testimony irrelevant. The facts that are relevant are those surrounding the actual deliberations of the Illinois Supreme Court on the *Avery* case, Justice Karmeier's decision to participate and why, as well as his efforts to convince other justices to rule in favor of a party who had, if the jury believes the plaintiffs otherwise, a role in attempting to assure his election to the Illinois Supreme court in the first place. How another court in the appellate system, and a certain segment of its justices, operates is irrelevant to that issue. The parties in this case agreed and the Court also precluded the parties from discovering evidence about the deliberations of the Illinois Supreme Court. As for testimony about best practices, the analysis is the same. What one experienced appellate justice knows about how matters should be conducted does not mean that every appellate justice, at either level, will agree or even if he does agree, conduct himself in accordance with the best practices as verbalized by another justice. So when defendants take the position that the conduct of Justice Karmeier regarding knowing or not the identity of his contributors and his related conduct is relevant, defendants are correct. When defendants conclude that the opinion from an experienced judicial officer is relevant with regard thereto,

defendants miss the mark. What an experienced justice knows about how something should be done is irrelevant to whether another justice or the justice in question actually conducted himself in that fashion. The defendants' argument that Justice Karmeier testified that he did things in a way that would allow someone to conclude he did it right, makes the testimony of best practices appropriate. To the contrary, it is the job of the jury to assess the credibility of the testimony of Justice Karmeier, not the job of an expert witness. Furthermore, the Court agrees with plaintiffs' suggestion that one witness cannot comment on the credibility of another when it is not opinion or reputation testimony about a witness' character for truthfulness. Fed.R.Evid. 608.

The Court concludes that it is inappropriate to have other witnesses, for the purpose of this motion, Justice O'Brien and Stiroh, opine that best practices are a certain conduct and that they find Karmeier to be credible and, therefore, complied with those practices and did nothing wrong. Accordingly, the Court **GRANTS** the motion and **BARS testimony and evidence of (1) Illinois State trial court process and appellate court process; (2) best practices in judicial campaigns & recusal motions; and (3) the credibility of fact witnesses.**

**<u>Plaintiffs' motion in limine to bar defendants from presenting evidence of and referring to any other companies--other than State Farm--that donated to the U. S. Chamber of Commerce or the Institute of Legal Reform (Doc. 810)</u>**

Plaintiffs' fourth motion seeks to bar defendants, their witnesses, experts, and attorneys, at trial, from presenting evidence of or referring to companies other than State Farm that contributed money to the U.S. Chamber of Commerce

("USCC") or the Institute of Legal Reform ("ILR"), including the amount of any contributions, pursuant to Fed.R.Evid. 402 and 403 (Doc. 810). Specifically, plaintiffs argue that that they were precluded from discovery on this issue, and therefore, it is irrelevant to the pending litigation, and likely to "confuse the issues, mislead the jury, and result in unfair prejudice to the plaintiffs." (*Id.*) Moreover, plaintiffs assert that the names of the other companies are not readily apparent, and the contributions from other companies to these organizations is not relevant to the fact of what defendants contributed to said organizations.

In response, defendants argue that evidence of the aforementioned contributions to the USCC is relevant because it goes directly to what plaintiffs must to prove in this regard: (1) that the USCC and ILR used State Farm's annual dues payments, and not money generally collected from all their members, when they supported the Karmeier campaign; and (2) that the USCC and ILR were acting as mere "front groups" for State Farm, as opposed to representing the civil justice reform interests of their broad constituents and contributing members. (Doc. 849).

Here, the Court agrees with defendants that evidence of other companies' contributions to the USCC and ILR may be relevant, and more probative than prejudicial, to the issue of whether State Farm's affiliated donors contributed money to the USCC and ILR for the purpose of having that money sent, in one form or another, to the Karmeier campaign. However, in order to prevent speculation and allow the jury to decide this factual issue, USCC and ILR records,

in addition to the evidence about the other companies, entities or individuals who contributed money to the USCC and ILR, must reveal: (1) contributor names; (2) the amount of said contributions; and (3) the date all such contributions were made. Without that information, the evidence is only speculative as to motive and nearness in time to the campaign donations made to the Karmeier campaign, or its demonstrated affiliates. Therefore, the Court **DENIES** the motion (Doc. 810).

