IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK HALE, TODD SHADLE and LAURIE LOGER, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 12-cv-00660-DRH-SCW |
| v. | Judge David R. Herndon<br>Magistrate Judge Stephen C. Williams |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, EDWARD MURNANE, and WILLIAM G. SHEPHERD, | |
| Defendants. | |

### DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO EXCLUDE PLAINTIFFS' PROPOSED TELEPHONE EVIDENCE AND MEMORANDUM IN SUPPORT

Pursuant to Federal Rules of Civil Procedure 26(a)(2)(D)(ii) and 37(c) and Federal Rules of Evidence 401-03, 902, and 1006, Defendant State Farm Mutual Automobile Insurance Company ("State Farm") hereby moves to strike and exclude the report and testimony of Cydni Arterbury ("Arterbury") and Luke Chung ("Chung"), submitted with Plaintiffs' Amended FRE 902(11) Notice of Intent to Offer Records and Certification Pursuant to FRE 902(13) and FRE 1006.  The Notice of Intent, served less than two weeks before trial,[1] was followed the next day (August 22) by a late afternoon delivery of a USB drive containing the 40,583 documents allegedly supporting the Notice, and amended again at the final hours just before this filing.  The bulk of the forty thousand pages are copies of records subpoenaed from Verizon and AT&T (the "Phone Company Records") and logs produced from State Farm's Avaya phone system (the "Avaya Phone

---

[1] As State Farm was in the process of finalizing this motion, Plaintiffs served an Amended Notice at 3:30 PM on August 28, 2018.

1

Logs"). However, two critical and improper Declarations (from Arterbury and Chung) were sandwiched in their midst. Each Declaration seeks to improperly self-authenticate proffered "summaries" under Federal Rule of Evidence 1006 and attempts to skirt Seventh Circuit precedent that requires the summaries accurately reflect admissible information in the underlying voluminous records. In support of its Motion, State Farm submits the following memorandum of law.

## I. INTRODUCTION

Under a plain application of the Rules of Evidence, the summaries proffered by Arterbury and Chung must be excluded from evidence. The Chung Declaration (supporting the ultimate "summaries" that Plaintiffs seek to introduce) reflect that he is effectively an undisclosed expert, who used his specialized knowledge and skill to create the reports being offered as summaries. Yet the time for expert disclosures has long passed. Chung's method and resulting documents have not been subject to the scrutiny required by Federal Rule of Civil Procedure 26(a)(2), which mandate the timely disclosure, discovery, and adequate opportunity to cross examine such expert analysis, nor have they been subjected to argument or analysis under Federal Rule of Evidence 702 or Daubert challenge, which his declaration certainly would have provoked. Moreover, both the Arterbury and Chung submissions fail faithfully or accurately to reflect the contents (and no more) of the underlying records as required by Rule 1006. The submissions also fail to satisfy the necessary requisites for self-authentication under Rule 902. The submissions are clearly inadmissible and would deeply prejudicial if allowed into evidence at this late stage on the eve of trial.

## II. PLAINTIFFS' PROPOSED RULE 1006 SUMMARIES SHOULD BE EXCLUDED BECAUSE THEY DO NOT MEET THE BASIC REQUIREMENTS OF RULE 1006

Federal Rule of Evidence 1006 is clear and straightforward: a summary, chart, or calculation can be used to prove the contents of admissible writings, recordings, or photographs that are too voluminous to be examined in court. FED. R. EVID. 1006. Importantly, however, the proponent of any such summaries, charts, or calculations admitted under Rule 1006 must "demonstrate that the underlying records are accurate and would be admissible as evidence" because "[the Rule] is not an end around to introducing evidence that would otherwise be inadmissible." *United States v. Oros*, 578 F.3d 703, 708 (7th Cir. 2009) (citing *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008)); *see also White v. Hefel*, 875 F.3d 350, 356 (7th Cir. 2017).

