IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK HALE, TODD SHADLE, and LAURIE LOGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, EDWARD MURNANE, and WILLIAM G. SHEPHERD,<br><br>Defendants. | Case No. 3:12-cv-00660-DRH-SCW<br><br>Judge David R. Herndon |

**PLAINTIFFS' RESPONSE TO STATE FARM'S MOTION
TO EXCLUDE PLAINTIFFS' PROPOSED TELEPHONE EVIDENCE**

Plaintiffs Mark Hale, *et al.*, by their attorneys, respond to State Farm's hyperbolic Motion To Exclude Plaintiffs' Proposed Telephone Evidence by stating that the motion has no merit and should be denied in its entirety  Plainly, the evidence at issue consists of summaries of voluminous telephone records which are admissible pursuant to FRE 1006.  They are properly certified pursuant to FRE 902 and State Farm has had notice of Plaintiffs' use of these summaries for approximately two years.

**THE RECORDS ARE ADMISSIBLE UNDER FRE 1006.**

**A.    The documents and parameters of FRE 1006.**

During the course of discovery, Plaintiffs obtained a huge amount of data regarding the telephone calls made by the defendants and third parties during the relevant time period. State Farm concedes that "the bulk of the forty thousand pages [of this data] are copies of records

subpoenaed from Verizon and AT&T ('the Phone Company Records') and logs produced from State Farm's Avaya phone system (the 'Avaya Phone Logs')." ([926] at 1-2)

These records were analyzed and then summarized. One summary was produced by Cydni Arterbury, a legal assistant at the Thrash Law Firm, P.A. (Declaration of Cydni Arterbury, attached here as Exhibit A.) Her summary did nothing but attach a name to the telephone number of a person or entity other than State Farm. The State Farm numbers were all provided by State Farm pursuant to a court order. The data used to prepare the summary was provided to State Farm, as required by FRE 1006.

The other was prepared by Mr. Luke Chung, the principal owner and founder of FMS, a company that has developed a database organizer for the purpose of taking large volumes of data and organizing them in a coherent manner. (Declaration of Luke Chung at ¶¶ 1-4, attached as Exhibit B.) This summary identifies phone calls between State Farm telephone numbers and phone numbers associated with the names provided by Ms. Arterbury. The data used to prepare the summary was provided to State Farm as required by FRE 1006.

The data and summaries were presented to Plaintiffs' expert, Thomas Myers, and included in his Supplemental Expert Report as "Appendix C Index of Phone Calls Spreadsheet." Mr. Myers was also questioned regarding this data and summaries by the defendants during his May 2015 deposition (pp. 114:20 to 121:19). The summaries show correlations between various individuals and entities relating to the campaign to elect Justice Karmeier. The records reflect a large number of contacts during and after the campaign in 2004 between the co-conspirators to the RICO scheme.

2

Summaries are helpful to the trier of fact since they dispense with the formality of offering numerous pieces of evidence through multiple witnesses. There should be no serious question that these summaries meet the requirements of FRE 1006.

Nothing in FRE 1006 or the case law requires a party relying on a summary to identify the preparer of the summary or to explain his or her methodology. Anyone can prepare a summary and can do so in any way that accurately summarizes voluminous material. In this case, Plaintiffs took the extra step of providing Declarations by the preparers of the summaries. In doing so, Plaintiffs have provided a roadmap so that State Farm will know the preparers and will also know the methodology. This should enable State Farm to efficiently review the summaries for accuracy. That it has done so is evident in State Farm's motion to exclude the summaries. In providing the Declarations Plaintiffs have also enabled the Court, should it think it advisable, to consider these Declarations in making a ruling pursuant to FRE 104(a) on the admissibility of the summaries. The Court is free to consider any and all evidence other than privileged information, whether or not that evidence is admissible, in making a Rule 104(a) ruling. The fact that the Court, as well as State Farm, will be apprised of the authors of the summaries and their methodology should assist the Court in making its ruling.

