**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTERH DISTRICT OF ILLINOIS**

---

| | |
|---|---|
| **MARK HALE, TODD SHADLE, and** : | |
| **LAURIE LOGER, on behalf of** : | |
| **Themselves and all others similarly** : | |
| **situated,** : | |
| : | |
| **Plaintiffs,** : | **Case No. 3:12-cv-00660-DRH-SCW** |
| : | |
| **v.** : | |
| : | |
| **STATE FARM MUTUAL** : | |
| **AUTOMOBILE INSURANCE** : | |
| **COMPANY, ED MURNANE, WILLIAM** : | |
| **G. SHEPHERD,** : | |
| : | |
| **Defendants.** : | |
| : | |

---

**EXPERT DECLARATION OF WILLIAM B. RUBENSTEIN**
**IN SUPPORT OF THE PLAINTIFFS' MOTION**
**FOR ATTORNEY'S FEES AND EXPENSES**

1.      I am the Bruce Bromley Professor of Law at Harvard Law School and a leading

national expert on class action law generally and class action fees in particular.  On behalf of all

Class Counsel,[1] the law firm Lieff Cabraser Heimann & Bernstein, LLP has retained me to

provide my expert opinion concerning Class Counsel's application for an award of attorney's

fees equal to 33.33% of the $250 million common fund (net of certain costs).  After setting forth

my qualifications to serve as an expert (Part I, *infra*), I state my opinion that the requested fee is

---

[1] The Settlement Agreement defines "Class Counsel" to encompass "the law firms of Barrett
Law Group, P.A.; Clifford Law Offices; Erwin Chemerinsky, Esq.; Hausfeld LLP; Law Offices
of Gordon Ball; Lieff Cabraser Heimann & Bernstein, LLP; Much Shelist, P .C.; Pendley,
Baudin & Coffin, LLP; and Thrash Law Finn, P.A."  Settlement Agreement (ECF No. 941) at 6.
I accordingly use the phrase "Class Counsel" throughout this report to encompass all of these
individuals and firms.

reasonable and should be approved (Part II, *infra*).  This conclusion is based on the facts that the

award sought is consistent with awards in similar cases and that it is supported by the risks Class

Counsel took and the results that they achieved:

a)  ***Class Counsel's requested percentage is reasonable.***  (Part II(A), *infra*).  Counsel seek 33.33% of the common fund, net of notice and administrative costs.  This percentage is just slightly above the average for all cases in the Seventh Circuit (31.6%) and it is below the average for cases that proceeded to trial nationwide (36%); indeed, the median fee and cost award in 11 cases that proceeded to trial within a data base of 1,100 class action fee awards that I maintain is 45%.  Moreover, it is a standard feature of contingent fee contracts that lawyers seek a higher contingent fee if a case progresses to trial or involves appeals.  While some courts award lower percentages as fund sizes increase (the median for $250 million settlements is about 19%) I am critical of this practice because it uses guestimates when a measuring stick is available:  specifically, a lodestar cross-check yields a true measure of whether a percentage is too high, as it identifies Class Counsel's actual profit.  Thus, as explained in the succeeding paragraphs, the lodestar cross-check provides the best measure of the reasonableness of the 33.33% sought here.

b)  ***Class Counsel's blended billing rate is reasonable***. (Part II(B), *infra*).  An empirical analysis of 22 recent class action settlements in the Northern District of Illinois shows that Class Counsel's blended billing rate in this case ($527.34) is less than 4% above the mean ($507.99) of that comparison group.  If the comparison group is adjusted to St. Louis area market rates, Class Counsel's blended rate is about 13.6% above average.  Given the national scope of this class and of the law practices of many Class Counsel, it is not clear that this adjustment is even required, particularly for cross-check purposes.  Regardless, the marginally above average blended rate is justified by the fact that the case involved numerous complex legal issues and appeals – and progressed to trial – and therefore encompassed significant partner time.

c)  ***Class Counsel's total number of hours is reasonable***. (Part II(C), *infra*). The total number of hours Class Counsel expended producing this $250 million dollar settlement is fully consistent with the total number of hours expended in the 5 other cases in my database – and 4 additional cases my research assistants identified on Westlaw – that progressed to trial and settled in this $250 million range.  Similarly, when the total number of hours is broken down by the number of days the case has been litigated, the hours/day Class Counsel expended here compares favorably to the other $250 million cases that progressed to trial.  A back-of-the-envelope calculation provides further support for the reasonableness of Class Counsel's total hours.  Class Counsel's lodestar encompasses about 55,000 hours in the 7 years between pre-filing investigation and settlement.  While many lawyers worked part-time on this case, the total hours are the equivalent of 3.5 lawyers working full-time (about 2,250 hours/year) to generate this outcome throughout those 7 years.  That number initially struck me as high, but my review of the magnitude of Class Counsel's work in the

case and the case's progression to trial, supports the conclusion that it is within the range of reason sufficient for cross-check purposes.

d) ***Class Counsel's multiplier is reasonable***. (Part II(D), *infra*).   Class Counsel's 33.33% award is approximately 2.83 times their total lodestar.   Quantitatively, this is above the mean for all multipliers, but right around the mean for multipliers in settlements of this size, and a multiplier often awarded in appropriate circumstances: indeed, my research assistants have identified more than 100 cases in which courts have approved fees embodying multipliers of 3 or more.   Qualitatively, the 2.83 multiplier is well-supported by the extraordinary risks Class Counsel took in litigating this case and the superb results they achieved for the class.   The case is not a cookie-cutter class action piggy-backing on the heels of a government enforcement matter, but a novel, complex, one-off case arising out of very specific and difficult-to-prove allegations about malfeasance within the state judiciary that Class Counsel uniquely detected and pursued; in doing so, Class Counsel litigated against one of the biggest corporations in the United States and large and sophisticated law firms, through an intensive discovery process all the way to trial.   They secured a significant common fund for the class that will be distributed entirely to the class (net of fees and expenses), in cash not script, with all class members receiving some recovery and many receiving their recoveries automatically, without having to navigate a claims process.   Perhaps most importantly, the case served an invaluable public function by shedding light on the practices of state judicial politics, practices so crucial that the Supreme Court has held that in their presence, the constitution may compel judicial recusal.[2]

2.      I am a strong proponent of a lodestar cross-check[3] as I believe it is the single best means of ensuring that a fee is not an unwarranted windfall at the class's expense.[4]   That is so

---

[2] *Cf. Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009) ("We conclude that there is a serious risk of actual bias—based on objective and reasonable perceptions—when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent.   The inquiry centers on the contribution's relative size in comparison to the total amount of money contributed to the campaign, the total amount spent in the election, and the apparent effect such contribution had on the outcome of the election.").

[3] I am aware that the Seventh Circuit's approach to fees is not lodestar-based.   *See* William B. Rubenstein, 5 *Newberg on Class Actions* § 15:79 (5th ed. 2015) (analyzing Seventh Circuit's market approach) (hereafter "*Newberg on Class Actions*").   However, as noted below, *see* ¶ 13, *infra*, courts in this Circuit have found such information nonetheless helpful in analyzing fee requests.

[4] *Laffitte v. Robert Half Internat. Inc.*, 376 P.3d 672, 687 (Cal. 2016) (addressing concerns about the lodestar cross-check but concluding, "We tend to agree with the amicus curiae brief of

because it measures the fee award in terms of the time that counsel devoted, isolates the bonus they are receiving, enables an assessment of whether the risks and achievement of the case warrant that bonus, and uniquely enables comparisons across cases.[5]   Here, the cross-check demonstrates that the fee award Class Counsel seek is normal, while the work in this unique and important case was anything but.

# I.
## BACKGROUND AND QUALIFICATIONS[6]

3.      I am the Bruce Bromley Professor of Law at Harvard Law School.  I graduated from Yale College, *magna cum laude*, in 1982 and from Harvard Law School, *magna cum laude*, in 1986.  I clerked for the Hon. Stanley Sporkin in the U.S. District Court for the District of Columbia following my graduation from law school.  Before joining the Harvard faculty as a tenured professor in 2007, I was a law professor at UCLA School of Law for a decade, and an adjunct faculty member at Harvard, Stanford, and Yale Law Schools while a litigator in private practice during the preceding decade.  I am admitted to practice law in the Commonwealth of Massachusetts, the State of California, the Commonwealth of Pennsylvania (inactive), the District of Columbia (inactive), the U.S. Supreme Court, six U.S. Courts of Appeals, and four U.S. District Courts.

4.      My principal area of scholarship is complex civil litigation, with a special emphasis on class action law.  I am the author, co-author, or editor of five books and more than a dozen scholarly articles, as well as many shorter publications (a fuller bibliography appears in

---

Professor William B. Rubenstein that these concerns are likely overstated and the benefits of having the lodestar cross-check available as a tool outweigh the problems its use could cause in individual cases.").

[5] For a discussion of these points, *see*, *Newberg on Class Actions, supra* note 3, at § 15:86.

[6] My full c.v. is attached as Exhibit A.

my appended c.v.).  Much of this work concerns various aspects of class action law.  Since 2008,

I have been the sole author of the leading national treatise on class action law, *Newberg on Class*

*Actions*, and as of this past summer, I have re-written from scratch the entire 10-volume treatise.

In 2015, I wrote and published a 600-page volume (volume 5) of the Treatise on attorney's fees,

costs, and incentive awards; this volume has already been cited in numerous federal court fee

decisions.  For five years (2007–2011), I published a regular column entitled "Expert's Corner"

in the publication *Class Action Attorney Fee Digest*.  My work has been excerpted in casebooks

on complex litigation, as noted on my c.v.

     5.     My expertise in complex litigation has been recognized by judges, scholars, and

lawyers in private practice throughout the country for whom I regularly provide consulting

advice and educational training programs.  For the past nine years, the Judicial Panel on

Multidistrict Litigation (JMPL) has invited me to give a presentation on the current state of class

action law at the annual MDL Transferee Judges Conference.  The Federal Judicial Center

invited me to participate as a panelist (on the topic of class action settlement approval) at its

March 2018 judicial workshop celebrating the 50th anniversary of the JPML, *Managing*

*Multidistrict and Other Complex Litigation Workshop*.  The Ninth Circuit invited me to moderate

a panel on class action law at the 2015 Ninth Circuit/Federal Judicial Center Mid-Winter

Workshop.  The American Law Institute selected me to serve as an Adviser on a Restatement-

like project developing the *Principles of the Law of Aggregate Litigation*.  In 2007, I was the co-

chair of the Class Action Subcommittee of the Mass Torts Committee of the ABA's Litigation

Section.  I am on the Advisory Board of the publication *Class Action Law Monitor*.  I have often

presented continuing legal education programs on class action law at law firms and conferences.

6.      My teaching focuses on procedure and complex litigation.  I regularly teach the basic civil procedure course to first-year law students, and I have taught a variety of advanced courses on complex litigation, remedies, and federal litigation.  I have received honors for my teaching activities, including:   the Albert M. Sacks-Paul A. Freund Award for Teaching Excellence, as the best teacher at Harvard Law School during the 2011–2012 school year; the Rutter Award for Excellence in Teaching, as the best teacher at UCLA School of Law during the 2001–2002 school year; and the John Bingham Hurlbut Award for Excellence in Teaching, as the best teacher at Stanford Law School during the 1996–1997 school year.

7.      My academic work on class action law follows a significant career as a litigator. For nearly eight years, I worked as a staff attorney and project director at the national office of the American Civil Liberties Union in New York City.  In those capacities, I litigated dozens of cases on behalf of plaintiffs pursuing civil rights matters in state and federal courts throughout the United States.  I also oversaw and coordinated hundreds of additional cases being litigated by ACLU affiliates and cooperating attorneys in courts around the country.   I therefore have personally initiated and pursued complex litigation, including class actions.

8.      I have been retained as an expert witness in roughly 75 cases and as an expert consultant in about another 25 cases.   These cases have been in state and federal courts throughout the United States, most have been complex class action cases, and many have been MDL proceedings.  I have been retained to testify as an expert witness on issues ranging from the propriety of class certification, to the reasonableness of settlements and fees, to the preclusive effect of class action judgments.  I have been retained by counsel for plaintiffs, for defendants, for objectors, and by courts:

6

a) In 2018, a Special Master in the national opioid MDL pending in the United States District Court for the Northern District of Ohio retained me as an expert consultant on "highly complex class action settlement structure" issues.[7]

b) In 2017, the United States District Court for the Eastern District of Pennsylvania appointed me as an expert witness on certain attorney's fees issues in the NFL concussion litigation.  In my final report to the Court, I recommended, *inter alia*, that the Court should cap individual retainer agreements at 22%, a recommendation that the Court adopted.[8]

c) In 2015, the United States Court of Appeals for the Second Circuit appointed me to argue for affirmance of a district court order that significantly reduced class counsel's fee request in a large, complex securities class action, a task I completed successfully when the Circuit summarily affirmed the decision on appeal.[9]

9.     One of the functions I can provide as an expert witness is to present empirical evidence of class action practices from other cases.  As part of my scholarly work on class action law, I have created and maintain a database containing data on more than 1,000 class action lawsuits.  Specifically, my research assistants coded the data from case reports appearing in the journal, *Class Action Attorney Fee Digest* ("CAAFD").  CAAFD was published monthly from January 2007 to September 2011 for a total of 57 issues, and reported on 1,187 unique court-approved state and federal class actions.  For each case, a CAAFD case abstract describes the awarding court and judge, the subject matter of the dispute, the settlement/judgment benefits, the attorney fee and expense awards (both as requested by plaintiff's counsel and as approved by the court), the case filing and attorney fee award dates, any named plaintiff awards, and miscellaneous data on case and settlement/judgment administration.  In creating the database

---

[7] *In re: National Prescription Opiate Litigation*, Case No. 1:17-MD-2804 (N.D. Ohio, Aug. 13, 2018) (ECF No. 877).

[8] *In re Nat'l Football League Players' Concussion Injury Litig.*, 2018 WL 1658808, at *1 (E.D. Pa. Apr. 5, 2018) ("I adopt the conclusions of Professor Rubenstein and order that IRPAs' fees be capped at 22% plus reasonable costs.").

[9] *See In re Indymac Mortgage-Backed Sec. Litig.*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom. Berman DeValerio v. Olinsky*, 673 F. App'x 87 (2d Cir. 2016).

from the CAAFD reports, my research team cross-checked the accuracy of a subset of federal reports against source documents from PACER; we found only one error – an understatement of the settlement benefit value by 2% – in 726 data fields, or fewer than 0.15% of fields.  I am therefore confident about the accuracy of the data in my database and use it regularly as a source for my scholarship and expert witness work.

      10.      Courts have often relied on my empirical work as an expert witness in fee cases.[10]

      11.      I have been retained in this case to provide an opinion concerning the issues set forth in the first paragraph, above.  I am being compensated for providing this expert opinion.  I was paid a flat fee in advance of rendering my opinion, so my compensation was in no way contingent upon the content of my opinion.

      12.      In analyzing these issues, I have discussed the case with Class Counsel, reviewed documents from this litigation,[11] and reviewed the applicable case law and scholarship on the topics of this Declaration.

---

[10] *See, e.g.*, *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014); *In re Nat'l Football League Players' Concussion Injury Litig.*, 2018 WL 1658808, at *4 (E.D. Pa. Apr. 5, 2018); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3175924, at *3 (N.D. Cal. July 21, 2017); *Aranda v. Caribbean Cruise Line, Inc.*, 2017 WL 1369741, at *5 (N.D. Ill. Apr. 10, 2017), aff'd sub nom. *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015); *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462, at *44 (C.D. Cal. May 29, 2015); *In re Syngenta AG MIR 162 Corn Litig.*, 2015 WL 2165341, at *5 (D. Kan. May 8, 2015); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010); *Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, 2013 WL 6268236, at *2 (Mass. Super. Aug. 5, 2013).

[11] A list of the documents that I reviewed is attached as Exhibit B.

## II.
## THE REQUESTED FEE IS REASONABLE

13.     Counsel responsible for creating a common fund are entitled to a fee from the fund according to the common fund doctrine.  Rule 23 requires that the fee be "reasonable."[12] Courts differ in the methods that they employ to hit that mark, with most circuits utilizing a percentage method with a lodestar cross-check.[13]   Uniquely, the Seventh Circuit applies a "market method" which directs district courts to "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)."[14]  The Circuit has further held that in applying the market method, "both the lodestar approach and the percentage approach may be appropriate . . . depending on the circumstances [such that] the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court."[15]

14.     The following sections consider Class Counsel's requested fee in these terms, first considering the percentage sought (Part A, *infra*); then undertaking a lodestar analysis by examining counsel's rates (Part B, *infra*) and hours (Part C, *infra*); and concluding with an assessment of the resulting lodestar multiplier (Part D, *infra*).

---

[12] Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

[13] *Newberg on Class Actions, supra* note 3, at § 15:67 (discussing empirical evidence on choice of percentage or lodestar method).

[14] *In re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001).  For a discussion, *see Newberg on Class Actions, supra* note 3, at § 15:79.

[15] *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.,* 743 F.3d 243, 247 (7th Cir. 2014) (quoting *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) and stating that "*Florin* is still good law").

