IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK HALE, TODD SHADLE and LAURIE LOGER, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, EDWARD MURNANE, and WILLIAM G. SHEPHERD,<br><br>      Defendants. | Case No. 12-cv-00660-DRH-SCW<br><br>Judge David R. Herndon<br>Magistrate Judge Stephen C. Williams |

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT**

Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), by its undersigned counsel, hereby submits its separate brief in support of final approval of the Settlement Agreement [941] between Plaintiffs, the Class Members, and the Defendants State Farm, Edward Murnane and William G. Shepherd. State Farm also disputes the contentions of the sole Objector, Lisa Marlow, that the consideration provided by this settlement to the class is in any way inadequate or unfair. [961][1] CAFA notice was provided in this case to 112 public officials, including the Attorneys General and insurance commissioners of all 50 states and the United States Territories, as well as the Attorney General of the United States and the Federal Reserve. [952; 952-1] None of those officials has objected to the settlement or otherwise criticized its terms.

---

[1] State Farm takes no position on the amount of the attorney fee award sought by Plaintiffs by their Motion for Attorney Fees and Costs. [954].

State Farm considers this settlement to be one by which it is settling under the unjust enrichment claim rather than the alleged RICO claims.[2] [941] at 2, 3; *see also* [9/4/18 Hearing Tr.] at 9:23-25 ("the legal theory on which this proposed settlement is based is unjust enrichment…."). State Farm supports final approval of the Settlement Agreement. The settlement is more than fair, reasonable and adequate, especially in view of the strength of State Farm's powerful factual and legal defenses and the serious obstacles Plaintiffs would have faced at trial and on appeal. To illustrate the strength of its case, and the concomitant fairness of the settlement, State Farm highlights some of the evidence and its defenses below.

I. **PLAINTIFFS LOST THE *AVERY* JUDGMENT BECAUSE THE ILLINOIS SUPREME COURT UNANIMOUSLY RULED IT WAS WRONG AS A MATTER OF LAW. THOSE RULINGS BY THE ILLINOIS SUPREME COURT BAR AND PRECLUDE THIS CASE.**

This lawsuit has its genesis in *Avery v. State Farm Mutual Automobile Insurance Co*, 835 N.E.2d 801 (Ill. 2005), a putative class action filed in Illinois state court in Williamson County over 20 years ago in 1997. In that case, the trial court certified a nationwide class of State Farm policyholders asserting breach of contract and Illinois Consumer Fraud Act ("ICFA") claims against State Farm, arising from State Farm's inclusion of non-original equipment manufacturer ("non-OEM") "crash parts" on some auto repair estimates. *Avery*, 835 N.E.2d at 810-11. The trial court entered judgment against State Farm for over $1.1 billion, which included $244 million in "specification" damages for instances where a non-OEM part had merely been listed in an estimate and not actually used in the repair, $212 million in installation damages, $130 million in "disgorgement" damages, and $600 million in punitive damages imposed by the court on the ICFA

---

[2] Of course, State Farm certainly denies that it was unjustly enriched and that Plaintiffs had a viable unjust enrichment claim.

claim. *Id.* at 817. On appeal, the Illinois Appellate Court eliminated the "disgorgement" damages as duplicative, but otherwise affirmed the judgment. *Id.* at 818-19.

In 2005, the Illinois Supreme Court *unanimously* reversed the judgment as erroneous. All six participating Justices ruled that: (1) no nationwide class should ever have been certified, (2) the award of "specification" damages had "no basis in law," and (3) the judgment on the ICFA claim (including the punitive damages award) was improper because ICFA does not apply to transactions outside of Illinois. *See id.* at 830, 855, 863; *see also id.* at 863-64, 880 (Freeman, J., concurring in part and dissenting in part, joined by Kilbride, J.).

Plaintiffs repeatedly tried to keep one of the six Illinois Supreme Court Justices – Justice Lloyd Karmeier – from participating in the *Avery* decision. They filed a motion in the Illinois Supreme Court in January 2005 asking that he not participate in *Avery*; that motion was denied. [827-2] at 77; [827-5] at 276. Plaintiffs filed a motion to reconsider seeking the same relief; that motion was denied. [827-5] at 312. And after the Court's unanimous reversal of the *Avery* judgment, Plaintiffs filed for rehearing, claiming that Justice Karmeier's participation violated their due process rights; that petition was denied by a unanimous Court. [827-2] at 316; [827-5] at 564. Plaintiffs thereafter made Justice Karmeier's participation in *Avery* and the purported deprivation of due process the centerpiece of their certiorari petition to the Unites States Supreme Court. [827-3] at 18. Plaintiffs lost yet again, as their certiorari petition was denied. [827-5] at 604. Each of these failed motions and petitions was based upon the same contentions that they made in this case – that State Farm supposedly financed the election of Justice Karmeier to the Illinois Supreme Court through contributions by business organizations in which it was a member. Those contentions were rejected by the Illinois Supreme Court and the United States Supreme Court refused to grant Plaintiffs' petition for certiorari.