**Plaintiffs' motion in limine to bar evidence of the vote count in *Avery* as proof of how the Illinois Supreme Court Justices would have voted absent Justice Karmeier's participation (Doc. 811)**

Plaintiffs move to bar evidence of or references to the Illinois Supreme Court's vote in *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005). Plaintiffs contend that the vote count is irrelevant to the issues of causation and injury and cannot be used to prove how the Illinois Supreme Court would have ruled without Justice Karmeier's participation. Part of plaintiffs' fear is that the jury will be confused by the inclusion of the evidence. Defendants, on the other hand, suggest that the fact of the vote count is central to plaintiffs' claims of RICO causation and injury. Defendants also contend that the "overwhelming unanimity" of the votes cast are not only central to plaintiffs' case but to the defenses' case as well. Moreover, the Illinois Supreme Court's six-zero vote "means it is impossible for Plaintiffs to show that Justice Karmeier's participation altered the outcome in the Illinois Supreme Court."

The first question an unbiased observer might point out is that "overwhelming unanimity" is at the very least a redundancy and, perhaps, at most

demonstrates the absurdity of the concept which it apparently is meant to convey. What is clear is that a jury cannot and must be instructed against speculating in order to derive a conclusion from the evidence. *See Berry v. Deloney*, 28 F.3d 604, 609 (7th Cir. 1994). What is also clear is that the parties to this case cannot know what occurred in the deliberation of the Illinois court in the *Avery* case. Likewise, neither party can possibly know what Justice Karmeier said in those deliberations and what effect, if any, his comments had on other members of the Illinois Supreme Court.[3] Only Justice Karmeier and the other members of the Illinois State Supreme Court know what discussion ensued in connection with the deliberation. The deliberative process privilege prevents others from knowing.

One might argue that the unanimous vote count in *Avery* is circumstantial evidence of the complete failure of any effort by Justice Karmeier to effect the final result. Some might argue that it demonstrates an omission of effort by Justice Karmeier. Others might argue that the lopsided vote total demonstrates just how persuasive Justice Karmeier was during those deliberations. Other persons might argue that it is not indicative of anything because the secrecy attached to a court's deliberation prevents a reasonable inference of the motivation or influence of each member of the court. What is clear is that to introduce that vote count in

---

[3] Magistrate Judge Williams referred to the deliberation process privilege in the Order (Doc. 328), wherein he noted that there was no dispute among the parties regarding the application of that privilege to the litigation before the Court. In an Order ruling on the plaintiffs' appeal of the aforementioned Order, the undersigned judge affirmed the deliberation privilege in the Order reversing Judge Williams' order quashing the subpoena of Justice Karmeier (Doc. 358, p. 11). The privilege and its applicability were confirmed again in another Order of the Court (Doc. 520).

evidence from which certain reasonable inferences can be drawn would invite speculation about which "reasonable" inference can be made and relied upon.

Pursuant to Federal Rule of Evidence 403 the evidence will not be allowed to avoid confusing the issues and misleading the jury. Thus, the Court **GRANTS** the motion and **BARS evidence of the vote count in** *Avery* **as proof of how the Illinois Supreme Court Justices would have voted absent of Justice Karmeier's participation**.

### Plaintiffs' motion in limine to exclude any reference to a duty of necessity or duty to sit (Doc. 813)

Next, plaintiffs move to exclude testimony from Justice Karmeier about a duty of necessity and/or duty to sit that he may claim compelled him to participate in the *Avery* matter when he first joined the Illinois Supreme Court in 2005. Based on the reasoning here, the Court expands its ruling to any witness, not just Justice Karmeier. Plaintiffs argue that in Illinois the rule of necessity is not employed to resolve a deadlocked court, with citations to many cases where the matter at issue was a deadlocked vote. Plaintiffs maintain that in the case of a deadlock, the court simply dismissed the appeal due to the tie vote, with the effect of an affirmance with no precedential value. Plaintiffs further argue that in each of these cases, similar to the case at bar, no consideration was given to the rule of necessity. Defendants argue that the rule of necessity compels a judge to participate when necessary for adjudication of the matter, citing *United States v. Will*, 449 U.S. 200 (1980), which the Court finds has no application to the case at bar whatsoever. In *Will*, every federal judge, district, circuit and Supreme Court,

was potentially disqualified from hearing the case involving the failure of the government to maintain the income of the judges without diminishment of pay, including that created by inflation with no increases in pay to keep pace with the present cash value of the pay rate as compared with prior years on a year to year basis. Defendants also cite *Epstein v. Epstein*, 14-C-8431, 2017 WL 3168975, at * 1 (N.D. Ill. July 26, 2017) (Durkin, J.), out of the trial court in the Northern District of Illinois, by the well-respected judge, Thomas Durkin.