### A. Chung's Submission Is Essentially an Expert Report That Was Not Timely Disclosed, Does Not Provide the Requisite Foundation for Admissible Expert Testimony, and Must be Excluded

The Chung Declaration supports a report (Exhibit C to the Chung Declaration, the "Chung Report") that contains pages and pages of graphs and output that merge four distinct sets of documents: two sets of Phone Company Records, the Avaya Phone Logs, and the Arterbury Report in order to create a report of phone numbers called that both attributes calls to specific individuals, and presents a visualized matrix of alleged communications between specific individuals.[2] This information does not exist in any one document (or series of similar documents), but instead requires a complex method to tie together multiple data points across the various records in order to create the outputs. To achieve this product, Chung applied his proprietary "queries and

---

[2] Chung's Report includes spreadsheets that contain ten (10) data points, six (6) of which do not appear on the Phone Company Records or Avaya Phone Logs: "Consolidated From," "Consolidated To," "Original From," "Original To," "Source From," and "Source To".

3

programming code [] run to create a list of phone calls between the provided names." (Chung Decl. ¶ 8.) This is plainly the work of a purported expert and far beyond the bounds permitted by Rule 1006. Moreover, the key link required for Chung's analysis, the Arterbury Report, which purports to connect names with phone numbers, contains critical errors that undercut any expert analysis.

Chung's work goes far *beyond* that of a mere summary of underlying admissible evidence of the type typically allowed under Rule 1006 and instead constitutes expert witness testimony. The mere fact that Plaintiffs hired Chung to use a specialized tool in order to analyze the telephone data indicates that his work requires specialized technical or other knowledge within the scope of Federal Rule of Evidence 702. Chung's Declaration even describes the specific expertise developed by his company (FMS) to "create[] an analytic tool that visualizes links between data, analyzes those links, and creates timelines for large amounts of data." (Chung Dec. ¶ 4.) He refers to a "routine" that "was used to consolidate the call records into a consistent format" and a "set of queries and programming code [] run to create a list of phone calls between the provided names," and asserts that his "process of consolidating, querying, and generating the results is automated and repeatable." (*Id.* ¶ 8.) That is expert testimony.

At a threshold level, Chung's Report is inadmissible as an expert report because it is not timely, has not been fully disclosed or tested, and Plaintiffs have not sought to qualify Chung as an expert. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) (exclusion of improperly disclosed expert testimony under Rule 37(c) "is automatic and mandatory unless the sanctioned party can show that its violation . . . was either justified or harmless.") (citing *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)). The timing of Plaintiffs' notice and submission cannot be reasonably explained. The Scheduling Order clearly established that Plaintiffs' experts had to be disclosed by September 22, 2017 ([605] at 1), yet Plaintiffs did not

4

even supply Defendants with Chung's Report until August 22, 2018. Chung executed his declaration on May 22, 2018 – *three months ago* – yet Plaintiffs waited until the week before trial to disclose it. The undue and severe prejudice imposed on State Farm by this last-minute ambush with undisclosed expert evidence cannot be ignored.

Even if the Chung Report had been timely disclosed it would still be inadmissible because it has not been shown to be based upon sufficient facts or data, or the product of reliable principles and methods, and there has been no opportunity to test whether Chung has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702. The Chung Declaration discloses nothing about the methodology encapsulated in Chung's proprietary software or the principles underlying his analysis to demonstrate that it is reliable. Instead, he merely lists various data inputs and summarily states that he ran "queries and programming code." (Chung Decl. ¶ 8.) This *ipse dixit* is patently insufficient.

In addition, Plaintiffs have not submitted the requisite information regarding Chung's specific "knowledge, skill, experience, training, or education" to qualify him as an expert. *Cf.* FED. R. EVID. 702. For all of these reasons, Chung has not been qualified as an expert and his Report must be excluded from evidence pursuant to Rule 702.