The summaries in this case meet and exceed the legal criteria for admission into evidence. The summaries fairly summarize voluminous trial evidence. They will assist the jury in understanding the testimony already introduced. To the degree State Farm disagrees with the content of the summaries, it has had access to the data for at least two years and it is free to introduce its own evidence contradicting Plaintiffs' summaries.

**B.      Chung and Arterbury are not undisclosed experts.**

There is no merit to State Farm's assertion that the Chung and Arterbury Declarations reflect that they are "undisclosed experts." ([926] at 2) Mr. Chung's Declaration discloses that he performed a mechanical analysis of the data presented to him. Mr. Chung explained that he has "developed a database analyzer for the purpose of taking large volumes of data, for example such as telephone records and emails, and organizing them in a coherent manner." (Exhibit B at ¶ 4.) He further detailed that he has "created an analytic tool that visualizes links between data, analyzes those links, and creates timelines of large amounts of data." (Id.) Mr. Chung has not rendered any opinions about the data. Opinions are the very essence of expert testimony.

Likewise, Ms. Arterbury's Declaration shows that she is not an expert. Ms. Arterbury explained that she took a list of names of key individuals (co-conspirators) who participated in the activities leading up to Justice Karmeier's election and searched through the document database to confirm "the phone numbers and identity of the individuals for the phone numbers using the Bates-stamped documents produced in discovery by Defendants." (Ex. A at ¶¶ 1-4) For phone numbers she could not verify through this method, Ms. Arterbury confirmed identities through "two separate sources provided by the Defendants." (Id. at ¶ 5) After connecting the key individuals to particular phone numbers – and verifying the identity of each person and his or her phone number - Ms. Arterbury "created a list of the key and identified the 'source' of the phone number" which documents were provided to State Farm.

As with Mr. Chung, Ms. Arterbury's Declaration shows that she has not rendered any opinions in her summary.

Based on the plain fact that neither Mr. Chung nor Ms. Arterbury has provided any opinions, State Farm's cited authorities regarding the rules of disclosing expert reports ([926] at 4) are irrelevant. The issue is a red herring.

The fact that Mr. Chung used "a specialized tool" to create his summary (id.) does not allow the conclusion that the summary falls under FRE 702. (Id.) State Farm has cited no authority in support of this claim and there is none. Indeed, Plaintiffs' counsel used a "specialized tool" to create this response – a computer with a word processing program.

**B.      Any alleged "errors" in the summaries can be addressed by State Farm's own evidence.**

The fact that Ms. Arterbury amended her Declaration as "to the steps taken to create Exhibit A" ([926] at 5) does not support exclusion of the summary. Nor does State Farm belief that the summary is "rife" with errors ([926] at 6) support its exclusion. State Farm identifies a couple of alleged errors, but it fails to indicate its reliance on sources addressed at the relevant time frame when telephone calls were made. Given that State Farm has shown an ability to test the summaries for accuracy and has been unable to identify anything but quibbling objections, the Court should leave State Farm to present its own evidence, should it actually have any relevant evidence, to contradict Plaintiffs' summary.

Plaintiffs emphasize that they have not asserted that the summaries prove who was on each phone call. Plaintiffs will make clear at trial that the summaries indicate only that State Farm telephone numbers were connected on calls with telephone numbers associated with the names provided by Ms. Arterbury.

Thus, State Farm's concern about inaccuracies can be easily addressed at trial. *Brand v. Comcast Corp.*, 302 F.R.D. 201, 213 (N.D. Ill. 2014), clearly states that after a district court has rule that summaries are admissible, it is for a jury to decide whether they are accurate and the weight to give them:

> The rule does not require the party offering the summary to demonstrate, as part of the foundation for admissibility, that the underlying data is accurate, nor does case law interpreting the rule do so. In fact, the summary "must not misrepresent" the

5

contents of the underlying evidence. *White*, 737 F.3d at 1135. Juries, not judges, decide whether evidence is accurate. See United States v. Abel, 469 U.S. 45, 52, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984) ("[T]he jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). Plaintiffs may challenge the accuracy or completeness of the underlying data in [the declarant's] report through other evidence and cross-examination.