15.     This approach enables the Court to utilize the lodestar as a "cross-check" on the percentage award.  The lodestar cross-check ensures against a windfall by taking the absolute dollars counsel will receive via a percentage award and considering whether that number is greater or less than counsel's lodestar (the amount counsel would receive were they to be paid on an hourly basis).  An example helps illuminate the value of the cross-check.  If counsel settle a class action lawsuit for $100 million, they may be entitled to fee totaling 25% of that amount, or $25 million. A straight percentage approach, without a lodestar cross-check, simply awards counsel that $25 million, perhaps ensuring it is commensurate with several qualitative factors. The cross-check adds another quantitative step.  Counsel submit the hours all professionals billed on the case, those professionals' hourly rates, and thence a total value of all professional time spent on the case.  If that total lodestar is (magically) $25 million, then counsel's percentage award is precisely the same amount that they would have earned had they billed by the hour.  If, however, counsel's lodestar is $10 million, the $25 million percentage award represents a multiplier of 2.5, meaning that the percentage award pays counsel 2.5 times what they would have received had they been paid on an hourly basis.  If counsel's total lodestar is $50 million, the $25 million percentage award represents a multiplier of 0.5, meaning that the percentage award pays counsel half of what they would have been paid on an hourly basis.  Multipliers higher than 1 are typically referred to as "positive multipliers," those below 1 "negative multipliers."[16]  Lest the cross-check occupy significant judicial resources to undertake, courts in nearly every circuit have held that, for the purposes of a cross-check, they need not scrutinize

---

[16] This paragraph is adapted from *Newberg on Class Actions, supra* note 3, at § 15:85.

each individual billed hour, but may instead focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.[17]

### (A)
### *Class Counsel's Requested Percentage is Reasonable*

16.     Class Counsel seek a fee equaling 33.33% of the common fund, net of the cost of effectuating the Settlement notice plan and administering the claims program.[18]   Three separate sets of data support the reasonableness of this percentage.

17.     *First*, three leading empirical studies of attorney's fee awards[19] have found that the ***average*** fee in the ***Seventh Circuit*** is 31.6% (2006-2011 data); 27.4% (2006-2007 data); and

---

[17] *Id.* at § 15:86 n. 13 (citing, *inter alia, In re Rite Aid Corp. Securities Litigation,* 396 F.3d 294, 306–07, 60 Fed. R. Serv. 3d 851 (3d Cir. 2005), as amended, (Feb. 25, 2005) (noting that the "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting," and that "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records"); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.")); *see also Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1269-70 (D.C. Cir. 1993) (noting that "it can be exceptionally difficult for a court to review attorney billing information over the life of a complex litigation and make a determination about whether the time devoted to the litigation was necessary or reasonable" and "reiterat[ing] the Supreme Court's warning that '[a] request for attorney's fees should not result in a second major litigation'") (second alteration in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

[18] The Seventh Circuit directs that the requested fee percentage be analyzed net of the costs of administering the settlement.  *See Redman v. RadioShack Corp*., 768 F.3d 622, 630 (7th Cir. 2014) ("[A]dministrative costs should not have been included in calculating the division of the spoils between class counsel and class members.").

[19] The Seventh Circuit has relied on data points such as these in assessing the reasonableness of fee petitions, *see Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013), and courts in the Seventh Circuit have observed that while "empirical studies necessarily include *ex post* fee awards from other circuits that may not be reflective of the market price at the time those cases were filed, the awards likely affect the price at which national class action lawyers are willing to provide their services going forward."  *In re Capital One Tel. Consumer Prot. Act Litig*., 80 F. Supp. 3d 781, 797 (N.D. Ill. 2015).

26% (1993-2008 data).[20]   An updated recent study shows the mean award in the Seventh Circuit to be 28% and the median 30%.[21]

18.    *Second,* none of these figures separate out cases that proceeded to trial, but an analysis of such cases further supports a 33.33% award.  Among the 1,187 cases in my CAAFD data set, 15 had at least a half day of trial proceedings, 11 of which contain relevant fee data. The mean fee award across those 11 cases with applicable data was 36%, with five cases having awards of 38.9% or more and three of those having fee awards of 40% or more.  The median fee *and* costs awarded in the 11 cases that progressed to trial with applicable data was 45%.  These data points support the conclusion that the 33.33% Class Counsel seek here, while slightly above the norm for all cases, is well below the norm for cases that proceeded to trial.

19.    *Third,* empirical data on contingent fee contracts outside the class action setting reinforce this conclusion:  the leading study shows that "on the order of 60% of the cases employed the standard one-third contingency fee;"[22] for those that use variable percentages, the range without a trial is 20–43%, with a trial 25–50%, and with an appeal, 33–50%.[23]  These data provide further market support for the reasonableness of the 33.33% award sought here.

20.    Some courts utilize reduced percentages as settlement sizes increase.  Thus, the study with the sharpest focus shows that the median award in $250-$500 million cases is

---

[20] These data are set forth, with citations to the underlying studies, in *Newberg on Class Actions, supra* note 3, at § 15:83 tbl. 2.

[21] Theodore Eisenberg, Geoffrey Miller, and Roy Germano, *Attorneys' Fees in Class Actions 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 tbl. 3 (2017) (hereafter "*Eisenberg et al., 2009-2013*").

[22] Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*, 80 Wash. U. L. Q. 739, 759 (2002).

[23] *Id.* at 758, tbl 6.

19.5%.[24]   In the *Newberg* treatise, I am critical of this "sliding scale"[25] or "mega-fund"[26] approach, noting that:

> [I]ts suggestion that there is a smooth inverse relationship between the size of the common fund and an appropriate percentage may not be accurate: some high fund cases involve significant risks, require enormous investments of money and time, and may appropriately trigger a healthy percentage award; conversely, a relatively small fund (say $25 million), secured with a few months' work, may not truly entitle class counsel to a mean 25% award.[27]

Because I believe that a high multiplier is the best measuring stick of a windfall, I argue that "courts ought to use the high multiplier to police windfalls, regardless of the size of the fund, rather than use the size of the fund as a policing mechanism."[28]

21.    In sum, comparison of Class Counsel's proposed flat 33.33% award to empirical evidence of the average awards in the Seventh Circuit, awards in cases throughout the country progressing to trial, and awards in standard retainer agreements all support its reasonableness. As explained above,[29] my own belief is that the best test of the reasonableness of the requested percentage is a lodestar cross-check.  I therefore proceed in the succeeding sections to undertake that analysis.

---

[24] Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 839 tbl. 11 (2010) (hereafter (*Fitzpatrick*").

[25] For a discussion and critique, *see Newberg on Class Actions, supra* note 3, at § 15:80.

[26] For a discussion and critique, *see id.* at § 15:81.

[27] *Id.* at § 15:80.

[28] *Id.* at § 15:81.

[29] *See* ¶¶ 2 & 15, *supra.*

**(B)**
*Class Counsel's Blended Billing Rate Is Reasonable*

22.     The *Manual for Complex Litigation* states:

> What constitutes a reasonable hourly rate varies according to geographic area and the attorney's experience, reputation, practice, qualifications, and customary charge. The rate should reflect what the attorney would normally command in the relevant marketplace.[30]

In the fee-shifting context, where awards are lodestar-based, the Seventh Circuit has held that "a reasonable hourly rate is one that is derived from the market rate for the services rendered."[31] Acknowledging "the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements," the Circuit has "advised district courts to rely on the 'next best evidence' of an attorney's market rate, namely evidence of rates [that] similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards [that] the attorney has received in similar cases."[32]   More specifically, the Circuit has held that "a previous attorneys' fee award is useful for establishing a reasonable market rate for similar work whether it is disputed or not."[33]   While the same level of precision is not necessary when undertaking a lodestar analysis solely for cross-check purposes,[34] I nonetheless utilize the Circuit's approach of examining (1) previous fee awards (2) in this general geographic area (3) for similar work – namely class action lawsuits.

---

[30] *See, e.g.*, Federal Judicial Center, *Manual for Complex Litigation*, *Fourth* § 14.122 (2004) (hereafter "*Manual for Complex Litigation*") (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("'[R]easonable fees' . . . are to be calculated according to the prevailing market rates in the relevant community . . . ."); *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)).

[31] *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011).

[32] *Id.* (internal quotation marks omitted).

[33] *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 491 (7th Cir. 2009).

[34] *See* note 17, *supra*.

23.     Specifically, for purposes of another recent Declaration of this type,[35] my research assistants created a database of fee rates contained in class action fee petitions that federal courts in the Northern District of Illinois had approved in recent years.  Their efforts identified 22 cases containing utilizable rate data (listed in Exhibit C).[36]  Among the data in these cases, I focus my analysis here on the blended billing rate.[37]  The blended billing rate is calculated by taking the total lodestar of all time-keepers in the case (partners, associates, paralegals, etc.) and dividing it by the total number of hours worked by all of the time-keepers; it gives a snapshot of the average billing rate across the litigation.  The blended billing rate in this case is $527.34, while the blended billing rates in the comparison cases (adjusted to 2018 dollars) ranged from a low of $201.98/hour to a high of $692.48/hour.  This is reflected in Graph 1, below, with the blended rate in this case highlighted in red.  As the Court can see, the blended rate in this case is entirely normal:  it is one case above the median case in the graph and it is 3.81% above the mean blended rate of the other 22 cases ($507.99).

---

[35] I submitted that Declaration in *Aranda v. Caribbean Cruise Line, Inc*., 2017 WL 1369741, at *5 (N.D. Ill. Apr. 10, 2017), *aff'd sub nom. Birchmeier v. Caribbean Cruise Line, Inc*., 896 F.3d 792 (7th Cir. 2018).

[36] In some of these 22 cases, counsel sought an award lower than their total lodestar and/or the court made an award lower than the total lodestar.  So long as the court did not express concern about counsel's proposed billing rates in affirming the fee request, we coded these rates as affirmed, or judicially-approved, rates and included them in the data set.  If a court explicitly lowered a specific billing rate, we utilized the lower rate in the data set.

[37] Class Counsel did not provide me, and I did not request, the hourly billing rates of each time keeper in the case.  While that data can be helpfully analyzed in some cases, the blended billing rate is as meaningful because – regardless of individual billing rates – the blended rate captures how Class Counsel employed partners, associates, and paralegals across the course of the case.

**GRAPH 1**
**CLASS COUNSEL'S BLENDED BILLING RATE**
**COMPARED TO**
**BLENDED BILLING RATES IN 22 RECENT N.D. ILLINOIS FEE APPROVALS**



24.     It is fair to note that hourly rates in this market may be lower than in the Northern District of Illinois.  According to the federal government, for instance, rates in the St. Louis metropolitan areas are about 91% of those in the Chicago Area.[38]  What this means is that the average of the 22 blended rates in Northern Illinois ($507.99) is the equivalent of $464.15 in this area, rendering Class Counsel's blended rate of $527.34 about 13.61% above the 22-case average adjusted to this local market.  Given the fact that this case involved complex legal issues,

---

[38] I utilize the federal government's judicial differential methodology – as explained in *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005) – to adjust rates between different geographic markets.  The federal government rates can be found at this hyperlink: http://www.uscourts.gov/careers/compensation/judiciary-salary-plan-pay-rates.   The St. Louis metropolitan area rate is the most pertinent choice among the federal government options for this Court.  The federal government increases the base rate by 27.47% for the Chicago market and 16.47% for the St. Louis market.  This means that a base hourly rate of, say, $350/hour would be worth $446.15 in Chicago market ($350 x 1.2747) and $407.65 ($350 x 1.1647) in the St. Louis market.  Therefore, one has to multiply Chicago billing rates by 0.9137 ($446.15 x 0.9137 = $407.65) to bring them down to St. Louis area levels.  The same conclusion can be achieved by the formula: <1.1647/1.2747>.

depositions of, among many others, the highest judicial official in the state government, and the commencement of a trial, it is likely that the blended rate here would encompass more partner time and hence be higher than the norm; moreover, many Class Counsel who worked on this case have national practices and such national expertise was an important fact on some of the more complex issues that were raised.

25.     In sum, Class Counsel's blended hourly rate is fully consistent with blended rates approved by Courts in the Northern District of Illinois in recent class action cases and marginally, but appropriately, higher than blended rates that one would expect in this District.  It raises no red flags.

## (C)
### The Total Number of Hours Class Counsel Billed Is Reasonable

26.     Counsel are entitled to be compensated for reasonable time spent at all points in the litigation.  Courts are cautioned to avoid engaging in an "*ex post facto* determination of whether attorney hours were necessary to the relief obtained."[39]  The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."[40]

27.     I examined the total number of hours that Class Counsel billed in two ways: *first*, by a quantitative comparison to the total hours billed in similar cases (¶¶ 28-29, *infra*); and *second*, by a qualitative analysis of the tasks undertaken (¶ 30, *infra*).[41]

---

[39] *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

[40] *Id.*

[41] Class Counsel did not provide me – nor did I ask to see – a breakdown of each hour expended, as I generally do not undertake such a fine-grained lodestar audit in assessing the reasonableness of a fee award for lodestar cross-check purposes.  *See* note 17, *supra.*  I therefore offer no

17

28.     *Quantitative Assessment.*   For purposes of this Declaration, I directed my research assistants to identify cases that were similar to this case along two axes:  the size of the settlement (here $250 million) and the fact that the case had progressed to trial.  Within my database of 1,100 class action cases, we found five that met these criteria; utilizing neutral search terms on Westlaw, we identified an additional four cases that met these criteria.[42]  We then charted the total number of hours counsel billed in each of the nine cases.  The resulting data, set forth in Graph 2, below, provide a graphic picture of hours in cases at the $250 million level that have progressed to trial.  As the Court can see, Class Counsel's roughly 55,000 total hours (represented by the red bar) fall on the lower range of these comparison cases.  Indeed, Class Counsel's total hours are about 67% of the mean (82,164.4) across the other nine cases.  This suggests that the total number of hours Class Counsel expended on the case is normal for cases of this monetary magnitude that progress to trial.

---

opinion about the specific hours expended on particular tasks or the hourly time records themselves – just the aggregate number of hours.

[42] A list of the nine cases, their total hours, and their progress to trial is set forth as Exhibit D. We utilized every case in my database that met the relevant criteria.  Similarly, in undertaking the Westlaw search, we utilized every case we found that met the criteria and discarded cases solely on the basis that they were either not in the $250 million settlement range or did not progress to trial.  The settlement sizes in the case ranged from a low of $200 million to a high of $326 million, with the average across the nine cases being $252.33 million.  All of the cases "progressed to trial" in the sense that the dockets reflected either that a trial had taken place or that pre-trial briefs or motions *in limine* had been filed; limiting the set to cases that actually involved at least a half day of trial proceedings (as I did in assessing percentages awarded in tried cases, *see* ¶ 18, *supra*) yielded too few cases in this settlement range (1) to be helpful.

**GRAPH 2**
**CLASS COUNSEL'S TOTAL HOURS**
**COMPARED TO**
**TOTAL HOURS IN NINE $250 MILLION CASES THAT PROGRESSED TO TRIAL**



29.     While Class Counsel's hours are at the lower end of this spectrum, it is also worth noting that these cases each spanned different total time periods.   Thus, to normalize the comparison group, we also divided the total hours in each case by the total number of days the case was pending,[43] yielding a calculation of the hours counsel billed on each case per day it was pending.   The results are charted in Graph 3.

---

[43] For the comparison cases, we used complaint filing as the start date and final approval of the class action outcome as the end date; for this case, we used complaint filing as the start date and preliminary approval of the class action settlement as the end date.

**GRAPH 3**
**CLASS COUNSEL'S HOURS/DAY CASE PENDING**
**COMPARED TO**
**HOURS/DAY IN NINE $250 MILLION CASES THAT PROGRESSED TO TRIAL**



As is visually evident, Class Counsel's hours/day in this case (23.92) were lower than those of the lawyers in all but one case in the comparison group.  Class Counsel billed about 51% of the average hours/day of the comparison group (47.08 hours/day).  This comparison reinforces the conclusion that the total hours Class Counsel billed are normal for a case of this magnitude progressing to trial and it supports the conclusion that the hours in Class Counsel's lodestar are likely not padded, *i.e*. that Class Counsel prosecuted this case efficiently.