3

In 2011, Plaintiffs asked the Illinois Supreme Court to vacate the *Avery* decision, repeating the same arguments that had been rejected repeatedly -- that State Farm supposedly financed the election of Justice Karmeier to the Illinois Supreme Court and concealed that fact from the Court in its briefs opposing Plaintiffs' attempts to disqualify Justice Karmeier. [827-3] at 38. The five participating Justices of the Illinois Supreme Court once again unanimously rejected Plaintiffs' contentions. Justice Karmeier did not participate in that decision. [827-8] at 184. The five participating Justices included two new Justices (Justices Burke and Theis) who were not on the Court when the *Avery* decision was rendered in August 2005.

The holdings and law announced by the Illinois Supreme Court in *Avery* remain the law in Illinois. Those rulings have been cited by more than 1,100 state and federal court decisions in cases having nothing to do with State Farm.

In this lawsuit, Plaintiffs did not challenge any aspect of *Avery* on the merits. Instead, they again sought to press the same due process issues they claim were raised by Justice Karmeier's participation in *Avery*. This time, Plaintiffs repackaged their assertions as federal RICO claims, alleging that State Farm had engaged in a RICO conspiracy to deprive them of due process and of the $1.05 billion *Avery* judgment, by securing Justice Karmeier's election and his participation in *Avery*. State Farm sought to dismiss Plaintiffs' RICO claims on myriad grounds, including among others that they were barred by the *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel. Although State Farm did not prevail at the trial court level on its dismissal and summary judgment motions addressing these and other defenses, it fully expected that, in the absence of settlement, it would prevail on these defenses upon appeal.[3]

---

[3] Objector Lisa Marlow fails to recognize the likelihood that State Farm would have prevailed on appeal on these and others of State Farm's significant defenses. Perhaps that is due to her mistaken

State Farm argued that Plaintiffs' claims are barred under *Rooker-Feldman* because plaintiffs were attempting to relitigate in federal court matters that had been ruled on by the Illinois Supreme Court and because their asserted injuries "flow[ed] directly" from the Illinois Supreme Court's reversal of the judgment and its rulings on Justice Karmeier's participation. *See Lennon v. City of Carmel*, 865 F.3d 503, 507 (7th Cir. 2017). State Farm argued that Plaintiffs' allegations that State Farm purportedly misrepresented or concealed its supposed support of Justice Karmeier's campaign in its briefs to the Illinois Supreme Court were factually incorrect and had been presented to and rejected by the Illinois Supreme Court and could not be re-litigated in the guise of RICO claims. *See Mains v. Citibank, N.A.*, 852 F.3d 669, 678 (7th Cir.) (where a plaintiff has asked the state court to remedy a defendant's alleged fraud in procuring a judgment and been denied, the federal courts "must accept the state court's resolution of the issue"), *cert. denied*, 138 S. Ct. 227 (2017); *Wallis v. Fifth Third Bank*, 443 F. App'x 202, 204-05 (7th Cir. 2011) (*Rooker-Feldman* does not permit plaintiffs to seek reversal of a state court judgment by casting their complaint in the guise of a RICO claim).

Similarly, State Farm argued in its dismissal and summary judgment briefing that *res judicata* and collateral estoppel bar Plaintiffs' claims. *See Baek v. Clausen*, 886 F.3d 652, 660 (7th Cir. 2018) (*res judicata* barred RICO claims based on same "single group of operative facts" as earlier state law claims); *Sanchez v. City of Chicago*, 880 F.3d 349, 357 (7th Cir. 2018) (plaintiff collaterally estopped from rearguing issues argued in state court).[4]

---

suggestion that the Seventh Circuit has already ruled on the merits of State Farm's legal defenses simply by declining to accept interlocutory appeals. [961 at 7].