It strikes this Court strange that with so many cases providing examples of a similar case as the case at bar wherein a judge who was actually disqualified did recuse, even if such action meant the case would be deadlocked and the judgment below affirmed without precedential value, that anyone could suggest the rule of necessity is applicable to the *Avery* case and Justice Karmeier's choice to employ that doctrine and continue to sit on the case. Those persons who had the perception of bias on the part of Justice Karmeier are left to wonder if his application of the rule of necessity, if that is what he actually did in *Avery*, was for the express purpose of avoiding a deadlock which would have meant the Fifth District's affirmation remained intact.

In *Will*, with every federal judge in the nation potentially disqualified, the application of the rule of necessity is clear. In *Epstein*, the language was appropriate inasmuch as the judge there was not disqualified and so had the duty to hear the case. In *Avery* there was significant evidence that Karmeier was disqualified for bias and the application of the rule of necessity was inappropriate.

Thus, the Court **GRANTS** the motion and **BARS any reference to the duty of necessity or duty to sit**.

## Plaintiffs' motion in limine re equalizing peremptory challenges and limiting repetitive presentations by multiple defense counsel (Doc. 814)

Plaintiffs move in limine so that that defendants share the same number of peremptory challenges as allowed by plaintiffs and that defendants be limited in their conduct of trial so as not to make multiple, repetitive arguments or presentations to the jury. Each defendant vehemently defends the right of each party to have legal representation through the trial. It is clear, as pointed out by the plaintiffs, the interests of the three defendants are so in alignment with one another that Murnane and Shepherd have generally, with a few exceptions, simply joined onto the pretrial pleadings filed by defendant State Farm.

First, with regard to the peremptory challenges, the Court recently ruled at the Final Pretrial Conference that each side (plaintiffs/defendants) not each party will be allowed 3 peremptory challenges. The defendants out of necessity should either share in the input regarding which veniremen to challenge or to elect among themselves the one person who will make such decisions. In any event, when the defense is called upon to question the jury in *voir dire* and to advise the Court of defenses' peremptory challenges, one person only shall ask questions of the jury and will speak to each such challenge on behalf of the entire defense team. The defendants will decide whom that one person is. If at the close of *voir dire* either of the parties whose lawyer did not ask questions for the defense side and who believes the selected counsel did not ask questions that should have been asked

may approach the bench and provide those questions to the Court, and the Court shall ask the questions he deems appropriate.

Insofar as plaintiffs' efforts to restrict the participation of Murnane and Shepherd in the examination of witnesses, the Court is in agreement to a point. It would be inappropriate and unduly prejudicial to plaintiffs to have, for example, Mr. Murnane's lawyer inquiring about something which pertain solely to State Farm or Mr. Shepherd. To allow that in this case could lead to the subversion of proper protocol by allowing one defense lawyer to have another defense lawyer representing by interrogation the client of the first defense lawyer. Therefore, lawyers shall inquire of witnesses only those matters which are pertinent to their own client. To the extent that certain areas of inquiry involve more than one defendant, each counsel shall be allowed to inquire about those matters with directly affect his client. The Court will allow State Farm and its lawyers to go first at each stage of the trial, Mr. Murnane and his counsel to go second, and Mr. Shepherd and his counsel shall have their turn third at each such stage.

To the extent that plaintiffs seek to prevent counsel for Murnane and Shepherd to sit mute, ask no questions, refrain from giving an opening statement and a closing argument, the motion is denied. Thus, the Court **GRANTS in part** and **DENIES in part** the motion to equalize (Doc. 814).

### State Farm's motion in limine Number 1 (Doc. 792)

First, defendants move to preclude plaintiffs from referring to or presenting evidence regarding the trebling of, or calculation of interest on, any damages.