**B. The Report Attached to Arterbury's Declaration Relies on Inadmissible Evidence and Contains Inaccuracies That Render the Resulting Summaries Misleading and Unfairly Prejudicial.**

The Arterbury Declaration was amended by Arterbury on August 24, 2018, and served on State Farm four days later on August 28, 2018. Arterbury's Amended Declaration changes her testimony about the the steps taken to create Exhibit A. In her first declaration, Arterbury swore that "A telephone number and identity list was created by several individuals from the documents produced during discovery …" which she then "confirmed." (Original Arterbury Dec., ¶ 4.) Arterbury now also swears that "Plaintiffs' counsel created a list of key individuals" who "were

5

involved in the campaign" and *she* was the one who "took the list of individuals" and "connect[ed] the key individuals with particular phone numbers." (Amended Arterbury Declaration, ¶¶ 2-3.) Arterbury now swears that she did this by determining the "identity of individuals for the phone numbers using the Bate[s]-stamped documents produced in discovery by Defendants." (*Id.* ¶ 3.) But that is demonstrably untrue – many of the "source" documents she lists were produced by third-parties, as reflected by their Bates stamp, and at least one, WOJO 1521-1522 (for "USCC Media (Landline)") is an unauthenticated document produced by Plaintiffs themselves through their investigator. These errors are rife throughout Arterbury's Report.

Her report should also be excluded because it violates Rule 1006 of the Federal Rules of Evidence. "Rule 1006 'requires a party seeking to introduce a summary of voluminous records to provide copies of those records to the opposing party at a reasonable time and place.' . . . A reasonable time and place 'has been understood to be such that the opposing party has adequate time to examine the records to check the accuracy of the summary.'" *United States v. Isaacs*, 593 F.3d 517, 527 (7th Cir. 2010) (quoting *United States v. Rangel*, 350 F.3d 648, 651 (7th Cir. 2003)). The report purports to correlate 228 phone numbers with 18 "Consolidated Names" from over 80 sources. (Amended Arterbury Decl., Ex. F.) Assuming the report was created at the same time as Arterbury's original Declaration, which was also signed on May 22, 2018, Plaintiffs had this report for three months and only disclosed it last week, days before the parties are about to pick a jury. State Farm does not have "adequate time to examine the records to check the accuracy of the summary."

Even in the few days State Farm has had the report, it has discovered significant inaccuracies and misleading information that further undermine its presentation as a Rule 1006 summary. For example, lines 139-40 represents that a phone number was the landline at Justice Karmeier's Office, but that number is for the Office of the Circuit Clerk for Washington County.

*See* http://washingtoncountycircuitclerk.com.  That is a critical distinction.  Plaintiffs attempt to use this data to link State Farm and Justice Karmeier.  In fact, it does nothing of the sort.  There are a plethora of reasons why State Farm would call the Clerk's office.  Further, Line 131 states a certain phone number was a landline for the Illinois Coalition for Jobs, Growth and Prosperity, but that number belongs to the Illinois Manufacturers Association, which is not alleged to be part of the supposed RICO conspiracy.  *See* http://ima-net.org/contact.  Lines 4 and 6 refer to Murnane 44364 as the source for two phone numbers for Al Adomite, but Mr. Adomite is not mentioned anywhere in that chart by an unknown author.  Line 47 identifies a number as belonging to the CEO Class Action Task Force, but the source, HALEM 25549, is a press release from a completely different organization, the Class Action Fairness Coalition.  The necessary work required to examine each of the numbers, verify the source and correct the rampant inaccuracies is self-evident.