### 3. State Farm has had ample time to examine the summaries.

State Farm's claim that the Arterbury summary should be excluded because it was not timely disclosed ([926] at 6) is disingenuous. Not only has State Farm had access to the data for about two years, but the fact that State Farm has already been able to analyze the summaries is shown by the detailed analysis of the summaries in its motion to exclude them. ([926] at 6-7) Further still, State Farm has identified 14 summaries in its trial exhibit list which it only just provided to Plaintiffs late last week. The fact that Plaintiffs served the summary at issue here a few days later belies the lack of merit of State Farm's argument.

This is a complex case that the parties have been litigating vigorously for years. State Farm has been on notice that Plaintiffs would be analyzing the phone records which are useful to show the connection between the co-conspirators. As noted above, Thomas Myers, Plaintiffs' expert accountant, disclosed these records in his Supplemental Report, as part of "Appendix C of Phone Calls Spreadsheet" and State Farm attorneys interrogated him about them in Mr. Myers' second deposition in May, 2017 (pp. 114:20 to 121:19).

**D. The Chung summaries of the connected telephone calls are based on admissible business records pursuant to FRE 803(6), and the Arterbury summary is based upon documents almost all authenticated by the fact that State Farm or Murnane produced them or by the contents of the document (FRE 901(b)(4), FRE 902(7)).**

There is no merit to State Farm's argument that the summaries should be excluded because the data underlying is not a proper business record. ([926] at 9, fn. 4) In *United States v. Keplinger*, 776 F.2d 678, 704 (7th Cir. 1985), the Seventh Circuit explained FRE 803(6):

> The business records exception to the hearsay rule, FED. R. EVID. 803(6), provides that certain records of regularly conducted activity are not excluded by the hearsay rule... "In order to be admissible, a record must be:
>
>> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information of the method or circumstances of preparation indicate lack of trustworthiness. . . .
>
> The determinations whether a proper foundation has been laid for application of the business records exception to a particular document and whether the circumstances of the document's preparation indicate untrustworthiness are within the discretion of the trial court. *E.g., United States v. Cincotta*, 689 F.2d 238, 243 (1st Cir. 1982), cert. denied, 459 U.S. 991, 103 S. Ct. 347, 74 L. Ed. 2d 387 (1983).

Significantly, State Farm is not arguing that the telephone records themselves are not business records admissible under FRE 803(6). The records are surely business records as long as they "are kept in the course of regularly conducted business activity, and [that it] was the regular practice of that business activity to make records, as shown by the testimony of the custodian or other qualified witness." *United States v. Chappell*, 698 F.2d 308, 311 (7th Cir.), *cert. denied*, 461 U.S. 931, 77 L. Ed. 2d 304, 103 S. Ct. 2095 (1983).

State Farm is only arguing that the summaries should be excluded because the Avaya phone Logs "simply were not designed to, nor did they record the point-to-point certainty that Plaintiffs seek to assert." ([926] at 9, fn 4) This is not a proper basis to exclude the records. If the records do not support Plaintiffs' expert's opinions based on the records, State Farm can elicit

that opinion via its own evidence and or cross-examination of Plaintiffs' experts. Plaintiffs' expert, Mr. Myers, reasonably utilized the data that is included in the summaries.

As for the Arterbury summary, State Farm has not challenged the fact that the summary accurately represents the data in the underlying documents she produced in support of the summary.

### E.  Self-authentication is not at issue here.

State Farm's final argument – that the summaries should be excluded because they cannot be self-authenticated pursuant to FRE 902(11) ([926] at 10 *et seq.*) – conflates FRE 1006 with FRE 902.  FRE 902(11) is not at issue here.  Again, State Farm is not disputing the authenticity of the telephone records.  Accordingly, FRE 902(11), which concerns the self-authentication of certified domestic records of a regularly conducted activity – the phone records themselves – is not at issue.  In a departure from the usual practice, Rule 1006 does not expressly require that charts, summaries, or calculations be authenticated on the witness stand, for example, by the person responsible for their preparation. *See, e.g., Ryder Truck Lines v. Teamsters Freight Local Union No. 480*, 705 F.2d 851, 858 (6th Cir. 1983) (witness who did not prepare summary statement was allowed introduce statement under Rule 1006).