30.     *Qualitative Assessment.*  Class Counsel filed their initial complaint in May 2012, about 6.5 years ago.  Given the research that precedes the filing of that complaint, I estimate that the firms have worked on this matter for roughly 7 years.  In that time, Class Counsel have cumulatively logged approximately 55,000 hours of time; that is the equivalent of 25 lawyer-

years,[44] or 3.5 lawyers working on nothing but this case for the 7 years in question.[45]  A review

of the various aspects of Class Counsel's work in this case provides support for the conclusion

that these activities would have kept 3.5 lawyers occupied for 7 years (or, as is the case here,

many more lawyers, working on this litigation part time, for the same total hours).   These

activities included:[46]

    a)  identifying all of the background factual matters supporting the allegations in the complaint;

    b)  linking that factual investigation to the proper legal claims by researching relevant legal precedents under RICO and related statutes;

    c)  meeting with the clients and securing retainer agreements with them;

    d)  preparing, filing, and serving the initial complaints to meet the pleading standards under Rule 8 and Rule 12 as interpreted by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007);

    e)  briefing a total of approximately 100 contested motions, including:
        i.   several motions to dismiss and a petition for writ of *mandamus* taken therefrom;
        ii.  a motion for class certification involving more than a dozen expert witnesses and thousands of pages of documentary support; and
        iii.  two motions for summary judgment;

    f)  opposing, successfully, two petitions for leave to appeal class certification before the Seventh Circuit under Rule 23(f);

---

[44]  The National Association for Law Placement (NALP)'s most recent data available online, published in May 2016, reflect the hours billed by firms in 2013 and 2014.  *Update on Associate Hours Worked*, NALP (May 2016), http://www.nalp.org/0516research. Those data show that, for lawyers at the largest firms (701+ lawyers), about 2/3 billed more than 2,200 hours/year, and the average number of hours billed in 2014 was 2,199.

[45]  I am aware that litigation in this forum was stayed twice, but both stays were for brief periods of time and litigation continued in the appellate court and on background matters.

[46]  Some of the information in this list – such as the total number of contested motions and depositions – was provided to me by Class Counsel, although I verified as much as possible through a review of the documents on PACER, as well.

g) undertaking a hotly contested discovery process that encompassed production and review of hundreds of thousands of pages of documents, scores of depositions, and "numerous discovery hearings before the Magistrate Judge;"[47]

h) conducting significant third-party discovery, including of such prominent organizations such as the U.S. Chamber of Commerce and the American Tort Reform Association;

i) helping craft and execute a notice campaign;

j) completely preparing for trial, including by filing and contesting dozens of motions *in limine* and *Daubert* motions, preparing comprehensive jury instructions, and filing exhaustive exhibit and witness lists;

k) commencing the trial and selecting the jury;

l) engaging in extensive settlement negotiations, including a failed mediation effort that lasted over a year;

m) helping to memorialize and document the settlement terms in a final settlement agreement, including releases of liability, class action notices, and claim forms;

n) shepherding the settlement agreement through the preliminary approval process;

o) obtaining preliminary, and now seeking final, approval of the settlement.

This partial list gives substance to the approximately 55,000 hours counsel have expended on this case.[48]

31.    When I first took on this assignment, I was struck by the fact that 55,000 hours seemed like a lot of time.  But having now reviewed data from the relevant comparable cases, and all of Class Counsel's work here, the total hours strike me as falling within the range of reason, particularly for the sole purpose of a lodestar cross-check.  Indeed, even if Class

---

[47] Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement at 1 (ECF No. 939).

[48] It is also worth noting that Class Counsel here spent substantial time on the *Avery* case, none of which proved compensable in the end, yet all of which was a necessary prerequisite for success in this matter.

Counsel's hours are discounted – and even by as much as, say, 20% – the resulting 20% increase of their lodestar multiplier (from 2.83 to 3.4) would be relatively immaterial in the context of this case:  as discussed in the succeeding section, such a multiplier would be eminently reasonable for this case.

32.     In sum, although Class Counsel billed a healthy number of hours to this case, those hours are consistent with a comparison group of nine other $250 million-range cases that progressed to trial, appear consistent with the amount of work the case required, and are supported by several factors unique to this case.

**(D)**
***Class Counsel's Multiplier is Reasonable***

33.     Class Counsel seek a fee of 33.33% of the class's $250 million recovery net of approximately $2.1 million in settlement notice and claims administration costs, or one third of $247,900,000, which is $82.63 million.  Class Counsel report a total lodestar of roughly $29.16 million.  Thus, Class Counsel's multiplier is 2.83.  That multiplier is consistent with multipliers courts have awarded in similar cases and is supported by the nature of the risks that inhered in this case and the long odds Class Counsel faced in obtaining the results that they have achieved.

34.     Class Counsel's requested multiplier of 2.83 is consistent with multipliers that courts approve in similar circumstances:

> a) Three leading empirical studies of class action attorney's fees found the mean multipliers in all cases to be 1.42,[49] 1.65,[50] 1.81,[51] while an older study found the mean multiplier to be 3.89.[52]

---

[49] *Newberg on Class Actions, supra* note 3, at § 15:89 (reporting on data from William B. Rubenstein and Rajat Krishna, *Class Action Fee Awards: A Comprehensive Empirical Study* (draft on file with author)).

[50] Fitzpatrick, *supra* note 24, at 833-34.

b) These studies also show that multipliers are higher in cases with larger returns, with the mean multipliers rising to 2.39 (in settlements over $44.6 million) in one study;[53] to 3.18 (in cases with recoveries over $175.5 million) in another study[54] and to 4.5 (in cases with recoveries over $100 million) in the third study.[55]

c) Beyond these bare statistics, case reports demonstrate that, in appropriate cases, courts have often approved percentage awards embodying lodestar multipliers in the range sought here. For example, in the leading Ninth Circuit opinion on point, the Court established 25% as the benchmark percentage fee and approved a multiplier of 3.65, writing that this number "was within the range of multipliers applied in common fund cases"[56] and appending a list of such cases to its decision. Similarly, in Exhibit E, I provide a list of more than 100 cases with multipliers over 3. This list is not meant to be either exhaustive or representative of all multipliers. Rather, it demonstrates that courts approve percentage awards that embody multipliers well above the multiplier sought here in appropriate circumstances.

The requested multiplier is therefore above the mean for *all* cases, consistent with the mean for *large* cases, and within the range of multipliers courts have approved in appropriate circumstances.

---

[51] Theodore Eisenberg and Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical L. Stud. 248, 272 (2010) (hereafter "*Eisenberg and Miller, 1993-2008*")

[52] Stuart J. Logan, Beverly C. Moore & Jack Moshman, *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 167, 167 (2003) (hereafter "Logan").

[53] *Newberg on Class Actions, supra* note 3, at § 15:89 (reporting on data from William B. Rubenstein and Rajat Krishna, *Class Action Fee Awards: A Comprehensive Empirical Study* (draft on file with author)).

[54] *Eisenberg and Miller, 1993-2008, supra* note 51, at 274 (reporting on 40 cases with recoveries in this range).

[55] Logan, *supra* note 52, at 167 (reporting on 64 cases with recoveries in this range).

[56] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); *see also Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("A 2.83 multiplier falls within the Ninth Circuit's presumptively acceptable range of 1.0–4.0. Given the complexity and duration of this litigation, the results obtained for the class, and the risk counsel faced in bringing the litigation, the Court finds the 2.83 multiplier appropriate." (internal citation omitted))).

35.     As courts will clearly approve a fee award that embodies a multiplier of 2.83 in appropriate circumstances, the sole question is whether Class Counsel's work in *this* case justifies this multiplier.  That inquiry turns primarily on the risks counsel agreed to shoulder and the results they achieved for the class.[57]

36.     A dozen independent factors demonstrate the riskiness of this case viewed *ex ante* – and borne out by the arc of the litigation:

    a)  ***Novelty.***  Many class actions are pursued cases by lawyers who specialize in particular areas (securities, antitrust, consumer, etc.) and can economize their practices and lower their risks by repeating efforts from one case to the next.   Not this case:  this is a RICO case alleging malfeasance in the administration of justice by a state Supreme Court.   This is not a cookie-cutter case for which Class Counsel could re-formulate past complaints, motions, experts, etc.

    b)  ***Complexity.***   Many class actions involve straightforward enforcement of a statutory harm.  Not this case:  here Class Counsel had to navigate a complex series of legal concerns involved in pursuing alleged wrongdoing within the judicial branch.  The case involved complex questions of preclusion, the *Rooker-Feldman* doctrine, the *Noerr Pennington* doctrine, RICO causation, statute of limitations, etc.

    c)  ***Detection.***   Many class actions follow on the heels of government enforcement actions.  Class counsel have a lower risk in such cases as their investigative costs may be lower and as the defendant has a natural incentive to settle with the government, easing the road to settlement with the class.  Not this case:  no government agency pursued the alleged wrongdoing at the Illinois Supreme Court.  Class Counsel detected, investigated, theorized, and executed the entire case from scratch.

    d)  ***Uncertain liability.***  Many class actions pursue obvious instances of wrongdoing publicized in the media, such as the BP oil spill case or the VW emissions case.  These cases embody less risk because settlement is almost a given.  Not this case:  the defendants conceded no wrongdoing and showed no interest in settling the case.  What's more, the Illinois Supreme Court appeared to have entertained and rejected arguments similar to those Class Counsel pursued here, meaning they

---

[57] *See Synthroid*, 264 F.3d at 721 (holding that the "market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case").

also took the risk that this entire venture would fail by virtue of the *Rooker-Feldman* doctrine or preclusion.

e) ***Uncertainty of settlement.*** Most litigation settles and most complex litigation does as well. While settlement in a class suit is fairly predictable if Class Counsel survives a motion to dismiss and/or a motion for class certification, neither milestone makes settlement as certain in a case with the unknown liability identified above. There are no obvious signposts to help generate a settlement, such as past settlements or prior jury outcomes.

f) ***Riskiness of trial.*** One of the primary reasons that lawsuits settle is that trials are remarkably risky for the clients and the lawyers. The "winner take all" nature of the trial means that each party is risking its entire case on the outcome, rather than finding a less onerous – albeit less satisfying – solution through settlement. For lawyers paid by the hour, the trial can be a boon, but for contingent fee lawyers it raises the risks of a case immeasurably: they must invest large sums of time and money to bring a case through trial, yet the potential outcomes are essentially limited to two – win or lose. Not surprisingly, as discussed above, contingent fee contracts promise counsel higher returns in cases that proceed to trial. This fact demonstrates that the market recognizes the heightened risk posed by cases that proceed to trial.

g) ***Well-funded defendants***. State Farm is number 36 on the Fortune 500 list of the largest corporations in the United States, with roughly $2.2 billion dollars in profit each year.[58] Class Counsel's lodestar and expenses mean that they invested more than $30 million of their own time and money in this case (not even counting their investment in *Avery*) – which is impressive. Yet State Farm makes more in profit by January 6th of a given year.[59] Thus, while Class Counsel were litigating with their own limited resources, they were litigating against a party with relatively unlimited resources.

h) ***Well-represented defendants***. Among the handful of firms that worked for defendants in this case are Dechert (with more than 900 lawyers in 27 offices worldwide)[60] and Sidley Austin (with nearly 2,000 lawyers in 20 offices worldwide).[61]

---

[58] *See* http://fortune.com/fortune500/state-farm-insurance-cos/.

[59] State Farm's $2.2 billion annual profit amounts to a daily profit of about $6 million.

[60] *See* https://www.dechert.com/about.html.

[61] *See* https://www.law.com/law-firm-profile/?id=274&name=Sidley.

i) **Vigorous defense.**   As set forth above,[62] the case encompassed (1) repeated motions to dismiss on *Rooker-Feldman* and preclusion grounds; (2) two distinct motions for summary judgment; (3) a strongly contested motion for class certification; (4) three petitions for interlocutory review in the Seventh Circuit; (5) extensive discovery involving 68 depositions and more than 50 discovery hearings before the Magistrate Judge; (6) extensive pre-trial briefing including more than a dozen motions *in limine*; and (7) the commencement of a jury trial.

j) **High expense.**   Class Counsel report a lodestar and expenses exceeding $30 million; Class Counsel surely invested millions more in the underlying *Avery* action.   This means that Class Counsel have loaned the class tens of millions of dollars – and risked losing every penny of it on the outcome of this case.

k) **Opportunity costs.**   Class Counsel's devotion of time and resources to this novel and complex case prevented them from pursuing simpler, bread and butter, actions, any of which would have had a higher expectation of settlement and hence ease of recovery of a contingent fee, possibly a well-multiplied one.

l) **No residual upside.**   Even counsel who pursue a novel, complex, non-cookie-cutter case may have some added upside in that they can open a new line of business in that space.   Not this case:   this is a one-off effort, with none of the research, pleadings, arguments, or experts likely being re-cyclable for future cases.   Counsel's investment was therefore particularly risky because it would either generate a return here or be forever lost.

37.   At least six components of this case's outcome speak to the results Class Counsel obtained in this matter.[63]

a) **Counsel obtained significant monetary relief for the class**.   Put simply, $250 million is a lot of money.   It is more than the jury awarded in both installation ($212.44 million) and specification ($243.74 million) damages in the *Avery*

---

[62] *See* ¶ 30, *supra*.   As noted there, *see* note 46, *supra,* Class Counsel provided some of this information to me.

[63] The point is not to look at Counsel's risk *ex post* but rather to demonstrate the strength of the achievement compared to the risks *ex ante*.

case.[64]  Moreover, it constitutes a gross amount of $50/class member for each of the roughly 5 million class members.[65]

b) **100% of the class is eligible for relief**.  The settlement fund will be made available to all class members without regard to the complicated underlying specifics of their past automobile claims.  This plan of distribution avoids the need for a complex claiming structure involving automobile claims now decades old.

c) **Cash**.  Class actions sometimes end in settlements that return class members little direct compensation, occasionally nothing more concrete than coupons or recoveries going exclusively to third party *cy pres* recipients.  The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "granting class members illusory nonmonetary benefits, such as discount coupons for more of defendants' products. . . ."[66]   The settlement secured in this case will deliver cash compensation directly to class members, a form of recovery that speaks highly of the case's outcome.

d) **Ease of claiming**.   Class actions often end with settlements requiring class members to file claims.  The claim filing process may often dissuade class members from making the effort, particularly in small claim situations.  The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "imposing such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits. . . ."[67]   Here, all class members whose addresses are known to the claims administrator will receive relief without having to file claim forms; while others have to apprise the administrator of an address and attest to the propriety of their claim to secure their recovery, the claim form is short, straightforward, and relatively non-burdensome.

e) **The relief required significant, contested adversarial litigation against strong opposition, leaving no hint of collusion.**  The well-funded defendants contested

---

[64]  *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 817 (Ill. 2005) ("Contract damages awarded to the plaintiff class totaled $456,180,000, which consisted of $243,740,000 in specification damages and $212,440,000 in installation damages.").

[65]  The class size is referenced in the notice documents.  *See* ECF 768 at 2 (reporting 1.5 million persons constituted approximately 25% of class and/or that the class consists of "approximately 4.7 million State Farm policyholders").  Since it is likely that not all class members will participate in the Settlement, those that do will likely receive more than $50, even net of fees and costs.

[66]  *Manual for Complex Litigation, supra* note 30, at § 21.61.

[67]  *Id.*

28

nearly every aspect of this lawsuit, often repeatedly. A critical concern in class suits is that the class's agents might be tempted to sell out the class by agreeing to a low recovery in return for a high fee. The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements that "[a]ctive judicial oversight of the settlement process [is necessary to] prevent collusion between counsel for the class and defendant and [to] minimize the potential for unfair settlements."[68] There is here not a hint of collusion – this case has been nothing but adversarial since its inception and proceeded all the way to trial before settling. There is, therefore, no evidence whatsoever of class counsel selling out the class's interest.

    f)   **Public interest**. While all class action settlements assist in the government in enforcing the law,[69] this settlement provides an important and unique public service. The defendants have not, of course, conceded any of the allegations in the complaint, but the facts of the case nonetheless helped shine a light on decision-making at the highest level of the state's judicial system and judicial elections thereto. There are few more important tasks for lawyers then helping to ensure the fairness of our judicial system.

38.    These 12 risks and six results demonstrate what seems incontestable: Class Counsel took significant risk in investing substantial capital and labor in highly adversarial litigation without the promise of any easy return on that investment and Class Counsel shouldered that risk superbly, prevailing at each critical juncture and generating an important return for the client class.[70]

---

[68] *Id.* at § 22.923 (internal quotation marks and citation omitted).

[69] *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 339 (1980) ("The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government.").

[70] In the treatise *Newberg on Class Actions,* I encourage courts to undertake a lodestar cross-check and to assist courts in that task, I provide a "multiplier calculator" for assessing the reasonableness of the proposed multiplier. *See Newberg on Class Actions, supra* note 3, at § 15:87. This calculator synthesizes reported case law and, following courts' approaches, assigns multiplier points based on the risks counsel took and the results that they achieved. There I state that risk factors each supporting a one point increase in the multiplier are: (1) unique cases, not based on rote, prior pleadings; (2) cases in which counsel themselves enforce the law and do not simply follow government enforcement actions; and (3) cases in which counsel are solely responsible for the case's costs and cannot share this risk among a group of firms. On the results side, I report that the law tends to increase multipliers by ½ point according to factors such as (1)

39.     Finally, Seventh Circuit law holds that the multiplier should reflect the risks counsel faced *ex ante*:  "A risk multiplier of 1.01 equates to a finding that the class counsel had better than a 99% chance of recovering its fees.  The multiplier is determined by dividing 1 by the probability of success."[71]   Using that method, a 3 multiplier would be appropriate for the $250 million settlement if Class Counsel had a 33% chance of obtaining that outcome (1/.33=3).  Given the factual points articulated above, it is my expert opinion that Class Counsel had far less than a 33% chance of securing a $250 million settlement in this case.  This provides further support for the conclusion that a multiplier in the 3 range is reasonable in the circumstances presented here.