[4] In addition, the United States Supreme Court's denial of Plaintiffs' petition for certiorari in *Avery*, which was based on the same due process allegations regarding Justice Karmeier's participation in *Avery* as are at issue in this case, arguably has *res judicata* effect and bars Plaintiffs' RICO claims. *See Brown v. Allen*, 344 U.S. 443, 543 (1953) (Jackson, J., concurring) (the "minimum meaning" of a denial of certiorari is that "the judgment below … stand[s] with whatever

State Farm also sought dismissal and summary judgment on Plaintiffs' claims in the present case as deficient as a matter of RICO law. Again, although those motions were denied at the trial court level, State Farm believes the defenses would have been dispositive upon appeal. For example, State Farm argued that Plaintiffs could not show proximate cause given the unanimous decision by the Illinois Supreme Court in *Avery*. All six Justices – men and women, experienced and inexperienced, and holding a wide range of jurisprudential perspectives – ruled that the *Avery* judgment had to be reversed. Thus, the evidence would have shown that Justice Karmeier's participation in *Avery* did not change and could not have changed the outcome.

Moreover, Plaintiffs admitted that they could not challenge any of the Illinois Supreme Court's unanimous rulings as erroneous. [692] at 7-8. Plaintiffs also admitted, and their experts acknowledged, that they had no evidence that Justice Karmeier influenced the other Justices in any way or caused them to change their votes, [796] at 4-5, and at trial, Plaintiffs would have been precluded from arguing otherwise. *See* [905] at 35. Plaintiffs therefore could not prove that Justice Karmeier's participation was the "but for" and "proximate cause" of their claimed RICO injury -- loss of the *Avery* judgment. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010); *see also RWB Servs., LLC v. Hartford Computer Grp., Inc.*, 539 F.3d 681, 686-87 (7th Cir. 2008).

Put simply, Plaintiffs did not lose the judgment because of a RICO conspiracy or Justice Karmeier's participation in the case. They lost the judgment because all six participating Illinois Supreme Justices agreed that the *Avery* judgment was unlawful and could not stand.[5]

---

consequences it may have upon the litigants involved under the doctrine of *res judicata* as applied either by state or federal courts").

[5] In addition, State Farm has argued in its motions that Plaintiffs' alleged injuries, a deprivation of due process and loss of the non-final *Avery* judgment, do not constitute an injury to "business of property" as required by RICO. *See* 18 U.S.C. § 1964(c); *see also Rios v. Schlein*, No. 16-cv-6448, 2017 WL 3671194, at *3 (S.D.N.Y. Aug. 24, 2017) ("'deprivation of constitutional rights is a personal injury that is not protected by RICO'") (citation omitted); *Evans v. City of Chicago*, 689

## II. THERE WAS NO CONSPIRACY TO ELECT JUSTICE KARMEIER OR TO DO SO TO REVERSE THE *AVERY* DECISION.

There also was no RICO conspiracy, as the evidence at trial would demonstrably have shown if this case had not settled.

Plaintiffs' theories in *Hale* rest on the suppositions that State Farm financed the Karmeier campaign and hid that support in the papers that it filed with the Illinois Supreme Court in opposition to Plaintiffs' efforts to recuse Justice Karmeier from participation in *Avery*. The evidence at trial would have shown those suppositions to be wrong.

First, although many facts in this litigation were bitterly contested, one was indisputable: State Farm made ***no*** contributions to Justice Karmeier's campaign (Citizens for Karmeier). Nor did State Farm contribute a single dollar to the political action committee of the ICJL (JUSTPAC), the Illinois Republican Party, or the political action committee of the Illinois Chamber of Commerce during the 2004 election cycle, much less contributions supposedly earmarked to support the Karmeier campaign.

Instead, Plaintiffs' unsupportable theory was that any contributions made by organizations such as the U.S. Chamber of Commerce (the "Chamber"), the Institute for Legal Reform ("ILR") and the American Tort Reform Association ("ATRA") to the aforementioned political committees should be attributed to State Farm, simply because it is a member of those organizations. The evidence at trial would have shown that theory to be illogical, implausible and without basis. That theory could be cut-and-pasted against any corporate defendants that are among the hundreds of members of those national organizations, to challenge Justice Karmeier's participation in cases

---

F.2d 1286, 1296 (7th Cir. 1982) ("Under Illinois law, a judgment becomes a vested right of property once it is no longer subject to review or modification."), *overruled on other grounds*, 873 F.2d 1007 (7th Cir. 1989).