Defendants argue that this type of evidence is irrelevant, unfairly prejudicial, confusing and misleading. Here, both parties agree that treble damages and pre-judgment interest on the *Hale* plaintiffs' damages are subjects for the Court and not the jury to consider. However, plaintiffs counter that the jury should be instructed as whether it determines the *Avery* post-judgment interest as part of the plaintiffs' damage package because if the jury decides the amount of the appellate award is the damage sustained that would have had interest tacked to it but for the defendants' wrongful conduct that caused the jury to award those damages. On the other hand, defendants argue vehemently against that position on the basis that the original judgment was never reinstated. In any event, defendants argue that since it is interest, which is something always decided by the judge, that the Court should decide the issue. The Court finds that this issue is within the province of the Court to decide and not the jury.

Accordingly, the Court **GRANTS** the motion. The Court **BARS all testimony and evidence regarding the trebling of, or calculation of interest on, any damages.** The Court will resolve these issues through post-trial motions/briefing if necessary.

**State Farm's motion in limine Number 2 (Doc. 793)**

Defendants' second motion seeks exclusion of "any reference by Plaintiffs' counsel and/or their witnesses to Chief Justice Lloyd A. Karmeier as being corrupt, bribed, conspiring with any Defendants, or entering a *quid pro quo* agreement with any Defendants" pursuant to Fed.R.Evid. 401, 402, and 403 (Doc.

793), and based on judicial admissions at 2014 hearings regarding this case before Magistrate Judge Williams. State Farm concedes that it does not know whether plaintiffs intend to make such assertions against Justice Karmeier, but wish to raise the issue for fear that if such references were made, the assertions would be extremely prejudicial and likely to inflame, mislead, and confuse the jury. Plaintiffs, in turn, argue that neither the record nor the law supports State Farm's request, and in the event that evidence at trial indicates that Justice Karmeier knew about State Farm's contribution, it would be highly relevant to plaintiffs' case (Doc. 862).

The Court finds that it would be improper and prejudicial to make reference to Justice Karmeier as being corrupt, bribed, conspiring with any Defendants, or entering a *quid pro quo* agreement with any Defendants, unless prior to doing so, plaintiffs demonstrate to this Court that there is sufficient evidence to draw a reasonable inference of such accusations, and offer exactly what that evidence is. The Court will not go so far as to preclude plaintiffs from arguing— if they can put forth a good faith argument—that there is evidence in this case sufficient to draw a reasonable inference that Justice Karmeier conspired with others in violation of the RICO Act. Therefore, the Court **GRANTS in part and DENIES in part** the motion (Doc. 793).

**State Farm's motion in limine Number 3 (Doc. 794)**

Defendants move to exclude references to money laundering. As plaintiffs do not object to this motion unless defendants "open the door," the Court

**GRANTS** the motion and **EXCLUDES any references to money laundering**.

**State Farm's motion in limine Number 4 (Doc. 796)**

In this motion, State Farm seeks to bar evidence or arguments not disclosed in interrogatory answers. Specifically, State Farm moves to preclude plaintiffs from introducing evidence or argument that (1) any Illinois Supreme Court Justice was influenced by Justice Karmeier in connection with the *Avery* decision, which plaintiffs swore in response to State Farm's interrogatory No. 6 is impossible to know and they do not so contend; (2) any Illinois Supreme Court Justice either was deceived by or relied upon statements in State Farm's January 31, 2005 brief or its September 19, 2011 brief in *Avery v. State Farm*, which plaintiffs swore in response to State Farm's Interrogatory No. 10 would require speculation and that they do not so contend; and (3) State Farm made any false statements or omissions in the briefs other than those identified in plaintiffs' response to State Farm's Interrogatory No. 12, which plaintiffs swore were the only alleged ones. Plaintiffs argue that this motion should be denied as it fails to identify with any specificity the arguments or evidence it seeks to exclude. Further, plaintiffs argue that it should be denied because any evidence or arguments purportedly not disclosed in plaintiffs' interrogatory responses are nonresponsive to the interrogatories, are immaterial, or were previously made known in discovery and in writing. The Court rejects plaintiffs' arguments. Contrary to plaintiffs' arguments, State Farm is very specific to the evidence it does not feel would be fair to present in light of plaintiffs' failure to provide

specific evidence in response to those questions to discover the evidence.  Thus, the Court **GRANTS** the motion limited to State Farm's specific request.   The Court **EXCLUDES the following evidence:  (1) any Illinois Supreme Court Justice was influenced by Justice Karmeier in connection with the** *Avery* **decision, which plaintiffs swore in response to State Farm's interrogatory No. 6 is impossible to know and they do not so contend; (2) any Illinois Supreme Court Justice either was deceived by or relied upon statements in State Farm's January 31, 2005 brief or its September 19, 2011 brief in** *Avery v. State Farm***, which plaintiffs swore in response to State Farm's Interrogatory No. 10 would require speculation and that they do not so contend; and (3) State Farm made any false statements or omissions in the briefs other than those identified in plaintiffs' response to State Farm's Interrogatory No. 12, which plaintiffs swore were the only alleged ones.**