Moreover, the report states that the phone numbers were supposedly linked to people and organizations based on numerous hearsay documents produced in discovery.  "Before a summary is admitted, the proponent must lay a proper foundation as to the admissibility of the material that is summarized . . . ."  *Judson Atkinson,* 529 F.3d at 382  (quoting *Needham v. White Labs, Inc.*, 639 F.2d 394, 403 (7th Cir.1981)); *see also Oros*, 578 F.3d at 708; *AMPAT/Midwest, Inc. v. Ill. Tool Works Inc.*, 896 F.2d 1035, 1045 (7th Cir. 1990) ("[I]nadmissible documents are not made admissible by being summarized.").  The report also contains embedded argument, in the column titled "Consolidated Name," without any source or explanation for why various individuals are identified as "consolidated" with different organizations.  As just one example, Dr. Jerald Bratberg is identified in line 28 as part of the "Karmeier Consolidated Campaign" even though it is undisputed he was never on Justice Karmeier's campaign, but instead merely organized a fundraiser for the Justice.

7

For all of these reasons, the report attached to Arterbury's Declaration should be excluded from evidence in this matter.

### C. Plaintiffs' Proffered Summaries Improperly Suggest or Include Information that is Not Reflected in the Evidence that is Allegedly Being Summarized

It is axiomatic that a Rule 1006 summary cannot exceed or embellish the contents of the underlying evidence. *See* FED. R. EVID. 1006; *see also Oros*, 578 F.3d at 708. Yet this is exactly what the Chung Report and the Arterbury Report (collectively "Reports") seek to do.

Critically, the Reports introduce data elements and information not contained in the documents purportedly summarized. As noted above, Chung's Report includes spreadsheets that contain ten (10) data points, six (6) of which are not reflected in the underlying evidence. *See* n.1, *supra*. Similarly, Arterbury's Report creates "groupings" of phone numbers and attributed names that are not found in any of the underlying documents, but are the result of her work product, along with argument about whether various individuals are "consolidated" with organizations alleged to be part of the claimed RICO conspiracy. The Seventh Circuit has emphasized that "[b]ecause a Rule 1006 exhibit is supposed to substitute for the voluminous documents themselves … the exhibit must . . . not misrepresent their contents or make arguments about the inferences the jury should draw from them." *United States v. White,* 737 F.3d 1121, 1135 (7th Cir. 2013). That is just what these reports attempt to do.

Moreover, State Farm has repeatedly disclosed to Plaintiffs the known and inherent limitations of regarding its Avaya Phone Logs.[3] By design, State Farm's historic private branch exchange system did not record transfers within the State Farm phone system (e.g., a transfer from

---

[3] Beginning in March 2015, and at multiple meet and confer conferences with Plaintiffs and discovery hearings with the Court regarding the Avaya Phone Logs that occurred thereafter, State Farm made it clear that the logs are limited to fewer than ten (10) fields that provide the time and date that an outside line connected to the State Farm phone system, the original State Farm number the outside line connected to, and the duration the outside line was connected to State Farm.

8

an administrative assistant to an executive) and may double-count external transfers (e.g., if a State Farm employee set call forwarding to transfer calls made to an internal number to an external number, the system would make two records). These inherent limitations preclude one from concluding, based upon the Avaya Phone Logs alone, that an outside line connected to State Farm a certain number of times, or that an outside line was connected to any specific State Farm number for the duration of the connection. Rather, one must consider that once an outside line connected to any specific State Farm number, the outside line could then be connected to any other State Farm number(s) without ever being disconnected, and the Avaya Phone Logs would record the entire duration of the connection, as State Farm did not track its internal transfers. State Farm also repeatedly explained that even assuming an outside line connected to a State Farm number for the entire duration shown on the Avaya Phone Logs, that information does nothing to establish the identity of any participants on either end of the call, nor the topic of discussion.