The only issue is the admissibility of the summary of the phone records prepared by Mr. Chung and Ms. Arterbury.  Under FRE 1006, the underlying records need not be admitted into evidence but they must be admissible under an exception to the hearsay rule. *Soden v. Freightliner Corp.*, 714 F.2d 498, 506 (5th Cir. 1983). Where it is undisputed that the phone records themselves are admissible as records of a regularly conducted activity, State Farm's entire argument on FRE 803(6) (A) - (C) (mistakenly referred to as 806(6)(A)- (C) ([926] at 11) is irrelevant.

8

Once the documents relied upon by Ms. Arterbury are authenticated, the telephone numbers on those documents are not hearsay. FRE 801(c). Telephone numbers are neither true nor false. The number associated with a name is either correct or incorrect. But this is not a hearsay issue. The summaries that Ms. Arterbury and Mr. Chung use to attach telephone numbers to names are all based upon the fact that these are the numbers that were either provided by or to State Farm by individuals or entities holding themselves out as being associated with these numbers. Thus, the summaries do no more than associate names with numbers on documents that purport to link both the names and the numbers.

The phone records were not "prepared in anticipation of litigation" ([926] at 11), so State Farm's reliance on *Jordan v. Binns*, 712 F.3d 1123 (7th Cir. 2013) is misplaced.

Mr. Chung's summary is not a "Certified Records Generated by an Electronic Process or System" so State Farm's argument, based on FRE 902(13) ([926] at 12-13) is likewise misplaced. Mr. Chung has produced a summary, not a report generated by an electronic process or system. The actual phone records might qualify under FRE 902(13), but again, State Farm is not asserting that the phone records are inauthentic or inaccurate.

For all of these reasons, Plaintiffs, Mark Hale *et al*., ask that State Farm's motion to exclude be denied.

Dated: August 29, 2018            /s/ *Robert A. Clifford*
Robert A. Clifford #0461849
George S. Bellas
Kristofer S. Riddle
Clifford Law Offices
120 N. LaSalle Street
31st Floor
Chicago, IL 60602
Tel: 312-899-9090

Steven P. Blonder #6215773
Jonathan L. Loew
Much Shelist, P.C.
191 N. Wacker
Suite 1800
Chicago, IL 60606-2000
Tel: 312-521-2402

John W. "Don" Barrett
Barrett Law Group, P.A.
404 Court Square North
P.O. Box 927
Lexington, MS 39095-0927
Tel: 662-834-2488

Patrick W. Pendley
Pendley, Baudin & Coffin, LLP
Post Office Drawer 71
24110 Eden Street
Plaquemine, LA 70765
Tel: 888-725-2477

Thomas P. Thrash
Marcus N. Bozeman
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201
Tel: 501-374-1058

Gordon Ball
Gordon Ball PLLC
550 Main Street
Bank of America Center, Ste. 600
Knoxville, TN 37902
Tel: 865.525.7028

Elizabeth J. Cabraser
Robert J. Nelson
Kevin R. Budner
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000

Brent W. Landau
Jeannine M. Kenney
Hausfeld, LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: 215-985-3273

Erwin Chemerinsky
University of California, Berkeley School of Law
215 Boalt Hall,
Berkeley, CA 94720
(510) 642-6483

Richard R. Barrett
Law Offices of Richard R. Barrett, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, Mississippi 38655
Tel: 662-380-5018

Stephen A. Saltzburg
The George Washington University Law School
2000 H. Street, NW
Washington, D.C. 20052
Tel. 202-994-7089

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 7.1(b), I certify that a copy of the foregoing was served upon counsel on August 29, 2018 via the Court's CM/ECF system.

/s/ <i>Kristofer S. Riddle</i>