40.     I have testified that:

a)  Class Counsel's requested fee *percentage* is reasonable:  it is just above the mean for all cases in the Seventh Circuit, below the mean for cases that progress to trial nationwide, and below the mean for non-class contingent fee cases that progress to trial.  Most critically, it is supported by a lodestar cross-check.

b)  Class Counsel's *blended billing rate* is reasonable:  it is just above the median case in a comparison set of 22 class action cases approved in the Northern District of Illinois in recent years, with the specific blended rate falling less than 4% above the 22-case mean, and less than 14% above what that mean would be if adjusted to this market, an immaterial difference given the national scope of the case and the importance of partner work on its many complex questions.

---

whether much of the class gets relief; (2) whether the class members can easily obtain relief (that is, without complex claiming programs) and (3) whether that relief approximates 100% of the available damages.  Thus, the principles I set forth in the *Newberg* treatise years ago would support a multiplier well above Class Counsel's 2.83 multiplier given the presence here of so many of the many positive factors I enumerated there.

[71] *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 n.3 (7th Cir. 1995).  *See also In re Trans Union Corp. Privacy Litig.,* 629 F.3d 741, 746 (7th Cir. 2011) ("If the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million.").

c)  Class Counsel's **total number of hours** is reasonable:  it is consistent with the total hours and hours/day counsel expended in 9 comparable cases involving $250 million level settlements that progressed to trial.

d)  Class Counsel's proposed **multiplier** is reasonable:  it is lower than the average multiplier for large fund cases in two of three empirical studies and it is fully consistent with the truly unique risks that Class Counsel shouldered and the superb results that they achieved for the class.

In sum, it is my expert opinion that Class Counsel's request for fees in the amount of 33.33% of

the settlement fund is reasonable.

Executed this 16th day of October, 2018, in Cambridge, Massachusetts.

_____

William B. Rubenstein

# EXHIBIT A

`

# PROFESSOR WILLIAM B. RUBENSTEIN

Harvard Law School - AR323          (617) 496-7320
1545 Massachusetts Avenue         rubenstein@law.harvard.edu
Cambridge, MA 02138

## ACADEMIC EMPLOYMENT

### HARVARD LAW SCHOOL, CAMBRIDGE MA

| | |
|---|---|
| Bruce Bromley Professor of Law | 2018-present |
| Sidley Austin Professor of Law | 2011-2018 |
| Professor of Law | 2007-2011 |
| Bruce Bromley Visiting Professor of Law | 2006-2007 |
| Visiting Professor of Law | 2003-2004, 2005-2006 |
| Lecturer in Law | 1990-1996 |

    *Courses*:      Civil Procedure; Class Action Law; Remedies
    *Awards*:      2012 Albert M. Sacks-Paul A. Freund Award for Teaching Excellence
    *Membership*:      American Law Institute; American Bar Foundation Fellow

### UCLA SCHOOL OF LAW, LOS ANGELES CA

| | |
|---|---|
| Professor of Law | 2002-2007 |
| Acting Professor of Law | 1997-2002 |

    *Courses*:      Civil Procedure; Complex Litigation; Remedies
    *Awards*:      2002 Rutter Award for Excellence in Teaching
                     Top 20 California Lawyers Under 40, *Calif. Law Business* (2000)

### STANFORD LAW SCHOOL, STANFORD CA

| | |
|---|---|
| Acting Associate Professor of Law | 1995-1997 |

    *Courses*:      Civil Procedure; Federal Litigation
    *Awards*:      1997 John Bingham Hurlbut Award for Excellence in Teaching

### YALE LAW SCHOOL, NEW HAVEN CT

| | |
|---|---|
| Lecturer in Law | 1994, 1995 |

### BENJAMIN N. CARDOZO SCHOOL OF LAW, NEW YORK NY

| | |
|---|---|
| Visiting Professor | Summer 2005 |

## LITIGATION-RELATED EMPLOYMENT

### AMERICAN CIVIL LIBERTIES UNION, NATIONAL OFFICE, NEW YORK NY

| | |
|---|---|
| Project Director and Staff Counsel | 1987-1995 |

-Litigated impact cases in federal and state courts throughout the United States.
-Supervised a staff of attorneys at the national office, oversaw work of ACLU attorneys around the country, and coordinated work with private cooperating counsel nationwide.
-Significant experience in complex litigation practice and procedural issues; appellate litigation; litigation coordination, planning and oversight.

### HON. STANLEY SPORKIN, U.S. DISTRICT COURT, WASHINGTON DC

| | |
|---|---|
| Law Clerk | 1986-87 |

### PUBLIC CITIZEN LITIGATION GROUP,     WASHINGTON DC

| | |
|---|---|
| Intern | Summer 1985 |

EDUCATION

HARVARD LAW SCHOOL, CAMBRIDGE MA
  J.D., 1986, *magna cum laude*

YALE COLLEGE, NEW HAVEN CT
  B.A., 1982, *magna cum laude*
    Editor-in-Chief, YALE DAILY NEWS

SELECTED COMPLEX LITIGATION EXPERIENCE

*Professional Service and Highlighted Activities*

◊ *Author,* NEWBERG ON CLASS ACTIONS (sole author since 2008, sole author of entirely re-written Fifth Edition (2011-2018))

◊ *Speaker,* Judicial Panel on Multidistrict Litigation, Multidistrict Litigation (MDL) Transferee Judges Conference, Palm Beach, Florida (invited to present to MDL judges on recent developments in class action law and related topics (2010, 2011, 2012, 2013, 2014 (invited), 2015, 2016, 2017, 2018)

◊ *Panelist,* Federal Judicial Center, *Managing Multidistrict Litigation and Other Complex Litigation Workshop* (for federal judges) (March 15, 2018)

◊ *Amicus curiae,* authored *amicus* brief in United States Supreme Court on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos*, No. 17-961, October Term 2018)

◊ *Amicus curiae,* authored *amicus* brief in California Supreme Court on proper approach to attorney's fees in common fund cases (*Laffitte v. Robert Half Int'l Inc*., 376 P.3d 672, 687 (Cal. 2016) (noting reliance on *amicus* brief))

◊ *Amicus curiae,* authored *amicus* brief in the United States Supreme Court filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011))

◊ *Adviser,* American Law Institute, *Project on the Principles of the Law of Aggregate Litigation*, Philadelphia, Pennsylvania

◊ *Advisory Board, Class Action Law Monitor* (Strafford Publications), 2008-

◊ *Co-Chair,* ABA Litigation Section, Mass Torts Committee, Class Action Sub-Committee, 2007

◊ *Planning Committee,* American Bar Association, Annual National Institute on Class Actions Conference, 2006, 2007

◊ *"Expert's Corner"* (Monthly Column)*, Class Action Attorney Fee Digest,* 2007-2011

**A-2**

*Judicial Appointments*

◊   *Expert consultant.*   Retained by the Special Master as an expert consultant on class certification issues in complex multidistrict litigation (*National Prescription Opiate Litigation,* MDL 2804, Civ. Action No. 1:17-MD-2804 (N.D. Ohio Aug. 13, 2018)

◊   *Expert witness.*   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D.Pa. April 5, 2018))

◊   *Appellate counsel.*   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016)).

*Expert Witness*

◊   Submitted expert witness affidavit and testified at fairness hearing concerning second phase fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294 (New Hampshire Superior Court, Merrimack County (2018))

◊   Submitted expert witness report – and rebutted opposing expert – concerning class certification issues for proposed class action within a bankruptcy proceeding (*In re Think Finance,* Case No. 17-33964 (N.D. Tex. Bankrpt. 2018))

◊   Submitted expert witness declaration concerning specific fee issues raised by Court at fairness hearing and second declaration in response to report of Special Master (*In re Anthem, Inc. Data Breach Litigation,* Case No. 15-MD-02617-LHK (N.D. Cal. 2018))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request following plaintiffs' verdict at trial in consumer class action (*Krakauer v. Dish Network, L.L.C.,* Civil Action No. 1:14-cv-00333 (M.D.N.C. 2018))

◊   Submitted three expert witness declarations and deposed by/testified in front of Special Master in investigation concerning attorney's fee issues (*Arkansas Teacher Ret. Sys. v. State St. Bank & Trust Co.*, Civ. Action No. 1:11-cv-10230 (D. Mass. 2017-18))

◊   Retained as an expert witness on issues regarding the preclusive effect of a class action judgment on later cases (*Sanchez v. Allianz Life Insurance Co. of N. Amer.,* Case No. BC594715 (California Superior Court, Los Angeles County (2018))

◊   Retained as an expert witness and submitted report explaining meaning of the denial of a motion to dismiss in American procedure to foreign tribunals (*In re Qualcomm Antitrust Matter,* declaration submitted to tribunals in Korea and Taiwan (2017))

**A-3**

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 3.0-liter settlement, referenced by court in awarding fees (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 3175924 (N.D. Cal. July 21, 2017))

◇ Retained as an expert witness concerning impracticability of joinder in antitrust class action (*In re Celebrex (Celecoxib) Antitrust Litigation,* Civ. Action No. 2-14-cv-00361 (E.D. Va. (2017))

◇ Submitted an expert witness declaration and deposed concerning impracticability of joinder in antitrust class action (*In re Modafinil Antitrust Litigation,* Civ. Action No. 2-06-cv-01797 (E.D. Pa. (2017))

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 2.0-liter settlement (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 1047834 (N.D. Cal., March 17, 2017))

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Aranda v. Caribbean Cruise Line, Inc.,* 2017 WL 1368741 (N.D. Ill., April 10, 2017))

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*McKinney v. United States Postal Service*, Civil Action No. 1:11-cv-00631 (D.D.C. (2016))

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Geancopoulos v. Philip Morris USA Inc.,* Civil Action No. 98-6002-BLS1 (Mass. Superior Court, Suffolk County))

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Gates v. United Healthcare Insurance Company,* Case No. 11 Civ. 3487 (S.D.N.Y. 2015))

◇ Retained as an expert trial witness on class action procedures and deposed prior to trial in matter that settled before trial (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◇ Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*In re High-Tech Employee Antitrust Litig.,* 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015))

◊   Retained as an expert witness concerning adequacy of putative class representatives in securities class action (*Medoff v. CVS Caremark Corp.,* Case No. 1:09-cv-00554 (D.R.I. (2015))

◊   Submitted an expert witness declaration concerning reasonableness of proposed class action settlement, settlement class certification, attorney's fees, and incentive awards (*Fitzgerald Farms, LLC v. Chespeake Operating, L.L.C.,* Case No. CJ-2010-38, Dist. Ct., Beaver County, Oklahoma (2015))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Asghari v. Volkswagen Grp. of Am., Inc.,* 2015 WL 12732462 (C.D. Cal. May 29, 2015))

◊   Submitted an expert witness declaration concerning propriety of severing individual cases from class action and resulting statute of repose ramifications (*In re: American   International Group, Inc. 2008 Securities Litigation,* 08-CV-4772-LTS-DCF (S.D.N.Y. (2015))

◊   Retained by Fortune Global 100 Corporation as an expert witness on fee matter that settled before testimony (2015)

◊   Submitted an expert witness declaration and testified at Special Master proceeding concerning reasonableness of attorney's fee allocation in sealed fee mediation (2014-2015)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*In re: Hyundai and Kia Fuel Economy Litigation,* MDL 13-02424 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Ammari Electronics v. Pacific Bell Directory*, Case No. RG0522096, California Superior Court, Alameda County (2014))

◊   Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc.,* Case No. CGC-10-497839, California Superior Court, San Francisco County (2014))

◊   Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC,* Case No. CGC-10-497840, California Superior Court, San Francisco County (2014))

◊   Retained as expert witness on proper level of common benefit fee in MDL (*In re Neurontin Marketing and Sales Practice Litigation,* Civil Action No. 04-10981, MDL 1629 (D. Mass. (2014))

◊   Submitted an expert witness declaration concerning Rule 23(g) selection of competing counsel, referenced by court in deciding issue (*White v. Experian Information Solutions, Inc.,* 993 F. Supp. 2d 1154 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning proper approach to attorney's fees under California

**A-5**

law in a statutory fee-shifting case (*Perrin v. Nabors Well Services Co.,* Case No. 1220037974, Judicial Arbitration and Mediation Services (JAMS) (2013))

◊   Submitted an expert witness declaration concerning fairness and adequacy of proposed nationwide class action settlement (*Verdejo v. Vanguard Piping Systems,* Case No. BC448383, California Superior Court, Los Angeles County (2013))

◊   Retained as an expert witness regarding fairness, adequacy, and reasonableness of proposed nationwide consumer class action settlement   (*Herke v. Merck,* No. 2:09-cv-07218, MDL Docket No. 1657 (*In re Vioxx Products Liability Litigation*) (E. D. La. (2013))

◊   Retained as an expert witness concerning ascertainability requirement for class certification and related issues (*Henderson v. Acxiom Risk Mitigation, Inc.,* Case No. 3:12-cv-00589-REP (E.D. Va. (2013))

◊   Submitted an expert witness declaration concerning reasonableness of class action settlement and performing analysis of Anet expected value@ of settlement benefits, relied on by court in approving settlement (*In re Navistar Diesel Engine Products Liab. Litig.,* 2013 WL 10545508 (N.D. Ill. July 3, 2013))

◊   Submitted an expert witness declaration concerning reasonableness of class action settlement and attorney's fee request (*Commonwealth Care All. v. Astrazeneca Pharm. L.P.,* 2013 WL 6268236 (Mass. Super. Aug. 5, 2013))

◊   Submitted an expert witness declaration concerning propriety of preliminary settlement approval in nationwide consumer class action settlement (*Anaya v. Quicktrim, LLC,* Case No.  CIVVS 120177, California Superior Court, San Bernardino County (2012))

◊   Submitted expert witness affidavit concerning fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294, New Hampshire Superior Court, Merrimack County (2012))

◊   Submitted expert witness declaration and deposed concerning class certification issues in nationwide fraud class action, relied upon by the court in affirming class certification order (*CVS Caremark Corp. v. Lauriello,* 175 So. 3d 596, 609-10 (Ala. 2014))

◊   Submitted expert witness declaration in securities class action concerning value of proxy disclosures achieved through settlement and appropriate level for fee award (*Rational Strategies Fund v. Jhung,* Case No. BC 460783, California Superior Court, Los Angeles County (2012))

◊   Submitted an expert witness report and deposed concerning legal malpractice in the defense of a class action lawsuit (*KB Home v. K&L Gates, LLP,* Case No. BC484090, California Superior Court, Los Angeles County (2011))

◊   Retained as expert witness on choice of law issues implicated by proposed nationwide class certification (*Simon v. Metropolitan Property and Cas. Co.,* Case No. CIV-2008-1008-W (W.D. Ok. (2011))

**A-6**

◇   Retained, deposed, and testified in court as expert witness in fee-related dispute (*Blue, et al. v. Hill*,Case No. 3:10-CV-02269-O-BK (N.D. Tex. (2011))

◇   Retained as an expert witness in fee-related dispute (*Furth v. Furth*, Case No. C11-00071-DMR (N.D. Cal. (2011))

◇   Submitted expert witness declaration concerning interim fee application in complex environmental class action (*DeLeo v. Bouchard Transportation,* Civil Action No. PLCV2004-01166-B, Massachusetts Superior Court (2010))

◇   Retained as an expert witness on common benefit fee issues in MDL proceeding in federal court (*In re Vioxx Products Liability Litigation*, MDL Docket No. 1657 (E.D. La. (2010))

◇   Submitted expert witness declaration concerning fee application in securities case, referenced by court in awarding fee (*In re AMICAS, Inc. Shareholder Litigation,* 27 Mass. L. Rptr. 568 (Mass. Sup. Ct. (2010))

◇   Submitted an expert witness declaration concerning fee entitlement and enhancement in non-common fund class action settlement, relied upon by the court in awarding fees (*Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172-74 (C.D. Cal. 2010))

◇   Submitted an expert witness declaration concerning class action fee allocation among attorneys (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◇   Submitted an expert witness declaration concerning settlement approval and fee application in wage and hour class action settlement (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◇   Submitted an expert witness declaration concerning objectors' entitlement to attorney's fees (*Rodriguez v. West Publishing Corp.,* Case No. CV-05-3222 (C.D. Cal. (2010))

◇   Submitted an expert witness declaration concerning fairness of settlement provisions and processes, relied upon by the Ninth Circuit in reversing district court's approval of class action settlement (*Radcliffe v. Experian Inform. Solutions Inc.*, 715 F.3d 1157, 1166 (9th Cir. 2013))

◇   Submitted an expert witness declaration concerning attorney's fees in class action fee dispute, relied upon by the court in deciding fee issue (*Ellis v. Toshiba America Information Systems, Inc.*, 218 Cal. App. 4th 853, 871, 160 Cal. Rptr. 3d 557, 573 (2d Dist. 2013))

◇   Submitted an expert witness declaration concerning common benefit fee in MDL proceeding in federal court (*In re Genetically Modified Rice Litigation*, MDL Docket No. 1811 (E.D. Mo. (2009))