7

involving those companies. Indeed, evidence produced in discovery shows as much. Emails produced by Plaintiffs' investigator Douglas Wojcieszak – a political operative who supported Justice Karmeier's opponent, Justice Gordon Maag[6] – reveal that he prepared a reusable "white paper" for "any attorney trying to develop a brief similar to the two briefs [challenging Justice Karmeier's participation] we prepared in Avery." [637] at 13-14. Mr. Wojcieszak then shared this white paper with the plaintiffs' attorneys in *Price v. Philip Morris, Inc.* (*id.* at 14), who proceeded to use the very same contributions alleged in this case, under the same theories advanced by Plaintiffs, to argue it was Philip Morris (not State Farm) that contributed millions to Justice Karmeier's campaign through the U.S. Chamber and ATRA. [*Id.*] This vividly illustrates the implausibility (and cynicism) of Mr. Wojcieszak' s theories, which were the original basis of Plaintiffs' RICO claims in this lawsuit.

State Farm would have shown at trial that its contributions to the Chamber, ILR and ATRA were mostly in the form of *annual dues payments*, which, as Plaintiffs' own expert acknowledged, were made by State Farm in the same or greater amounts for years before and after Justice Karmeier's election. [828] at 16; [827] at 22. State Farm is one of *hundreds* of members of those organizations. [827] at 23. Tax filings of the ILR and U.S. Chamber dramatically illustrate that State Farm's dues were just a tiny sliver of their overall annual revenues and budgets. [828-5].

Like many other businesses, State Farm has associated with these organizations for many years, not just in 2004. [827-11] at 307-53, 363, 385, 390-449. And like so many other businesses,

---

[6] State Farm also would have made a proffer at trial showing that Wojcieszak committed "dirty tricks" against Justice Karmeier during the 2004 campaign. [637] at 16; [637-14] at 2 – 13. Ironically, Mr. Wojcieszak is identified in tax filings as the records keeper for Justice for All Foundation, which raised hundreds of thousands of dollars in nontransparent contributions (the type Plaintiffs have generally labeled "dark money") for Justice Karmeier's opponent, the source of which contributions were not revealed until after the election. [637-5] at 9; [829-4] at 53.]

State Farm contributes to these organizations because they support tort reform and business interests across the country, including through legislative initiatives, voter education efforts, and research projects. [827-11] at 379-87; 450-55; 467-68. At trial, State Farm would have presented evidence that it is the organizations' staffs that make decisions about how to spend money and whether to contribute to particular judicial races. [827] at 23. The notion that State Farm, or any single corporate member, controls how these organizations spend money is simply not true. [*Id.*]

Plaintiffs are wrong in their assertions that State Farm was somehow the driving force behind Justice Karmeier's campaign and the evidence is all to the contrary. The 2004 Illinois Supreme Court election drew extraordinary national attention from businesses across the country, which were concerned about the explosion in asbestos, out of venue and class action filings in Southern Illinois. In addition, tort reformers argued that doctors were fleeing the state because of medical malpractice awards. [827-11] at 550. The election was viewed as an opportunity to address these problems, with millions of dollars contributed on both sides. [467] at 13; [467-7] at 4; [467-5]; [467-9]. It is hardly surprising that pro-business groups like the Chamber aligned with the Illinois Republican Party, while Justice Maag (a former plaintiffs' attorney) was supported with an essentially equal amount of contributions by the Illinois Democratic Party and the trial bar.

At trial, Plaintiffs would have faced the virtually impossible task of persuading a jury that nearly all of the money contributed to Justice Karmeier's campaign came from State Farm, as opposed to business organizations and interests generally, and hospitals and doctors, which were generally aligned in support of Justice Karmeier the Republican candidate. [827-11] at 550-51. Plaintiffs would have had to overcome the testimony of their own political expert, who admitted that the contributions to Justice Karmeier were part of a larger trend of tort reformers battling trial bar interests in Illinois Supreme Court elections. [829-4] at 19-22. And they would have

confronted the fact that the election was not close – Justice Karmeier won by over 9 points.[7] He then was retained by voters 10 years later in 2014. Justice Karmeier was elected because voters thought he was the better candidate, not because of State Farm, any fictional RICO conspiracy, or any concerted plan to reverse the *Avery* judgment.