### State Farm's motion in limine Number 5 (Doc. 797)

State Farm moves to bar plaintiffs from eliciting or commenting on testimony protected by privilege.  Specifically, State Farm moves to (1) preclude evidence that State Farm asserted claims of attorney-client privilege or work product protection during discovery; (2) prohibit any argument to the jury that an adverse inference may be drawn from State Farm's invocation of privilege; and (3) preclude plaintiffs from attempting to elicit testimony about attorney communications or attorney work product concerning State Farm's legal briefs in *Avery v. State Farm*.   In response, plaintiffs maintain that State Farm's motion

lacks sufficient specificity and must be denied.

Here, the Court **GRANTS in part** and **DENIES in part** the motion. This request is excessively broad in scope. For example, State Farm may have asserted a privilege but upon examining it the Court may decide it is not protected by any privilege. Privilege can be waived in situations where, for example, a client and a lawyer are in the room and the lawyer is speaking confidentially to the client, however, a third party is present which likely waives the privilege; the same could happen with written communication.

The Court agrees with State Farm that to the extent a privilege actually protects evidence from being considered or admitted, it is inappropriate to advise the jury that it can take an adverse inference from the non-production of the evidence. The Court also agrees that a lawyer cannot ask a question which would reasonably call for an objection on the basis of privilege. Such an objection in the presence of the jury may cause one or more jurors to be suspicious of a party who "hides" evidence from the jury.

As to the specific example given by State Farm regarding the attorney-client privilege surrounding the drafting of the briefs in the *Avery* case, to the extent that the privilege is maintained, not waived (see above), the Court agrees that the evidence cannot be introduced or inquired about.

Plaintiffs consent to respect privilege and avoid inquiring about or seeking the admission of evidence to which a legitimate privilege attaches. Parties should seek a ruling, out of the hearing of the jury, for evidence about which either is

uncertain if the privilege actually attaches.  Thus, the Court **GRANTS in part** and **DENIES in part** this motion.

**State Farm's motion in limine Number 6 (Doc. 799)**

Defendants' sixth motion seeks to preclude "Plaintiffs' counsel and witnesses from referring to or offering any testimony or other evidence regarding purported election law violations," pursuant to Fed.R.Evid. 401,402, and 403 (Doc.799). State Farm argues that testimony regarding alleged violations of election law: (1) constitutes impermissible legal conclusions, (2) is irrelevant because such violations have nothing to do with whether or not State Farm violated RICO, and (3) "creates a wasteful trial within a trial on collateral issues," where the possible prejudice to the defendants substantially outweighs the probative value of the evidence.

Plaintiffs, in turn, argue that there is no merit to State Farm's assertions that plaintiffs' expert opinions, regarding purported election law violations, constitute impermissible legal conclusions, and that mention of those purported election law violations violates Federal Rule of Evidence 403.

Here, the Court finds that claimed Illinois election law violations are neither an element of a RICO claim, nor are they predicate acts. Given that such testimony or evidence does not purport to answer the ultimate issue in this case as to whether there has been a RICO violation, the Court agrees with plaintiff's reasoning. Evidence regarding possible campaign finance and election law violations is clearly relevant in this inquiry, even if the jury will not be deliberating

on that issue, to provide context to State Farm's alleged efforts to conceal its contributions supporting the Karmeier campaign. Therefore, the Court **DENIES** the motion (Doc. 799).

**State Farm's motion in limine Number 7 (Doc. 801)**

Defendants' seventh motion seeks to preclude "Plaintiffs' counsel and witnesses from referring to or offering any evidence regarding alleged ethical duties owed or breached by State Farm's in-house and outside counsel," pursuant to Fed.R.Evid. 401,402, and 403 (Doc. 801). State Farm argues any reference to alleged ethical duties owed or breached by State Farm's counsel: (1) is irrelevant because such violations have nothing to do with whether or not State Farm violated RICO, and (2) would be unfairly prejudicial to State Farm and likely to mislead, and confuse the jury.