These limitations are not accounted for in either of the reports submitted by Plaintiffs, and thus those reports assume facts that cannot be proven by the underlying evidence. Considered by themselves, the Avaya Phone Logs have no tendency to make the assertion that any particular individual at State Farm spoke to anyone outside the company "more probable or less probable than it would be without the evidence." As such, the Plaintiffs' proposed use of the underlying data fails the Rule 401 relevance gatekeeping and thus the Rule 1006 summaries likewise fail and must be excluded.[4]

---

[4] Importantly, the Business Records exception to the hearsay rule (Fed. R. Evid. 803(6)) cannot be used in this circumstance to bridge the evidentiary gap by means of a crutch for the Rule 1006 summary. First, the Avaya Phone Logs simply were not designed to, nor did they record the point-to-point certainty that Plaintiffs seek to assert. As such, even if Plaintiffs laid a proper foundation for business records admissibility, the Avaya Phone Logs cannot be used to prove something they never recorded. Second, Plaintiffs would also need to introduce via testimony under Fed. R. Evid. 901(b)(9) that the process of creating the summary was accurate, which again is squarely undercut

As proffered, the submissions from Arterbury and Chung assume an unsubstantiated association between the phone numbers listed on the Avaya Phone Logs and substantive communications between specific individuals that the underlying evidence does not support. The bar charts in Chung's Report are even more misleading, because they show only the weeks in which calls occurred, and skip weeks if not months in between calls. Allowing Plaintiffs to use these submissions to "gap fill" and suggest an association not present in the underlying documents would be extraordinarily prejudicial to State Farm. As such, the jury could easily but inappropriately infer from the Reports that the underlying documents substantiate the known routing destination of calls within State Farm or show other conduct not otherwise proven. This skewed presentation is clearly prejudicial and should not be allowed.

### III. PLAINTIFFS' PROPOSED RULE 1006 SUMMARIES SHOULD BE EXCLUDED BECAUSE PLAINTIFFS HAVE FAILED TO PROVIDE THE NECESSARY AUTHENTICATION FOR THE AVAYA PHONE LOGS, THE ARTERBURY REPORT, AND THE CHUNG REPORT

#### A. Arterbury's Report Cannot be Self-Authenticated

By its nature, the Arterbury Report cannot be self-authenticated under Rule 902(11).[5] It appears from the Arterbury Declaration that the attached "summary" was created by "several individuals from the documents produced during discovery in *Hale v. State Farm.*" (Arterbury Decl. ¶2.) This is fundamentally contrary to Rule 902(11). The Rule requires the proffering party to introduce at trial a written declaration by the custodian or other qualified person that the document to be authenticated:

> (A) the record [of the occurrence] was made at or near the time by—or from information transmitted by—someone with knowledge;

---

by the fact that the underlying data never recorded the specific points that Plaintiffs seek to assert in the proffered summaries. *See Oros,* 578 F.3d at 708.

[5] Exhibit F states that it is offered "pursuant to Illinois Rule of Evidence 902(11)," which State Farm assumes was intended to mean Federal Rule of Evidence 902(11).

    (B) the record was kept in the course of a regularly conducted activity of a business . . . ; [and]
    (C) making the record was the regular practice of that activity.

FED. R. EVID. 806(6)(A)-(C) (incorporated by reference into FED. R. EVID. 902(11)).  While "the custodian need not be the individual who 'personally gather[ed the information memorialized] ... in a business record . . . [she] need[s to] be familiar with the company's recordkeeping practices." *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006) (citing *United States v. Jenkins,* 345 F.3d 928, 935 (6th Cir. 2003) (Mills, J.) (internal quotation marks and citations omitted)).  According to the Arterbury Declaration, her report was prepared from documents produced in this litigation and Plaintiffs' counsel's identification of "relevant individuals who were involved in the campaign."  (Amended Arterbury Decl. ¶ 3.)  It is well established, though, that documents prepared in anticipation of litigation are not admissible under FRE 803(6)." *Jordan v. Binns*, 712 F.3d 1123, 1135 (7th Cir. 2013) (citations omitted).

  Plaintiffs have not laid the proper foundation to self-authenticate the Arterbury Report and, therefore, it is not admissible.