◇   Submitted an expert witness declaration concerning settlement approval and fee application in national MDL class action proceeding (*In re Wal-Mart Wage and Hour Employment Practices Litigation*, MDL Docket No.1735 (D. Nev. (2009))

◊   Submitted an expert witness declaration concerning fee application in national MDL class action proceeding, referenced by court in awarding fees (*In re Dept. of Veterans Affairs (VA) Data Theft Litigation*, 653 F. Supp.2d 58 (D.D.C. (2009))

◊   Submitted an expert witness declaration concerning common benefit fee in mass tort MDL proceeding in federal court (*In re Kugel Mesh Products Liability Litigation*, MDL Docket No. 1842 (D. R.I. (2009))

◊   Submitted an expert witness declaration and supplemental declaration concerning common benefit fee in consolidated mass tort proceedings in state court (*In re All Kugel Mesh Individual Cases*, Master Docket No. PC-2008-9999, Superior Court, State of Rhode Island (2009))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Warner v. Experian Information Solutions, Inc.*, Case No.   BC362599, California Superior Court, Los Angeles County (2009))

◊   Submitted an expert witness declaration concerning process for selecting lead counsel in complex MDL antitrust class action (*In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL Docket No. 1869 (D. D.C. (2008))

◊   Retained, deposed, and testified in court as expert witness on procedural issues in complex class action (*Hoffman v. American Express*, Case No. 2001-022881, California Superior Court, Alameda County (2008))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Salsgiver v. Yahoo! Inc.*, Case No. BC367430, California Superior Court, Los Angeles County (2008))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Voight v. Cisco Systems, Inc.*, Case No. 106CV075705, California Superior Court, Santa Clara County (2008))

◊   Retained and deposed as expert witness on fee issues in attorney fee dispute (*Stock v. Hafif,* Case No. KC034700, California Superior Court, Los Angeles County (2008))

◊   Submitted an expert witness declaration concerning fee application in consumer class action (*Nicholas v. Progressive Direct*, Civil Action No. 06-141-DLB (E.D. Ky. (2008))

◊   Submitted expert witness declaration concerning procedural aspects of national class action arbitration (*Johnson v. Gruma Corp.,* JAMS Arbitration No. 1220026252 (2007))

◊   Submitted expert witness declaration concerning fee application in securities case (*Drulias v. ADE Corp.,* Civil Action No. 06-11033 PBS (D. Mass. (2007))

◊   Submitted expert witness declaration concerning use of expert witness on complex litigation matters in criminal trial (*U.S. v. Gallion, et al*., No. 07-39 (E. D. Ky. (2007))

◊   Retained as expert witness on fees matters (*Heger v. Attorneys' Title Guaranty Fund, Inc.,* No. 03-L-398, Illinois Circuit Court, Lake County, IL (2007))

◊   Retained as expert witness on certification in statewide insurance class action (*Wagner v. Travelers Property Casualty of America*, No. 06CV338, Colorado District Court, Boulder County, CO (2007))

◊   Testified as expert witness concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corporate Derivative Litigation*, Case No. 01098905, California Superior Court, Santa Barbara Cty, CA (2006))

◊   Submitted expert witness declaration concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corp. Corporate Derivative Litigation*, Case No. CV-03-11 RSWL (C.D. Cal. (2006))

◊   Retained as expert witness as to certification of class action (*Canova v. Imperial Irrigation District*, Case No. L-01273, California Superior Court, Imperial Cty, CA (2005))

◊   Retained as expert witness as to certification of nationwide class action (*Enriquez v. Edward D. Jones & Co.,* Missouri Circuit Court, St. Louis, MO (2005))

◊   Submitted expert witness declaration on procedural aspects of international contract litigation filed in court in Korea (*Estate of Wakefield v. Bishop Han & Jooan Methodist Church* (2002))

◊   Submitted expert witness declaration as to contested factual matters in case involving access to a public forum (*Cimarron Alliance Foundation v. The City of Oklahoma City,* Case No. Civ. 2001-1827-C (W.D. Ok. (2002))

◊   Submitted expert witness declaration concerning reasonableness of class certification, settlement, and fees (*Baird v. Thomson Elec. Co.*, Case No. 00-L-000761, Cir. Ct., Mad. Cty, IL (2001))

### *Expert Consultant*

◊   Provided expert consulting services to the ACLU on multi-district litigation issues arising out of various challenges to President Trump's travel ban and related policies (*In re American Civil Liberties Union Freedom of Information Act Requests Regarding Executive Order 13769*, Case Pending No. 28, Judicial Panel on Multidistrict Litigation (2017); *Darweesh v. Trump*, Case No. 1:17-cv-00480-CBA-LB (E.D.N.Y. (2017))

◊   Provided expert consulting services to law firm regarding billing practices and fee allocation issues in nationwide class action (2016)

◊   Provided expert consulting services to law firm regarding fee allocation issues in nationwide class action (2016)

**A-9**

◊   Provided expert consulting services to the ACLU of Southern California on class action and procedural issues arising out of challenges to municipality's treatment of homeless persons with disabilities (*Glover v. City of Laguna Beach*, Case No. 8:15-cv-01332-AG-DFM (C.D. Cal. (2016))

◊   Retained as an expert consultant on class certification issues (*In re: Facebook, Inc., IPO Securities and Derivative Litigation*, No. 1:12-md-2389 (S.D.N.Y. 2015))

◊   Provided expert consulting services to lead class counsel on class certification issues in nationwide class action (2015)

◊   Retained by a Fortune 100 Company as an expert consultant on class certification issues

◊   Retained as an expert consultant on class action and procedure related issues (*Lange et al v. WPX Energy Rocky Mountain LLC*, Case No. 2:13-cv-00074-ABJ (D. Wy. (2013))

◊   Retained as an expert consultant on class action and procedure related issues (*Flo & Eddie, Inc., v. Sirius XM Radio, Inc.*, Case No. CV 13-5693 (C.D. Cal. (2013))

◊   Served as an expert consultant on substantive and procedural issues in challenge to legality of credit card late and over-time fees (*In Re Late Fee and Over-Limit Fee Litigation*, 528 F.Supp.2d 953 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014))

◊   Retained as an expert on Class Action Fairness Act (CAFA) removal issues and successfully briefed and argued remand motion based on local controversy exception (*Trevino, et al. v. Cummins, et al.*, No. 2:13-cv-00192-JAK-MRW (C. D. Cal. (2013))

◊   Retained as an expert consultant on class action related issues by consortium of business groups (*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010*, MDL No. 2179 (E.D. La. (2012))

◊   Provided presentation on class certification issues in nationwide medical monitoring classes (*In re: National Football League Players' Concussion Injury Litigation,* MDL No. 2323, Case No. 2:12-md-02323-AB (E.D. Pa. (2012))

◊   Retained as an expert consultant on class action related issues in mutli-state MDL consumer class action (*In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices & Prod. Liability Litig.*, MDL No. 2102 (S.D. N.Y. (2009))

◊   Retained as an expert consultant on class action certification, manageability, and related issues in mutli-state MDL consumer class action (*In re Teflon Prod. Liability Litig.*, MDL No. 1733 (S.D. Iowa (2008))

◊   Retained as an expert consultant/co-counsel on certification, manageability, and related issues in nationwide anti-trust class action (*Brantley v. NBC Universal*, No.- CV07-06101 (C.D. Cal. (2008))

◊   Retained as an expert consultant on class action issues in complex multi-jurisdictional construction

dispute (*Antenucci, et al., v. Washington Assoc. Residential Partner, LLP, et al.,* Civil No. 8-04194 (E.D. Pa. (2008))

◊   Retained as an expert consultant on complex litigation issues in multi-jurisdictional class action litigation (*McGreevy v. Montana Power Company*, No. 08-35137, U.S. Court of Appeals for the Ninth Circuit (2008))

◊   Retained as an expert consultant on class action and attorney fee issues in nationwide consumer class action (*Figueroa v. Sharper Image*, 517 F.Supp.2d 1292 (S.D. Fla. 2007))

◊   Retained as an expert consultant on attorney's fees issue in complex class action case (*Natural Gas Anti-Trust Cases Coordinated Proceedings*, D049206, California Court of Appeals, Fourth District (2007))

◊   Retained as an expert consultant on remedies and procedural matters in complex class action (*Sunscreen Cases*, JCCP No. 4352, California Superior Court, Los Angeles County (2006))

◊   Retained as an expert consultant on complex preclusion questions in petition for review to California Supreme Court (*Mooney v. Caspari,* Supreme Court of California (2006))

◊   Retained as an expert consultant on attorney fee issues in complex common fund case (*In Re DietDrugs (Phen/Fen) Products Liability Litigation* (E. D. Pa. (2006))

◊   Retained as an expert consultant on procedural matters in series of complex construction lien cases (*In re Venetian Lien Litigation*, Supreme Court of the State of Nevada (2005-2006))

◊   Served as an expert consultant on class certification issues in countywide class action (*Beauchamp v. Los Angeles Cty. Metropolitan Transp. Authority*, (C.D. Cal. 2004))

◊   Served as an expert consultant on class certification issues in state-wide class action (*Williams v. State of California*, Case No. 312-236, Cal. Superior Court, San Francisco)

◊   Served as an exert consultant on procedural aspects of complex welfare litigation (*Allen v. Anderson*, 199 F.3d 1331 (9th Cir. 1999))

*Ethics Opinions*

◊   Retained to provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2017))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2013))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2011))

◊   Provided expert opinion on issues of professional ethics in implicated by nationwide class action practice (*In re Professional Responsibility Inquiries* (2010))

◊   Provided expert opinion on issues of professional ethics implicated by complex litigation matter (*In re Professional Responsibility Inquiries* (2010))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2007))

*Publications on Class Actions & Procedure*

◊   NEWBERG ON CLASS ACTIONS (sole since 2008, sole author of entirely re-written Fifth Edition (2011-2018))

◊   *Profit for Costs*, 63 DEPAUL L. REV. 587 (2014) (with Morris A. Ratner)

◊   *Procedure and Society: An Essay for Steve Yeazell,* 61 U.C.L.A. REV. DISC. 136 (2013)

◊   *Supreme Court Round-Up – Part II*, 5 CLASS ACTION ATTORNEY FEE DIGEST 331 (September 2011)

◊   *Supreme Court Round-Up – Part I*, 5 CLASS ACTION ATTORNEY FEE DIGEST 263 (July-August 2011)

◊   *Class Action Fee Award* Procedures, 5 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2011)

◊   *Benefits of Class Action Lawsuits*, 4 CLASS ACTION ATTORNEY FEE DIGEST 423 (November 2010)

◊   *Contingent Fees for Representing the Government: Developments in California Law*, 4 CLASS ACTION ATTORNEY FEE DIGEST 335 (September 2010)

◊   *Supreme Court Roundup*, 4 CLASS ACTION ATTORNEY FEE DIGEST 251 (July 2010)

◊   *SCOTUS Okays Performance Enhancements in Federal Fee Shifting Cases – At Least In Principle,* 4 CLASS ACTION ATTORNEY FEE DIGEST 135 (April 2010)

◊   *The Puzzling Persistence of the AMega-Fund@ Concept*, 4 CLASS ACTION ATTORNEY FEE DIGEST 39 (February 2010)

◊   *2009: Class Action Fee Awards Go Out With A Bang, Not A Whimper*, 3 CLASS ACTION ATTORNEY FEE DIGEST 483   (December 2009)

◊   *Privatizing Government Litigation: Do Campaign Contributors Have An Inside Track?*, 3 CLASS ACTION ATTORNEY FEE DIGEST 407   (October 2009)

◊   *Supreme Court Preview*, 3 CLASS ACTION ATTORNEY FEE DIGEST 307 (August 2009)

◊   *Supreme Court Roundup*, 3 CLASS ACTION ATTORNEY FEE DIGEST 259 (July 2009)

◊   *What We Now Know About How Lead Plaintiffs Select Lead Counsel (And Hence Who Gets Attorney's Fees!) in Securities Cases*, 3 CLASS ACTION ATTORNEY FEE DIGEST 219 (June 2009)

◊   *Beware Of Ex Ante Incentive Award Agreements*, 3 CLASS ACTION ATTORNEY FEE DIGEST 175 (May 2009)

◊   *On What a "Common Benefit Fee" Is, Is Not, and Should Be*, 3 CLASS ACTION ATTORNEY FEE DIGEST 87 (March 2009)

◊   *2009: Emerging Issues in Class Action Fee Awards*, 3 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2009)

◊   *2008: The Year in Class Action Fee Awards*, 2 CLASS ACTION ATTORNEY FEE DIGEST 465 (December 2008)

◊   *The Largest Fee Award – Ever!*, 2 CLASS ACTION ATTORNEY FEE DIGEST 337 (September 2008)

◊   *Why Are Fee Reductions Always 50%?: On The Imprecision of Sanctions for Imprecise Fee Submissions*, 2 CLASS ACTION ATTORNEY FEE DIGEST 295 (August 2008)

◊   *Supreme Court Round-Up*, 2 CLASS ACTION ATTORNEY FEE DIGEST 257 (July 2008)

◊   *Fee-Shifting For Wrongful Removals: A Developing Trend?*, 2 CLASS ACTION ATTORNEY FEE DIGEST 177 (May 2008)

◊   *You Cut, I Choose:  (Two Recent Decisions About) Allocating Fees Among Class Counsel*, 2 CLASS ACTION ATTORNEY FEE DIGEST 137 (April 2008)

◊   *Why The Percentage Method?*, 2 CLASS ACTION ATTORNEY FEE DIGEST 93 (March 2008)

◊   *Reasonable Rates: Time To Reload The (Laffey) Matrix*, 2 CLASS ACTION ATTORNEY FEE DIGEST 47 (February 2008)

◊   *The "Lodestar Percentage" A New Concept For Fee Decisions?*, 2 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2008)

◊   *Class Action Practice Today: An Overview, in* ABA SECTION OF LITIGATION, CLASS ACTIONS TODAY 4 (2008)

◊   *Shedding Light on Outcomes in Class Actions*, *in* CONFIDENTIALITY, TRANSPARENCY, AND THE U.S. CIVIL JUSTICE SYSTEM 20-59 (Joseph W. Doherty, Robert T. Reville, and Laura Zakaras eds. 2008) (with Nicholas M. Pace)

◊   *Finality in Class Action Litigation: Lessons From Habeas*, 82 N.Y.U. L. REV. 791 (2007)

**A-13**

◊   *The American Law Institute's New Approach to Class Action Objectors' Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 347 (November 2007)

◊   *The American Law Institute's New Approach to Class Action Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 307 (October 2007)

◊   *"The Lawyers Got More Than The Class Did!": Is It Necessarily Problematic When Attorneys Fees Exceed Class Compensation?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 233 (August 2007)

◊   *Supreme Court Round-Up,* 1 CLASS ACTION ATTORNEY FEE DIGEST 201 (July 2007)

◊   *On The Difference Between Winning and Getting Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 163 (June 2007)

◊   *Divvying Up The Pot: Who Divides Aggregate Fee Awards, How, and How Publicly?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 127 (May 2007)

◊   *On Plaintiff Incentive Payments,* 1 CLASS ACTION ATTORNEY FEE DIGEST 95 (April 2007)

◊   *Percentage of What?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 63 (March 2007)

◊   *Lodestar v. Percentage: The Partial Success Wrinkle,* 1 CLASS ACTION ATTORNEY FEE DIGEST 31 (February 2007) (with Alan Hirsch)

◊   *The Fairness Hearing: Adversarial and Regulatory Approaches*, 53 U.C.L.A. L. REV. 1435 (2006) (excerpted in THE LAW OF CLASS ACTIONS AND OTHER AGGREGATE LITIGATION 447-449 (Richard A. Nagareda ed., 2009))

◊   *Why Enable Litigation? A Positive Externalities Theory of the Small Claims Class Action*, 74 U.M.K.C. L. REV. 709 (2006)

◊   *What a "Private Attorney General" Is – And Why It Matters*, 57 VAND. L. REV. 2129(2004) (excerpted in COMPLEX LITIGATION 63-72 (Kevin R. Johnson, Catherine A. Rogers & John Valery White eds., 2009)).