### III.  STATE FARM'S BRIEFS IN AVERY WERE ACCURATE AND PROPER ADVOCACY.

Plaintiffs have never claimed that any of State Farm's supposed contributions or other purported support for Justice Karmeier's campaign meet the requirements for predicate acts under RICO. In fact, there are only two acts that Plaintiffs claim were racketeering acts – State Farm's January 31, 2005 Response to Plaintiffs' Conditional Motion for Non-Participation and its September 19, 2011 Response to Plaintiffs' Petition to Recall the Mandate. Those two briefs were proper advocacy and certainly – factually and legally – were not a pattern of racketeering as required by RICO, *see Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 475 (7th Cir. 2007) (pattern of racketeering requires that alleged predicate acts must be related and have "continuity"), and they were filed by State Farm alone, not any supposed RICO enterprise.[8]

But more fundamentally, neither of these briefs were false in any way, much less racketeering acts. Plaintiffs would have had to prove that the briefs contained intentional misrepresentations that were made with the intent to defraud the Illinois Supreme Court, and that the Court was, in fact, defrauded by those misrepresentations. That Plaintiffs could not do.

---

[7] https://www.elections.il.gov/ElectionResultsSpecifyRace.aspx?ID=pY%2fLK%2b9GRrQ%3d.

[8] Indeed, there is no evidence that the amorphous "enterprise" alleged by Plaintiffs still existed by the time of State Farm's 2005 brief (which was filed two months Justice Karmeier's election), much less at the time of its 2011 brief six years later.

10

Plaintiffs acknowledged that they could not prove that any Justices were deceived by anything in either brief, [905] at 35, which alone means they could not be racketeering acts.

State Farm would also have demonstrated at trial that there were no misrepresentations in its briefs. Plaintiffs claimed there were four false statements and one material omission in the two briefs. In the 2005 brief, Plaintiffs identified the purported representations by State Farm that "its support for Justice Karmeier consisted of 'quite modest contributions,'" "it had not funneled $350,000 to Justice Karmeier's campaign or peddled its enormous political influence to his benefit as 'incorrect and meritless'", and "it had not been involved in 'engineering contributions' to Justice Karmeier's campaign 'for the purpose of impacting the outcome of his case," along with State Farm's "fail[ure] to disclose that … Defendant Shepherd [] was a member of the Illinois Civil Justice League Executive Committee." [827] at 23-24. The language in the first challenged statement actually was that "[Plaintiffs'] moving papers and supporting documentation in fact reveal that a limited number of State Farm officers and employees made quite modest contributions to Justice Karmeier's campaign." [827-4] at 357. That is comment on the sufficiency of Plaintiffs' proofs (their "moving papers and supporting documentation"), not fraud. [300] at 8-9. State Farm's observations about the inadequacy of plaintiffs' supporting documentation were entirely on point. The second and third statements were similarly accurate and advocacy, not fraud. *See Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 147 (N.D. Ill. 2005).

As for the supposed omission, Plaintiffs produced in discovery a sworn statement by their investigator that he knew in 2005 that Mr. Shepherd sat on the Illinois Civil Justice League Executive Committee. [830-3] at 8-9. It was not a secret; nothing was concealed.[9]

---

[9] State Farm's January 31, 2005 brief was followed by three more State Farm briefs, mailed on or around February 9, 2005, March 31, 2005, and February 3, 2006, that also opposed Plaintiffs' contentions that State Farm had misrepresented its support for Justice Karmeier's campaign and

Regarding the 2011 brief, Plaintiffs identified a single alleged misstatement, that "Murnane was not Karmeier's campaign manager." [827] at 24. That statement, however, is indisputably true. As stated by the Magistrate Judge, "Murnane was not Karmeier's campaign manager. Steve Tomaszewski was the campaign manager." [300] at 7. Plaintiffs themselves admitted in pleadings that Mr. Tomaszewski was "Campaign Manager of Citizens for Karmeier." [384] at ¶ 6. Plaintiffs would not be able to prove that either brief was false. Without these alleged racketeering acts, there is no RICO case.