Plaintiffs, in turn, argue that evidence of ethical duties owed or breached by State Farm's lawyers is relevant to this case because "the Myers report and the materials cited therein show that State Farm covertly funneled money through intermediaries to support the 2004 Karmeier campaign." (Doc. 867, pg. 2). Plaintiffs allege that State Farm's lawyers either knew and misinformed the Illinois Supreme Court, or they did not make the reasonable factual inquiry required so as not to misinform the Court, and "because that furthered Defendants' fraudulent scheme, the ethical breaches of State Farm's lawyers are relevant to this RICO case." (*id.*).

Given that such testimony or evidence does not purport to answer the ultimate issue in this case as to whether there has been a RICO violation, the Court agrees with plaintiff's reasoning. Evidence regarding ethical duties owed or breached by State Farm's counsel is clearly relevant in this inquiry, even if the jury will not be deliberating on that issue. Therefore, the Court **DENIES** the motion (Doc. 801).

## State Farm's motion in limine Number 8 (Doc. 804)

State Farm contends that all evidence of campaign advertising should be excluded as irrelevant as this evidence does not have any bearing on the issues in the case and that this evidence is highly prejudicial, confusing and will mislead the jury.  Plaintiffs oppose the motion arguing that evidence of contributions to groups that created electioneering communications (campaign advertisements) intended to benefit Justice Karmeier's campaign and intended to hurt Justice Maag's campaign are highly relevant and probative as to whether State Farm violated RICO.  The Court agrees with plaintiffs' reasoning and denies the motion. The Court finds this evidence is relevant and can be presented to the jury if admissible evidence is available.   The jury should be allowed to make this determination.  Thus, the Court **DENIES** this motion.

## State Farm's motion in limine Number 9 (Doc. 807)

Defendants' ninth motion seeks to exclude "any evidence, statement or argument related to the involvement of lawyers in the Illinois State Bar Association's ("ISBA") Judicial Evaluation Committee (the "JEC") in 2004, and

specifically any argument that State Farm supposedly "subverted" the JEC "by placing four of its lawyers" on it," pursuant to Fed.R.Evid. 402 and 403 (Doc. 807). State Farm argues that any reference to the involvement of its lawyers— Judge April Troemper, Stanley L. Tucker, Alan Sternberg and Robert H. Shultz— in the JEC  is irrelevant based on plaintiffs' previous admissions that there was no scheme to defraud the JEC. State Farm also argues that whether or not Mr. Schultz should have recused from the JEC is irrelevant and prejudicial, and injecting Mr. Shultz's voluntary service on the JEC into the trial would be "unfairly prejudicial, and confuse and mislead the jurors, by asking them to second-guess a decision that was his alone to make, which is not at issue." (Doc. 807, pg. 7)

In this case, plaintiffs allege that Shultz and Sternberg's participation on the JEC advanced defendants' fraudulent scheme to elect a sympathetic judge— Justice Karmeier—to the Illinois Supreme Court, and later to conceal the nature of State Farm's support from the *Avery* class and the Illinois Supreme Court, in order to enable Justice Karmeier's participation in *Avery*.   In response to defendants' motion, plaintiffs point out that Shultz joined the JEC at the request of State Farm's Associate General Counsel, Robert Sternberg (Doc. 869-1, pg. 7). Moreover, Sternberg, too, was on the JEC, and had in-house responsibility for the *Avery* case. Sternberg actually hired and supervised Shultz during his representation of State Farm in the *Avery* case.

The Court finds the evidence at issue is relevant and more probative than prejudicial due to Shultz's representation of State Farm in the *Avery* case, but particularly in light of the fact that State Farm's Associate General Counsel, Robert Sternberg, asked Shultz to join the JEC. The claim that Schulz had nothing to do with *Avery* as a pending matter before the Illinois Supreme Court, is clearly within the fact-finding realm of the jury. Therefore, the Court **DENIES** the motion (Doc. 807).