**B.**  **Chung's Report Cannot be Self-Authenticated**

  Chung's Report similarly does not meet the requirement for self-authentication under Federal Rule of Evidence 902.  By its nature, the Report falls outside of the constructs of Rule 902(13) under which it was proffered.  Rule 902(13) became effective in December 2017 to permit the self-authentication of records generated by "an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12)."  FED. R. EVID. 902(13).  Thus, Rule 902(13) was adopted to streamline the authentication of records generated by automated process.  *Cf*. FED. R. EVID. 902(13) advisory committee's note to 2017 amendment (regarding authentication of a retrieved webpage); Carl A. Aveni, *New Federal Evidence Rule Changes Reflect Modern World*, 43 A.B.A.

LITIG. NEWS 3, at 12 (Spring 2018) (discussing use of the Rule to introduce information from social media, if the object is collected in a forensically sound manner). By contrast, the Chung Report has been generated by an undisclosed "set of queries," and "programming code" applied by a proprietary database analyzer. Chung nowhere explains the electronic process used or *how* it produces an accurate result, making it impossible to determine whether that process satisfies Rule 902(13). And Chung's Report does not and cannot speak to the accuracy of the information set forth in the spreadsheets provided to him by different sources, upon which he relies. (Chung Decl. at ¶¶ 5-6.) Thus, the Report is inconsistent with the basic building blocks of Rule 902(13).

Chung's Declaration also utterly fails to meet the requirements of Rule 902(13) because Chung does not certify that the "record" (presumably some or all of pages 40409-575 that comprise Exhibit C to Chung's Declaration) generated by his company's proprietary process produces "an accurate result." Quite the opposite, he stated that the "process of consolidating, querying, and generating the results is automated and repeatable." (*Id.* at ¶ 8.) That is not a certification of accuracy; rather, it is a statement consistent with an expert report. A process can be automated and repeatable, but still inaccurate. If the method underlying the computer program is flawed, it may consistently produce an inaccurate result. Yet Defendants and the Court have no way to test Chung's assertions or the accuracy of his report, because the process is unknown.

The Declaration also fails to establish that Chung is qualified to certify the accuracy of the process employed. It does nothing to establish the background, education, training, and expertise of the affiant in order to establish that he is a 'qualified person' as required by Rule 902(11) and (12). Nor has Chung described the "electronic process or system" with enough specificity to establish the authenticity of the evidence sought to be admitted.

Finally, Chung's Declaration, which was executed on May 22, 2018, fails to comply with the Rule 902(11) notice requirement that the adverse party have the record and certification

12

available for inspection so that the party has a fair opportunity to challenge them. *See* FED. R. EVID. 902(11). Plaintiffs have left Defendants with just days to challenge Chung's statements, the thousands of pages appended to his Declaration, and his undisclosed expert report. That is not a fair opportunity.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' proposed "Summaries" that are the subject of the August 22, 1018 Notice of Intent and its August 28, 2018 Amended Notice should be excluded.

Dated: August 28, 2018                                                             Respectfully submitted,

*/s/ Ronald S. Safer*

| J. Timothy Eaton #0707341 | Patrick D. Cloud #06282672 | Ronald S. Safer #6186143 |
| TAFT, STETTINIUS & HOLLISTER, LLP | HEYL, ROYSTER, VOELKER & ALLEN | RILEY SAFER HOLMES & CANCILA LLP |
| 111 East Wacker, Ste. 2800 | Mark Twain Plaza III, Suite 100 | Three First National Plaza |
| Chicago, IL 60601 | 105 W. Vandalia St. | 70 W. Madison St., Ste. 2900 |
|  | Edwardsville, IL 62025 | Chicago, IL 60602 |

*Attorneys for Defendant State Farm Mutual Automobile Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendant State Farm Mutual Automobile Insurance Company's Motion to Excluded Proposed Telephone Evidence and Memorandum in Support was served upon all counsel of record on August 28, 2018, via the Court's CM/ECF system.


Dated: August 28, 2018                                              */s/ Ronald S. Safer*