◊   *The Concept of Equality in Civil Procedure*, 23 CARDOZO L. REV. 1865 (2002) (selected for the Stanford/Yale Junior Faculty Forum, June 2001)

◊   *A Transactional Model of Adjudication*, 89 GEORGETOWN L.J. 371 (2000)

◊   *The Myth of Superiority*, 16 CONSTITUTIONAL COMMENTARY 599 (1999)

◊   *Divided We Litigate: Addressing Disputes Among Clients and Lawyers in Civil Rights Campaigns*, 106 YALE L. J. 1623 (1997) *(*excerpted in COMPLEX LITIGATION 120-123 (1998))

*Selected Presentations*

◊   *Panelist,* Federal Judicial Center, Managing Multidistrict Litigation and Other Complex Litigation Workshop (for federal judges) (March 15, 2018)

◊   *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 1, 2017

◊   *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2016

◊   *Judicial Power and its Limits in Multidistrict Litigation,* American Law Institute, Young Scholars Medal Conference, *The Future of Aggregate Litigation*, New York University School of Law, New York, New York, April 12, 2016

◊   *Class Action Update & Attorneys' Fees Issues Checklist,* MDL Transferee Judges Conference, Palm Beach, Florida, October 28, 2015

◊   *Class Action Law,* 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop, Tucson, Arizona, January 26, 2015

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2014

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2013

◊   *Class Action Remedies,* ABA 2013 National Institute on Class Actions, Boston, Massachusetts, October 23, 2013

◊   *The Public Life of the Private Law: The Logic and Experience of Mass Litigation – Conference in Honor of Richard Nagareda,* Vanderbilt Law School, Nashville, Tennessee, September 27-28, 2013

◊   *Brave New World: The Changing Face of Litigation and Law Firm Finance,* Clifford Symposium 2013, DePaul University College of Law, Chicago, Illinois, April 18-19, 2013

◊   *Twenty-First Century Litigation: Pathologies and Possibilities: A Symposium in Honor of Stephen Yeazell,* UCLA Law Review, UCLA School of Law, Los Angeles, California, January 24-25, 2013

◊   *Litigation's Mirror: The Procedural Consequences of Social Relationships,* Sidley Austin Professor of Law Chair Talk, Harvard Law School, Cambridge, Massachusetts, October 17, 2012

◊   *Alternative Litigation Funding (ALF) in the Class Action Context – Some Initial Thoughts,* Alternative Litigation Funding: A Roundtable Discussion Among Experts, George Washington University Law School, Washington, D.C., May 2, 2012

◊   *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases,* Brooklyn Law School Faculty Workshop, Brooklyn, New York, April 2, 2012

**A-15**

◊   *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Loyola Law School Faculty Workshop, Los Angeles, California, February 2, 2012

◊   *Recent Developments in Class Action Law and Impact on MDL Cases,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2011

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 26, 2010

◊   *A General Theory of the Class Suit*, University of Houston Law Center Colloquium, Houston, Texas, February 3, 2010

◊   *Unpacking The "Rigorous Analysis" Standard,* ALI-ABA 12th Annual National Institute on Class Actions, New York, New York, November 7, 2008

◊   *The Public Role in Private Law Enforcement: Visions from CAFA*, University of California (Boalt Hall) School of Law Civil Justice Workshop, Berkeley, California, February 28, 2008

◊   *The Public Role in Private Law Enforcement: Visions from CAFA*, University of Pennsylvania Law Review Symposium, Philadelphia, Pennsylvania, Dec. 1, 2007

◊   *Current CAFA Consequences: Has Class Action Practice Changed?,* ALI-ABA 11th Annual National Institute on Class Actions, Chicago, Illinois, October 17, 2007

◊   *Using Law Professors as Expert Witnesses in Class Action Lawsuits,* ALI-ABA 10th Annual National Institute on Class Actions, San Diego, California, October 6, 2006

◊   *Three Models for Transnational Class Actions*, Globalization of Class Action Panel, International Law Association 2006 Conference, Toronto, Canada, June 6, 2006

◊   *Why Create Litigation?:  A Positive Externalities Theory of the Small Claims Class Action*, UMKC Law Review Symposium, Kansas City, Missouri, April 7, 2006

◊   *Marks, Bonds, and Labels:  Three New Proposals for Private Oversight of Class Action Settlements*, UCLA Law Review Symposium, Los Angeles, California, January 26, 2006

◊   Class Action Fairness Act, Arnold & Porter, Los Angeles, California, December 6, 2005

◊   ALI-ABA 9th Annual National Institute on Class Actions, Chicago, Illinois, September 23, 2005

◊   Class Action Fairness Act, UCLA Alumni Assoc., Los Angeles, California, September 9, 2005

◊   Class Action Fairness Act, Thelen Reid & Priest, Los Angeles, California, May 12, 2005

◊   Class Action Fairness Act, Sidley Austin, Los Angeles, California, May 10, 2005

◊   Class Action Fairness Act, Munger, Tolles & Olson, Los Angeles, California, April 28, 2005

◊   Class Action Fairness Act, Akin Gump Strauss Hauer Feld, Century City, CA, April 20, 2005

◊

Selected Other Litigation Experience

*United States Supreme Court*

◊   Served as *amicus curiae* and authored *amicus* brief on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos*, No. 17-961, October Term 2018)

◊   Co-counsel on petition for writ of *certiorari* concerning application of the voluntary cessation doctrine to government defendants (*Rosebrock v. Hoffman*, 135 S. Ct.1893 (2015))

◊   Authored *amicus* brief filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011)

◊   Co-counsel in constitutional challenge to display of Christian cross on federal land in California's Mojave preserve (*Salazar v. Buono*, 130 S. Ct. 1803 (2010))

◊   Co-authored *amicus* brief filed on behalf of constitutional law professors arguing against constitutionality of Texas criminal law (*Lawrence v. Texas*, 539 U.S. 558 (2003))

◊   Co-authored *amicus* brief on scope of *Miranda* (*Illinois v. Perkins*, 496 U.S. 292 (1990))

*Attorney's Fees*

◊   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D.Pa. April 5, 2018))

◊   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016)).

◊   Served as *amicus curiae* and co-authored *amicus* brief on proper approach to attorney's fees in common fund cases, relied on by the court in *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504, 376 P.3d 672, 687 (2016).

*Consumer Class Action*

◊   Co-counsel in challenge to antenna-related design defect in Apple's iPhone4 (*Dydyk v. Apple Inc.*,

**A-17**

5:10-cv-02897-HRL, U.S. Dist. Court, N.D. Cal.) (complaint filed June 30, 2010)

◊   Co-class counsel in $8.5 million nationwide class action settlement challenging privacy concerns raised by Google's Buzz social networking program (*In re Google Buzz Privacy Litigation*, 5:10-cv-00672-JW, U.S. Dist. Court, N.D. Cal.) (amended final judgment June 2, 2011)

*Disability*

◊   Co-counsel in successful ADA challenge ($500,000 jury verdict) to the denial of health care in emergency room (*Howe v. Hull*, 874 F. Supp. 779, 873 F. Supp 72 (N.D. Ohio 1994))

*Employment*

◊   Co-counsel in challenges to scope of family benefit programs (*Ross v. Denver Dept. of Health*, 883 P.2d 516 (Colo. App. 1994)); *(Phillips v. Wisc. Personnel Com'n*, 482 N.W.2d 121 (Wisc. 1992))

*Equal Protection*

◊   Co-counsel in (state court phases of) successful challenge to constitutionality of a Colorado ballot initiative, Amendment 2 (*Evans v. Romer*, 882 P.2d 1335 (Colo. 1994))

◊   Co-counsel (and *amici*) in challenges to rules barring military service by gay people (*Able v. United States*, 44 F.3d 128 (2d Cir. 1995); *Steffan v. Perry*, 41 F.3d 677 (D.C. Cir. 1994) (*en banc*))

◊   Co-counsel in challenge to the constitutionality of the Attorney General of Georgia' firing of staff attorney (*Shahar v. Bowers*, 120 F.3d 211 (11th Cir. 1997))

*Fair Housing*

◊   Co-counsel in successful Fair Housing Act case on behalf of group home (*Hogar Agua y Vida En el Desierto v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994))

*Family Law*

◊   Co-counsel in challenge to constitutionality of Florida law limiting adoption (*Cox v. Florida Dept. of Health and Rehab. Srvcs.*, 656 So.2d 902 (Fla. 1995))

◊   Co-authored *amicus* brief in successful challenge to Hawaii ban on same-sex marriages (*Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993))

*First Amendment*

◊   Co-counsel in successful challenge to constitutionality of Alabama law barring state funding foruniversity student groups (*GLBA v. Sessions*, 930 F.Supp. 1492 (M.D. Ala. 1996))

◊   Co-counsel in successful challenge to content restrictions on grants for AIDS education materials (*Gay Men's Health Crisis v. Sullivan*, 792 F.Supp. 278 (S.D.N.Y. 1992))

*Landlord / Tenant*

◊   Lead counsel in successful challenge to rent control regulation (*Braschi v. Stahl Associates Co.*, 544 N.E.2d 49 (N.Y. 1989))

*Police*

◊   Co-counsel in case challenging DEA brutality (*Anderson v. Branen*, 27 F.3d 29 (2nd Cir. 1994))

*Racial Equality*

◊   Co-authored *amicus* brief for constitutional law professors challenging constitutionality of Proposition 209 *(Coalition for Economic Equity v. Wilson*, 110 F.3d 1431 (9th Cir. 1997))

SELECTED OTHER PUBLICATIONS

*Editorials*

◊   *Follow the Leaders*, NEW YORK TIMES, March 15, 2005
◊   *Play It Straight*, NEW YORK TIMES, October 16, 2004
◊   *Hiding Behind the Constitution*, NEW YORK TIMES, March 20, 2004
◊   *Toward More Perfect Unions,* NEW YORK TIMES, November 20, 2003 (with Brad Sears)
◊   *Don't Ask, Don't Tell, Don't Believe It*, NEW YORK TIMES, July 20, 1993
◊   *AIDS: Illness and Injustice*, WASH. POST, July 26, 1992 (with Nan D. Hunter)

BAR ADMISSIONS

◊   Massachusetts (2008)
◊   California (2004)
◊   District of Columbia (1987) (inactive)
◊   Pennsylvania (1986) (inactive)
◊   U.S. Supreme Court (1993)
◊   U.S. Court of Appeals for the First Circuit (2010)
◊   U.S. Court of Appeals for the Second Circuit (2015)
◊   U.S. Court of Appeals for the Fifth Circuit (1989)
◊   U.S. Court of Appeals for the Ninth Circuit (2004)
◊   U.S. Court of Appeals for the Eleventh Circuit (1993)
◊   U.S. Court of Appeals for the D.C. Circuit (1993)
◊   U.S. District Courts for the Central District of California (2004)
◊   U.S. District Court for the District of the District of Columbia (1989)
◊   U.S. District Court for the District of Massachusetts (2010)
◊   U.S. District Court for the Northern District of California (2010)

# EXHIBIT B

*Hale v. State Farm Mutual Automobile Insurance Co.*
Case No. 3:12-cv-00660
Expert Declaration of William B. Rubenstein

### EXHIBIT B

Partial List of Documents Reviewed by Professor Rubenstein
(other than case law and scholarship on the relevant issues)

1. Class Action Complaint, ECF No. 2
2. *Avery v. State Farm Mut. Auto. Ins. Co.*, 321 Ill. App. 3d 269 (2001), ECF No. 2-1
3. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100 (2005), ECF No. 2-2
4. *Avery v. State Farm* – State Farm Brief in Opposition to Plaintiffs' Conditional Motion for Non-Participation, ECF No. 2-3
5. Robert Lenzner & Matthew Miller, *Buying Justice*, FORBES (July 21, 2003), ECF No. 2-4
6. *Avery v. State Farm* – State Farm Response in Opposition to Petition to Recall Mandate and Vacate Judgment, ECF No. 2-5
7. Civil Cover Sheet, ECF No. 2-6
8. Motion to Dismiss, ECF No. 13
9. Table Comparing *Hale* Allegations to *Avery* Allegations, ECF No. 13-1
10. Brief in Support of Motion to Dismiss, ECF No. 21
11. Motion to Dismiss – Citizens for Karmeier, ECF No. 24
12. Brief in Support of Motion to Dismiss – Citizens for Karmeier, ECF No. 27
13. Brief in Support of Motion to Dismiss – Shepherd, ECF No. 36
14. Brief in Opposition to Motion to Dismiss, ECF No. 50
15. Reply Brief in Support of Motion to Dismiss, ECF No. 56
16. Reply Brief in Support of Motion to Dismiss – Shepherd, ECF No. 57
17. Motion to Dismiss – Murnane, ECF No. 61
18. Brief in Support of Motion to Dismiss – Murnane, ECF No. 62
19. Brief in Opposition to Motion to Dismiss – Murnane, ECF No. 63
20. Reply Brief in Support of Motion to Dismiss – Murnane, ECF No. 66
21. Order Denying Motion to Dismiss, ECF No. 67
22. Motion for Class Certification, ECF No. 128
23. Brief in Support of Motion for Class Certification, ECF No. 129
24. Brief in Opposition to Motion for Class Certification, ECF No. 141
25. Affidavit Accompanying Brief in Opposition to Motion for Class Certification, ECF No. 141-1
26. State Farm Answer, ECF No. 161
27. Motion to Appoint Counsel, ECF No. 179
28. First Amended Class Action Complaint, ECF No. 289
29. Robert Lenzner & Matthew Miller, *Buying Justice*, FORBES (July 21, 2003), ECF No. 289-4
30. State Farm Answer to First Amended Class Action Complaint, ECF No. 295
31. Motion to Modify Order Permitting Deposition of Justice Karmeier, ECF No. 466
32. State Farm Brief in Opposition to Motion for Certification, ECF No. 467
33. Motion to Exclude Richard Painter's Testimony on Superiority, ECF No. 489

34. Reply Brief in Support of Motion for Class Certification, ECF No. 492
35. State Farm Brief in Opposition to Motion to Exclude Richard Painter's Testimony on Superiority, ECF No. 507
36. Order on Motion to Modify Order on Justice Karmeier's Deposition, ECF No. 520
37. Class Certification Order, ECF No. 556
38. Seventh Circuit Order Denying Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f), ECF No. 572
39. Motion for Clarification of Class Certification Order, ECF No. 587
40. State Farm Opposition to Motion for Clarification, ECF No. 590
41. Order on Motion for Clarification, ECF No. 596
42. State Farm Motion for Summary Judgment Under Rooker-Feldman, ECF No. 646
43. Brief in Opposition to Motion for Summary Judgment Under Rooker-Feldman, ECF No. 661
44. Reply Brief in Support of Motion for Summary Judgment Under Rooker-Feldman, ECF No. 669
45. State Farm Motion for Summary Judgment, ECF No. 694
46. Order on Motion for Summary Judgment Under Rooker-Feldman, ECF No. 726
47. Brief in Opposition to Motion for Summary Judgment, ECF No. 729
48. Reply Brief in Support of Motion for Summary Judgment, ECF No. 735
49. Class Certification Notice Plan, ECF No. 768
50. Order Approving Notice Plan, ECF No. 770
51. State Farm Trial Brief, ECF No. 898
52. Plaintiffs' Trial Brief, ECF No. 901
53. Motion for Preliminary Approval of Class Action Settlement, ECF No. 939
54. State Farm Brief in Support of Preliminary Approval of Settlement, ECF No. 940
55. Settlement Agreement, ECF No. 941
56. Order Granting Preliminary Settlement Approval, ECF No. 942
57. Second Amended Class Action Complaint, ECF No. 943
58. Settlement Notice Plan, ECF No. 945-1
59. State Farm Answer to Second Amended Class Action Complaint, ECF No. 949
60. CAFA Notice, ECF No. 952
61. Declaration on Implementation of CAFA Notice, ECF No. 952-1
62. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100 (2005)

# EXHIBIT C

*Hale v. State Farm Mutual Automobile Insurance Co.*
Case No. 3:12-cv-00660
Expert Declaration of William B. Rubenstein

**EXHIBIT C**
List of Northern District of Illinois Cases
Affirming Fee Awards in Recent Years[1]

1.  *Koszyk v. Country Financial a/k/a CC Services, Inc.*, No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016)

2.  *In re: Sears, Roebuck and Co. Front-loading Washer Products Liability Litigation*, Nos. 06 C 7023, 07 C 0412, 08 C 1832, 2016 WL 4765679 (N.D. Ill. Sept. 13, 2016)

3.  *In re Groupon, Inc. Securities Litigation*, No. 12 CV 2450, 2016 WL 3896839 (N.D. Ill. Jul. 13, 2016)

4.  *Franks v. Mkm Oil, Inc.*, No. 10 CV 00013, 2016 WL 861182 (N.D. Ill. Mar. 7, 2016

5.  *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 216 (N.D. Ill. 2016)

6.  *Kaufman v. American Express Travel Related Services, Co.*, No. 07-cv-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016)

7.  *Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015)

8.  *McCue v. MB Financial, Inc.*, No. 15 cv 988, 2015 WL 4522564 (N.D. Ill. Jul. 23, 2015)

9.  *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230(GF), 2015 WL 4275540 (N.D. Ill. Jul. 13, 2015)

10. *Adkins v. Nestle Purina PetCare Company*, Nos. 12-cv-2871, 13-cv-1512, 2015 WL 10892070 (N.D. Ill. Jun. 23, 2015)

11. *Reid v. Unilever United States, Inc.*, No. 12 C 6058, 2015 WL 3653318 (N.D. Ill. Jun. 10, 2015)

12. *Prena v. BMO Financial Corp.*, No. 15 C 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015)

13. *Kurgan v. Chiro One Wellness Centers LLC*, No. 10-cv-1899, 2015 WL 1850599 (N.D. Ill. Apr. 21, 2015)

---

[1] This list was generated for use in an expert declaration I filed in *Aranda v. Caribbean Cruise Line, Inc.*, 2017 WL 1369741, at *5 (N.D. Ill. Apr. 10, 2017), *aff'd sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018).