In addition, the *Noerr-Pennington* doctrine protects State Farm's petitioning activity in filing its response briefs in the Illinois Supreme Court in *Avery*. The rationale of the *Noerr-Pennington* doctrine is "applicable to RICO suits," *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999), and is applicable to "defensive pleadings," "because asking a court to deny one's opponent's petition is also a form of petition." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). Where, as here, Plaintiffs' theory of liability implicates *Noerr-Pennington,* Plaintiffs bear the burden to establish the sham exception to that doctrine by clear and convincing evidence that a misrepresentation "(1) was intentionally made, with knowledge of its falsity; and (2) was material, in the sense that it actually altered the outcome of the proceeding." *Mercatus Grp., LLC v. Lake Forest Hosp.,* 641 F.3d 834, at 843 (7th Cir. 2011); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1155 (7th Cir. 1983). The challenged statements in State Farm's briefs were

---

that Justice Karmeier's participation in *Avery* had deprived Plaintiffs of due process. *See* [827] at 13-15. If State Farm's mailing of its January 31, 2005 brief was a supposed predicate act of mail fraud (which it was not), then its three other briefs that were of a similar ilk also would have been predicate acts of mail fraud under Plaintiffs' theory. Thus, the four-year statute of limitations began to run no later than 2005 or 2006, when Plaintiffs sustained their purported injuries and no fewer than four briefs had been mailed. The statute thus expired well before Plaintiffs filed their RICO complaint in May 2012.

appropriate and permissible comments on the sufficiency of Plaintiffs' evidence or otherwise permissible advocacy, just as Magistrate Judge Williams previously found. [300] at 9. Those statements were accurate. Moreover, the challenged statements in those briefs had no "ascertainable effect" on the outcome in *Avery*, as required to preclude application of *Noerr-Pennington*, *see Mercatus Grp.*, 641 F.3d at 843, because Justice Karmeier's vote was not decisive. *See* Point I *supra*. Consequently, in the absence of a settlement, the Seventh Circuit likely would have found that the *Noerr-Pennington* doctrine bars Plaintiffs' claims.

## IV. THE SETTLEMENT IS MORE THAN FAIR AND SHOULD BE APPROVED.

Why then in view of the firmness of State Farm's convictions that it was clearly in the right and its confidence in the ultimate outcome would State Farm agree to settle this matter? This case has already gone on for more than six years, and the predecessor *Avery* case lasted even longer. Any appeal after a trial would have extended the life of the case by yet another few years. This litigation has already sprawled over two decades, back to when *Avery* was first filed in 1997. Prudent business judgment dictates that there comes a point at which all things must end. There is also the certainty of the agreed settlement consideration here ($250 million), which – albeit a significant sum – is far less than the billions Plaintiffs sought in the litigation. State Farm eliminates its exposure and can focus its energies instead on what it does best – being the leading insurer of autos and homes in the country and delivering exceptional service to its 43 million auto insurance customers and 80 million customers overall.

In sum, the Settlement Agreement is more than fair, reasonable and adequate, especially in view of the strength of State Farm's defenses and the serious obstacles Plaintiffs would have faced at trial and on appeal. *See, e.g., Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (strength of plaintiffs' claims on the merits in relation to settlement amount is most important factor in assessing fairness of class settlement); *Donovan v. Estate of Fitzsimmons*,

778 F.2d 298, 309 (7th Cir. 1985) (in assessing class settlement, court should consider "the various risks and costs that accompany continuation of the litigation").

Accordingly, for the above reasons, State Farm respectfully requests that the Court find that the Settlement Agreement is fair, adequate and reasonable and give final approval to the settlement in the form that has been submitted by the Parties.

Dated: December 6, 2018

Respectfully submitted,

*/s/ Ronald S. Safer*

Ronald S. Safer #6186143
Joseph A. Cancila, Jr., #6193252
Nick Kahlon, #6280309
Riley Safer Holmes & Cancila LLP
70 W. Madison St., Ste. 2900
Chicago, IL 60602

Michael P. Kenny
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree St.
Atlanta, GA 30309

Patrick D. Cloud, #06282672
HEYL, ROYSTER, VOELKER & ALLEN
Mark Twain Plaza III, Suite 100
105 W. Vandalia St.
Edwardsville, IL 62025

J. Timothy Eaton, #0707341
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker
Suite 2800
Chicago, IL 60601

Of Counsel:
Sheila L. Birnbaum
Douglas W. Dunham
Ellen P. Quackenbos
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036

**Attorneys for Defendant State Farm Mutual Automobile Company**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant State Farm Mutual Automobile Insurance Company's Brief in Support of Final Approval of Class Settlement was served upon all counsel of record on December 6, 2018, via the Court's CM/ECF system.

Dated: December 6, 2018                    */s/ Ronald S. Safer*