## State Farm's motion in limine Number 10 (Doc. 809)

Defendants move the Court to preclude plaintiffs from referring or presenting evidence or argument regarding *per capita* damages. Defendants contend that plaintiffs have not shown any legal or factual basis for an award of *per capita* damages thus these damages are irrelevant, unfairly prejudicial, confusing and will mislead the jury. Plaintiffs counter that this motion in limine is an effort to seek reconsideration of issues already litigated and decided in plaintiffs' favor. The Court agrees with plaintiffs' reasoning and denies the motion in limine. As noted in plaintiffs' memorandum in opposition, the Court previously in its Memorandum and Order certifying the class found that damages could be allocated on a *per capita* bases:

> [t]he damages in this case are not based on State Farm's practice of equipping its insureds' vehicles with substandard non-OEm crash parts as the damages were based in *Avery*; instead the injury in this case is based on the interest of the plaintiffs and the proposed class members had in a neutral forum and the damages correspond with the undivided interest in the judgment each lost as a result of the tainted tribunal.

(Doc. 556, ps. 20-21). On July 3, 2018, the Court again rejected State Farm's

arguments regarding *per capita* damages in its Memorandum and Order denying defendants' motion for summary judgment (Doc. 846, p. 16). The Court is not going to reconsider its previously rulings on this subject. Thus, the Court **DENIES** the motion.

## State Farm's motion in limine Number 11 (Doc. 812)

Defendants move in limine to exclude the "Campaign for 2016 Chronology" document and in particular, reference to an unidentified "deadlock" in footnote 2. Defendants maintain that the footnote is inadmissible hearsay, irrelevant, unfairly prejudicial, confusing and misleading. As with other motions in limine, plaintiffs argue that the motion is not a motion in limine, but rather a motion to reconsider the Court's denial of defendants' motion to strike summary judgment evidence. Plaintiffs argue that defendants raise the same arguments in this motion that they raised in the motion to strike. The Court agrees with plaintiffs that this motion is a motion to reconsider and the Court is not going to change its previous ruling. The Court will not depart from its previous ruling that this evidence is not privileged, it is admissible and it is relevant to the issues in this litigation. Further, the Court finds that this timeline is not so unfairly prejudicial or so confusing that it would outweigh its probative value. Thus, the Court **DENIES** this motion.

## State Farm's motion in limine Number 12 (Doc. 815)

Next, defendants move to preclude plaintiffs from referring to or presenting evidence or argument regarding their claim that Justice Karmeier's participation

in *Avery* deprived them of a neutral forum and due process. Defendants maintain that RICO causation will not be satisfied by a showing that the Illinois Supreme Court was "tainted" by Justice Karmeier's participation. Defendants maintain that allowing this irrelevant evidence is highly prejudicial, confusing and misleading. Plaintiffs assert that this issue has been decided three previous times in plaintiffs' favor and now defendants raise the issue again in this motion. The Court agrees with plaintiffs' reasoning. Once again, as noted by the plaintiffs, the Court is asked by defendants to rehash previously decided issues. This issue is certainly relevant to this litigation. The Court has reviewed its previous rulings and finds there is no reason to depart from them. Thus, the Court **DENIES** this motion.

**State Farm's motion in limine Number 13 (Doc. 816)**

Defendants ask the Court to bar plaintiffs' counsel from referring to or presenting argument regarding excluded expert testimony because any such references would cause unfair prejudice to State Farm, confuse the issues and mislead the jury. The Court agrees with State Farm that if the undersigned has excluded the testimony then that the actual testimony of the expert shall not be introduced as it would confuse the jury. Thus, the Court **GRANTS** this motion.

**State Farm's motion in limine Number 14 (Doc. 817)**

Defendants move to exclude from the trial any comment or reference which would imply that any defendant or non-party has not fully complied with plaintiffs' requests and subpoenas for documents in this case as this evidence

would be irrelevant, unfair and prejudicial. Defendants maintain that they and non-parties have complied with their obligations under the Federal Rules of Civil procedure to produce documents in response to plaintiffs' requests for production and subpoenas. In response, plaintiffs contend that they are not satisfied that they have received anything near full disclosure across the breadth of discovery conducted and that they should not now be hamstrung from being able to detail information they did not or were not able to consider.

The Court finds it inappropriate to comment on the issue of a party not providing something in discovery which is then compelled by court order. To the extent that an inquiry comes about like in the quoted portion of plaintiffs' response relative to Mr. Myers (Doc. 874, pg. 2), then the answer there is acceptable particularly since the question provoked the information. However, for plaintiffs to speculate that defendants are hiding something or have not produced something they were required to produce is inappropriate and will not be allowed. It would appear that the following situation does not exist, however, if a party was ordered by the Court to produce something but did not, the Court may allow that circumstance to be presented to the jury but only after a discussion with the Court out of the hearing of the jury. Thus, the Court **GRANTS in part** and **DENIES in part** this motion.