14. *Craftwood Lumber Company v. Interline Brands, Inc.*, No. 11-cv-4462, 2015 WL 1399367 (Mar. 23, 2015)

15. *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)

16. *In re Dairy Farmers of America, Inc.*, 80 F.Supp.3d 838 (N.D. Ill. 2015)

17. *In re Capital One Telephone Consumer Protection Act Litigation*, 80 F.Supp.3d 781 (N.D. Ill. 2015)

18. *Illinois Nut & Candy Home of Fantasia Confections, LLC v. Grubhub, Inc.*, No. 14-cv-949, 2015 WL 10854272 (N.D. Ill. Jan. 30, 2015)

19. *Stumpf v. Pyod, LLC*, No. 12 C 4688, 2013 WL 6123156 (N.D. Ill. Nov. 20, 2013)

20. *In re Navistar Diesel Engine Products Liability Litigation*, No. 11 C 2496, 2013 WL 4556362 (N.D. Ill. Aug. 11, 2013)

21. *In re Northfield Laboratories, Inc. Securities Litigation*, No. 06 C 1493, 2012 WL 2458445 (N.D. Ill. Jun. 26, 2012)

22. *Pavlik v. FDIC*, No. 10 C 816, 2011 WL 5184445 (N.D. Ill. Nov. 1, 2011)

# EXHIBIT D

*Hale v. State Farm Mutual Automobile Insurance Co.*
Case No. 3:12-cv-00660
Expert Declaration of William B. Rubenstein

**EXHIBIT D**
List of $250 Million Range Cases That Progressed to Trial

1. *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 430 (S.D.N.Y. 2016) ($244 million settlement) (69,129 total hours) (settled after first day of trial)

2. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837 (E.D. Va. 2016) ($219 million settlement) (66,000 total hours) (settled two months before trial after both sides had briefed admissibility of expert testimony at trial)

3. *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV-05-6838-CAS(MANX), 2015 WL 12592726 (C.D. Cal. Mar. 17, 2015) ($251 million settlement) (77,333 total hours) (settled after filing of motions in *limine* and submission of witness lists for trial)

4. *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. CIV.A. 08-2177 DMC, 2013 WL 5505744 (D.N.J. Oct. 1, 2013) ($215 million settlement) (126,177 total hours) (settled after filing of trial briefs and motions in *limine*)

5. *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340 (SLR), 2009 BL 353691, 2009 US Dist LEXIS 133251 (D. Del. Apr. 23, 2009) ($250 million settlement) (45,175 total hours) (settled after one day of trial proceedings)

6. *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) ($255 million settlement) (71,918 total hours) (settled after filing of trial briefs and trial-related motions in *limine*)

7. *In re CMS Energy Sec. Litig.*, No. 02 CV 72004(GCS), 2007 WL 9611274 (E.D. Mich. Sept. 6, 2007) ($200 million settlement) (49,315 total hours) (settled after submission of witness lists and filing of trial-related motions)

8. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ($326 million settlement) (94,000 total hours) (settled after submission of trial briefs, witness lists, motions in *limine*, and exhibit lists)

9. *Williams Securities Litigation,* Civil Action No. 4:02-cv-00072 (N.D. Okl., Feb. 12, 2007) (ECF No. 1638) (awarding fees) ($311 million) (140,483 total hours) (settled after filing of motions in *limine*)

# EXHIBIT E

*Hale v. State Farm Mutual Automobile Insurance Co.*
Case No. 3:12-cv-00660
Expert Declaration of William B. Rubenstein

**EXHIBIT E**
List of Cases with Multipliers of 3 or More

1.  *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327, 335-45 (Bankr. D. Md. 2000) ("Based on Fidelity's analysis which assumes a $300 blended hourly rate would be reasonable, the contingent fee requested by Snyder, Weiner, as modified, of $71.2 million would be 19.6 times the lodestar starting point….Snyder, Weiner will be awarded its requested fee in the amount of $71.2 million for professional services as special litigation counsel for the Chapter 7 Trustee.")) (bankruptcy).

2.  *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, NO. CIV.A. 03-457, 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005) ("The Court further notes that the high lodestar multiplier (15.6) which results from the Court's award of attorneys' fees in this case is neutralized with respect to the reasonableness of a percentage fee award of 20% by the extraordinary support Plaintiffs have shown for counsel's request for fees.").

3.  *Glendora Cmty. Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 479 (Ct. App. 1984) ("The contention of [appellant] is that the fee sought is more than 12 times the fee for which services at an hourly rate would have been obtained from an attorney specializing in condemnation (including $8,000 for costs on appeal). Such calculations are based upon hindsight rather than reasonable expectation.") (condemnation proceeding).

4.  *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706, ECF No. 107 at 5 (S. D. N.Y. July 17, 2007) ("Lead Plaintiff's counsel's total lodestar is $1,917,094.50. A 15.25% fee represents a reasonable multiplier of 10.26. Given the public policy and judicial economy interests that support the expeditious settlement of cases...the requested fee is reasonable.").

5.  *Weiss v. Mercedes-Benz*, 899 F. Supp. 1297 (D. N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995) , as reported in *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 572, 592 (D.N.J. 1997) (stating that *Weiss* court had "award[ed] fee that resulted in a multiple of 9.3 times the lodestar and an average hourly rate of $2,779.63"), *vacated on other grounds sub nom. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998).

6.  *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) ("If a lodestar approach were used, the actual amount of attorney's fees of class counsel calculated by multiplying the number of hours worked by the hourly billing rate totals $826,665.00, such that the requested attorney's fees would constitute a lodestar multiplier of 8.9 percent. After hearing, and some hand-wringing, the Court concludes that the fee is not

unreasonable under the common fund doctrine.") (class action within bankruptcy).

7.  *Cosgrove v. Sullivan*, 759 F. Supp. 1667, 167 n.1 (S.D.N.Y. 1991) ("Under these circumstances, we set the prevailing counsel's fee at $1,000,000.00…[t]he total 'lodestar' in this case, which represents hours worked multiplied by a reasonable hourly rate, is $114,398.00.") (8.74 multiplier)

8.  *Muchnick v. First Federal Savings & Loan Association of Philadelphia*, No. CIV.A. 86-1104, 1986 WL 10791, at *1 (E.D. Pa. Sept. 30, 1986) ("Although the lodestar in this case is approximately $30,000.00, counsel seeks an attorneys' fee of $250,000.00 . . . I conclude that the requested fee is eminently reasonable under the circumstances of this case and can be justified under the lodestar method of calculation") (8.33 multiplier).

9.  *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, Civil Action No. 05-11148-PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) ("Balancing all the factors under the crosscheck approach, I award the amount of $70,000,000, which represents a multiplier of about 8.3 times lodestar, and about 20 percent of the common fund.").

10. *Santos v. Camacho*, No. CIV. 04-00006, 2008 WL 8602098, at*39 (D. Guam Apr. 23, 2008) ("Based on the significant results achieved through the efforts of Class Counsel in creating the funds for settlement and in light of case law, the court should find that this factor weighs strongly in favor of granting counsel a multiplier of 8."), *aff'd Simpao v. Gov't of Guam,* 369 F. App'x 837, 840 (9th Cir. 2010).

11. *Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) ("Here, the lodestar sought by Class Counsel, approximately 7.6 times, falls within the range granted by courts and equals the 31.7% being sought. While this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial.").

12. *Hainey v. Parrott,* No. 1:02-CV-733, 2007 WL 3308027, at *1-2 (S.D. Ohio Nov. 6, 2007) ("[C]ounsel's lodestar fee calculation is approximately $241,000…[i]n consideration of the above factors, the Court finds that an award of attorney's fees of 30% of the common fund, or $1.8 million, is appropriate in this case.") (7.47 effective multiplier).

13. *In re Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (awarding a "final fee of $232,310" contrasted with "hourly fees of $33,110") (bankruptcy).

14. *In re Rite Aid Corp. Sec. Litigation*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) ("Based on the $31,660,328.75 proposed fee award and the $4,549,824.75 lodestar, we conclude that plaintiffs' counsel requests approval of a fee award with a 6.96

multiplier.").

15. *Steiner v. Amer. Broadcasting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("Based on class counsel's total hours, the lodestar multiplier was approximately 6.85. Although this multiplier is higher than those in many common fund cases, it still falls well within the range of multipliers that courts have allowed.") (internal citations omitted).

16. *In re UnitedHealth Grp. Inc. PSLRA Litig.,* 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009) ("Using the Court-calculated lodestar, this fee would represent a multiplier of nearly 6.5. The Court finds this multiplier appropriate").

17. *Nieman v. Duke Energy Corp.*, No. 312CV00456MOCDSC, 2015 WL 13609363, at *2 (W.D.N.C. Nov. 2, 2015) ("The amount of the settlement and the efficiency of counsel in reaching such a resolution reinforce an upward variance from a 4.5 multiplier, but not an 8.0 multiplier. Considering all of the arguments presented, the court finds that the work accomplished in this case—which was substantial—is reasonably compensated by an 18% fee when the *Johnson* factors are considered and then crosschecked.") (6.43 multiplier).

18. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Here, the lodestar sought by Class Counsel, approximately 6.3 times, falls within the range granted by courts and equals the one-third percentage being sought.  While this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial.").

19. *Spartanburg Reg'l Health Servs. Dist., Inc. v. Hillenbrand Indus., Inc.*, No. 7:03-cv-02141, ECF Nos. 377 (D. S.C. Aug. 15, 2006) (approving fee request noting multiplier "slightly above six"); ECF No. 338-5 (providing data showing 6.22 multiplier).

20. *Wenzel v. Colvin*, No. EDCV 11-0338 JEM, 2014 WL 3810247, at *4 (C.D. Cal. Aug. 1, 2014) ("The $1,000 per hour rate constitutes a multiplier of 6.06 over counsel's normal hourly rate, consistent with cases that reward excellent results.").

21. *In re Cardinal Health Inc. Securities Litigations*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) ("From the Court's analysis of the previous factors, the Court has found that approximately 18% is a reasonable award, which would yield a lodestar multiplier of six.").

22. *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No. 1:04-cv-00416, ECF No. 203 (M.D. N.C. Feb. 15, 2007) (approving fee request); ECF No. 193 at 17 (stating fee request embodied multiplier of "approximately 6").

23. *In re RJR Nabisco, Inc. Securities Litigation*, No. 88 Civ. 7905(MBM), 1992 WL 210138, at *5-6 (S.D. N.Y. Aug. 14, 1992) ("[T]he requested fees total six times the

value of the time spent by plaintiffs' counsel, what is referred to as the lodestar amount, which amount he says equals the total fees of all defense counsel. . . . [T]he award of a percentage fee in common fund cases such as this is consistent with the better and increasingly prevailing view in such cases, the requested percentage lies well within the limits awarded in similar cases, plaintiffs' counsel have not taken a free ride on the efforts of a government agency and the settlement was skillfully negotiated.").

24. *Ladewig v. Arizona Dep't of Revenue*, 204 Ariz. 352, 359, 63 P.3d 1089, 1096 (Ariz. Tax Ct. 2003) ("In this case, the Court believes that in light of the lengthy delay in recovery, and the high risks assumed by counsel, that a lodestar multiplier of 6 is appropriate.").

25. *Athale v. Sinotech Energy Ltd.,* No. 11 CIV. 05831 (AJN), 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) ("This amounts to a lodestar multiplier of 5.65, which although high, is not unreasonable under the particular facts of this case.").

26. *In re Charter Commc'ns, Inc., Sec. Litig.,* No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *22 (E.D. Mo. June 30, 2005) ("Here fees of 20% of the settlement yield a 5.61 multiplier, which is within the range of multipliers awarded in comparable complex cases.").

27. *Rawa v. Monsanto Co.*, No. 4:17CV01252 AGF, 2018 WL 2389040, at *9 (E.D. Mo. May 25, 2018), on appeal (noting that fee award had "corresponding lodestar multiplier of 5.3" that was "quite high compared to similar cases in this circuit" but finding it not "too high").

28. *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) ("In this case, dividing the $14 million fee request by the lodestar figure yields a multiplier of about 5.3. A review of the case law indicates that while that figure is toward the high end of acceptable multipliers, it is not atypical for similar fee-award cases.")

29. *Merkner v. AK Steel Corp.*, No. 1:09-CV-423-TSB, 2011 WL 13202629, at *5 (S.D. Ohio Jan. 10, 2011) ("Applying the rates requested with regard to the hours reflected in the Declarations of Mr. Coleman and Ms. Wallace yields a lodestar figure of $1,699,467. In light of the $9.1 million sought, the 'lodestar multiplier' would be 5.3. This multiplier is acceptable under the facts and circumstances of this case.").

30. *Di Giacomo v. Plains All Am. Pipeline*, No. CIV.A.H-99-4137, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) ("This court finds that 5.3 is an acceptable multiplier in light of the particular facts of this case, discussed more fully below.").

31. *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) ("The plaintiffs' request in this case for 25% of the class fund would result in a fee of $6,375,000, which is a multiplier of approximately 5.2 times the $1.2 Million lodestar in this case. The Court has concluded that it will award Class Counsel 25% of the class fund, and addresses the reasons for doing so below.").

32. *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347 (S.D.N.Y. 2014) (noting that, "A fee award of 25% of the fund or $11,475,000 would represent a multiplier of 5.2 of the lodestar" and approving 25% award).

33. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 791 (S.D. Tex. 2008) ("[T]he Court finds that the exceptional obstacles to recovery that were present here, and the remarkable success obtained by Lead Counsel's skill and experience make this a rare and exceptional case warranting the application of the requested 5.2 multiplier under a lodestar cross-check or enhancement under a lodestar analysis.") (internal quotation marks and citation omitted).

34. *Zeltser v. Merrill Lynch & Co.*, No. 13 CIV. 1531 FM, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (stating that "the lodestar sought by Class Counsel, approximately 5.1 times the fees sought, falls within the range granted by courts" and approving award).

35. *In re Fernald Litig.*, No. C-1-85-149, 1989 WL 267038, at *5 (S.D. Ohio Sept. 29, 1989) ("We conclude, therefore, that plaintiffs' class counsel are entitled to twenty (20%) percent of the common fund created or an equivalent multiplier of five.").

36. Fleisher v. Phoenix Life Ins. Co., No. 11-CV-8405 (CM), 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) ("Based on the requested fee ($13,500,000), class counsel's aggregate lodestar yields a 'crosscheck' multiplier of 4.87.  This is well within the range of crosscheck multipliers awarded in this circuit.").

37. Meijer, Inc. v. 3M, No. CIV.A. 04-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) ("[T]he Court finds that, given the facts of this case, the requested lodestar multiplier of 4.77 is acceptable and does not call for a reduction in Plaintiffs' Counsel's requested attorneys' fees award.").

38. *Cornwell v. Credit Suisse Grp.*, No. 08-CV-03758(VM), 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) ("Lead Plaintiffs' counsel's total lodestar is $4,049,631.50. A 27.5% fee represents a multiplier of 4.7. Given the public policy and judicial economy interests that support the expeditious settlement of cases, the requested fee is reasonable.") (citation omitted).

39. *In re Xcel Energy, Inc., Sec., Derivative & "'ERISA" Litig.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (approving lodestar multiplier of 4.7 for securities class action component, because "[u]nder these circumstances, the court concludes that the 25% attorney fee, when cross-checked against a lodestar multiplier of 4.7, is reasonable;" also approving lodestar multiplier of 2.16 for ERISA component).

40. *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("Finally, in 'cross-checking' the percentage fee against the lodestar-multiple, it clearly appears that the modest multiplier of 4.65 is fair and reasonable.").

41.   Flores v. Express Servs., Inc., No. CV 14-3298, 2017 WL 1177098, at *4 (E.D. Pa. Mar. 30, 2017) ("The counsel fee request of $1,895,362.33 results in a multiplier of 4.6, that is a requested fee which is 4.6 times the lodestar amount. This multiplier is reasonable . . .").

42.   Holleran v Rita Medical Systems, Inc., No. RG06302394, 2007 WL 7759253 (Cal.Super. Oct. 04, 2007) ("Counsel for Plaintiffs seek fees in the total amount of $290,000, which represents a multiplier of 4.57. The agreed fees sought are substantially higher than the lodestar, but presumably reflect the contingent risk of the case to class counsel, the benefits of certainty and of limiting its own attorneys' fees to Angiodynamics, and other factors.").

43.   *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *7 & 8 n.3 (N.D. Cal. May 21, 2015) (stating that, "[c]onsidering all of the facts and circumstances, the Court, in its discretion, concludes that [one firm] deserves a multiplier of 2 and [second firm] deserves a multiplier of 5.5" and noting that net result is a total multiplier of 4.53).

44.   *Municipal Authority of Town of Bloomsburg v. Commonwealth of Pennsylvania*, 527 F. Supp. 982, 1000 (M.D. Pa. 1981) ("The multiplier of 4.5 requested by Petitioners will be applied to the lodestar fee despite the facts that such a multiplier is extremely high and appears to be probably without precedent. It is warranted only because of the peculiar facts of this case.").