## State Farm's motion in limine Number 15 (Doc. 818)

Defendants move to exclude certain unfair and misleading references to non-OEM parts. Specifically, defendants move to preclude evidence of State Farm

having used "Taiwan Tin" or using similar xenophobic phrases. Further, defendants move to bar plaintiffs from suggesting that State Farm had a practice of specifying defective non-OEM parts in auto-repair estimates and to bar plaintiffs from claiming that lower court judgments in *Avery* conclusively establish that the non-OEM parts were categorically or universally inferior. State Farms contends that allowing such evidence would be unfairly prejudicial and irrelevant. Plaintiffs, in turn, argue that limited background information is essential to provide jurors a fair understanding of the nature of the case that formed the basis for the property that was taken from the *Hale* plaintiffs. Plaintiffs also argue that it is questionable whether State Farm's desire to hide this information from the jury is even possible, given that the nature of *Avery* is public information and the class notice makes clear that the case involved aftermarket parts. Plaintiffs state that they have no intention of referring to "Taiwan Tin" or "using similar xenophobic phrases" or inflammatory descriptions at trial. Further, plaintiffs state that they will not suggest that the trial court and intermediate appellate decisions in *Avery* "conclusively establish" the "categorical" inferiority of non-OEM parts.

The Court finds that is not appropriate for the jury to decide once again the merits of the *Avery* case. Included within that prohibition is a restriction that there will be no effort to have this jury ratify the results of *Avery* in this trial. It is permissible for brief information about what the underlying case was about. However, the phrase "Taiwan Tin" and the like will not be allowed. As commonly

used in this type of situation, the phrase is discriminatory in matters of race and xenophobia which has no place in this litigation. Thus, the Court **GRANTS in part** and **DENIES in part** this motion.

## State Farm's motion in limine Number 16 (Doc. 820)

Again in this litigation, defendants move to exclude evidence or argument that plaintiffs are entitled to damages that were reversed by the Illinois Supreme Court in *Avery*. Specifically, defendants move in limine on the grounds of *Rooker-Feldman*, *res judicata*, and judicial estoppel. The Court rejects defendants' arguments. The defendants treat the *Avery* damages as though they do not exist and so plaintiffs cannot possibly be awarded an amount equal to those damages since they no longer exist. It is clear from this request that defendants' counsel continue to misunderstand, refuse to understand or refuse to reveal to the Court that they understand the nature of this litigation. The plaintiffs' class, if found to be the victims of a RICO conspiracy which deprived them of a fair and honest hearing before the Illinois Supreme Court, and one or more of the defendants is culpable for that deprivation, the jury could decide to award the class damages. The damages that result then will therefore represent what damages the jury determines are appropriate as a result of that deprivation. The damages are not a question of law if the jury finds for the class, rather a question of fact to be determined by the jury. The jury theoretically could find that the damages equal to those at stake in the *Avery* case or could decide the damages are something else entirely. If the RICO Act is found to have been violated by the jury, it is the

Court's obligation to apply the statutory damages. Therefore, the Court **DENIES** defendants' motion as framed.

**Murnane's motion in limine regarding legal representation (Doc. 795)**

Here, the law firm of Sidley Austin LLP is representing Murnane "pro bono." According to Murnane's deposition, Murnane testified that he has not received any bills for legal services and that he does not believe that State Farm is paying his legal fees. Plaintiffs counter that this is relevant evidence regarding the issue of bias arguing that if another party is paying for his legal representation then his testimony might be inclined to favor that party. The Court finds that this information is relevant to the issue of bias and can be explored in the light of the equivocation in Murnane's testimony in his deposition. Balancing the prejudice to other parties against the possibility of uncovering bias, the Court finds the probative value outweighs the potential prejudice. From an equitable position, it is possible that if a jury is inclined to find damages were coming to plaintiffs they may decide to let Murnane off the hook because he could not afford his own legal representation. Thus, the Court **DENIES** the motion.

   **IT IS SO ORDERED.**

Judge Herndon
2018.08.21
17:03:41 -05'00'

**United States District Judge**