45.   *Deloach v. Philip Morris Companies*, No. 1:00CV01235, 2003 WL 23094907, at *11 (M.D.N.C. Dec. 19, 2003) ("A multiplier of 4.45, in conjunction with an adjusted lodestar of $15,914,905.50, results in a fee award of $70,821,329.48. This figure represents a reasonable fee for the services provided by Plaintiffs' Co–Lead Counsel in this case.").

46.   *Rabin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130, 1991 WL 275757 (S.D. N.Y. Dec. 19, 1991) ("The requested attorneys' fees of $2,544,122.78 represents a multiplier of 4.4 to the lodestar figure based on time (which this Court finds to have been reasonably expended) and at various hourly rates (which this Court finds to be reasonable for the particular attorneys performing services).").

47.   *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018) ("This amount requires a risk multiplier of 4.375 to reach the $3.5 million Plaintiffs seek. Though on the high end, this multiplier falls within the range of reasonableness.").

48.   *Monserrate v. Tequipment, Inc.*, No. 11 CV 6090 RML, 2012 WL 5830557, at *4 (E.D.N.Y. Nov. 16, 2012) ("In sum, I find that a fee award of $465,000 which provides a 4.34 multiplier of the reduced lodestar and constitutes fifteen percent of the $3,100,000.00 Settlement Fund, is a fair and reasonable fee under *Goldberger* and

related cases and should adequately compensate class counsel for its time and effort, for the risk it faced in this case, and for the high quality of its representation. Moreover, that reduced fee award will allow additional monies to be distributed to class members.").

49. *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) ("The resulting multiplier of 4.3 is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and quick results.").

50. *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) ("Even assuming a value of one dollar per share, the 4.3 lodestar multiplier would be proper in this case.").

51. *Demaria v. Horizon Healthcare Servs., Inc.*, No. 2:11-CV-07298 (WJM), 2016 WL 6089713, at *5 (D.N.J. Oct. 18, 2016) ("Although a lodestar multiplier of 4.3 is large, it is not unreasonable.").

52. *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C-07-6140 EMC, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) ("[A]lthough the lodestar cross-check though reveals a high multiplier—4.3 compared to the Ninth Circuit's observation that over 80% of multipliers fall between 1.0 and 4.0—other courts have awarded multipliers in excess of 4.0, and the Court finds that the multiplier here is acceptable in light of the very substantial risks involved and Lead Plaintiff's risk and extensive work on the case.").

53. *Shannon v. Hidalgo County Board of Comm'r*, No. 08-369 (D. N.M. June 4, 2009) (4.2 multiplier) ("Class Counsel are awarded reasonable attorneys' fees, costs and gross receipts tax in the total amount of $333,333, to be paid forthwith from the settlement fund.").

54. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) ("Here, the requested fee would represent a multiplier of approximately four times lodestar, which is well within the range of approved fees.").

55. *Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 3446596, at *6 (E.D. Mich. Aug. 11, 2017) ("Here, as discussed, the risk in this case was considerable but not extraordinary. A multiplier of 4 would seem to adequately account for that risk.")

56. *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359-60 (S.D.N.Y. 2003) ("When combined with the attorneys' fees awarded pursuant to the Citigroup Settlement, the amount sought is equivalent to a lodestar multiple of 4.0. . . . As no objection remains to the amount of costs sought by Lead Counsel, and the expenses do not appear facially unreasonable, the application for reimbursement of expenses is approved.").

57.  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("The percentage fee award in this case represents a multiplier of approximately 3.97 times Class Counsel's lodestar of $36,191,751. A multiplier of 3.97 is not unreasonable in this type of case.").

58.  *Capsolas v. Pasta Res. Inc.*, No. 10-CV-5595 RLE, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) ("Here, Class Counsel are seeking a lodestar multiplier of approximately 3.96. . . . Paying Class Counsel one-third of the fund ($1,750,000)").

59.  *Karpus v. Borelli (In re Interpublic Secs. Litig.)*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004 ("An award of 12 percent would reflect a multiplier of 3.96. . . . Because lead counsel acted responsibly in connection with settlement discussions, and to encourage early settlements when they are warranted by the circumstances of the case, lead counsel is awarded 12 percent of the Gross Settlement Fund in attorneys' fees plus $203,726.76 in expenses.").

60.  *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 116CV00157DADJLT, 2017 WL 5665848, at *8 (E.D. Cal. Nov. 27, 2017) ("Here, awarding attorneys' fees at a 25 percent benchmark of the common fund would yield a lodestar multiplier of 3.95, which is within the range of acceptable lodestar multipliers previously approved by this court and others.").

61.  *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) ("Using the lower billing rate of $400, class counsel's requested award is 3.9 times the lodestar rate. . . . the lodestar cross-check confirms that the requested fee award is reasonable.").

62.  *In re St. Paul Travelers Sec. Litig.*, No. CIV. 04-3801 JRTFLN, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) ("A multiplier of 3.9 results from awarding 15% of the $67,500,000 settlement fund as attorney fees. Courts in other securities class actions have approved attorney fees based on the percentage method that resulted in lodestar multipliers in excess of four.").

63.  *Morgret v. Applus Techs., Inc.*, No. 1:13-CV-01801-JLT, 2015 WL 3466389, at *17 (E.D. Cal. June 1, 2015) ("Here, the requested fees of $625,000.00 would result in a multiplier of approximately 3.9, which is within the range typically awarded in the Ninth Circuit.").

64.  *Hernandez v. Merrill Lynch & Co.*, No. 11 CIV. 8472 KBF DCF, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) ("Here, Class Counsel are seeking a lodestar multiplier of approximately 3.8. This is well within the range of multipliers that have been granted by courts in this Circuit and elsewhere.").

65.  *Manners v. Am. Gen. Life Ins. Co.*, No. CIV.A. 3-98-0266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) ("[P]laintiffs' counsel's request for a multiplier of 3.8 is fully warranted.").

66. *In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *28 (S.D.N.Y. Oct. 25, 2006) ("Thus, although a multiplier of 3.69 is on the higher side, the lodestar cross-check is sufficiently within bounds to sustain the fairness of the award.").

67. *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("Based on the above, Class Counsel's requested fee of $10,666,666.00 is 3.69 times the lodestar. This multiplier is within the range of reasonableness.").

68. *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *1 (N.D. Cal. Dec. 6, 2017) ("The requested 3.66 multiplier is well within the range of awards in other cases.").

69. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1045, 1050-51 (9th Cir. 2002) ("Objectors' principal quarrel is with the district court's lodestar cross-check, which resulted in a multiplier of 3.65 . . . [A] multiplier was appropriate in this case. The district court's percentage of the fund analysis discussed above addressed the substantial risk class counsel faced, compounded by the litigation's duration and complexity. The court considered these circumstances in arriving at a multiplier which was within the range of multipliers applied in common fund cases.").

70. *Donkerbrook v. Title Guar. Escrow Servs., Inc.*, No. 10-00616 LEK-RLP, 2011 WL 3649539, at *10 (D. Haw. Aug. 18, 2011) ("The Court finds that the multiplier of 3.6 in this case, while on the high end of multipliers applied in common fund cases, is reasonable in the instant case.").

71. *In re Aetna Inc.*, No. CIV. A. MDL 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001) ("Given the substantial risk of establishing liability and damages in this case, the large amounts of time and money expended, the outstanding quality of counsel, and the adequacy of the settlement reached, a multiplier of 3.6 is reasonable.").

72. *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 298–99 (N.D. Cal. 1995) ("If Class Counsel's compensation is based on these assumptions, the multiplier would be at least 3.6 ($19,180.803.07 ÷ (.5 x $10,692,067.25)), which is well within the acceptable range for fee awards in complicated class action litigation such as this.").

73. *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-CV-20880-UU, 2016 WL 10518902, at *7 (S.D. Fla. Oct. 17, 2016) ("While the Court may consider the lodestar as a 'cross-check' for the reasonableness of the settlement, there is no basis to conclude that a 3.58 lodestar multiplier is excessive.").

74. *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *9 (D.N.J. June 24, 2016) ("The requested fee would result in a lodestar multiplier of 3.57, which is reasonable under the Third Circuit's precedent.").

75. *Clem v. Keybank, N.A.*, No. 13 CIV. 789 JCF, 2014 WL 2895918, at *9 (S.D.N.Y. June

20, 2014) ("Here, Class Counsel are seeking a lodestar multiplier of approximately 3.5. This is well within the range of multipliers that have been granted by courts in this Circuit and elsewhere.").

76. *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) ("The Court will apply a 3.5 multiplier, and Plaintiffs' counsel are entitled to a fee award of $3,937,867.32, which is almost 12 percent of the settlement fund, net expenses.").

77. *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003)("The lodestar cross-check, which results in a multiplier of 3.5, further convinces me that my award is reasonable."), aff'd sub nom. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) ("Here, the lodestar yields a multiplier of 3.5, which has been deemed reasonable under analogous circumstances...Thus, the district court did not abuse its discretion in awarding plaintiffs' counsel a generous fee based on a somewhat low percentage of the fund.").

78. *Pan v. Qualcomm Inc.*, No. 16-CV-01885-JLS-DHB, 2017 WL 3252212, at *13 (S.D. Cal. July 31, 2017) ("Finally, the lodestar cross-check of 3.5 in this case is reasonable, especially in light of the risks identified above regarding bringing a discrimination suit of this magnitude.").

79. *Retta v. Millennium Prod., Inc.*, No. CV15-1801 PSG AJWX, 2017 WL 5479637, at *13 (C.D. Cal. Aug. 22, 2017) ("The Court would therefore need to apply roughly a 3.5 multiplier to approve Class Counsel's requested fee award of $2,062,500.00, or 25 percent of the common fund. . . . Having assessed the reasonableness of the hourly rates, the hours worked, and the multiplier, the Court finds that the requested fee amount is reasonable under both the common fund and lodestar theories").

80. *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309692, at *2 (N.D. Cal. Mar. 31, 2014) ("Class Counsel's lodestar, as of the date of their fee motion, was $620,660.25 and, thus, they ask the Court to apply a multiplier of approximately 3.5. . . . The Court concludes that the lodestar is reasonable and the multiplier requested is appropriate given the facts and circumstances of this case.").

81. *City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 CIV. 10329 RJS, 2013 WL 4399015, at *3 (S.D.N.Y. Aug. 7, 2013) ("[T]he Court concludes that a fee of 20% of the fund, resulting in a multiplier of 3.45, is appropriate in this action.").

82. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 447-448 (E.D.N.Y. 2014) ("Here, with a fee award of $544.8 million, and a lodestar of about $160 million, the multiplier is about 3.41. That multiplier is comparable to (indeed, nearly identical to) the one I awarded in the *Wal–Mart* case ten years ago, and it is also comparable to multipliers in other large, complex cases. Without engaging in a 'gimlet-eyed review' of the fee application, I am nonetheless confident that this is a reasonable multiplier and a reasonable overall fee.").

83. *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172-173 (D. Mass. 2014) ("In any event, 28% would yield a multiplier of 3.32, which is well within the range. , , , In light of the above, the Court reduces the proposed percentage and awards Class Counsel 28% of the common fund for attorneys fees' and expenses.").

84. *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) ("[T]he Court has considered class counsel's fee request under the *Goldberger* factors and concludes, particularly in light of the fact that class counsel's fee does not come out of a common fund, that multiplying class counsel's lodestar by 3.3 is reasonable in this case.").

85. *Sykes v. Harris*, No. 09 CIV. 8486 (DC), 2016 WL 3030156, at *16-17 (S.D.N.Y. May 24, 2016) ("The multiplier here is 3.3, which is consistent with other cases in the Second Circuit . . . is approved.").

86. *In re Shell Oil Refinery*, 155 F.R.D. 552, 574 (E.D. La. 1993) ("The fee requested is clearly reasonable and justifiable under the lodestar analysis, no one appearing at the settlement hearing opposed the fee, and it is supported by a percentage analysis. Accordingly, the court will apply a multiplier of 3.2508.").

87. *In re: Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156, at *7 (D. Kan. July 29, 2016) ("Thus, an award of one-third of the Dow settlement fund would yield a total multiplier (including settlements with all defendants) of approximately 3.2.").

88. *McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *10 (C.D. Cal. July 2, 2012) ("Thus, a benchmark award of $2,062,500 represents a multiplier of roughly 3.2. . . . Accordingly, the Court is satisfied that the benchmark figure, which falls within the higher end of this range, appropriately accounts for the skill required and the quality of work performed by class counsel in this case.").

89. *Nichols v. SmithKline Beecham Corp.*, No. CIV.A.00-6222, 2005 WL 950616, at *24 (E.D. Pa. Apr. 22, 2005) ("The Court concludes that the lodestar multiplier of 3.15, which would result from a fee award of $19 million in this case, is in line with the lodestar multipliers utilized in comparable complex class actions and supports the requested attorneys' fee.").

90. *In re Regions Morgan Keegan Sec.*, No. 207CV02830SHMDKV, 2013 WL 12110279, at *7 (W.D. Tenn. Aug. 6, 2013) (3.110013985873.1 multiplier) ("The resulting lodestar multiplier is approximately 3.1.").

91. *Brown v. Progressions Behavioral Health Servs., Inc.*, No. CV 16-6054, 2017 WL 2986300, at *7 (E.D. Pa. July 13, 2017) ("A multiplier of 3.1 falls within the range generally approved in common fund cases.").

92. *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("In light of these factors, it is the opinion of this Court that a multiplier of 3.122 is justified.").

**E-11**

93.  *In re Ravisent Techs., Inc. Sec. Litig.*, No. CIV.A.00-CV-1014, 2005 WL 906361, at *12 (E.D. Pa. Apr. 18, 2005) ("Using that lodestar, the requested fee of $2,157,443 equates to a multiple of 3.1. Lodestar multiples of less than four are well within the range awarded by courts in this Circuit.").

94.  *Long v. HSBC USA INC.*, No. 14 CIV. 6233 (HBP), 2016 WL 4764939, at *12 (S.D.N.Y. Sept. 13, 2016) (rejecting a multiplier greater than 10 but awarding a 3.1 multiplier in FLSA action) ("I conclude a multiplier of 3.10 to the lodestar is warranted. . . ").

95.  *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *19 (D.N.J. Nov. 10, 2016) ("Recalculating the lodestar in this case on the basis of a 30% award, therefore, gives rise to a multiplier of 3.09, which this Court finds acceptable.").

96.  *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers….Thus, the lodestar cross-check further supports the attorney's fees request.").

97.  *Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) ("In light of the $1,275,000.00 sought, the 'lodestar multiplier' would be 3.06. This multiplier is very acceptable under the facts and circumstances of this case and especially in light of the extraordinary service rendered by counsel on behalf of the Class.").

98.  *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("[A] lodestar multiplier of approximately 3.05 is reasonable and appropriate.").

99.  *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141-AC-DAS, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) ("A one-third fee recovery in this matter would equate to a multiplier of 3.01 to the lodestar incurred through October 31, 2014. This level multiplier is reasonable in light of what has been routinely accepted as fair and reasonable in complex matters such as this one.").

100.  *Alexander v. FedEx Ground Package Sys., Inc.*, No. 05-CV-00038-EMC, 2016 WL 3351017, at *3 (N.D. Cal. June 15, 2016) ("Nevertheless, the Court concludes that a multiplier at the high end of the range – *i.e.*, 3 – is proper.").

101.  *City of Plantation Police Officers' Employees' Ret. Sys. v. Jeffries*, No. 2:14-CV-1380, 2014 WL 7404000, at *19 (S.D. Ohio Dec. 30, 2014) ("[T]he Court finds that a lodestar multiplier of 3 is appropriate in this case.").

102.  *In re Davita Healthcare Partners, Inc.*, No. 12-CV-2074-WJM-CBS, 2015 WL

3582265, at *5 (D. Colo. June 5, 2015) ("In comparison to similar cases, the Court finds and holds that in this case, a multiplier of 3 will adequately compensate Plaintiffs' counsel for their extensive work . . .").

103. *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, No. CIV.A. H-11-3061, 2015 WL 5021954, at *13 (S.D. Tex. Aug. 24, 2015) (3.0 multiplier) ("The court will apply a multiplier of 3.0.").

104. *Milkman v. Am. Travellers Life Ins. Co.*, No. 011925, 2002 WL 778272, at *28 (Pa. Com. Pl. Apr. 1, 2002) (3.0 multiplier) ("Here, Class Counsel makes the reasonable request that its $1.5 million in attorneys' fees be factored by a multiplier of 3.0 for a final amount of $4.5 million. Thus, the lodestar method supports awarding the attorneys' fees requested by Class Counsel.").

105. Spark v. MBNA Corp., 289 F. Supp. 2d 510, 514 (D. Del. 2003) ("I believe a multiplier of 3 is appropriate and the total amount of attorneys' fees requested is reasonable.").

106. *Hinckley v. E.I. Du Pont De Nemours & Co.*, 583 F. Supp. 11, 14 (E.D. Pa. 1983) (3.0 multiplier) ("I find that a multiplier of 3.0 for both the contingent nature of success and the quality of the attorneys' work is warranted.").